# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| IN RE: CERNER/ORACLE DATA BREACH | ) | |
| LITIGATION | ) | Case No. 25-00259-CV-W-BP |
| _____ | ) | |

## CONSOLIDATED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ......................................................................................................................... 1

PARTIES ................................................................................................................................... 3

    Plaintiffs ............................................................................................................................. 3

    Defendants ......................................................................................................................... 61

JURISDICTION AND VENUE .............................................................................................. 63

FACTUAL ALLEGATIONS .................................................................................................. 64

    Defendants Collect, Store, and Improperly Maintain Patients' Private Information................ 64

    The Data Breach and Defendants' Inadequate Notice to Plaintiffs and Class Members.......... 70

    A.    The Healthcare Sector Is Particularly Susceptible to Data Breaches ............................. 74

    B.    Defendants Failed to Comply with HIPAA ....................................................................... 78

    C.    Defendants Failed to Comply with FTC Guidelines........................................................... 80

    D.    Defendants Failed to Comply with Industry Standards ..................................................... 82

    E.    Defendants Breached Their Duty to Safeguard Private Information.................................. 83

    F.    Defendants Should Have Known That Cybercriminals Target Private Information to Carry Out Fraud and Identity Theft ...................................................................................... 84

    Plaintiffs and Class Members Have Suffered Common Injuries and Damages ...................... 89

CLASS ACTION ALLEGATIONS ........................................................................................ 94

CLAIMS FOR RELIEF........................................................................................................... 98

    Count I – Negligence ........................................................................................................ 98

    Count II – Negligence *per se* .......................................................................................... 102

    Count III – Breach of Third-Party Beneficiary Contract............................................... 105

    Count IV – Breach of Implied Contract.......................................................................... 106

    Count V – Unjust Enrichment.......................................................................................... 111

    Count VI – Breach of Confidence ................................................................................... 113

    Count VII – Breach of Fiduciary Duty ........................................................................... 115

    Count VIII – Invasion of Privacy.................................................................................... 117

    Count IX – Declaratory Judgment .................................................................................. 118

    Count X – Violation of the Arizona Consumer Fraud Act, A.R.S. §§ 44-1521, *et seq.* ................................................................................................ 120

    Count XI – Violation of the Arkansas Deceptive Trade Practices Act, A.C.A. §§ §§ 4-88-101, *et seq.* ....................................................................................... 123

Count XII–Violation of the California Consumer Privacy Act,
Cal. Bus. & Prof. Code §§ 1798.150, *et seq.* ("CCPA") ................................................. 126

Count XIII – Violation of the California Confidentiality of Medical Information Act,
Cal. Civ. Code §§ 56, *et seq.* ("CMIA").......................................................................... 128

Count XIV–Violation of the California Customer Records Act,
Cal. Civ. Code §§ 1798.80, *et seq.*.................................................................................. 129

Count XV – Violation of the California Unfair Competition Law,
Cal. Bus. & Prof. Code §§ 17200 *et seq.*......................................................................... 130

Count XVI – Violation of the California Privacy Rights Act,
Cal. Civ. Code §§ 1798.100 *et seq.*................................................................................. 133

Count XVII–Violation of the Florida Unfair and Deceptive Trade Practices Act,
Fla. Stat. §§ 501.201 *et seq.* ........................................................................................... 134

Count XVIII – Violation of the Indiana Deceptive Consumer Sales Act,
Ind. Code §§ 24-5-0.5-1 *et seq.*...................................................................................... 137

Count XIX – Violation of the Missouri Merchandising Practices Act ("MMPA"),
Mo. Rev. Stat. § 407.010 *et seq.* .................................................................................... 143

Count XX–Violation of the New York Deceptive Trade Practices Act,
N.Y. Gen. Bus. Law §§ 349 *et seq.*................................................................................. 146

Count XXI–Violation the Montana Data Breach Notification Law
Mont. Code Ann. §§ 30-14-1704 *et seq.*......................................................................... 149

Count XXII–Violation the Montana Consumer Protection Act (MCPA),
Mont. Code Ann. §§ 30-14-101 *et seq.*........................................................................... 151

Count XXIII –Violation of the Montana Uniform Health Care Information Act,
Mont. Code Ann. §§ 50-16-501 *et seq.*........................................................................... 154

PRAYER FOR RELIEF .............................................................................................................. 156

DEMAND FOR JURY TRIAL ................................................................................................... 157

ii

Plaintiffs identified below (collectively, "Plaintiffs" or "Class members"), individually and on behalf of similarly situated individuals, bring this Consolidated Class Action Complaint against Defendant Cerner Corporation d/b/a Oracle Health ("Oracle Health") and Defendants Albany Med Health System, Arkansas Heart Hospital, LLC, Baptist Health South Florida, Inc., Glens Falls Hospital, Heartland Regional Medical Center d/b/a Mosaic Life Care, Tallahassee Memorial Healthcare, Inc., Union Health System, Inc., LifeBridge Health, Inc., Sapphire Community Health, Inc., and Huntington Health Services LLC (collectively, "Healthcare Provider Defendants").[1] Plaintiffs make these allegations based upon personal knowledge of the facts pertaining to Plaintiffs and on information and belief as to all other matters derived from, among other things, investigation by counsel and review of public documents.

## INTRODUCTION

1. Oracle Health, formerly Cerner Corporation, is the second-largest electronic health record ("EHR") vendor in the United States.[2] It holds 22% of the U.S. EHR market share, providing services to healthcare providers across the country.[3] As a titan in the EHR industry, Oracle Health should have industry-leading data security systems in place. Oracle Health acknowledges that it "has been trusted with some of the world's most sensitive and regulated data"

---

[1] Each presently named Healthcare Provider Defendant has been named in a filed action that originated in or was transferred to this Court, or which plaintiffs are seeking to transfer to this Court, for this consolidated proceeding. As the Court recognized in its Interim Scheduling Order (Doc. 59), and as further explained in the allegations herein, numerous affected healthcare providers have not yet provided notice of the Data Breach to affected patients. Thus, Co-Lead Interim Class Counsel expect that additional Healthcare Provider Defendants and corresponding affected patient-plaintiffs will be added via Short Form Complaint. *See* Doc. 59 at ¶ D.2. This Consolidated Complaint is intended to apply to those parties and claims when they are before the Court in this consolidated action.

[2] *Healthcare Insights: Top 10 Hospitals Using Oracle Cerner's EHR*, Definitive Healthcare (Feb. 18, 2025), https://www.definitivehc.com/resources/healthcare-insights/top-10-hospitals-using-oracle-cerners-ehr/(last visited Nov. 6, 2025).

[3] Id.

and understands that it has a legal duty to safeguard that data from unauthorized access and disclosure.[4] But Oracle Health failed to meet its duty, leading to a massive data breach in January 2025 that compromised the extremely sensitive financial and medical information entrusted to it by patients and their healthcare providers (the "Data Breach").

2. Oracle Health has released little information about the incident. According to the company, Oracle Health learned on February 20, 2025, that a criminal had accessed its legacy servers and copied sensitive patient data to a remote server. The total number of individuals affected remains unconfirmed, but the patient data stolen includes names, dates of birth, Social Security numbers, medical records, treatment information, insurance data, and other personally identifiable information ("PII") and protected health information ("PHI" and collectively with PII, "Private Information").

3. Despite its knowledge of the Data Breach, Oracle Health has not notified patients that their Private Information was compromised in the Data Breach. Instead, Oracle Health has decided to provide notice only to its affected healthcare provider clients, leaving it to the clients to notify impacted patients.[5]

4. The Healthcare Provider Defendants, like Oracle Health, have a non-delegable duty to protect their patients' Private Information and to promptly notify patients if a breach occurs. Yet even after they received notice of the Data Breach from Oracle Health, the Healthcare Provider Defendants delayed patient notifications.

---

[4] Seema Verma, *Oracle Acquires Cerner to Form Oracle Health: The Future of Healthcare*, Oracle, https://www.oracle.com/health/acquisition-of-cerner-the-future-of-healthcare/ (last visited Nov. 6, 2025).

[5] In October 2025, Oracle Health informed Plaintiffs' counsel that it intended to provide notice to dozens of additional healthcare providers. Oracle Health has stated that as of October 31, 2025, it completed notification to affected healthcare providers. Plaintiffs anticipate that these additional healthcare providers will then send notices to affected patients.

2

5. As a result of the Data Breach and Defendants' failure to provide proper notification, Plaintiffs and Class members face an imminent and substantial risk of fraud, identity theft, and other harms caused by the unauthorized disclosures of their Private Information—a risk that may last for the rest of their lives. Plaintiffs and Class members must devote time, money, and energy to protect themselves, to the extent possible, from these harms.

6. Plaintiffs bring this action on behalf of themselves and all others similarly situated whose Private Information was exposed in the Data Breach. Plaintiffs seek to hold Defendants accountable for their reckless disregard for patient privacy, failure to timely notify affected individuals, and failure to take adequate steps to mitigate the ongoing harm resulting from the Data Breach, all of which injured and continues to injure Plaintiffs and Class members.

7. Through this action, Plaintiffs seek compensatory damages, exemplary damages, statutory damages, equitable relief including improved data security practices, identity protection and credit monitoring services, and all other relief this Court deems just and appropriate to redress Defendants' unlawful conduct and to prevent such harm from recurring.

## PARTIES

### Plaintiffs

*Plaintiff Ronald Mark Tripp, on behalf of the Oracle Health Nationwide Class, the Arkansas Heart Healthcare Provider Nationwide Subclass, and the Arkansas State Subclasses*

8. Plaintiff Ronald Mark Tripp, a citizen and resident of Arkansas, is a patient of Arkansas Heart Hospital, LLC ("Arkansas Heart"), one of Oracle Health's healthcare provider clients, and received treatment from Arkansas Heart prior to the Data Breach. For purposes of this Complaint, Plaintiff Ronald Mark Tripp is an Arkansas Plaintiff, and a Healthcare Provider Plaintiff as to Arkansas Heart.

9. As a condition of receiving medical services, Plaintiff was required to provide his

3

Private Information to Defendants, including but not limited to his name, address, date of birth, Social Security number, financial account information, and medical information, in connection with Oracle Health's services contracted by his healthcare provider.

10. Plaintiff typically takes measures to protect his Private Information and is very careful about sharing his Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. He stores any documents containing his Private Information in a safe and secure location and diligently chooses unique usernames and passwords for his online accounts.

11. In entrusting his Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect his Private Information, including only contracting with third party vendors who would adequately protect his Private Information.

12. Had Plaintiff Tripp known that Defendants did not utilize reasonable data security measures, he would not have entrusted his Private Information to Defendants.

13. At the time of the Data Breach, Oracle Health retained Plaintiff Tripp's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

14. Plaintiff received a Data Breach Notice on or around August 12, 2025, notifying him that his Private Information was improperly accessed by unauthorized third parties, including his name, phone number, email address, date of birth, Social Security number, medical treatment/diagnosis information, prescription information, provider/physician name, dates of services, and/or medical record/patient identification number.

15. As a direct and proximate result of the Data Breach that Defendants caused and

allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

16.     Plaintiff has been and will be forced to expend considerable time and effort including to monitor his accounts and credit files, changing his online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect himself from identity theft and fraudulent misuse of his Private Information, disclosed as a result of the Data Breach.

17.     In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of his Private Information, a form of intangible property that he entrusted to Defendants for the sole purpose of obtaining medical services.

18.     Furthermore, Plaintiff Tripp has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of his Private Information in the Data Breach. Plaintiff fears for his personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of his Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

19.     Moreover, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, as evidenced by the significant increase in spam emails and phone calls using his Private Information that he has received since the Data Breach.

20.     As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as his

5

Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

21. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Plaintiff Laura Elizabeth Tripp, on behalf of the Oracle Health Nationwide Class, the Arkansas Heart Healthcare Provider Nationwide Subclass, and the Arkansas State Subclasses***

22. Plaintiff Laura Elizabeth Tripp, a citizen and resident of Arkansas, is a patient of Arkansas Heart, one of Oracle Health's healthcare provider clients, and received treatment from Arkansas Heart prior to the Data Breach. For purposes of this Complaint, Plaintiff Laura Elizabeth Tripp is an Arkansas Plaintiff, and a Healthcare Provider Plaintiff as to Arkansas Heart.

23. As a condition of receiving medical services, Plaintiff was required to provide her Private Information to Defendants, including but not limited to her name, address, date of birth, Social Security number, financial account information, and medical information, in connection with Oracle Health's services contracted by her healthcare provider.

24. Plaintiff typically takes measures to protect her Private Information and is very careful about sharing her Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. She stores any documents containing her Private Information in a safe and secure location, and diligently chooses unique usernames for her passwords and online accounts.

25. In entrusting her Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private Information, including only contracting with third party vendors who would adequately protect her Private Information.

6

26. Had Plaintiff Tripp known that Defendants did not utilize reasonable data security measures, she would not have entrusted her Private Information to Defendants.

27. At the time of the Data Breach, Oracle Health retained Plaintiff Tripp's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

28. Plaintiff received a Data Breach Notice on or around August 12, 2025, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name, phone number, email address, date of birth, Social Security number, medical treatment/diagnosis information, prescription information, provider/physician name, dates of services, and/or medical record/patient identification number.

29. As a direct and proximate result of the Data Breach, Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

30. Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach.

31. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

32. Furthermore, Plaintiff Tripp has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. Plaintiff fears for her personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of her Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

33. Moreover, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, as evidenced by the significant increase in spam emails and phone calls using her Private Information that she has received since the Data Breach.

34. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

35. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Plaintiff Machelle Bell, on behalf of the Oracle Health Nationwide Class, the Baptist Health Healthcare Provider Nationwide Subclass, and the Florida State Subclasses***

36. Plaintiff Machelle Bell, a citizen and resident of Florida, attempted to receive medical treatment from Baptist Health South Florida ("Baptist Health"), one of Oracle Health's healthcare provider clients, prior to the Data Breach. For purposes of this Complaint, Plaintiff Machelle Bell is a Florida Plaintiff, and a Healthcare Provider Plaintiff as to Baptist Health.

37. As a condition of receiving medical services, Plaintiff was required to provide her Private Information to Defendants, including but not limited to her name, address, date of birth,

8

Social Security number, financial account information, and medical information, in connection with Oracle Health's services contracted by her healthcare provider. After Plaintiff Bell provided her Private Information, she was told that the medical provider she sought to see was not available. As a result, Plaintiff did not receive medical services from Baptist Health.

38. Plaintiff typically takes measures to protect her Private Information and is very careful about sharing her Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. She stores any documents containing her Private Information in a safe and secure location, and diligently chooses unique usernames for her passwords and online accounts.

39. In entrusting her Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private Information, including only contracting with third party vendors who would adequately protect her Private Information.

40. Had Plaintiff Bell known that Defendants did not utilize reasonable data security measures, she would not have entrusted her Private Information to Defendants.

41. At the time of the Data Breach, Oracle Health retained Plaintiff Bell's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

42. Plaintiff received a Data Breach Notice on or around July 25, 2025, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name, Social Security number, and information within patient medical records, such as medical record numbers, doctors, diagnoses, medicines, test results, images, care and treatment.

43. As a direct and proximate result of the Data Breach that Defendants caused and

9

allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

44. Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach.

45. Indeed, Plaintiff's Private Information that was compromised in the Data Breach has already been misused. After the Data Breach, Plaintiff experienced two fraudulent attempts to open accounts in her name as well as fraudulent charges made on her debit card, which required her to request and receive a new card. Additionally, Plaintiff experienced credit inquiries that she did not make. Moreover, Plaintiff has received an increase in spam texts and phone calls using her Private Information that she has received since the Data Breach.

46. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

47. Furthermore, Plaintiff Bell has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. Plaintiff fears for her personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of her Private Information. This goes far beyond allegations of mere worry or

10

inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

48. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

49. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Plaintiff Alyson Brooke Lewis, on behalf of the Oracle Health Nationwide Class, the Baptist Health Healthcare Provider Nationwide Subclass, and the Florida State Subclasses***

50. Plaintiff Alyson Brooke Lewis, a citizen and resident of Florida, is a patient of Baptist Health, one of Oracle Health's healthcare provider clients, and received treatment from Baptist Health prior to the Data Breach. For purposes of this Complaint, Plaintiff Alyson Brooke Lewis is a Florida Plaintiff, and a Healthcare Provider Plaintiff as to Baptist Health.

51. As a condition of receiving medical services, Plaintiff was required to provide her Private Information to Defendants, including but not limited to her name, Social Security Number and medical information, in connection with Oracle Health's services contracted by her healthcare provider.

52. Plaintiff typically takes measures to protect her Private Information and is very careful about sharing her Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. She stores any documents containing her Private Information in a safe and secure location, and diligently chooses unique usernames for her passwords and online accounts.

53. In entrusting her Private Information to Defendants, Plaintiff believed that, as part

11

of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private Information, including only contracting with third party vendors who would adequately protect her Private Information.

54.     Had Plaintiff Lewis known that Defendants did not utilize reasonable data security measures, she would not have entrusted her Private Information to Defendants.

55.     At the time of the Data Breach, Oracle Health retained Plaintiff Lewis' Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

56.     Plaintiff received a Data Breach Notice on or around July 25, 2025, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name, Social Security Number, and information included within patient medical records, such as medical record numbers, doctors, diagnosis, medicines, test results, images, care and treatment.

57.     As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

58.     Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach.

59.     Indeed, Plaintiff's Private Information that was compromised in the Data Breach

12

has already been misused, evidenced by the significant increase in spam texts and phone calls using her Private Information that she has received since the Data Breach.

60. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

61. Furthermore, Plaintiff Lewis has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. Plaintiff fears for her personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of her Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

62. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

63. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Plaintiff Karen Anne Morgan, on behalf of the Oracle Health Nationwide Class, the Albany Med and Glens Falls Healthcare Provider Nationwide Subclasses, and the New York State Subclasses***

64. Plaintiff Karen Anne Morgan, a citizen and resident of New York, is a patient of Glens Falls Hospital ("Glens Falls"), a hospital member of Albany Med Health System ("Albany Med"), one of Oracle Health's healthcare provider clients, and received treatment from Glens Falls prior to the Data Breach. For purposes of this Complaint, Plaintiff Karen Anne Morgan is a New

13

York Plaintiff, and a Healthcare Provider Plaintiff as to Glens Falls and Albany Med.

65.     As a condition of receiving medical services, Plaintiff was required to provide her Private Information to Defendants, including but not limited to her name, Social Security Number and medical information, in connection with Oracle Health's services contracted by her healthcare provider.

66.     Plaintiff typically takes measures to protect her Private Information and is very careful about sharing her Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. She stores any documents containing her Private Information in a safe and secure location, and diligently chooses unique usernames for her passwords and online accounts.

67.     In entrusting her Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private Information, including only contracting with third party vendors who would adequately protect her Private Information.

68.     Had Plaintiff Morgan known that Defendants did not utilize reasonable data security measures, she would not have entrusted her Private Information to Defendants.

69.     At the time of the Data Breach, Oracle Health retained Plaintiff Morgan's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

70.     Plaintiff received a Data Breach Notice on or around August 1, 2025, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name, Social Security Number, and information included within patient medical records, such as medical record numbers, doctors, diagnosis, medicines, test results, images, care and treatment.

14

71. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

72. Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach.

73. Indeed, Plaintiff's Private Information that was compromised in the Data Breach has already been misused. After the Data Breach, Plaintiff had to close her debit card and get a new one, as someone was able to fraudulently withdraw approximately $50 from her account. Plaintiff also received notice from Equifax that someone was trying to access her credit card as well as several obscure texts of someone trying to access it, although these texts did not state who was texting or where the attempts were coming from. Additionally, Plaintiff has experienced a four-point drop in her credit score. Moreover, Plaintiff has suffered a significant increase in spam texts, emails and phone calls using her Private Information that she has received since the Data Breach, receiving approximately 100 scam emails a day.

74. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

75. Furthermore, Plaintiff Morgan has been caused significant worry and feelings of

15

anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. Plaintiff fears for her personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of her Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

76. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

77. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Plaintiff Heidi Holcomb, on behalf of the Oracle Health Nationwide Class, the Albany Med and Glens Falls Healthcare Provider Nationwide Subclasses, and the New York State Subclasses***

78. Plaintiff Heidi Holcomb, a citizen and resident of New York, is a patient of Glens Falls, one of Oracle Health's healthcare provider clients, and received treatment from Glens Falls prior to the Data Breach. For purposes of this Complaint, Plaintiff Heidi Holcomb is a New York Plaintiff, and a Healthcare Provider Plaintiff as to Albany Med and Glens Falls.

79. As a condition of receiving medical services, Plaintiff was required to provide her Private Information to Defendants, including but not limited to her name, Social Security Number and medical information, in connection with Oracle Health's services contracted by her healthcare provider.

80. Plaintiff typically takes measures to protect her Private Information and is very careful about sharing her Private Information. Plaintiff has never knowingly transmitted unsecured

16

Private Information over the internet or other unsecured source. She stores any documents containing her Private Information in a safe and secure location, and diligently chooses unique usernames for her passwords and online accounts.

