**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| IN RE: CERNER/ORACLE DATA BREACH LITIGATION | Case No. 25-00259-CV-W-BP |
|---|---|

**HEALTHCARE PROVIDER DEFENDANTS' SUGGESTIONS IN SUPPORT OF THEIR MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**


I. Introduction .......... 1

II. Relevant Factual Allegations .......... 2

III. Plaintiffs Lack Standing .......... 4

IV. Plaintiffs Fail To State Any Viable Claims Against The HPDs .......... 5

A. Standard of Review .......... 5

B. Choice of Law .......... 6

C. Plaintiffs Fail To Plausibly Allege Any Common Law Claims Against HPDs .......... 7

D. Plaintiffs Fail To State A Negligence Claim (Count I) .......... 8

E. Plaintiffs Fail To State A Claim For Negligence *Per Se* (Count II) .......... 11

F. Plaintiffs Fail To State A Third-Party Beneficiary Claim (Count III) .......... 12

G. Plaintiffs Fail To State A Breach Of Implied Contract Claim (Count IV) .......... 14

H. Plaintiffs Fail To State A Claim For Unjust Enrichment (Count V) .......... 16

I. Plaintiffs Fail To State A Breach Of Confidence Claim (Count VI) .......... 18

J. Plaintiffs Fail To State A Fiduciary Duty Claim (Count VII) .......... 19

K. Plaintiffs Fail To Plead An Invasion Of Privacy Claim (Count VIII) .......... 22

V. Plaintiffs' Statutory Claims Fail .......... 23

A. Plaintiffs' Arkansas Deceptive Trade Practices Act Claim Fails (Count XI – against Arkansas Heart) .......... 23

B. Plaintiffs' CCPA and CPRA Claims Fail (Counts XII and XVI – against Huntington) .......... 26

C. Plaintiffs' CMIA Claim Fails (Count XIII – against Huntington) .......... 28

D. Plaintiffs' CCRA Claim Fails (Count XIV – against Huntington) .......... 30

E. Plaintiffs' UCL Claim Fails (Count XV – against Huntington) .......... 31

F. Plaintiffs' FDUTPA Claim Fails (Count XVII – against Baptist Health and Tallahassee Memorial) .......... 33

G. Plaintiffs' IDCSA Claim Fails (Count XVIII – against Union Health) .......... 35

H. Plaintiffs' MMPA Claim Fails (Count XIX – against Mosaic) .......... 37

I. Plaintiffs' N.Y. GBL Claim Fails (Count XX – against Albany Med and Glens Falls) .......... 37

J. Plaintiffs' Declaratory Judgment Claim Fails (Count IX) .......... 39

VI. Conclusion .......... 39

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*,
19 N.Y.S.3d 850 (Sup. Ct. 2015) ........ 12, 38

*Advantage Env't Consultants, LLC v. Ground Zero Field Servs., LLC*,
2021 WL 4846810 (D. Md. Oct. 15, 2021) ........ 13

*Aldi, Inc. v. Eagles' Landing Shopping Ctr., LLC*,
2025 WL 3726768 (W.D. Mo. Sept. 12, 2025) ........ 39

*Allied Servs., LLC v. Smash My Trash, LLC*,
2024 WL 2842633 (W.D. Mo. May 16, 2024) ........ 16

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*,
2021 WL 5937742 (D.N.J. Dec. 16, 2021) ........ 33, 34

*Apex Oil Co. v. Jones Stephens Corp.*,
881 F.3d 658 (8th Cir. 2018) ........ 26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 5, 6

*Aspen Am. Ins. Co. v. Blackbaud, Inc.*,
624 F. Supp. 3d 982 (N.D. Ind. 2022) ........ 11, 21

*In re Bank of Am. Cal. Unemployment Benefits Litig.*,
674 F. Supp. 3d 884 (S.D. Cal. 2023) ........ 28

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 5, 6

*Berry v. Crescent Cmty. Health Ctr.*,
2025 WL 1287909 (N.D. Iowa May 2, 2025) ........ 10

*Bozek v. Ariz. Labor Force Inc.*,
2025 WL 264174 (D. Ariz. Jan. 22, 2025) ........ 19

*Breitkopf v. Gentile*,
41 F. Supp. 3d 220 (E.D.N.Y. 2014) ........ 8

*Brenmar Holdings, LLC v. Regions Bank, N.A.*,
2016 WL 4270206 (S.D. Fla. Aug. 15, 2016) ........ 8

*In re Brinker Data Incident Litig.*,
2020 WL 691848 (M.D. Fla. Jan. 27, 2020)....................19, 31, 33, 34

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
238 F. Supp. 3d 1359 (S.D. Fla. 2017) ....................16, 17

*Carriuolo v. Gen. Motors Co.*,
823 F.3d 977 (11th Cir. 2016) ....................33

*Castagna v. Newmar Corp.*,
2016 WL 3413770 (N.D. Ind. June 22, 2016) ....................36

*Cel-Tech Commc'ns, Inc. v. LA Cellular Tel. Co.*,
973 P.2d 527 (Cal. 1999) ....................32

*Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC*,
400 S.W.3d 701 (Ark. 2012)....................12

*Chambers v. Stern*,
347 Ark. 395 (2002)....................8

*Charles v. Russell*,
2025 WL 2196247 (D. Md. Aug. 1, 2025) ....................22

*Cmty. Health Network, Inc. v. McKenzie*,
185 N.E.3d 368 (Ind. 2022) ....................22

*Cohen v. Chau*,
2019 WL 6655392 (C.D. Cal. July 23, 2019)....................22

*Cole v. Laws*,
349 Ark. 177 (2002)....................20

*Cook v. Orkin Exterminating Co., Inc.*,
258 P.3d 149 (Ariz. App. 2011)....................19

*Cousin v. Sharp Healthcare*,
681 F. Supp. 3d 1117 (S.D. Cal. 2023)....................21

*Cravens v. Garda CL Se., Inc.*,
2024 WL 5058304 (S.D. Fla. Dec. 9, 2024)....................21

*Crowe v. Managed Care of N. Am.*,
2024 WL 6863341 (S.D. Fla. Aug. 16, 2024)....................10

*Curtis Lumber Co. v. La. Pac. Corp.*,
618 F.3d 762 (8th Cir. 2010) ....................24, 25, 26

*Davis v. Bank of Am. Corp.*,
2012 WL 3637903 (D. Ariz. Aug. 23, 2012) ........................................................ 21

*Dodd v. Jones*,
623 F.3d 563 (8th Cir. 2010) ........................................................ 11

*Doe v. Kaiser Found. Health Plan, Inc.*,
2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........................................................ 29

*Duffy v. Lewis Brothers Bakeries, Inc.*,
760 F. Supp. 3d 704 (S.D. Ind. 2024) ........................................................ 12

*Durell v. Sharp Healthcare*,
108 Cal. Rptr. 3d 682 (Cal. App. 2010) ........................................................ 18

*Durgan v. U-Haul Int'l Inc.*,
2023 WL 12140653 (D. Ariz. July 28, 2023) ........................................................ 36

*Emergency Phys. Servs. of New York v. UnitedHealth Grp., Inc.*,
2021 WL 4437166 (S.D.N.Y. Sept. 28, 2021) ........................................................ 14

*Emondson v. 2001Live, Inc.*,
2017 WL 10085028 (M.D. Fla. Mar. 30, 2017) ........................................................ 18

*Fero v. Excellus Health Plan, Inc.*,
236 F. Supp. 3d 735 (W.D.N.Y. 2017) ........................................................ 13

*In re Fortra File Transfer Software Data Sec. Breach Litig.*,
749 F. Supp. 3d 1240 (S.D. Fla. 2024) ........................................................ 13

*Freeman-Oak Hill Health Sys. v. LivaNova USA, Inc.*,
2024 WL 6967286 (W.D. Mo. July 22, 2025) ........................................................ 7, 11

*Gabriele v. ConAgra Foods, Inc.*,
2015 WL 3904386 (W.D. Ark. June 25, 2015) ........................................................ 24

*Gardiner v. Walmart Inc.*,
2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) ........................................................ 11, 16

*Gardner v. Health Net, Inc.*,
2010 WL 11597979 (C.D. Cal. Aug. 12, 2010) ........................................................ 32

*Garlach v. Senters*,
2007 WL 1725464 (N.D. Ind. June 11, 2007) ........................................................ 8

*In re GEICO Customer Data Breach Litig.*,
2023 WL 4778646 (E.D.N.Y. July 21, 2023) ........................................................ 39

*Griffey v. Magellan Health Inc.*,
562 F. Supp. 3d 34 (D. Ariz. 2021) ....................16, 17, 34, 35

*Gunn v. Wortman*,
684 S.W.3d 340 (Ark. App. 2024)....................13

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................32

*Harrill v. Emanuel Med. Ctr.*,
2025 WL 1635428 (E.D. Cal. June 9, 2025) ....................14, 16

*Hatchell v. Wren*,
211 S.W.3d 516 (Ark. 2005)....................16

*HC2, Inc. v. Delaney*,
510 F. Supp. 3d 86 (S.D.N.Y. 2020)....................19

*Howland v. Truman Med. Ctr., Inc.*,
719 S.W.3d 98 (Mo. App. 2025) ....................11

*Jarvis v. Traka USA LLC*,
2024 WL 4651937 (D. Ariz. Nov. 1, 2024)....................14

*Jasper v. Abbott Labs., Inc.*,
834 F. Supp. 2d 766 (N.D. Ill. 2011) ....................36, 37

*Joe v. Olive Branch Assisted Living LLC*,
2025 WL 2306976 (D. Ariz. Aug. 11, 2025)....................22

*Jones v. Awad*,
252 Cal. Rptr. 3d 596 (Cal. App. 2019)....................12

*JPMorgan Chase Bank, N.A. v. Nowak*,
2025 WL 1938541 (S.D.N.Y. July 15, 2025) ....................23

*K.C. Prop. of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC*,
373 Ark. 14 (2008)....................14

*Kautz v. Residence Inn by Marriott, LLC*,
2014 WL 4416012 (M.D. Fla. Sept. 5, 2014) ....................22

*Kuhns v. Scottrade, Inc.*,
868 F.3d 711 (8th Cir. 2017) ....................10, 15, 37

*Kulkarni v. Wolf*,
503 F. Supp. 3d 908 (W.D. Mo. 2020) ....................39

*Lilly v. Univ. of Cal.-San Diego*,
2023 WL 5444776 (S.D. Cal. Aug. 23, 2023) ....................8

*Litchfield v. Rinehart*,
2022 WL 3716525 (D. Md. Aug. 29, 2022) ....................8

*Maag v. U.S. Bank, Nat'l Ass'n*,
2021 WL 5605278 (S.D. Cal. Apr. 8, 2021) ....................28

*Mackey v. Belden, Inc.*,
2021 WL 3363174 (E.D. Mo. Aug. 3, 2021) ....................18, 35, 36

*Magluta v. Samples*,
256 F.3d 1282 (11th Cir. 2001) ....................8

*Manion v. Ameri-Can Freight Sys. Inc.*,
2019 WL 8325752 (D. Ariz. Oct. 11, 2019) ....................12

*In re MCG Health Data Sec. Issue Litig.*,
2023 WL 3057428 (W.D. Wash. Mar. 27, 2023) ....................36

*McKinney v. State*,
693 N.E.2d 65 (Ind. 1998) ....................35

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022) .................... *passim*

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
605 F. Supp. 3d 1218 (N.D. Cal. 2022) ....................28

*Mofor v. Lyft, Inc.*,
2025 WL 2450881 (Md. App. Aug. 26, 2025) ....................20

*In re Monat Hair Care Prods. Mktg., Sales Prac. & Prods. Liab. Litig.*,
2019 WL 5423457 (S.D. Fla. Oct. 23, 2019) ....................34

*Monterey Mushrooms, Inc. v. HealthCare Strategies, Inc.*,
2021 WL 1909592 (D. Md. May 12, 2021) ....................16

*Morales v. Conifer Rev. Cycle Sols., LLC*,
2025 WL 1096396 (C.D. Cal. Mar. 31, 2025) ....................30, 31

