**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION**

| | | |
|---|---|---|
| IN RE: CERNER/ORACLE DATA BREACH LITIGATION | ) ) ) ) ) | Case No. 25-00259-CV-W-BP<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFFS' OMNIBUS SUGGESTIONS IN OPPOSITION TO HEALTHCARE DEFENDANTS' AND SAPPHIRE COMMUNITY HEALTH'S MOTIONS TO DISMISS**

## TABLE OF CONTENTS


INTRODUCTION ..... 1

BACKGROUND ..... 2

LEGAL STANDARD ..... 6

ARGUMENT ..... 8

I. ALL PLAINTIFFS HAVE ARTICLE III STANDING. ..... 8

II. PLAINTIFFS PLAUSIBLY ALLEGE COMMON LAW AND STATUTORY CLAIMS AGAINST THE HEALTHCARE DEFENDANTS. ..... 8

A. Plaintiffs Plead a Claim for Negligence. ..... 8

1. The Healthcare Defendants breached their duties to Plaintiffs. ..... 9

2. The Healthcare Defendants caused Plaintiffs' injuries. ..... 10

3. Plaintiffs' negligence claims are not barred by the economic loss doctrine. ..... 11

B. Plaintiffs Plead a Claim for Negligence *per se*. ..... 12

C. Plaintiffs Adequately Allege Their Third-Party Beneficiary Claim (Count III). ..... 14

D. Plaintiffs Adequately Allege a Breach of Implied Contract (Count IV). ..... 17

E. Plaintiffs Adequately Alleged their Unjust Enrichment Claim. ..... 19

F. Plaintiffs Plausibly Allege Breach of Fiduciary Duty. ..... 21

G. Plaintiffs Sufficiently Plead Invasion of Privacy. ..... 22

H. Plaintiffs Properly Allege Their Statutory Claims. ..... 25

1. California Consumer Privacy Act - (Count XII – Huntington). ..... 25

2. California Confidentiality of Medical Information Act – (Count XIII – Huntington) 27

3. California Customer Records Act – (Count XIV – Huntington) ..... 29

4. California Unfair Competition Law – (Count XV – Huntington) ..... 29

5. Florida Deceptive and Unfair Trade Practices Act – (Count XVII – Baptist Health and Tallahassee Memorial) ..... 31

6. Indiana Deceptive Consumer Sales Act – (Count XVIII – Union Health) ..... 33

7. Missouri Merchandising Practices Act – (Count XIX – Mosaic) ..... 35

8. New York Gen. Bus. Law § 349 – (Count XX – Albany Med and Glens Falls) ..... 36

9. Montana Data Breach Notification Law and Montana Consumer Protection Act Claims (Counts XXI and XXII against Sapphire). ..... 38

## TABLE OF AUTHORITIES

**Cases**

*Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*, 19 N.Y.S.3d 850 (N.Y. Sup. Ct. 2015) ........ 37

*Angus v. Flagstar Bank, FSB*, 2025 WL 937760 (E.D. Mich. Mar. 27, 2025)........ 23, 24

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........ 7, 18

*Baldwin v. Nat'l W. Life Ins. Co.*, 2021 WL 4206736 (W.D. Mo. Sept. 15, 2021) .......11, 20, 21

*Barletti v. Connexin Software, Inc.*, 2023 WL 6065884 (E.D. Pa. Aug. 17, 2023)........ 15

*Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024 (N.D. Cal. 2019)........11

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........ 7

*Burnett v. Nat'l Ass'n of Realtors*, 75 F.4th 975 (8th Cir. 2023)........ 14

*C.C. v. Med-Data Inc.*, 2022 WL 970862 (D. Kan. Mar. 31, 2022)........ 8

*C.M. v. MarinHealth Med. Grp., Inc.*, 2024 WL 217841 (N.D. Cal. Jan. 19, 2024) ........ 19

*Carlsen v. GameStop, Inc.*, 833 F.3d 903 (8th Cir. 2016) ........ 6, 7

*Casa Blanca Convalescent Homes*, 159 Cal. App. 3d 509 (Cal. Ct. App. 1984)........ 31

*Castillo v. Seagate Tech., LLC*, 2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ........ 18

*Charlie v. Rehoboth McKinley Christian Health Care Servs.*, 598 F. Supp. 3d 1145 (D.N.M. 2022) ........ 17

*Crowe v. Managed Care of N. Am. Inc.*, 2024 WL 6863341 (S.D. Fla. Aug. 16, 2024)........ 12

*Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076 (11th Cir. 2019)........ 31

*DeCoursey v. Murad, LLC*, 673 F. Supp. 3d 194 (N.D.N.Y. 2023) ........ 36, 37

*Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024) ........ 28

*Doe v. N. Cal. Fertility Med. Ctr.*, 2024 WL 246178 (E.D. Cal. Jan. 23, 2024)........ 30

*Doe v. Young*, 2009 WL 3680988 (E.D. Mo. Act. 30, 2009)........ 24

*Drobnak v. Andersen Corp.*, 561 F. 3d 778 (8th Cir. 2009) ........ 27, 32, 34

*Durgan v. U-Haul-Int'l Inc.*, 2023 WL 12140653 (D. Ariz. July 28, 2023)........ 34

*Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176 (M.D. Fla. 2022)........ 10

*Farmers Edge Inc. v. Farmobile, LLC*, 970 F.3d 1027 (8th Cir. 2020)........ 17

*Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735 (W.D.N.Y. 2017) ........ 36

*Finley v. Kelly*, 384 F. Supp. 3d 898 (M.D. Tenn. 2019)........................................................ 23

*Gardner v. Health Net, Inc.*, 2010 WL 11597979, (C.D. Cal. Aug. 12, 2010)......................... 30

*Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467 (S.D.N.Y. 2014). ............................................................................................................................ 37

*Gordon v. Zeroed-In Tech., LLC*, 2025 WL 936415 (D. Md. Mar. 26, 2025).................... 12, 13

*Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190 (N.Y. 2002) ....................................... 36

*Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34 (D. Ariz. 2021) ............................... 13, 31

*Hargis v. JLB Corp.*, 357 S.W.3d 574 (Mo. 2011)................................................................ 19

*Harris v. Mercy Health Network, Inc.*, 2024 WL 5055556 (S.D. Iowa June 26, 2024)........... 18

*Henry v. Farmers Ins. Co., Inc.,* 444 S.W.3d 471 (Mo. App. W. Dist. 2014)......................... 21

*In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623 (N.D. Cal. 2024)..................... 12

*In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197 (N.D. Cal. 2014) .............................. 31

*In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742 (D.N.J. Dec. 16, 2021) ....................................................................................... 9, 10

*In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130 (C.D. Cal. 2021)................ 13

*In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953 (N.D. Cal. 2016)....................... 30

*In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374 (E.D. Va. 2020)12, 19, 20, 31

*In re Change Healthcare, Inc.*, 2025 WL 3687895 (D. Minn. Dec. 19, 2025) ........................ 15

*In re Crop Protection Loyalty Program Antitrust Lit.*, 779 F. Supp. 3d 624 (M.D. N.C. 2025) ............................................................................................................................ 38

*In re Equifax, Inc., Customer Data Sec. Breach Lit.*, 362 F. Supp. 3d 1295 (N.D. Ga. 2019) 38

*In re Fortra File Transfer Software Data Sec. Breach Litig.*, 749 F. Supp. 3d 1240 (S.D. Fla. 2024) ............................................................................................................. 15, 16

*In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707 (D. Minn. 2023)..................................... 19

*In re MCG Health Data Sec. Issue Litig.*, 2023 WL 3057428 (W.D. Wash. Mar. 27, 2023)... 34

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183 (S.D. Fla. 2022) .................................................................................................................... 28

*In re MOVEit Customer Data Sec. Breach Litig.*, 2025 WL 2179475 (D. Mass. July 31, 2025) ....................................................................................................................... 9, 13

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183 (D. Or. 2016) .................................................................................................................... 19

*In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152 (D. Mass. 2024) ..................... 17

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284 (S.D. Cal. 2020) ..................... 28

*In re SuperValu, Inc.*, 870 F.3d 763 (8th Cir. 2017) ..................... 7

*In re Univ. Urology Data Sec. Incident Litig.*, 2025 WL 1002355 (S.D.N.Y. Mar. 31, 2025). 27

*In re: Cmty. Health Sys., Inc.*, 2016 WL 4732630 (N.D. Ala. Sept. 12, 2016) ..................... 19

*J.J. by & through C.W. v. Poplar Bluff Reg'l Med. Ctr., L.L.C.*, 675 S.W.3d 259 (Mo. App. E.D. 2023) ..................... 9, 12, 35

*Jackson v. Cadillac Cowboy, Inc.*, 986 S.W.2d 410 (Ark. 1999) ..................... 13

*Jackson v. Health Ctr. Partners of S. Cal.*, 2024 WL 3708867 (S.D. Cal. Aug. 7, 2024)........ 28

*Jarrett v. Upperline Health, Inc.*, 2025 WL 3067545 (S.D. Ind. Aug. 8, 2025)..................... 33

*Johnson v. Nice Pak Prods., Inc.*, 736 F. Supp. 3d 639 (S.D. Ind. 2024)..................... 12

*Klenc v. John Beal, Inc.,* 484 S.W.3d 351 (Mo. Ct. App. 2015) ..................... 14

*Kuhns v. Scotttrade, Inc.*, 868 F.3d 711 (8th Cir. 2017) ..................... 34, 35

*Kwikset Corp. v. Superior Ct.*, 246 P.3d 877 (Cal. 2011)..................... 29

*Kylie S. v. Pearson PLC*, 475 F. Supp. 3d 841 (N.D. Ill. 2020) ..................... 8

*Laclede Inv. Corp. v. Kaiser*, 596 S.W.2d 36 (Mo. Ct. App. 1980)..................... 14

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ..................... 7

*Mackey v. Belden, Inc.*, 2021 WL 3363174 (E.D. Mo. Aug. 3, 2021) .....................11

*Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084 (11th Cir. 2021)..................... 31

*McDonald v. Coldwell Banker*, 543 F.3d 498 (9th Cir. 2008)..................... 31

*McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810 (E.D. Ky. 2019) ..................... 22

*Meardon v. Register*, 994 F.3d 927 (8th Cir. 2021)..................... 7

*Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976 (Ill. App. 1 Dist., 1990)..................... 24

*Miller v. NextGen Healthcare, Inc.*, 742 F.Supp.3d 1304 (N.D. Ga. 2024) ..................... 22

*Mohsen v. Veridian Credit Union*, 733 F. Supp. 3d 754 (N.D. Iowa 2024) ..................... 20

*Moore v. Centrelake Med. Grp., Inc.*, 299 Cal. Rptr. 3d 544 (Cal. Ct. App. 2022)............ 29, 30

*Moore v. Soc. Coaching-Credit Repair, LLC*, 2024 WL 1929431 (N.D. Ind. May 1, 2024) ... 33

*Myers v. Shangri-La Jefferson LLC*, 2025 WL 1241908 (W.D. Mo. Apr. 29, 2025)................. 6

*Negron v. Ascension Health*, 2025 WL 2710014 (E.D. Mo. Sept. 23, 2025).................... passim

*Nemani v. St. Louis Univ.*, 33 S.W.3d 184 (Mo. 2000).......................................................... 22

*Nickel v. Stephens Coll.*, 480 S.W.3d 390 (Mo. Ct. App. 2015).............................................. 17

*Orlander v. Staples, Inc.*, 802 F.3d 289 (2d Cir. 2015) .......................................................... 36

*Osborn v. United States*, 918 F.2d 724 (8th Cir. 1990) ............................................................ 6

*Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508 (2d Cir. 2005)............................. 36

