**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| IN RE: CERNER/ORACLE DATA BREACH LITIGATION | Case No. 25-00259-CV-W-BP<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANT CERNER CORPORATION'S REPLY SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS**

## TABLE OF CONTENTS

INTRODUCTION .......... 1

ARGUMENT .......... 1

I. Plaintiffs Lack Standing .......... 1

A. Plaintiffs Lack Standing To Seek Prospective Relief .......... 2

B. Plaintiffs Lack Standing To Seek Retrospective Relief .......... 3

II. Plaintiffs Fail To State A Claim .......... 6

A. Plaintiffs' Negligence Claims Fail .......... 6

B. Plaintiffs' Negligence *Per Se* Claims Fail .......... 11

C. Plaintiffs' Contract Claims Fail .......... 12

D. Plaintiffs' Other Common-Law Claims Fail .......... 15

E. Plaintiffs' Consumer-Protection Claims Fail .......... 16

CONCLUSION .......... 20

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Academy Bank, N.A. v. AmGuard Insurance Company*,
116 F.4th 768 (8th Cir. 2024) ....................15

*Allied Services, LLC v. Smash My Trash, LLC*,
153 F.4th 600 (8th Cir. 2025) ....................16

*Allied Services, LLC v. Smash My Trash, LLC*,
2024 WL 2842633 (W.D. Mo. May 16, 2024), *aff'd*, 153 F.4th 600 (8th Cir. 2025) ............10

*American Italian Pasta Company v. New World Pasta Company*,
371 F.3d 387 (8th Cir. 2004) ....................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................10, 11, 19

*Auer v. Trans Union, LLC*,
902 F.3d 873 (8th Cir. 2018) ....................6

*Barber v. Time, Inc.*,
159 S.W.2d 291 (Mo. 1942) ....................16

*Balke v. Ream*,
33 S.W.3d 589 (Mo. Ct. App. 2000)....................16

*Barletti v. Connexin Software, Inc.*,
2023 WL 6065884 (E.D. Pa. Aug. 17, 2023) ....................12

*Bloodworth v. Kansas City Board of Police Commissioners*,
2022 WL 17588490 (W.D. Mo. Nov. 15, 2022), *aff'd*, 89 F.4th 614 (8th Cir. 2023)............10

*Bohnak v. Marsh & McLennan Companies*,
79 F.4th 276 (2d Cir. 2023) ....................2

*Bridgecrest Acceptance Corporation v. Donaldson*,
648 S.W.3d 745 (Mo. 2022) ....................13

*Bringer v. Bringer*,
728 S.W.3d 631 (Mo. Ct. App. 2025)....................13

*Brown v. Mullarkey*,
632 S.W.2d 507 (Mo. Ct. App. 1982)....................5

*Castillo v. Seagate Technology, LLC*,
2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ....................14

*Denmon v. Kansas Counselors, Inc.*,
149 F.4th 1010 (8th Cir. 2025) ....................4, 6

*Dibrill v. Normandy Associates, Inc.*,
383 S.W.3d 77 (Mo. Ct. App. 2012)....................15

*E-Shops Corporation v. U.S. Bank National Association*,
678 F.3d 659 (8th Cir. 2012) ....................16

*Earley v. Dunn*,
670 S.W.3d 47 (Mo. Ct. App. 2023)....................7, 8

*EM Medical, LLC v. Stimwave LLC*,
626 S.W.3d 899 (Mo. Ct. App. 2021)....................14

*Emerick v. Mutual Benefit Life Insurance Company*,
756 S.W.2d 513 (Mo. 1988) ....................15

*Faheen ex rel. Hebron v. City Parking Corporation*,
734 S.W.2d 270 (Mo. Ct. App. 1987)....................8

*Feliciano v. Department of Transportation*,
605 U.S. 38 (2025)....................13

*FTC v. Wyndham Worldwide Corporation*,
799 F.3d 236 (3d Cir. 2015)....................18

*General American Life Insurance Company v. Barrett*,
847 S.W.2d 125 (Mo. Ct. App. 1993)....................13

*Gohagan v. Cincinnati Insurance Company*,
809 F.3d 1012 (8th Cir. 2016) ....................12

*Grossman v. GEICO Casualty Company*,
2022 WL 1656593 (2d Cir. May 25, 2022) ....................17

*Harner v. Mercy Hospital Joplin*,
679 S.W.3d 480 (Mo. 2023) ....................7

*Harris v. Mercy Health Network, Inc.*,
2024 WL 5055556 (S.D. Iowa June 26, 2024) ....................14

*Hawse v. Page*,
7 F.4th 685 (8th Cir. 2021) ....................11, 17, 19

*Hekel v. Hunter Warfield, Inc.*,
118 F.4th 938 (8th Cir. 2024) ....................................................................................3

*Hershey v. Jasinski*,
86 F.4th 1224 (8th Cir. 2023) ....................................................................................3

*Holden Farms, Inc. v. Hog Slat, Inc.*,
347 F.3d 1055 (8th Cir. 2003) ..................................................................................12

*Howard v. Frost National Bank*,
458 S.W.3d 849 (Mo. Ct. App. 2015)..................................................................6, 10

*Howland v. Truman Medical Center, Inc.*,
719 S.W.3d 98 (Mo. Ct. App. 2025)..........................................................................11

*In re Arthur J. Gallagher Data Breach Litigation*,
631 F. Supp. 3d 573 (N.D. Ill. 2022) ........................................................................14

*In re Change Healthcare, Inc. Customer Data Security Breach Litigation*,
2025 WL 3693201 (D. Minn. Dec. 19, 2025)...............................................................12

*In re Mednax Services, Inc. Customer Data Security Breach Litigation*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022) .........................................................................5

*In re MOVEit Customer Data Security Breach Litigation*,
2025 WL 2176590 (D. Mass. July 31, 2025), *reconsidered in part on other grounds*,
2026 WL 75852 (D. Mass. Jan. 9, 2026)...............................................................18, 19

*In re SuperValu, Inc., Customer Data Security Breach Litigation*,
870 F.3d 763 (8th Cir. 2017) ....................................................................................2, 3

*In re SuperValu, Inc., Customer Data Security Breach Litigation*,
925 F.3d 955 (8th Cir. 2019) ......................................................................................11

*J.J. ex rel. C.W. v. Poplar Bluff Regional Medical Center, L.L.C.*,
675 S.W.3d 259 (Mo. Ct. App. 2023)............................................................................7

*Jerseyville Mall, L.L.C. v. Shop 'N Save Warehouse Foods, Inc.*,
633 S.W.3d 523 (Mo. Ct. App. 2021)..........................................................................13

*Jones v. Bloomingdales.com, LLC*,
124 F.4th 535 (8th Cir. 2024) .......................................................................................4