81. In entrusting her Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private Information, including only contracting with third party vendors who would adequately protect her Private Information.

82. Had Plaintiff Holcomb known that Defendants did not utilize reasonable data security measures, she would not have entrusted her Private Information to Defendants.

83. At the time of the Data Breach, Oracle Health retained Plaintiff Holcomb's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

84. Plaintiff received a Data Breach Notice on or around May or June, 2025, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name, Social Security Number, and medical information.

85. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

86. Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect

17

herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach.

87. Indeed, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, evidenced by a significant increase in spam texts using her Private Information that she has received since the Data Breach, from scammers pretending to be the DMV and EZ-Pass.

88. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

89. Furthermore, Plaintiff Holcomb has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. Plaintiff fears for her personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of her Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

90. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

91. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

18

*Plaintiff Jason Phillip Evans, on behalf of the Oracle Health Nationwide Class, the Mosaic Healthcare Provider Nationwide Subclass, and the Missouri State Subclasses*

92. Plaintiff Jason Phillip Evans, a citizen and resident of Missouri, is a patient of Heartland Regional Medical Center d/b/a Mosaic Life Care ("Mosaic"), one of Oracle Health's healthcare provider clients, and received treatment from Mosaic prior to the Data Breach. For purposes of this Complaint, Plaintiff Jason Phillip Evans is a Missouri Plaintiff, and a Healthcare Provider Plaintiff as to Mosaic.

93. As a condition of receiving medical services, Plaintiff was required to provide his Private Information to Defendants, including but not limited to his name, address, date of birth, Social Security number, financial account information, and medical information, in connection with Oracle Health's services contracted by his healthcare provider.

94. Plaintiff typically takes measures to protect his Private Information and is very careful about sharing his Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. Plaintiff stores any documents containing his Private Information in a safe and secure location, and diligently chooses unique usernames for his passwords and online accounts.

95. In entrusting his Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect his Private Information, including only contracting with third party vendors who would adequately protect his Private Information.

96. Had Plaintiff Evans known that Defendants did not utilize reasonable data security measures, he would not have entrusted his Private Information to Defendants.

97. At the time of the Data Breach, Oracle Health retained Plaintiff Evans' Private Information on its network with inadequate data security and in unencrypted form, causing

19

Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

98. Plaintiff received a Data Breach Notice on or around June 29, 2025, notifying him that his Private Information was improperly accessed by unauthorized third parties, including his name, Social Security number, and medical treatment/diagnosis information.

99. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

100. Plaintiff has been and will be forced to expend considerable time and effort including to monitor his accounts and credit files, changing his online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect himself from identity theft and fraudulent misuse of his Private Information, disclosed as a result of the Data Breach.

101. Indeed, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, evidenced by the two fraudulent attempts to use his card, requiring him to report the charges as fraudulent and be issued a new card.

102. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of his Private Information, a form of intangible property that he entrusted to Defendants for the sole purpose of obtaining medical services.

103. Furthermore, Plaintiff Evans has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of his Private Information in the Data Breach. Plaintiff fears for his personal financial security and uncertainty over the information

20

disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of his Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

104. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as his Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

105. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Plaintiff Kelly Michele Sanders, on behalf of the Oracle Health Nationwide Class, the Mosaic Healthcare Provider Nationwide Subclass, and the Missouri State Subclasses***

106. Plaintiff Kelly Michele Sanders, a citizen and resident of Missouri, is a patient of Mosaic, one of Oracle Health's healthcare provider clients, and received treatment from Mosaic prior to the Data Breach. For purposes of this Complaint, Plaintiff Kelly Michele Sanders is a Missouri Plaintiff, and a Healthcare Provider Plaintiff as to Mosaic.

107. As a condition of receiving medical services, Plaintiff was required to provide her Private Information to Defendants, including but not limited to her name, Social Security Number and medical information, in connection with Oracle Health's services contracted by her healthcare provider.

108. Plaintiff typically takes measures to protect her Private Information and is very careful about sharing her Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. She stores any documents containing her Private Information in a safe and secure location, and diligently chooses unique

21

usernames for her passwords and online accounts.

109. In entrusting her Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private Information, including only contracting with third party vendors who would adequately protect her Private Information.

110. Had Plaintiff Sanders known that Defendants did not utilize reasonable data security measures, she would not have entrusted her Private Information to Defendants.

111. At the time of the Data Breach, Oracle Health retained Plaintiff Sanders' Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

112. Plaintiff received a Data Breach Notice on or around June 27, 2025, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name, Social Security Number, and medical information.

113. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

114. Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach.

115. Indeed, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, evidenced by a significant increase in spam texts and phone calls using her Private Information that she has received since the Data Breach.

116. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

117. Furthermore, Plaintiff Sanders has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. Plaintiff fears for her personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of her Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

118. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

119. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Plaintiff Karen Sue Adams, on behalf of the Oracle Health Nationwide Class, the Union Health Healthcare Provider Nationwide Subclass, and the Indiana State Subclasses***

120. Plaintiff Karen Sue Adams, a citizen and resident of Indiana, is a patient of Union Health System, Inc. ("Union Health"), one of Oracle Health's healthcare provider clients, and received treatment from Union Health prior to the Data Breach. For purposes of this Complaint,

23

Plaintiff Karen Sue Adams is an Indiana Plaintiff, and a Healthcare Provider Plaintiff as to Union Health.

121. As a condition of receiving medical services, Plaintiff was required to provide her Personal Information to Defendants, including but not limited to her name, Social Security Number and medical information, in connection with Oracle Health's services contracted by her healthcare provider.

122. Plaintiff typically takes measures to protect her Private Information and is very careful about sharing her Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. She stores any documents containing her Private Information in a safe and secure location, and diligently chooses unique usernames for her passwords and online accounts.

123. In entrusting her Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private Information, including only contracting with third party vendors who would adequately protect her Private Information.

124. Had Plaintiff Adams known that Defendants did not utilize reasonable data security measures, she would not have entrusted her Private Information to Defendants.

125. At the time of the Data Breach, Oracle Health retained Plaintiff Adams' Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

126. Plaintiff received a Data Breach Notice on or around April 21, 2025, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name, Social Security Number, and medical information.

24

127. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

128. Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach.

129. Indeed, Plaintiff's Private Information that was compromised in the Data Breach has already been misused. In or around July of 2025, Plaintiff received a notice in the mail that she had been turned down for a housing mortgage that she never applied for. The letter was from USC Bank, which she had never heard of. Additionally, Plaintiff has experienced a significant increase in spam texts and phone calls using her Private Information that she has received since the Data Breach.

130. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

131. Furthermore, Plaintiff Adams has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. Plaintiff fears for her personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized

25

disclosure of her Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

132. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

133. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Plaintiff Jill Renee Carnahan, on behalf of the Oracle Health Nationwide Class, the Union Health Healthcare Provider Nationwide Subclass, and the Indiana State Subclasses***

134. Plaintiff Jill Renee Carnahan, a citizen and resident of Indiana, is a patient of Union Health, one of Oracle Health's healthcare provider clients, and received treatment from Union Health prior to the Data Breach. For purposes of this Complaint, Plaintiff Jill Renee Carnahan is an Indiana Plaintiff, and a Healthcare Provider Plaintiff as to Union Health.

135. As a condition of receiving medical services, Plaintiff was required to provide her Private Information to Defendants, including but not limited to her name, Social Security Number and medical information, in connection with Oracle Health's services contracted by her healthcare provider.

136. Plaintiff typically takes measures to protect her Private Information and is very careful about sharing her Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. She stores any documents containing her Private Information in a safe and secure location, and diligently chooses unique usernames for her passwords and online accounts.

26

137. In entrusting her Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private Information, including only contracting with third party vendors who would adequately protect her Private Information.

138. Had Plaintiff Carnahan known that Defendants did not utilize reasonable data security measures, she would not have entrusted her Private Information to Defendants.

139. At the time of the Data Breach, Oracle Health retained Plaintiff Carnahan's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

140. Plaintiff received a Data Breach Notice on or around April 21, 2025, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name, Social Security Number, driver's license number, date of birth, insurance information and medical information.

141. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

142. Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach.

27

143. Indeed, Plaintiff's Private Information that was compromised in the Data Breach has already been misused. On July 25th, 2025, Ms. Carnahan received a notification from Experian stating that her SSN was found on the dark web. On August 6, 2025, she received a notification from Experian indicating that "Elements Financial" had obtained a copy of her credit report, although Plaintiff has never been associated with Elements Financial in any capacity. On August 11, 2025, she received another Experian notification showing that "Western Star Auto" had also accessed her credit report, even though Plaintiff has never applied for credit with, or even heard of, Western Star Auto. The inquiry appeared to be related to a vehicle purchase or financing, even though Plaintiff had no involvement in such a transaction. Furthermore, Plaintiff has experienced a significant increase in spam texts and phone calls using her Private Information that she has received since the Data Breach, including phone calls informing her that she has won a prize, such as a free iPad, if she pays for shipping and handling as well as numerous spam emails each week purporting to be from the FBI, the Department of the Treasury, McAfee Antivirus, and Regions Bank.

144. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

145. Furthermore, Plaintiff Carnahan has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. Plaintiff fears for her personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of her Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated

28

and addressed by law.

146. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

147. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

### Plaintiff Shannon Smith, on behalf of the Oracle Health Nationwide Class, the Union Health Healthcare Provider Nationwide Subclass, and the Indiana State Subclasses

148. Plaintiff Shannon Smith, a citizen and resident of Indiana, is a patient of Union Health, one of Oracle Health's healthcare provider clients, and received treatment from Union Health prior to the Data Breach. For purposes of this Complaint, Plaintiff Shannon Smith is an Indiana Plaintiff, and a Healthcare Provider Plaintiff as to Union Health.

149. As a condition of receiving medical services, Plaintiff was required to provide his Private Information to Defendants, including but not limited to his name, Social Security Number and medical information, in connection with Oracle Health's services contracted by his healthcare provider.

150. Plaintiff typically takes measures to protect his Private Information and is very careful about sharing his Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. He stores any documents containing his Private Information in a safe and secure location, and diligently chooses unique usernames for his passwords and online accounts.

151. In entrusting his Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained

29

reasonable security and practices to protect his Private Information, including only contracting with third party vendors who would adequately protect his Private Information.

152. Had Plaintiff Smith known that Defendants did not utilize reasonable data security measures, he would not have entrusted his Private Information to Defendants.

153. At the time of the Data Breach, Oracle Health retained Plaintiff Smith's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

154. Plaintiff received a Data Breach Notice on or around April 29, 2025, notifying him that his Private Information was improperly accessed by unauthorized third parties, including his name, Social Security Number, and medical information.

155. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

156. Plaintiff has been and will be forced to expend considerable time and effort including to monitor his accounts and credit files, changing his online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect himself from identity theft and fraudulent misuse of his Private Information, disclosed as a result of the Data Breach.

157. Indeed, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, evidenced by a significant increase in spam texts and phone calls using his Private Information that he has received since the Data Breach.

158. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of his Private Information, a form of intangible property that he entrusted to Defendants for the sole purpose of obtaining medical services.

159. Furthermore, Plaintiff Smith has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of his Private Information in the Data Breach. Plaintiff fears for his personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of his Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

160. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as his Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

161. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Plaintiff James Taylor, on behalf of the Oracle Health Nationwide Class, the Union Health Healthcare Provider Nationwide Subclass, and the Indiana State Subclasses***

162. Plaintiff James Taylor, a citizen and resident of Indiana, is a patient of Union Health, one of Oracle Health's healthcare provider clients, and received treatment from Union Health prior to the Data Breach. For purposes of this Complaint, Plaintiff James Taylor is an Indiana Plaintiff, and a Healthcare Provider Plaintiff as to Union Health.

163. As a condition of receiving medical services, Plaintiff was required to provide his Private Information to Defendants, including but not limited to his name, Social Security Number

31

and medical information, in connection with Oracle Health's services contracted by his healthcare provider.

164. Plaintiff typically takes measures to protect his Private Information and is very careful about sharing his Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. He stores any documents containing her Private Information in a safe and secure location, and diligently chooses unique usernames for his passwords and online accounts.

165. In entrusting his Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect his Private Information, including only contracting with third party vendors who would adequately protect his Private Information.

166. Had Plaintiff Taylor known that Defendants did not utilize reasonable data security measures, he would not have entrusted his Private Information to Defendants.

167. At the time of the Data Breach, Oracle Health retained Plaintiff Taylor's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

168. Plaintiff received a Data Breach Notice on or around April 21, 2025, notifying him that his Private Information was improperly accessed by unauthorized third parties, including his name, Social Security Number, and medical information.

169. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal,

32

fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

170. Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach.

171. Indeed, Plaintiff's Private Information that was compromised in the Data Breach has already been misused. Plaintiff received a notification from LifeLock that his information is on the dark web. Plaintiff also received 4 alerts from LifeLock over the course of summer to early fall of 2025 asking if he opened any new accounts: of these four fraudulent attempts, one concerned a bank account, the other three were credit cards. Additionally, Plaintiff experienced a fraudulent attempt in June of 2025 when someone tried to use his debit card to buy diesel fuel, and a fraudulent attempt to buy a watch with his debit card in August of 2025. Moreover, Plaintiff has experienced a significant increase in spam texts and phone calls using his Private Information that he has received since the Data Breach.

172. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of his Private Information, a form of intangible property that he entrusted to Defendants for the sole purpose of obtaining medical services.

173. Furthermore, Plaintiff Taylor has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of his Private Information in the Data Breach. Plaintiff fears for his personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of her Private Information. This goes far beyond allegations of mere worry or

33

inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

174. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as his Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

175. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

### *Plaintiff Tracy Wright, on behalf of the Oracle Health Nationwide Class, the LifeBridge Health Healthcare Provider Nationwide Subclass, and the Maryland State Subclasses*

176. Plaintiff Tracy Wright, a citizen and resident of Maryland, is a patient of LifeBridge Health, Inc., ("LifeBridge Health"), one of Oracle Health's healthcare provider clients, and received treatment from LifeBridge Health prior to the Data Breach. For purposes of this Complaint, Plaintiff Tracy Wright is a Maryland Plaintiff, and a Healthcare Provider Plaintiff as to LifeBridge Health.

177. As a condition of receiving medical services, Plaintiff was required to provide her Private Information to Defendants, including but not limited to her name, address, date of birth, Social Security number, financial account information, and medical information, in connection with Oracle Health's services contracted by her healthcare provider.

178. Plaintiff typically takes measures to protect her Private Information and is very careful about sharing her Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. She stores any documents containing her Private Information in a safe and secure location, and diligently chooses unique usernames for her passwords and online accounts.

34

179. In entrusting her Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private Information, including only contracting with third party vendors who would adequately protect her Private Information.

180. Had Plaintiff Wright known that Defendants did not utilize reasonable data security measures, she would not have entrusted her Private Information to Defendants.

181. At the time of the Data Breach, Oracle Health retained Plaintiff Wright's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

182. Plaintiff received a Data Breach Notice on or around August 12, 2025, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name, Social Security number, and medical treatment/diagnosis information.

183. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

184. Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach.

185. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the

value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

186. Furthermore, Plaintiff Wright has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. Plaintiff fears for her personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of her Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

187. Moreover, Plaintiff's Private Information that was compromised in the Data Breach has already been misused. Plaintiff received a "was this you?" notification that was not her. Additionally, Plaintiff has experienced a significant increase in spam emails and phone calls using her Private Information that she has received since the Data Breach.

188. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

189. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Plaintiff Marlene King, on behalf of the Oracle Health Nationwide Class, the Albany Med and Glens Falls Healthcare Provider Nationwide Subclasses, and the New York State Subclasses***

190. Plaintiff Marlene King, a citizen and resident of New York, is a patient of Glens Falls, one of Oracle Health's healthcare provider clients, and received treatment from Glens Falls prior to the Data Breach. For purposes of this Complaint, Plaintiff Marlene King is a New York

36

Plaintiff, and a Healthcare Provider Plaintiff as to Albany Med and Glens Falls

191. As a condition of receiving medical services, Plaintiff was required to provide her Private Information to Defendants, including but not limited to her name, Social Security Number, and medical information, in connection with Oracle Health's services contracted by her healthcare provider.

192. Plaintiff typically takes measures to protect her Private Information and is very careful about sharing her Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. She stores any documents containing her Private Information in a safe and secure location, and diligently chooses unique usernames for her passwords and online accounts.

193. In entrusting her Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private Information, including only contracting with third party vendors who would adequately protect her Private Information.

194. Had Plaintiff King known that Defendants did not utilize reasonable data security measures, she would not have entrusted his Private Information to Defendants.

195. At the time of the Data Breach, Oracle Health retained Plaintiff King's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

196. Plaintiff received a Data Breach Notice on or around August 1, 2025, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name, Social Security number, and information included within patient medical records, such as medical record numbers, doctors, diagnoses, medicines, test results, images, care and treatment.

197. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

198. Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach.

199. Indeed, Plaintiff's Private Information that was compromised in the Data Breach has already been misused. In the past year, Plaintiff King was forced to freeze her credit and has been forced to cancel and get new cards approximately 3 times due to fraudulent charges occurring in California, and incurred a $10 late fee as a result of failed automatic payments tied to her compromised accounts. Moreover, such misuse is also evidenced by the significant increase in spam emails and phone calls using her Private Information, including her medical information, that she has received since the Data Breach.

200. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

201. Furthermore, Plaintiff King has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. Plaintiff fears for her personal financial security and uncertainty over the information

38

disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of her Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

202. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

203. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

### *Plaintiff Paula Sheward, on behalf of the Oracle Health Nationwide Class, the Tallahassee Memorial Healthcare Provider Nationwide Subclass, and the Florida State Subclasses*

204. Plaintiff Paula Sheward, a citizen and resident of Florida, is a patient of Tallahassee Memorial Healthcare, Inc. ("Tallahassee Memorial"), one of Oracle Health's healthcare provider clients, and received treatment from Tallahassee Memorial prior to the Data Breach. For purposes of this Complaint, Plaintiff Paula Sheward is a Florida Plaintiff, and a Healthcare Provider Plaintiff as to Tallahassee Memorial.

205. As a condition of receiving medical services, Plaintiff was required to provide her Private Information to Defendants, including but not limited to her name, Social Security number, and medical information, in connection with Oracle Health's services contracted by her healthcare provider.

206. Plaintiff typically takes measures to protect her Private Information and is very careful about sharing her Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. She stores any documents

containing her Private Information in a safe and secure location, and diligently chooses unique usernames for her passwords and online accounts.

207. In entrusting her Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private Information, including only contracting with third party vendors who would adequately protect her Private Information.

208. Had Plaintiff Sheward known that Defendants did not utilize reasonable data security measures, she would not have entrusted his Private Information to Defendants.

209. At the time of the Data Breach, Oracle Health retained Plaintiff Sheward's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

210. Plaintiff received a Data Breach Notice on or around June 13, 2025, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name, Social Security number, and information included within patient medical records, such as medical record numbers, doctors, diagnoses, medicines, test results, images, care and treatment.

211. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

212. Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect

40

herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach.

213. Indeed, Plaintiff's Private Information that was compromised in the Data Breach has already been misused. Approximately three months ago, Plaintiff experienced a fraudulent transaction in the amount of $800 made at Home Depot. Moreover, such misuse is also evidenced by the significant increase in spam emails and phone calls using her Private Information that she has received since the Data Breach.

214. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

215. Furthermore, Plaintiff Sheward has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. Plaintiff fears for her personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of her Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

216. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

217. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

41

*Plaintiff Dillon Greeno, on behalf of the Oracle Health Nationwide Class, the Albany Med and Glens Falls Healthcare Provider Nationwide Subclasses, and the New York State Subclasses*

218. Plaintiff Dillon Greeno, a citizen and resident of New York, is a patient of Albany Med, one of Oracle Health's healthcare provider clients, and received treatment from Albany prior to the Data Breach. For purposes of this Complaint, Plaintiff Dillon Greeno is a New York Plaintiff, and a Healthcare Provider Plaintiff as to Albany Med and Glens Falls.

219. As a condition of receiving medical services, Plaintiff was required to provide his Private Information to Defendants, including but not limited to his name, Social Security and medical information, in connection with Oracle Health's services contracted by his healthcare provider.

220. Plaintiff typically takes measures to protect his Private Information and is very careful about sharing his Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. He stores any documents containing his Private Information in a safe and secure location, and diligently chooses unique usernames for his passwords and online accounts.

221. In entrusting his Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect his Private Information, including only contracting with third party vendors who would adequately protect his Private Information.

222. Had Plaintiff Greeno known that Defendants did not utilize reasonable data security measures, he would not have entrusted his Private Information to Defendants.

223. At the time of the Data Breach, Oracle Health retained Plaintiff Greeno's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

42

224. Plaintiff received a Data Breach Notice on or around August 1, 2025, notifying him that his Private Information was improperly accessed by unauthorized third parties, including his name, Social Security number, and information included within patient medical records, such as medical record numbers, doctors, diagnoses, medicines, test results, images, care and treatment.

225. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale. Plaintiff has received notices that some of his Private Information, including but not limited to, his credit card number, name, and address, is already on the dark web.

226. Plaintiff has been and will be forced to expend considerable time and effort including to monitor his accounts and credit files, changing his online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect himself from identity theft and fraudulent misuse of his Private Information, disclosed as a result of the Data Breach.

227. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of his Private Information, a form of intangible property that he entrusted to Defendants for the sole purpose of obtaining medical services.

228. Furthermore, Plaintiff Greeno has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of his Private Information in the Data Breach. Plaintiff fears for his personal financial security and uncertainty over the information disclosed in the Data Breach, including his sensitive medical diagnoses, and is experiencing

43

emotional distress over the unauthorized disclosure of his Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

229. Moreover, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, evidenced by the significant increase in spam emails and phone calls using his Private Information that he has received since the Data Breach, as well as email notifications that some of his Private Information is on the dark web.

230. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as his Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

231. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Plaintiff Kim Delaney, on behalf of the Oracle Health Nationwide Class, the Mosaic Healthcare Provider Nationwide Subclass, and the Missouri State Subclasses***

232. Plaintiff Kim Delaney, a citizen and resident of Missouri, is a patient of Mosaic, one of Oracle Health's healthcare provider clients, and received treatment from Mosaic prior to the Data Breach. For purposes of this Complaint, Plaintiff Kim Delaney is a Missouri Plaintiff, and a Healthcare Provider Plaintiff as to Mosaic.

233. As a condition of receiving medical services, Plaintiff was required to provide her Private Information to Defendants, including but not limited to her name, Social Security number, and medical information, in connection with Oracle Health's services contracted by her healthcare provider.

234. Plaintiff typically takes measures to protect her Private Information and is very

careful about sharing her Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. She stores any documents containing her Private Information in a safe and secure location, and diligently chooses unique usernames for her passwords and online accounts.

235. In entrusting her Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private Information, including only contracting with third party vendors who would adequately protect her Private Information.

236. Had Plaintiff Delaney known that Defendants did not utilize reasonable data security measures, she would not have entrusted his Private Information to Defendants.

237. At the time of the Data Breach, Oracle Health retained Plaintiff Delaney's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

238. Plaintiff received a Data Breach Notice on or around June 27, 2025, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name, date of birth, Social Security number, driver's license number, treating physician, dates of service, medication information, insurance information and treatment and/or diagnostic information.

239. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

240. Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach.

241. Indeed, Plaintiff's Private Information that was compromised in the Data Breach has already been misused. Plaintiff 's bank has been notifying her of fraud on her debit card every 2-3 months and she has had to replace it several times within this year—including most recently approximately on September 8, 2025 and October 20, 2025. Moreover, such misuse is also evidenced by the significant increase in spam texts and phone calls using her Private Information that she has received since the Data Breach.

242. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

243. Furthermore, Plaintiff Delaney has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. Plaintiff fears for her personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of her Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

244. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be

46

changed.

245. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Plaintiff Gerri Woolard, on behalf of the Oracle Health Nationwide Class, the Union Health Healthcare Provider Nationwide Subclass, and the Indiana State Subclasses***

246. Plaintiff Gerri Woolard, a citizen and resident of Indiana, is a patient of Union Health, one of Oracle Health's healthcare provider clients, and received treatment from Union Health prior to the Data Breach. For purposes of this Complaint, Plaintiff Gerri Woolard is an Indiana Plaintiff, and a Healthcare Provider Plaintiff as to Union Health.

247. As a condition of receiving medical services, Plaintiff was required to provide her Private Information to Defendants, including but not limited to her name, address, date of birth, Social Security number, financial account information, and medical information, in connection with Oracle Health's services contracted by his healthcare provider.

248. Plaintiff typically takes measures to protect her Private Information and is very careful about sharing his Private Information. Plaintiff has never knowingly transmitted Private Information over the internet or other unsecured source. He stores any documents containing his Private Information in a safe and secure location, and diligently chooses unique usernames for his passwords and online accounts.

249. In entrusting her Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect his Private Information, including only contracting with third party vendors who would adequately protect his Private Information.

250. Had Plaintiff Woolard known that Defendants did not utilize reasonable data

47

security measures, she would not have entrusted her Private Information to Defendants.

251. At the time of the Data Breach, Oracle Health retained Plaintiff Woolard's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

252. Plaintiff received a Data Breach Notice on or around April 21, 2025, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name, phone number, email address, date of birth, Social Security number, medical treatment/diagnosis information, prescription information, provider/physician name, dates of services, and/or medical record/patient identification number.

253. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

254. Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach.

255. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

256. Furthermore, Plaintiff Woolard has been caused significant worry and feelings of

48

anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. Plaintiff fears for her personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of her Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

257. Moreover, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, evidenced by the significant increase in spam emails and phone calls using his Private Information that she has received since the Data Breach.

258. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

259. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Plaintiff Jerry Walker, on behalf of the Oracle Health Nationwide Class, the Sapphire Community Health Healthcare Provider Nationwide Subclass, and the Montana State Subclasses***

260. Plaintiff Jerry Walker, a citizen and resident of Montana, is a former patient of Sapphire Community Health, Inc., ("Sapphire"), one of Oracle Health's healthcare provider clients, and received treatment from Sapphire prior to the Data Breach. For purposes of this Complaint, Plaintiff Jerry Walker is a Montana Plaintiff, and a Healthcare Provider Plaintiff as to Sapphire.

261. As a condition of receiving medical services, Plaintiff was required to provide his Private Information to Defendants, including but not limited to his name, address, date of birth,

Social Security number, financial account information, and medical information, in connection with Oracle Health's services contracted by his healthcare provider.

262. Plaintiff typically takes measures to protect his Private Information and is very careful about sharing his Private Information. Plaintiff has never knowingly transmitted Private Information over the internet or other unsecured source. He stores any documents containing his Private Information in a safe and secure location, and diligently chooses unique usernames for his passwords and online accounts.

263. In entrusting his Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect his Private Information, including only contracting with third party vendors who would adequately protect his Private Information.

264. Had Plaintiff Walker known that Defendants did not utilize reasonable data security measures, he would not have entrusted his Private Information to Defendants.

265. At the time of the Data Breach, Oracle Health retained Plaintiff Walker's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

266. Plaintiff received a Data Breach Notice on or around October 22, 2025, notifying him that his Private Information was improperly accessed by unauthorized third parties, including his name, phone number, email address, date of birth, Social Security number, medical treatment/diagnosis information, prescription information, provider/physician name, dates of services, and/or medical record/patient identification number.

267. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages,

50

including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

268. Plaintiff has been and will be forced to expend considerable time and effort including to monitor his accounts and credit files, changing his online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect himself from identity theft and fraudulent misuse of his Private Information, disclosed as a result of the Data Breach.

269. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of his Private Information, a form of intangible property that he entrusted to Defendants for the sole purpose of obtaining medical services.

270. Furthermore, Plaintiff Walker has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of his Private Information in the Data Breach. Plaintiff fears for his personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of his Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

271. Moreover, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, evidenced by the significant increase in spam emails and phone calls using his Private Information that he has received since the Data Breach.

272. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as his Private Information compromised in the Data Breach includes sensitive data that cannot be

changed.

273. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Plaintiff Lois Melvin, on behalf of the Oracle Health Nationwide Class, the Union Health Healthcare Provider Nationwide Subclass, and the Indiana State Subclasses***

274. Plaintiff Lois Melvin, a citizen and resident of Indiana, is a patient of Union Health, one of Oracle Health's healthcare provider clients, and received treatment from Union Health prior to the Data Breach. For purposes of this Complaint, Plaintiff Lois Melvin is an Indiana Plaintiff, and a Healthcare Provider Plaintiff as to Union Health.

275. As a condition of receiving medical services, Plaintiff was required to provide her Private Information to Defendants, including but not limited to her name, address, date of birth, Social Security number, financial account information, and medical information, in connection with Oracle Health's services contracted by her healthcare provider.

276. Plaintiff typically takes measures to protect her Private Information and is very careful about sharing her Private Information. Plaintiff has never knowingly transmitted Private Information over the internet or other unsecured source. She stores any documents containing her Private Information in a safe and secure location, and diligently chooses unique usernames for her passwords and online accounts.

277. In entrusting her Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private Information, including only contracting with third party vendors who would adequately protect her Private Information.

278. Had Plaintiff Melvin known known that Defendants did not utilize reasonable data

52

security measures, she would not have entrusted his Private Information to Defendants.

279. At the time of the Data Breach, Oracle Health retained Plaintiff Melvin's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

280. Plaintiff received a Data Breach Notice on or around April 21, 2025, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name, phone number, email address, date of birth, Social Security number, medical treatment/diagnosis information, prescription information, provider/physician name, dates of services, and/or medical record/patient identification number.

281. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

282. Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach.

283. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

284. Furthermore, Plaintiff Melvin has been caused significant worry and feelings of

anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. Plaintiff fears for her personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of her Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

285. Moreover, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, evidenced by the significant increase in spam emails and phone calls using her Private Information that she has received since the Data Breach.

286. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

287. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Plaintiff Christian Magliozzi, on behalf of the Oracle Health Nationwide Class, the Huntington Health Healthcare Provider Nationwide Subclass, and the California State Subclasses***

288. Plaintiff Christian Magliozzi, a citizen and resident of California, is a patient of Huntington Health Services, LLC ("Huntington"), one of Oracle Health's healthcare provider clients, and received treatment from Huntington prior to the Data Breach. For purposes of this Complaint, Plaintiff Christian Magliozzi is a California Plaintiff, and a Healthcare Provider Plaintiff as to Huntington.

289. As a condition of receiving medical services, Plaintiff was required to provide his Private Information to Defendants, including but not limited to his name, address, date of birth,

Social Security number, financial account information, and medical information, in connection with Oracle Health's services contracted by his healthcare provider.

290. Plaintiff typically takes measures to protect his Private Information and is very careful about sharing his Private Information. Plaintiff has never knowingly transmitted Private Information over the internet or other unsecured source. He stores any documents containing his Private Information in a safe and secure location, and diligently chooses unique usernames for his passwords and online accounts.

291. In entrusting his Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect his Private Information, including only contracting with third party vendors who would adequately protect his Private Information.

292. Had Plaintiff Magliozzi known that Defendants did not utilize reasonable data security measures, he would not have entrusted his Private Information to Defendants.

293. At the time of the Data Breach, Oracle Health retained Plaintiff Magliozzi's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

294. Plaintiff received a Data Breach Notice on or around October 17, 2025, notifying him that his Private Information was improperly accessed by unauthorized third parties, including his name, phone number, email address, date of birth, Social Security number, medical treatment/diagnosis information, prescription information, provider/physician name, dates of services, and/or medical record/patient identification number.

295. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages,

including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

296. Plaintiff has been and will be forced to expend considerable time and effort including to monitor his accounts and credit files, changing his online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect himself from identity theft and fraudulent misuse of his Private Information, disclosed as a result of the Data Breach.

297. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of his Private Information, a form of intangible property that he entrusted to Defendants for the sole purpose of obtaining medical services.

298. Furthermore, Plaintiff Magliozzi has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of his Private Information in the Data Breach. Plaintiff fears for his personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of his Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a data breach victim that is contemplated and addressed by law.

299. Moreover, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, evidenced by the significant increase in spam emails and phone calls using his Private Information that he has received since the Data Breach.

300. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as his Private Information compromised in the Data Breach includes sensitive data that cannot be

changed.

301.    Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Plaintiff Rebecca D. Fox, on behalf of the Oracle Health Nationwide Class, the Oracle Health New York State Subclass, and the Huntington Health Healthcare Provider Nationwide Subclass***

302.    Plaintiff Rebecca D. Fox is citizen and resident of New York. She is a former patient of Huntington, one of Oracle Health's former healthcare provider clients, and she received treatment from Huntington prior to the Data Breach. For purposes of this Complaint, Plaintiff Rebecca D. Fox is a New York Plaintiff, and a Healthcare Provider Plaintiff as to Huntington.

303.    As a condition of receiving medical services, Plaintiff was required to provide her Personal Information to Defendants, including but not limited to her name, Social Security Number and medical information, in connection with Oracle Health's services contracted by her healthcare provider.

304.    Plaintiff typically takes measures to protect her Personal Information and is very careful about sharing her Personal Information. Plaintiff has never knowingly transmitted unsecured Personal Information over the internet or other unsecured source. She stores any documents containing her Personal Information in a safe and secure location.

305.    In entrusting her Personal Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private Information, including only contracting with third party vendors who would adequately protect her Private Information.

306.    Had Plaintiff known that Defendants did not utilize reasonable data security measures, she would not have entrusted her Personal Information to Defendants.

57

307. At the time of the Data Breach, Oracle Health retained Plaintiff's Personal Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Personal Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

308. Plaintiff received a Data Breach Notice on or around October 17, 2025, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name, Social Security number, and information included within patient medical records, such as medical record numbers, doctors, diagnoses, medicines, test results, images, care and treatment.

309. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Personal Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

310. Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Personal Information, disclosed as a result of the Data Breach.

311. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Personal Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

312. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Personal Information compromised in the Data Breach includes sensitive data that cannot be changed.

58

313. Furthermore, Plaintiff's sensitive Personal Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Plaintiff German Rangel, on behalf of the Oracle Health Nationwide Class, the Oracle Health Arizona State Subclass, and the Huntington Health Healthcare Provider Nationwide Subclass***

314. Plaintiff German Rangel is a citizen and resident of Arizona and a former patient of Huntington, one of Oracle Health's former healthcare provider clients, and received treatment from Huntington prior to the Data Breach. For purposes of this Complaint, Plaintiff German Rangel is an Arizona Plaintiff, and a Healthcare Provider Plaintiff as to Huntington.

315. As a condition of receiving medical services, Plaintiff was required to provide his Personal Information to Defendants, including but not limited to his name, Social Security Number and medical information, in connection with Oracle Health's services contracted by his healthcare provider.

316. Plaintiff typically takes measures to protect his Personal Information and is very careful about sharing his Personal Information. Plaintiff has never knowingly transmitted unsecured Personal Information over the internet or other unsecured source. He stores any documents containing his Personal Information in a safe and secure location.

317. In entrusting his Personal Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect his Private Information, including only contracting with third party vendors who would adequately protect his Private Information.

318. Had Plaintiff known that Defendants did not utilize reasonable data security measures, he would not have entrusted his Personal Information to Defendants.

319. At the time of the Data Breach, Oracle Health retained Plaintiff's Personal

59

Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Personal Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

320.    Plaintiff received a Data Breach Notice on or around October 17, 2025, notifying him that his Private Information was improperly accessed by unauthorized third parties, including his name, Social Security Number, and information included within patient medical records, such as medical record numbers, doctors, diagnosis, medicines, test results, images, care and treatment.

321.    As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Personal Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

322.    Plaintiff has been and will be forced to expend considerable time and effort including to monitor his accounts and credit files, changing his online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect himself from identity theft and fraudulent misuse of his Personal Information, disclosed as a result of the Data Breach.

323.    Indeed, Plaintiff's Personal Information that was compromised in the Data Breach has already been misused, evidenced by the significant increase in spam texts and phone calls using his Personal Information that he has received since the Data Breach.

324.    In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of his Personal Information, a form of intangible property that he entrusted to Defendants for the sole purpose of obtaining medical services.

325. Furthermore, Plaintiff has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of his Personal Information in the Data Breach. Plaintiff fears for his personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of his Personal Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

326. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as his Personal Information compromised in the Data Breach includes sensitive data that cannot be changed.

327. Furthermore, Plaintiff's sensitive Personal Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

### Defendants

328. Defendant Cerner Corporation d/b/a Oracle Health is a Delaware corporation with its headquarters and principal place of business at 8779 Hillcrest Road, Kansas City, MO 64138.

329. Each of the Healthcare Provider Defendants, listed below and as later added by Short Form Complaint or amendment, contracted with Defendant Oracle Health as a business associate for Oracle Health to provide such Healthcare Provider Defendants with electronic health record services.

330. Defendant Albany Med is a New York corporation with its principal place of business at 43 New Scotland Avenue, Albany, New York 12208.

61

331. Defendant Arkansas Heart is the fictitious name of MedCath of Little Rock, LLC and is a North Carolina limited liability company with its principal place of business Little Rock, Arkansas.

332. Defendant Baptist Health is a Florida corporation with its principal place of business at 6855 Red Road, Suite 600, Coral Gables, Florida 33143.

333. Defendant Glens Falls is a New York corporation with its principal place of business at 100 Park Street, Glens Falls, New York 12801.

334. Defendant Mosaic is a Missouri corporation with its principal place of business at 5325 Faraon Street, St. Joseph, Missouri 64506.

335. Defendant Tallahassee Memorial is a Florida corporation with a principal place of business at 1300 Miccosukee Road, Tallahassee, Florida 32308.

336. Defendant Union Health is an Indiana corporation with its principal place of business at 1606 N. 7th Street, Terre Haute, Indiana 47804.

337. Defendant LifeBridge Health is a Maryland corporation with its principal place of business at 10090 Red Run Boulevard, Owings Mills, Maryland 21117.

338. Defendant Sapphire Community Health ("Sapphire") is a Montana corporation with its principal place of business at 316 North 3rd Street, Hamilton, MT 59840.

339. Defendant Huntington is a California limited liability company with its principal place of business at 9025 Wilshire Blvd., Suite 304, Beverly Hills, CA 90211.

340. Defendants Albany Med, Arkansas Heart, Baptist Health, Glens Falls, Mosaic, Tallahassee Memorial, Union Health, LifeBridge Health, Sapphire, and Huntington are collectively referred to as "Healthcare Provider Defendants."

## JURISDICTION AND VENUE

341. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (i) there are at least 100 Class members, (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of costs and interest, and (iii) at least one Class member is diverse in citizenship from at least one defendant.

342. This Court has general personal jurisdiction over Defendants Oracle Health and Mosaic because each maintains its principal place of business in Missouri and regularly conducts business in the state. This Court has personal jurisdiction over Defendants Albany Med, Arkansas Heart, Baptist Health, Glens Falls, and Tallahassee Memorial as they consented to jurisdiction in the Western District of Missouri under 28 U.S.C. § 1404(a). This Court has general personal jurisdiction over all Healthcare Provider Defendants because they transact business and contract for goods or services in this district. Alternatively, this Court has specific personal jurisdiction over all Healthcare Provider Defendants because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this district. Additionally, the exercise of personal jurisdiction is proper because all Healthcare Provider Defendants have purposefully availed themselves of the privileges of conducting business within this district and have established sufficient minimum contacts within the district.

343. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because (i) a substantial part of the events or omissions giving rise to these claims occurred in this district, (ii) Oracle Health, through its predecessor, Cerner Corporation, maintains substantial operations in this district, (iii) the conduct relevant to this action occurred in part within this district, and (iv) Defendants have harmed Class members residing in this district.

# FACTUAL ALLEGATIONS

## Defendants Collect, Store, and Improperly Maintain Patients' Private Information

344. In 2022, Oracle Corporation acquired EHR giant Cerner Corporation for $28.3 billion, marking a major expansion into healthcare.[6] After the acquisition, Oracle Corporation rebranded Cerner as Oracle Health and began migrating its systems into Oracle Health's cloud-based infrastructure.

345. Today, Oracle Health provides health information technology solutions, including an EHR system, to healthcare providers across the country. Healthcare Provider Defendants either currently or previously used Oracle Health as their EHR system vendor.

346. An EHR system, such as Oracle Health's system, is a software and data storage platform that allows healthcare providers to create, store, and manage patient's health-related information.[7] It contains extensive patient data, including (1) personal identifiers such as name, date of birth, address, phone number, email address, Social Security number, and health insurance and billing information and (2) a comprehensive record of a patient's health history, medical exam and lab results, diagnoses, treatments, medications, and other information.[8]

---

[6] Press Release Oracle, Oracle Buys Cerner (Dec. 21, 2021), https://www.oracle.com/news/announcement/oracle-buys-cerner-2021-12-20/ (last visited Nov. 6, 2025)

[7] *See* Dep't of Health & Human Servs., Electronic Health Record Systems (Feb. 13, 2020). https://www.hhs.gov/sites/default/files/electronic-health-record-systems.pdf; Margaret Linquist, *Choosing the Right EHR: A Buyer's Guide*, Oracle (Aug. 4, 2025), https://www.oracle.com/health/clinical-suite/choosing-ehr-system/.

[8] *See* U.S. Dep't of Health & Hum. Servs., Health Sector Cybersecurity Coordination Ctr., Electronic Medical Records Still a Top Target for Cyber Threat Actors (Apr. 6, 2023), https://www.hhs.gov/sites/default/files/2023april6-emrs-top-target-cyber-threat-actors.pdf (Nov. 6, 2025); Michael Hickins, *10 Steps to a Successful EHR Implementation*, Oracle (June 23, 2025), https://www.oracle.com/health/ehr-implementation/#faqs (last visited Nov. 6, 2025).