*Motal v. Allstate Prop. & Cas. Ins. Co.*,
2023 WL 3515690 (8th Cir. May 18, 2023) ....................25, 26

*Neibert v. Perdomo*,
54 N.E.3d 1046 (Ind. App. 2016) ....................16

*Nickel v. Stephens College*,
480 S.W.3d 390 (Mo. App. W.D. 2015) .......... 14

*Oden v. Boston Sci. Corp.*,
330 F. Supp. 3d 877 (E.D.N.Y. 2018) .......... 38

*Oginsky v. Paragon Props. of Costa Rica LLC*,
784 F. Supp. 2d 1353 (S.D. Fla. 2011) .......... 8

*Ohanian v. Apple Inc.*,
2021 WL 5331753 (S.D.N.Y. Nov. 16, 2021) .......... 16, 18

*Ortiz v. Perkins & Co.*,
2022 WL 16637993 (N.D. Cal. Nov. 2, 2022) .......... 9, 15

*Parnell v. FanDuel, Inc.*,
591 S.W.3d 315 (Ark. 2019) .......... 24, 25, 26

*Partin v. Baptist Healthcare Sys., Inc.*,
2022 WL 10078122 (S.D. Ind. Oct. 17, 2022) .......... 13

*In re Payless Cashways*,
203 F.3d 1081 (8th Cir. 2000) .......... 6

*People v. McKale*,
602 P.2d 731 (Cal. 1979) .......... 32

*Perkins v. Nat'l LGBTQ Task Force, Inc.*,
580 F. Supp. 3d 1236 (S.D. Fla. 2021) .......... 35

*Pirozzi v. Apple Inc.*,
913 F. Supp. 2d 840 (N.D. Cal. 2012) .......... 17

*In re Polaris Mktg., Sales Pracs., and Prods. Liab. Litig.*,
9 F.4th 793 (8th Cir. 2021) .......... 5

*Polkowski v. Jack Doheny Cos.*,
2025 WL 3079358 (E.D. Mich. Nov. 4, 2025) .......... 10

*Popovic v. Spinogatti*,
2016 WL 2893426 (D. Ariz. May 18, 2016) .......... 8

*Pork Plus, LLC v. Choice Genetics USA, LLC*,
2021 WL 9667325 (W.D. Mo. Feb. 22, 2021) .......... 6

*Prudential Ins. Co. of Am. v. Kamrath*,
475 F.3d 920 (8th Cir. 2007) .......... 7

*Quinalty v. FocusIT LLC*,
2024 WL 5223587 (D. Ariz. Dec. 26, 2024) ....................17

*R&R Propane, LLC v. Tiger Payment Sols., LLC*,
756 F. Supp. 3d 734 (E.D. Mo. 2024)....................20

*R.C. v. Sussex Publishers, LLC*,
2025 WL 948060 (N.D. Cal. Mar. 28, 2025)....................29

*Roberson v. Dakota Boys & Girls Ranch*,
42 F.4th 924 (8th Cir. 2022) ....................6

*Rodriguez v. Mena Hosp. Comm'n*,
2023 WL 7198441 (W.D. Ark. Nov. 1, 2023)....................21, 22

*Ronnoco Coffee, LLC v. Westfeldt Brothers, Inc.*,
939 F.3d 914 (8th Cir. 2019) ....................6

*Rosemann v. Sigillito*,
2011 WL 13248373 (E.D. Mo. Oct. 31, 2011)....................8

*Ross v. Cecil Cnty. Dep't of Social Servs.*,
878 F. Supp. 2d 606 (D. Md. 2012)....................18

*Schaaf v. Residential Funding Corp.*,
517 F.3d 544 (8th Cir. 2008) ....................6

*Shah v. Capital One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025)....................31, 32

*Shea v. Gen. Motors LLC*,
567 F. Supp. 3d 1011 (N.D. Ind. 2021) ....................36

*Skalla v. Canepari*,
430 S.W.3d 72 (Ark. 2013)....................24, 26

*Smahaj v. Retrieval-Masters Creditors Bur., Inc.*,
131 N.Y.S.3d 817 (Sup. Ct. 2020)....................12, 16, 38

*Snyder v. Allen*,
2020 WL 1233815 (S.D.N.Y. Mar. 13, 2020) ....................38

*In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012)....................31

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................4

*Stern v. Does*,
978 F. Supp. 2d 1031 (C.D. Cal. 2011) .......................................................................13

*In re SuperValu, Inc.*,
925 F.3d 955 (8th Cir. 2019) ..........................................................................11, 17

*Sutter Health v. Sup. Ct.*,
174 Cal. Rptr. 3d 653 (Cal. App. 2014)........................................................................29

*Tate v. EyeMed Vision Care, LLC*,
2023 WL 6383467 (S.D. Ohio Sept. 29, 2023) ...............................................................27

*Tatone v. SunTrust Mortg., Inc.*,
857 F. Supp. 2d 821 (D. Minn. 2012)..............................................................................7

*Tesar v. Union R-XI Sch. Dist.*,
2017 WL 528318 (E.D. Mo. Feb. 9, 2017).....................................................................22

*Tieman v. Am. Risk Servs., LLC*,
2025 WL 2434233 (W.D. Mo. Aug. 22, 2025)................................................................12

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)..................................................................................................4, 5

*Truland Serv. Corp. v. McBride Elec., Inc.*,
2011 WL 1599543 (D. Md. Apr. 27, 2011) ....................................................................14

*Tully v. Bank of Am., N.A.*,
2011 WL 1882665 (D. Minn. May 17, 2011)....................................................................7

*Udo v. Wells Fargo Bank, N.A.*,
2023 WL 8600791 (N.D. Cal. Dec. 12, 2023) .................................................................28

*Vuong v. CBAC Borrower, LLC*,
2025 WL 3706370 (D. Md. Dec. 22, 2025).....................................................................11

*W Agripacking, S.A. de C.V. v. Fresh Touch Distrib., Inc.*,
2015 WL 5084133 (D. Ariz. Aug. 28, 2015)...................................................................13

*Wakley v. Sustainable Local Foods LLC*,
2017 WL 1880814 (S.D. Ind. May 9, 2017)....................................................................14

*Wallis v. Ford Motor Co.*,
208 S.W.3d 153 (Ark. 2005)..........................................................................................26

*Walton v. U.S. Steel Corp.*,
2011 WL 2447723 (N.D. Ind. June 15, 2011) .................................................................18

*In re Waste Mgmt. Data Breach Litig.*,
2022 WL 561734 (S.D.N.Y. Feb. 24, 2022) .......... 10, 21

*Webb v. Green Tree Servicing, LLC*,
2012 WL 2065539 (D. Md. June 7, 2012) .......... 12

*Weinberg v. Advanced Data Processing, Inc.*,
147 F. Supp. 3d 1359 (S.D. Fla. 2015) .......... 11

*Yazdianpour v. Safeblood Techs., Inc.*,
779 F.3d 530 (8th Cir. 2015) .......... 25

**Statutes**

Ark. Code Ann. § 4-88-107(a)(1), (a)(3), and (a)(5) .......... 24

Ark. Code Ann. §§ 4-88-107(a), 4-88-113(f)(1)–(2) .......... 24

Ark. Code Ann. § 4-88-113 (2024) .......... 23

Ark. Code Ann. § 4-88-113(f)(1)(A) .......... 23, 24

Arkansas Deceptive Trade Practices Act .......... 23

Cal. Civ. Code § 1798.145 (a)(1)(G) .......... 27

Cal. Civ. Code § 1798.150(a)(1) .......... 26, 27

Cal. Code. Regs. tit. 11 § 7001(p) .......... 27

California Consumer Privacy Act .......... 26

*California Consumer Protection Act*, https://www.oag.ca.gov/privacy/ccpa .......... 28

California Customer Records Act Section 1798.82 .......... 30, 31

California Privacy Rights Act .......... 28

California Unfair Competition Law .......... 31

CCPA .......... 26, 27, 28, 32

CCRA .......... 30, 31

CMIA .......... 28, 29, 30, 32

CPRA .......... 26, 28

Declaratory Judgment Act, 28 U.S.C. § 2201 .......... 39

FDUTPA ....................................................................................................33, 34, 35

Fla. Stat. § 501.211(2)....................................................................................................33

Florida Deceptive and Unfair Trade Practices Act ....................................................................33

FTC Act ....................................................................................................12

FTCA ....................................................................................................11

GBL....................................................................................................37, 38, 39

HIPAA ....................................................................................................11, 12, 26, 27

IDCSA....................................................................................................35, 36, 37

Indiana Deceptive Consumer Sales Act....................................................................................35

Medical Information Act....................................................................................................28

Missouri Merchandising Practices Act ....................................................................................37

MMPA ....................................................................................................37

New York General Business Law Section 349 ......................................................................37, 38

UCL....................................................................................................31, 32, 33

**Rules**

Fed. R. Civ. P. 9(b) ....................................................................................................34, 35

Federal Rule of Civil Procedure 12(b)(1) ..........................................................................2, 4

Federal Rule of Civil Procedure 12(b)(6) ..........................................................................1, 2, 5

Rule 8 ....................................................................................................7, 8

**Other Authorities**

Arkansas Constitution Amendment 89 ....................................................................................24

## I. Introduction

Plaintiffs' sprawling 759-paragraph Consolidated Class Action Complaint ("CCAC") asserts an array of claims against Defendant Cerner Corporation ("Cerner") and ten healthcare providers ("HPDs") arising from the February 2025 data security incident experienced by Cerner ("Cerner Incident"). It is undisputed that this incident occurred *solely* on Cerner's system, and did not affect the systems belonging to any named HPD.

HPDs each contracted with Cerner as their electronic health records ("EHR") systems vendor, and each had patient information stolen by the criminal threat actor during the Cerner Incident. The mere fact that their vendor, Cerner, was the target of a criminal cyberattack, without more, does not mean that HPDs did anything wrong. Indeed, nowhere in the CCAC do Plaintiffs plausibly allege any specific act that they contend HPDs did or did not do that led to the Cerner data security incident.

Plaintiffs' claims against HPDs should be dismissed. Throughout the CCAC, Plaintiffs repeatedly and improperly lump together Cerner and HPDs as "Defendants," even when describing the data security incident that occurred entirely within Cerner's environment. Plaintiffs' failure to allege specific facts or articulate distinct theories of liability as to each individual HPD warrants dismissal. And, although Plaintiffs assert a panoply of claims (22 in total) against HPDs, none satisfies the pleading standard set forth in Federal Rule of Civil Procedure 12(b)(6).

Accordingly, Albany Med Health System ("Albany Med"), Arkansas Heart Hospital, LLC ("Arkansas Health"), Baptist Health South Florida, Inc. ("Baptist Health"), Glens Falls Hospital ("Glens Falls"), Pasadena Hospital Association, Ltd. d/b/a Huntington Hospital ("Huntington"), LifeBridge Health, Inc. ("LifeBridge"), Heartland Regional Medical Center d/b/a Mosaic Life Care, Inc. ("Mosaic"), Tallahassee Memorial HealthCare, Inc. ("Tallahassee

Memorial"), and Union Health System, Inc. ("Union Health"),[1] through their respective counsel, submit this joint Motion to Dismiss and respectfully request that the Court dismiss the CCAC pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing and 12(b)(6) for failure to state a claim upon which relief can be granted.[2]

## II. Relevant Factual Allegations

Plaintiffs' CCAC alleges nine (9) common law causes of action against both Cerner and HPDs on behalf of twenty-three (23) Plaintiffs that reside in nine (9) states. The CCAC also alleges thirteen (13) state statutory causes of action against certain of HPDs, for a total of twenty-two (22) claims. CCAC ¶¶ 330–339.[3]

Cerner provided EHR systems and software to various healthcare providers throughout the United States. *Id.* ¶¶ 344, 363. An EHR system is a software and data storage platform that allows healthcare providers to create, store, and manage patients' information, including contact information, health history, results, treatments, diagnoses, medications, and other information. *Id.* ¶ 346. In 2022, Oracle acquired Cerner and rebranded Cerner as Oracle Health (hereinafter, Cerner and Oracle Health referred to as "Cerner"). *Id.* ¶ 344. Cerner contracted with each of the HPDs to provide EHR and related services, including the management and migration of patient

---

[1] In the CCAC, Plaintiffs do not identify HPDs by their full legal names and instead refer to them solely by shorthand or incorrect names, which HPDs adopt for this Motion only.