*People ex rel. DuFauchard v. U.S. Fin. Mgmt., Inc.*, 87 Cal. Rptr. 3d 615 (Cal. Ct. App. 2009) ...................................................................................................................................... 27

*Progressive N. Ins. Corp. v. McDonough*, 608 F.3d 388 (8th Cir. 2010) ................................ 35

*Pub. Hous. Auth. ex rel. City of Minneapolis*, 168 F.3d 1069 (8th Cir. 1999) ........................... 7

*Ramirez v. Paradis Shops, LLC*, 69 F.4th 1213 (11th Cir. 2023) ............................................ 27

*Rardon v. Falcon Safety Prods., Inc.*, 2021 WL 2008923 (W.D. Mo. May 4, 2021)................. 8

*Remijas v. Neiman Marcus Grp., LLC,* 794 F.3d 688 (7th Cir. 2015)....................................... 8

*Robinson v. Mo. State Highway & Transp. Comm'n*, 24 S.W.3d 67 (Mo. Ct. App. 2000)...... 10

*Roma v. Prospect Med. Holdings, Inc.*, 2024 WL 3678984 (E.D. Penn. Aug. 6, 2024) .......... 28

*Safeway Transit, LLC v. Disc. Party Bus, Inc.*, 954 F.3d 1171 (8th Cir. 2020)........................ 25

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010).................... 38

*Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033 (N.D. Cal. 2025) ............................. 25, 30

*Smahaj v. Retrieval-Masters Creditors Bur., Inc.*, 131 N.Y.S.3d 817 (N.Y. Sup. Ct. 2020).... 37

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)................................................................... 8

*Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898 (S.D. Cal. 2020) ................... 28, 29

*Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472 (8th Cir. 2008) ................................................ 32

*T.R. v. Clay-Platte Fam. Med., P.C.*, 2025 WL 3143638 (W.D. Mo. Nov. 3, 2025) ......... passim

*Tehan v. MTC Holsters, LLC*, 2023 WL 12216384 (W.D. Mo. July 27, 2023).......................... 9

*Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150 (Mo. 2007) ...................................... 14

*Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727 (S.D.N.Y. Mar. 23, 2021).................. 36

*Webb v. Injured Workers Pharmacy, LLC*, 2023 WL 5938606 (D. Mass. Sept. 12, 2023)..... 22

*Webster v. Bradford-Scott Data, LLC*, 2025 WL 560917 (N.D. Ind. Feb. 20, 2025)............... 12

*Williams v. Thor Motor Coach, Inc.*, 2024 WL 4524292 (N.D. Ind. Oct. 17, 2024) ............... 33

**Statutes**

45 C.F.R. § 164.402 .......... 18

45 C.F.R. §164.308 .......... 15, 16

Cal. Civ. Code § 1798.145 .......... 25, 26

Cal. Civ. Code § 1798.150 .......... 26

California Confidentiality of Medical Information Act .......... 27

California Consumer Privacy Act .......... 25

Missouri Merchandising Practices Act .......... 35

Mo. Ann. Stat. § 538.225.1 .......... 35

Mont. Code Ann. § 30-14-133 .......... 38

Mont. Code Ann. §§ 30-14-1704 *et seq*. .......... 38, 39

New York General Business Law § 349 .......... 36

## INTRODUCTION

The January 2025 data breach that prompted this action compromised some of the most sensitive information that exists: protected health information ("PHI")—including medical diagnosis and treatment records, dates of birth, and Social Security numbers—for patients across the country, including patients of the Healthcare Defendants.[1] Consolidated Class Action Complaint, Doc. 93 ("CAC") ¶¶ 1,4, 368-69.[2] The breach occurred on legacy servers maintained by the Healthcare Defendants' electronic health records ("EHR") vendor, Cerner Corporation, now doing business as Oracle Health ("Cerner"). ¶¶ 1-2, 4, 368-369. The Healthcare Defendants collected Plaintiffs' most sensitive personal and medical information and had non-delegable duties to safeguard it. ¶¶ 358-60. But the Healthcare Defendants—without adequate oversight or security—entrusted that information to Cerner, ultimately leading to its compromise in the January 2025 data breach. ¶¶ 363, 368.

Healthcare Defendants now move to dismiss,[3] arguing that Plaintiffs lack standing and have failed to state a claim. These arguments fail. All Plaintiffs have Article III standing. The standing issue is straightforward and uniform for all Plaintiffs. All Plaintiffs allege a common, concrete injury: the loss of their legally protected privacy interests in their highly personalized,

---

[1] The present Healthcare Defendants include Albany Med Health System; Arkansas Heart Hospital, LLC; Baptist Health South Florida, Inc.; Glens Falls Hospital; Heartland Regional Medical Center d/b/a/ Mosaic Life Care, Inc.; Pasadena Hospital Association, Ltd., d/b/a Huntington Hospital; Sapphire Community Health Inc.; Tallahassee Memorial Healthcare, Inc.; and Union Health System, Inc. LifeBridge Health, Inc. was previously named as a defendant, but all existing claims against LifeBridge were dismissed without prejudice on February 27, 2026 and are therefore not the subject of the present motion. *See* Doc. 215.

[2] "¶__" refers to the identified paragraph(s) of the CAC.

[3] This omnibus brief in opposition responds to both the Healthcare Provider Defendants' motion and suggestions (Docs. 162-63) and Sapphire Community Health Inc.'s separately filed motions and suggestions (Docs. 203-04). In this brief, reference to "Healthcare Defendants" includes Sapphire Community Health, Inc., unless otherwise noted.

uniquely identifiable, statutorily confidential PHI, as well as other sensitive personal information to a criminal hacker. That, without more, is a sufficiently concrete injury for Article III standing under established Supreme Court, Eighth Circuit, and other relevant precedents. Moreover, some of the data has already been misused and there is a substantial and imminent risk of further identity theft and fraud. Healthcare Defendants' arguments under Rule 12(b)(6) are equally unavailing because Plaintiffs allege legally sufficient claims against each Defendant and sufficient facts to state the elements of those claims. The Court should deny Healthcare Defendants' Motion to Dismiss.

## BACKGROUND

The Healthcare Defendants collect, maintain, and are entrusted with some of the most personal and private information associated with their patients: not only addresses, dates of birth, and Social Security numbers, but also health insurance information, billing information, and comprehensive medical history including treatment records, lab results, diagnoses, surgeries, medications, and whatever else may be included in a patient's medical records. ¶¶ 350-63. To create, store, organize, and manage this sensitive patient data, Healthcare Defendants contracted with Cerner, now Oracle Health, to serve as their electronic health records system vendor—transmitting and entrusting their patients' most sensitive information to Cerner's software and data-storage platform. ¶¶ 329, 363. Cerner has acknowledged that it is "trusted with some of the world's most sensitive and regulated data." ¶¶ 1, 344.

In selecting and utilizing Cerner as their EHR vendor and entrusting it with their patients' data, Healthcare Defendants assumed a duty to ensure the security and confidentiality of the patient data they collected and transmitted to Cerner, and to take reasonable steps to safeguard that data—

including through adequate oversight and vetting of the third-party vendors to whom they entrusted it. ¶¶ 358-60.

Yet, Cerner allowed a massive data breach of its legacy servers in January 2025. ¶¶ 1-2, 369. According to Cerner, a criminal hacker stole and *copied to a remote server* highly sensitive patient data for an untold number of patients—including medical records, treatment information, and health insurance information, as well as names, dates of birth, Social Security numbers and other personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Personal Information"). ¶ 2.

Plaintiffs are 20 individuals from eight states,[4] all of whom are or were patients of healthcare providers that currently or previously used Cerner as their EHR system vendor. ¶¶ 8-327, 345. Each Plaintiff alleges that they have received notice of the data breach from a healthcare provider, notifying them that their Private Information was improperly accessed and exfiltrated by cybercriminals, and that such information obtained by unauthorized third parties included not only personally identifying information such as their names, phone numbers, email addresses, dates of birth, and Social Security numbers, but also "medical information," ¶¶ 83-83, 111-112, 125-126, 139-140, 153-154, 167-68, including, for example, "medical treatment/diagnosis information," "prescription information," "provider/physician name[s]," "dates of services," and/or "medical record/patient identification number[s]," ¶¶ 13-14, 27-28, 97-98, 237-38, 251-52, 265-66, 279-80,

[4] Ronald and Laura Tripp (Arkansas Heart Hospital, LLC); Machelle Bell and Alyson Brooke Lewis (Baptist Health South Florida); Karen Anne Morgan, Heidi Holcomb, and Dillon Greeno (Glens Falls Hospital in the Albany Med Health System in New York); Jason Phillip Evans and Kim Delaney (Mosaic Life Care in Missouri); Karen Sue Adams, Jill Renee Carnahan, Shannon Smith, James Taylor, Gerri Woolard, and Lois Melvin (Union Health System in Indiana); Paula Sheward (Tallahassee Memorial Healthcare, Inc. in Florida); Jerry Walker (Sapphire Community Health, Inc. in Montana); Christian Magliozzi (Huntington Health Services, LLC ("Huntington") in California); Rebecca D. Fox (Huntington in New York); and German Rangel (Huntington in Arizona).

293-94), or “medical record numbers, doctors, diagnoses, medicines, test results, images, care and treatment” records, ¶¶ 41-42, 55-56, 69-70, 209-10, 223-24, 307-308, 319-20).

Healthcare Defendants are responsible for this data breach and the loss of patients’ private information to cybercriminals because, among other things, Healthcare Defendants collected Plaintiffs’ sensitive personal and medical information, transmitted it to and allowed it to be stored it on legacy servers, and failed to take adequate steps to ensure the security of that data—including by failing to adequately vet, monitor, and oversee Cerner’s data security practices. ¶¶ 329, 350-68. As a result of the breach, Plaintiffs have suffered and imminently will suffer harms, including “the unauthorized disclosure of the Private Information itself,” the risk that the private information obtained by the cybercriminals “has been or imminently will be used for criminal, fraudulent purposes,” and/or “has been sold for such purposes and posted on the dark web for sale.” ¶¶ 15, 29, 43, 57, 71, 85, 99, 113, 127, 141, 155, 169, 211, 225, 239, 253, 267, 281, 295, 309, 321.

PHI is especially valuable to identity thieves as it can be used to commit an array of crimes, including identity theft and medical and financial fraud. ¶ 429. In a “robust cyber black market” for stolen data on the dark web, credit card information and associated PII can sell for as little as $1-$2 (per person), while an individual’s PHI can sell for as much as $363. ¶ 430-31. One reason PHI is particularly valuable to criminals is that it can be used to target victims with frauds and scams that take advantage of the victim’s medical conditions or victim settlements, or it can be used to create fake insurance claims, or to purchase and resell medical equipment, or to gain access to prescriptions for illegal use or resale. ¶ 432. Plaintiffs further allege that the unauthorized disclosure of their PHI can lead to “life-threatening consequences” if a victim’s health information is altered or mixed with other records, as it can lead to misdiagnosis or mistreatment. ¶ 433.

Plaintiffs allege that as a result of the data breach, they have been and will be forced to spend time monitoring accounts and credit files, changing passwords, verifying the legitimacy of the data breach notices, and researching the data breach; they have suffered diminution in the value of their private information and lost the value of access to that information; they have experienced anxiety and emotional distress from the disclosure of their private information; they have experienced a significant increase in spam emails and phone calls using their private information since the data breach; and that they face a lifetime risk of identity theft and misuse of private information compromised in the data breach, some of which is "sensitive data that cannot be changed." ¶¶ 16-20, 30-34, 44-48, 58-62, 72-76, 86-90, 100-104, 114-18, 128-32, 142-46, 156-60, 170-74, 212-16, 226-30, 240-44, 254-58, 268-72, 282-86, 296-300, 310-12, 322-26.)