*JTL Consulting, L.L.C. v. Shanahan*,
190 S.W.3d 389 (Mo. Ct. App. 2006)..........................................................................12

*Kingman v. Dillard's, Inc.*,
643 F.3d 607 (8th Cir. 2011) .....................................................................................6, 8

*Kuhns v. Scottrade, Inc.*,
868 F.3d 711 (8th Cir. 2017) ....................10, 18

*M.B. v. Live Nation Worldwide, Inc.*,
661 S.W.3d 342 (Mo. Ct. App. 2022)....................9

*Macquarie Infrastructure Corporation v. Moab Partners, L.P.*,
601 U.S. 257 (2024)....................17

*Martinez v. Bank of America, N.A.*,
2026 WL 522875 (E.D. Mo. Feb. 26, 2026)....................2, 3

*McCabe v. Ford Motor Company*,
774 F. Supp. 3d 349 (D. Mass. 2025) ....................20

*Merritt v. Wilson*,
697 S.W.3d 814 (Mo. Ct. App. 2024)....................14

*Mitchell v. Kirchmeier*,
28 F.4th 888 (8th Cir. 2022) ....................20

*Negron v. Ascension Health*,
2025 WL 2710014 (E.D. Mo. Sept. 23, 2025)....................5, 7, 8, 15

*New Life Treatment Center, Inc. v. Sanford Health Plan*,
2024 WL 5186986 (D.S.D. Dec. 20, 2024) ....................20

*Newman v. Uber Technologies, Inc.*,
2024 WL 4791983 (E.D. Mo. Nov. 13, 2024)....................9

*Phox v. 21c Management LLC*,
2021 WL 2346018 (W.D. Mo. June 8, 2021) ....................15

*Prestby v. A&A Services, LLC*,
2026 WL 26128 (D. Neb. Jan. 5, 2026)....................2, 11

*Pulliam v. West Technology Group, LLC*,
2024 WL 356777 (D. Neb. Jan. 19, 2024)....................5, 6

*Purdy v. Burlington Northern & Santa Fe Railway Company*,
2000 WL 34251818 (D. Minn. Mar. 28, 2000) ....................16

*Rardon v. Falcon Safety Products, Inc.*,
2021 WL 2008923 (W.D. Mo. May 4, 2021) ....................9

*Roach v. Colvin*,
2015 WL 4727375 (W.D. Mo. Aug. 10, 2015)....................18

*Sailors v. Northern States Power Company*,
4 F.3d 610 (8th Cir. 1993) ....................17

*Speaks Family Legacy Chapels, Inc. v. National Heritage Enterprises, Inc.*,
2009 WL 2391769 (W.D. Mo. Aug. 3, 2009)....................15

*Stanley v. City of Sanford*,
606 U.S. 46 (2025)....................13

*State ex rel. Greitens v. American Tobacco Company*,
509 S.W.3d 726 (Mo. 2017) ....................13

*Strid v. Square D Company*,
2007 WL 430748 (W.D. Mo. Feb. 5, 2007) ....................5

*T.R. v. Clay-Platte Family Medicine, P.C.*,
2025 WL 3143638 (W.D. Mo. Nov. 3, 2025)....................5

*Thurman v. Crawford*,
652 S.W.2d 240 (Mo. Ct. App. 1983)....................7

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................3

*Tsao v. Captiva MVP Restaurant Partners, LLC*,
986 F.3d 1332 (11th Cir. 2021) ....................3

*Verni v. Cleveland Chiropractic College*,
212 S.W.3d 150 (Mo. 2007) ....................13

**STATUTES & REGULATIONS**

Cal. Bus. & Prof. Code § 17205 ....................20

Cal. Civ. Code § 1798.81.5....................18

Cal. Civ. Code § 1798.82....................18

Mont. Code Ann. § 70-1-101 ....................20

**OTHER AUTHORITIES**

Black's Law Dictionary (12th ed. 2024)....................20

Restatement (Second) of Torts § 8A (A.L.I. 1977) ....................4

Restatement (Second) of Torts § 652D (A.L.I. 1977) ....................4, 5

## INTRODUCTION[1]

The opposition abandons multiple claims and named Plaintiffs, disregards controlling precedent, and identifies no plausible allegations in the CAC of cognizable injury or liability under governing law. What remains are conclusory assertions, nonbinding authority, and theories that would require expanding state law well beyond existing precedent. The CAC should be dismissed.

## ARGUMENT

### I. Plaintiffs Lack Standing

As Cerner has explained, the CAC insufficiently pleads that any Plaintiff faces a sufficient risk of future harm to justify prospective relief. Br. 4-7. The CAC also lacks plausible allegations that any Plaintiff has suffered cognizable past injuries that might support retrospective relief. *Id.* at 7-14. In response, Plaintiffs mostly evade the substance of Cerner's arguments about the concreteness of their injuries, the Eighth Circuit decisions on which those arguments rely, and the deficiencies in Plaintiffs' factual allegations. For example, Plaintiffs string cite cases where courts considering other complaints "found standing and permitted claims for injury based on the unauthorized disclosure or release of private medical information under various theories." Opp. 5. Each decision is from an out-of-circuit district court or a state court, and some do not discuss Article III injuries at all. Rather than explain why their referenced cases are analogous or persuasive, or how they overcome Cerner's cited authority, Plaintiffs simply declaim: "This Court should have no difficulty concluding that Plaintiffs allege an injury in fact that is sufficiently concrete to support Article III standing." *Id.* at 6; *see also id.* at 8-9 (similar). This conclusory statement does meet any Plaintiff's burden to prove standing, let alone the burden for them all.

[1] Terms defined in the opening brief ("Br.") have the same meaning here. For all quotes, unless noted, all alterations have been adopted, and all further quotation marks and citations are omitted.

*See In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, 870 F.3d 763, 773 (8th Cir. 2017) ("*SuperValu I*") ("Each plaintiff's standing must be assessed individually.").

### A. Plaintiffs Lack Standing To Seek Prospective Relief

To show the risk of future harm necessary for prospective relief, Plaintiffs run through three factors consulted by the First, Second, and Third Circuits. Opp. 7-9. But these "non-exhaustive" factors, *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 288 (2d Cir. 2023), are not binding in the Eighth Circuit; even in those circuits, they are not to be applied mechanically; and, overall, "none … is conclusive to the ultimate finding," *Prestby v. A&A Servs., LLC*, 2026 WL 26128, at *15 (D. Neb. Jan. 5, 2026). What matters is whether Plaintiffs adequately show that a future injury is "certainly impending," or at least at a "substantial risk" of occurring. *SuperValu I*, 870 F.3d at 769. By relying solely on speculative future harms, Plaintiffs fall short.