347. Although EHR systems "have transformed healthcare[,] providing convenience and accessibility for patients and providers alike, . . . user errors and design flaws make them vulnerable to attack."[9] An EHR system is uniquely valuable to cybercriminals "because of the [Private Information] it contains and the profit they can make on the dark web or black market."[10]

348. Oracle Health understands that health data is among "the most targeted in security breaches."[11] And it recognizes that "[p]atient privacy and the security of health data, when left unaddressed, threaten what the exchange of health information is solely meant to protect: patient safety."[12]

349. But Oracle Health holds itself out as "an industry leader in securely storing" data, providing patients with false assurances regarding the privacy of their Private Information.[13] In one of its privacy policies, Oracle Health states that it "has implemented and will maintain technical and organizational measures designed to prevent accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to Services Private Information. These measures, which are generally aligned with the ISO/IEC 27001:2013 standard, govern all areas of security applicable to the Services, including physical access, system access, data access, transmission, input, security oversight, and enforcement."[14]

350. Healthcare Provider Defendants also represented to patients that the Private Information collected from them would be kept safe and confidential.

---

[9] *Security Risks of EHR and EMR Systems*, The HIPAA E-Tool (Mar. 1, 2022), https://thehipaaetool.com/security-risks-of-ehr-and-emr-systems/ (last visited Nov. 6, 2025).

[10] Electronic Medical Records Still a Top Target for Cyber Threat Actors, *supra* note 11.

[11] Verma, *supra* note 3.

[12] Id.

[13] Id.

[14] *See* Oracle Services Privacy Policy, https://www.oracle.com/legal/privacy/services-privacy-policy/#1-4 (last visited Nov. 6, 2025).

351. For example, Albany Med states that it is "committed to safeguarding the confidentiality of [patients'] protected health information" and "required by law to maintain the privacy of protected health information, to provide [patients] with notice of [its] legal duties and privacy practices, and to notify [patients] if a breach occurs that may have compromised the privacy or security of [their] protected health information."[15]

352. Arkansas Heart likewise recognizes that "[f]ederal law requires that [it] maintain the privacy of medical information about [patients]" and states that it is "committed to complying with that law."[16]

353. Baptist Health also promised to safeguard patient Private Information in accordance with its internal policies, state law, and federal law. Its Notice of Privacy Practices "describes how medical information about [patients] may be used and disclosed."[17] Baptist Health acknowledges "[f]ederal law provides for significant privacy protections of health information" and reassures patients that, "[e]xcept for the purposes described [in the notice]," it "will use and disclose health information only with additional written permission from [them]."[18]

354. Glens Falls similarly states that it is "committed to safeguarding the confidentiality of [patients'] protected health information" and acknowledges that it is "required by law to

---

[15] Notice of Privacy Practices, https://www.albanymed.org/wp-content/uploads/sites/2/2025/05/25_Notice-of-Privacy-Practices_8.5x11.pdf (last visited Nov. 6, 2025).

[16] Arkansas Heart Hospital Joint Notice of Privacy Practices, https://www.arheart.com/wp-content/uploads/2017/06/joint-notice-of-privacy-practices-arkansas.pdf (last visited Nov. 6, 2025).

[17] Baptist Health Notice of Privacy Practices, https://baptisthealth.net/hipaa-notice-of-privacy-practices (last visited Nov. 6, 2025).

[18] Baptist Health Notice of Privacy Practices, Important Information You Should Know, (Nov. 1, 2024) https://baptisthealth.net/-/media/Documents/PDFs/BHSF/HIPAA/101650-101651_BH-Notice-of-Privacy-Practices-Brochure_Eng_4x9-27_final.pdf

maintain the privacy of protected health information, to provide [patients] with notice of [its] legal duties and privacy practices, and to notify [patients] if a breach occurs that may have compromised the privacy or security of [their] protected health information."[19]

355. In its Notice of Privacy Practices, Mosaic describes how it may use and disclose patients' Private Information and acknowledges that it is "required by law to maintain the privacy of [patients'] Protected Health Information."[20] Mosaic also states that when Private Information is shared with business associates, Mosaic "require[s] these business associates [to] appropriately safeguard the privacy of your information."[21]

356. Tallahassee Memorial also provides patients with a Notice of Privacy Practices that describes how it may use and disclose its patients' Private Information and assures patients of the safeguards it has in place to protect Private Information.[22] It further represents that when Private Information is shared with business associates, Tallahassee Memorial "require[s] each business associate to sign an agreement that obligates the business associate to use appropriate safeguards to protect your health information."[23]

357. Union Health acknowledges that it is committed to safeguarding Private Information. Union Health declares in its "Union Health's HIPAA Privacy and Security Plan 2024" that it has a "responsibility to comply fully with all HIPAA regulations and to ensure the

---

[19] Albany Med Health System, Notice of Privacy Practices, https://www.albanymed.org/wp-content/uploads/sites/2/2025/05/25_Notice-of-Privacy-Practices_8.5x11.pdf (last visited Nov. 6, 2025).

[20] *See* Mosaic Life Care, Notice of Privacy Practices, https://www.mymlc.com/General/Privacy-Policy/?id=4505 (last visited Nov. 6, 2025).

[21] See id.

[22] Notice of Privacy Practices of: Tallahassee Memorial Hospital and Tallahassee Memorial HealthCare, Inc., https://www.tmh.org/sites/default/files/2023-11/fmi-tmh-npp.pdf (last visited Nov. 6, 2025).

[23] Id.

67

privacy and security of all forms of PHI" or Private Information and that it had implemented the appropriate administrative, technical, and physical safeguards to protect Private Information.[24]

358. In short, due to the highly sensitive and personal nature of the patient information Defendants acquire and store, Defendants promise to, among other things, keep patients' Private Information private; comply with industry standards related to data security and the maintenance of patients' Private Information; inform patients of their legal duties relating to data security; comply with all federal and state laws protecting patients' Private Information; only use and release patients' Private Information for reasons that relate to the services they provide; and provide adequate notice to patients if their Private Information is disclosed without authorization.

359. By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class members' Private Information, Defendants assumed the legal and equitable duties they owed to Plaintiffs and Class members and knew or should have known that they were responsible for protecting their Private Information from unauthorized disclosure and exfiltration.

360. As a condition of providing healthcare services, the Healthcare Provider Defendants collect and maintain highly sensitive patient information, including names, addresses, dates of birth, Social Security numbers, insurance details, medical histories, and treatment records.

361. Thus, as a condition of receiving medical services from Oracle Health's customers, or the Healthcare Provider Defendants, patients are required to entrust Defendants with highly sensitive Private Information.

---

[24] Union Health's HIPAA Privacy and Security Plan 2024, Union Health (Oct. 24, 2024), https://www.union.health/upload/docs/UnionHealth/compliance/HIPAA%20Privacy%20and%20 Security%20Plan.pdf.

68

362. Plaintiffs and Class members relied on Defendants to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this Private Information.

363. Healthcare Provider Defendants contracted with Oracle Health, formerly Cerner Corporation, to provide EHR and related data services, including the management and migration of patient data.

364. Oracle Health had obligations created by contract, industry standards, common law, and representations made to Plaintiffs and Class members to keep Plaintiffs' and Class members' Private Information confidential and to protect it from unauthorized access and disclosure.

365. Plaintiffs and Class members provided their Private Information to Oracle Health with the reasonable expectation and mutual understanding that Oracle Health would comply with its obligations to keep such Private Information confidential, to secure it from unauthorized access, and to provide timely notice of any security breaches.

366. Defendants did not use reasonable security procedures and practices appropriate to the nature of the Private Information it was maintaining for Plaintiffs and Class members, such as encrypting the information or deleting it when it is no longer needed, causing the compromise and exfiltration of Private Information.

367. Oracle Health's data security obligations were particularly important given the substantial increase in cyberattacks in the healthcare industry in recent years. Oracle Health knew or should have known that its electronic records would be targeted by cybercriminals.

368. Due to Oracle Health and the Healthcare Provider Defendants' improper security measures and storage, the attacker accessed and acquired files in Oracle Health's servers containing unencrypted Private Information of Plaintiffs and Class members, including, upon

69

information and belief, their names, Social Security numbers, and health and/or clinical information.

**The Data Breach and Defendants' Inadequate Notice to Plaintiffs and Class Members**

369. In early 2025, Oracle Health suffered a significant Data Breach. The incident occurred around January 22, 2025, when a criminal hacker gained access to legacy Cerner servers that Oracle Health had not yet migrated to its cloud infrastructure and exfiltrated a massive amount of Private Information to an external hard drive. The stolen Private Information includes, at least, names, Social Security numbers, dates of birth, driver's license numbers, treating physicians' names, dates of service, medication information, health insurance information, and diagnostic and treatment information.

370. Although Oracle Health states that it discovered the Data Breach around February 20, 2025, it has not sent notice of the Data Breach to any impacted patients. And it has no intention of doing so.

371. Instead, Oracle Health is providing notice only to affected healthcare providers. Oracle Health is informing these healthcare providers that it will not be notifying patients directly and that it is the providers' responsibility to determine whether they are legally required to provide notice to their patients.[25]

372. Moreover, Oracle Health has provided notice to affected healthcare providers at an exceedingly slow pace. In the first six months following its discovery of the Data Breach, Oracle Health notified approximately 40 of its affected client healthcare providers, but only 8 of those providers had in turn notified affected patients as of August 28, 2025. On August 28, Oracle Health

---

[25] *See* Lawrence Abrams, *Oracle Health Breach Compromises Patient Data at US Hospitals* (Mar. 28, 2025), https://www.bleepingcomputer.com/news/security/oracle-health-breach-compromises-patient-data-at-us-hospitals/ (last visited Nov. 6, 2025).

70

reported to the Court that it was likely to notify approximately 40 more healthcare providers, notification Oracle Health claims to have completed around October 31, 2025.

373. For example, Oracle Health did not provide Defendant LifeBridge a list of patients whose Private Information was compromised until September 19, 2025.[26]

374. For the Healthcare Provider Defendants that Oracle Health informed of the Data Breach, Oracle Health instructed them to delay notifying patients due to law enforcement investigations.

375. Oracle Health has not disclosed the details of the cyberattack to Plaintiffs or Class members, including the root cause of the Data Breach, the vulnerabilities exploited, and the remedial measures undertaken to ensure such a breach does not occur again. To date, these critical facts have not been explained or clarified to Plaintiffs and Class members, who retain a vested interest in ensuring that their Private Information remains protected.

376. Healthcare Provider Defendants informed Plaintiffs and Class members that their Private Information was compromised months after the Data Breach.

377. Defendant Union Health informed Plaintiffs and Class members in notice letters dated April 21, 2025, almost three months after the Data Breach.

378. Some Healthcare Provider Defendants still have not notified Plaintiffs and Class members, almost nine months after the Data Breach.

379. In February 2025, Defendant Union Health learned their patients' Private Information was compromised when an "unknown party contacted Union Health claiming to possess patient data." Defendant Union Health sent notice letters and issued a public notice of the

_____

[26] LifeBridge Health, Notice of Oracle Health/Cerner Security Incident (Oct. 16, 2025) https://www.lifebridgehealth.org/news/notice-oracle-healthcerner-security-incident.

Data Breach on April 21, 2025, almost three months after Defendant Union Health learned of the Data Breach.[27]

380. On March 7, 2025, Defendant Baptist Health learned their patients' Private Information was compromised by third parties. But Baptist Health did not send out notices until late July 2025,[28] more than four months after first learning of the data breach.

381. On or about March 13, 2025, Tallahassee Memorial was contacted by an unknown third party who claimed to possess patient data.[29] Upon verification, Tallahassee Memorial determined that the data was legitimate and began an investigation with the assistance of cybersecurity specialists and law enforcement. On or about June 13, 2025, Tallahassee Memorial issued written notifications to impacted patients.

382. On June 6, 2025, Defendants Albany Med and Glens Falls learned of the Data Breach when Oracle Health provided them with a list of patients whose Private Information was compromised.[30] But notices were not sent out until August 1, 2025.

---

[27] *Union Health System, Inc. Data Breach under Investigation by Levi & Korsinsky, LLP*, ACCESS Newswire (May 19, 2025), https://www.cbs42.com/business/press-releases/accesswire/1029409/union-health-system-inc-data-breach-under-investigation-by-levi-korsinsky-llp/.

[28] Florida Public Notices, Notice of Data Breach (Jul. 29, 2025), https://floridapublicnotices.com/notices/11266045.

[29] TaMaryn Waters, *TMH data breach linked to former vendor, hospital tells patients* (June 18, 2025) https://www.tallahassee.com/story/money/2025/06/18/letter-tmh-data-breach-traced-to-past-data-migration-by-vendor/84252923007/.

[30] Notice of Oracle Health/Cerner Data Security Incident, https://www.albanymed.org/wp-content/uploads/sites/2/2025/08/GFH-Website-Notice-105121317v2-c.pdf (last visited Nov. 6, 2025).

383. On April 29, 2025, Defendant Mosaic verified that its patient information was compromised in the Data Breach after an unknown party contacted the hospital.[31] On May 2, 2025, Oracle Health "confirmed that the files received from the unknown party came from Oracle Health/Cerner's environment."[32] Mosaic announced that it began mailing notice letters to patients in June.[33]

384. On August 12, 2025, Arkansas Heart sent letters and posted a public notice to notify patients that their Private Information may have been compromised in the data breach.[34]

385. Defendants' notices to Plaintiffs and Class members fail to include any substantive details about how the Data Breach occurred.

386. Defendants' failure to provide the substantive facts surrounding the Data Breach has left Plaintiffs and Class members without the ability to mitigate further harm resulting from the Data Breach. It is reasonable for Plaintiffs and Class members to believe that future harm (including medical identity theft) is real and imminent, and to take steps necessary to mitigate that risk of future harm.

---

[31] *Mosaic Life Care notified that outside vendor experience cybersecurity breach* (June 27, 2025), https://www.kq2.com/news/mosaic-life-care-notified-that-outside-vendor-experienced-cybersecurity-breach/article_a9f80c14-bb20-406c-89bd-79355104076d.html.

[32] Marianne Kolbasuk McGee, *Oracle/Cerner EHR Hack: Breach Reports Still Trickling In* (Jul. 29, 2025), https://www.bankinfosecurity.com/oraclecerner-ehr-hack-breach-reports-still-trickling-in-a-29075.

[33] *Mosaic Life Care notified that outside vendor experience cybersecurity breach* (June 27, 2025), https://www.kq2.com/news/mosaic-life-care-notified-that-outside-vendor-experienced-cybersecurity-breach/article_a9f80c14-bb20-406c-89bd-79355104076d.html.

[34] Arkansas Heart Hospital, Notice of Data Incident (Aug. 12, 2025), https://www.arheart.com/notice-of-data-incident/.

73

**The Healthcare Sector Is Particularly Susceptible to Data Breaches**

387. Defendants have long been on notice that health data is a particularly susceptible target for data breaches. For example, in August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PII)."[35]

388. The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.[36]

389. The healthcare sector reported the second largest number of data breaches among all measured sectors in 2018, with the highest rate of exposure per breach.[37] In 2022, the largest growth in compromises occurred in the healthcare sector.[38]

---

[35] Jim Finkle, *FBI Warns Healthcare Firms that they are Targeted by Hackers*, Reuters (Aug. 20, 2014), https://www.reuters.com/article/us-cybersecurity-healthcare-fbi/fbi-warns-healthcare-firms-they-are-targeted-by-hackers-idUSKBN0GK24U20140820.

[36] Andis Robeznieks, *Cybersecurity: Ransomware attacks shut down clinics, hospitals*, Am. Med.Ass'n.(Oct.4,2019),https://www.ama-assn.org/practice-management/sustainability/cybersecurity-ransomware-attacks-shut-down-clinics-hospitals.

[37] Identity Theft Resource Center, *2018 End-of-Year Data Breach Report,* https://www.idtheftcenter.org/wp-content/uploads/2019/02/ITRC_2018-End-of-Year-Aftermath_FINAL_V2_combinedWEB.pdf (last visited Nov. 6, 2025).

[38] Identity Theft Resource Center, *2022 End-of-Year Data Breach Report,* https://www.idtheftcenter.org/wp-content/uploads/2023/01/ITRC_2022-Data-Breach-Report_Final-1.pdf (last visited Nov. 6, 2025).

390. In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 victims' sensitive records being exposed, a 68% increase from 2020. Of the 1,862 recorded data breaches, 330 of them, or 17.7% were in the healthcare industry.[39] The 330 reported breaches in 2021 exposed nearly 30 million sensitive records (28,045,658), an increase from the 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.

391. In light of recent high profile cybersecurity incidents at other healthcare partner and provider companies, including American Medical Collection Agency (25 million patients, March 2019), University of Washington Medicine (974,000 patients, December 2018), Florida Orthopedic Institute (640,000 patients, July 2020), Wolverine Solutions Group (600,000 patients, September 2018), Oregon Department of Human Services (645,000 patients, March 2019), Elite Emergency Physicians (550,000 patients, June 2020), Magellan Health (365,000 patients, April 2020), and BJC Health System (286,876 patients, March 2020), Defendants knew or should have known that their electronic records would be targeted by cybercriminals.

392. Indeed, when compromised, healthcare related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident … came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[40]

393. Almost 50 percent of victims lost their healthcare coverage as a result of an identity-theft incident, while nearly 30 percent said their insurance premiums went up after the incident.

---

[39] *See* Identity Theft Resource Center, *2021 in review: Data Breach Annual Report* (Jan. 2022), https://www.wsav.com/wp-content/uploads/sites/75/2022/01/20220124_ITRC-2021-Data-Breach-Report.pdf (last visited Nov. 6, 2025).

[40] Elinor Mills, *Study: Medical identity theft is costly for victims*, CNET (March 3, 2010), https://www.cnet.com/news/privacy/study-medical-identity-theft-is-costly-for-victims/.

Forty percent of the customers were never able to resolve their identity theft at all.[41] Data breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.

394. Healthcare related breaches have continued to rapidly increase because electronic patient data is seen as a valuable asset. "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From Social Security numbers and insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."[42]

395. A ransomware attack is a type of cyberattack that is frequently used to target healthcare providers due to the sensitive patient data they maintain. In a ransomware attack, the attackers use software to encrypt data on a compromised network, rendering it unusable and demanding payment to restore control over the network. Ransomware attacks are particularly harmful for patients and healthcare providers alike as they cause operational disruptions that result in lengthier patient stays, delayed procedures or test results, increased complications from surgery, and even increased mortality rates. In 2021, 44% of healthcare providers who experienced a ransomware attack saw their operations disrupted for up to a week and 25% experienced disrupted services for up to a month.[43]

---

[41] *Id.*

[42] Eyal Benishti, *How to Safeguard Hospital Data from Email Spoofing Attacks* (Apr. 4, 2019), https://www.chiefhealthcareexecutive.com/view/how-to-safeguard-hospital-data-from-email-spoofing-attacks.

[43] Sophos, *The State of Ransomware in Healthcare 2022* (May 2022), https://assets.sophos.com/X24WTUEQ/at/4wxp262kpf84t3bxf32wrctm/sophos-state-of-ransomware-healthcare-2022-wp.pdf (last visited date Nov. 6, 2025).

396. An increasingly prevalent form of ransomware attack is the "encryption+exfiltration" attack in which the attacker encrypts a network and exfiltrates the data contained within.[44] In 2020, "[a]lmost 50% of ransomware cases included the threat to release exfiltrated data along with encrypted data."[45] Once the data is exfiltrated from a network, its confidential nature is destroyed and it should be "assume[d] it will be traded to other threat actors, sold, or held for a second/future extortion attempt."[46] And even where companies pay for the return of data, attackers often leak or sell the data regardless because there is no way to verify copies of the data are destroyed.[47]

397. Accordingly, Plaintiffs and Class members believe that their Private Information has been or will be sold on the dark web or privately on other underground markets, as that is the *modus operandi* of cybercriminals that commit cyberattacks of this type.

398. As healthcare services providers, Defendants knew, or should have known, the importance of safeguarding Private Information entrusted to them and of the foreseeable consequences if such data were to be disclosed. These consequences include the significant costs that would be imposed on patients as a result of a breach. Defendants failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

---

[44] Emisoft Malware Lab, *The chance of data being stolen in a ransomware attack is greater than one in ten* (July 13, 2020), https://blog.emsisoft.com/en/36569/the-chance-of-data-being-stolen-in-a-ransomware-attack-is-greater-than-one-in-ten/.

[45] 2020 Quarterly Report: Ransomware Demands continue to rise as Data Exfiltration becomes common and Maze subdues (Nov. 4, 2020), https://www.coveware.com/blog/q3-2020-ransomware-marketplace-report.