[2] Defendant Sapphire Community Health ("Sapphire") had not been served at the time the motions to dismiss schedule was entered and is not represented by the undersigned counsel.

[3] The CCAC asserts 23 claims in total; however, Count X is asserted against only Cerner and Counts XXI–XXIII are asserted against only Cerner and Sapphire and, thus, are not addressed herein. In addition, not all HPDs are named in each of Plaintiffs' claims against HPDs. The chart attached as Exhibit A identifies each claim, the Defendants against whom each claim is asserted, the particular Plaintiff(s) asserting the claim, and the applicable class or subclass. The chart attached as Exhibit B identifies each HPD, state of incorporation and principal place of business, claims against it, and Plaintiffs asserting the claims against it.

data. *Id.* ¶ 363. Plaintiffs do not have a direct relationship with Cerner; Plaintiffs provided their information to HPDs for the purpose of receiving healthcare services.

On or around January 22, 2025, criminal actors gained access to Cerner's legacy servers and accessed and downloaded certain patient information, including Plaintiffs' personally identifiable information ("PII") and protected health information ("PHI") (the "Cerner Incident"). *Id.* ¶¶ 2, 369. Plaintiffs allege that the "stolen Private Information" includes names, social security numbers, birthdates, driver's license numbers, treating physicians' names, dates of service, medication information, health insurance information, and diagnostic and treatment information. *Id.* ¶ 369.

Cerner learned about the attack on or around February 20, 2025. *Id.* ¶¶ 2, 370. Since that time, Cerner provided notice to approximately 40 healthcare providers whose patient information was involved in the Cerner Incident. *Id.* ¶¶ 371–73. Cerner has not provided notice directly to any patient. *Id.* ¶ 370. As HPDs received notice from Cerner, patients of each HPD were notified of the Cerner Incident. *Id.* ¶¶ 377–84.[4]

Plaintiffs allege scant details about HPDs, noting only their location and, for some of HPDs, when they each "informed Plaintiffs and Class members" of the Cerner Incident:

- Albany Med and Glens Falls are New York corporations that provided notice on August 1, 2025, *id.* ¶¶ 330, 333, 382;
- Arkansas Heart is the "fictious name of MedCath of Little Rock, LLC" and is a North Carolina limited liability company[5] that provided notice on August 12, 2025, *id.* ¶¶ 331, 384;
- Baptist Health is a Florida corporation that provided notice in late July 2025, *id.* ¶¶ 332,

[4] The majority of the remainder of Plaintiffs' "factual allegations" are general statements about the healthcare sector and generic allegations that could be copied and pasted for any data security incident. *Id.* ¶¶ 387–442.

[5] Arkansas Heart is an Arkansas limited liability company.

380;

- Mosaic is a Missouri corporation that provided notice in June 2025, *id.* ¶¶ 334, 383;
- Tallahassee Memorial is a Florida corporation that provided notice on June 13, 2025, *id.* ¶¶ 335, 381[6]; and
- Union Health is an Indiana corporation that provided notice on April 21, 2025, *id.* ¶¶ 336, 377.

Although Plaintiffs allege that Huntington is a California limited liability company, LifeBridge is a Maryland corporation, and Sapphire is a Montana corporation, Plaintiffs make no allegations relating to those entities providing notice. *Id.* ¶¶ 337–39.

Plaintiffs seek to represent a nationwide class composed of all persons whose personal information was provided to Cerner through an HPD and compromised in the Cerner Incident. *Id.* ¶ 460. Plaintiffs also seek to represent nine (9) subclasses of individuals from Arizona, Arkansas, California, Florida, Indiana, Maryland, Missouri, Montana, and New York whose personal information was provided to Cerner through an HPD and compromised in the Cerner Incident. *Id.*

## III. Plaintiffs Lack Standing

Plaintiffs lack standing and the Court should dismiss their claims under Federal Rule 12(b)(1). Plaintiffs have not established the "irreducible constitutional minimum of standing [to sue]." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Standing requires that (i) each suffered an injury in fact that is concrete, particularized and actual or imminent; (ii) the injury was likely caused by the defendant; and (iii) the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). At this stage, Plaintiffs "must assert facts that affirmatively and plausibly suggest that the pleader has the right he claims (here, the

[6] Tallahassee Memorial provided an additional notice to patients on December 15, 2025.

right to jurisdiction), rather than facts that are merely consistent with such a right." *In re Polaris Mktg., Sales Pracs., and Prods. Liab. Litig.*, 9 F.4th 793, 796 (8th Cir. 2021). Cerner's Motion to Dismiss addressed in detail why Plaintiffs' allegations fail to establish standing. ECF 161. Those arguments, which are incorporated herein by reference, are equally applicable to HPDs, and support dismissal of Plaintiffs' claims against HPDs.

In addition, Plaintiff Tracy Wright lacks standing to bring any claim against LifeBridge. Wright alleges she is a LifeBridge patient and that she received a notice from LifeBridge "on or around August 12, 2025, notifying her that her Private Information was improperly accessed." CCAC ¶¶ 176, 182. Wright is the sole Named Plaintiff asserting claims against LifeBridge. To establish standing, Wright must demonstrate concrete harm. *TransUnion*, 594 U.S. at 417. Contrary to her allegations, Wright never received any notification from LifeBridge and does not appear on the list of potentially impacted patients provided to LifeBridge by Cerner. (Cohen Declaration ¶¶ 6–7, attached hereto as Exhibit C.) Moreover, Wright claims that she received notice on August 12, 2025, yet LifeBridge's notices were not sent to patients until October 17, 2025. (Cohen Decl. ¶ 5.) Because Wright's information was not involved in the Cerner Incident, she cannot, by definition, suffer any concrete harm traceable to any Defendant, let alone LifeBridge. As she is the only individual asserting claims against LifeBridge, Counts I–IX against LifeBridge must be dismissed.

## IV. Plaintiffs Fail To State Any Viable Claims Against The HPDs

### A. Standard of Review

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6). A complaint "must include sufficient factual information to provide the 'grounds' on which the

claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). "'[N]aked assertions devoid of further factual enhancement,' do not suffice, nor do '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678).

**B. Choice of Law**

For purposes of this Motion, HPDs analyzed each common law claim under the laws of the state of Missouri—the principal place of business for Cerner whose data security incident is at the heart of Plaintiffs' claims—as well as the laws of the states where Plaintiffs reside and where HPDs maintain their principal places of business: Arizona, Arkansas, California, Florida, Indiana, Maryland, and New York.[7] "Under Missouri's choice-of-law rules, courts apply the substantive law of the state with the 'most significant relationship' to the occurrence and the parties." *Pork Plus, LLC v. Choice Genetics USA, LLC*, 2021 WL 9667325, at *2 (W.D. Mo. Feb. 22, 2021).

For purposes of this Motion, the Court need not determine the state with the most significant relationship to each claim and Plaintiff. As explained herein, each of the jurisdictions at issue here would identically treat the majority of the common law claims. *See, e.g.*, *Ronnoco Coffee, LLC v. Westfeldt Brothers, Inc.*, 939 F.3d 914, 920 (8th Cir. 2019) ("[W]here the laws of the two jurisdictions would produce the same result on the particular issue presented, there is a 'false conflict,' and the Court should avoid the choice-of-law question."); *In re Payless Cashways*, 203 F.3d 1081, 1084 (8th Cir. 2000) ("[B]ecause the relevant law of both Missouri and Texas is substantially similar, we will not entangle ourselves in the morass of a choice of law

[7] Sapphire is not represented by undersigned counsel, thus Montana law was not analyzed.

determination."). And, even where states' laws differ, the outcome here is the same—each of Plaintiffs' claims should be dismissed. *See, e.g.*, *Freeman-Oak Hill Health Sys. v. LivaNova USA, Inc.*, 2024 WL 6967286, at *2 (W.D. Mo. July 22, 2025) (choice of law analysis not required where dismissal of the claim would be warranted under either state's law); *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007) ("We need not decide whether Missouri law or New York law applies in this case because the outcome would be the same under either law.").

### C. Plaintiffs Fail To Plausibly Allege Any Common Law Claims Against HPDs

Plaintiffs improperly lump together allegations against Cerner and HPDs as "Defendants." *See, e.g.*, CCAC ¶¶ 366, 386, 401, 404–06, 418–21, 454–55, 481–84, 486, 498–99, 501–03, 526, 528–38, 548–50, 560, 574–75, 581, 584, 590. Nearly all of the 163-page, 759-paragraph CCAC concerns Cerner's alleged conduct or omissions masked as that of "Defendants." Each individual HPD is only referenced by name in material factual allegations when Plaintiffs describe each HPD's privacy policies and notices. CCAC ¶¶ 351–57. Further, the nine common law claims asserted against "Defendants" contain no particularized allegations as to any individual HPD. *See* Counts I–IX.

Such group pleading is insufficient under Rule 8. *See Tatone v. SunTrust Mortg., Inc.*, 857 F. Supp. 2d 821, 831–40 (D. Minn. 2012) (dismissing complaint where the elements of a cause of action were "cut and paste[d]" and one claim alleged "border[ed] on frivolous" which appeared to be an effort to see which claims "would stick"); *Tully v. Bank of Am., N.A.*, 2011 WL 1882665 at *6 (D. Minn. May 17, 2011) ("Plaintiffs assert each of the causes of action against the Defendants generally, but do not otherwise specify which claims are asserted against any particular defendant, or which specific claims each Plaintiff is asserting. Thus, the [ ] Defendants, and the Court, are left to guess which Plaintiffs are asserting which claims against

which Defendants. The Court concludes that such pleading is inadequate and that Rule 8 requires greater specificity than that found in Plaintiffs' Amended Complaint.") (citations omitted); *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (ordering district court to strike complaint "replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants charged, though geographic and temporal realities make plain that all of the defendants could not have participated in every act complained of"); *Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1361–62 (S.D. Fla. 2011) (dismissing complaint that alleged undifferentiated misconduct by multiple defendants). Plaintiffs' generalized allegations about "Defendants" leave HPDs—and the Court—to guess which claims apply to which parties. This does not satisfy Rule 8, and Counts I–IX against HPDs should be dismissed.

**D. Plaintiffs Fail To State A Negligence Claim (Count I)**

To state a negligence claim, Plaintiffs must plead "(1) the existence of a legal duty owed to the plaintiff; (2) breach of that duty through a negligent act by the defendant; (3) proximate causation between the breach and the resulting injury; and (4) resulting damages." *Rosemann v. Sigillito*, 2011 WL 13248373, at *22 (E.D. Mo. Oct. 31, 2011); *see also Popovic v. Spinogatti*, 2016 WL 2893426, at *10 (D. Ariz. May 18, 2016) (same); *Chambers v. Stern*, 347 Ark. 395, 406 (2002)(same); *Lilly v. Univ. of Cal.-San Diego*, 2023 WL 5444776, at *19 (S.D. Cal. Aug. 23, 2023) (same); *Brenmar Holdings, LLC v. Regions Bank, N.A.*, 2016 WL 4270206, at *2 (S.D. Fla. Aug. 15, 2016) (same); *Garlach v. Senters*, 2007 WL 1725464, at *4 (N.D. Ind. June 11, 2007) (same); *Litchfield v. Rinehart*, 2022 WL 3716525, at *9 (D. Md. Aug. 29, 2022) (same); *Breitkopf v. Gentile*, 41 F. Supp. 3d 220, 271 (E.D.N.Y. 2014) (same). Plaintiffs' negligence claim fails because Plaintiffs have not plausibly alleged a duty breached by HPDs or any damages caused by HPDs.