The risks of misuse of Plaintiffs' data from this data breach are substantial and are neither speculative nor hypothetical. Various Plaintiffs allege additional harms or unusual activity they experienced in 2025 that they allege are attributable to Oracle Health data breach. For example, Plaintiff Bell experienced two fraudulent attempts to open accounts in her name, fraudulent charges made on her debit card requiring her to request and receive a new card, and credit inquiries that she did not make. ¶ 45. Plaintiff Morgan had to replace her debit card after someone fraudulently withdrew $50 from her bank account; she received notice from Equifax that someone was trying to access her credit card; she has experienced a drop in her credit score; and she has been receiving approximately 100 scam emails a day since the data breach. ¶ 73. Plaintiff Holcomb has experienced a significant increase in spam texts using her private information from scammers pretending to be the DMV and EZ-Pass. ¶ 87. Plaintiff Adams received a notice in the mail that she had been turned down for a housing mortgage that she never applied for, from a bank she had never heard of. ¶ 129. Plaintiff Carnahan received notices from Experian that her Social Security

Number was found on the dark web, and that certain entities had accessed her credit report apparently related to credit applications or vehicle financing she never applied for. ¶ 143. Plaintiff Taylor received multiple alerts and notifications from LifeLock that his information is on the dark web and of four fraudulent attempts to open bank or credit accounts in his name, as well as two attempted fraudulent purchases with his debit card. ¶ 171. Plaintiff Sheward experienced an $800 fraudulent transaction made at Home Depot. ¶ 213. Plaintiff Delaney had to replace her debit card several times in 2025 due to her bank notifying her of fraud on her account every two to three months. ¶ 241.

Plaintiffs bring claims against Healthcare Defendants for negligence, negligence per se, breach of third-party beneficiary contract, breach of implied contract, unjust enrichment, breach of fiduciary duty, invasion of privacy, declaratory judgment, and claims under consumer protection and other relevant statutes of their respective states.

## LEGAL STANDARD

Healthcare Defendants contend Plaintiffs lack Article III standing under Rule 12(b)(1) and fail to state a claim under Rule 12(b)(6). "A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack' on jurisdiction." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). Healthcare Defendants adopt Cerner's standing arguments,[5] which are a "facial attack." When considering a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought

[5] *See* Healthcare Defendants' Sugg. in Supp. ("HCD Br."), Doc. 163, at 4-5; Sapphire Comm. Health's Sugg. in Supp. ("Sapphire Br."), Doc. 204, at 11; Cerner's Sugg. in Supp., Doc. 161, at 4-14.

under Rule 12(b)(6)." *Carlsen*, 833 F.3d at 908; *Myers v. Shangri-La Jefferson LLC*, 2025 WL 1241908, *1 (W.D. Mo. Apr. 29, 2025).

For a motion under Rule 12(b)(6), the Court must "accept the well-pled allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor." *Meardon v. Register*, 994 F.3d 927, 934 (8th Cir. 2021) (citation omitted). To survive a motion under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A claim survives even if it is "improbable" a plaintiff will be able to prove those facts or the odds of recovery are "remote and unlikely." *Twombly*, 550 U.S. at 556. Courts "presume[e] that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). When, taken as true, the facts "raise a reasonable expectation that discovery will reveal evidence" to support a plaintiff's claim, the Court should deny a motion to dismiss. *Twombly*, 550 U.S. at 556; *T.R. v. Clay-Platte Fam. Med., P.C.*, 2025 WL 3143638, at *2 (W.D. Mo. Nov. 3, 2025).

Finally, in considering motions under both Rule 12(b)(1) and 12(b)(6), "[i]t is crucial . . . not to conflate Article III's requirement of injury in fact with a plaintiff's potential causes of action, for the concepts are not coextensive." *Carlsen*, 833 F.3d at 909 (citations omitted). "[S]tanding in no way depends on the merits of the plaintiff's claim[.]" *In re SuperValu, Inc.*, 870 F.3d 763, 773-74 (8th Cir. 2017); *see also Pub. Hous. Auth. ex rel. City of Minneapolis*, 168 F.3d 1069, 1074 (8th Cir. 1999) ("We repeat the fundamental principle that the ultimate merits of the case have no bearing on the threshold question of standing.")

## ARGUMENT

### I. ALL PLAINTIFFS HAVE ARTICLE III STANDING.

Article III of the Constitution requires that plaintiffs have standing to assert their claims, *e.g., Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). To have standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Healthcare Defendants adopt all of Cerner's standing arguments and argue that they are equally applicable to Healthcare Defendants.[6] Plaintiffs thus adopt and incorporate their standing arguments in opposition to Cerner's motion. For those reasons, the Court should deny the Healthcare Defendants' motion under Rule 12(b)(1).

### II. PLAINTIFFS PLAUSIBLY ALLEGE COMMON LAW AND STATUTORY CLAIMS AGAINST THE HEALTHCARE DEFENDANTS.

#### A. Plaintiffs Plead a Claim for Negligence.

"In any action for negligence, a plaintiff must establish the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and the defendant's breach proximately caused the plaintiff's injury." *Rardon v. Falcon Safety Prods., Inc.*, 2021 WL 2008923, at *3 (W.D. Mo.

---

[6] After incorporating Cerner's standing arguments by reference, Sapphire repeats several of these arguments in footnote 1 of its brief and cites a few additional cases not cited by Cerner but which are equally distinguishable. Sapphire Br. at 11 n.1. None of Sapphire's additional citations offers controlling authority or reasoning to support dismissal for lack of standing here. *See Remijas v. Neiman Marcus Grp., LLC,* 794 F.3d 688, 695 (7th Cir. 2015) (finding plaintiffs sufficiently alleged standing, reversing district court; Sapphire cites dicta commenting on one narrow issue the Court declined to reach); *Kylie S. v. Pearson PLC*, 475 F. Supp. 3d 841, 849 (N.D. Ill. 2020) (standing not found where "disclosed data [from educational platform] is not sensitive enough to materially increase risk of identity theft"); *C.C. v. Med-Data Inc.*, 2022 WL 970862 at *10 (D. Kan. Mar. 31, 2022) (remanding case removed from state court finding plaintiff's allegations insufficient to establish imminent risk of harm where no allegations of actual fraud or identity theft were made).

May 4, 2021) (internal citation omitted).[7] The Healthcare Defendants assert that Plaintiffs fail to allege any breach of the duties that Healthcare Defendants owe to Plaintiffs,[8] and that Plaintiffs fail to allege any proximate cause between Healthcare Defendants' actions and Plaintiffs' injuries. These arguments ignore the well-pleaded allegations of the Complaint.

***1. The Healthcare Defendants breached their duties to Plaintiffs.***

As set forth in the Complaint, the Healthcare Defendants breached their duties to Plaintiffs by failing to ensure that their third-party records provider (Cerner) implemented reasonable security measures (¶¶ 409-12), and by failing to sufficiently train their employees regarding the proper handling of their patients' Private Information, including vetting the security practices of third-party vendors. ¶¶ 409, 414, 419. Healthcare Defendants further breached their duties to Plaintiffs by failing to comply with HIPAA-mandated security guidelines, FTC guidance regarding data security practices, NIST Cybersecurity Framework 1.1, and healthcare industry standards regarding protecting sensitive patient data. ¶¶ 405, 408-411, 413-19, 484-84. These allegations are more than sufficient to plead a breach of the Healthcare Defendants' tort duties. *See Tehan v. MTC Holsters, LLC*, 2023 WL 12216384, at *3 (W.D. Mo. July 27, 2023) (plaintiff adequately pled a breach of duty by alleging that defendant failed to protect and safeguard PII by disregarding

[7] As argued in Plaintiffs' opposition to Cerner's motion to dismiss, the Court should apply Missouri law at this stage. Healthcare Defendants acknowledge the law of negligence is largely the same across jurisdictions. *See* HCD Br., Doc. 163, at 6 (stating "each of the jurisdictions at issue here would identically treat the majority of the common law claims"); Sapphire Br., Doc. 204, at 12 (same).

[8] To the extent that Healthcare Defendants also challenge whether Plaintiffs sufficiently plead the "duty" element, this argument fails. Courts regularly emphasize the "clearly recognized" special relationship between a healthcare provider and patients due to the provider's collection of "highly sensitive" personal health information, such that healthcare providers assume a duty to protect that information. *See Negron v. Ascension Health*, 2025 WL 2710014, at *9 (E.D. Mo. Sept. 23, 2025) (citing *J.J. by & through C.W. v. Poplar Bluff Reg'l Med. Ctr., L.L.C.*, 675 S.W.3d 259, 266 (Mo. App. E.D. 2023)); *T.R. v. Clay-Platte Fam. Med., P.C.*, 2025 WL 3143638, at *5 (W.D. Mo. Nov. 3, 2025).

security principles and by allowing unmonitored and unrestricted access to unsecured PII); *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *15 (D.N.J. Dec. 16, 2021) ("*AMCA*") (plaintiffs pled "a breach of duty sufficient to survive" dismissal by alleging that the healthcare defendants failed to "implement measures to monitor, audit, or evaluate" vendor's data security practices); *In re MOVEit Customer Data Sec. Breach Litig.*, 2025 WL 2179475, at *9-10 (D. Mass. July 31, 2025) (similar); *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1186 (M.D. Fla. 2022) (similar).

***2. The Healthcare Defendants caused Plaintiffs' injuries.***

The Healthcare Defendants' conduct also proximately caused Plaintiffs' injuries. "The general test of proximate cause is whether an injury is the natural and probable consequence of the defendant's negligence." *Robinson v. Mo. State Highway & Transp. Comm'n*, 24 S.W.3d 67, 78 (Mo. Ct. App. 2000). Plaintiffs allege that the Data Breach (and resulting theft of their Private Information) would not have occurred but for the Healthcare Defendants' failure to adequately vet and monitor the security practices of Cerner and take additional steps to secure Plaintiffs' information. As a result, Plaintiffs have suffered lost time remedying and mitigating the effects of the Data Breach, actual misuse of their Private Information in the form of unauthorized charges, fraudulent withdrawals, and fraudulent accounts opened in their names, and all Plaintiffs now face a substantial, imminent, immediate, and continuing increased risk of medical fraud and identity theft. ¶¶ 45, 73, 101, 129, 143, 171, 213, 241, 443-58. Under Missouri law, this is sufficient to allege proximate cause. *See Clay-Platte*, 2025 WL 3143638, at *6 ("Plaintiffs allege injuries—including lost time—from the Data Breach. It is reasonable to infer that the Data Breach was a probable consequence of Defendants' alleged failure to protect Plaintiffs' Private Information. The Court finds that Plaintiffs plausibly allege proximate causation."); *AMCA*, 2021 WL 5937742, at

*15 (plaintiffs' allegation that the breach wouldn't have occurred if defendants had used reasonable care in selecting and monitoring their collection agency was "sufficient to satisfy proximate causation" in a motion to dismiss); *Farmer*, 582 F. Supp. 3d at 1186 (similar).