As Cerner has explained (Br. 4-7), the CAC can be read to allege two possible future injuries, but neither adequately. One possible future injury is another, future theft of information from Cerner. *See id.* at 6. Yet the CAC has no allegations that indicate that a second data breach is certainly impending, or even that there is a substantial risk one will occur. *See id.* Plaintiffs say nothing on this point, thus conceding it. *See Martinez v. Bank of Am., N.A.*, 2026 WL 522875, at *3 (E.D. Mo. Feb. 26, 2026) ("[F]ailure to respond to arguments raised in a motion to dismiss constitutes an abandonment of that claim or concession to the opposing arguments.").

The other possible future injury is the future misuse of allegedly already-stolen information. But, in the CAC, no Plaintiff plausibly alleged even a single instance where she lost money or otherwise was tangibly harmed; indeed, most Plaintiffs do not even allege instances of *attempted* fraud. *See* Br. 5, 10-14, 21-24. Plaintiffs' opposition identifies none. Plaintiffs filed the CAC roughly nine months after the alleged data breach, and they filed their opposition brief four months after that. That no Plaintiff has been injured by misuse in over a year proves that the

"risk of future harm involving identity theft … is, at best, speculative," and likely only diminishing with time. *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1344 (11th Cir. 2021). Plaintiffs try to distinguish *Tsao*. Opp. 10. Yet *Tsao*'s relevant holding turned not on the type of data stolen, but on the failure to plausibly allege that "members of the class ha[d] suffered any actual misuse of their personal data." 986 F.3d at 1343. Just so here. And insofar as Plaintiffs "have not alleged a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury." *SuperValu I*, 870 F.3d at 771.

**B. Plaintiffs Lack Standing To Seek Retrospective Relief**

Plaintiffs do not address—and so concede—Cerner's arguments that they fail to allege cognizable Article III injuries based on supposed emotional harms (Br. 9-10), increased spam (*id.* at 10), failed attempts at fraud (*id.* at 10-11), or diminished value of personal information (*id.* at 12-13). Plaintiffs do not even mention some of these grounds in the standing section of their brief (Opp. 4-11), thus abandoning them. *See Martinez*, 2026 WL 522875, at *3; *Hershey v. Jasinski*, 86 F.4th 1224, 1231 n.3 (8th Cir. 2023) ("Our duty to consider unargued *obstacles* to jurisdiction does not affect our discretion to decline to consider [forfeited] arguments that might have *supported* such jurisdiction."). Other grounds are consigned to a footnote that reiterates the CAC's deficient allegations without addressing, let alone overcoming, Cerner's arguments as to why each purported injury lacks "a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021); *compare* Opp. 7 n.5, *with* Br. 7-14. "Nor can the risk of future harm support a backwards-looking claim for damages." *Hekel v. Hunter Warfield, Inc.*, 118 F.4th 938, 942-943 (8th Cir. 2024).

This leaves Plaintiffs with just two putative bases for standing to seek retrospective relief: (1) the alleged disclosure of private information itself (Opp. 4-6); and (2) various actions—such

as monitoring accounts and credit files—taken to date to mitigate the supposed threat of identity theft from data allegedly stolen by the criminal hacker (*id.* at 9-10). Neither confers standing here.

**Disclosure of Private Information.** Even if "disclosure of private information … is a type of intangible harm" sometimes (Opp. 5), "that doesn't mean that every plaintiff who comes to court alleging [a privacy-related intangible] harm gets in the courthouse door." *Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 539 (8th Cir. 2024). Instead, as Cerner has explained (Br. 8) and Plaintiffs do not dispute (Opp. 4-11), an alleged privacy harm must bear a "close relationship" to "[t]he traditional elements of [an] invasion-of-privacy tort." *Denmon v. Kan. Couns., Inc.*, 149 F.4th 1010, 1016 (8th Cir. 2025). The closest historical analogue here is public disclosure of private facts, yet Plaintiffs fail to plead an injury fitting its elements.

To start, Plaintiffs do not plausibly allege that Cerner has "give[n] publicity to" any information about Plaintiffs—i.e., that Cerner has "communicat[ed]" any information "to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D & cmt. a (A.L.I. 1977); *see* Br. 8-9, 32-33. The CAC asserts that a criminal hacker stole information from Cerner because of Cerner's allegedly deficient cybersecurity. But unsuccessfully protecting information is different from deliberately communicating it. Plaintiffs—albeit in the merits portion of their brief (Opp. 29)—try to blur this distinction by pointing to Section 8A of the Restatement (Second) of Torts, which defines the word "intent" as used in that Restatement. Yet Section 652D, the section of the Restatement (Second) concerning the public-disclosure tort, does not use the word "intent" in its main text, official comments, or reporter's note. Therefore, Section 8A's definition of "intent" does not bear on the scope of the public-disclosure tort under that Restatement or otherwise. Indeed, "courts routinely dismiss invasion-of-privacy claims where a plaintiff fails to

allege that a defendant intentionally divulged his PII and instead asserts that an unknown person stole the PII from the defendant's computer system." *In re Mednax Servs., Inc. Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1225 (S.D. Fla. 2022) (cited at Opp. 5); *see Pulliam v. W. Tech. Grp., LLC*, 2024 WL 356777, at *9 (D. Neb. Jan. 19, 2024) (no standing in data-breach case where defendant "did not give publicity," but rather "negligently allowed unauthorized access"); *T.R. v. Clay-Platte Fam. Med., P.C.*, 2025 WL 3143638, at *6 (W.D. Mo. Nov. 3, 2025) (public-disclosure claim failed because complaint "allege[d] that [PII and PHI] was stolen from Defendants, not that Defendants disseminated it to unauthorized third parties"); *Negron v. Ascension Health*, 2025 WL 2710014, at *13 (E.D. Mo. Sept. 23, 2025) (same). Even if someone could somehow "communicat[e]" information by negligently protecting it, Cerner's purported "communicat[ion]" to the criminal hacker was "to a single person or even to a small group of persons," which falls short of "publicity." Restatement (Second) of Torts § 652D cmt. a; *see Brown v. Mullarkey*, 632 S.W.2d 507, 510 (Mo. Ct. App. 1982) (disclosure to only two people was not "publicity"); *Strid v. Square D Co.*, 2007 WL 430748, at *4 (W.D. Mo. Feb. 5, 2007) (same).