[46] *Id.*

[47] *Id.*

77

<u>**Defendants Failed to Comply with HIPAA**</u>

399. Title II of HIPAA contains what is known as the Administration Simplification provisions. *See* 42 U.S.C. §§ 1301 *et seq*. These provisions require that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PHI similar to the data Defendants left unguarded and vulnerable to attack. The HHS has subsequently promulgated rules under authority of the Administrative Simplification provisions of HIPAA.

400. Plaintiffs allege that Oracle Health functioned as a "business associate"[48] under HIPAA and that the Healthcare Provider Defendants were "covered entities,"[49] and that all Defendants were therefore subject to HIPAA's security rule and breach notification requirements. While HIPAA itself does not provide a private right of action, its standards and security requirements inform the duty of care and industry practices Defendants were and are obligated to follow.

401. Defendants' Data Breach resulted from a combination of insufficiencies that show Defendants failed to comply with safeguards mandated by HIPAA regulations and industry standards. First, it can be inferred from the Data Breach that Defendants failed to implement, or inadequately implemented, information security policies or procedures to protect Plaintiffs and Class members' Private Information.

---

[48] 45 C.F.R. § 160.103 ("*Business associate* includes: (i) A Health Information Organization, E-prescribing Gateway, or other person that provides data transmission services with respect to protected health information to a covered entity and that requires access on a routine basis to such protected health information.")

[49] *Id.* ("*Covered entity* means . . . [a] healthcare provider who transmits any health information in electronic form in connection with a transaction covered by this subchapter").

402. Plaintiffs' and Class members' Private Information compromised in the Data Breach included PHI or PII.[50]

403. It is reasonable to infer that Plaintiffs' and Class members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach, and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

404. Defendants could have prevented the Data Breach by implementing HIPAA-mandated, industry-standard policies and procedures for securely disposing of PHI when it was no longer necessary and/or had honored their obligations to patients.

405. Defendants' security failures also include, but are not limited to:

a. Failing to maintain adequate data security systems to prevent data loss;

b. Failing to mitigate the risks of a Data Breach and loss of data;

c. Failing to ensure the confidentiality and integrity of electronic PHI Defendants create, receive, maintain, and transmit in violation of 45 CFR § 164.306(a)(1);

d. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR § 164.312(a)(1);

e. Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR § 164.308(a)(1);

f. Failing to identify and respond to suspected or known security incidents;

g. Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR § 164.308(a)(6)(ii);

h. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 CFR § 164.306(a)(2);

---

[50] 45 C.F.R. § 160.103 ("*Protected health information* means individually identifiable health information . . . .").

79

i.      Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR § 164.306(a)(3);

j.      Failing to ensure compliance with HIPAA security standard rules by Defendants' workforce, in violation of 45 CFR § 164.306(a)(4); and

k.      Impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons, in violation of 45 CFR § 164.502, *et seq.*

406.    While monetary relief may compensate Plaintiffs and Class members for some of their injuries, injunctive relief is also necessary to ensure Defendants' approach to information security is adequate and appropriate going forward. Defendants still maintain the Private Information of their current and former patients, including Plaintiffs and Class members. Without the supervision of the Court through injunctive relief, Plaintiffs' and Class members' Private Information remains at risk of subsequent theft and misuse.

### Defendants Failed to Comply with FTC Guidelines

407.    The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive Private Information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 248 (3d Cir. 2015).

408.    In October 2016, the FTC updated its publication, *Protecting Private Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep, properly dispose of Private Information that is no longer needed, encrypt information stored on computer

networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

409. The FTC further recommends that companies not maintain Private Information longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

410. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

411. As evidenced by the Data Breach, Defendants failed to properly implement basic data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class members' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

412. Defendants were at all times fully aware of their obligation to protect the Private Information of their customers' patients yet failed to comply with such obligations. Defendants were also aware of the significant repercussions that would result from their failure to do so.

**Defendants Failed to Comply with Industry Standards**

413. As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

414. Some industry best practices that should be implemented by businesses dealing with Private Information like Defendants include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendants failed to follow some or all of these industry best practices.

415. Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendants failed to appropriately follow these cybersecurity best practices.

416. Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

417. Defendants failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

## Defendants Breached Their Duty to Safeguard Private Information

418. In addition to their obligations under federal and state laws, Defendants owed a duty to Plaintiffs and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendants owed a duty to Plaintiffs and Class members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that their computer systems, networks, and protocols adequately protected Private Information.

419. Defendants breached their obligations to Plaintiff and Class members and/or were otherwise negligent and reckless because they failed to properly maintain and safeguard their computer systems, servers, and data. Defendants' unlawful conduct includes, but is not limited to, the following acts and/or omissions:

   a.    Failing to maintain adequate data security systems that would reduce the risk of data breaches and cyberattacks;

   b.    Failing to adequately protect their patients' Private Information;

   c.    Failing to properly monitor their data security systems for existing intrusions;

   d.    Failing to sufficiently train their employees regarding the proper handling of their clients' Private Information;

   e.    Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

   f.    Failing to adhere to HIPAA and industry standards for cybersecurity as discussed above; and

   g.    Otherwise breaching their duties and obligations to protect Plaintiffs' and Class members' Private Information.

83

420. Defendants negligently and unlawfully failed to safeguard Plaintiffs' and Class members' Private Information by allowing cyberthieves to access their computer networks and systems which contained unsecured and unencrypted Private Information.

421. Had Defendants remedied the deficiencies in their information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, they could have prevented intrusion into their information storage and security systems and, ultimately, the theft of Plaintiffs' and Class members' Private Information.

### Defendants Should Have Known That Cybercriminals Target Private Information to Carry Out Fraud and Identity Theft

422. The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers, like Plaintiffs and Class members, suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data.[51] Exposure of highly sensitive Private Information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

423. Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity

---

[51] *FTC Information Injury Workshop, BE and BCP Staff Perspective*, https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited Nov. 6, 2025).

84

thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

424. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

425. In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a collage of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as that information allows them to access users' other accounts.

426. Thus, even if certain information was purportedly not involved in the Data Breach, the unauthorized parties could use Plaintiffs' and Class members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiff and Class members.

427. For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an

85

extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[52] However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

428.    Identity thieves can also use stolen personal information such as Social Security numbers and PHI for a variety of crimes, including medical identity theft, credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information.

429.    PHI is especially valuable to identity thieves. As the FTC recognizes, identity thieves can use PHI to commit an array of crimes, including identity theft and medical and financial fraud.[53]

430.    A robust cyber black market exists in which criminals openly post stolen PHI on multiple underground Internet websites, commonly referred to as the dark web.

431.    While credit card information and associated PII can sell for as little as $1-$2 on the black market, PHI can sell for as much as $363 according to the Infosec Institute.[54]

432.    PHI is particularly valuable because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It

---

[52] *See* FTC, *IdentityTheft.gov,* https://www.identitytheft.gov/Steps (last visited July 3, 2025) (presently unavailable due to federal government shutdown).

[53] FTC, *Warning Signs of Identity Theft,* https://consumer.ftc.gov/articles/what-know-about-identity-theft (last visited Nov. 6, 2025).

[54] Center for Internet Security, *Data Breaches: In the Healthcare Sector*, https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited Nov. 6, 2025).

can be used to create fake insurance claims, allowing for the purchase and resale of medical equipment, or gain access to prescriptions for illegal use or resale.

433. Medical identity theft can result in inaccuracies in medical records and costly false claims. It can also have life-threatening consequences. If a victim's health information is mixed with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[55]

434. The ramifications of Defendants' failure to keep its customers' patients' Private Information secure are long-lasting and severe. Once it is stolen, fraudulent use of such and damage to victims may continue for years.

435. The value of Private Information is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities notwithstanding possible heavy prison sentences illustrates that the Private Information compromised here has considerable market value.

436. Such data demands a high price on the black market. Martin Walter, senior director at cybersecurity firm RedSeal, explained, "Compared to credit card information, personally identifiable information and Social Security numbers are worth more than 10x on the black market."[56]

---

[55] Michael Ollove, *The Rise of Medical Identity Theft in Healthcare*," Kaiser Health News (Feb. 7, 2014), https://kffhealthnews.org/news/rise-of-indentity-theft/.

[56] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-sells-for-10x-price-of-stolen-credit-card-numbers.html.

437. For example, Social Security numbers are among the worst kind of Private Information to have stolen because they may be put to a variety of fraudulent uses and are difficult for an individual to change. The Social Security Administration stresses that the loss of an individual's Social Security number can lead to identity theft and extensive financial fraud:

> Scammers use your Social Security number (SSN) to get other Private Information about you. They can use your SSN and your good credit to apply for more credit in your name. Then, when they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your SSN until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. [57]

438. An individual cannot obtain a new Social Security number without significant paperwork and evidence of actual misuse. In other words, preventive action to defend against the possibility of misuse of a Social Security number is not permitted; an individual must show evidence of actual, ongoing fraud activity to obtain a new number.

439. Even then, a new Social Security number may not be effective. According to Julie Ferguson of the Identity Theft Resource Center, "[t]he credit bureaus and banks are able to link the new number very quickly to the old number, so all of that old bad information is quickly inherited into the new Social Security number."[58]

440. It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when personal information is stolen and when

---

[57] Social Security Administration, *Identity Theft and Your Social Security Number*, https://www.ssa.gov/pubs/EN-05-10064.pdf (last visited Nov. 6, 2025).

[58] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft.

88

it is misused. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[59]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

441. PII and PHI are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the dark web for years.

442. As a result, Plaintiffs and Class members are at an increased risk of fraud and identity theft, including medical identity theft, for many years into the future. Thus, Plaintiffs and Class members have no choice but to vigilantly monitor their accounts for many years to come.

**Plaintiffs and Class Members Have Suffered Common Injuries and Damages**

443. As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and Class members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, having medical services billed in their names, loans and credit card accounts opened in their names, tax returns filed in their names, utility bills opened in their names, and other forms of identity theft and fraud.

444. The Private Information maintained by and stolen from Defendants' systems, combined with publicly available information, allows nefarious actors to assemble a detailed

---

[59] GAO, Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown (June 2007), https://www.gao.gov/assets/270/262904.html (last visited July 3, 2025).

informational representation of Plaintiffs and Class members, which can be further used to carry out targeted fraudulent schemes against Plaintiffs and Class members.

445. Plaintiffs and Class members face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiffs and Class members.

446. The harm faced by Plaintiffs and Class members is substantial and imminent, as unauthorized cybercriminals now have possession of their information, available for their use however and whenever they see fit, including posting or selling that information on the dark web. Defendants acknowledge that the risk borne by Plaintiffs' and Class members is a real one, as evidenced by the notices sent by some Defendants to Plaintiffs, which "offer" victims of the Data Breach a short-term credit monitoring product to help protect their identities.

447. As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members have and will be forced in the future to take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives, including placing "freezes," "locks," and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, filing police reports or regulator complaints, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

448. Plaintiffs and Class members may also incur present and ongoing out-of-pocket costs for protective measures such as fees for identity protection and credit monitoring services, credit report fees, credit lock fees, and similar costs related to the Data Breach.

449. As a direct and proximate result of the Data Breach and the attendant ongoing risk of identity theft and fraud, Plaintiffs and Class members are entitled to damages in the amount of

90

the present value of ongoing, long-term identity protection and credit monitoring services, to attempt to return Plaintiffs and Class members to the status quo in existence before Defendants' Data Breach foisted that ongoing risk of fraud and identity theft upon them.

450. Plaintiffs and Class members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. These losses include, but are not limited to, the following:

a. Monitoring for and discovering fraudulent charges;

b. Canceling and reissuing credit and debit cards;

c. Addressing their inability to withdraw funds linked to compromised accounts;

d. Taking trips to banks and waiting in line to obtain funds held in limited accounts;

e. Spending time on the phone with or at a financial institution to dispute fraudulent charges;

f. Contacting financial institutions and closing or modifying financial accounts;

g. Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

h. Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

i. Closely reviewing and monitoring bank accounts and credit reports for additional unauthorized activity for years to come.

451. Plaintiffs and Class members also lost the benefit of the bargain they made with Defendants. Plaintiffs and Class members overpaid for services that were intended to be accompanied by adequate data security but were not. Part of the price paid by Plaintiffs and Class members (or, in some cases, on their behalf) to Defendants was intended to be and should have been used by Defendants to fund adequate security of Defendants' computer systems and thereby

91

protect Plaintiffs' and Class members' Private Information. Thus, Plaintiffs and the Class did not receive the benefit of the bargain.

452. Additionally, Plaintiffs and Class members also suffered a loss of value of their Private Information when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in similar cases. An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion. In fact, the data marketplace is so sophisticated that consumers can sell their non-public information directly to a data broker who in turn aggregates the information and provides it to other companies. Consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $60 a year.[60]

453. As a result of the Data Breach, Plaintiffs' and Class members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiffs or Class members for their property, resulting in an economic loss. Moreover, because the Private Information is now in the hands of cybercriminals, the rarity of that information has been destroyed because it is no longer only held by Plaintiffs and Class members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiffs and Class members, thereby causing additional loss of value.

454. Further, Defendants, through their acts and omissions alleged herein, allowed unauthorized access to and use of Plaintiffs' and Class members' Private Information. Plaintiffs'

---

[60] Nielsen Computer & Mobile Panel, *Frequently Asked Questions,* https://computermobilepanel.nielsen.com/ui/US/en/faqen.html (last visited Nov. 6, 2025).

92

and Class members were thereby damaged in an amount equaling the value of access to their Private Information, akin to a royalty or license fee.

455. Plaintiffs and Class members are, at the very least, entitled to nominal damages for Defendants' violations as discussed herein. As a result of Defendants' failure to safeguard Plaintiffs' and Class members' Private Information, Plaintiffs and Class members are forced to live with the knowledge that their Private Information—which contains private and personal details of their life and medical care—is in the hands of cybercriminals and has been or may be disclosed or made available for sale to the entire world online, thereby making them vulnerable to fraud and identity theft, permanently subjecting them to loss of security, and depriving Plaintiffs and Class members of their fundamental right to privacy.

456. Plaintiffs and Class members are entitled to statutory damages, as provided, based upon the relevant causes of action alleged herein, and described below. Defendants were unjustly enriched at the expense of, and to the detriment of, Plaintiffs and Class members. Among other things, Defendants continue to benefit and profit from their Private Information, while its value to Plaintiffs and Class members has been diminished.

457. Moreover, Plaintiffs and Class members have an interest in ensuring that their Private Information, which is believed to still be in the possession of Defendants, is protected from future breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing Private Information is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

458. As a direct and proximate result of Defendants' acts and omissions, Plaintiffs and Class members have suffered a loss of privacy and have suffered cognizable harm, including present harm and an imminent and substantial future risk of harm, in the forms set forth above.

## CLASS ACTION ALLEGATIONS

459. Plaintiffs bring this action individually and on behalf of all other persons similarly situated, pursuant to Rule 23 of the Federal Rule of Civil Procedure.

460. The Classes that Plaintiffs seek to represent are defined as follows:

**Oracle Health Nationwide Class:**

> All individuals residing in the United States whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, including all those individuals who receive notice of the Data Breach.

**Oracle Health State Subclasses:**

> All individuals residing in the State identified in the applicable Count whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, including all those individuals who receive notice of the Data Breach.

**Healthcare Provider Defendant Subclasses:**

> All individuals residing in the United States whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, which information was provided to Oracle Health by the applicable Healthcare Provider Defendant, including all those individuals who receive notice of the Data Breach.

**Healthcare Provider Defendant State Subclasses:**

> All individuals residing in the State identified in the applicable Count whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, which information was provided to Oracle Health by the applicable Healthcare Provider Defendant, including all those individuals who receive notice of the Data Breach.

94

461. Collectively, the Class and Subclasses are referred to as the "Classes" or "Class members."

462. Excluded from the Classes are Defendants and their parents or subsidiaries, any entities in which they have a controlling interest, as well as their officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

463. Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

464. The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

465. Numerosity. The Class members are so numerous that joinder of all members is impracticable. The disposition of the individual claims of the respective Class members through this class action will benefit both the parties and this Court. The exact size of the Class and the identities of Class members are ascertainable through Oracle Health's and its customers' records, including but not limited to, the files implicated in the Data Breach.

466. Commonality. There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

a. Whether Defendants engaged in the conduct alleged herein;

b. When Defendants learned of the Data Breach;

c. Whether Defendants' response to the Data Breach was adequate;

d. Whether Defendants unlawfully lost or disclosed Plaintiffs' and Class members' Private Information;

e. Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

f. Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

g. Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

h. Whether Defendants owed a duty to Plaintiff and Class members to safeguard their Private Information;

i. Whether Defendants breached their duty to Plaintiff and Class members to safeguard their Private Information;

j. Whether criminals obtained Plaintiffs' and Class members' Private Information via the Data Breach;

k. Whether Defendants had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiff and the Class members;

l. Whether Defendants breached their duty to provide timely and accurate notice of the Data Breach to Plaintiff and Class members;

m. Whether Defendants knew or should have known that their data security systems and monitoring processes were deficient;

n. What damages Plaintiff and Class members suffered as a result of Defendants' misconduct;

o. Whether Defendants' conduct was negligent;

p. Whether Defendants' conduct was *per se* negligent;

q. Whether either Defendant was unjustly enriched;

r. Whether Plaintiff and Class members are entitled to actual and/or statutory damages;

s. Whether Plaintiff and Class members are entitled to additional credit or identity monitoring and monetary relief; and

t. Whether Plaintiff and Class members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

96

467. Typicality. Plaintiffs' claims are typical of those of other Class members because Plaintiffs' Private Information, like that of every other Class member, was compromised in the Data Breach. Plaintiffs' claims are typical of those of the other Class members because, *inter alia*, all Class members were injured through the common misconduct of Defendants. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class members, and there are no defenses that are unique to the named Plaintiffs. The claims of the named Plaintiffs and those of Class members arise from the same operative facts and are based on the same legal theories.

468. Adequacy of Representation. Plaintiffs will fairly and adequately represent and protect the interests of Class members. Plaintiffs' counsel are competent and experienced in litigating class actions, including data privacy litigation of this kind.

469. Predominance. Defendants have engaged in a common course of conduct toward Plaintiffs and Class members, in that Plaintiffs' and Class members' Private Information was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Class members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

470. Superiority. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual

Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendants. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

471. Finally, all members of the proposed Class are readily ascertainable. Defendants have access to the names and addresses and/or email addresses of Class members affected by the Data Breach.

## CLAIMS FOR RELIEF

### Count I – Negligence

472. This claim is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiffs under the law of each U.S. State or Territory on behalf of the Oracle Health State Subclasses; 3) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 4) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant State Subclass.

473. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

474. Defendants knowingly collected, came into possession of, and maintained Plaintiffs' and Class members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Private Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

98

475. Defendants knew or should have known of the risks inherent in collecting Plaintiffs' and Class members' Private Information and the importance of adequate security. Defendants were on notice because they knew or should have known that they are attractive targets for cyberattacks seeking healthcare-related data and other Private Information.

476. Defendants owed a non-delegable duty of care to Plaintiffs and Class members whose Private Information was entrusted to them. Defendants' duties included, but were not limited to, the following:

    a.    To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in their possession;

    b.    To protect their patients' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

    c.    To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in their possession;

    d.    To employ reasonable security measures and to otherwise protect the Private Information of Plaintiffs and Class members pursuant to federal and state regulations including but not limited to HIPAA and the FTCA;

    e.    To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

    f.    To promptly notify Plaintiffs and Class members of the Data Breach, and to precisely disclose the type(s) of information compromised.

477. Defendants' duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair… practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

478. Defendants' duty also arose because, as health service providers, Defendants were bound by industry standards to protect their patients' confidential Private Information.

99

479. Defendants hold themselves out as trusted data collectors, and thereby assume a duty to reasonably protect patients' information. Indeed, Defendants, as data collectors, were in a unique and superior position to protect against the harm suffered by Plaintiffs and Class members as a result of the Data Breach.

480. Plaintiffs and Class members were foreseeable victims of any inadequate security practices on the part of Defendants, and Defendants owed them a duty of care to not subject them to an unreasonable risk of harm.

481. Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiffs and Class members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class members' Private Information within Defendants' possession.

482. Defendants, by their actions and/or omissions, breached their duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Plaintiffs' and Class members' Private Information.

483. Defendants, by their actions and/or omissions, breached their duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

484. Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Class members' Private Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

   a. Failing to adopt, implement, and maintain adequate security measures to safeguard Class members' Private Information;

   b. Failing to adequately monitor the security of their networks and systems;

   c. Failing to periodically ensure that its email system maintained reasonable data security safeguards;

   d. Allowing unauthorized access to Class members' Private Information;

100

e.      Failing to comply with the FTCA; and

f.      Failing to detect in a timely manner that Class members' Private Information had been compromised.

485.    Defendants had a special relationship with Plaintiffs and Class members. Plaintiffs' and Class members' willingness to entrust Defendants with their Private Information was predicated on the understanding that Defendants would take adequate security precautions.

486.    Defendants' breach of duties owed to Plaintiffs and Class members caused Plaintiffs' and Class members' Private Information to be compromised, exfiltrated, and/or misused, as alleged herein.