It is undisputed that the Cerner Incident occurred on the systems of Cerner alone, and did not involve the systems of any HPD. Indeed, Plaintiffs concede—as they must—that their PII was impacted when "a criminal had accessed [*Cerner's*] legacy servers." CCAC ¶ 2. Yet, Plaintiffs repeatedly attribute actions generically to "Defendants" that allegedly enabled an attacker to access and acquire files and also claim "Defendants" breached their duty to "safeguard[] Plaintiffs' and Class members' Private Information within Defendants' possession." *See, e.g.*, CCAC ¶¶ 366, 368, 481. Plaintiffs even go so far as to label the incident "*Defendants'* Data Breach." CCAC ¶¶ 401, 449 (emphasis added). This framing is misleading because only one Defendant—Cerner—experienced a cyberattack.

Although Plaintiffs allege in conclusory fashion various duties allegedly owed to them by Cerner and HPDs—*e.g.*, to safeguard and protect "private Information in their possession," to use "adequate security procedures and systems compliant with industry standards," to "implement processes to quickly identify a data breach"—Plaintiffs do not allege facts to support a claim that HPDs breached any of these alleged duties.

Further, Plaintiffs have not pled facts to support another material element of their negligence claim: that HPDs proximately caused any injury. *Ortiz v. Perkins & Co.*, 2022 WL 16637993 (N.D. Cal. Nov. 2, 2022), is instructive. There, a third-party criminal breached systems belonging to a vendor that hosted data—not the accounting firm that retained the vendor. Although no unauthorized access occurred on the accounting firm's systems, the plaintiff in that case asserted a negligence claim against the firm. The court dismissed the negligence claim, holding that "Plaintiff cannot simply rely on the breach of Defendant's vendor to demonstrate negligence by Defendant; Plaintiff needs to specifically explain the duties that ***Defendant*** breached, and how that breach caused Plaintiff's harm." *Id.* at *5.

The same reasoning applies here. Plaintiffs' claims against HPDs hinge entirely on a breach of *Cerner's* system. Indeed, Plaintiffs' assertion that HPDs' "improper security measures and storage" enabled "the attacker [to] access and acquire[] files" (CCAC ¶ 368) is nonsensical given that HPDs' systems were never compromised. Plaintiffs allege no acts or omissions by HPDs that could reasonably be characterized as the proximate cause of Plaintiffs' alleged damages. The only well-pleaded factual allegation that Plaintiffs make in support of their negligence claim is that Cerner experienced a data breach when a bad actor illegally accessed Cerner's systems and stole information from those systems. CCAC ¶ 2. The fact that HPDs' vendor was the target of a criminal cyberattack, without more, does not mean that HPDs breached any duty of care. *See Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717 (8th Cir. 2017) (rejecting "implied premise that because data was hacked [the defendant's] protections must have been inadequate" as "a 'naked assertion[] devoid of further factual enhancement' that cannot survive a motion to dismiss"); *Berry v. Crescent Cmty. Health Ctr.*, 2025 WL 1287909, at *6 (N.D. Iowa May 2, 2025) ("Simply because a [data incident] occurred does not mean that it necessarily follows that defendant did anything wrong."); *Polkowski v. Jack Doheny Cos.*, 2025 WL 3079358, at *9 (E.D. Mich. Nov. 4, 2025) (dismissing negligence claim, holding that "[e]ven full compliance with industry standards does not necessarily guarantee complete security against cyberattacks; so without more, the Court cannot plausibly conclude that Defendant breached its duty to the Plaintiff"); *In re Waste Mgmt. Data Breach Litig.*, 2022 WL 561734, at *4–5 (S.D.N.Y. Feb. 24, 2022) (similar); *Crowe v. Managed Care of N. Am.*, 2024 WL 6863341, at *6 (S.D. Fla. Aug. 16, 2024) (similar). Accordingly, the negligence claim should be dismissed.

Moreover, even if Plaintiffs could identify a specific duty that HPDs allegedly breached that resulted in the claimed damages, which they cannot, Plaintiffs' negligence claim would still

be barred by the economic loss rule in several relevant jurisdictions where Mosaic (MO), Huntington (CA), Union Health (IN), and LifeBridge (MD) are located. Under the economic loss doctrine, a plaintiff cannot recover purely economic losses in tort absent an accompanying personal injury or property damage. Courts routinely apply this rule to data breach cases. *See, e.g.*, *Freeman-Oak Hill Health Sys.*, 2024 WL 6967286, at *3–4; *Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *8 (N.D. Cal. Mar. 5, 2021) (same; holding that time spent monitoring credit or taking preventive measures is not recoverable under the economic loss doctrine) (collecting cases); *Aspen Am. Ins. Co. v. Blackbaud, Inc.*, 624 F. Supp. 3d 982, 1002–05 (N.D. Ind. 2022) (dismissing negligence claim under the economic loss doctrine);*Vuong v. CBAC Borrower, LLC*, 2025 WL 3706370, at *3 (D. Md. Dec. 22, 2025).

Here, Plaintiffs seek only economic damages supposedly arising from the Cerner Incident. Plaintiffs do not—and cannot—allege any personal injury or property damage. Accordingly, the economic loss rule squarely bars Plaintiffs' negligence claim.

### E. Plaintiffs Fail To State A Claim For Negligence *Per Se* (Count II)

Plaintiffs attempt to base their negligence *per se* claim on alleged violations of the FTC Act and the Health Insurance Portability and Accountability Act of 1996 ("HIPAA")—statutes that indisputably provide no private right of action. *See In re SuperValu, Inc.*, 925 F.3d 955, 963 (8th Cir. 2019) ("The FTCA creates no private right of action."); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010) ("HIPAA does not create a private right of action."). Several jurisdictions implicated here (MO, FL, IN, NY) hold that statutes lacking a private right of action cannot serve as the predicate for a negligence *per se* claim. *See e.g.*, *Howland v. Truman Med. Ctr., Inc.*, 719 S.W.3d 98, 110 (Mo. App. 2025) ("Because these statutes [including HIPAA] do not provide a private right of action, a breach of these statutes does not constitute negligence *per se*."); *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1365–66 (S.D. Fla.

2015) (Florida courts do not recognize negligence *per se* claims based on federal statutes lacking private rights of action); *Duffy v. Lewis Brothers Bakeries, Inc.*, 760 F. Supp. 3d 704, 722–23 (S.D. Ind. 2024) (dismissing Indiana negligence *per se* claim where "the lack of a private right of action in the FTC Act provides sufficient evidence that it should not be used as a basis for a negligence *per se* claim"); *Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*, 19 N.Y.S.3d 850, 859 (Sup. Ct. 2015) (dismissing negligence *per se* claim because HIPAA has no private right of action); *Smahaj v. Retrieval-Masters Creditors Bur., Inc.,* 131 N.Y.S.3d 817, 827 (Sup. Ct. 2020) (same for FTC Act).

Further, courts in Arizona, Arkansas, California, and Maryland do not recognize negligence *per se* as an independent cause of action at all, providing further support for dismissal of Plaintiffs' claims against Arkansas Heart, Huntington, and LifeBridge. *See Manion v. Ameri-Can Freight Sys. Inc.*, 2019 WL 8325752, at *3 (D. Ariz. Oct. 11, 2019); *Cent. Okla. Pipeline, Inc. v. Hawk Field Servs., LLC*, 400 S.W.3d 701, 712 (Ark. 2012); *Jones v. Awad*, 252 Cal. Rptr. 3d 596, 604–05 (Cal. App. 2019); *Webb v. Green Tree Servicing, LLC*, 2012 WL 2065539, at *6 (D. Md. June 7, 2012).

Because Plaintiffs rely exclusively on statutes that cannot support negligence *per se*—and in several jurisdictions cannot invoke the doctrine at all—their negligence *per se* claim must be dismissed.

### F. Plaintiffs Fail To State A Third-Party Beneficiary Claim (Count III)

Plaintiffs allege that they are the "intended third-party beneficiaries" of contracts between Cerner and HPDs under which Cerner provided software products and services to HPDs. To state a breach of contract claim based on a third-party beneficiary theory, Plaintiffs must demonstrate the contracts at issue expressly indicate that they were entered into *primarily* for Plaintiffs' benefit. Incidental or consequential benefits are not enough. *See Tieman v. Am. Risk Servs., LLC*,

2025 WL 2434233, at *5 (W.D. Mo. Aug. 22, 2025) (explaining that a presumption exists that parties contract for themselves, and overcoming it requires an implication "so strong as to amount to an express declaration");*W Agripacking, S.A. de C.V. v. Fresh Touch Distrib., Inc.*, 2015 WL 5084133, at *8 (D. Ariz. Aug. 28, 2015) ("It is not enough that a contract may operate to a person's benefit, but it must appear that the parties intended to recognize the [person] as the primary party in interest and as privy to the promise."); *Gunn v. Wortman*, 684 S.W.3d 340, 344 (Ark. App. 2024); *Stern v. Does*, 978 F. Supp. 2d 1031, 1039 (C.D. Cal. 2011); *In re Fortra File Transfer Software Data Sec. Breach Litig.*, 749 F. Supp. 3d 1240, 1265 (S.D. Fla. 2024); *Partin v. Baptist Healthcare Sys., Inc.*, 2022 WL 10078122, at *12 (S.D. Ind. Oct. 17, 2022); *Advantage Env't Consultants, LLC v. Ground Zero Field Servs., LLC*, 2021 WL 4846810, at *3 (D. Md. Oct. 15, 2021); *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 767–69 (W.D.N.Y. 2017).

Here, Plaintiffs do not meet this burden. Their theory is that the contracts between Cerner and HPDs were intended for Plaintiffs' benefit because the agreements, upon information and belief, reference data security practices and protocols and because "Defendants agreed to receive and protect" Plaintiffs' information. CCAC ¶ 509–10. From this, Plaintiffs conclude that these contracts must have been made primarily for their benefit.

Courts repeatedly reject this exact argument. In *Fortra*, the plaintiffs alleged that they were the intended beneficiaries of a service contract simply because the contracting parties agreed to receive and protect their information. 749 F. Supp. 3d at 1265. The court dismissed the claim, emphasizing that the administration services at issue were provided to the contracting party, not the named plaintiffs. *Id.* Similarly, *Stern* held that the plaintiff was not the intended primary beneficiary of a confidentiality provision in an agreement to which it was not a party.

The court reasoned that, even though confidentiality might incidentally benefit clients, the confidentiality provisions existed to protect the contracting party from liability—not to grant rights to third parties. 978 F. Supp. 2d at 1039.

The same reasoning applies here. Although Plaintiffs may have benefited from the contracts between Cerner and HPDs, any benefit is incidental. The contracts at issue were made for HPDs' operational needs—HPDs engaged Cerner to supply software, services, and related security practices for HPDs' own purposes (i.e., providing healthcare services). Nothing in the CCAC suggests that Cerner and HPDs intended to confer enforceable rights on Plaintiffs, let alone that Plaintiffs were the primary intended beneficiaries. Plaintiffs' third-party beneficiary theory fails, and this claim must be dismissed.

### G. Plaintiffs Fail To State A Breach Of Implied Contract Claim (Count IV)

An implied contract exists only if there was a "meeting of the minds" as to each of the essential terms of the agreement—in other words, Plaintiffs must first demonstrate that both parties intended to enter into a contract and mutually agreed on the specific terms that were allegedly breached. *See, e.g.*, *Nickel v. Stephens College*, 480 S.W.3d 390, 397 n.6 (Mo. App. W.D. 2015); *Jarvis v. Traka USA LLC*, 2024 WL 4651937, at *11 (D. Ariz. Nov. 1, 2024); *K.C. Prop. of N.W. Ark., Inc. v. Lowell Inv. Partners, LLC*, 373 Ark. 14, 28–29 (2008); *Harrill v. Emanuel Med. Ctr.*, 2025 WL 1635428, at *10 (E.D. Cal. June 9, 2025); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1220–22 (S.D. Fla. 2022); *Wakley v. Sustainable Local Foods LLC*, 2017 WL 1880814, at *3 (S.D. Ind. May 9, 2017); *Truland Serv. Corp. v. McBride Elec., Inc.*, 2011 WL 1599543, at *9 (D. Md. Apr. 27, 2011); *Emergency Phys. Servs. of New York v. UnitedHealth Grp., Inc.*, 2021 WL 4437166, at *11 (S.D.N.Y. Sept. 28, 2021).