***3. Plaintiffs' negligence claims are not barred by the economic loss doctrine.***

The Healthcare Defendants further assert that, even if Plaintiffs plead the elements of their negligence claims, their claims are nonetheless barred by the economic loss doctrine.[9] But under Missouri law, the economic loss doctrine does not apply "where there is a special relationship between the parties." *Mackey v. Belden, Inc.*, 2021 WL 3363174, at *8 (E.D. Mo. Aug. 3, 2021); *see also Negron*, 2025 WL 2710014, at *8 (citation omitted). As explained above, the relationship between a patient and healthcare provider constitutes a special relationship. *Negron*, 2025 WL 2710014, at *9 (finding that economic loss doctrine did not apply to plaintiffs' negligence claim against healthcare system in data breach class action). Here, Plaintiffs are all current or former patients of Healthcare Defendants who shared their Private Information with their healthcare providers and who necessarily depended on those providers to implement and maintain reasonable data security and to protect their Private Information. ¶¶ 11, 25, 39, 53, 67, 81, 95, 123, 137, 151, 165, 207, 221, 235, 249, 263, 277, 291, 305, 317. In the context of this special relationship, the economic loss doctrine does not apply.

Moreover, Plaintiffs' allegations of lost time and related mitigation damages, *see, e.g.*, ¶ 16, constitute non-monetary injuries that fall outside the purview of the economic loss rule. *Clay-Platte*, 2025 WL 3143638, at *5-6 (finding that plaintiffs' negligence claims were not barred by Missouri's economic loss rule "[g]iven their allegations of lost time"); *Baldwin v. Nat'l W. Life Ins. Co.*, 2021 WL 4206736, at *3 (W.D. Mo. Sept. 15, 2021) (finding that economic loss rule did

---

[9] *See* HCD Br. at 10-11; Sapphire Br. at 16.

not apply to negligence claims because "time and effort monitoring accounts can qualify as an injury to support Plaintiffs' claims").[10]

### B. Plaintiffs Plead a Claim for Negligence *per se*.

The Healthcare Defendants argue that Plaintiffs' negligence *per se* claim fails because HIPAA and the FTC Act do not create private causes of action.[11] HCD Br. at 11-12; Sapphire Br. at 17. The Healthcare Defendants are wrong. Under Missouri law, the question is not whether the statute creates a private cause of action, but whether the statute sets forth a standard of care whose violation constitutes negligence *per se*. *Negron*, 2025 WL 2710014, at *10. Applying this standard, Missouri courts have recognized that HIPAA creates a statutory duty of confidentiality that when violated, gives rise to a common law claim of negligence *per se*. *J.J. ex rel. C.W. v. Poplar Bluff Reg'l Med. Ctr., L.L.C.*, 675 S.W.3d 259, 266 (Mo. Ct. App. 2023) ("If a defendant health care provider does not comply with its duties under HIPAA and HITECH, and the plaintiff is injured as a result of a statutory violation, then the defendant is liable for negligence *per se.*"); *Negron*, 2025 WL 2710014, at *10 ("HIPAA creates a statutory duty of confidentiality that, when violated, gives rise to a common law claim of negligence per se"); *Clay-Platte*, 2025 WL 3143638, at *6 (similar). The jurisdictions of Indiana and New York are in accord. *See Johnson v. Nice Pak Prods., Inc.*, 736 F. Supp. 3d 639, 649 (S.D. Ind. 2024) (rejecting independent cause of action argument and

[10] The economic loss rule also does not apply (or does not bar Plaintiffs' claims) under the laws of other states suggested by the Healthcare Defendants. *See, e.g.*, *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019) (finding, in data breach case, that California's economic loss rule did not bar plaintiffs' negligence claims); *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 637-38 (N.D. Cal. 2024) (same); *Webster v. Bradford-Scott Data, LLC*, 2025 WL 560917, at *9 (N.D. Ind. Feb. 20, 2025) (same, under Indiana law); *Gordon v. Zeroed-In Tech., LLC*, 2025 WL 936415, at *11 (D. Md. Mar. 26, 2025) (same, under Maryland law).

[11] Plaintiffs withdraw their negligence *per se* claims under Missouri law only to the extent that it is premised on violations of the FTC Act, *Negron*, 2025 WL 2710014, at *10, and under Florida law to the extent it is premised on violations of HIPAA and the FTC Act, *Crowe v. Managed Care of N. Am. Inc.*, 2024 WL 6863341, at *7-8 (S.D. Fla. Aug. 16, 2024).

sustaining negligence *per se* premised on a violation of the FTC Act); *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 407-08 (E.D. Va. 2020) (applying New York law and sustaining negligence per se claim premised on a violation of the FTC Act). For these reasons, Plaintiffs have alleged a claim for negligence *per se* under the laws of Missouri, New York, and Indiana.

While the Healthcare Defendants are correct that the laws of Arkansas, Arizona, California, and Maryland do not recognize negligence *per se* as an independent cause of action, those jurisdictions recognize that the violation of a statute can be evidence of negligence. *See Jackson v. Cadillac Cowboy, Inc*., 986 S.W.2d 410, 413 (Ark. 1999) ("duty of care and the attendant standard of care may be found in a statute that is silent on civil liability"); *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 47 (D. Ariz. 2021) (plaintiffs not precluded from applying a theory of negligence *per se* to their negligence claim); *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1142-43 (C.D. Cal. 2021) (permitting negligence *per se* theories under the FTC Act and HIPAA to proceed under Plaintiff's negligence claim); *Zeroed-In Tech.*, 2025 WL 936415, at *12-14 (violation of a statute, such as the FTC Act, can support duty and breach). As a result, Plaintiffs existing negligence claims under the laws of these states are supported by the factual allegations of negligence per se. Although Plaintiffs believe it unnecessary, if the Court thinks otherwise Plaintiffs would request leave to amend to expressly incorporate negligence *per se* theories under Arkansas, Arizona, California, and Maryland law into their negligence claim. *See In re MOVEit*, 2025 WL 2176590, at *12.

### C. Plaintiffs Adequately Allege Their Third-Party Beneficiary Claim (Count III).[12]

Plaintiffs Evans, Delaney, and Sheward are beneficiaries of statutorily required contracts between their respective healthcare provider and Cerner relating to safeguarding patient PHI. Under Missouri law, third-party beneficiaries of a contract have standing to enforce that contract. *Verni v. Cleveland Chiropractic Coll*., 212 S.W.3d 150, 153 (Mo. 2007). To qualify as a third-party beneficiary, the contract must clearly express an intent to benefit the third party or an identifiable class to which the third party belongs. *See id*. If the contract lacks an express declaration of such intent, there is a strong presumption that the third-party is not a beneficiary. *See Burnett v. Nat'l Ass'n of Realtors*, 75 F.4th 975, 983 (8th Cir. 2023). "Third party beneficiary status depends not so much on a desire or purpose to confer a benefit on the third person, but rather on an intent that the promisor assume a direct obligation to him." *See Klenc v. John Beal, Inc.,* 484 S.W.3d 351, 355 (Mo. Ct. App. 2015); *see also Laclede Inv. Corp. v. Kaiser*, 596 S.W.2d 36, 42-43 (Mo. Ct. App. 1980) (an intended beneficiary is one where "performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary"). "A court in determining the parties' intention should consider the circumstances surrounding the transaction as well as the actual language of the contract." Restatement (Second) of Contracts § 302 rep.'s n. cmt. a; *see also*

---

[12] Plaintiffs who received Data Breach notices from Heartland Regional Medical Center d/b/a Mosaic Life Care ("Mosaic") (Jason Phillip Evans and Kim Delaney) and Plaintiffs who received such notices from Tallahassee Memorial Healthcare ("Tallahassee Memorial") (Paula Sheward) are pursuing their respective pending third-party beneficiary claims against Cerner and Mosaic, or, Cerner and Tallahassee Memorial. Plaintiffs, however, concede the remaining third-party beneficiary claims.
Despite Plaintiffs' October 7, 2025, discovery requests for Cerner's business agreements with impacted healthcare providers (Doc. 64), Cerner has yet to provide such agreements beyond those attached to its Motion to Dismiss. Plaintiffs reserve the right to assert third-party beneficiary claims for additional Healthcare Provider Defendants in forthcoming short form complaints.

13 Williston on Contracts § 37:8 n.2 (4th ed.) (the intent to benefit a third-party can be shown not only by the contract's express language but by the surrounding circumstances).

Under HIPAA, a "covered entity may permit a business associate to create, receive, maintain, or transmit electronic protected health information on the covered entity's behalf only if the covered entity obtains satisfactory assurances . . . that the business associate will appropriately safeguard the information." *See* 45 C.F.R. §164.308(b)(1). Covered entities, like the Healthcare Defendants, may only share PHI with a business associate, like Cerner, if the entities enter into a written contract—a business associate agreement, or "BAA"—whereby Cerner promises to "appropriately safeguard the information." *See* 45 C.F.R. § 164.308(b)(3). The protection of Plaintiffs' PHI was a duty that the Healthcare Defendants owed to Plaintiffs and an obligation Cerner contractually undertook when it executed the BAAs. Therefore, the BAAs were made primarily for Plaintiffs' benefit (*e.g.*, the protection of PHI, and access to treatment information). *In re Change Healthcare, Inc.*, 2025 WL 3687895, at *16 (D. Minn. Dec. 19, 2025) (finding that the BAAs required the healthcare defendant to protect patient information and comply with HIPAA); *Barletti v. Connexin Software, Inc.*, 2023 WL 6065884, at *2 (E.D. Pa. Aug. 17, 2023) (finding plaintiffs stated a third-party beneficiary claim in HIPAA-related data breach based on inference that "contracts were meant to benefit the Plaintiffs by storing, maintaining, and securing their private medical data.").

*In re Fortra File Transfer Software Data Sec. Breach Litig.*, 749 F. Supp. 3d 1240 (S.D. Fla. 2024), is distinguishable because the nature of the services provided by the contracting parties is starkly different. There, NationsBenefits contracted with Fortra to facilitate its work in providing supplemental benefits administration services to health insurance plans and employers. *Id.* at 1254. In rejecting the plaintiffs' third-party beneficiary argument, the Court stated, "NationsBenefits

provided its *clients*, [health insurance plans and employers] not the Named Plaintiffs, with administration services." *Id*. at 1265. (italics in original, brackets supplied).

Here, however, Cerner is an electronic health record ("EHR") vendor. Healthcare Defendants contracted with Cerner to provide patients with digital access to their medical information (e.g., diagnoses, medical history, medications, immunizations, X-rays, laboratory results and clinical notes). *See* ¶ 346. Electronic health records are primarily used to facilitate patient treatment. Business associate agreements are tools that hospitals and medical providers use to protect sensitive patient information from unauthorized access when that data will be shared with a third-party. *See* 45 C.F.R. §164.308(b). Thus, the EHR service that Cerner provided and the BAAs were both intended for Plaintiffs' benefit.

Finally, the Mosaic and Tallahassee Memorial BAAs are notable for lacking third-party beneficiary disclaimer clauses. Out of the nine BAAs that Cerner attached to its Motion to Dismiss, only the Mosaic, Tallahassee Memorial, and LifeBridge BAAs lacked such clauses. *See* Decl. Alan Schoenfeld, Exs. D & E (Mosaic and Tallahassee Memorial BAAs). As Plaintiffs discuss in their response to Cerner's Motion to Dismiss, the negative-implication and surplusage canons of construction indicate that the Court should ascribe meaning to the absence of these clauses. *See* Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 107–11, 174 (2012). The negative-implication canon suggests that the notable silence of these BAAs illustrates a strong inference that the parties intended to include the existence of third-party beneficiaries. The Surplusage Canon is also implicated. If the Court interprets all nine BAAs as barring third-party beneficiary claims, then it will render the disclaimers in the six BAAs that have such disclaimers mere surplusage.