Even if Plaintiffs could surmount these hurdles—such that, essentially, Cerner would be vicariously liable for public disclosure of private facts by the criminal hacker—Plaintiffs do not allege that the criminal hacker has "give[n] publicity to a matter" that "would be highly offensive to a reasonable person." Restatement (Second) of Torts § 652D. Plaintiffs claim that their private medical information was stolen, but none of them alleges that any private medical information was published—certainly not by Cerner, but also not even by the criminal hacker on the dark web. All but three Plaintiffs (Carnahan, Taylor, and Greeno) do not actually allege that *any* of their information has been published online at all. For their part, Carnahan, Taylor, and Greeno allege only financial and identificatory information. *See* CAC ¶ 143 (Carnahan: Social Security number);

*id.* ¶ 171 (Taylor: unspecified "information"); *id.* ¶¶ 225, 229 (Greeno: credit-card number, name, address). This is not information whose disclosure plausibly causes "a harm that has a sufficiently close relationship to" public disclosure of private facts. *Denmon*, 149 F.4th at 1017 (emphasis omitted); *see Pulliam*, 2024 WL 356777, at *9 (no standing because "publication of personally identifying information such as SSNs is not highly offensive to a reasonable person"); *Howard v. Frost Nat'l Bank*, 458 S.W.3d 849, 855 (Mo. Ct. App. 2015) (plaintiffs could "no[t] … reasonably" allege that disclosure of information about financial holdings "would bring shame or humiliation to a person of ordinary sensibilities"). Its disclosure therefore cannot confer Article III standing.

**Past Mitigation Efforts.** Plaintiffs assert that "where there is a substantial risk of future harm, … the time and energy spent guarding against that risk constitutes an injury as well." Opp. 9. As discussed, however, Plaintiffs do not identify a single instance where one of them has lost money or otherwise been tangibly harmed by the alleged data breach in the more-than-a-year period afterwards. *See supra* § I.A. "[P]laintiffs cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Auer v. Trans Union, LLC*, 902 F.3d 873, 878 (8th Cir. 2018). So they cannot recover for past efforts to respond to purely speculative risks. *See Pulliam*, 2024 WL 356777, at *7.

## II. Plaintiffs Fail To State A Claim

### A. Plaintiffs' Negligence Claims Fail

"Plaintiffs do not dispute that Missouri law governs the tort claims for purposes of this motion." Opp. 11. Plaintiffs nonetheless ask the Court to ignore Missouri state-court decisions delineating the scope of Missouri common-law negligence in favor of their preferred federal cases, including cases decided under the laws of other States. But a federal court's role "is to interpret state law, not to fashion it." *Kingman v. Dillard's, Inc.*, 643 F.3d 607, 615 (8th Cir. 2011). Under Missouri law as it is, rather than as Plaintiffs believe it should be, their negligence claims fail.

### 1. Plaintiffs do not adequately plead that Cerner owed them a duty.

The parties agree that, absent a "special relationship" or "special facts and circumstances," "there is no duty to protect against the criminal acts of third parties." *Earley v. Dunn*, 670 S.W.3d 47, 50 (Mo. Ct. App. 2023); *see* Br. 18; Opp. 13. These are "limited exceptions to the general rule," *Harner v. Mercy Hosp. Joplin*, 679 S.W.3d 480, 484 (Mo. 2023), and neither applies here.

**Special Relationship.** Plaintiffs observe that "Missouri courts recognize a special relationship exists between patients and their healthcare providers." Opp. 14. Yet Plaintiffs neglect to explain *how* or *why* this special relationship exists between Plaintiffs and Cerner, which did not provide healthcare services to Plaintiffs. Under Missouri law, a special relationship arises when "a party entrusts himself to the protection of another and relies upon that person to provide a place of safety." *Earley*, 670 S.W.3d at 51. Entrustment—which necessarily requires the entrusting party to know of the entrusted party's existence—understandably happens when a patient meets with her doctor, which helps explain why "the patient-provider relationship is … clearly recognized as special under Missouri law." *Negron*, 2025 WL 2710014, at *9. Missouri courts have recognized that the patient-provider special relationship also encompasses non-doctor healthcare employees and hospitals. *See J.J. ex rel. C.W. v. Poplar Bluff Reg'l Med. Ctr., L.L.C.*, 675 S.W.3d 259, 266 (Mo. Ct. App. 2023) (physicians' duty of confidentiality "applies to all employees in a health care setting"); *Thurman v. Crawford*, 652 S.W.2d 240, 242 (Mo. Ct. App. 1983) (by virtue of the "physician-patient privilege," "the hospital has the duty to protect its patients from the unauthorized release of privileged information"). Indeed, someone who goes to a hospital presumably intends to entrust herself not only to the doctor she visits but also the institution where the visit takes place. These cases do not establish the sweeping proposition that more attenuated entities like Cerner, which have merely contracted with a healthcare provider, also form a special relationship with every one of the provider's patients.

*Negron* is not to the contrary. In *Negron*, patients sued a hospital in federal court after a data breach. *See* 2025 WL 2710014, at *1. The hospital "argue[d] that the patient-provider fiduciary relationship and resulting duty of confidentiality applie[d] only to individual doctors, not to institutions." *Id.* at *9. The court disagreed, concluding that Missouri law extended the patient-provider special relationship not only to "a patient's doctor" but also to the hospital "maintaining the treatment records." *Id.* That conclusion was unremarkable because decisions like *J.J.* and *Thurman* had decided the issue already. The federal court in *Negron* could not have properly extended Missouri law beyond what Missouri courts had held, and it did not.

But Plaintiffs cite no Missouri case extending the narrow patient-provider special relationship to a third-party contractor like Cerner. The lack of authority is understandable; indeed, Plaintiffs cannot explain how they could have consciously "entrust[ed]" themselves to Cerner without even knowing Cerner existed before the alleged data breach. *Earley*, 670 S.W.3d at 51. Extending the exception to a third party who contracts with one side of a special relationship yet is unknown to the other would greatly expand Missouri tort liability. "Missouri case law does not foreshadow such an expansion of the law of [negligence], and it is not the role of a federal court to expand state law in ways not foreshadowed by state precedent." *Kingman*, 643 F.3d at 615.

**Special Facts and Circumstances.** "The special facts exception includes two possible theories of liability: (1) an intentional infliction of injury by known and identifiable third persons; or (2) frequent and recent occurrences of violent crimes against persons on the premises by unknown assailants." *Faheen ex rel. Hebron v. City Parking Corp.*, 734 S.W.2d 270, 272 (Mo. Ct. App. 1987). As explained (Br. 20), the first exception does not apply because Cerner is not alleged to have known that the specific criminal hacker was a threat before the alleged data breach, and the second exception does not apply because the alleged data breach was not a violent crime.