487.    As a result of Defendants' ongoing failure to notify Plaintiffs and Class members regarding exactly what Private Information has been compromised, Plaintiffs and Class members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

488.    Defendants' breaches of duty also caused a substantial, imminent risk to Plaintiffs and Class members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

489.    As a result of Defendants' negligence in breach of their duties owed to Plaintiffs and Class members, Plaintiffs and Class members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

490.    As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class members have suffered damages as alleged herein and are at imminent risk of further harm.

491.    The injury and harm that Plaintiffs and Class members suffered was reasonably foreseeable.

492. Plaintiffs and Class members have suffered injury and are entitled to damages in an amount to be proven at trial.

493. In addition to monetary relief, Plaintiffs and Class members are also entitled to injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class members.

## Count II – Negligence *per se*

494. This claim is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiffs under the law of each U.S. State or Territory on behalf of the Oracle Health State Subclasses; 3) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 4) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant State Subclass.

495. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

496. Under the FTC Act, 15 U.S.C. § 45, Defendants had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class members' Private Information.

497. Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the Private Information entrusted to it.

The FTC publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendants' duty to protect Plaintiffs' and the Class members' sensitive Private Information.

498. Defendants breached their respective duties to Plaintiffs and Class members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Private Information.

499. Defendants violated their duty under Section 5 of the FTC Act by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards as described in detail herein. Defendants' conduct was particularly unreasonable given the nature and amount of Private Information Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

500. The harm that has occurred is the type of harm the FTC Act is intended to guard against. The FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and Class members.

501. Defendants' duty of care to use reasonable security measures arose as a result of the special relationship that existed between Defendants and its patients, which is recognized by laws and regulations including but not limited to HIPAA, as well as common law. Defendants were in a position to ensure that its systems were sufficient to protect against the foreseeable risk of harm to Plaintiffs and Class members from a data breach.

502. Defendants' duty to use reasonable security measures under HIPAA required Defendants to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to

protect the privacy of protected health information." 45 C.F.R. § 1 64.530(c)(l). Some or all of the healthcare and/or medical information at issue in this case constitutes "protected health information" within the meaning of HIPAA.

503. Defendants violated their duty under HIPAA by failing to use reasonable measures to protect their PHI and by not complying with applicable regulations detailed *supra*. Here too, Defendants' conduct was particularly unreasonable given the nature and amount of Private Information Defendants collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

504. But for Defendants' wrongful and negligent breach of their duties owed, Plaintiffs and Class members would not have been injured.

505. The injury and harm suffered by Plaintiffs and Class members was the reasonably foreseeable result of Defendants' breach of their duties. Defendants knew or should have known that they were failing to meet their duties and that the breach would cause Plaintiffs and Class members to suffer the foreseeable harms associated with the exposure of their Private Information. Defendants' failure to comply with applicable laws and regulations constitutes negligence *per se*.

506. As a direct and proximate result of Defendants' negligence *per se*, Plaintiffs and Class members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

## Count III – Breach of Third-Party Beneficiary Contract

507. This claim is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiffs under the law of each U.S. State or Territory on behalf of the Oracle Health State Subclasses; 3) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 4) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant State Subclass.

508. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

509. Upon information and belief, Oracle Health entered into valid contracts with its clients, including the Healthcare Provider Defendants, to provide software products and/or services, including business associate agreements under HIPAA, which included data security practices, procedures, and protocols sufficient to safeguard the Private Information that was to be entrusted to Oracle Health.

510. Such contracts were made expressly for the benefit of Plaintiffs and the Class, as it was their Private Information that Defendants agreed to receive and protect through their services.

511. The benefit of collection and protection of the Private Information belonging to Plaintiffs and the Class was the direct and primary objective of the contracting parties, and Plaintiffs and the Class members were direct and express beneficiaries of such contracts.

512. Plaintiffs and the Class are also intended third-party beneficiaries of these contracts because recognizing them as such is appropriate to effectuate the intentions of the parties, and the

105

circumstances indicate that Defendants intended to give the beneficiaries the benefit of the promised performance.

513. Defendants knew that if they were to breach these contracts, healthcare patients, including Plaintiffs and the Class, would be harmed by, among other harms, fraudulent transactions and the need to expend time and money to protect themselves from identity theft.

514. Defendants breached their contracts when they failed to use reasonable data security measures and/or business associate monitoring measures and allowed the Data Breach to occur.

515. As foreseen, Plaintiffs and the Class were harmed by Defendants' failure to use reasonable data security measures to securely store and protect the files in their care, including but not limited to, the continuous and substantial risk of harm through the loss of their Private Information. Accordingly, Plaintiffs and the Class are entitled to damages in an amount to be determined at trial, along with costs and attorneys' fees incurred in this action.

## Count IV – Breach of Implied Contract

516. This claim is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiffs under the law of each U.S. State or Territory on behalf of the Oracle Health State Subclasses; 3) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 4) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant State Subclass.

517. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

106

518. Defendants provide healthcare-related services to Plaintiffs and Class members. Plaintiffs and Class members formed an implied contract with Defendants regarding the provision of those services through their collective conduct, including by Plaintiffs and Class members paying for services from Defendants (or having their insurance companies pay Defendants on their behalf).

519. Through Defendants' sale of medical services, they knew or should have known that they must protect Plaintiffs' and Class members' confidential Private Information in accordance with Defendants' policies, practices, and applicable law.

520. As consideration, Plaintiffs and Class members paid money (or money was paid on their behalf) to Defendants and turned over valuable Private Information to Defendants. Accordingly, Plaintiffs and Class members bargained with Defendants to securely maintain and store their Private Information.

521. Defendants solicited, offered, and invited Plaintiffs and Class members to provide their Private Information as part of Defendants' regular business practices. Plaintiffs and Class members accepted Defendants' offers and provided their Private Information to doctors or other healthcare professionals who then provided it to Oracle Health.

522. Defendants accepted possession of Plaintiffs' and Class members' Private Information for the purpose of providing healthcare-related services to Plaintiffs and Class members.

523. In delivering their Private Information to Defendants and paying for healthcare services, Plaintiffs and Class members intended and understood that Defendants would adequately safeguard Private Information as part of that service.

107

524. Defendants' implied promises to Plaintiffs and Class members include, but are not limited to, (1) taking steps to ensure that anyone who is granted access to Private Information also protects the confidentiality of that data; (2) taking steps to ensure that the Private Information that is placed in the control of their employees is restricted and limited to achieve an authorized business purpose; (3) restricting access to qualified and trained employees and/or agents; (4) designing and implementing appropriate retention policies to protect the Private Information against criminal data breaches; (5) applying or requiring proper encryption; (6) implementing multifactor authentication for access; (7) complying with HIPAA standards to make sure that Plaintiffs' and Class members' PHI would remain protected; and (8) taking other steps to protect against foreseeable data breaches.

525. Plaintiffs and Class members would not have entrusted their Private Information to Defendants in the absence of such an implied contract.

526. Had Defendants disclosed to Plaintiffs and the Class that they did not have adequate computer systems and security practices to secure sensitive data, Plaintiffs and the Class members would not have provided their Private Information to Defendants.

527. As providers of healthcare-related services, Defendants recognized (or should have recognized) that Plaintiffs' and Class members' Private Information is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain with Plaintiffs and the other Class members.

528. Defendants violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class members' Private Information. Defendants further breached these implied contracts by failing to comply with their promise to abide by HIPAA.

529. Additionally, Defendants breached the implied contracts with Plaintiffs and Class members by failing to ensure the confidentiality and integrity of electronic PHI they created, received, maintained, and transmitted, in violation of 45 CFR § 164.306(a)(1).

530. Defendants also breached the implied contracts with Plaintiffs and Class members by failing to implement technical policies and procedures for electronic systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights, in violation of 45 CFR § 164.312(a)(1).

531. Defendants further breached the implied contracts with Plaintiffs and Class members by failing to implement policies and procedures to prevent, detect, contain, and correct security violations, in violation of 45 CFR § 164.308(a)(1).

532. Defendants further breached the implied contracts with Plaintiffs and Class members by failing to identify and respond to suspected or known security incidents and to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR § 164.308(a)(6)(ii).

533. Defendants further breached the implied contracts with Plaintiffs and the Class members by failing to protect against any reasonably anticipated threats or hazards to the security or integrity of electronic PHI, in violation of 45 CFR § 164.306(a)(2).

534. Defendants further breached the implied contracts with Plaintiffs and the Class members by failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding PII, in violation of 45 CFR § 164.306(a)(3).

535. Defendants further breached the implied contracts with Plaintiffs and the Class members by failing to ensure compliance with the HIPAA security standard rules by their workforce, in violation of 45 CFR § 164.306(a)(4).

536. Defendants further breached the implied contracts with Plaintiffs and the Class members by impermissibly and improperly using and disclosing PHI that is and remains accessible to unauthorized persons, in violation of 45 CFR § 164.502, *et seq.*

537. Defendants further breached the implied contracts with Plaintiffs and the Class members by failing to design, implement, and enforce policies and procedures establishing physical administrative safeguards to reasonably safeguard PHI, in violation of 45 CFR § 164.530(c).

538. Defendants further breached the implied contracts with Plaintiffs and the Class members by otherwise failing to safeguard Plaintiffs' and Class members' Private Information.

539. A meeting of the minds occurred, as Plaintiffs and the Class members agreed, *inter alia*, to provide accurate and complete Private Information and to pay Defendants in exchange for Defendants' agreement to, *inter alia*, protect their Private Information.

540. Plaintiffs and the Class members have been damaged by Defendants' conduct, including the harms and injuries arising from the Data Breach now and in the future, as alleged herein.

## Count V – Unjust Enrichment

541.    This claim is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiffs under the law of each U.S. State or Territory on behalf of the Oracle Health State Subclasses; 3) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 4) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant State Subclass.

542.    Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

543.    Plaintiffs and the Class members conferred a benefit on Defendants by turning over their Private Information to Defendants and by paying for medical services (or having their insurance companies pay for medical services) that should have included cybersecurity protection to protect their Private Information. Plaintiffs and the Class members did not receive such protection.

544.    Upon information and belief, Defendants fund their data security measures entirely from their general revenue, including from payments made to it by Plaintiffs and the Class members (or on their behalf).

545.    As such, a portion of the payments made by Plaintiffs and the Class members is to be used to provide a reasonable and adequate level of data security that is in compliance with applicable state and federal regulations and industry standards, and the amount of the portion of each payment made that is allocated to data security is known to Defendants.

111

546. Defendants have retained the benefits of their unlawful conduct, including the amounts of payment received from Plaintiffs and the Class members that should have been used for adequate cybersecurity practices that they failed to provide.

547. Defendants knew that Plaintiffs and the Class members conferred a benefit upon them, which Defendants accepted. Defendants profited from these transactions and used the Private Information of Plaintiffs and the Class members for business purposes, while failing to use the payments it received for adequate data security measures that would have secured Plaintiffs' and the Class members' Private Information and prevented the Data Breach.

548. If Plaintiffs and the Class members had known that Defendants had not adequately secured their Private Information, they would not have agreed to provide such Private Information to Defendants.

549. Due to Defendants' conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendants to be permitted to retain the benefit of their wrongful conduct.

550. As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members have suffered and are at a continual, substantial, imminent risk of injury, as alleged herein.

551. Plaintiffs and the Class members are entitled to full refunds, restitution, and/or damages from Defendants and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which the Plaintiffs and Class members may seek restitution or compensation.

552. Plaintiffs and Class members may not have an adequate remedy at law against Defendants, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

## Count VI – Breach of Confidence

553. This claim is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiffs under the law of each U.S. State or Territory on behalf of the Oracle Health State Subclasses; 3) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 4) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant State Subclass.

554. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

555. Plaintiffs and the Class members have an interest, both equitable and legal, in the Private Information about them that was conveyed to, collected by, and maintained by Defendants and ultimately accessed and acquired in the Data Breach.

556. As healthcare service providers, Defendants have a special relationship with their patients, including Plaintiffs and Class members. Because of that special relationship, Defendants were provided with and stored Plaintiffs' and Class members' Private Information and had a duty to maintain such Information in confidence.

557. Patients like Plaintiffs and Class members have a privacy interest in personal medical and other matters, and Defendants had a duty not to disclose such matters concerning their patients.

113

558. As a result of the parties' relationship, Defendants had possession and knowledge of highly sensitive and confidential Private Information belonging to Plaintiffs and the Class members, information that was not generally known.

559. Plaintiffs and the Class members did not consent nor authorize Defendants to release or disclose their Private Information to an unknown criminal actor.

560. Defendants breached their duty of confidence owed to Plaintiffs and the Class members by, among other things: (a) mismanaging their computer systems and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of patient information that resulted in the unauthorized access and compromise of Plaintiffs' and Class members' Private Information; (b) mishandling their data security by failing to assess the sufficiency of their safeguards in place to control these risks; (c) failing to design and implement adequate information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust their information security program in light of the circumstances alleged herein; (f) failing to detect the Data Breach at the time it began or within a reasonable time thereafter; (g) failing to follow their own privacy policies and practices published to their patients; and (h) making an unauthorized and unjustified disclosure and release of Plaintiffs' and Class members' Private Information to a criminal third party.

561. But for Defendants' wrongful breach of their duty of confidence owed to Plaintiffs and Class members, their Private Information would not have been compromised.

562. As a direct and proximate result of Defendants' wrongful breach of their duty of confidence, Plaintiffs and the Class members have suffered and will continue to suffer the injuries and damages alleged herein.

114

563. It would be inequitable for Defendants to retain the benefit of controlling and maintaining Plaintiffs' and Class members' Private Information at the expense of Plaintiffs and the Class members.

564. Plaintiffs and the Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, and/or disgorgement or restitution, in an amount to be proven at trial.

## Count VII – Breach of Fiduciary Duty

565. This claim is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiffs under the law of each U.S. State or Territory on behalf of the Oracle Health State Subclasses; 3) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 4) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant State Subclass.

566. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

567. In providing their Private Information to Defendants, Plaintiffs and the Class members justifiably placed a special confidence in Defendants to act in good faith and with due regard for the interests of Plaintiffs and the Class members to safeguard and keep confidential that Private Information.

568. As healthcare service providers, Defendants have a fiduciary relationship to their clients, like Plaintiffs and Class members.

569. Because of that fiduciary relationship, Defendants were provided with and stored valuable and sensitive Private Information belonging to Plaintiffs and Class members, which they were required to maintain in confidence.

570. Defendants accepted the special confidence that Plaintiffs and Class members placed in it.

571. In light of the special relationship between Defendants, and Plaintiffs and Class members, whereby Defendants became guardians of Plaintiffs and Class members' Private Information, Defendants became fiduciaries by their undertaking and guardianship of the Private Information, to act primarily for the benefit of their customers, including Plaintiffs and Class members for the safeguarding of Plaintiffs' and Class members' Private Information.

572. Defendants have a fiduciary duty to act for the benefit of Plaintiffs and the Class members upon matters within the scope of their customer relationships, in particular, to keep secure the Private Information of their customers, exercise utmost care in protecting the Private Information in their possession from being compromised, lost, stolen, accessed by, misused by, or disclosed to unauthorized persons, and to timely notify Plaintiffs and the Class members of a data breach and disclosure.

573. Plaintiffs and Class members have a privacy interest in their Private Information.

574. Defendants breached their fiduciary duties to Plaintiffs and Class members by failing to protect the integrity of the systems containing Plaintiffs' and Class members' Private Information.

575. Defendants breached their fiduciary duties to Plaintiffs and Class members by otherwise failing to safeguard Plaintiffs and Class members' Private Information and by failing to timely notify and/or warn Plaintiffs and Class members of the Data Breach.

116

576. As a direct and proximate result of Defendants' breaches of their fiduciary duties, Plaintiffs and the Class members have suffered and will suffer injuries and damages as alleged herein.

577. As a direct and proximate result of Defendants' breaches of its fiduciary duties, Plaintiffs and the Class members will suffer other forms of injury and/or harm, and other economic and non-economic losses.

### Count VIII – Invasion of Privacy

578. This claim is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiffs under the law of each U.S. State or Territory on behalf of the Oracle Health State Subclasses; 3) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 4) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant State Subclass.

579. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

580. Plaintiffs and the Class members had a reasonable expectation of privacy in the Private Information Defendants mishandled.

581. As a result of Defendants' conduct, publicity was given to Plaintiffs' and Class members' Private Information, which necessarily includes matters concerning their private life.

582. A reasonable person of ordinary sensibilities would consider the publication of Plaintiffs' and the Class members' Private Information to be highly offensive.

583. Plaintiffs' and the Class members' Private Information is not of legitimate public concern and should remain private.

584. As a direct and proximate result of Defendants' public disclosure of private facts, Plaintiffs and the Class members are at a current and ongoing risk of identity theft and sustained injuries and damages as alleged herein.

585. Plaintiffs and the Class members are entitled to compensatory, consequential and nominal damages suffered as a result of the Data Breach.

586. Plaintiffs and the Class members are also entitled to injunctive relief requiring Defendants to, *inter alia*, (i) strengthen its data security systems and monitoring procedures; (ii) submit to future annual audits of those systems and monitoring procedures; and (iii) immediately provide adequate identity protection and credit monitoring services to all Class members.

## Count IX – Declaratory Judgment

587. This request for federal declaratory judgment is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiffs on behalf of the Oracle Health State Subclasses; 3) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 4) by the applicable Healthcare Provider Plaintiff(s) against the applicable Healthcare Provider Defendant, on behalf of the applicable Healthcare Provider Defendant State Subclass.

588. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

589. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. The Court has broad authority to restrain acts, such as those alleged herein, which are tortious and unlawful.

590. In the fallout of the Data Breach, an actual controversy has arisen about Defendants' various duties to use reasonable data security. On information and belief, Plaintiffs and the Class allege that Defendants' actions were—and *still* are—inadequate and unreasonable. And Plaintiffs and the Class members continue to suffer injury from the ongoing threat of fraud and identity theft.

591. Given its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

    a.    Defendants owed—and continue to owe—a legal duty to use reasonable data security to secure the data entrusted to them;

    b.    Defendants have a duty to notify impacted individuals of the Data Breach under the common law and Section 5 of the FTC Act;

    c.    Defendants breached, and continue to breach, their duties by failing to use reasonable measures to protect the data entrusted to them; and

    d.    Defendants' breaches of their duties caused—and continue to cause—injuries to Plaintiffs and Class members.

592. The Court should also issue corresponding injunctive relief requiring Defendants to use adequate security consistent with industry standards to protect the data entrusted to them.

593. If an injunction is not issued, Plaintiffs and the Class will suffer irreparable injury and lack an adequate legal remedy if Defendants experience a second data breach.

594. And if a second breach occurs, Plaintiffs and the Class will lack an adequate remedy at law because many of the resulting injuries are not readily quantified in full, and they will be forced to bring multiple lawsuits to rectify the same conduct. Simply put, monetary damages—

119

while warranted for out-of-pocket damages and other legally quantifiable and provable damages—cannot cover the full extent of Plaintiffs' and Class members' injuries.

595. If an injunction is not issued, the resulting hardship to Plaintiffs and the Class members far exceeds the minimal hardship that Defendants could experience if an injunction is issued. An injunction would benefit the public by preventing another data breach—thus preventing further injuries to Plaintiffs, Class members, and the public at large.

### Count X – Violation of the Arizona Consumer Fraud Act, A.R.S. §§ 44-1521, *et seq.*

596. This claim is brought by Arizona Plaintiff(s) against Oracle Health, on behalf of the Oracle Health Arizona Subclass.

597. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

598. Oracle Health are a "person" as defined by A.R.S. § 44-1521(6).

599. Oracle Health advertised, offered, or sold goods or services in Arizona and engaged in trade or commerce directly or indirectly affecting the people of Arizona.

600. Oracle Health engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts affecting the people of Arizona in connection with the sale and advertisement of "merchandise" (as defined in the Arizona Consumer Fraud Act, A.R.S § 44-1521(5)) in violation of A.R.S. § 44-1522(A).

601. Oracle Health's unfair and deceptive acts and practices included, but are not limited to:

    a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and the Subclass members' Private Information, which was a direct and proximate cause of the Data Breach;

120

b. Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Subclass member's Private Information, including duties imposed by the FTC Act 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that they would protect the privacy and confidentiality of Plaintiffs' and the Subclass members' Private Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and the Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiffs' and the Subclass members' Private Information; and

g. Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs and the Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

121

602.    Oracle Health's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Oracle Health's data security and ability to protect the confidentiality of consumers' Private Information.

603.    Oracle Health intended to mislead Plaintiffs and Arizona Subclass members and to induce them to rely on its misrepresentations and omissions.

604.    Had Oracle Health disclosed to Plaintiffs and the Subclass members that its data systems were not secure and, thus, vulnerable to attack, Oracle Health would have been unable to continue in business, and it would have been forced to adopt reasonable data security measures and comply with the law. Oracle Health was trusted with sensitive and valuable Private Information regarding thousands of patients and consumers, including Plaintiffs and the Subclass. Oracle Health accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiffs and the Subclass members acted reasonably in relying on Oracle Health's misrepresentations and omissions, the truth of which they could not have discovered.