Here, Plaintiffs allege HPDs' failures to safeguard Plaintiffs' information, including failing to implement specific security policies and procedures, breached implied contracts with Plaintiffs. However, Plaintiffs' allegations have a gaping hole—namely, there was no meeting of the minds between Plaintiffs and HPDs regarding specific data security obligations. Instead, Plaintiffs allege only that they "formed an implied contract with Defendants regarding the provision of [healthcare-related] services" and that "[by] paying for healthcare services, Plaintiffs and Class members intended and *understood* that Defendants would adequately safeguard Private Information as part of that service." CCAC ¶¶ 518, 523. Plaintiffs' unilateral "understanding" is irrelevant. *See In re Mednax Servs.*, 603 F. Supp. 3d 1183, 1220–22 & n.20 (S.D. Fla. 2022) (dismissing implied contract claim in data breach case because "[u]nilateral and subjective expectations in a transaction cannot be inferred to coalesce into the meeting of the minds required to establish an implied contract" and "Plaintiffs' allegations reveal only that they provided their personal information as required to receive healthcare services from Defendants—not data security services"). Plaintiffs do not allege a single fact that would suggest that HPDs, upon receiving payment for healthcare services, somehow understood or agreed to provide specific data security measures, let alone measures to somehow prevent a third-party vendor from falling victim to a data security incident. *See Kuhns*, 868 F.3d at 717 (contract claim properly dismissed in data breach action where "Kuhns does not allege that Scottrade affirmatively promised that its customer data would not be hacked, and such a promise may not be plausibly implied"); *Ortiz*, 2022 WL 16637993, at *6 (conclusory allegations are insufficient to demonstrate that there was an implied contract; Plaintiff merely alleges that Defendant assured reasonable security over Plaintiff's information, but it is unclear where this assurance was located (*e.g.*, in a user agreement, privacy policy, or terms of services) or why this created a

contract.”); *Smahaj*, 131 N.Y.S.3d at 826 (implied contract claim failed because “the complaint is devoid of any facts supporting an inference that CBLPATH implicitly promised to keep plaintiff's information safe when it was stored on a third-party business associate's network”).

Moreover, courts have also dismissed breach of contract claims where there was no separate consideration for data security. *See, e.g.*, *Harrill*, 2025 WL 1635428, at *11 (“Several courts have specifically found that consideration is required for an implied contract claim regarding data security.”) (collecting cases); *Gardiner*, 2021 WL 2520103, at *6 (dismissing implied contract claim for lack of consideration where “Plaintiff's allegations do not establish that the cost of the goods he purchased at Walmart included some amount attributable to data security”). Here, Plaintiffs allege they “paid money” to HPDs, but they do not allege any facts suggesting that the money they paid to HPDs was to be allocated toward data security as opposed to the healthcare services that HPDs provided. Thus, Plaintiffs' implied contract claim should be dismissed.

### H. Plaintiffs Fail To State A Claim For Unjust Enrichment (Count V)

To state an unjust enrichment claim, Plaintiffs must allege that they conferred a benefit on the defendant and it would be inequitable for the defendant to retain that benefit without paying for it. *See Allied Servs., LLC v. Smash My Trash, LLC*, 2024 WL 2842633, at *48 (W.D. Mo. May 16, 2024); *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 48–50 (D. Ariz. 2021); *Hatchell v. Wren*, 211 S.W.3d 516, 522 (Ark. 2005); *Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1369 (S.D. Fla. 2017); *Neibert v. Perdomo*, 54 N.E.3d 1046, 1051 (Ind. App. 2016); *Monterey Mushrooms, Inc. v. HealthCare Strategies, Inc.*, 2021 WL 1909592, at *2 (D. Md. May 12, 2021); *Ohanian v. Apple Inc.*, 2021 WL 5331753, at *4 (S.D.N.Y. Nov. 16, 2021).

Plaintiffs allege they conferred two benefits on HPDs: (1) the provision of their PII, and (2) payments for medical services, and that HPDs' retention of these purported benefits is inequitable because some portion of their payments should have been used to fund "adequate cybersecurity practices." CCAC ¶ 546. This theory fails for multiple reasons.

First, PII is not a cognizable "benefit" for unjust enrichment purposes. *See Quinalty v. FocusIT LLC*, 2024 WL 5223587, at *6 (D. Ariz. Dec. 26, 2024) (dismissing unjust enrichment claim because "FocusIT did not benefit because of an unalleged extrinsic value of their PII"); *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 852 (N.D. Cal. 2012) (similar)

Second, although Plaintiffs' monetary payments constitute a "benefit" to HPDs, Plaintiffs received exactly what they paid for: healthcare services. Indeed, Plaintiffs do not allege any agreement requiring HPDs to allocate a specific portion of service charges to cybersecurity, nor do they claim HPDs charged a premium to subsidize the cost of data security. Courts regularly dismiss unjust enrichment claims in data breach cases on this basis. *See Brush*, 238 F. Supp. 3d at 1369 (no enrichment where plaintiff failed to allege she paid "above and beyond the money owed for her medical treatment" or that defendant accepted "more money than was owed for their healthcare services."); *In re SuperValu, Inc.*, 925 F.3d at 966 ("Common sense counsels against the viability of Holmes's theory of unjust enrichment. Holmes paid for groceries . . . He did not pay a premium for a side order of data security and protection.").

Third, Plaintiffs' enrichment theory also fails because the circumstances do not indicate that HPDs retained any benefit unjustly. As conceded in the CCAC, the breach at issue occurred on Cerner's systems, not HPDs'. Plaintiffs therefore cannot plausibly claim that HPDs unjustly retained money intended for "adequate cybersecurity practices" when nothing suggests HPDs' own systems were deficient. *See Griffey*, 562 F. Supp. 3d at 50 (dismissing unjust enrichment

claim where plaintiffs did not plausibly allege that defendant's data security systems were inadequate).

Fourth, unjust enrichment is unavailable where an adequate remedy at law exists. Plaintiffs assert multiple contract and tort claims based on the same conduct, and "[u]njust enrichment is not a catchall cause of action to be used when others fail." *Ohanian*, 2021 WL 5331753, at *4 (dismissing unjust enrichment claim pled because it is "entirely duplicative of the other claims in the Complaint"); *Emondson v. 2001Live, Inc.*, 2017 WL 10085028, at *3 (M.D. Fla. Mar. 30, 2017) (dismissing unjust enrichment claim where plaintiffs pursued other legal claims addressing the same conduct).

Finally, "there is no cause of action in California for unjust enrichment[,]" which further supports dismissal of this claim against Huntington. *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (Cal. App. 2010) (collecting cases).

For all of these reasons, Plaintiffs failed to state an unjust enrichment claim against HPDs under any of the applicable states' laws.

### I. Plaintiffs Fail To State A Breach Of Confidence Claim (Count VI)

Plaintiffs ignore that, in Missouri, where the incident occurred, breach of confidence claims are recognized only for disclosure of trade secrets, which are not at issue here. *Mackey v. Belden, Inc.*, 2021 WL 3363174, at *9 (E.D. Mo. Aug. 3, 2021). As such, Plaintiffs' breach of confidence claim should be dismissed against all HPDs. Likewise, in Indiana, where Union Health System is located, and in Maryland where LifeBridge is located, there is no recognized "breach of confidence" claim—providing a further basis for dismissal of these claims against Union Health and Lifebridge. *See Walton v. U.S. Steel Corp.*, 2011 WL 2447723, at *8 (N.D. Ind. June 15, 2011); *Ross v. Cecil Cnty. Dep't of Social Servs.*, 878 F. Supp. 2d 606, 622 (D. Md.

2012). No cases in Arkansas, where Arkansas Heart and Plaintiffs Ronald and Laura Tripp are located, have recognized a breach of confidence claim.

Even in those jurisdictions where breach of confidence claims have been recognized, Plaintiffs' claims against HPDs still fail as a matter of law because Plaintiffs failed to allege that *HPDs* disclosed the confidential information at issue. *See HC2, Inc. v. Delaney*, 510 F. Supp. 3d 86, 102 (S.D.N.Y. 2020) (breach of confidence requires the defendant to be "the source" of the disclosure). Courts repeatedly dismiss such claims in data breach cases where the defendant did not voluntarily disclose information, but, rather, a criminal actor accessed the system. *See Bozek v. Ariz. Labor Force Inc.*, 2025 WL 264174, at *7 (D. Ariz. Jan. 22, 2025) (dismissing claim under California law where a third party hacked into defendant's system because breach of confidence "requires the defendant to affirmatively share the information with a third party"); *In re Brinker Data Incident Litig.*, 2020 WL 691848, at *22 (M.D. Fla. Jan. 27, 2020) (same; "Even assuming, arguendo, that [defendant's] inadequate security facilitated the theft, such a claim would lie in negligence not breach of confidence.").

Here, Plaintiffs do not—and cannot— allege that HPDs disclosed Plaintiffs' information. As in *Bozek* and *Brinker*, a criminal actor gained unauthorized access to Cerner's systems where the incident occurred. Because HPDs were not the source of any disclosure, the breach of confidence claim fails as a matter of law and should be dismissed.

### J. Plaintiffs Fail To State A Fiduciary Duty Claim (Count VII)

To state a breach of fiduciary duty claim, Plaintiffs must allege the existence of a fiduciary relationship—one in which HPDs undertook a duty to act for the benefit of Plaintiffs. *See, e.g.*, *Cook v. Orkin Exterminating Co., Inc.*, 258 P.3d 149, 152 (Ariz. App. 2011) ("Mere trust in another's competence or integrity does not suffice to create a fiduciary relationship [and] commercial transactions do not create a fiduciary relationship unless one party agrees to serve in

a fiduciary capacity."); *Cole v. Laws*, 349 Ark. 177, 185 (2002) (a plaintiff must allege the "betrayal of a trust and benefit by the dominant party at the expense of one under his influence"); *In re Mednax Servs.*, 603 F. Supp. 3d at 1226 ("To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party. Generally, in an arms-length transaction, however, there is no duty imposed on either party to act for the benefit or protection of the other party."); *R&R Propane, LLC v. Tiger Payment Sols., LLC*, 756 F. Supp. 3d 734, 745 (E.D. Mo. 2024) ("[M]ere existence of a business relationship does not give rise to a fiduciary relationship, nor [to] a presumption of such a relationship."); *Mofor v. Lyft, Inc.*, 2025 WL 2450881, at *9 (Md. App. Aug. 26, 2025) ("[T]rusting and relying on the other party to perform its side of the transaction is not enough; rather, something 'apart' from the transaction itself is required to create a confidential relationship. . . . [And] an imbalance of power alone is not enough for a confidential relationship to arise.").

Plaintiffs allege that "[a]s healthcare service providers, Defendants have a fiduciary relationship to their clients." CCAC ¶ 568. But Plaintiffs are not asserting that HPDs breached a fiduciary duty related to the provision of healthcare services. Instead, Plaintiffs seek to impose a fiduciary duty to prevent a criminal cyberattack on Cerner's system simply because Plaintiffs provided their PII to HPDs in connection with obtaining healthcare services. Courts consistently reject this theory.

In data breach cases, courts routinely hold that the exchange of PII or PHI does not create a fiduciary duty to safeguard that information. *See In re Mednax Servs.*, 603 F. Supp. 3d at 1226 (rejecting plaintiffs' "bland[] assert[ion]" that Defendants owed a duty of confidentiality because "the mere receipt of confidential information is insufficient by itself to transform an arm's-length

transaction into a fiduciary relationship"); *Davis v. Bank of Am. Corp.*, 2012 WL 3637903, at *6 (D. Ariz. Aug. 23, 2012) ("[S]ubmi[ssion of] personal financial information regarding eligibility for a federal loan modification program does not create a fiduciary relationship."); *Cravens v. Garda CL Se., Inc.*, 2024 WL 5058304, at *11 (S.D. Fla. Dec. 9, 2024) ("Courts routinely reject Plaintiffs' theory that the exchange of PII/PHI gives rise to a fiduciary duty."); *In re Waste Mgmt.*, 2022 WL 561734, at *6 (dismissing fiduciary duty claim because "storage of employee PII does not impose a 'duty to act for or to give advice for the benefit' of its employees").