### D. Plaintiffs Adequately Allege a Breach of Implied Contract (Count IV).

Plaintiffs entered into implied contracts with Healthcare Defendants and Cerner whereby each of those Defendants promised to appropriately safeguard their Private Information. "An implied contract is an agreement implied in fact, founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in light of the surrounding circumstances, their tacit understanding." *Farmers Edge Inc. v. Farmobile, LLC*, 970 F.3d 1027, 1031 (8th Cir. 2020) (cleaned up); *Nickel v. Stephens Coll.*, 480 S.W.3d 390, 397 n.6 (Mo. Ct. App. 2015) (quoting 17A Am. Jur. 2d Contracts § 14 (2015)).

Healthcare Defendants require Patients to disclose Private Information to obtain medical care from them, and medical providers regularly represent, through notices of privacy practices, patient intake forms, portal/website statements, codes of conduct, and other business practices that they will maintain the confidentiality of patient data. *See, e.g.*, ¶¶ 350-57. More specifically, Healthcare Defendants represented they would require business associates to appropriately safeguard the privacy of Plaintiffs' Private Information. *See* ¶¶ 355-56. Therefore, a breach of the implied contract occurred when Healthcare Defendants failed to ensure Cerner implemented safeguards to maintain the confidentiality of Plaintiffs' Private Information. *See In re Shields Health Care Grp., Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 163 (D. Mass. 2024) (finding plaintiffs plausibly alleged an implied contract with defendant to receive medical treatment in exchange for providing confidential health and financial information, which defendant was reasonably expected to keep private); *Charlie v. Rehoboth McKinley Christian Health Care Servs.*, 598 F. Supp. 3d 1145, 1165 (D.N.M. 2022) (collecting cases and stating that "[n]umerous courts, however, have found that when the provider of goods or services requires a purchaser to furnish private information as a prerequisite to providing the goods or service, an implied contract to

protect that private information is formed."). Even if the Healthcare Defendants "made no explicit promises as to the ongoing protection of personal information, it is difficult to imagine how, in our day and age of data and identity theft, the mandatory receipt of Social Security numbers or other sensitive personal information would not imply the recipient's assent to protect the information sufficiently." *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016).

After establishing the implied contract, "the plaintiff must identify the actions (*e.g.*, security measures or procedures) the defendant could have employed to prevent the breach." *Harris v. Mercy Health Network, Inc.*, 2024 WL 5055556 , at *11 (S.D. Iowa June 26, 2024). Specifically, Healthcare Defendants could have protected the confidentiality of Plaintiffs' health information by requiring Cerner to encrypt the data throughout its systems. *See* CAC ¶¶ 366, 368, 408, 414, 420, 524-538. Securing information renders it "unusable, unreadable, or indecipherable to unauthorized persons." 45 C.F.R. § 164.402. Had Healthcare Defendants required Cerner to implement a measure such as encryption, the Data Breach would not have occurred, and the confidentiality of Plaintiffs' health information would have been maintained. These allegations are more than "unadorned, the-defendant-unlawfully-harmed-me accusations." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, they demonstrate how Healthcare Defendants breached the terms of the implied agreement. Therefore, Plaintiffs have plausibly alleged the existence of an implied contract and the Healthcare Defendants' breach thereof.

Lastly, Healthcare Defendants argue that the breach of implied contract claim should fail because there was no consideration for data security. HCD Br. at 16; Sapphire Br. at 20-21. But Plaintiffs clearly allege that they paid for healthcare related services, turned over health information to Defendants, and bargained with Defendants to securely maintain and store their health information. *See* ¶¶ 518-20. When a Plaintiff alleges they paid for healthcare services,

"adequate consideration has been alleged for the implied contract claim." *C.M. v. MarinHealth Med. Grp., Inc.*, 2024 WL 217841, at *4 (N.D. Cal. Jan. 19, 2024) (analyzing cases).

**E. Plaintiffs Adequately Alleged their Unjust Enrichment Claim.**

Under Missouri law, a defendant is unjustly enriched where: (1) "[the plaintiff] conferred a benefit on the defendant; (2) the defendant appreciated the benefit, and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Hargis v. JLB Corp.*, 357 S.W.3d 574, 586 (Mo. 2011) (citation omitted). Here Plaintiffs allege that they conferred their Private Information and payments to Healthcare Defendants as a condition of receiving healthcare services. ¶ 543. The Healthcare Defendants profited from these benefits, and Plaintiffs reasonably expected that a portion of their payments and Healthcare Defendants' profits would be allotted to fund adequate data security. ¶¶ 544-45. Instead, Healthcare Defendants failed to provide an adequate level of security and unjustly retained the full amounts of Plaintiffs' benefits. ¶¶ 546, 549. These allegations are sufficient to establish an unjust enrichment claim at the pleadings stage. *See, e.g.*, *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F. Supp. 3d 1183, 1200-01 (D. Or. 2016) (denying motion to dismiss unjust enrichment claim); *In re: Cmty. Health Sys., Inc.*, 2016 WL 4732630, at *24 (N.D. Ala. Sept. 12, 2016) (denying motion to dismiss unjust enrichment claim in data breach case).

First, courts around the country recognize that Private Information is a cognizable benefit for unjust enrichment purposes. *See, e.g.*, *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 715 (D. Minn. 2023) (holding that Plaintiffs sufficiently alleged they conferred a benefit to Defendant in the form of PII); *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d at 413 (declining to dismiss plaintiffs' unjust enrichment claim where plaintiffs alleged that Amazon "profited from its storage and retention of Plaintiffs' PII" because such storage and retention

allowed Amazon to perform its services).

Second, Healthcare Defendants incorrectly argue that because they provided Plaintiffs with healthcare services in exchange for Plaintiffs' payments, Healthcare Defendants were not unjustly enriched. However, Plaintiffs did not receive the *full* benefit they were entitled to because of the inadequate data protection provided by Healthcare Defendants. "[C]ourts have concluded that the failure to secure a party's data can give rise to an unjust enrichment claim where a defendant accepts the benefits accompanying plaintiff's data and does so at the plaintiff's expense by not implementing adequate safeguards, thereby making it 'inequitable and unconscionable' to permit defendant to retain the benefit of the data (and any benefits received therefrom), while leaving the plaintiff party to live with the consequences." *Id.* at 412; *see also Baldwin*, 2021 WL 4206736, at *8 ("Courts within the Eighth Circuit have similarly allowed unjust enrichment claims for stolen PII when the plaintiff provided payment based on an understanding that their PII would be secure.").

Third, Plaintiffs conferred a benefit directly to Healthcare Defendants by providing their Private Information and payments to the Healthcare Defendants—the fact that Cerner's systems were deficient does not change that Healthcare Defendants were enriched by retaining these benefits while Plaintiffs suffered from the mishandling of their Private Information. *Mohsen v. Veridian Credit Union*, 733 F. Supp. 3d 754, 769 (N.D. Iowa 2024) (declining to dismiss an unjust enrichment claim because plaintiff's allegation that it provided PII and paid for services was sufficient to show the defendant's enrichment). Therefore, this distinction is immaterial, as allegations that Plaintiff provided payment based on an understanding that their Private Information would be secure are sufficient at the pleading stage. *Baldwin*, 2021 WL 4206736, at *8.

Fourth, Plaintiffs explicitly plead the claim for unjust enrichment "in addition to, or *in the alternative to*, other claims pleaded herein." ¶ 552 (emphasis added). Thus, this claim is not duplicative of Plaintiffs' other claims. *Baldwin*, 2021 WL 4206736, at *8 (declining to dismiss unjust enrichment claim when it was asserted as an alternative claim to the breach of contract claim.). Accordingly, the Court should deny Defendants' motion.

**F. Plaintiffs Plausibly Allege Breach of Fiduciary Duty.**

Missouri law holds that "[t]o establish a claim for breach of fiduciary duty, a plaintiff must prove: (1) the existence of a fiduciary duty between the plaintiff and the defending party; (2) that the defending party breached the duty; and (3) that the breach caused the [plaintiff] to suffer harm." *Henry v. Farmers Ins. Co., Inc.,* 444 S.W.3d 471, 480 (Mo. App. W. Dist. 2014).

Defendants cite a litany of cases outside of Missouri law in support of their dubious position that as healthcare providers, they owed no fiduciary duty to Plaintiffs. *See* HCD Br. at 19-21; Sapphire Br. at 23-24. These cases fall flat in the face of recent Missouri data breach case law holding that a fiduciary duty exists in this very instance.

Indeed, in *Negron v. Ascension Health,* the Eastern District of Missouri explicitly held that "[i]n the context of a systematic data breach," a fiduciary duty extends beyond a patient's doctor to the "entity maintaining the treatment records." 2025 WL 2710014, at *9. The court reasoned, "In the Court's view, the level of trust inherent in the patient-provider relationship and corresponding duty of confidentiality codified by HIPAA necessarily extends to regulated providers and warrants fiduciary treatment." *Id.*

Here, like defendant in *Negron*, the Healthcare Defendants were the "entit[ies] maintaining the treatment records" and therefore owed a corresponding duty to protect those records. Likewise, Defendants' argument that "Plaintiffs allege no special relationship of trust and confidence beyond

an ordinary transactional relationship in which Healthcare Defendants provided healthcare and Plaintiffs provided PII incidental to receiving that care" (HCD at 33), was explicitly rejected in *Negron.* The court in *Negron* explained:

> Ascension argues that the patient-provider fiduciary relationship and resulting duty of confidentiality applies only to individual doctors, not to institutions. In support, Ascension cites *Cahill v. Mem'l Heart Inst., LLC*, 2024 WL 4311648, at *14 (E.D. Tenn. Sept. 26, 2024), where the court reasoned that the plaintiffs merely purchased medical services from the defendant hospital in a commercial transaction. This Court does not share that logic. In the context of a systemwide data breach, it makes no sense to recognize the fiduciary duty of a patient's doctor but not of the entity maintaining the treatment records.

2025 WL 2710014, at *9.

This Court should follow the Eastern District of Missouri's approach in *Negron* in holding that a fiduciary duty exists and reject the unpersuasive cases cited by Defendant. *See also Miller v. NextGen Healthcare, Inc*., 742 F.Supp.3d 1304, 1318 (N.D. Ga. 2024); *Webb v. Injured Workers Pharmacy, LLC*, 2023 WL 5938606, at *5 (D. Mass. Sept. 12, 2023).

**G. Plaintiffs Sufficiently Plead Invasion of Privacy.**

Missouri law expressly recognizes both intrusion upon seclusion and public disclosure of private facts as actionable invasion-of-privacy torts. *Nemani v. St. Louis Univ.*, 33 S.W.3d 184, 185 (Mo. 2000). The Healthcare Defendants' arguments that Plaintiffs have failed to allege disclosure because the Healthcare Defendants did not themselves post the information, *see* HCD Br. at 22-23; Sapphire Br. at 25-26, ignores that disclosure can occur through third parties where the defendant is substantially certain disclosure will occur without reasonable cybersecurity measures and still fails to make the proper investments. *See McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 819 (E.D. Ky. 2019) ("A defendant's actions may be intentional when the defendant acts with such reckless disregard for the privacy of the plaintiff that the actions rise to the level of being an intentional tort"). Indeed, the Restatement (Second) of Torts § 8A confirms that the

definition of intent includes situations in which the actor is substantially certain of the consequences of their actions.

Here, Plaintiffs have alleged that Defendants were well aware of the ubiquitous threat of data breaches, particularly of criminal theft of sensitive patient information. *See* ¶¶ 347-49, 387-98, 418-19, 422-28. Despite this knowledge, Defendants chose to ignore the risk and failed to make the appropriate investments in cybersecurity. *See* ¶¶ 399, 401, 403-05, 411-17, 419, 422-28. The invasion, therefore, flows directly from Defendants' knowing failure to protect private information entrusted to them—not merely from the consequent criminal act. *See Angus v. Flagstar Bank, FSB*, 2025 WL 937760, at *2-3 (E.D. Mich. Mar. 27, 2025) (claims of recklessness in securing PII sufficient to meet element of intent at pleading stage).