Resisting the limitations to the no-duty rule under Missouri law, Plaintiffs invite the Court to apply "general negligence principles." Opp. 14. But "Missouri jurisprudence has developed a clear framework to recognize two exceptions to the general rule that a business has no duty to protect a plaintiff from a third party's criminal acts," and the Court should "reject [Plaintiffs'] invitation to extend the law" further. *M.B. v. Live Nation Worldwide, Inc.*, 661 S.W.3d 342, 353 (Mo. Ct. App. 2022). Even if the Court applies more general principles of foreseeability, Plaintiffs allege merely that Cerner generally "recognizes the importance of securing Private Information in its possession from unauthorized access" and acknowledges that "health data is among the most targeted in security breaches." Opp. 14. Such broad awareness does not establish the more specific degree of foreseeability required to establish a duty to protect against third parties' criminal acts.[2]

**2. Plaintiffs do not adequately plead that Cerner breached a duty.**

To argue that Cerner breached a duty, Plaintiffs cite a laundry list of paragraphs from the CAC. *See* Opp. 16 (citing CAC ¶¶ 366-368, 405, 408-411, 413-421). None of those paragraphs, however, plausibly suggests that Cerner breached any duty of care. Some paragraphs consist of general background information and do not mention Cerner at all. CAC ¶¶ 408-410 (generally discussing FTC guidelines and vaguely referencing enforcement actions against other businesses); *id.* ¶¶ 413-415 (citing the views of unidentified "experts" regarding "best practices"). Some paragraphs merely assert that a duty existed without ever mentioning breach. *Id.* ¶¶ 367, 418. Other paragraphs assert that "Defendants," as an unindividuated whole, had certain "failures" that

[2] *Compare Rardon v. Falcon Safety Prods., Inc.*, 2021 WL 2008923, at *5 (W.D. Mo. May 4, 2021) (Phillips, C.J.) (duty sufficiently pleaded where complaint "contain[ed] numerous factual allegations demonstrating Defendants' knowledge that [their specific product was illegally] inhaled by people while driving in order to get high, thereby causing a risk of harm to others"), *with Newman v. Uber Techs., Inc.*, 2024 WL 4791983, at *6 (E.D. Mo. Nov. 13, 2024) (duty insufficiently pleaded where complaint alleged only that "carjackings and murders *generally* were a foreseeable byproduct of … develop[ing] the rideshare industry").

supposedly contravened various laws, regulations, and nonbinding standards—without any Cerner-specific factual allegations making such assertions plausible as to Cerner or connecting these purported failures to the alleged data breach. *Id.* ¶¶ 366, 405, 416, 419-421. The remaining paragraphs rely on the impermissible inference that, "because data was hacked," Cerner's "protections must have been inadequate." *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717 (8th Cir. 2017); *see* CAC ¶ 411 ("As evidenced by the Data Breach, Defendants failed to properly implement basic data security practices."); *id.* ¶¶ 368, 417 (similar). Altogether, these "labels," "naked assertions," and "legal conclusions" are not "factual matter" entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The CAC's allegations support, at best, only "a sheer possibility" that Cerner has breached a duty of care, which is insufficient. *Id.*

**3. Plaintiffs do not adequately plead actual damages.**

Although Plaintiffs cast the actual-damages requirement as merely a creature of an Illinois statute (Opp. 17-18), Missouri common law requires a negligence plaintiff to establish "actual damages to the [plaintiff's] person or property." *Bloodworth v. Kan. City Bd. of Police Comm'rs*, 2022 WL 17588490, at *7 (W.D. Mo. Nov. 15, 2022) (Phillips, C.J.), *aff'd*, 89 F.4th 614 (8th Cir. 2023); *accord Howard*, 458 S.W.3d at 853. It is uncontroverted that no Plaintiff claims any actual damages to person, i.e., physical injury. Br. 22; *cf.* Opp. 16-19. So Plaintiffs' negligence claims rise and fall on whether Plaintiffs adequately plead actual damages to their property. They do not.

To start, Plaintiffs' assertion of "a substantial and imminent risk of identity theft" in the future (Opp. 17), even if it were plausible (*but see supra* § I.A), cannot support claims for damages, which "are retrospective in nature." *Allied Servs., LLC v. Smash My Trash, LLC*, 2024 WL 2842633, at *35 (W.D. Mo. May 16, 2024), *aff'd*, 153 F.4th 600 (8th Cir. 2025). Relatedly, Plaintiffs' asserted "loss of time and money" expended to date "to protect themselves against identity theft and fraud" was not "reasonably incurred" (*contra* Opp. 17 (citing CAC ¶ 488); *see*

*supra* § I.B), so it is not recoverable. In any event, neither Paragraph 488 nor any other paragraph of the CAC concretely alleges that any Plaintiff has actually spent any money to protect herself. Plaintiffs cannot "amend their complaint, or supplement insufficient factual allegations, in a brief filed in opposition to a motion to dismiss." *Hawse v. Page*, 7 F.4th 685, 691 (8th Cir. 2021).

Plaintiffs also fail to plausibly allege damages for "the lost value of their Private Information." Opp. 17 (citing CAC ¶¶ 17, 31). The cited paragraphs say only that Plaintiffs have "suffered diminution in the value of [their] Private Information." The Court need not accept these "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. For example, "Plaintiffs do not allege any facts explaining how their personal information became less valuable as a result of the breach or that they attempted to sell their information and were rebuffed because of a lower price-point attributable to the security breach." *Prestby*, 2026 WL 26128, at *10.

Further, Plaintiffs do not plausibly allege damages for "actual or attempted fraud." Opp. 17; *see also id.* at 18. Of the three Plaintiffs who alleged fraud attempts, King has dismissed her claims, leaving Morgan and Sheward. *See id.* at 2 n.3. "But neither Plaintiff alleges that she actually lost the money" (Br. 13), despite being "in the best position to know whether [s]he was ever obligated to pay [an] unauthorized charge." *In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, 925 F.3d 955, 961, 965 (8th Cir. 2019) ("*SuperValu II*"). Morgan and Sheward have no answer to this point. Nor do they explain how *failed* fraud attempts equate to actual damages.

Finally, Plaintiffs fail to show that an "increase in spam phone calls and texts" amounts to actual property damages recoverable in negligence. Opp. 18. The only case they cite is unpersuasive, as it never explains how spam calls and texts cause actual damages.

### B. Plaintiffs' Negligence *Per Se* Claims Fail

As Cerner noted (Br. 24-25), the only Missouri appellate decision on point squarely held that a violation of HIPAA "does not constitute negligence *per se*." *Howland v. Truman Med. Ctr.,*

*Inc.*, 719 S.W.3d 98, 110 (Mo. Ct. App. 2025). Plaintiffs respond only with two federal-court cases and dicta from pre-*Howland* state-court cases. Opp. 20-21; *cf.* Br. 25 n.11. This falls short of "persuasive data that the highest court of the state would decide otherwise," *Holden Farms, Inc. v. Hog Slat, Inc.*, 347 F.3d 1055, 1066 (8th Cir. 2003), so this Court should follow *Howland*.