605.    Oracle Health acted intentionally, knowingly, and maliciously to violate Arizona's Consumer Fraud Act, and recklessly disregarded Plaintiffs' and the Arizona Subclass members' rights. Oracle Health's numerous past data breaches put it on notice that its security and privacy protections were inadequate.

606.    As a direct and proximate result of Oracle Health's unfair and deceptive acts and practices, Plaintiffs and the Arizona Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including, but not limited to, fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud

122

and identity theft; loss of value of their Private Information; overpayment for Oracle Health's services; loss of the value of access to their Private Information; and the value of identity protection services made necessary by the Data Breach.

607. Plaintiffs and the Arizona Subclass members seek all monetary and non-monetary relief allowed by law, including compensatory damages; disgorgement; punitive damages; injunctive relief; reasonable attorneys' fees and costs; and any other relief that is just and proper.

### Count XI – Violation of the Arkansas Deceptive Trade Practices Act, A.C.A. §§ §§ 4-88-101, *et seq.*

608. This claim is brought: 1) by Arkansas Plaintiff(s) against Oracle Health, on behalf of the Oracle Health Arkansas Subclass; (2) by the applicable Healthcare Provider Plaintiff(s) against Arkansas Heart, on behalf of the Arkansas Heart Healthcare Provider Defendant Nationwide Subclass; 3) by the applicable Healthcare Provider Plaintiff(s) against Arkansas Heart, on behalf of the Arkansas Heart Healthcare Provider Defendant Arkansas Subclass.

609. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

610. Defendants are "persons" as defined by A.C.A. § 4-88-102(6) because they are an "organization, group, association, partnership, corporation, or any combination of them."

611. Defendants' services are "goods" and "services" as defined by A.C.A. §§ 4-88-102(5) and (8).

612. Defendants sold services in Arkansas and engaged in trade or commerce directly or indirectly affecting the people of Arkansas.

613. The Arkansas Deceptive Trade Practices Act ("ADTPA"), A.C.A. §§ 4-88-101, *et seq.*, prohibits unfair, deceptive, false, and unconscionable trade practices.

123

614. Defendants engaged in unconscionable, false, and deceptive acts and practices, including:

    a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Subclass members' Private Information, which was a direct and proximate cause of the Data Breach;

    b.    Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

    c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

    d.    Misrepresenting that they would protect the privacy and confidentiality of Plaintiffs' and Subclass members' Private Information, including by implementing and maintaining reasonable security measures;

    e.    Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

    f.    Omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiffs' and Subclass members' Private Information; and

124

g.    Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

615.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data security and ability to protect the confidentiality of Plaintiffs' and Subclass' Private Information.

616.    Defendants intended to mislead Plaintiffs and the Arkansas Subclass members and induce them to rely on its misrepresentations and omissions.

617.    Had Defendants disclosed to Plaintiffs and Subclass members that its data systems were not secure and, thus, vulnerable to attack, Defendants would have been unable to continue in business and would have been forced to adopt reasonable data security measures and comply with the law. Plaintiffs and Subclass members entrusted Defendants with their sensitive and valuable Private Information. Defendants accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiffs and the Subclass members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

618.    Defendants acted intentionally, knowingly, and maliciously to violate Arkansas's Deceptive Trade Practices Act, and recklessly disregarded Plaintiffs and the Arkansas Subclass members' rights.

619.    As a direct and proximate result of Defendants' unconscionable, unfair, and deceptive acts or practices and Plaintiffs' and the Arkansas Subclass members' reliance thereon, Plaintiffs and Arkansas Subclass members have suffered and will continue to suffer injury,

ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for Defendants' services; loss of the value of access to their Private Information; and the value of identity protection services made necessary by the Data Breach.

620. Plaintiffs and the Arkansas Subclass members seek all monetary and non-monetary relief allowed by law, including actual financial losses; injunctive relief; and reasonable attorneys' fees and costs.

<u>**Count XII–Violation of the California Consumer Privacy Act,**</u>
<u>**Cal. Bus. & Prof. Code §§ 1798.150, *et seq.* ("CCPA")**</u>

621. This claim is brought: 1) by California Plaintiff(s) against Oracle Health, on behalf of the Oracle Health California Subclass; (2) by the applicable Healthcare Provider Plaintiff(s) against Huntington, on behalf of the Huntington Healthcare Provider Defendant Nationwide Subclass; 3) by the applicable Healthcare Provider Plaintiff(s) against Huntington, on behalf of the Huntington Healthcare Provider Defendant California Subclass.

622. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

623. Defendants violated California Civil Code § 1798.150 of the CCPA by failing to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the nonencrypted Private Information of Plaintiffs and the California Subclass. As a direct and proximate result, Plaintiffs' and the California Subclass' nonencrypted and nonredacted Private Information was subject to unauthorized access and exfiltration, theft, or disclosure.

126

624. Defendants are "businesses" under the meaning of California Civil Code § 1798.140(d) because Defendants are "corporation[s], association[s], or other legal entit[ies] that [are] organized or operated for the profit or financial benefit of [their] shareholders or other owners" that "collect consumers' Private Information" and are active "in the State of California" and "had annual gross revenues in excess of twenty-five million dollars ($25,000,000) in the preceding calendar year."

625. Plaintiffs and the California Subclass seek injunctive or other equitable relief to ensure Defendants hereinafter adequately safeguard Private Information by implementing reasonable security procedures and practices. Such relief is particularly important because Defendants continue to hold Private Information, including Plaintiffs' and the California Subclass's Private Information. Plaintiffs and the California Subclass have an interest in ensuring that their Private Information is reasonably protected, and Defendants have demonstrated a pattern of failing to adequately safeguard this information.

626. On November 7, 2025, Defendants were sent written notice of their violations pursuant to Cal. Civ. Code § 1798.150 by Plaintiff Magliozzi. If Defendants cannot cure within 30 days—and Plaintiffs believe such cure is not possible under these facts and circumstances—then Plaintiffs intend to promptly amend this Complaint to seek statutory damages as permitted by the CCPA.

627. As described herein, an actual controversy has arisen and now exists as to whether Defendants implemented and maintained reasonable security procedures and practices appropriate to the nature of the information so as to protect the Private Information under the CCPA.

628. A judicial determination of this issue is necessary and appropriate at this time under the circumstances to prevent further data breaches by Defendants.

127

<u>**Count XIII – Violation of the California Confidentiality of Medical Information Act,**</u>
<u>**Cal. Civ. Code §§ 56,** *et seq.* **("CMIA")**</u>

629. This claim is brought: 1) by California Plaintiff(s) against Oracle Health, on behalf of the Oracle Health California Subclass; (2) by the applicable Healthcare Provider Plaintiff(s) against Huntington, on behalf of the Huntington Healthcare Provider Defendant Nationwide Subclass; 3) by the applicable Healthcare Provider Plaintiff(s) against Huntington, on behalf of the Huntington Healthcare Provider Defendant California Subclass.

630. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

631. Under California's Confidentiality of Medical Information Act ("CMIA"), "persons receiving health care services have a right to expect that the confidentiality of individual identifiable medical information derived by health service providers be reasonably preserved . . . [and it] is the intention of the Legislature in enacting this act, to provide for the confidentiality of individually identifiable medical information, while permitting certain reasonable and limited uses of that information." Cal. Civ. Code Div. 1, Pt. 2.6.

632. Furthermore, "[e]very provider of health care, health care service plan, pharmaceutical company, or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein." Cal. Civ. Code § 56.101(a).

633. And "[a]ny provider of health care, health care service plan, pharmaceutical company, or contractor who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided[.]" Cal. Civ. Code § 56.101(a).

128

634. Thus, "an individual may bring an action against a person or entity who has negligently released confidential information or records concerning him or her[.]" Cal. Civ. Code § 56.36(b).

635. Here, Defendants are subject to the CMIA because Defendants provide health care, and Defendants created, maintained, preserved, stored, abandoned, destroyed, and/or disposed of medical information regarding Plaintiffs and the California Subclass.

636. Defendants were negligent because they failed to take reasonable precautions to ensure their data systems were protected. As a result of Defendants' negligence, an unauthorized third-party viewed and obtained Plaintiffs' medical information.

637. As such, Defendants are liable for damages in an amount to be determined at trial, but not less than the statutorily provided nominal damages of $1,000 for each class member.

### Count XIV–Violation of the California Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*

638. This claim is brought: 1) by California Plaintiff(s) against Oracle Health, on behalf of the Oracle Health California Subclass; (2) by the applicable Healthcare Provider Plaintiff(s) against Huntington, on behalf of the Huntington Healthcare Provider Defendant Nationwide Subclass; 3) by the applicable Healthcare Provider Plaintiff(s) against Huntington, on behalf of the Huntington Healthcare Provider Defendant California Subclass.

639. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

640. Under the California Customer Records Act, any "person or business that conducts business in California, and that owns or licenses computerized data that includes Private Information" must "disclose any breach of the system following discovery or notification of the breach in the security of the data to any resident of California whose unencrypted Private

129

Information was, or is reasonably believed to have been, acquired by an unauthorized person." Cal. Civ. Code § 1798.82. The disclosure must "be made in the most expedient time possible and without unreasonable delay" but disclosure must occur "immediately following discovery [of the breach], if the Private Information was, or is reasonably believed to have been, acquired by an unauthorized person." *Id.* (emphasis added).

641. The Data Breach constitutes a "breach of the security system" of Defendants.

642. An unauthorized person acquired Plaintiffs' and the California Subclass's personal unencrypted information.

643. Defendants failed to provide legally compliant notice under § 1798.82(d) to Plaintiffs and Subclass members. On information and belief, to date, Defendant Oracle Health has not sent written notice of the Data Breach to all impacted individuals. As a result, Defendant has violated § 1798.82 by not providing legally compliant and timely notice to all Subclass members.

644. Defendants' unreasonable delay prevented Plaintiffs and Subclass members from taking appropriate measures to protect themselves against harm.

645. Because Plaintiffs and the Subclass members were unable to protect themselves, they suffered incrementally increased damages that they would not have suffered with timelier notice.

646. Plaintiffs and the Subclass members are entitled to equitable relief and damages in an amount to be determined at trial.

### Count XV – Violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*

647. This claim is brought: 1) by California Plaintiff(s) against Oracle Health, on behalf of the Oracle Health California Subclass; (2) by the applicable Healthcare Provider Plaintiff(s) against Huntington, on behalf of the Huntington Healthcare Provider Defendant Nationwide

130

Subclass; 3) by the applicable Healthcare Provider Plaintiff(s) against Huntington, on behalf of the Huntington Healthcare Provider Defendant California Subclass.

648. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

649. Defendants engaged in unlawful and unfair business practices in violation of Cal. Bus. & Prof. Code §§ 17200, *et seq*. which prohibit unlawful, unfair, or fraudulent business acts or practices ("UCL").

650. Defendants' conduct is unlawful because it violates the California Consumer Privacy Act of 2018, Civ. Code § 1798.100, *et seq*. (the "CCPA"); California's Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq.,* and other state data security laws.

651. Defendants stored Plaintiffs' and the California Subclass's Private Information in their computer systems and knew or should have known they did not employ reasonable, industry standard, and appropriate security measures that complied with applicable regulations and that would have kept Plaintiffs' and the Subclass's Private Information secure so as to prevent the loss or misuse of that Private Information.

652. Defendants failed to disclose to Plaintiffs and the Subclass that their Private Information was not secure. However, Plaintiffs and the Subclass were entitled to assume, and did assume, that Defendants had secured their Private Information. At no time were Plaintiffs or the Subclass on notice that their Private Information was not secure, which Defendants had a duty to disclose.

653. Defendants also violated Cal. Civ. Code § 1798.150 by failing to implement and maintain reasonable security procedures and practices, resulting in an unauthorized access and

131

exfiltration, theft, or disclosure of Plaintiffs' and the Subclass's nonencrypted and nonredacted Private Information.

654. Had Defendants complied with these requirements, Plaintiffs and the California Subclass would not have suffered damages related to the Data Breach.

655. Defendants' conduct was unlawful in that it violated the CCPA.

656. Defendants' acts, omissions, and misrepresentations as alleged herein were unlawful and in violation of, *inter alia*, Section 5(a) of the Federal Trade Commission Act.

657. Defendants' conduct was also unfair, in that it violated a clear legislative policy in favor of protecting consumers from data breaches.

658. Defendants' conduct is an unfair business practice under the UCL because it was immoral, unethical, oppressive, and unscrupulous and caused substantial harm. This conduct includes employing unreasonable and inadequate data security despite its business model of actively collecting Private Information.

659. Defendants also engaged in unfair business practices under the "tethering test." Its actions and omissions, as described above, violated fundamental public policies expressed by the California Legislature. *See, e.g.*, Cal. Civ. Code § 1798.1 ("The Legislature declares that . . . all individuals have a right of privacy in information pertaining to them . . . The increasing use of computers . . . has greatly magnified the potential risk to individual privacy that can occur from the maintenance of Private Information."); Cal. Civ. Code § 1798.81.5(a) ("It is the intent of the Legislature to ensure that Private Information about California residents is protected."); Cal. Bus. & Prof. Code § 22578 ("It is the intent of the Legislature that this chapter [including the Online Privacy Protection Act] is a matter of statewide concern."). Defendants' acts and omissions thus amount to a violation of the law.

660. Instead, Defendants made Plaintiffs' and the California Subclass' Private Information accessible to scammers, identity thieves, and other malicious actors, subjecting Plaintiffs and the Class to an impending risk of identity theft. Additionally, Defendants' conduct was unfair under the UCL because it violated the policies underlying the laws set out in the prior paragraph. As a result of those unlawful and unfair business practices, Plaintiffs and the Class suffered an injury-in-fact and have lost money or property.

661. The injuries to Plaintiffs and the Class greatly outweigh any alleged countervailing benefit to consumers or competition under all of the circumstances.

662. There were reasonably available alternatives to further Defendants' legitimate business interests, other than the misconduct alleged in this complaint.

663. Therefore, Plaintiffs and the Class are entitled to equitable relief, including restitution of all monies paid to or received by Defendants; disgorgement of all profits accruing to Defendants because of its unfair business practices; a permanent injunction enjoining Defendants' unlawful and unfair business activities; and any other equitable relief the Court deems proper.

## Count XVI – Violation of the California Privacy Rights Act, Cal. Civ. Code §§ 1798.100 *et seq.*

664. This claim is brought: 1) by California Plaintiff(s) against Oracle Health, on behalf of the Oracle Health California Subclass; (2) by the applicable Healthcare Provider Plaintiff(s) against Huntington, on behalf of the Huntington Healthcare Provider Defendant Nationwide Subclass; 3) by the applicable Healthcare Provider Plaintiff(s) against Huntington, on behalf of the Huntington Healthcare Provider Defendant California Subclass.

665. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

666. The CPRA expands upon the CCPA and imposes enhanced data protection obligations on businesses, including the requirement to provide notice, implement heightened security measures, and limit data retention.

667. Defendants failed to comply with these enhanced obligations, including but not limited to: (a) inadequate transparency regarding their data collection, storage, and use practices; (b) retaining personal information longer than necessary; and (c) failing to limit use and disclosure of sensitive personal data.

668. As a result of Defendants' non-compliance as outlined above, Plaintiff's and the Class's personal information were compromised.

669. Plaintiff seeks available statutory remedies, including but not limited to statutory and actual damages, injunctive relief, and attorney's fees and costs.

## Count XVII–Violation of the Florida Unfair and Deceptive Trade Practices Act, Fla. Stat. §§ 501.201 *et seq.*

670. This claim is brought: 1) by Florida Plaintiff(s) against Oracle Health, on behalf of the Oracle Health Florida Subclass; (2) by the applicable Healthcare Provider Plaintiff(s) against Baptist Health and Tallahassee Memorial, respectively, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 3) by the applicable Healthcare Provider Plaintiff(s) against Baptist Health and Tallahassee Memorial, respectively, on behalf of the applicable Healthcare Provider Defendant Florida Subclass.

671. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

672. Plaintiffs and the Florida Subclass members are "consumers" as defined by Fla. Stat. § 501.203 because Plaintiffs are individuals affected by violation of the Florida Unfair and Deceptive Trade Practices Act.

134

673.     Defendants advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly or indirectly affecting the people of Florida.

674.     Defendants engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce in violation of Fla. Stat. § 501.204(1), including, but not limited to:

   a.   Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Subclass members' Private Information, which was a direct and proximate cause of the Data Breach;

   b.   Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

   c.   Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Subclass members' Private Information, including duties imposed by the FTC Act 15 U.S.C. § 45 and Florida's data security statute, F.S.A. § 501.171(2) which was a direct and proximate cause of the Data Breach;

   d.   Misrepresenting that they would protect the privacy and confidentiality of Plaintiffs' and Subclass members' Private Information, including by implementing and maintaining reasonable security measures;

   e.   Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and the Subclass members'

135

Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Florida's data security statute, F.S.A. § 501.171(2);

f.  Omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiffs' and the Subclass members' Private Information; and

g.  Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs and the Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45 and Florida's data security statute, F.S.A. § 501.171(2).

675.  Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data security and ability to protect the confidentiality of consumers' Private Information.

676.  Defendants intended to mislead Plaintiffs and Florida Subclass members and induce them to rely on its misrepresentations and omissions.

677.  Had Defendants disclosed to Plaintiffs and the Subclass members that their data systems were not secure and, thus, vulnerable to attack, Defendants would have been unable to continue in business and they would have been forced to adopt reasonable data security measures and comply with the law. Defendants were trusted with sensitive and valuable Private Information regarding thousands of patients and consumers, including Plaintiffs and the Subclass. Defendants accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiffs and the Subclass members acted reasonably

in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

678. Defendants acted intentionally, knowingly, and maliciously to violate Florida's Consumer Fraud Act, and recklessly disregarded Plaintiffs and the Florida Subclass members' rights. Defendants' numerous past data breaches put it on notice that its security and privacy protections were inadequate.

679. As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiffs and the Florida Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including, but not limited to, fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for Defendants' services; loss of the value of access to their Private Information; and the value of identity protection services made necessary by the Data Breach.

680. Plaintiffs and the Florida Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages under Fla. Stat. § 501.211; declaratory and injunctive relief; reasonable attorneys' fees and costs under Fla. Stat. § 501.2105(1); including compensatory damages; disgorgement; punitive damages; injunctive relief; and any other relief that is just and proper.

### Count XVIII – Violation of the Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1 *et seq.*

681. This claim is brought: 1) by Indiana Plaintiff(s) against Oracle Health, on behalf of the Oracle Health Indiana Subclass; (2) by the applicable Healthcare Provider Plaintiff(s) against Union Health, on behalf of the Union Health Healthcare Provider Defendant Nationwide Subclass;

137

3) by the applicable Healthcare Provider Plaintiff(s) against Union Health, on behalf of the Union Health Healthcare Provider Defendant Indiana Subclass.

682. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

683. Defendants are "persons" as defined by Ind. Code § 24-5-0.5-2(a)(2).

684. Defendants are "suppliers" as defined by Ind. Code § 24-5-0.5-2(a)(3) because they regularly engage in or solicit "consumer transactions," within the meaning of Ind. Code § 24-5-0.5-2(a)(1).

685. Defendants engaged in unfair, abusive, and deceptive acts, omissions, and practices in connection with consumer transactions, in violations of Ind. Code § 24-5-0.5-3(a).

686. Plaintiffs and the Indiana Subclass members are "consumers" as defined by Ind. Code § 24-5-0.5-2(a)(3)(A) because Plaintiffs are persons who transacted with Defendants for personal or familial use.

687. Defendants' representations and omissions include both implicit and explicit representations:

    a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and the Subclass members' Private Information, which was a direct and proximate cause of the Data Breach;

    b. Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

138

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and the Subclass member's Private Information, including duties imposed by the FTC Act 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that they would protect the privacy and confidentiality of Plaintiffs' and Subclass members' Private Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and the Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiffs' and the Subclass members' Private Information; and

g. Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and the Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

688. Defendants' acts and practices were "unfair" because they caused or were likely to cause substantial injury to consumers which was not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or competition.

689. The injury to consumers from Defendants' conduct was and is substantial because it was non-trivial and non-speculative and involved a monetary injury and an unwarranted risk to the safety of their Private Information and/or the security of their identity and/or credit. The injury

to consumers was substantial not only because it inflicted harm on a significant number of consumers, but also because it inflicted a significant amount of harm on each consumer.

690. Consumers could not have reasonably avoided injury because Defendants' business acts and practices unreasonably created or took advantage of an obstacle to the free exercise of consumer decision-making. By withholding important information from consumers about the inadequacy of its data security, Defendants created an asymmetry of information between them and consumers that precluded consumers from taking action to avoid or mitigate injury.