Courts specifically reject attempts to convert the doctor-patient relationship into a fiduciary duty to protect data or prevent cyberattacks. *See Rodriguez v. Mena Hosp. Comm'n*, 2023 WL 7198441, at *9–10 (W.D. Ark. Nov. 1, 2023) (dismissing fiduciary duty claim in data-breach case, predicting Arkansas would not recognize a fiduciary relationship between a healthcare provider and its patients based on patients' provision of PII incidental to receiving care); *Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1125 (S.D. Cal. 2023) (doctor-patient fiduciary relationship does not create a duty to safeguard PII "consistent with medical privacy statutes and industry standards"); *Aspen*, 624 F.Supp.3d at 1003–04 (dismissing claim where plaintiff failed to identify facts establishing a fiduciary duty to protect information).

Here, Plaintiffs allege no special relationship of trust and confidence beyond an ordinary transactional relationship in which HPDs provided healthcare and Plaintiffs provided PII incidental to receiving that care. They allege no facts showing that HPDs undertook to advise, counsel, or act for Plaintiffs' benefit with respect to data security—let alone to protect them from a criminal intrusion into a third party vendor's system.

For all of these reasons, Plaintiffs' breach of fiduciary duty claim fails.

### K. Plaintiffs Fail To Plead An Invasion Of Privacy Claim (Count VIII)

Plaintiffs allege an invasion of privacy claim based on the tort of "public disclosure of private facts." CCAC ¶ 584. To state such a claim, Plaintiffs must plausibly allege that *the defendant* publicized their private information—meaning the defendant communicated it to the general public or to so many people that the information was substantially certain to become public knowledge. *Tesar v. Union R-XI Sch. Dist.*, 2017 WL 528318, at *6 (E.D. Mo. Feb. 9, 2017); *Joe v. Olive Branch Assisted Living LLC*, 2025 WL 2306976, at *8 (D. Ariz. Aug. 11, 2025); *Rodriguez,* 2023 WL 7198441, at *12–13; *Cohen v. Chau*, 2019 WL 6655392, at *3 (C.D. Cal. July 23, 2019); *Kautz v. Residence Inn by Marriott, LLC*, 2014 WL 4416012, at *3 (M.D. Fla. Sept. 5, 2014); *Cmty. Health Network, Inc. v. McKenzie*, 185 N.E.3d 368, 382–83 (Ind. 2022); *Charles v. Russell*, 2025 WL 2196247, at *3–4 (D. Md. Aug. 1, 2025).

Plaintiffs fail to meet this basic requirement. They do not allege that HPDs publicized their information; instead, they offer only the conclusory assertion that "[a]s a result of Defendants' [which Plaintiffs define as Cerner and HPDs] conduct, publicity was given to" their information. CCAC ¶ 581. Plaintiffs' factual allegations, however, establish nothing more than a criminal intrusion into Cerner's systems—not any intentional disclosure by HPDs. Courts consistently hold that an alleged negligent failure to prevent a cyberattack is not "public disclosure" for purposes of this intentional tort.

For example, as the court explained in *In re Mednax Servs.*, a public disclosure claim cannot rest on allegations that defendants negligently failed to safeguard data that was later accessed by unauthorized users:

> Plaintiffs' invasion-of-privacy claim fails because they do not allege that Defendants intentionally disclosed their PHI and PII to unauthorized persons. Instead, Plaintiffs plead that Defendants' negligent 'failure to safeguard and protect Plaintiffs' and the other Class Members' PHI and PII' resulted in the disclosure. This is insufficient to state a claim for the intentional tort of invasion of privacy

> because, although its elements are framed in the passive voice, no cause of action can exist for the negligent commission of an intentional tort.

603 F. Supp. 3d at 1226. Likewise, the court in *Roper v. Rise Interact. Media & Anal., LLC* rejected a similar claim, explaining that the defendant did not "disclose Plaintiffs' private facts to the 'universe of threat actors'" and a criminal third party's theft of information is not publicity. 2024 WL 1556298, at *3 (N.D. Ill. Apr. 10, 2024). Courts "routinely" hold these types of allegations are insufficient to qualify as a "public disclosure." *Id.*

Plaintiffs' claim against Albany Med and Glens Falls fails for an additional reason that there is no recognized "public disclosure" privacy tort in New York, where they and the Plaintiffs asserting claims against them are respectively located. *JPMorgan Chase Bank, N.A. v. Nowak*, 2025 WL 1938541, at *7 (S.D.N.Y. July 15, 2025).

Because Plaintiffs do not allege HPDs publicized their information, and New York does not recognize the claim at all, the invasion of privacy claim must be dismissed.

## V. Plaintiffs' Statutory Claims Fail

### A. Plaintiffs' Arkansas Deceptive Trade Practices Act Claim Fails (Count XI – against Arkansas Heart)

Plaintiffs' ADTPA claim against Arkansas Heart fails as a matter of law because the statute expressly bars private class actions, strictly limits private enforcement, and requires a plaintiff-specific showing of a deceptive, consumer-oriented act, actual reliance, and actual financial loss. Ark. Code Ann. § 4-88-113 (2024). Plaintiffs' allegations do not satisfy any of these requirements.

The statute's class-action prohibition is dispositive. ADTPA authorizes a private right of action only when a plaintiff suffers an actual financial loss proximately caused by that plaintiff's reliance on a practice declared unlawful. Ark. Code Ann. § 4-88-113(f)(1)(A). The statute further requires Plaintiffs to prove reliance and loss individually and expressly prohibits private class

actions, subject only to a narrow usury exception tied to Arkansas Constitution Amendment 89, which is inapplicable here. *Id.* § 4-88-113(f)(1)(B), (f)(2). Plaintiffs nevertheless bring Count XI "on behalf of" multiple putative subclasses, despite not alleging any violation of Arkansas Constitution Amendment 89. CCAC ¶¶ 608–09. Thus, the ADTPA prohibits Plaintiffs' class-action claims as a matter of law.

Beyond the class-action bar, Plaintiffs' claims are barred for failure to state a viable individual ADTPA claim. ADTPA targets deceptive trade practices, not deficient performance, regulatory noncompliance, or adverse outcomes. *See* Ark. Code Ann. §§ 4-88-107(a), 4-88-113(f)(1)–(2). Where a plaintiff proceeds under provisions requiring knowledge or intentional deception, the statute demands facts plausibly showing that the defendant knowingly made a false or misleading representation to consumers. *Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 776–77 (8th Cir. 2010) (holding that claims under Ark. Code Ann. § 4-88-107(a)(1), (a)(3), and (a)(5) require knowing or intentional misrepresentation or omission, and affirming summary judgment on those theories where the record did not support scienter); *Gabriele v. ConAgra Foods, Inc.*, 2015 WL 3904386, at *5–7 (W.D. Ark. June 25, 2015). Even under ADTPA's catchall and omission provisions, liability requires a materially misleading, consumer-oriented act or omission, and for omissions, intent that others rely on the concealment or omission. *Curtis Lumber,* 618 F.3d at 776–77 (8th Cir.).

Consistent with the statute, Arkansas courts require a private plaintiff to allege a deceptive, consumer-oriented act or practice, reliance on that act, and a causal connection between the reliance and an actual financial loss. *Parnell v. FanDuel, Inc.*, 591 S.W.3d 315, 318–20 (Ark. 2019); *Skalla v. Canepari*, 430 S.W.3d 72, 82 (Ark. 2013). Each element must be pleaded with plaintiff-specific facts. *Id.*

Plaintiffs do not meet this standard. They do not allege that Arkansas Heart made any specific, consumer-facing representation regarding data security, that any Plaintiff saw or relied on such a representation, or that any decision would have changed absent the alleged conduct. *See* CCAC ¶¶ 614–17. Instead, Plaintiffs ask the Court to infer deception from a cybersecurity incident involving a third-party vendor. Arkansas law does not permit ADTPA liability to arise from outcomes alone. *Parnell*, 591 S.W.3d at 318–20 ; *Motal v. Allstate Prop. & Cas. Ins. Co.*, 2023 WL 3515690, at *1–2 (8th Cir. May 18, 2023).

Plaintiffs' omission theory fares no better. While ADTPA may reach material omissions in certain circumstances, such claims require the concealment or omission of a material fact in connection with a consumer transaction, coupled with intent that others rely on the omission. *Curtis Lumber*, 618 F.3d at 776–777. Plaintiffs identify no specific fact Arkansas Heart was required to disclose, no transactional context imposing a disclosure obligation regarding their third-party vendors, and no factual basis to infer concealment with intent to induce consumer reliance. CCAC ¶¶ 614, 616. Their theory again rests on hindsight and the occurrence of a data incident, which is insufficient as a matter of law.

Plaintiffs also fail to plead reliance. Reliance is a mandatory, plaintiff-specific element of a private ADTPA claim. *Motal*, 2023 WL 3515690, at *1–2. General allegations that Plaintiffs "entrusted" information to Arkansas Heart or "acted reasonably" do not allege that any Plaintiff actually relied on a specific misrepresentation or omission, or that any conduct would have changed absent the alleged deception. CCAC ¶¶ 617–19.

Finally, Plaintiffs do not plead the "actual financial loss" ADTPA requires. A plaintiff bringing a private cause of action under the ADTPA must prove both a violation of the ADTPA and actual damage or injury. *Yazdianpour v. Safeblood Techs., Inc.*, 779 F.3d 530, 537–38 (8th

Cir. 2015) (citing *Skalla*, 430 S.W.3d at 82). Arkansas law does not recognize speculative harm as actual financial loss absent a concrete, out-of-pocket injury proximately caused by reliance on a deceptive act. *Id.*; *see also Parnell*, 591 S.W.3d at 318–20; *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 161–62 (Ark. 2005). Here, Plaintiffs' alleged injuries—risk of identity theft, monitoring time, overpayment theories, and diminished data value—fall squarely within the category of abstract or contingent harms that are not cognizable under ADTPA. CCAC ¶ 619.

Courts consistently enforce ADTPA's statutory elements as written and decline to transform alleged operational failures or adverse outcomes into deceptive trade practices absent a materially misleading, consumer-facing act and plaintiff-specific reliance. *Curtis Lumber*, 618 F.3d at 776–77, 783–85; *Apex Oil Co. v. Jones Stephens Corp.*, 881 F.3d 658, 662 (8th Cir. 2018); *Motal*, 2023 WL 3515690, at *1–2. For all of these independent reasons, Count XI should be dismissed with prejudice.

### B. Plaintiffs' CCPA and CPRA Claims Fail (Counts XII and XVI – against Huntington)

Plaintiffs Magliozzi, Fox, and Rangel assert a claim against Huntington for violating the California Consumer Privacy Act ("CCPA"). To state a CCPA claim, Plaintiffs must plausibly allege that their personal information was "subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business's violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information." Cal. Civ. Code § 1798.150(a)(1). This claim fails for multiple reasons.

First, the CCPA does not apply to Huntington because it is a covered entity under HIPAA. *See id.*, § 1798.145(c)(1). Plaintiffs themselves allege that Defendants, including Huntington, were obligated to comply with HIPAA. CCAC ¶¶ 399–406. In addition, Huntington is a nonprofit organization that is not considered a business subject to the CCPA. Under the

statute, consumers may bring claims where certain personal information was subject to unauthorized disclosure "as a result of the ***business'*** violation of the duty to implement and maintain reasonable security procedures and practices." *See* Cal. Civ. Code § 1798.150(a)(1) (emphasis added). Under the CCPA, a "business" is a "sole proprietorship, partnership, limited liability company, corporation, association, or other legal entity that is organized or operated for the profit or financial benefit of its shareholders or other owners." *Id.* § 1798.140(d). "[N]on-profits and government entities are nonbusinesses." Cal. Code. Regs. tit. 11 § 7001(p). As HIPAA-regulated and nonprofit entities are not considered businesses subject to the CCPA, the claim fails.