Plaintiffs plausibly allege that their private information was posted—or imminently will be posted—on the dark web following the Data Breach, where it is accessible to countless users, including identity thieves, and is a concrete and ongoing disclosure. *See, e.g.*, ¶¶ 143, 171, 347, 397, 430-42. Indeed, the dark web functions as a black market where criminal actors buy, sell, and exploit exfiltrated personal data. *See, e.g.*, ¶¶ 423, 430. Once posted there, sensitive information is rapidly disseminated among identity thieves and fraudsters, ensuring immediate misuse and long-term harm.[13]

Plaintiffs allege publication is satisfied through the "special relationship" that exists between Plaintiffs and Defendants. *See Finley v. Kelly*, 384 F. Supp. 3d 898, 909 (M.D. Tenn. 2019) ("[A] number of courts when considering the tort of public disclosure of private facts have

---

[13] *See U.S. Gov't Accountability Off., Data Breaches Are Frequent, but Evidence of Resulting Identity Theft is Limited; However the Full Extent Unknown* 33−34 (June 4, 2007), https://www.gao.gov/assets/gao-07-737.pdf (noting that once personal data is posted online, it may be traded and misused for years).

[held] the publicity element may be satisfied where the information is released to a small number of persons who have a special relationship with the plaintiff[.]"); *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 981 (Ill. App. 1 Dist., 1990) ("In circumstances where a special relationship exists between the plaintiff and the 'public' to whom the information has been disclosed, the disclosure may be just as devastating to the person even though the disclosure was made to a limited number of people[.]"); *cf. Doe v. Young*, 2009 WL 3680988, at *9 (E.D. Mo. Act. 30, 2009) ("Certainly indiscriminate publication of private information unrelated to any legitimate public purpose should give rise to an action for an invasion of privacy.").

Here, cybercriminals are the precise, foreseeable class of wrongdoers the Defendants' cybersecurity measures were supposed to prevent from accessing Plaintiffs' data. *See, e.g.*, ¶ 347. Because cybercriminals are the direct beneficiaries of Defendants' failure to secure Plaintiffs' data, disclosure to them falls within the special relationship exception and is equivalent to disclosure to the public for purposes of the publicity element. The privacy harm reasonable cybersecurity measures are intended to protect against accrues once cybercriminals gain access to the confidential data they seek. The special relationship exists to prevent defendants from evading liability by releasing information to this narrow but dangerous group, which is exactly what Defendants did here. Therefore, disclosure to cybercriminals satisfies the publicity requirement.

In any event, whether publication on the dark web constitutes "publicity" under Missouri law is a fact-bound inquiry unavoidably tied into the reach and scope of the "dark web" and thus inappropriate for resolution on a motion to dismiss. *See Angus*, 2025 WL 937760, at *3 (denying motion to dismiss where the sufficiency of public disclosure was a factual issue). Plaintiffs' allegations give rise to genuine issues of material fact that preclude dismissal under Rule

12(b)(6).[14] Plaintiffs have sufficiently alleged facts to support an invasion of privacy claim.

### H. Plaintiffs Properly Allege Their Statutory Claims.[15]

#### *1. California Consumer Privacy Act - (Count XII – Huntington)*

Huntington argues that the California Consumer Privacy Act ("CCPA") does not apply because (1) Huntington is an exempt entity under Cal. Civ. Code § 1798.145; (2) the CCPA does not apply to nonprofits; (3) the conduct occurs outside of California; and (4) that Plaintiffs insufficiently plead that Huntington's security measures were deficient. HCD Br. at 26-28. It is incorrect on all four arguments.

Huntington's arguments about operating as a non-profit and the HIPPA exemption are not appropriate for resolution on a motion to dismiss. Huntington's allegation that it is an exempt non-profit is not consistent with the Complaint, which alleges that Huntington is a for-profit "business" under the statute. ¶ 624. In addition, the contention that Huntington can prove that it maintains PII and PHI identically, and thus falls under the HIPPA exemption, is an affirmative defense that Huntington has the burden to plead, not Plaintiffs. Plaintiffs alleged all elements of a CCPA cause of action. *See Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033*,* 1048 (N.D. Cal. 2025) (describing cause of action). "An 'affirmative defense' is '[a] defendant's assertion of facts and

---

[14] Defendants also claim that New York law prohibits the claims against Albany Med and Glen Falls. Plaintiffs disagree that New York law should apply, but should the Court determine New York Law applies to the invasion of privacy claims against Albany Med and Glen Falls, Plaintiffs concede this claim should be dismissed, *but only* as against Albany Med and Glenn Falls.

[15] These claims are under the Arizona Consumer Fraud Act (ACFA), the Arkansas Deceptive Trade Practices Act (ADTPA), the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), the Indiana Deceptive Consumer Sales Act (IDCSA), the Missouri Merchandising Practices Act (MMPA), the New York General Business Law (GBL), the Montana Consumer Protection Act (MCPA), and the California Unfair Competition Law (UCL).

Plaintiffs concede that their Arkansas Deceptive Trade Practices Act claim against Arkansas Heart and California Privacy Rights Act claim against Huntington are properly dismissed.

arguments that, if true, will *defeat* the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true.'" *Safeway Transit, LLC v. Disc. Party Bus, Inc.*, 954 F.3d 1171, 1182 (8th Cir. 2020) (quoting *Defense*, Black's Law Dictionary (11th ed. 2019)). Although the CCPA provides an exception for HIPAA covered entities and medical information, this exemption applies to PHI only and exempts healthcare providers "to the extent the provider or covered entity maintains patient information in the same manner as medical information." Cal. Civ. Code §§ 1798.145, 1798.150. Plaintiffs' exfiltrated information includes not just PHI, but also PII, including "names, dates of birth, Social Security numbers . . . insurance data, and other personally identifiable information." ¶ 2. Since the data at issue includes non-medical information, Huntington would only be exempt to the extent that it treated Plaintiffs' PII and PHI identically. Huntington has the burden to plead and prove that the exemption applies, however, because establishing that it applies (or does not) is not an element of a CCPA cause of action.

Huntington also incorrectly argues that Plaintiffs Fox and Rangel, who are New York and Arizona residents, cannot sue under the CCPA because it does not apply "if every aspect of [defendant's] commercial conduct takes place wholly outside of California." Cal. Civ. Code § 1798.145(a)(1)(G); HCD Br. at 27. Plaintiffs Fox and Rangel each plead that they are "former patient[s] of Huntington . . . [and] received treatment from Huntington prior to the Data Breach." ¶ 302, 314. Huntington is a California hospital. ¶ 339. The claim pertains to a data breach, where Plaintiffs allege that the data in question was collected in California. ¶ 624. Because Huntington's conduct occurred in California, the wholly out-of-state exemption does not apply.

Finally, Huntington argues that Plaintiffs have not alleged that Huntington's data security systems were deficient. HCD Br. at 28. This is false. *See, e.g.*, ¶ 368 ("Due to Oracle Health and the Healthcare Defendants' improper security measures and storage . . . ."). Although Plaintiffs do

not allege which specific vulnerabilities the hackers exploited to gain access, that is because that information is *entirely* within the possession of Huntington, Cerner and the other hospitals. This is not a typical data breach matter where the defendants shared information in notice letters about the vulnerabilities exploited or such information has otherwise become public.[16] Defendants here declined to advise data breach victims of *any details whatsoever* as to the exploited vulnerabilities. *See* ¶¶ 385-86. Given that the Complaint provides the hospital defendants with full notice of Plaintiffs' claims, and the information in question remains entirely within Defendants' knowledge and possession, Plaintiffs' claims should be allowed to proceed. *See Drobnak v. Andersen Corp.*, 561 F. 3d 778, 783-84 (8th Cir. 2009) (allowing even claims requiring heighted particularity pleading under Rule 9(b) to proceed on information and belief "when the facts constituting the fraud are peculiarly within the opposing party's knowledge"); *Negron*, 2025 WL 2710014, at *15 ("Such granular details in Ascension's possession are unnecessary to place it on notice of Plaintiffs' class claims. Given the nature of this case, the Court finds the pleadings sufficiently specific to provide Ascension notice of the claim."); *see also Ramirez v. Paradis Shops, LLC*, 69 F.4th 1213, 1220 (11th Cir. 2023) (same); *In re Univ. Urology Data Sec. Incident Litig.*, 2025 WL 1002355, at *5 (S.D.N.Y. Mar. 31, 2025) (same).

***2. California Confidentiality of Medical Information Act – (Count XIII – Huntington)***

Huntington argues that Plaintiffs Fox and Rangel cannot bring California Confidentiality of Medical Information Act ("CMIA") claims as they no longer reside in California. HC. Br. at 29.

[16] Notably, only one of the three cases upon which Huntington relies involved a data breach, and the plaintiffs in that case were made aware of the vulnerabilities exploited. HCD Br. at 28. In *Maag v. U.S. Bank, Nat. Ass'n*, the plaintiffs alleged that the data breach resulted from UBS' failure to encrypt and redact the data and from the physical theft of a server from a corporate office. *See* Second Amended Compl. ¶ 15, *Maag v. U.S. Bank, Nat. Ass'n*, No. 3:21-cv-00031-H-LL (S.D. Cal. Filed Feb. 2, 2021), ECF No. 14.

However, California law applies "to conduct that occurs in California, even where that conduct involves non-California residents." *People ex rel. DuFauchard v. U.S. Fin. Mgmt., Inc.*, 87 Cal. Rptr. 3d 615, 627 (Cal. Ct. App. 2009). Since Plaintiffs Fox and Rangel provided their data to Huntington in California, the transfer of Plaintiffs' information to Cerner involved California, and Huntington's insufficient data security practices occurred in California, conduct occurred in California such that the CMIA applies. ¶¶ 302-03, 314-15, 339. Lastly, Huntington's case in opposition relies on an inapplicable choice of law analysis. *See* HCD Br. at 29 (citing *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982, at *13-14, 25 (N.D. Cal. Apr. 11, 2024)).

Huntington also argues that Plaintiffs have insufficiently alleged that their information was viewed by unauthorized persons. HCD Br. at 29-30. It acknowledges, however, that Plaintiffs allege that an unauthorized party viewed Plaintiffs' data. *Id.* at 29. Such an allegation of fact has been upheld as sufficient on a motion to dismiss. *Jackson v. Health Ctr. Partners of S. Cal.*, 2024 WL 3708867, at *4 (S.D. Cal. Aug. 7, 2024). In addition, Huntington ignores that Plaintiffs also allege that the breach resulted in a flood of third-party usage of data collected, including spam calls and messages, and that Defendants themselves have acknowledged that Plaintiffs' data was exposed to third parties. See ¶¶ 294, 299, 301. Plaintiffs also allege that their PII and PHI have been "posted on the dark web." ¶ 15. Courts have held that allegations like these suffice to support an allegation of unauthorized party viewing. *See Roma v. Prospect Med. Holdings, Inc.*, 2024 WL 3678984, at *14 n.18 (E.D. Penn. Aug. 6, 2024) (citing cases); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1218 (S.D. Fla. 2022) (viewing inferred from "an uptick in phishing emails"); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 923 (S.D. Cal. 2020) (unauthorized viewing inferred from data "accessible on the internet"); *In re Solara*

*Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1299 (S.D. Cal. 2020) (viewing inferred from "an increase in medical-related spam.").

In any event, the CMIA bars not only unauthorized disclosure, but also "the negligent maintenance of medical information, and the negligent 'release' of medical information." *Stasi*, 501 F. Supp. 3d at 908 (quoting Cal. Civ. Code §§ 56.10(a), 56.101(a), 56.36(b)). Plaintiffs' CMIA claim is predicated on all three acts. *See* ¶¶ 629-37.