### C. Plaintiffs' Contract Claims Fail

#### 1. Plaintiffs are not third-party beneficiaries of the BAAs.

Plaintiffs' sole non-abandoned claims for breach of express contract are based on the BAAs that Cerner separately executed with Heartland Regional Medical Center d/b/a Mosaic Life Care and Tallahassee Memorial Healthcare, Inc. *See* Opp. 1 n.2, 21. Unlike the two BAA-related cases cited by Plaintiffs where the parties apparently did not provide the court with the relevant contracts (*id.* at 22),[3] the Court here can see for itself that neither BAA contains an express declaration of an intent to benefit patients such as Plaintiffs. *See* Exs. D, E. Thus, as Plaintiffs admit, "there is a strong presumption" that Plaintiffs are not third-party beneficiaries. Opp. 21; *accord* Br. 26.

To overcome this presumption, Plaintiffs attempt to invoke "surrounding circumstances." Opp. 22. But as a case they quote (*id.* at 23) explains: "The intention of the parties is to be gleaned from the four corners of the contract, and *if uncertain or ambiguous*, from the circumstances surrounding its execution." *JTL Consulting, L.L.C. v. Shanahan*, 190 S.W.3d 389, 399 (Mo. Ct. App. 2006) (emphasis added). Plaintiffs identify no language in the Mosaic and Tallahassee Memorial BAAs making it "uncertain or ambiguous" whether third parties can enforce them. *Id.* They are "not ambiguous merely because the parties disagree over [their] meaning." *Gohagan v.*

---

[3] *In re Change Healthcare, Inc. Customer Data Sec. Breach Litig.*, 2025 WL 3693201, at *15 (D. Minn. Dec. 19, 2025) ("Because there is no specific contract between a Defendant and a covered entity from which to garner intent, the Court looks to the regulations controlling BAAs."); *Barletti v. Connexin Software, Inc.*, 2023 WL 6065884, at *2 (E.D. Pa. Aug. 17, 2023) ("[T]he Parties can provide me with more detail about the terms and circumstances of the contract after discovery.").

*Cincinnati Ins. Co.*, 809 F.3d 1012, 1016 (8th Cir. 2016). And their "silence about [third-party beneficiaries] does not necessarily create an ambiguity," either. *State ex rel. Greitens v. Am. Tobacco Co.*, 509 S.W.3d 726, 737 (Mo. 2017). If anything, this silence forecloses rather than implies third-party enforcement, given the baseline presumption that "the parties contracted to benefit only themselves." *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. 2007).

Attempting to create ambiguity where there is none, Plaintiffs compare the Mosaic and Tallahassee Memorial BAAs with other BAAs and invoke two linguistic canons. Opp. 23-24. But "an ambiguity must come from within the four corners of the contract—not parol or extrinsic evidence." *Bringer v. Bringer*, 728 S.W.3d 631, 642 (Mo. Ct. App. 2025). The fact that other BAAs adopt a belt-and-suspenders approach by expressly negating third-party beneficiaries cannot foster ambiguities in the Mosaic and Tallahassee Memorial BAAs. Similarly, *expressio unius est exclusio alterius* and the surplusage canon have no role to play here, because Plaintiffs improperly make comparisons *across*, not *within*, contracts. The latter is acceptable; the former is not, particularly where (as here) the contracting parties are not identical across the agreements.[4]

[4] Plaintiffs' cases (Opp. 23-24) are not to the contrary. In *Jerseyville Mall, L.L.C. v. Shop 'N Save Warehouse Foods, Inc.*, the court compared consecutive provisions of the same 1999 agreement. *See* 633 S.W.3d 523, 526-527 (Mo. Ct. App. 2021). The court also considered a 2014 amendment that "incorporate[d] previous lease amendments and contractual agreements including, explicitly, the 1999 Agreement." *Id.* at 527; *see Bridgecrest Acceptance Corp. v. Donaldson*, 648 S.W.3d 745, 752 (Mo. 2022) ("[M]atters incorporated into a contract by reference are as much a part of the contract as if they had been set out in the contract in haec verba."). The Mosaic and Tallahassee Memorial BAAs do not incorporate other BAAs by reference (or vice versa). In *General American Life Insurance Co. v. Barrett*, the court held that an insurance policy contained a latent ambiguity allowing consideration of extracontractual evidence. *See* 847 S.W.2d 125, 132 (Mo. Ct. App. 1993). The court's subsequent analysis included a comparison of that insurance policy with its "predecessor," executed between the same insurer and insured. *Id.* at 133. Plaintiffs do not argue that the Mosaic and Tallahassee Memorial BAAs contain latent ambiguities or that either of these BAAs preceded or succeeded another BAA. *Feliciano v. Department of Transportation*, for its part, *declined* to apply the surplusage canon. *See* 605 U.S. 38, 51-53 (2025); *see also Stanley v. City of Sanford*, 606 U.S. 46, 56 (2025) ("[T]he canon against surplusage is not an absolute rule.").

### 2. Plaintiffs' claims for breach of implied contract fail.

Plaintiffs agree that an implied-in-fact contract requires a meeting of the minds and conduct reflecting a shared, tacit understanding. Opp. 24. Yet Plaintiffs do not (and cannot) deny that they "never dealt directly with Cerner." Br. 28; *cf.* Opp. 24-27. Complete strangers who never interact cannot "meet upon and assent to the same thing, in the same sense, and at the same time." *EM Med., LLC v. Stimwave LLC*, 626 S.W.3d 899, 907 (Mo. Ct. App. 2021).

In response to this difficulty, Plaintiffs make the (unpleaded) assertion that "patients *can* identify their EHR vendor by accessing their patient portal." Opp. 25 (emphasis added). Yet Plaintiffs do not claim that any one of them *did* identify Cerner in this manner before the alleged data breach. This fact alone suffices to distinguish *Castillo v. Seagate Technology, LLC*, where the defendant was sued by current and former employees—who all surely knew about, and repeatedly interacted with, the defendant. *See* 2016 WL 9280242, at *1 (N.D. Cal. Sept. 14, 2016) (cited at Opp. 25). Even if Plaintiffs had known that Cerner was their hospitals' EHR vendor, Plaintiffs do not explain how such knowledge, by itself, plausibly resulted in "a definite offer and unequivocal acceptance." *Merritt v. Wilson*, 697 S.W.3d 814, 821 (Mo. Ct. App. 2024) (emphasis omitted). Indeed, in the cases Plaintiffs cite (Opp. 26), courts *rejected* similar claims of breach of implied contract because "Plaintiffs had no direct dealings with Defendants and were unaware of Defendants' existence until they received notice from them of the Data Breach," and "thus could not have reached any implied understanding with Defendants." *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 591 (N.D. Ill. 2022); *see also Harris v. Mercy Health Network, Inc.*, 2024 WL 5055556, at *11 (S.D. Iowa June 26, 2024) ("the existence of an implied contract that encompassed the Private Information" was "debatable, at best, under … contract law principles requiring sufficiently definite terms with precise meaning").