691. Defendants' inadequate data security had no countervailing benefit to consumers or to competition.

692. Defendants' acts and practices were "abusive" for numerous reasons, including, but not limited to:

  a. Because they materially interfered with consumers' ability to understand a term or condition in a consumer transaction. Defendants' failure to disclose the inadequacies in its data security interfered with consumers' decision-making in a variety of their transactions.

  b. Because they took unreasonable advantage of consumers' lack of understanding about the material risks, costs, or conditions of a consumer transaction. Without knowing about the inadequacies in Defendants' data security, consumers lacked an understanding of the material risks and costs of a variety of their transactions.

  c. Because Defendants took unreasonable advantage of consumers' reasonable reliance that it was acting in their interests to secure their data.

693. Defendants also engaged in "deceptive" acts and practices in violation of Ind. Code § 24-5-0.5-3(a) and Ind. Code § 24-5-0.5-3(b), including:

a. Misrepresenting that the subject of a consumer transaction has performance, characteristics, or benefits it does not have which the supplier knows or should reasonably know it does not have;

b. Misrepresenting that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model if it is not and if the supplier knows or should reasonably know that it is not; and

c. Misrepresenting that the subject of a consumer transaction will be supplied to the public in greater quantity (i.e. more data security) than the supplier intends or reasonably expects.

694. Defendants intended to mislead Plaintiffs and the Indiana Subclass members and induce them to rely on their misrepresentations and omissions.

695. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data security and ability to protect the confidentiality of consumers' Private Information.

696. Had Defendants disclosed to Plaintiffs and the Subclass members that their data systems were not secure and, thus, vulnerable to attack, Defendants would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendants were trusted with sensitive and valuable Private Information regarding thousands of patients and consumers, including Plaintiffs and the Subclass. Defendants accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiffs and the Subclass members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

141

697. Defendants had a duty to disclose the above-described facts due to the circumstances of this case, the sensitivity and extensivity of the Private Information in their possession, and the generally accepted professional standards. This duty arose due to the representations and relationship between Defendants and Plaintiffs and the Indiana Subclass as described herein. In addition, such a duty is implied by law due to the nature of the relationship between consumers—including Plaintiffs and the Indiana Subclass—and Defendants, because consumers are unable to fully protect their interests with regard to their data, and placed trust and confidence in Defendants. Defendants' duty to disclose also arose from its:

a. Possession of exclusive knowledge regarding the security of the data in its systems;

b. Active concealment of the state of its security; and/or

c. Incomplete representations about the security and integrity of its computer and data systems, and its prior data breaches, while purposefully withholding material facts from Plaintiffs and the Indiana Subclass that contradicted these representations.

698. Defendants acted intentionally, knowingly, and maliciously to violate Indiana's Deceptive Consumer Sales Act, and recklessly disregarded Plaintiffs and the Indiana Subclass members' rights. Defendants' numerous past data breaches put them on notice that their security and privacy protections were inadequate. Defendants' actions were not the result of a mistake of fact or law, honest error or judgment, overzealousness, mere negligence, or other human failing.

699. Despite receiving notice, Defendants have not cured their unfair, abusive, and deceptive acts and practices, and/or its violations of the Indiana Deceptive Consumer Sales Act were and are incurable.

700. Defendants' conduct includes incurable deceptive acts that Defendants engaged in as part of a scheme, artifice, or device with intent to defraud or mislead under Ind. Code § 24-5-0.5-2(a)(8).

701. As a direct and proximate result of Defendants' uncured or incurable unfair, abusive, and deceptive acts and/or practices, Plaintiffs and the Indiana Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including, but not limited to fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for Defendants' services; loss of the value of access to their Private Information; and the value of identity protection services made necessary by the Data Breach.

702. Defendants' violations present a continuing risk to Plaintiffs and the Indiana Subclass members as well as to the general public.

703. Plaintiffs and the Indiana Subclass members seek all monetary and non-monetary relief allowed by law, including the greater of actual damages of $500 for each non-willful violation; the greater of treble damages or $1,000 for each willful violation; restitution; reasonable attorneys' fees and costs; injunctive relief, punitive damages; and all other relief which is just and proper.

### Count XIX – Violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010 *et seq.*

704. This claim is brought: 1) by all Plaintiffs against Oracle Health, on behalf of the Oracle Health Nationwide Class, or alternatively, (2) by Missouri Plaintiff(s) against Oracle Health, on behalf of the Oracle Health Missouri Subclass; 3) by the applicable Healthcare Provider Plaintiff(s) against Mosaic, on behalf of the Mosaic Healthcare Provider Defendant Nationwide

143

Subclass; 3) by the applicable Healthcare Provider Plaintiff(s) against Mosaic, on behalf of the Mosaic Healthcare Provider Defendant Missouri Subclass.

705. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

706. Mo. Rev. Stat. § 407.020 prohibits the use of any "deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce…"

707. An "unfair practice" is defined by Missouri law, Mo. Code Regs. Ann. tit. 15 § 60-8.020, as any practice which:

    a.    either-

        i.    offends any public policy as it has been established by the Constitution, statutes or common law of this state, or by the Federal Trade Commission, or its interpretive decisions; or

        ii.    is unethical, oppressive or unscrupulous;

    b.    and presents a risk of, or causes, substantial injury to consumers.

708. Mo. Code Regs. Ann. tit. 15 § 60-8.040 provides that an "Unfair Practice" includes for any person in connection with the advertisement or sale of merchandise to violate the duty of good faith in solicitation, negotiation and performance, or in any manner fail to act in good faith.

709. Plaintiffs, Missouri Subclass members, and Defendants are "persons" within the meaning of § 407.010(5).

710. Merchandise is defined by the MMPA, to include the providing of "services" and, therefore, encompasses healthcare services.

711.     Efforts to maintain the privacy and confidentiality of medical records are part of the healthcare services associated with a good.

712.     Maintenance of medical records are "merchandise" within the meaning of section 407.010(4).

713.     Plaintiffs' and the Subclass members' goods and services purchased from Defendants were for "personal, family or household purposes" within the meaning of the Missouri Merchandising Practices Missouri Revised Statutes.

714.     As set forth herein, Defendants' acts, practices and conduct violate section 407.010(1) in that, among other things, Defendants have used and/or continues to use unfair practices, concealment, suppression and/or omission of material facts in connection with the advertising, marketing, and offering for sale of services associated with healthcare services. Such acts offend the public policy established by Missouri statute and constitute an "unfair practice" as that term is used in Missouri Revised Statute § 407.020(1).

715.     Defendants' unfair, unlawful, and deceptive acts, practices and conduct include: (1) representing to its patients that it will not disclose their sensitive personal health information to an unauthorized third party or parties; (2) failing to implement security measures such as securing the records in a safe place; (3) failing to train personnel; and (4) charging patients for privacy services which were not provided.

716.     Defendants' conduct also violates the enabling regulations for the MMPA because it: (1) offends public policy; (2) is unethical, oppressive and unscrupulous; (3) causes substantial injury to consumers; (4) it is not in good faith; (5) is unconscionable; and (6) is unlawful. *See* Mo Code Regs. Ann tit. 15 § 60-8.

717. As a direct result of Defendants' breach of its duty of confidentiality and privacy and the disclosure of Plaintiffs' confidential medical information, Plaintiff suffered damages, including, without limitation, loss of the benefit of the bargain, exposure to heightened future risk of identity theft, loss of privacy, confidentiality, embarrassment, humiliation, and loss of enjoyment of life.

718. As a direct and proximate cause of Defendants' unfair and deceptive acts, Plaintiffs and the Subclass members suffered damages in that they (1) paid more for medical record privacy protections than they otherwise would have, and (2) paid for medical record privacy protections that they did not receive. In this respect, Plaintiffs and the Subclass members have not received the benefit of the bargain and have suffered an ascertainable loss.

719. Plaintiffs and the Subclass members seek actual damages for all monies paid to Defendants in violation of the MMPA. In addition, Plaintiffs and the Subclass members seek attorneys' fees, and all other relief that is just and reasonable.

### Count XX–Violation of the New York Deceptive Trade Practices Act, N.Y. Gen. Bus. Law §§ 349 *et seq.*

720. This claim is brought: 1) by New York Plaintiff(s) against Oracle Health, on behalf of the Oracle Health New York Subclass; (2) by the applicable Healthcare Provider Plaintiff(s) against Albany Med and Glens Falls, respectively, on behalf of the applicable Healthcare Provider Defendant Nationwide Subclass; 3) by the applicable Healthcare Provider Plaintiff(s) against Albany Med and Glens Falls, respectively, on behalf of the applicable Healthcare Provider Defendant New York Subclass.

721. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

146

722. Defendants engaged in deceptive acts and/or practices in the conduct of its business, trade, and commerce or furnishing of services, in violation of N.Y. Gen. Bus. Law § 349, including:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and the Subclass members' Private Information, which was a direct and proximate cause of the Data Breach;

b. Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Subclass member's Private Information, including duties imposed by the FTC Act 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that they would protect the privacy and confidentiality of Plaintiffs' and the Subclass members' Private Information, including by implementing and maintaining reasonable security measures;

e. Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and the Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

f. Omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiffs' and the Subclass members' Private Information; and

147

g.     Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and the Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

723.   Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Oracle Health's data security and ability to protect the confidentiality of consumers' Private Information.

724.   Defendants acted intentionally, knowingly, and maliciously to violate New York's General Business Law and recklessly disregarded Plaintiffs' and the New York Subclass members' rights. Defendants' numerous past data breaches put it on notice that its security and privacy protections were inadequate.

725.   As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiffs and the New York Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including, but not limited to, fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for Defendants' services; loss of the value of access to their Private Information; and the value of identity protection services made necessary by the Data Breach.

726.   Defendants' deceptive and unlawful acts and practices complained of herein affected the public interest and consumers at large, including the many New Yorkers affected by the Data Breach.

148

727. The aforementioned deceptive and unlawful practices, acts, and omissions by Defendants caused substantial injury to Plaintiffs and the New York Subclass members that they could not reasonably avoid.

728. Plaintiffs and the New York Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $50 (whichever is greater), treble damages, injunctive relief, attorneys' fees and costs, and all other relief that is just and reasonable.

### Count XXI–Violation the Montana Data Breach Notification Law
### Mont. Code Ann. §§ 30-14-1704 *et seq.*

729. This claim is brought: 1) by Montana Plaintiff(s) against Oracle Health, on behalf of the Oracle Health Montana Subclass; (2) by the applicable Healthcare Provider Plaintiff(s) against Sapphire, on behalf of the Sapphire Healthcare Provider Defendant Nationwide Subclass; 3) by the applicable Healthcare Provider Plaintiff(s) against Sapphire, on behalf of the Sapphire Healthcare Provider Defendant Montana Subclass.

730. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

731. Defendants are a "person or business" that conducts business in the State of Montana and maintains computerized data that includes "personal information" as defined by Mont. Code Ann. § 30-14-1704(4)(b).

732. Pursuant to Mont. Code Ann. § 30-14-1704(2), Defendants had a duty to disclose the Data Breach to the Montana Subclass members immediately following discovery of the Data Breach because:

   a. Personal information was compromised in the Data Breach;

   b. Defendants do not own the information that was compromised; and

149

c.     Montana Subclass members' personal information was and is reasonably believed to have been acquired by an unauthorized person.

733.    Defendants experienced a "breach of the security of the data system," as defined by Mont. Code Ann. § 30-14-1704(4)(a), involving the unauthorized acquisition of computerized data that materially compromised the security, confidentiality, or integrity of personal information maintained by Defendants and that caused or is reasonably believed to have caused loss or injury to Montana residents.

734.    The Private Information compromised in the Data Breach is protected "personal information" as defined in Mont. Code Ann. § 30-14-1704(4)(b) because the compromised information includes some or all of the following data elements, and either the name or the data elements are not encrypted:

a.     Social Security number;

b.     driver's license number, state identification card number, or tribal identification card number;

c.     account number or credit or debit card number, in combination with any required security code, access code, or password that would permit access to an individual's financial account;

d.     medical record information as defined in Mont. Code Ann. § 33-19-104;

e.     a taxpayer identification number; or

f.     an identity protection personal identification number issued by the United States internal revenue service.

735.    Defendants' failure to timely notify the Montana Subclass members of the Data Breach deprived them of the opportunity to take timely and appropriate measures to protect

150

themselves from identity theft, fraud, and other harms resulting from the unauthorized acquisition of their Private Information.

736. As a direct and proximate result of Defendants' conduct, Plaintiff and the Montana Subclass members have suffered and will continue to suffer injury, ascertainable losses of money and/or property, and monetary and non-monetary damages, as described herein, including, but not limited to: fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for Defendants' services; loss of value of access to their Private Information; and the value of identity protection services made necessary by the Data Breach.

737. Plaintiff and the Montana Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, civil penalties, attorneys' fees and costs, and any other relief that is just and proper.

### Count XXII–Violation the Montana Consumer Protection Act (MCPA), Mont. Code Ann. §§ 30-14-101 *et seq.*

738. This claim is brought: 1) by Montana Plaintiff(s) against Oracle Health, on behalf of the Oracle Health Montana Subclass; (2) by the applicable Healthcare Provider Plaintiff(s) against Sapphire, on behalf of the Sapphire Healthcare Provider Defendant Nationwide Subclass; 3) by the applicable Healthcare Provider Plaintiff(s) against Sapphire, on behalf of the Sapphire Healthcare Provider Defendant Montana Subclass.

739. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

740. Defendants are a "persons" as identified in Mont. Code Ann. § 30-14-102(6).

151

741.    Defendants' distribution of goods and services and other things of value constituted "trade" and "commerce" as defined by Mont. Code Ann. § 30-14-102(8)(a) because Defendants advertised, sold, and/or distributed services affecting Montana Subclass members.

742.    Defendants, in the course of its business, engaged in unlawful practices in violation of Mont. Code Ann. § 30-14-103, including, but not limited to the following:

a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and the Subclass members' Private Information, which was a direct and proximate cause of the Data Breach;

b.    Failing to identify and remediate foreseeable security and privacy risks and adequately improve security and privacy measures despite knowing the risk of cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and the Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

d.    Misrepresenting that they would protect the privacy and confidentiality of Plaintiff's and the Subclass members' Private Information, including by implementing and maintaining reasonable security measures;

e.    Misrepresenting that they would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and the Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45;

152

f. Omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiffs' and the Subclass members' Private Information; and

g. Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and the Subclass members' Private Information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

743. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data security and ability to protect the confidentiality of consumers' Private Information.

744. Defendants intended to mislead Plaintiff and the Montana Subclass members and induce them to rely on its misrepresentations and omissions.

745. Had Defendants disclosed to Plaintiff and the Subclass members that its data systems were not secure and, thus, vulnerable to attack, Defendants would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Defendants were trusted with sensitive and valuable Private Information regarding thousands of patients and consumers, including Plaintiffs and the Subclass. Defendants accepted the responsibility of protecting the data while keeping the inadequate state of its security controls secret from the public. Accordingly, Plaintiff and the Subclass members acted reasonably in relying on Defendants' misrepresentations and omissions, the truth of which they could not have discovered.

746. The above unlawful practices and acts by Defendants were immoral, unethical, oppressive, unscrupulous, and substantially injurious. These acts caused substantial injury to Plaintiff and the Montana Subclass members.

747. Defendants acted intentionally, knowingly, and maliciously to violate Montana's Consumer Protection Act, and recklessly disregarded Plaintiffs and Class members' rights. Defendants' numerous past data breaches put it on notice that their security and privacy protections were inadequate.

748. As a direct and proximate result of Defendants' unlawful practices, Plaintiff and the Montana Subclass members have suffered and will continue to suffer injury, ascertainable losses of money and/or property, and monetary and non-monetary damages, as described herein, including, but not limited to: fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for Defendants' services; loss of value of access to their Private Information; and the value of identity protection services made necessary by the Data Breach.

749. Plaintiff and the Montana Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, civil penalties, attorneys' fees and costs, and any other relief that is just and proper.

### Count XXIII –Violation of the Montana Uniform Health Care Information Act, Mont. Code Ann. §§ 50-16-501 *et seq.*

750. This claim is brought: 1) by Montana Plaintiff(s) against Oracle Health, on behalf of the Oracle Health Montana Subclass; (2) by the applicable Healthcare Provider Plaintiff(s) against Sapphire, on behalf of the Sapphire Healthcare Provider Defendant Nationwide Subclass;

3) by the applicable Healthcare Provider Plaintiff(s) against Sapphire, on behalf of the Sapphire Healthcare Provider Defendant Montana Subclass.

751. Plaintiffs restate the allegations in Paragraphs 1 through 471 above, as if fully set forth herein.

752. Defendants are health care providers subject to Mont. Code Ann. § 50-16-501.

753. Defendants maintain "health care information" as defined by § 50-16-504(6) because Defendants are entrusted with information that identifies or can readily be associated with the identity of a patient and relates to the patient's health care.

754. Mont. Code Ann. § 50-16-501 requires healthcare entities to adopt reasonable safeguards to protect the confidentiality, integrity, and security of health care information (§ 50-16-511).

755. Defendants failed to implement and maintain adequate security safeguards to protect the health care information of the Montana Subclass members because it failed to prevent the unauthorized access and failed to monitor and timely detect the unauthorized access.

756. As a result of Defendants' inadequate safeguards, unauthorized individuals gained access to the health care information of Montana Subclass members, including names, dates of birth, Social Security numbers, medical record numbers, diagnoses, treatment information, and insurance details, constituting a breach of the security and confidentiality of Private Information.

757. Defendants violated Mont. Code Ann. § 50-16-501 by permitting the disclosure of Montana Subclass Members' Private Information without the authorization of Subclass Members.

758. As a direct and proximate result of Defendants' violations, Plaintiff and the Montana Subclass members have suffered and will continue to suffer injury, ascertainable losses of money and/or property, and monetary and non-monetary damages, as described herein,

155

including, but not limited to: fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; loss of value of their Private Information; overpayment for Oracle Health's services; loss of value of access to their Private Information; and the value of identity protection services made necessary by the Data Breach.

759. Plaintiff and the Montana Subclass members seek all monetary and non-monetary relief allowed by law, including actual damages, civil penalties, attorneys' fees and costs, and any other relief that is just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and the Class members request judgment against Defendants and that the Court enter an order:

a. Certifying this action as a class action, defining the Classes as requested herein, appointing the undersigned as class counsel, and finding that Plaintiffs are proper and adequate representatives of the Classes requested herein;

b. Awarding Plaintiffs and Class members appropriate monetary relief, including actual damages, statutory damages, nominal damages, equitable relief, restitution, disgorgement, and statutory costs;

c. Awarding injunctive and other equitable relief as necessary to protect the interests of the Classes as requested herein;

d. Instructing Defendants to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiff and Class members;

e. Requiring Defendants to pay the costs involved in notifying Class members about the judgment and administering the claims process;

156

f. Requiring Defendants to implement enhanced data security measures in order to better protect the Private Information in their possession and control;

g. Awarding Plaintiffs and Class members prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

h. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Class members demand a trial by jury on all triable issues.

157

DATE: November 7, 2025   Respectfully submitted,

*/s/ Norman E. Siegel*

Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64113
Tel: (816) 714-7112
siegel@stuevesiegel.com

Tyler W. Hudson
**WAGSTAFF & CARTMELL**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1177
thudson@wcllp.com

Lynn A. Toops
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenmalad.com

Thomas E. Loeser
**COTCHETT PITRE & MCCARTHY LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272
tloeser@cpmlegal.com

*Co-Lead Interim Class Counsel*

158

J. Gerard Stranch, IV
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com

*Chair of Plaintiffs' Executive Committee*

Raina Borrelli
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel: (872) 263-1100
raina@straussborrelli.com

Casondra Turner
**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC**
800 S. Gay Street, Suite 100
Knoxville, TN 37929
Tel: (771) 772-3086
cturner@milberg.com

Leanna Loginov
**SHAMIS & GENTILE**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
lloginov@shamisgentile.com

Jeff Ostrow
**KOPELOWITZ OSTROW, P.A.**
1 West Las Olas Boulevard, 5th Floor
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
ostrow@kolawyers.com

Patrick D. Donathen
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
patrick@lcllp.com

159

Laura Van Note
**COLE & VAN NOTE**
155 12th Street, Suite 2100
Oakland, CA 94607
Tel: (510) 891-9800
lvn@colevannote.com

James Treglio
**POTTER HANDY LLP**
100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel: (415) 534-1911
jimt@potterhandy.com

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (877) 882-1011
cschaffer@lfsblaw.com

Elena Belov
**ALMEIDA LAW GROUP**
849 W. Webster Avenue
Chicago, IL 60614
Tel: (708) 232-3274
elena@almeidalawgroup.com

Anthony Parkhill
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph Street, Suite 1630
Chicago, IL 60606
Tel: (312) 621-2000
aparkhill@barnowlaw.com

Paul Doolittle
**POULIN WILLEY ANASTOPOULO LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
paul.doolittle@poulinwilley.com

*Plaintiffs' Executive Committee*

160