Second, conduct that "takes place wholly outside of California" is exempt from the CCPA. Cal. Civ. Code § 1798.145 (a)(1)(G). This exemption applies if: (1) the business collected the consumer's information while they were outside of California; (2) no part of any sale of the information occurred in California; and (3) the business did not sell personal information about the consumer that was collected when the individual was in California. *Id.* Here, Fox (NY) and Rangel (AZ) both allege they are not citizens or residents of California. CCAC ¶¶ 302, 314. They plead no facts suggesting their information was collected in California, used in California, or sold in California. Without a California nexus, Fox and Rangel's CCPA claims fail. *See Tate v. EyeMed Vision Care, LLC*, 2023 WL 6383467, at *10 (S.D. Ohio Sept. 29, 2023) (dismissing CCPA claim where plaintiff failed to plead necessary facts to overcome the exemption under Section 1798.145).

Third, to state a CCPA claim, Plaintiffs must allege that the data breach occurred because of ***Huntington's*** failure to provide reasonable security procedures and practices. Plaintiffs do

not. Instead, Plaintiffs allege in a conclusory fashion, unsupported by any well-plead factual allegations, that Cerner caused the data breach:

> Oracle Health retained [Plaintiffs'] Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

*See* CCAC ¶¶ 293, 307, 319. Because Plaintiffs allege no facts that Huntington's own systems or security measures were deficient, the claim fails. *See, e.g.*, *Maag v. U.S. Bank, Nat'l Ass'n*, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021) (dismissing CCPA claims where complaint lacked showing that defendant's security was deficient); *In re Bank of Am. Cal. Unemployment Benefits Litig.*, 674 F. Supp. 3d 884, 916 (S.D. Cal. 2023) (allegations showing only the "possibility" of deficient security are insufficient); *Udo v. Wells Fargo Bank, N.A.*, 2023 WL 8600791, at *3 (N.D. Cal. Dec. 12, 2023) (dismissing CCPA claim that "simply recites the elements of the statute").

Plaintiffs Magliozzi, Fox and Rangel also bring a claim against Huntington under the California Privacy Rights Act ("CPRA"). But the CPRA does not create a separate cause of action; it simply amends and expands the CCPA. *See, e.g.*, *Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1246 (N.D. Cal. 2022); *see also* CALIFORNIA DEPARTMENT OF JUSTICE – OFFICE OF THE ATTORNEY GENERAL, *California Consumer Protection Act (CCPA)*, https://www.oag.ca.gov/privacy/ccpa ("[The] CPRA amends the CCPA; it does not create a separate, new law."). Thus, Plaintiffs' CPRA claim fails for the same reasons that the CCPA claim fails.

### C. Plaintiffs' CMIA Claim Fails (Count XIII – against Huntington)

Plaintiffs Magliozzi, Fox and Rangel also assert a claim against Huntington under the California Confidentiality of Medical Information Act ("CMIA") on the grounds that Huntington "failed to take reasonable precautions to ensure their data systems were protected." CCAC ¶ 636.

Non-California residents cannot bring a CMIA claim, thus, Fox (NY) and Rangel's (AZ) CMIA claim must be dismissed. *See Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *25 (N.D. Cal. Apr. 11, 2024).

Although Plaintiff Magliozzi resides in California, she fails to state a viable claim. To state a CMIA claim, Plaintiffs must plausibly allege that an unauthorized person actually viewed the Plaintiffs' medical information. *See Sutter Health v. Sup. Ct.*, 174 Cal. Rptr. 3d 653, 660–61 (Cal. App. 2014) ("No breach of confidentiality takes place until an unauthorized person views the medical information. It is the medical information, not the physical record (whether in electronic, paper, or other form), that is the focus of the {CMIA]. . . That the records have changed possession even in an unauthorized manner does not mean they have been exposed to the view of an unauthorized person."); *R.C. v. Sussex Publishers, LLC*, 2025 WL 948060, at *6 (N.D. Cal. Mar. 28, 2025) ("Unauthorized viewing is critical to a claim under section 56.101. Even when a third party downloads or copies electronic files there is no breach of confidentiality under section 56.101 if the party has not actually viewed the confidential information included in the file.").

Plaintiffs allege that "an unauthorized third-party viewed" Plaintiffs' medical information, but this assertion is purely conclusory. CCAC ¶ 636. They plead no facts showing that their individual personal medical information was actually viewed. Instead, Plaintiffs merely allege that "a criminal had accessed [Cerner's] legacy servers and copied sensitive patient data to a remote server." CCAC ¶ 2. Indeed, Plaintiffs' own summary of the incident contains no allegation of viewing at all:

> In early 2025, Oracle Health suffered a significant Data Breach. The incident occurred around January 22, 2025, when a criminal hacker gained access to legacy Cerner servers that Oracle Health had not yet migrated to its cloud infrastructure and exfiltrated a massive amount of Private Information to an external hard drive.

> The stolen Private Information includes, at least, names, Social Security numbers, dates of birth, driver's license numbers, treating physicians' names, dates of service, medication information, health insurance information, and diagnostic and treatment information.

CCAC ¶ 369. From this, Plaintiffs simply assume their medical information must have been viewed. Alleging exfiltration or copying of data is not the same as alleging that anyone actually viewed their medical information, much less their own individual records. Courts dismiss CMIA claims based on such speculation. *See Morales v. Conifer Rev. Cycle Sols., LLC*, 2025 WL 1096396, at *7 (C.D. Cal. Mar. 31, 2025) (dismissing CMIA claim where "Plaintiffs ple[d] only a conclusory allegation that their medical information was viewed by unauthorized individuals"). Because Plaintiffs fail to allege any nonconclusory facts that their medical information was actually viewed, the claim must be dismissed.

### D. Plaintiffs' CCRA Claim Fails (Count XIV – against Huntington)

Plaintiffs Magliozzi, Fox, and Rangel allege that Huntington violated Section 1798.82 of the California Customer Records Act ("CCRA"), which governs the requirements for breach notification. Plaintiffs assert that "Defendant" (singular) failed to "provid[e] legally compliant and timely notice." CCAC ¶ 643. Like Plaintiffs' other California statutory claims, this cause of action fails for multiple reasons.

First, although Plaintiffs purport to bring this claim against Cerner ***and*** Huntington, CCAC ¶ 638, the substance of the allegations is directed exclusively against Cerner:

> On information and belief, to date, Defendant Oracle Health has not sent written notice of the Data Breach to all impacted individuals. As a result, Defendant has violated § 1798.82(d) by not providing legally compliant and timely notice to all Subclass members.

CCAC ¶ 643. This pleading leaves Huntington without any clear notice of the conduct alleged against it and is therefore insufficient. Even if the claim was intended to be asserted against Huntington, Plaintiffs still fail to plead either a delay in notice by Huntington, or any injury

caused from the delay. *See Morales*, 2025 WL 1096396, at *8 (dismissing CCRA claim because plaintiffs failed to allege any incremental damages resulting from the delay). Thus, this claim fails.

Second, a CCRA claim requires Plaintiffs to plead how the Defendant's notice violated the statute's requirements. Plaintiffs provide no such details. They do not plead any facts relating to Huntington's alleged deficient notice. *See In re Brinker*, 2020 WL 691848, at *18 (dismissing CCRA claim because plaintiff "failed to allege what information was lacking" from defendant's notice). As Plaintiffs do not allege any statutory defects in Huntington's notice, their CCRA claim should be dismissed.

Third, Section 1798.82 applies only to notices provided to California residents. Courts therefore dismiss CCRA claims brought by non-California residents. *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 973 (S.D. Cal. 2012) (dismissing CCRA claims brought by non-resident plaintiffs). Here, Plaintiffs Fox (NY) and Rangel (AZ) are not residents of California and their CCRA claims must be dismissed for this additional reason.

### E. Plaintiffs' UCL Claim Fails (Count XV – against Huntington)

Plaintiffs Magliozzi, Fox, and Rangel also assert a claim against Huntington under the California Unfair Competition Law ("UCL"). To establish standing under the UCL, Plaintiffs must show that they "lost money or property as a result of the unfair competition" *Shah v. Capital One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025).

Here, Plaintiffs do not allege any such loss. Instead, they assert only that their personal information was disclosed, and that they experienced lost time monitoring accounts, diminution in value of information, emotional distress, increased spam, and a risk of future identity theft. CCAC ¶¶ 296–99, 310–312, 322–326. Courts consistently find that none of these alleged harms

constitute "lost money or property" under the UCL. *See Shah*, 768 F. Supp. 3d at 1048 (dismissing UCL claim because "personal information does not constitute property" and diminution in value was not a loss for purposes of the UCL); *Gardner v. Health Net, Inc.*, 2010 WL 11597979, at *3 (C.D. Cal. Aug. 12, 2010) (lost time and increased risk of future identity theft did not constitute a loss for purposes of the UCL). Because Plaintiffs do not identify any actual loss of money or property, they lack standing and their UCL claim must be dismissed.

Even if Plaintiffs have standing to bring this claim, they failed to plausibly plead it. The UCL provides a cause of action for business practices that are (1) unlawful, (2) unfair, or (3) fraudulent. *Id.* at *9. Plaintiffs invoke only the "unlawful" and "unfair" prongs. CCAC ¶¶ 649, 650, 657–58.

To state a UCL claim under the unlawful prong, a plaintiff must sufficiently allege a violation of an underlying law. *People v. McKale*, 602 P.2d 731, 733 (Cal. 1979). As courts have recognized, by proscribing "any unlawful" business practice, the UCL allows plaintiffs to "borrow" violations of other laws and treat independently actionable unfair competition claims. *Cel-Tech Commc'ns, Inc. v. LA Cellular Tel. Co.*, 973 P.2d 527, 540 (Cal. 1999). Here, Plaintiffs' UCL allegations depend entirely on Huntington's purported violations of the CCPA and CMIA. CCAC ¶ 650. As described above, these predicate claims fail, and their failure warrants dismissal of Plaintiffs' UCL claim as well. *See* Sections V.B–C, *supra*.

Plaintiffs' claim under the "unfair" prong likewise should be dismissed. As a court in California found:

> when a plaintiff's claim under the unfair prong overlaps entirely with the conduct alleged in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs do not survive.

*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1094 (N.D. Cal. 2022) (internal citations omitted). In *Hammerling*, the court found that the "conduct on which Plaintiffs base[d] their

claims under all three UCL prongs is the same." *Id.* Because the court dismissed the UCL claim under the "fraud" and "unlawful" prongs, it concluded that the "unfair prong cannot survive either." *Id.* The same is true here. Plaintiffs' "unfair" theory is based on the same alleged conduct that underlies their deficient "unlawful" theory. Because their unlawful prong claim fails, their unfair prong claim necessarily fails as well.

### F. Plaintiffs' FDUTPA Claim Fails (Count XVII – against Baptist Health and Tallahassee Memorial)

Plaintiffs Bell, Lewis, and Sheward assert a claim under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") against two HPDs: Baptist Health and Tallahassee Memorial. To state a FDUTPA claim, Plaintiffs must allege: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *In re Brinker*, 2020 WL 691848, at *12. Plaintiffs' FDUTPA claim fails for multiple reasons.

First, Plaintiffs' FDUTPA claim fails for lack of legally cognizable damages. "Actual damages" under the FDUTPA is a term of art. It is limited to the difference in the market value of the product or service delivered versus the value of the product or service as it should have been delivered under the parties' agreement. *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *28 (D.N.J. Dec. 16, 2021) (citing *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986 (11th Cir. 2016)); *see also* Fla. Stat. § 501.211(2) (imposing requirement that a plaintiff suffer a loss). FDUTPA does not permit recovery of consequential damages, including harm to "other property." *In re Brinker*, 2020 WL 691848, at *13.

Plaintiffs do not allege that the value of the healthcare services they received from Baptist Health or Tallahassee Memorial was in any way diminished. Instead, Plaintiffs simply claim they overpaid because Baptist Health and Tallahassee Memorial failed to implement adequate data security. But courts uniformly hold that data security concerns do not diminish the value of the

underlying healthcare (or other consumer) services, and that losses arising from misuse of personal information are merely consequential damages—not recoverable under FDUTPA. *See In re Brinker*, 2020 WL 691848, at *13 ("[F]ood or drink purchased has no diminished value because of Brinker's alleged inadequate data security."); *In re Am. Med.*, 2021 WL 5937742, at *28 (plaintiffs failed to allege diminution in value of medical services; alleged "fraudulent charges, expended time, purchase of monitoring services, and hacked accounts are unrecoverable consequential damages"); *In re Mednax Servs.*, 603 F. Supp. 3d at 1212–13 (diminution in value of PII, future risk of identity theft and emotional distress "are consequential damages insufficient to state a claim under FDUTPA"). Because Plaintiffs cannot identify any diminution in the value of the healthcare services they received, they do not plead "actual damages" as FDUTPA requires.