### *3. California Customer Records Act – (Count XIV – Huntington)*

Huntington argues that Plaintiffs do not allege facts regarding Huntington's legally deficient and untimely notice or why the letters were substantively deficient. HCD Br. at 30-31. The argument ignores the Complaint's allegations. Plaintiffs allege that Huntington failed to provide legally-compliant and timely notice. *See* ¶¶ 385-86. Specifically, all three Plaintiffs allege facts establishing that Cerner has failed to provide any notice, ¶¶ 3-5, 370, and that Huntington's notice was both deficient and long delayed. Plaintiffs Maglozzi, Fox, and Rangel received notice from Huntington on Oct. 17, 2025, over nine months after the data breach was discovered. ¶¶ 2, 288, 294, 302, 308, 314, 320. Plaintiffs further allege that the notices sent by all of the hospital Defendants (including Huntington) have been deficient in that they failed to advise victims of "any substantive details about how the Data Breach occurred," which has injured Plaintiffs by depriving them of the facts needed to help Plaintiffs mitigate the ongoing repercussions from the loss of their highly sensitive PII and PHI. *See* ¶¶ 385-86.

### *4. California Unfair Competition Law – (Count XV – Huntington)*

Plaintiffs have UCL standing, which requires an "injury in fact, i.e., economic injury" and "incorporates the meaning of injury in fact as a requirement for article III standing." *Moore v. Centrelake Med. Grp., Inc.*, 299 Cal. Rptr. 3d 544, 554 (Cal. Ct. App. 2022) (injury sufficient for

standing under the UCL is satisfied if a "plaintiff [] surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have." (quoting *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 885 (Cal. 2011))). Injury-in-fact is satisfied in data breaches where the plaintiffs allege that "had [they] known defendant would use such poor security practices, [they] would not have paid for [medical services]." *Doe v. N. Cal. Fertility Med. Ctr.*, 2024 WL 246178, at *8 (E.D. Cal. Jan. 23, 2024); *Moore*, 299 Cal. Rptr. 3d at 555 (standing satisfied where Plaintiffs "pa[id] more than they would have had they known the truth that Centrelake had not implemented . . . adequate data security practices."). "Indeed, many federal courts… have held plaintiffs adequately pleaded UCL standing under similar benefit-of-the-bargain theories." *Moore*, 299 Cal. Rptr. 3d at 555 (collecting data breach cases). Here, Plaintiffs plead a benefit-of-the-bargain injury. ¶¶ 291-92, 305-306, 317-18. None of the cases upon which Defendants rely address a benefit-of-the-bargain injury. *See Shah*, 768 F. Supp. 3d at 1048; *Gardner v. Health Net, Inc.*, 2010 WL 11597979, at *11-12 (C.D. Cal. Aug. 12, 2010).

Plaintiffs also plead facts which, if accepted as true, satisfy both the unlawful and unfairness prongs of the UCL. '"Generally, violation of almost any law may serve as a basis for a UCL claim."' *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 989 (N.D. Cal. 2016) (quoting *Antman v. Uber Techns., Inc.*, 2015 WL 6123054, *6 (N.D. Cal. Oct. 19, 2015)). Huntington incorrectly states that "Plaintiffs' UCL allegations depend entirely on Huntington's purported violations of the CCPA and CMIA." In fact, Plaintiffs allege that Defendants violated the CCPA, CMIA, HIPAA, as well as the FTC Act. ¶¶ 399-405 (HIPAA), 407-12 (FTC Act); 621-28 (CCPA), 629-37 (CMIA), 638-46 (CCRA), 648 (incorporating prior allegations, including about HIPAA violations), 650 (CCPA, CMIA), 653 (CCPA), 656 (FTC Act).

Finally, Huntington inaccurately characterizes the alleged conduct underlying the unfairness prong. Plaintiffs allege that Huntington engaged in unfair acts not only by violating California legislative policy as expressed in those California laws discussed above, but also because (1) its conduct was "immoral, unethical, oppressive, and unscrupulous and caused" substantial harm, and (2) the benefit of the conduct was outweighed by its harm to Plaintiffs. ¶¶ 443-54, 657-59. This suffices to allege an unfair act. Courts hold conduct unfair if it is tethered to an "'established public policy' or 'is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."' *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (quoting *Casa Blanca Convalescent Homes*, 159 Cal. App. 3d 509, 530 (Cal. Ct. App. 1984)). Alternatively, courts may apply the balancing test where courts '"weigh the utility of the defendant's conduct against the gravity of the harm alleged to the victim."' *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1227 (N.D. Cal. 2014) (quoting *Drum v. San Fernando Valley Bar Ass'n*, 106 Cal. Rptr. 3d 46, 53 (Cal. Ct. App. 2010)).

#### ***5. Florida Deceptive and Unfair Trade Practices Act – (Count XVII – Baptist Health and Tallahassee Memorial)***

Baptist Health and Tallahassee Memorial raise a factual dispute inappropriate for resolution on a motion to dismiss about what services were part of Plaintiffs' purchase arrangement with them. Plaintiffs allege that the hospitals required patients to provide them with highly sensitive PII and PHI in order to receive medical care, and Plaintiffs believed that their payments to the hospitals covered, in part, the security of the information Plaintiffs were required to transmit. *See* ¶¶ 17, 452-56. Because Plaintiffs failed to receive the same level of service for which they paid, they suffered actual damages under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), which measures damages by the difference between the value of the promised product and the actual product delivered. *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1098 (11th Cir. 2021);

*Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084 (11th Cir. 2019). Courts recognize as cognizable damages under FDUTPA a lost benefit-of-the-bargain when defendants misrepresent or omit material facts about their data security. *In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d at 424; *Griffey*, 2022 WL 1811165, at *8 (actual damages recognized under FDUTPA where plaintiff "overpaid for health services [in which the] data security was inadequate."). Like in *Griffey* and unlike in Baptist Health and Tallahassee Memorial's cited cases, Plaintiffs allege they have "overpaid for services that were intended to be accompanied by adequate data security." ¶ 451.

Baptist Health and Tallahassee Memorial, however, contest this, essentially claiming the allegations are not true because securing the data they demanded from Plaintiffs was not part of the bargain. *See* HCD Br. at 33-34. The argument is not appropriate on a motion to dismiss, where Plaintiffs' allegations are not only accepted as true, but also viewed in a light most favorable to Plaintiffs. *See supra* at 7; *Stodghill v. Wellston Sch. Dist.*, 512 F.3d 472, 476 (8th Cir. 2008).

Next, Baptist Health and Tallahassee Memorial argue that Plaintiffs have not alleged that they have any responsibility for the breach because the breach occurred on Cerner's systems. HCD Br. at 34. This argument fails just as the identical argument raised by Defendant Huntington fails. *Id.* at 27; *see supra* at 26-27.

Finally, contrary to Baptist Health and Tallahassee Memorial's contentions, Plaintiffs allegations comport with Rule 9(b). The FDUTPA count is predicated on misrepresentation, omissions, and unfair acts. *See* ¶ 674. Plaintiffs allege (1) who engaged in this conduct (Baptist Health and Tallahassee Memorial); (2) what constituted the misconduct (the misrepresentative statements, ¶¶ 353, 356, 358, material omissions, ¶¶ 39-40, 53-54, 207-208, and unfair acts, ¶ 674); (3) when and where (in Florida and when Plaintiffs entrusted their PII and PHI as patients or

prospective patients of Baptist and Tallahassee, ¶¶ 36-37). The only information pleaded generally is information about what vulnerabilities the hacker exploited, but again, that is because all Defendants have withheld from victims any information about which vulnerabilities were exploited. *See* ¶¶ 385-86. In such cases, courts permit that information to be pleaded generally given that the information is within the possession of the defendant. *See Drobnak*, 561 F. 3d at 783-84; *Negron*, 2025 WL 2710014, at *15.

***6. Indiana Deceptive Consumer Sales Act – (Count XVIII – Union Health)***

An Indiana Deceptive Consumer Sales Act ("IDCSA") "recognizes two types of deceptive acts: uncured deceptive acts, and incurable deceptive acts." *Jarrett v. Upperline Health, Inc.*, 2025 WL 3067545, at *10 (S.D. Ind. Aug. 8, 2025).

Plaintiffs plead an incurable violation,[17] which requires allegations of "what the fraudulent or deceptive act was, when and how it was committed, and how plaintiff relied on said deceptive act." *Williams v. Thor Motor Coach, Inc.*, 2024 WL 4524292, at *2 (N.D. Ind. Oct. 17, 2024). Here, Plaintiffs allege (1) who engaged in this conduct (Union Health); (2) the statement and omissions constituting the deception, ¶¶ 357, 687, 693; (3) when and where (in Indiana and when Plaintiffs entrusted their PII and PHI as patients of Union Health, ¶¶ 120-21, 134-35, 148-49, 162-63, 246-47, 274-75), and how Plaintiffs relied on the deception, ¶¶ 362, 690, 695-96. And again, because Union Health has failed to advise its victims about specific security vulnerabilities that led to the breach of their data, Plaintiffs lack that information at this time.

Union Health also argues that Plaintiffs must identify the individual who misrepresented Union Health's data security practices. HCD Br. at 36. However, the requisite level of

---

[17] Defendants are correct that Plaintiffs' IDCSA claim cannot proceed based on an uncured act. However, because Plaintiffs properly allege an incurable violation of the IDCSA, the motion to dismiss the IDCSA claim should nevertheless be denied.

identification is contextual and requires "as much particularity as the circumstances permit for information otherwise in the company's control." *Moore v. Soc. Coaching-Credit Repair, LLC*, 2024 WL 1929431, at *3 (N.D. Ind. May 1, 2024) (the information provided "should permit Social Coaching to identify the person or winnow the candidates based on telephone, payroll, or other employment records."). Here, Plaintiffs have alleged that Union Health misrepresented its data security practices in its HIPAA privacy statement, which is as much particularity as the circumstances permit and provides Union Health the ability to identify the persons who made the false statements (*e.g.*, the Union Health employee(s) who authored or were responsible for its HIPPA privacy statement, ¶ 357).

Finally, Union Health claims Plaintiffs do not allege an intent to defraud with the required specificity. But even the cases upon which Union Health relies require only the pleading of facts that Plaintiffs included. In *Durgan v. U-Haul Int'l Inc.*, the court required the presentation of "facts to show what the fraudulent or deceptive act was, when and how it was committed, and how plaintiff relied on said deceptive act to her detriment." 2023 WL 12140653, at *12 (D. Ariz. July 28, 2023) (quoting *Jones v. Bridgepoint Educ., Inc.*, 2017 WL 2438461, at *4 (N.D. Ind. June 5, 2017)). As discussed above, Plaintiffs have alleged each of those facts. And in *In re MCG Health Data Sec. Issue Litig.*, the court held plaintiffs did "not allege how MCG Health had knowledge of inadequacies in its security systems." 2023 WL 3057428, at *8 (W.D. Wash. Mar. 27, 2023). Here, however, Plaintiffs allege that Union knew that its security practices were inadequate because it has experienced data breaches repeatedly and yet engaged in its deception regarding those practices anyway. *See* ¶ 698. And to the extent that those courts required plaintiffs to allege the vulnerabilities exploited in the instant data breach, that position is decidedly a minority one. As discussed above, most courts, including the U.S. Court of Appeals for the 8th Circuit, do not

require elements of a claim sounding in fraud to be alleged with specificity when the facts in question are entirely in the defendant's possession. *See, e.g.*, *Drobnak*, 561 F. 3d at 783-84; *Negron*, 2025 WL 2710014, at *15.