### D. Plaintiffs' Other Common-Law Claims Fail

**Breach of Fiduciary Duty.** Cerner has explained that (a) a fiduciary relationship usually arises under Missouri law only if the five-factor test approved in *Emerick v. Mutual Benefit Life Insurance Co.*, 756 S.W.2d 513 (Mo. 1988), is satisfied, (b) Plaintiffs fail to plead facts supporting multiple elements of this test, and (c) Plaintiffs do not otherwise plausibly allege that they placed trust in Cerner in a manner sufficient to give rise to a fiduciary relationship. Br. 30-31. In response, Plaintiffs do not deny that they fail to satisfy *Emerick*. Instead, they disparage it as "a nearly 40-year-old case." Opp. 28. But "[u]nder *Erie*, [federal courts] are obligated to apply governing precedent from the Missouri Supreme Court," no matter how old. *Acad. Bank, N.A. v. AmGuard Ins. Co.*, 116 F.4th 768, 776 (8th Cir. 2024). Also, courts continue to apply the same five-factor test, so it is hardly a relic. *See Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 86 (Mo. Ct. App. 2012); *Phox v. 21c Mgmt. LLC*, 2021 WL 2346018, at *3 (W.D. Mo. June 8, 2021); Br. 31.

Unable to meet *Emerick*, Plaintiffs assert *Negron* as their sole ground for a fiduciary relationship. But *Negron* did not involve a claim for breach of fiduciary duty, so any comments about "fiduciary" duties when addressing a negligence claim were dicta. *See* 2025 WL 2710014, at *1-2 (listing claims). In any event, *Negron* is distinguishable: even if a patient "places trust in" a hospital, not merely its physician employees, it is not plausible that a patient also "places trust in" third parties, unknown to her, that contract with the hospital. *Speaks Fam. Legacy Chapels, Inc. v. Nat'l Heritage Enters., Inc.*, 2009 WL 2391769, at *3 (W.D. Mo. Aug. 3, 2009). "[T]here are no factual allegations in the [CAC] that plausibly establish a direct relationship of any sort between [Cerner] and Plaintiffs, let alone a relationship in which Plaintiffs placed any special confidence in [Cerner]." *Id.* Missouri does not recognize fiduciary duties in these circumstances.

**Invasion of Privacy.** Although Plaintiffs briefly allude to intrusion upon seclusion, the substance of their discussion confirms that they rely solely on a theory of public disclosure of

private facts. Opp. 29-31. This claim fails because, as explained already (*supra* § I.B), Plaintiffs do not plausibly allege that Cerner "publi[cized]" information "bring[ing] shame or humiliation to a person of ordinary sensibilities." *Balke v. Ream*, 33 S.W.3d 589, 594 (Mo. Ct. App. 2000).[5]

**Unjust Enrichment.** Plaintiffs tacitly concede that they did not directly confer any benefit on Cerner, yet assert that, for an unjust-enrichment claim, "the benefit need not be conferred upon [the defendant] directly by the plaintiff." Opp. 27. This argument is foreclosed by controlling precedent requiring that a plaintiff "*directly* conferred a benefit on the defendant." *Allied Servs., LLC v. Smash My Trash, LLC*, 153 F.4th 600, 612 (8th Cir. 2025) (emphasis added) (rejecting claim where, "[a]t best, [plaintiff] provided indirect benefits" to defendant). And although Plaintiffs allege the word "unjust," "bare assertions are insufficient to state a claim for unjust enrichment." *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 666 (8th Cir. 2012).

### E. Plaintiffs' Consumer-Protection Claims Fail

**Deception (General Statutes).** Cerner has explained that Plaintiffs' deception-based claims fail because (among other reasons) Plaintiffs do not plausibly allege that Cerner made any misrepresentations or that Plaintiffs were exposed to any misrepresentations. Br. 35. Plaintiffs respond that they "were indirectly affected by Cerner's affirmative misrepresentations about its cybersecurity practices because those statements were passed down by the hospitals, who contracted directly with Plaintiffs and relied upon Cerner's representations in making their own assurances about security to Plaintiffs." Opp. 32 (citing CAC ¶¶ 349-357, 363).

---

[5] Neither case cited by Plaintiffs (Opp. 31) requires a different conclusion. In *Barber v. Time, Inc.*, the defendant "publish[ed] an article (with [the plaintiff's] picture) about a physical ailment for which she was being treated in a hospital." 159 S.W.2d 291, 292 (Mo. 1942). Plaintiffs allege no comparable private information online or comparable publication by Cerner. *Purdy v. Burlington Northern & Santa Fe Railway Co.* was decided under Minnesota law, and it gave little reasoning to state that "a reasonable fact-finder is likely to determine that publication of [Social Security numbers] is highly offensive." 2000 WL 34251818, at *4 (D. Minn. Mar. 28, 2000).

This theory fails in three ways. *First*, none of the cited CAC paragraphs alleges that any Cerner statements were "passed down by the hospitals," or that any hospitals "relied upon Cerner's representations in making their own assurances about security." Opp. 32. Plaintiffs cannot amend the CAC via briefing. *See Hawse*, 7 F.4th at 691. *Second*, even if the CAC alleged that hospitals "relied upon Cerner's representations in making their own assurances about security" (and it does not), Plaintiffs nowhere allege that they *were aware of* any such "assurances." Opp. 32. This is dispositive because, as Plaintiffs rightly concede, "each statute requires a causal relationship between the deceptive and unfair conduct and a plaintiff's injuries." *Id.* at 31. And "if the plaintiff did not see any of [the] statements, they could not have been the cause of his injury." *Grossman v. GEICO Cas. Co.*, 2022 WL 1656593, at *3 (2d Cir. May 25, 2022). *Third*, even if Plaintiffs alleged that they were exposed to Cerner's challenged statements directly or indirectly (and they do not), these statements are not actionable. The statement about being an "industry leader" (CAC ¶ 349) is a "bald assertion[] of superiority" constituting non-actionable puffery. *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391 (8th Cir. 2004); *see* Br. 36. The statement about "technical and organizational measures" (CAC ¶ 349) is not plausibly alleged to be false—not merely without "exacting detail" (Opp. 34), but not plausibly alleged to be false *at all*. With no plausible liability for the alleged statements, Plaintiffs argue that deception claims can be "predicated not merely on affirmative misrepresentations, but also on omissions." *Id.* at 32. Even so, "[s]ilence, absent a duty to disclose, is not misleading." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 265 (2024). Plaintiffs do not plead that either challenged Cerner statement was "inaccurate, incomplete or misleading" so as to trigger a duty to disclose anything to them. *Sailors v. N. States Power Co.*, 4 F.3d 610, 612 (8th Cir. 1993).