Second, FDUTPA requires Plaintiffs to plead that the alleged unfair or deceptive practice caused their actual damages. Here, Plaintiffs' theory is they were harmed because the two HPDs allegedly failed to implement adequate data security. But all Plaintiffs concede that the data breach occurred on Cerner's systems, not on any system owned or maintained by Baptist Health or Tallahassee Memorial. Plaintiffs have not alleged, and cannot allege, that any action by HPDs caused the breach or their alleged injuries.

Finally, Plaintiffs' FDUTPA claim also fails because it does not satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b). Courts consistently hold that Rule 9(b) applies to FDUTPA claims where, as here, the allegations "sound in fraud." *In re Monat Hair Care Prods. Mktg., Sales Prac. & Prods. Liab. Litig.*, 2019 WL 5423457, at *6 n.11 (S.D. Fla. Oct. 23, 2019); *Griffey*, 562 F. Supp. 3d at 54. Indeed, "Rule 9(b) generally require[s] the plaintiff's complaint to set forth particular allegations about 'the who, what, when, where, and how' of the circumstances

giving rise to the cause of action." *Perkins v. Nat'l LGBTQ Task Force, Inc.*, 580 F. Supp. 3d 1236, 1239 (S.D. Fla. 2021).

Here, Plaintiffs make no such showing. They rely entirely on conclusory assertions that Baptist Health and Tallahassee Memorial misrepresented their data security practices, yet they identify no specific misrepresentation, no speaker, no date or location of any statement, and no explanation of any such representations that were false or misleading. This lack of specificity is fatal. *See Griffey*, 562 F. Supp. 3d at 54 (dismissing FDUTPA claim because plaintiff "has not explained with any specificity how [the] data security was inadequate beyond pointing to the fact that a security breach happened"). Because Plaintiffs' FDUTPA claim fails to satisfy Rule 9(b)'s requirements, the claim must be dismissed.

### G. Plaintiffs' IDCSA Claim Fails (Count XVIII – against Union Health)

Plaintiffs Adams, Carnahan, Smith, Taylor, Woolard and Melvin assert a claim against Union Health under the Indiana Deceptive Consumer Sales Act ("IDCSA"). The statute recognizes two categories of actionable deceptive acts under the IDCSA: uncured acts and incurable acts. Plaintiffs fail to state a claim under either theory.

To plead an uncured act, Plaintiffs must provide pre-suit written notice of the alleged deceptive act and allow the defendant thirty days to cure. *McKinney v. State*, 693 N.E.2d 65, 68 (Ind. 1998). Plaintiffs contend that Cerner and Union Health failed to cure their alleged violations because "numerous past data breaches" put them on notice that their security was inadequate. CCAC ¶ 678. But Plaintiffs allege no written pre-suit notice of any IDSCA violation. This omission is fatal. *See Mackey*, 2021 WL 3363174, at *13 (dismissing IDCSA claim for uncured acts because "[a] claim for an uncured act requires notice to the supplier, and there is no allegation that Mackey provided such notice").

Plaintiffs also claim that Union Health committed incurable violations. To plead an incurable deceptive act, Plaintiffs must expressly plead "the identity of the person who made the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Castagna v. Newmar Corp.*, 2016 WL 3413770, at *9 (N.D. Ind. June 22, 2016). Plaintiffs' conclusory allegations that Union Health's data security was inadequate falls short of this requirement. Plaintiffs do not allege who at Union Health made any misrepresentation; when or where any misrepresentation occurred; what specific statements were false or misleading; or how such statements were communicated to them. Courts routinely dismiss IDCSA claims based on these deficiencies. *See Mackey*, 2021 WL 3363174, at *13 (rejecting IDCSA claim for failure to identify any "specific statements"); *Jasper v. Abbott Labs., Inc.*, 834 F. Supp. 2d 766, 773 (N.D. Ill. 2011) (dismissing IDCSA claim because plaintiff "d[id] not allege when the marketing statements were made [or] where they were made").

For an incurable deceptive act, Plaintiffs must also plead facts demonstrating that Union Health intended to defraud or mislead them. *Shea v. Gen. Motors LLC*, 567 F. Supp. 3d 1011, 1024 (N.D. Ind. 2021) ( "An intent to defraud or mislead is a required element of an incurable deceptive act."). Plaintiffs plead no such facts. They do not allege that Union Health knew its security practices were inadequate, that it intended to deceive consumers about those practices, or that it made any representation with fraudulent intent. Courts reject IDSCA claims where, as here, plaintiffs merely infer intent from the occurrence of a data breach. *See Durgan v. U-Haul Int'l Inc.*, 2023 WL 12140653, at *12 (D. Ariz. July 28, 2023) (dismissing IDCSA claim because relying on data breach alone "implicitly ask[s] the Court to rely on the logic that because the Data Breach occurred, the privacy policy was deceptive"); *In re MCG Health Data Sec. Issue*

*Litig.*, 2023 WL 3057428, at *8 (W.D. Wash. Mar. 27, 2023) (dismissing IDCSA claim because "Plaintiffs do not allege how [defendant] had knowledge of inadequacies in its security systems and, as stated above, there is no assumed correlation between a data breach and inadequate security systems").

For these reasons, the IDCSA claim must be dismissed.

### H. Plaintiffs' MMPA Claim Fails (Count XIX – against Mosaic)

Plaintiffs Evans, Sanders, and Delaney assert a claim under the Missouri Merchandising Practices Act ("MMPA") against Mosaic on the grounds that Mosaic failed to protect their personal information in connection with providing healthcare services. The MMPA prohibits deceptive practices in connection with the sale or advertisement of merchandise, which includes goods and services. Plaintiffs' theory rests on the idea that Mosaic sold data security services and its failure to protect their personal information constitutes an unlawful practice under the Act. Courts have repeatedly rejected this theory. *See Kuhns*, 868 F.3d at 719 (dismissing MMPA claim because "Scottrade did not sell data security services; it put data security measures in place to induce customers to voluntarily transfer their PII to Scottrade to obtain its brokerage services"); *Jasper*, 834 F. Supp. 2d at 773 (dismissing IDCSA claim because plaintiff "d[id] not allege when the marketing statements were made [or] where they were made"). Here, it is undisputed that Plaintiffs purchased healthcare services from Mosaic, not data security services. Thus, Plaintiffs' MMPA claim fails.

### I. Plaintiffs' N.Y. GBL Claim Fails (Count XX – against Albany Med and Glens Falls)

Plaintiffs Morgan, Holcomb, King, and Greeno bring a claim under Section 349 of the New York General Business Law ("GBL") against Glens Falls and Albany Med, alleging that

they engaged in deceptive acts by misrepresenting that they would protect Plaintiffs' personal information. The claim fails for multiple reasons.

To state a Section 349 claim, Plaintiffs must: "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Snyder v. Allen*, 2020 WL 1233815, at *4 (S.D.N.Y. Mar. 13, 2020). Plaintiffs plead none of this information. Their allegations contain no identified misstatement, no speaker, no timing, no context, and no explanation of falsity. Courts routinely dismiss GBL claims on exactly these deficiencies. *See id.* (dismissing GBL claim because "Plaintiff ma[de] conclusory assertions of misrepresentations without identifying specific statements that were fraudulent" or explaining how they were false).

Even if the claim were construed as relying on the Albany Med privacy policy cited in the CCAC, Plaintiffs' claim would still fail because the policy cannot be read as a guarantee that a data breach would never occur, let alone that a data breach would not occur on a third party's system. *See Abdale*, 19 N.Y.S.3d at 859–60 (dismissing GBL claim because "despite the broad language contained in the complaint, the statements allegedly made by defendants in the privacy policy and online notices do not constitute an unlimited guaranty that patient information could not be stolen or that computerized data could not be hacked"); *Smahaj*, 131 N.Y.S.3d at 827 (statements in defendant CBLPath's privacy policy did not give rise to GBL misrepresentation claim because "[t]he data breach was of AMCA's network, not CBLPath, and plaintiff does not allege that CBLPath exercised control over AMCA's network or data security"). Moreover, Plaintiffs fail to plead that they viewed the Albany Med privacy policy prior to seeking healthcare services from Glens Falls or Albany Med—a requisite element of a GBL claim. *See Oden v. Boston Sci. Corp.*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018) ("[A] claim for deceptive

business practices under GBL § 349 . . . requires [facts illustrating] a causal connection between some injury to plaintiffs and some misrepresentation made by defendants. Therefore. . . plaintiff must state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased."); *In re GEICO Customer Data Breach Litig.*, 2023 WL 4778646, at *17 (E.D.N.Y. July 21, 2023) ("To establish the requisite causal connection between an alleged written misrepresentation and the resulting injury, [a] plaintiff must plausibly allege that she actually viewed the misleading statement prior to making her decision to purchase, and must set forth where, when and how she came to view it."). Thus, Plaintiffs' NY GBL claim fails.

### J. Plaintiffs' Declaratory Judgment Claim Fails (Count IX)

Plaintiffs bring a claim for injunctive and declaratory relief "[u]nder the Declaratory Judgment Act, 28 U.S.C. § 2201." CCAC ¶¶ 589, 592. But "the Declaratory Judgment Act, 28 U.S.C. § 2201, does not create an independent cause of action." *Aldi, Inc. v. Eagles' Landing Shopping Ctr., LLC*, 2025 WL 3726768, at *3 n.4 (W.D. Mo. Sept. 12, 2025). Instead, it is "procedural only," *id.*, and "presupposes the existence of a judicially remediable right." *Kulkarni v. Wolf*, 503 F. Supp. 3d 908, 923 (W.D. Mo. 2020). "Given that Plaintiffs['] substantive claims fail, Count [IX] must be dismissed." *Id.*

## VI. Conclusion

For the foregoing reasons, the Healthcare Provider Defendants request that each of the claims brought against them in the CCAC be dismissed in their entirety.

Respectfully Submitted,

*/s/ Elizabeth A. Scully*
Elizabeth A. Scully (admitted *pro hac vice*)
Gilbert S. Keteltas (admitted *pro hac vice*)
**BAKER & HOSTETLER LLP**
1050 Connecticut Ave. N.W., Ste. 1100
Washington, DC 20036
Tel: (202) 861-1500
escully@bakerlaw.com
gketeltas@bakerlaw.com

Colby M. Everett #72403 (MO)
**BAKER & HOSTETLER LLP**
1801 California St., Ste. 4400
Denver, CO 80202
Tel: (303) 861-0600
ceverett@bakerlaw.com

*Attorneys for Defendants Heartland Regional Medical Center d/b/a Mosaic Life Care, Inc., Tallahassee Memorial HealthCare, Inc, Union Health System, Inc., Albany Med Health System, Glens Falls Hospital, Baptist Health South Florida, Inc., LifeBridge Health, Inc., and Pasadena Hospital Association, Ltd d/b/a Huntington Hospital*

/s/ Timothy J. Lowe
Timothy J. Lowe (admitted *pro hac vice*)
**MCDONALD HOPKINS**
39533 Woodward Ave., Suite 318
Bloomfield Hills, MI 48304
tlowe@mcdonaldhopkins.com
Tel: (248) 646-5070

*Attorneys for Defendants Arkansas Heart Hospital*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th day of January, 2026, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Elizabeth A. Scully*
*Attorney for Defendants Heartland Regional Medical Center d/b/a Mosaic Life Care, Inc., Tallahassee Memorial HealthCare, Inc., Union Health System, Inc., Albany Med Health System, Glens Falls Hospital, Baptist Health South Florida, Inc., LifeBridge Health, Inc., and Pasadena Hospital Association, Ltd d/b/a Huntington Hospital*