***7. Missouri Merchandising Practices Act – (Count XIX – Mosaic)***

Mosaic seeks to dismiss the Merchandising Practices Act ("MMPA") claim given *Kuhns v. Scotttrade, Inc.*, 868 F.3d 711, 719 (8th Cir. 2017). HCD Br. at 37. *Kuhns* is unpersuasive for two reasons. First, it is unclear whether the case remains good law. The U.S. Court of Appeals for the Eighth Circuit was interpreting Missouri state law, which appears to have changed given a decision by an intermediate appellate court in 2023. *See Progressive N. Ins. Corp. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010) ("If the highest state court has not decided an issue we must attempt to predict how the highest court would resolve the issue, with decisions of intermediate state courts being persuasive authority."). In *J.J. ex rel. C.W. v. Poplar Bluff Reg'l Med. Ctr., L.L.C.*, the Missouri Court of Appeals held that "a breach of confidentiality cannot be considered a failure to render a 'health care service' within the meaning of Section 538.225.1," a provision of Missouri's medical malpractice statutes that generally requires the filing of an affidavit of merit alongside a medical malpractice claim. 675 S.W.3d at 263. The court, however, contrasted Section 538.225.1 to the MMPA, stating that "a health care provider's breach of confidentiality arguably can . . . give rise to liability under the MMPA." *Id.* at 266.

This Court does not need to decide *Kuhns*' validity, however, because this case is factually distinguishable from *Kuhns*. The defendant in *Kuhns* was Scottrade, a digital brokerage that executed security trades. All parties agreed at the motion to dismiss stage that their contract expressly provided that Scottrade was charging "brokerage fees and commissions *for purchases and sales of securities* '*on a per order basis.*'" *Kuhns*, 868 F.3d at 718 (emphasis added). Here,

unlike in *Kuhns*, Plaintiffs have no claim for breach of an express contract and the parties do have a factual dispute at the motion to dismiss stage about what Plaintiffs paid for.[18] Considering this, dismissal of the MMPA claim would not be consistent with the Rule 12(b)(6) standard, which requires Plaintiffs' allegations to be accepted as true and viewed in a light most favorable to Plaintiffs.

***8. New York General Business Law § 349 – (Count XX – Albany Med and Glens Falls)***

To state a claim under New York General Business Law § 349 ("GBL"), a plaintiff must allege a defendant engaged in: "(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015). Defendants only challenge the second and third elements. HCD Br. at 38-39.

Plaintiffs plead misrepresentations in accordance with the GBL.[19] Deceptive acts include "representations or omissions . . . misleading to a reasonable consumer." *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190, 1195 (N.Y. 2002); *Wallace v. Health Quest Sys., Inc.*, 2021 WL 1109727, at *15 (S.D.N.Y. Mar. 23, 2021) (finding misleading statements in a privacy notice promising that defendant is "committed to protecting medical information"); *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 774-77 (W.D.N.Y. 2017) (finding sufficiently alleged misrepresentations where defendant stated it would "maintain adequate data privacy and security practices . . . [and] comply with requirements of relevant federal and state laws"). Here, Plaintiffs

[18] Plaintiffs allege that the protection of the PII and PHI they were required to submit was part and parcel of the services they purchased. *See* ¶¶ 451, 711.

[19] N.Y. GBL § 349 does not require pleading under the 9(b) standard. *See, e.g.*, *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) ("[A]n action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b)."); *DeCoursey v. Murad, LLC*, 673 F. Supp. 3d 194, 217 (N.D.N.Y. 2023) ("[C]laims under GBL §§ 349 & 350 are not subject to the pleading-with-particularity requirements of Rule 9(b)." (quotations omitted)).

(1) allege that Glenn Falls and Albany Med made representations regarding their data security practices in the Notice of Privacy Practices and that those statements were materially misleading; (2) explain why those statements were materially misleading, and (3) allege that Plaintiffs would not have shared their PII and PHI if they had known the truth. *See* ¶¶ 68, 82, 222, 351, 354, 358-62, 366, 368, 722-24.[20] Courts routinely uphold GBL claims with allegations like these. *See DeCoursey*, 673 F. Supp. 3d at 216 (listing cases).[21]

Albany Med and Glens Falls also incorrectly challenge causation by arguing that Plaintiffs never viewed their deceptive statements and thus could not have relied on them. HCD Br. at 38-39.[22] Albany Med and Glens Falls' argument, however, is neither consistent with Plaintiffs' allegations nor views them in a light most favorable to Plaintiffs. *See* ¶¶ 350-62 (alleging that the hospital defendants "represented to patients that the Private Information collected from them would be kept safe and confidential," alleging facts regarding each specific representation, and then alleging "Plaintiffs and Class members relied on Defendants to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this Private Information."). "[T]he reasonable inference to be drawn from these allegations [] is that Plainitff[s]

---

[20] Although Plaintiffs plead misrepresentations, the claim would survive regardless. Albany Med and Glens Falls only address misrepresentations even though the GBL claim is also predicated on material omissions and unfair acts. *See* ¶¶ 68-69, 83-83, 222-23, 722.

[21] The cases upon which Albany Med and Glens Falls rely are either questionable law or distinguishable. *Abdale v. N. Shore Long Island Jewish Health Sys., Inc.*, 19 N.Y.S.3d 850 (N.Y. Sup. Ct. 2015), one of the decisions upon which Glen Falls relies, was criticized in *Fero v. Excellus Health Plan, Inc.*, 236 F. Supp. 3d 735, 776-77 (W.D.N.Y. 2017), as applying the wrong standard. And *Smahaj v. Retrieval-Masters Creditors Bur., Inc.*, 131 N.Y.S.3d 817, 827-28 (N.Y. Sup. Ct. 2020) is factually distinguishable because the court appears to have interpreted the allegations in that matter to exclude the co-defendant from having contributed to or caused the data breach.

[22] The viewing of the statements in question is also irrelevant to the omissions and unfair acts upon which the GBL claim is also based. And, in any event, Plaintiffs would not be able to view an omission.

saw the" statements. *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014).

### *9. Montana Data Breach Notification Law and Montana Consumer Protection Act Claims (Counts XXI and XXII against Sapphire).*

Sapphire first argues that Plaintiff Walker fails to state a claim under the Montana Data Breach Notification Law ("MDBNL"), Mont. Code Ann. §§ 30-14-1704 *et seq.,* because that statute provides no private right of action for the alleged violation. Sapphire Br. at 27. This argument fails because violations of the Montana data breach statute are expressly made "unlawful practices" that are actionable under the Montana Consumer Protection Act. *See* Mont. Code Ann. § 30-14-1705(3) (providing that "[a] violation of this part is a violation of 30-14-103"); *id.* § 30-14-133(1) (providing that a consumer suffering a loss under § 30-14-103 may bring an action). *See, e.g., In re Equifax, Inc., Customer Data Sec. Breach Lit.*, 362 F. Supp. 3d 1295, 1340 (N.D. Ga. 2019) (declining to dismiss claim under Montana data breach statute, holding that the Montana data breach statute is privately enforceable through the state's unfair trade practices statute).

Sapphire next argues for dismissal on the grounds that the Montana Consumer Protect Act ("MCPA") "prohibits private class actions." Sapphire Br. at 27. That argument is premature at the motion to dismiss stage and does not warrant dismissal, as Sapphire fails to acknowledge or address the complex analysis required under *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010) to determine whether Federal Rule 23 preempts the purported class action bar in the Montana Consumer Protection Act. For that reason, Sapphire's reliance on the class action bar does not warrant dismissal at the motion to dismiss stage. *See In re Crop Protection Loyalty Program Antitrust Lit.*, 779 F. Supp. 3d 624, 653-54 (M.D. N.C. 2025) (denying motion to dismiss class claims under Montana consumer protection statute given parties' limited treatment

of the *Shady Grove* issue, and noting that there was "little doubt" a class action could proceed under Montana law under Justice Scalia's plurality opinion).

Next, Sapphire argues that Plaintiff Walker does not plead facts showing that Sapphire violated the MDBNL. Sapphire Br. at 28. This argument fails as well because Sapphire ignores an entire section of the Complaint alleging unreasonable delay in notifying victims of the data breach. *See* ¶¶ 3-4, 369-386. Plaintiffs allege that the data breach was discovered by Cerner around February 20, 2025, ¶ 370, alleges that Cerner notified healthcare providers that it would not be notifying patients directly, ¶ 371, and alleges Plaintiff Walker did not receive notice of the data breach until October 22, 2025, eight months after the breach. ¶ 266. Based on these allegations, and viewing the facts and all reasonable inferences in favor of Plaintiffs, Plaintiff Walker has alleged an "unreasonable delay" in notification of the breach under Mont. Code Ann. § 30-14-1704(1). Sapphire's argument that dismissal is required due to the lack of an allegation of exactly when Sapphire learned of the data breach from Cerner – a fact known only to Defendants – is unavailing and Sapphire cites no authority to support that position.

Sapphire's remaining arguments for dismissal of the Montana Consumer Protection Act claim fail for the reasons already discussed. The MDBNL applies to Sapphire because Sapphire conducts business in Montana and it owns or licenses computerized data that includes personal information. ¶¶ 338, the Complaint sufficiently alleges actionable violations of the MDBNL and the Montana Consumer Protection Act that have caused harm to Plaintiff Walker. ¶¶ 267-72.

DATE: March 3, 2026

Respectfully submitted,

*/s/ Eric D. Barton*

Eric D. Barton
Tyler W. Hudson
**WAGSTAFF & CARTMELL**
4740 Grand Avenue, Suite 300

Kansas City, MO 64112
Tel: (816) 701-1177
ebarton@wcllp.com
thudson@wcllp.com

Norman E. Siegel
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64113
Tel: (816) 714-7112
siegel@stuevesiegel.com

Lynn A. Toops
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenmalad.com

Thomas E. Loeser
**COTCHETT PITRE & MCCARTHY LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272
tloeser@cpmlegal.com

*Co-Lead Interim Class Counsel*

J. Gerard Stranch, IV
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com

*Chair of Plaintiffs' Executive Committee*

Raina Borrelli
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel: (872) 263-1100
raina@straussborrelli.com

Casondra Turner
**MILBERG COLEMAN BRYSON PHILLIPS**

**GROSSMAN, PLLC**
800 S. Gay Street, Suite 100
Knoxville, TN 37929
Tel: (771) 772-3086
cturner@milberg.com

Leanna Loginov
**SHAMIS & GENTILE**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
lloginov@shamisgentile.com

Jeff Ostrow
**KOPELOWITZ OSTROW, P.A.**
1 West Las Olas Boulevard, 5th Floor
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
ostrow@kolawyers.com

Patrick D. Donathen
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
patrick@lcllp.com

Laura Van Note
**COLE & VAN NOTE**
155 12th Street, Suite 2100
Oakland, CA 94607
Tel: (510) 891-9800
lvn@colevannote.com

James Treglio
**POTTER HANDY LLP**
100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel: (415) 534-1911
jimt@potterhandy.com

Charles E. Schaefer
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (877) 882-1011

cschaffer@lfsblaw.com

Elena Belov
**ALMEIDA LAW GROUP**
849 W. Webster Avenue
Chicago, IL 60614
Tel: (708) 232-3274
elena@almeidalawgroup.com

Anthony Parkhill
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph Street, Suite 1630
Chicago, IL 60606
Tel: (312) 621-2000
aparkhill@barnowlaw.com

Paul Doolittle
**POULIN WILLEY ANASTOPOULO LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
paul.doolittle@poulinwilley.com

*Plaintiffs' Executive Committee*