**Unfairness (General Statutes).** Plaintiffs fail to salvage their unfairness-based theory, which reduces to the following syllogism: (1) the FTC and some federal courts have concluded that "allegedly deficient cybersecurity that failed to protect consumer data against hackers may constitute unfair trade practices under the FTC Act"; (2) some (but not all) state courts treat federal courts' interpretations of the FTC Act as "persuasive"; and (3) because someone allegedly stole data from Cerner, Cerner's cybersecurity was so deficient as to be an unfair practice. Opp. 35-36.

This argument fails at multiple steps. To start, Plaintiffs do not plausibly allege that Cerner's cybersecurity practices were deficient. *See supra* § II.A.2; Br. 20-21; *compare FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236, 240-241 (3d Cir. 2015) (detailed allegations of specific exploited deficiencies), *with* CAC ¶ 411 ("As evidenced by the Data Breach, Defendants failed to properly implement basic data security practices."). Even if Plaintiffs had done so, and even accepting the dubious notion that deficient cybersecurity "*may* constitute [an] unfair trade practice[] under the FTC Act" in some situations (Opp. 36 (emphasis added)), the CAC lacks allegations suggesting that Cerner's purported deficiencies *did* amount to an unfair trade practice under the FTC Act. The mere assertion that a data-security practice was unfair, without more, does not suffice. *See Kuhns*, 868 F.3d at 719. Plaintiffs then ask this Court to predict that the highest court of every State whose general consumer-protection statute they invoke would adopt the FTC Act analysis wholesale, with no more than a footnote of sparse explanation. Opp. 35 n.20. This request is so "perfunctory" and "unaccompanied by some effort at developed argumentation" as to be forfeited. *Roach v. Colvin*, 2015 WL 4727375, at *2 (W.D. Mo. Aug. 10, 2015).

**CCRA.** Plaintiffs argue that the exemptions listed in Section 1798.81.5(e) do not apply because Plaintiffs assert only violations of Section 1798.82. Opp. 37. Nevertheless, only a "customer" of a defendant can sue for an alleged violation of Section 1798.82. *See In re MOVEit*

*Customer Data Sec. Breach Litig.*, 2025 WL 2176590, at *22-23 (D. Mass. July 31, 2025), *reconsidered in part on other grounds*, 2026 WL 75852 (D. Mass. Jan. 9, 2026). Plaintiffs "are customers of [their healthcare providers] and provided their data to those companies in connection with purchases made from them, not [Cerner]," so they cannot sue Cerner. *Id.* at *22.

**CMIA.** The CAC lacks any nonconclusory allegations that anyone *viewed* (rather than merely accessed or stole) Plaintiffs' confidential medical information. *See* Br. 38 (collecting cases). Plaintiffs respond by citing allegations about "spam calls and messages" (Opp. 37), which suggest, at most, that someone viewed their *phone numbers*, not their medical information.

**FDUTPA.** In a bid to sidestep FDUTPA's actual-damages requirement, Plaintiffs reframe their theory as being that "Cerner's conduct caused them to overpay for services received from their healthcare providers because part of the price paid was for, and should have been, for adequate security." Opp. 38 (citing CAC ¶¶ 17, 451-456). This supposed claim, however, is not plausibly pleaded. Of the cited paragraphs, one broadly asserts that Plaintiffs "overpaid for services that were intended to be accompanied by adequate data security but were not," and that "[p]art of the price paid by Plaintiffs … to Defendants was intended to be and should have been used by Defendants to fund adequate security of Defendants' computer systems." CAC ¶ 451. The Court need not credit these "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. The other cited paragraphs provide no support at all for Plaintiffs' new FDUTPA theory. *See Hawse*, 7 F.4th at 691 (plaintiff cannot amend via brief). Whether non-consumers can bring claims is a red herring because they, too, must plead actual damages, yet Plaintiffs do not.

**MDBNL.** Cerner explained in its opening brief that Plaintiffs' MDBNL claims fail because (among other reasons) the CAC does not allege that Cerner owns or licenses the data at issue. Br. 39. In response, Plaintiffs insist that "[i]f the allegations of the Complaint are accepted

as true, then Cerner had a license to use the data." Opp. 38-39 (citing CAC ¶¶ 345-347, 359-365). None of the cited paragraphs (or anything else in the CAC) plausibly supports this assertion, including because Cerner is not alleged to have used Plaintiffs' data at all. Rather, on Plaintiffs' own account, Cerner's EHR product "*allows healthcare providers* to create, store, and manage [a] patient's health-related information." CAC ¶ 346 (emphasis added); *see also id.* ¶ 360. Nor do Plaintiffs identify what "'otherwise … unlawful'" act Cerner had "'permission … to commit.'" Opp. 39 (quoting *License*, Black's Law Dictionary (12th ed. 2024)). Plaintiffs' claim regarding ownership is equally wrong. Given that healthcare providers retained the right to access and use patients' data, as Plaintiffs acknowledge (*e.g.*, CAC ¶¶ 346, 360), Cerner plainly lacked "the right … to possess and use it *to the exclusion of others*." Mont. Code Ann. § 70-1-101 (emphasis added).

**UCL.** In addition to the issues plaguing claims under other statutes, the UCL claims fail because Plaintiffs do not plead that they lack an adequate remedy at law. Plaintiffs cite Cal. Bus. & Prof. Code § 17205, but "state law cannot expand or limit a federal court's equitable authority." *New Life Treatment Ctr., Inc. v. Sanford Health Plan*, 2024 WL 5186986, at *10 (D.S.D. Dec. 20, 2024). Plaintiffs also protest that this argument is "premature because this case is at the pleading stage, when courts routinely allow the pursuit of alternative remedies." Opp. 40. But the CAC does not purport to plead the UCL claims in the alternative. Even if the CAC had done so, "alternate claims must also be adequately pleaded," *McCabe v. Ford Motor Co.*, 774 F. Supp. 3d 349, 397 (D. Mass. 2025), so Plaintiffs needed to "sufficiently plead lack of an adequate remedy at law," *New Life*, 2024 WL 5186986, at *11. They do not even try.

## CONCLUSION

The CAC should be dismissed without leave to amend because Plaintiffs do not indicate how its deficiencies would be cured. *See Mitchell v. Kirchmeier*, 28 F.4th 888, 903 (8th Cir. 2022).

Dated: March 31, 2026

Respectfully submitted,


*/s/ Alan Schoenfeld*
Alan Schoenfeld (*pro hac vice*)
Thomas Oates (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
Alan.Schoenfeld@wilmerhale.com
Tom.Oates@wilmerhale.com

Siddharth Velamoor (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Siddharth.Velamoor@wilmerhale.com

Katherine Mackey (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Katherine.Mackey@wilmerhale.com

Patrick Fanning (MO Bar No. 47615)
LATHROP GPM LLP
2345 Grant Blvd., Suite 2200
Kansas City, MO 6418-2618
Telephone: (816) 460-5416
Patrick.Fanning@lathropgpm.com

*Attorneys for Defendant Cerner Corporation*