| | |
|---|---|
| IN RE: CERNER/ORACLE DATA )<br>BREACH LITIGATION. ) | Case No. 25-00259-CV-W-BP |
| ) | |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS

This case is the consolidation of multiple lawsuits arising from a ransomware attack directed at various medical clinics, hospitals, and other health care facilities (collectively, "Health Care Providers," or "HCPs") that utilized software developed by Cerner Corporation ("Cerner").[1] Plaintiffs are patients at those health care facilities; Defendants are Cerner and some of the HCPs. Many suits have been filed in (or removed from state court to) federal courts around the country and then transferred here and consolidated in this action.[2]

At the Court's direction, Plaintiffs filed a Consolidated Complaint encompassing the parties and claims that were consolidated into this case at the time. The Consolidated Complaint asserts common law and statutory claims on behalf of 18 individuals (who will seek to represent various classes) against Cerner and eight HCPs. (*See* Doc. 93.)[3] The eight HCPs are:

1. Albany Med Health System ("Albany Med"),

2. Arkansas Heart Hospital, LLC ("Arkansas Health"),

3. Baptist Health South Florida, Inc. ("Baptist Health"),

---

[1] Cerner Corporation was purchased by Oracle Corporation in 2022, at which time it was "rebranded" as "Oracle Health." Most of the cases in this action (and the Consolidated Complaint) refer to "Cerner Corporation d/b/a Oracle Health," and in its Motion to Dismiss it refers to itself as Cerner Corporation. On some occasions, the parties refer to "Oracle." For the sake of consistency, the Court will refer to "Cerner."

[2] These transfers have been arranged by the parties and not the Judicial Panel on Multidistrict Litigation.

[3] The Consolidated Complaint lists 23 plaintiffs, but five subsequently dismissed their claims. (*See* Docs. 197, 198, 215, 287, 380.) The Consolidated Complaint also lists 10 HCPs, but two (LifeBridge Health, Inc. and Sapphire Community Health, Inc.) have been dismissed because the Plaintiffs asserting claims against them dismissed their claims. (*See* Docs. 215, 379.)

4. Glens Falls Hospital ("Glens Falls"),

5. Heartland Regional Medical Center d/b/a Mosaic Life Care, Inc. ("Mosaic"),

6. Pasadena Hospital Association, Ltd. d/b/a Huntington Hospital ("Huntington"),

7. Tallahassee Memorial HealthCare, Inc. ("Tallahassee Memorial"), and

8. Union Health System, Inc. ("Union Health").[4]

Now pending are two separate Motions to Dismiss filed by (1) Cerner and (2) the HCPs. Issues raised in the Motions overlap with each other (and, at times, the Motions explicitly incorporate arguments made in the others). The Court will generally refer to the arguments as having been raised by "Defendants" and will attribute them to specific parties only as necessary. For the reasons set forth below, the Motions, (Docs. 160, 162), are **GRANTED IN PART** and **DENIED IN PART**.

## I. BACKGROUND

Cerner develops electronic health record ("EHR") systems, which are software and data storage platforms that allow HCPs to create, store, and manage their patients' health-related information. (*E.g.*, Doc. 93, ¶¶ 1, 344-46.) Necessarily, an EHR system

> contains extensive patient data, including (1) personal identifiers such as name, date of birth, address, phone number, email address, Social Security number, and health insurance and billing information and (2) a comprehensive record of a patient's health history, medical exam and lab results, diagnoses, treatments, medications, and other information.

(Doc. 93, ¶ 346.) Cerner's systems are used by many HCPs in the country, (*see* Doc. 93, ¶ 1), including those that have been named as Defendants in this case.

---

[4] Since the Consolidated Complaint was filed, additional cases (some with different HCPs as defendants) were consolidated into this case. After this Order is issued, it is anticipated Plaintiffs will use Short Form Complaints to incorporate the new cases into the Consolidated Complaint. (*See* Doc. 59.)

In January 2025, a hacker accessed Cerner's servers "and exfiltrated a massive amount of [patient information] to an external hard drive. The stolen [information] includes . . . names, Social Security numbers, dates of birth, driver's license numbers, treating physicians' names, dates of service, medication information, health insurance information, and diagnostic and treatment information." (Doc. 93, ¶ 369.) This event will be referred to as the "Data Breach." The types of information stolen in the Data Breach are sought by hackers for a variety of reasons, including because they can be used to commit financial crimes such as fraud, theft, and identity theft. (*E.g.,* Doc. 93, ¶¶ 394, 425, 429-32, 436-37, 441-42.)

Plaintiffs have asserted several common law and state statutory claims.[5] Defendants argue that all claims should be dismissed because Plaintiffs (1) lack standing and (2) have failed to state a claim for which relief can be granted. Given the nature of the arguments and the breadth of the Consolidated Complaint, in the interest of clarity the Court will discuss additional allegations from the Consolidated Complaint as necessary to resolve the issues below.

## II. DISCUSSION

When resolving a motion seeking dismissal based on a lack of jurisdiction, the Court "must distinguish between a 'facial attack' and a 'factual attack' on jurisdiction." *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quotation omitted). Defendants do not ask the Court to consider any additional facts, so their standing arguments constitute facial attacks. When presented with a facial attack on its jurisdiction, the Court is limited to considering the same information it can consider under Rule 12(b)(6).

Under Rule 12(b)(6), the Court "must accept as true all of the complaint's factual allegations and view them in the light most favorable to the Plaintiff[ ]." *Stodghill v. Wellston*

---

[5] One claim, Count IX, only seeks declaratory and injunctive relief. However, declaratory and injunctive relief are remedies, not causes of action.

*School Dist.*, 512 F.3d 472, 476 (8th Cir. 2008); *see also Alexander v. Hedback*, 718 F.3d 762, 765 (8th Cir. 2013).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations and citations omitted); *see also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Horras v. American Capital Strategies, Ltd.*, 729 F.3d 798, 801 (8th Cir. 2013). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678. In making this evaluation, the Court is limited to a review of the Amended Complaint, its exhibits, and materials necessarily embraced by it. *E.g., Mattes v. ABC Plastics, Inc.,* 323 F.3d 695, 697-98 & n.4 (8th Cir. 2003). The Court can also consider matters that are amenable to judicial notice. *E.g., Podraza v. Whiting*, 790 F.3d 828, 833 (8th Cir. 2015).

### A.  Standing

"[T]he irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotation omitted). Defendants focus on the first requirement, and the Court will do so as well.

"An injury in fact must be actual or imminent and must also be concrete and particularized." *E.g.*, *id.* at 339. A concrete injury "must actually exist," but it need not be tangible; "[a]lthough tangible injuries are perhaps easier to recognize . . . intangible injuries can nevertheless be concrete." *Id.* at 340. The Court concludes Plaintiffs have alleged at least two injuries, one tangible and the other intangible.[6]

### *1. Tangible Injuries*

Plaintiffs' tangible injuries relate to the costs they have incurred, and must incur in the future, to monitor and protect themselves from financial harm through, for instance, fraudulent charges, fraudulent health insurance claims, or the opening of unauthorized lines of credit. As stated earlier, the information obtained in the Data Breach includes Plaintiffs' names, dates of birth, addresses, phone numbers, email addresses, and Social Security numbers, and this information can be used to commit fraud and identity theft. Individuals who have such information stolen are recommended to take active steps to protect themselves from possible misuses of their information and the resulting financial harm. (*E.g.*, Doc. 93, ¶¶ 427-30, 433, 437-40.) All Plaintiffs allege they have taken these steps and will continue to do so.

"[S]tanding [can be] based on a substantial risk that . . . harm will occur, which may prompt plaintiffs to reasonably incur costs to mitigate or avoid that harm." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 n.5 (2013); *see also*, *e.g.*, *Bohnak v. Marsh & McLennan Cos.*, 79 F.4th 276, 286-87 (2d Cir. 2023); *Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 155-56 (3d Cir. 2022); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1263-64 (11th Cir. 2021); *Galaria v. Nationwide Mut. Ins. Co.*, 663 Fed. App'x 384, 388-89 (6th Cir. 2016). Defendants do not dispute that the time, effort, and expense of monitoring can constitute an injury; they insist

---

[6] The Court need not address the other damage theories discussed by the parties.

Plaintiffs have not adequately alleged a sufficient risk of future harm to make monitoring (and the associated expenditure of time, effort and expense) necessary, (*e.g.*, Doc. 161, pp. 18-19),[7] but the Court disagrees.

As stated earlier, Plaintiffs allege the information stolen in the Data Breach—particularly names, birthdates, and Social Security numbers—is used by criminals to engage in identity theft. The information was not accidentally released; it was stolen by one or more criminals as part of a cyberattack, justifying an inference that the hackers intend to use it for criminal purposes. Moreover, some Plaintiffs have already experienced fraudulent applications for credit in their names or fraudulent charges on their accounts, further demonstrating their concerns are legitimate and the risk is not speculative. (*E.g.*, Doc. 93, ¶¶ 45, 73, 101, 129, 143, 171, 213, 241.) These allegations establish a substantial risk Plaintiffs will continue to be the target of fraud and identity theft, necessitating that they continue efforts to monitor their finances and protect themselves. This constitutes an injury for standing purposes. *E.g.*, *Webb v. Injured Workers Pharmacy, LLC*, 72 F.4th 365, 375-76 (1st Cir. 2023); *Clemens*, 48 F.4th at 153-54; *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295, 302 (2d Cir. 2021); *Negron v Ascension Health*, 2025 WL 2710014, at *5-6 (E.D. Mo. Sept. 23, 2025).[8]

### *2. Intangible Injuries*

Plaintiffs have also suffered an intangible injury from the disclosure of their personal health information.

> In determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles. Because the doctrine of

---

[7] All page numbers for documents filed with the Court are those generated by the CM/ECF system.

[8] The fact that the hackers acquired Social Security numbers, names, and birthdates differentiates this case from those in which only credit card numbers were obtained because credit cards can easily be canceled, thereby eliminating the risk of fraudulent charges in the future. *E.g.*, *In re SuperValu, Inc.*, 870 F.3d 763, 770-71 (8th Cir. 2017); *Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1342-43 (11th Cir. 2021).

standing derives from the case-or-controversy requirement, and because that requirement in turn is grounded in historical practice, it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts.

*Spokeo*, 578 U.S. at 340-41. Plaintiffs' claims need not precisely match a common law *claim*; the question is whether the alleged *injury* is close to one that would support a common law claim. "In looking to whether a plaintiff's asserted harm has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts, we do not require an exact duplicate." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 433 (2021); *see also*, *e.g.*, *Gallagher v. Santander Consumer USA, Inc.*, 125 F.4th 865, 868 (8th Cir. 2025); *Bassett v. Credit Bureau Servs., Inc.*, 60 F.4th 1132, 1136-37 (8th Cir. 2023).[9] However, the fact that the legislature has created a cause of action a plaintiff may invoke is not, alone, sufficient to constitute a concrete injury. *E.g.*, *Thole v. U.S. Bank N.A.*, 590 U.S. 538, 544-45 (2020). "[A]n important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of . . . law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of" a statute. *TransUnion*, 594 U.S. at 426-27.[10]

---

[9] This analysis is typically employed for statutory causes of action because, to the extent it requires consideration of harms protected under common law, it makes no sense to apply it to common law claims. Asking if a harm is "sufficiently close" to a common law harm when discussing common law claims is not meaningful; if a plaintiff adequately states a common law claim, they have necessarily asserted a harm protected by the common law. *See*, *e.g.*, *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 890 n.9 (11th Cir. 2023); *Krupa v. TIC Int'l Corp.*, 2023 WL 143140, at *5 (S.D. Ind. Jan. 10, 2023). For instance, a plaintiff who properly alleges a claim for breach of contract need not do more to establish they have standing to assert the claim; to hold otherwise would conflate the merits with standing. *See Carlsen v. GameStop, Inc.*, 833 F.3d 903, 909 (8th Cir. 2016). Similarly, a plaintiff who properly alleges a claim for invasion of privacy has necessarily alleged a harm for which the tort is intended to provide redress.

[10] Plaintiffs' statutory claims are based on state, not federal, law. While *Spokeo* and *TransUnion* discuss federal statutes, the analysis they require also applies to claims based on state statutes. "It would be an anomaly if a state legislature could grant [a] plaintiff the keys to federal court based on a mere statutory violation when Congress can't." *O'Leary v. TrustedID, Inc.*, 60 F.4th 240, 243 n.1 (4th Cir. 2023); *see also Castro v. PPG Indus., Inc.*, 2022 WL 3681305, at *1 (9th Cir. Aug. 25, 2022); *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998, 1002-03 (11th Cir. 2016).

The divulging of private information is a harm well-recognized in common law.  *E.g.,* *TransUnion*, 594 U.S. at 425; *Jones v. Bloomingdales.com, LLC*, 124 F.4th 535, 538 (8th Cir. 2024) (citing *TransUnion*).  It is also well-recognized that disclosure of information about a person's health and medical matters provides a basis for lawsuits under common law.  Cases recognizing this have pointed to the harms protected by common law claims related to privacy interests, fiduciaries' obligations to preserve secrets, and negligent failure to preserve property and information entrusted to another.  *E.g.*, *Norman-Bloodsaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1269-70 (9th Cir. 1998); *In re Lurie Children's Hosp. Data Sec. Litig.*, 2025 WL 2754760, at *7 (N.D. Ill. Sept. 27, 2025); *Davila v. New Enchantment Grp LLC*, 2024 WL 6895566, at *2 (D. Ariz. Apr. 25, 2024); *Stasi v. Immediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 910 (S.D. Cal. 2020); *see also In re Shields Health Care Grp, Inc. Data Breach Litig.*, 721 F. Supp. 3d 152, 165 (D. Mass. 2024).

Defendants extensively discuss whether they have actually committed one of the common law torts; for instance, they explain why they have not committed the tort of unauthorized disclosure of private information, as that tort is described in § 652D of the Restatement (Second) of Torts. (*E.g.*, Doc. 161, pp. 20-21.)  However, as stated earlier, the standing analysis does not require a plaintiff to allege the defendant's conduct satisfied the requirements of a common law tort; the plaintiff must allege a harm that is close to one protected by common law torts.  *E.g.*, *TransUnion*, 594 U.S. at 433; *Gallagher*, 125 F.4th at 868; *Bassett*, 60 F.4th at 1136-37.  A plaintiff has standing to assert a statutory claim if they have suffered a harm that is close to a "proper basis for a lawsuit in English or American Courts," *Thole*, 590 U.S. at 565 (quotation omitted), but a plaintiff need not establish that the conduct *also* states a common law claim.  *E.g.*, *Golan v.*

*FreeEats.com, Inc.*, 930 F.3d 950, 958-59 (8th Cir. 2019); *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462-63 (7th Cir. 2020) (Barrett, J.)

The Eighth Circuit's decision in *Heglund v. Aitkin County*, 871 F.3d 572 (8th Cir. 2017), is instructive. The case involved claims under the federal Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2721, which forbids disclosure of personal information from a person's motor vehicle record (absent certain exclusions). Most of the claims were settled, leaving one involving a single instance in which the plaintiff's record was accessed. *Id*. at 576. The Court of Appeals concluded the plaintiff had standing because "[a]n individual's control of information concerning her person . . . was a cognizable interest at common law." *Id.* at 577. Notably, the Court's analysis did not consider whether a common law tort had been alleged; all the plaintiff was required to do was establish that the harm she alleged, or the interest she alleged was violated, was close to one protected in common law. Furthermore, the arguments Defendants raise (*e.g.*, that Plaintiffs have not satisfied § 652D of the Restatement (Second) of Torts because their private information was not publicized) would have applied as well in *Heglund*. But as explained, the Eighth Circuit did not require the plaintiff to satisfy this (or any other) element of the tort because that is not the proper analysis.

For these reasons, the Court concludes Plaintiffs have standing to assert their claims.

### B.  Plaintiffs' Claims

Cerner and Plaintiffs agree that Missouri law can be used to analyze the common law claims against Cerner. (*See* Doc. 161, pp. 27-29; Doc. 220, pp. 21-22 & n.6.)[11] The HCPs primarily discuss Missouri law and occasionally mention the law of at least some of the states where each Plaintiff lives or each HCP is located, but they also contend a choice of law analysis

---

[11] Plaintiffs and Cerner identified one possible exception, but it relates to the claims of Tracy Wright, who dismissed her claims.  (Doc. 215.)

is unnecessary. (Doc. 163, pp. 18-19; Doc. 204, pp. 12-13.) The Court will therefore focus on Missouri law for the common law claims, but with a caveat: the HCPs do not conduct the analysis necessary to confirm the laws of all relevant jurisdictions are the same, and in fact they demonstrate the law is not always the same by *sometimes* discussing the nuances of the various jurisdictions. As will be seen, this has hampered the Court's discussion at times.

The statutory claims are all based on statutes from Arizona, Arkansas, California, Florida, Indiana, Missouri, and New York. In discussing these claims, the Court will focus on the law from the jurisdiction in question.

### *1. Count I – Negligence*

"In any action for negligence, a plaintiff must establish the defendant owed a duty of care to the plaintiff, the defendant breached that duty, and the defendant's breach proximately caused the plaintiff's injury." *Wieland v. Owner-Operator Servs., Inc.*, 540 S.W.3d 845, 848 (Mo. 2018) (en banc). Defendants raise several arguments and the Court will address each one separately.

### (a). Duty

The HPCs do not dispute that they had a duty to safeguard Plaintiffs' personal information; Cerner, however, argues that it did not owe Plaintiffs a duty to prevent criminals from obtaining their information. "A duty to protect against the criminal acts of third parties is generally not recognized because such activities are rarely foreseeable." *Wieland*, 540 S.W.3d at 848 (quotation omitted). However, there are exceptions to this rule; generally, those exceptions involve special circumstances or relationships. *See*, *e.g.*, *Earley v. Dunn*, 670 S.W.3d 47, 60-61 (Mo. Ct. App. 2023); *M.B. v. Live Nation Worldwide, Inc.*, 661 S.W.3d 342, 350 (Mo. Ct. App. 2022).[12] Cerner focuses on the fact that it had no relationship with Plaintiffs, but this does not end the inquiry.

---

[12] The doctor/patient relationship between the HCPs and Plaintiffs likely qualifies as a special relationship that gives rise to a duty to protect Plaintiffs' information. *E.g.*, *Brandt v. Medical Def. Assocs.*, 856 S.W.2d 667, 670-71 (Mo.

"Where, as in this case, there is the absence of a particular relationship recognized by law to create a duty, 'the concept of foreseeability is paramount in determining whether a duty exists.'" *Scales v. Whitaker*, 615 S.W.3d 425, 436 (Mo. Ct. App. 2020) (quoting *Lopez v. Three Rivers Elec. Co-op., Inc.*, 26 S.W.3d 151, 156 (Mo 2000) (en banc)); *see also Ameer v. Lyft, Inc.*, 711 S.W.3d 534, 549 (Mo. Ct. App. 2025) (citing *Scales*, 615 S.W.3d at 436). For instance, § 302B of the Restatement (Second) of Torts provides that "[a]n act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of . . . a third person which is intended to cause harm, *even though such conduct is criminal.*" (emphasis supplied). Comment e to § 302B further provides that "[t]here are . . . situations in which the actor, as a reasonable man, is required to anticipate and guard against the intentional, or even criminal, misconduct of others," such as when "the actor's own affirmative act has created or exposed the other to a recognizable high degree of risk of harm through such misconduct, which a reasonable man would take into account."

Missouri courts have relied on § 302B (or its principles) to identify circumstances in which there is a duty to act reasonably to prevent (or minimize the risk of) foreseeable criminal conduct by third parties. For instance, in *Hyde v. City of Columbia*, the plaintiff reported to the police that she had been a victim of a kidnapping; the police then "released her name and address to . . . reporters for publication when the police knew the assailant was still at large[,]" and the information was published in the newspaper. 637 S.W.2d 251, 253 (Mo. Ct. App. 1982). The assailant then terrorized the plaintiff, and she sued (among others) the police officers and the reporters for negligence. Relying on § 302B (among other authorities), the Missouri Court of Appeals held that the plaintiff had alleged facts supporting the existence of a duty. *Id*. at 257-58.

---

1993) (en banc); *J.J by and through C.W. v. Poplar Bluff Reg. Med. Ctr., LLC*, 675 S.W.3d 259, 266 (Mo. Ct. App. 2023). But, as stated earlier, the HCPs did not contest this issue.

The Missouri Supreme Court reached a similar conclusion in a case that did not involve a special relationship (albeit, without citing § 302B) in *Zuber v. Clarkson Construction Co.*, 251 S.W.2d 52, 53 (Mo. 1952). There, the defendant left construction equipment at a site "with the machinery in gear and the switches and ignitions unlocked, with fuel in the tanks, and with the brakes off" and the equipment "ready to be easily put in operation" even though it allegedly knew or should have known that people were taking the equipment and operating it at night. *Id*. at 53. The plaintiff's father was killed by someone illegally operating the equipment, and the Missouri Supreme Court upheld a negligence claim against the defendant, explaining that "if there is some probability or likelihood, not a mere possibility, of harm sufficiently serious that ordinary men would take precautions to avoid it, then the failure to do so is negligence." *Id*. at 55.

More recently, the Missouri Court of Appeals relied on § 302B in *Ameer*. There, a rideshare driver was killed by individuals who were not supposed to be permitted to use the app to summon a driver. They were able to do so by using "a false name, a false email address, and an anonymous form of payment;" they summoned a driver and attempted a carjacking, which resulted in the driver's death. *Ameer*, 711 S.W.3d at 540. In a wrongful death action against the rideshare company (which had also developed the app), the Missouri Court of Appeals relied on § 302B to hold the rideshare company had a duty to take reasonable measures to prevent unauthorized use of its app. *Id*. at 549-52.[13]

The Consolidated Complaint alleges facts that would support the conclusion that Cerner had a duty to act reasonably to protect Plaintiffs' data. It is one of the largest providers of EHR

---

[13] Furthermore, if a party assumes a duty to protect a person (or a person's property), they must exercise reasonable care in doing so. *E.g.*, *Brown v. National Supermarkets, Inc.*, 679 S.W2d 307, 309-10 (Mo. Ct. App. 1984); Restatement (Second) of Torts § 448. Similarly, Cerner's situation is not unlike that of a bailee who has been charged with safekeeping Plaintiffs' property, in which case it has a duty to exercise ordinary care to prevent its loss. *E.g.*, *Seitz v. Lemay Bank & Trust Co.*, 989 S.W.2d 458, 463 (Mo. 1998) (en banc); *D.S. Sifers Corp. v. Hallak*, 46 S.W.3d 11, 19 (Mo. Ct. App. 2001); *Thummel v. Krewson*, 764 S.W.2d 700, 705 (Mo. Ct. App. 1989).

12

systems in the country, and it knows its systems contain personal information that (1) people wish to be kept private and (2) can be used to commit fraud and identity theft. (*E.g.*, Doc. 93, ¶¶ 1, 344-46.) It not only knows that the information it maintains can be used by criminals for fraudulent purposes, but that criminals actively seek such information for those purposes, (*e.g.*, Doc. 93, ¶ 422, 428-37), and that EHR systems are a frequent target of hacking efforts designed to obtain/steal such information. (*E.g.*, Doc. 93, ¶¶ 347-48.) And, in recognition of these facts, Cerner represents itself as a leader in securely storing such information. (*E.g.*, Doc. 93, ¶ 349.) These allegations plausibly demonstrate Cerner realized (or should have realized) that its negligence would create an unreasonable risk of harm committed by third parties' criminal conduct, which gave it a duty to act reasonably to protect Plaintiffs' information.

### (b). Breach

Defendants argue that even if they owed a duty, Plaintiffs have not alleged that they breached it. The Court disagrees.

Cerner correctly contends that the fact hackers gained access does not establish a breach of its duty. However, there are allegations that Cerner did not act with reasonable care to secure the information and protect it from hackers. (*E.g.*, Doc. 93, ¶¶ 366, 369, 405, 414-17, 419, 476, 484.) Thus, Plaintiffs do not rely on the Data Breach alone to establish that Cerner breached its duty to exercise reasonable care.

The HCPs argue that even if they had a duty to safeguard Plaintiffs' information, the fact that the Data Breach occurred on Cerner's servers demonstrates they did not breach any duties they had. However, they provide little explanation for this theory as it relates to a negligence claim, and the Court is not persuaded by it. The HCPs had a duty to protect Plaintiffs' information, by virtue of both common law and the Health Insurance Portability and Accountability Act

13

("HIPAA"). The HCPs gave Plaintiffs' information to Cerner; now they claim that Cerner's negligence is not attributable to them. However, it has not been established that the HCPs' common law duties are delegable, such that they can be absolved of liability by contracting them out to a third party. Relatedly, it has not been established that the HCPs' decisions to give Cerner access to Plaintiffs' information were reasonable in the first instance. It may be that Cerner was more negligent than the HCPs, or that a factfinder will conclude the HCPs acted reasonably in entrusting their patients' data to Cerner for safekeeping, but this does not mean Plaintiffs have not stated a claim against the HCPs.

### (c). Proximate Cause/Damages

Cerner argues the Consolidated Complaint does not adequately allege they proximately caused Plaintiffs' damages. The Court disagrees.

> Proximate cause, also known as legal cause, means the injury must be a reasonable and probable consequence of the act or omission of the defendant. Proximate cause inquires into the scope of foreseeable risk created by the defendant's act or omission. The proximate cause requirement ensures events that are too far removed from the ultimate injury or damage do not provide a basis for liability even if they are causal in fact.

*Tharp v. St. Luke's Surgicenter-Lee's Summit, LLC,* 587 S.W.3d 647, 657 (Mo. 2019) (en banc) (quotations and citations omitted). Put another way, "[p]roximate cause looks at the scope of foreseeable risk created by the defendant's act or omission. This analysis relies upon hindsight to determine whether the precise manner of a particular injury was a natural and probable consequence of a negligent act." *D.J. by & through R.J. v. First Student, Inc.*, 707 S.W.3d 581, 586 (Mo. 2025) (en banc) (quotation omitted). Here, it was foreseeable that negligently protecting Plaintiffs' personal information would lead to it being stolen. It was further foreseeable that once the information was stolen, Plaintiffs would be injured in several ways, including by having to

incur costs to protect themselves from identity theft and fraud. Therefore, Count I adequately pleads the existence of proximate cause.

### (d). Economic Loss Doctrine

The HCPs assert that Plaintiffs' negligence claim is barred by the economic loss doctrine, but they do not provide much legal analysis and instead direct the Court to a list of cases from various jurisdictions. (Doc. 163, pp. 22-23.) The Court is not inclined to analyze the laws of the various jurisdictions in more depth than have the parties, but it notes that under the law of at least two jurisdictions, dismissal is not appropriate.

Under Missouri law, the economic loss doctrine "prohibit[s] a plaintiff from seeking to recover in tort for economic losses that are contractual in nature." *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 184, 192 (Mo. Ct. App. 2010). It is not clear how Plaintiffs' negligence claims seek to recover contractual losses, but even so there are exceptions to its application. One such exception is when there is a special relationship between the parties that gives rise to independent, noncontractual duties. *Id*. at 193-94; *American Mortg. Inv. Co. v. Hardin-Stockton Corp.*, 671 S.W.2d 283, 293 (Mo. Ct. App. 1984); *see also Emerson Elec. Co. v. Marsh & McLennan Cos.*, 362 S.W.3d 7, 12 n.4 (Mo. 2012) (en banc) (citing *Autry Morlan Chevrolet Cadillac*, 332 S.W.3d at 193). California recognizes a similar exception. "Under California law, '[i]n the absence of (1) personal injury, (2) physical damage to property, *(3) a 'special relationship' existing between the parties,* or (4) some other common law exception to the rule, recovery of purely economic loss is foreclosed.'" *Gardiner v. Walmart Inc.*, 2021 WL 2520103, at *8 (N.D. Cal. Mar. 5, 2021) (quoting *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 967 (S.D. Cal. 2014) (emphasis supplied)).

The relationship between Plaintiffs and the HCPs—that is, their doctor/patient relationship—is, as discussed elsewhere, regarded as a special relationship under the law. This appears to qualify as an exception under Missouri and California law, and the content of other states' laws is not discussed sufficiently to justify dismissal. Therefore, the Court declines to dismiss Count I based on the economic loss doctrine.

### (e). Conclusion

For the reasons stated above, Defendants' request to dismiss Count I is denied.

### 2. Count II – Negligence Per Se

Count II asserts a claim for negligence per se, based on violations of HIPAA and the FTC Act. Plaintiffs narrowed the scope of Count II in their response to the Motions to Dismiss. They have withdrawn the claim under Missouri law to the extent it relies on the FTC Act and have withdrawn the claim under Florida law entirely. (Doc. 220, p. 31 n.12; Doc. 221, p. 19 n.11.) They also concede that Arizona, Arkansas, and California "do not recognize negligence *per se* as an independent cause of action," (Doc. 221, p. 20), so Count II will be dismissed to the extent it relies on the law from those jurisdictions.[14]

This leaves Missouri, Indiana, and New York. Defendants argue none of these states permits a negligence per se claim unless the underlying statute provides a private right of action. When ascertaining state law, the Court is bound by the decisions of the state's highest court. When the state's highest court has not addressed an issue, decisions from state appellate courts are persuasive authority, but they are not binding and need not be followed if they conflict with decisions from the state's highest court. *E.g.*, *Allstate Indem. Co. v. Rice*, 755 F.3d 621, 623-24

---

[14] Plaintiffs represent that Arkansas, Arizona, and California permit evidence about Defendants' statutory obligations to serve as evidence in an ordinary negligence claim, and if the Court believes it is necessary they are willing to amend Count I to include allegations about Defendants' statutory obligations. (Doc. 221, p. 20.) The Court does not believe it is necessary to amend Count I.

(8th Cir. 2014); *Harleysville Ins. Co. v. Physical Distribution Servs., Inc.*, 716 F.3d 451, 457 (8th Cir. 2013). Here, the parties' arguments generally consist of quoting a single sentence from a case (or two) from each jurisdiction—none of which are from any state's highest court—and then moving on, (*e.g.*, Doc. 161, pp. 36-37; Doc. 163, pp. 23-24), but the issue requires more analysis.

For instance, the Missouri Supreme Court "recognizes that violations of statutes and administrative rules may constitute negligence *per se.* The rationale behind this principle is that the statute or rule is a legislative or administrative pronouncement of the standard of care; therefore, a violation of the statute or rule constitutes a breach of the duty of care." *Parr v. Breeden*, 489 S.W.3d 774, 781 (Mo. 2016) (en banc). But administrative rules do not create causes of action. And contrary to Defendants' characterization of Missouri law, the Missouri Supreme Court has long approved negligence per se claims where the duty of care is established by statutes (and even ordinances) that do not provide for a private right of action. *E.g.*, *Moore v. Riley*, 487 S.W.2d 555, 558 (Mo. 1972) ("Missouri, of course, does recognize that a cause of action for civil damages may be based upon an act which is violative of a criminal statute or a penal municipal ordinance."); *Cichacki v. Langton*, 392 S.W.2d 397, 400 (Mo. 1965) ("We note that in certain instances of violations of municipal ordinances, where the respective ordinance is in evidence and a violation is expressly submitted in the instruction, the act itself may constitute negligence per se and the jury may be so instructed."); *Lincoln v. Railway Express Agency, Inc.*, 359 S.W.2d 759, 764-65 (Mo. 1962) (approving negligence per se claim based on statute governing turns at intersections); *Loveless v. Berberich Delivery Co.*, 73 S.W.2d 790, 793 (Mo. 1934) ("Violation of a municipal ordinance or statute regulating the speed of trains or of motor vehicles on highways is negligence per se."). And significantly, no decision from the Missouri Supreme Court has

17

indicated that a negligence per se claim is viable only if the statute in question provides a private right of action.

To support their position, Defendants cite the Missouri Court of Appeals decision in *Howland v. Truman Medical Center, Inc.*, and quote one of various sentences similar to the following: "Because these statutes [including HIPAA] do not provide a private right of action, a breach of these statutes does not constitute negligence *per se.*" 719 S.W.3d 98, 110 (Mo. Ct. App. 2025). But *Howland* does not cite any Missouri Supreme Court decisions or otherwise explain how its conclusion can be harmonized with the Missouri Supreme Court decisions (some of which are cited in the preceding paragraph) allowing negligence per se claims based on statutes, ordinances, and regulations that do not provide a private right of action. And significantly, Defendants do not address the issue either.

The Court is not inclined to independently evaluate Missouri law further so it can explain the conflict between *Howland* and the Missouri Supreme Court's decisions. It is also not inclined to evaluate the law of the other jurisdictions to the extent it has discussed Missouri law. Accordingly, Count II is dismissed only to the extent that negligence per se claims (1) are based on Arizona, Arkansas, California, or Florida law or (2) are based on Missouri law and involve violations of the FTC Act.

### 3.  *Count III—Breach of Contract/Third-Party Beneficiary*

Count III is based on the contracts, referred to as "Business-Associate Agreements" or "BAAs," between Cerner and the HCPs.[15] Plaintiffs assert claims for breach of contract and posits

---

[15] As stated earlier, Rule 12(b)(6) permits the Court to consider materials necessarily embraced by the Consolidated Complaint, and when a plaintiff asserts breach of a written contract, the contract is necessarily embraced by the complaint. *E.g.*, *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). That said, the parties technically have not put the BAAs in the Record. Cerner sought permission to file them under seal, (Doc. 158), and the request was granted, (Doc. 164), but they were never filed. The Court is relying on the copies that were submitted *in camera* for the Court to use to evaluate the Motion to Seal.

18

that they are third-party beneficiaries of the BAAs.  In opposing Defendants' Motions to Dismiss, Plaintiffs disclaim Count III except to the extent it is based on the BAAs between (1) Cerner and Mosaic and (2) Cerner and Tallahassee Memorial.  (Doc. 221, p. 21 n.12.)  The Court further understands these claims are brought only by patients of Mosaic and Tallahassee Memorial, which are located in Missouri and Florida, respectively.

### (a).  Missouri

Under Missouri law, "[a] third-party beneficiary is one who is not privy to a contract or its consideration but who may nonetheless maintain a cause of action for breach of the contract." *Andes v. Albano*, 853 S.W.2d 936, 942 (Mo. 1993) (en banc).  Ordinarily, a third-party beneficiary must be expressly identified as such in the contract.  *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. 2007) (en banc).  "In cases where the contract lacks an express declaration of that intent, there is a strong presumption that the third party is not a beneficiary and that the parties contracted to benefit only themselves."  *Id* (quotations omitted).  This presumption can be overcome, depending on the type of beneficiary at issue.

> There are three types of third party beneficiaries: donee, creditor and incidental. The first two categories may recover, the third may not. A person is a donee beneficiary if the purpose of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor . . . asserted to be due from the promisee to the beneficiary. *A person is a creditor beneficiary if the performance of the promise will satisfy an actual or supposed or asserted duty of the promisee to the beneficiary.* Finally, if the person is neither a donee beneficiary nor a creditor beneficiary, he is an incidental beneficiary.

*L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co.*, 75 S.W.3d 247, 260 (Mo. 2002) (en banc) (quotations omitted; emphasis supplied).

The Mosaic BAA does not incorporate all of the parties' rights and obligations as they relate to Cerner's provision of EHR services.  Instead, it recognizes that Cerner's and Mosaic's

19

relationship may require that Cerner have access to and possession of patients' Personal Health Information ("PHI") as defined under HIPAA and requires Cerner to protect it.  Among other things, the Mosaic BAA requires Cerner to (1) limit use and disclosure of PHI, (2) "use appropriate safeguards to prevent the use or disclosure of PHI other than as provided for by the" Mosaic BAA, and (3) "implement administrative, physical and technical safeguards that reasonably and appropriately protect" the PHI.  These provisions are required by HIPAA's regulations; more specifically, HIPAA directly regulates HCPs' use of PHI and requires that they take steps to protect it, but it does not directly regulate other entities whose work may require them to have access to PHI.  Instead, 45 C.F.R. § 164.308(b) permits HCPs to share PHI with a business associate (such as Cerner) only if they first obtain appropriate assurances that the associate will also safeguard the PHI as required by HIPAA.  In short, Mosaic owed a duty to Plaintiffs, requiring it to safeguard Plaintiffs' PHI.  The Mosaic BAA requires Cerner to abide by HIPAA and thus requires it to satisfy the duties HCPs owed to Plaintiffs.  This makes Plaintiffs creditor beneficiaries under the Mosaic BAA.  *See*, *e.g.*, *L.A.C.*, 75 S.W.3d at 260; *Slate v. Boone County Abstract Co.*, 432 S.W.2d 305, 307 (Mo. 1968).

*L.A.C.* is particularly instructive.  There, the plaintiff was raped at a shopping mall, and one of the claims asserted was a third-party beneficiary claim against the security company with whom the shopping mall had contracted to provide security services.  The Missouri Supreme Court held that the plaintiff was a creditor beneficiary of the contract between the mall and the security company because "the owners and the operators of the mall had a duty to take reasonable precautions to protect mall customers from violent crime [and] contracted with [the security company] for this very purpose." *L.A.C.*, 75 S.W.3d at 260.  Similarly, Mosaic had a duty to take precautions to protect Plaintiff's PHI, and they contracted with Cerner for that purpose.

20

Because they are third-party beneficiaries, Mosaic's patients may assert a breach of contract claim against Cerner for breaching its obligations under the Mosaic BAA, including for "faili[ing] to use reasonable data security measures and/or business associate monitoring measures . . . ." (Doc. 93, ¶ 514.) However, Plaintiffs cannot assert a claim against Mosaic for allegedly breaching the BAA because Count III does not allege (1) Plaintiffs were third-party beneficiaries of Mosaic's promises to Cerner under the Mosaic BAA or, more importantly, (2) that Mosaic breached any of its obligations under the Mosaic BAA.

### (b). Florida

The Court concludes it is presently unnecessary to analyze Florida law for two reasons. First, Cerner relies solely on Missouri law, (Doc. 161, pp. 37-38), and the Court has discussed Missouri law above.[16] Second, even if Florida law governs Plaintiffs' claim against Tallahassee Memorial, Count III does not assert (1) Plaintiffs were third-party beneficiaries of Tallahassee Memorial's contractual promises to Cerner or that (2) Tallahassee Memorial breached the BAA it entered. Therefore, as with Mosaic, Count III does not state a claim against Tallahassee Memorial.

### (c). Conclusion

Through a combination of Plaintiffs' concessions and the Court's ruling, Count III is dismissed *except* with respect to the claims of Mosaic's and Tallahassee Memorial's patients against Cerner.

### 4. Count IV – Breach of Implied Contract

Count IV alleges Plaintiffs had an implied contract with Cerner and the HCPs pursuant to which Plaintiffs agreed to provide their personal information with the "inten[tion] and

---

[16] While the BAA between Cerner and Tallahassee Memorial is not identical to the one between Cerner and Mosaic, it is substantially similar in the respects relevant here.

underst[anding] that Defendants would adequately safeguard" it.  (Doc. 93, ¶¶ 521-23; *see also* Doc. 93, ¶ 524.)  The Court concludes the Consolidated Complaint does not allege the existence of such an implied contract between Plaintiffs and Cerner, but it does allege the existence of such a contract between Plaintiffs and the HCPs.

Like an express contract, an implied contract must satisfy "[t]he three essential elements of a valid contract [which] are offer, acceptance, and bargained for consideration."  *Bridgecrest Acceptance Corp. v. Donaldson*, 648 S.W.3d 745, 752 (Mo. 2022) (en banc).  Offer and acceptance requires (or results in) a "meeting of the minds," which is necessary for a contract to exist.  *E.g.*, *Cottonseed Delinting Corp. v. Roberts Bros.*, 218 S.W.2d 592, 594 (Mo. 1949); *Shockley v. PrimeLending*, 929 F.3d 1012, 1018-19 (8th Cir. 2019).  "[T]here is no difference in legal effect between an express contract and an implied contract; . . . the distinction lies in the manner of manifesting mutual assent."  *Francis v. St. Louis County Water Co.*, 322 S.W.2d 724, 726 (Mo. 1959); *see also Bailey v. Interstate Airmotive*, 219 S.W.2d 333, 338 (Mo. 1949).

> When determining whether an implied contract exists, the court will consider the parties' acts, conduct, and statements as a whole; whether there was a meeting of the minds on the agreement's essential elements; the parties' intent to enter into a contract upon defined terms; and whether one of the parties has relied in good faith upon the alleged contract.

*Nickel v. Stephens Coll.*, 480 S.W.3d 390, 397 n.6 (Mo. Ct. App. 2015).

The Consolidated Complaint does not allege any facts from which it can be inferred that Plaintiffs and Cerner had a meeting of the minds, or that there was an offer and acceptance of contract terms between them.  And notably, in response to Cerner's argument on this point, Plaintiffs do not identify any facts from the Consolidated Complaint that would create such an inference.  (*See* Doc. 220, pp. 35-36.)  They refer to allegations about Cerner's public statements regarding its status as "an industry leader in security" and that it has implemented measures to

22

prevent data breaches, (*see* Doc. 93, ¶ 349), but there are no allegations Plaintiffs heard or read these statements and then interacted with Cerner in a manner that would suggest they agreed on terms of a contract.[17]

The Court reaches a different conclusion with respect to Plaintiffs' implied contract theory against the HCPs. Plaintiffs have alleged they entered a contract with the HCPs; the primary terms were that Plaintiffs would pay money in exchange for healthcare services. As part of that contract, Plaintiffs necessarily had to provide information about their health condition, as well as other personal information (such as their Social Security Numbers and health insurance information). The HCPs expressly told their patients that they would protect the information, (*e.g.*, Doc. 93, ¶¶ 350-57), but even if they did not, when a patient shares confidential information, the HCP implicitly agrees to take reasonable measures to protect it. *E.g.*, *Cravens v. Garda CL SE, Inc.*, 2024 WL 5058304, at *9 (S.D. Fla. Dec. 9, 2024); *Davila v. New Enchantment Grp. LLC*, 2024 WL 6895566, at *4 (D. Ariz. Apr. 25, 2024); *Whitfield v. ATC Healthcare Servs., LLC*, 2023 WL 5417330, at *6 (E.D.N.Y. Aug. 22, 2023); *Mackey v. Belden, Inc.*, 2021 WL 3363174, at *8-9 (E.D. Mo. Aug. 3, 2021); *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *9 (N.D. Cal. Sept. 14, 2016). Whether the contract exists, and whether it was breached, are questions of fact; the Court only holds Plaintiffs have alleged facts plausibly demonstrating that an implied contract exists and was breached.[18]

---

[17] The Consolidated Complaint also alleges "Defendants solicited, offered, and invited Plaintiffs and Class members to provide their Private Information as part of Defendants' regular business practices. Plaintiffs and Class members accepted Defendants' offers and provided their Private Information to doctors or other healthcare professionals who then provided it to" Cerner. (Doc. 93, ¶ 521.) To the extent this is intended to suggest interactions between Plaintiffs and Defendants that might form the basis for a contract, it is an example of "impermissible group pleading. Because liability is personal, each defendant is entitled to know what he or she did that is asserted to be wrongful." *In re Crop Inputs Antitrust Litig.*, 2026 WL 924130, at *2 (8th Cir. Apr. 6, 2026) (quotation omitted; cleaned up); *O'Neal v. Buckner*, 2021 WL 681434, at *4 (W.D. Mo. Feb. 22, 2021). Plaintiffs have not alleged facts from which it can be plausibly inferred there was a meeting of the minds between them and Cerner.

[18] The HCPs also argue that "courts have also dismissed breach of contract claims where there was no separate consideration for data security" and argue Plaintiffs were required to specify the price they paid for the security of

23

For these reasons, Count IV is dismissed with respect to Cerner but is not dismissed with respect to the HCPs.

### 5. Count V – Unjust Enrichment

Count V asserts a claim for unjust enrichment. It alleges Plaintiffs "conferred a benefit on Defendants by turning over their Private Information to Defendants and by paying for medical services . . . that should have included cybersecurity protection to protect their Private Information. Plaintiffs and the Class members did not receive such protection." (Doc. 93, ¶ 543.) Defendants allegedly retained these benefits without providing for adequate cybersecurity. (Doc. 93, ¶¶ 545-46.) The Court agrees with Defendants that Count V fails to state a claim for unjust enrichment.

Under Missouri law, a claim for unjust enrichment requires proof that "(1) [the plaintiff] directly conferred a benefit on the defendant; (2) the defendant appreciated the benefit; and (3) the defendant accepted and retained the benefit under inequitable and/or unjust circumstances." *Allied Servs., LLC v. Smash My Trash, LLC*, 153 F.4th 600, 612 (8th Cir. 2025) (quotation omitted). Plaintiffs have not stated a claim against Cerner because they do not allege they *directly* provided it with money, their information, or anything else. *Id.*; *see also Howard v. Turnbull*, 316 S.W.3d 431, 437-38 (Mo. Ct. App. 2010). Plaintiffs dispute that the benefit must be provided directly to the defendant and contend it is enough that they conferred a benefit on the HCPs, who then conferred a benefit on Cerner. (Doc. 220, p. 37.) This is not an accurate statement of Missouri

---

their information. They cite two cases from District Courts in California to support their argument, but (1) those cases only addressed California law and (2) some District Courts in California have interpreted California law differently. *E.g.*, *C.M v. MarinHealth Med. Grp., Inc.*, 2024 WL 217841, at *4 (N.D. Cal. Jan. 19, 2024). The HCPs have not developed their argument sufficiently to permit the Court to determine that Plaintiffs' allegations are insufficient under California law.

24

law,[19] and cases discussing Missouri law make clear that the benefit must be conferred by the plaintiff directly on the defendant.

For instance, in *Allied Services*, the Eighth Circuit relied on a case that it described as follows:

> [The plaintiff] provided software to a medical facility per its contract that included nondisclosure terms. The medical facility then breached the contract by providing the software to another software developer, who then used the software to develop its own program, which the medical facility paid for. The . . . unjust enrichment claim against the software developer failed, as any benefit enjoyed by the defendant software developer was conferred by the medical facility, not the plaintiff.

*Allied Servs.*, 153 F.4th at 612 (quotations omitted; cleaned up) (discussing *LifeScience Techs., LLC v. Mercy Health*, 632 F. Supp. 3d 949, 954 (E.D. Mo. 2022)). And in *Allied Services* itself, the plaintiff supplied waste containers to its customers, who contracted with the defendant to "smash" or compact the trash so the containers would hold more. The Eighth Circuit affirmed dismissal of the plaintiff's unjust enrichment claim, in part because the plaintiff "ha[d] not shown that it directly conferred a benefit on [the defendant]. At best, it provided indirect benefits, as it provided the container to its customers who ultimately provided some benefit to [the defendant]." *Id*. Similarly, at best, Plaintiffs provided indirect benefits to Cerner, as they provided money and information to the HCPs who ultimately provided some benefit to Cerner. Thus, Plaintiffs have not stated a claim for unjust enrichment against Cerner.

The claim must also be dismissed with respect to the HCPs. First, simply providing the HCPs with personal health information did not grant them a benefit. As the District of Arizona explained (while applying Arizona law), the HCPs "did not benefit because of an unalleged extrinsic value of [Plaintiff's information]. They benefited because hosting this data was necessary

---

[19] Plaintiffs rely on *In re Change Healthcare, Inc. Customer Data Sec. Breach Litig.*, 2025 WL 3693201 (D. Minn. Dec. 19, 2025), but that case analyzed Minnesota law. *See id*. at *16. There is no basis for applying Minnesota law in this case.

to fulfill its obligations under contracts with [Plaintiffs].  The benefit [the HCPs] received in exchange for these services was money, not the ability to possess plaintiffs' data." *Quinalty v. FocusIT LLC*, 2024 WL 5223587, at *6 (D. Ariz. Dec. 26, 2024); *see also Webster v. Bradford-Scott Data, LLC*, 2025 WL 560917, at *14 (N.D. Ind. Feb. 20, 2025).

Plaintiffs rely on cases in which the defendant obtained a benefit from *using* the information for some purpose unrelated to the reason it was originally provided (*e.g.*, market research)—but there are no such allegations in this case.  The simple receipt of personal information did not benefit the HCPs.  While the payment of money was a benefit, the fact that Plaintiffs paid for medical services expecting that some of the money they paid would be used for security will not support an unjust enrichment claim.  Cases from the relevant jurisdictions hold that (1) an unjust enrichment claim requires there be some precise value attached to the amount to be paid for "information security" and (2) the claim is not cognizable at all if (as is the case here) providing the information was simply an incident of the contractual relationship.  *E.g.*, *Negron v. Ascension Health*, 2025 WL 2710014, at *12 (E.D. Mo. Sept. 23, 2025); *Webster*, 2025 WL 560917, at *14; *Johnson v. Nice Pak Prods., Inc.*, 736 F. Supp. 3d 639, 651-52 (S.D. Ind. 2024); *Cravens v. Garda CL SE, Inc.*, 2024 WL 5058304, at *10 (S.D. Fla. Dec. 9, 2024); *Rodriguez v. Mena Hosp. Comm'n*, 2023 WL 7198441, at *10-11 (W.D. Ark. Nov. 1, 2023); *see also In re SuperValu, Inc.*, 925 F.3d 955, 966 (8th Cir. 2019) (discussing Illinois and Arizona law); *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 912 (8th Cir. 2016) (discussing Minnesota law).

For these reasons, the Court concludes Plaintiffs have failed to state a claim for unjust enrichment.

### *6.  Count VI – Breach of Confidence*

Plaintiffs asserted a claim for breach of confidence against Cerner, but they are no longer pursuing it.  (Doc. 220, p. 11 n.2.)  Plaintiffs do not specifically state they are dismissing Count VI to the extent it is asserted against the HCPs, but they failed to respond to the HCPs' arguments for dismissing it.  Therefore, Count VI is dismissed.

### *7.  Count VII – Breach of Fiduciary Duty*

"When breach of fiduciary duty is asserted as a tort claim, as here, the proponent must establish that a fiduciary duty existed between it and the defending party, that the defending party breached the duty, and that the breach caused the proponent to suffer harm."  *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 15 (Mo. 2012) (en banc) (quotation omitted).  "Whether a fiduciary duty exists is a question of law, while the breach of that duty is for the trier of fact to decide."  *Id*.

With respect to Cerner, the immediate question is whether it is a fiduciary.  "There is . . . a fiduciary duty of confidentiality owed by a treating physician to his or her patients not to disclose information received in connection with treatment," *State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 566 (Mo. 2006) (en banc), but Cerner was not a treating physician.  Plaintiffs nonetheless contend Cerner owed the same fiduciary duty as their doctors.  For support, they rely on *Negron v. Ascension Health*, but that case is distinguishable.  There, the defendant was "a Missouri-based Catholic non-profit *healthcare system of 140 hospitals* serving 19 states" that, similar to the events in this case, experienced a ransomware attack.  2025 WL 2710014, at *1 (emphasis supplied).  The plaintiffs asserted a variety of claims, including one for negligence.  The defendant argued the economic loss doctrine applied, and the plaintiffs argued the economic loss doctrine did not apply because there was a fiduciary duty of confidentiality.  *Id*. at *9.  The defendant then "argue[d] that the patient-provider fiduciary relationship and resulting duty of confidentiality applies only to

27

individual doctors, not to institutions." *Id*. The Eastern District of Missouri disagreed, explaining that "the level of trust inherent in the patient-provider relationship and corresponding duty of confidentiality codified by HIPAA necessarily extends to regulated providers and warrants fiduciary treatment." *Id*.

*Negron*'s rationale thus rests in part on HIPAA and the fact that it imposes the same obligations on both the doctors and the entity employing them. But significantly, HIPAA does not impose obligations on Cerner. Moreover, the relationship between (1) doctors and the hospital or health care facility employing them is different from the relationship between (2) HCPs and outside vendors (such as Cerner). The Court is not persuaded that Missouri law imposes *fiduciary* duties on Cerner.

The HCPs generally discuss fiduciary duties and the law from some of the relevant jurisdictions regarding the extent of those duties—but there is no reason to believe the law is the same in every jurisdiction. As noted above, Missouri law recognizes a "fiduciary duty of confidentiality owed by a treating physician to his or her patients not to disclose information received in connection with treatment." *Dean*, 182 S.W.3d at 566; *see also Brandt v. Medical Def. Assocs.*, 856 S.W.2d 667, 670–71 (Mo. 1993) (en banc). The HCPs do not explain why a breach of fiduciary duty claim based on Missouri law should be dismissed. They discuss the law of some of the other jurisdictions and cite federal district court decisions for the proposition that the same fiduciary duty does not exist in California, *see Cousin v. Sharp Healthcare*, 681 F. Supp. 3d 1117, 1124-25 (S.D. Cal. 2023), and is not breached by an unintended disclosure resulting from a cyberattack in Arkansas. *See Rodriguez v. Mena Hosp. Comm'n*, 2023 WL 7198441, at \*9-10 (W.D. Ark. Nov. 1, 2023) (predicting how the Arkansas Supreme Court would resolve the issue).[20]

---

[20] The HCPs also cited a case addressing Indiana law, but that case (1) did not involve a patient suing a doctor and (2) held there was not a fiduciary duty owed *by* a data security company *to* a health care provider. *Aspen Am. Ins. Co. v.*

These cases are not based on state court decisions that clearly address the issue before the Court, and the HCPs provide no reason for the Court to rely on them.

Therefore, based on the parties' arguments, the Court concludes that Count VII does not state a claim against Cerner.  However, Count VII will not be dismissed as it relates to the HCPs.

### 8.  Count VIII – Invasion of Privacy

Count VIII alleges a claim for invasion of privacy based on the publication of Plaintiffs' private information.  New York does not recognize this common law tort.  *E.g.*, *Howell v. New York Post Co.*, 612 N.E.2d 699, 704 (N.Y. 1993); *Porco v. Lifetime Entertainment Servs., LLC*, 150 N.Y.S.3d 380, 383 (N.Y. App. Div. 2021).  For the remaining jurisdictions at issue, the elements of this tort (which is based on § 652D of the Restatement (Second) of Torts) include publication of private facts.  *E.g.*, *Hill v. National Collegiate Athletic Ass'n*, 865 P.2d 633, 648-49 (Cal. 1994); *Cape Publications, Inc. v. Hitchner*, 549 So.2d 1374, 1377 (Fla. 1989); *St. Anthony's Med. Ctr. v. H.S.H.*, 974 S.W.2d 606, 610 (Mo. Ct. App. 1998).  And significantly, Plaintiffs do not argue otherwise.

The problem is: the Consolidated Complaint does not allege *Defendants* publicized Plaintiffs' information.[21]  Thus, Defendants cannot be liable for this tort.  *E.g.*, *In re PowerSchool Holdings, Inc. and PowerSchool Grp, LLC Customer Security Breach Litig.*, 2026 WL 772329, at *12 (S.D. Cal. Mar. 18, 2026); *T.R. v. Clay-Platte Family Med., P.C.*, 2025 WL 3143638, at *6 (W.D. Mo. Nov. 3, 2025); *Negron*, 2025 WL 2710014, at *13; *In re Sequoia Benefits & Ins. Data Breach Litig.*, 2024 WL 1091195, at *6 (N.D. Cal. Feb. 22, 2024); *Rodriguez v. Mena Hosp.*

---

*Blackbaud, Inc.*, 624 F. Supp.3d 982, 1003-04 (N.D. Ind. 2022).  Therefore, it does not address the issues present in this case.

[21] The Court here sets aside the issue of whether the Consolidated Complaint adequately alleges the information was "publicized" in the sense required for this tort.  *See*, *e.g.*, *Z.D. v. Community Health Network, Inc.*, 217 N.E.3d 527, 535-36 (Ind. 2023); *Allstate Ins. Co. v. Ginsberg*, 863 So.2d 156, 164-65 (Fla. 2003).

*Comm'n*, 2023 WL 7198441, at *13 (W.D. Ark. Nov. 1, 2023); *Farmer v. Humana, Inc.*, 582 F. Supp. 3d 1176, 1188 (M.D. Fla. 2022); *Carlisi v. Sprintcom, Inc.*, 2006 WL 842613, at *2 (S.D. Fla. Sept. 6, 2006).  The logic of these cases is that invasion of privacy is an intentional tort; thus, when (as here) the plaintiff does not allege facts plausibly suggesting the defendant intentionally publicized the false information, a claim for invasion of privacy has not been stated.

Plaintiffs do not contend that Defendants participated in the Data Breach.  Instead, relying on a decision from the Eastern District of Kentucky, they argue the tort can be committed by someone who acts recklessly, even if they do not act intentionally.  Setting aside whether Plaintiffs have alleged Defendants acted recklessly (as opposed to negligently), Kentucky law is not applicable in this case, and Plaintiffs do not demonstrate that any jurisdiction at issue in this case recognizes Plaintiffs' theory.  And, there is reason to believe they would not.  *E.g.*, *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 646 (N.D. Cal. 2024) (holding Kentucky cases on this point are not correct statement of California law).

Accordingly, Count VIII will be dismissed.

### 9.  Count IX – Declaratory Judgment

Count IX seeks a declaration that Defendants owed the duties alleged in Counts I through VIII.  (Doc. 93, ¶ 591.)  It also asks the Court to issue an injunction requiring Defendants "to use adequate security consistent with industry standards to protect the data entrusted to them."  (Doc. 93, ¶ 592.)  Declaratory relief and injunctions are not claims for relief; they are remedies.  In addition, to the extent Count IX asks for a declaration of Defendants' common law duties, it only duplicates Counts I through VIII and is therefore redundant.  Accordingly, Count IX is dismissed as a cause of action (without prejudice to Plaintiffs' right to request appropriate relief for any claims upon which they prevail).

### 10. Count X – The Arizona Consumer Fraud Act

Count X asserts a claim under the Arizona Consumer Fraud Act ("ACFA") against Cerner. In arguing for dismissal, Cerner discusses the ACFA only generally, and collectively with Plaintiffs' claims based on statutes from Arkansas, California, Florida, Indiana, Missouri, and New York. (Doc. 161, pp. 46-49.) The discussion treats all the statutes the same without establishing that they are—in fact, Cerner frequently refers to statutes by name without reference to the actual section numbers or the statutory language and discusses little (if any) caselaw from the relevant jurisdictions. Plaintiffs' response to these arguments is similar, in that it is not specific to any of the statutes being discussed. (Doc. 220, pp. 41-47.)[22]

Unsurprisingly, this has made analyzing Cerner's arguments very difficult. The Court's legal analysis cannot consist simply of broad generalizations about state consumer protection statutes, and the Court will not independently evaluate each statute and locate authority to confirm (and more importantly, support) a party's broad characterizations about the contents and requirements of each state's statutes. And while both sides' submissions are insufficient, the consequences fall (for now) on Cerner because it is the party seeking relief from the Court.

The Court shares some of Cerner's concerns, particularly as related to allegations (or the lack thereof) regarding whether it made statements that were heard or read by Plaintiffs, or that otherwise induced or caused any conduct by Plaintiffs. Nonetheless, the Court declines to dismiss

---

[22] The Court acknowledges Cerner's argument that, to the extent these claims are based on misrepresentations, the heightened pleading requirements of Rule 9(b) must be satisfied. But Plaintiffs accurately describe Cerner as having made only "a passing reference to Rule 9(b)" that does not discuss why it was not satisfied. (Doc. 220, p. 46.) Cerner's sole argument with respect to Rule 9(b) is that "[t]he mere allegation that a criminal hacker was able to access Cerner's servers does not plausibly establish that technical and organizational measures designed to prevent that result were not implemented (and certainly not with the specificity that Rule 9(b) requires)." (Doc. 161, p. 48.) Even if this is an argument based on Rule 9, as discussed elsewhere in this Order Plaintiffs do not base their claims on the mere fact that the Data Breach occurred. Some claims against Cerner may not be pleaded in a manner that complies with Rule 9 of the Federal Rules of Civil Procedure, but Rule 9 does not automatically apply to all statutory claims, *e.g.*, *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1076 (8th Cir. 2018). And, as stated, while Cerner mentions Rule 9, it does not discuss it in the context of specific claims. Therefore, the Court cannot determine whether Cerner's reference to Rule 9 justifies dismissal of any of Plaintiffs' statutory claims.

31

Plaintiffs' claim under the ACFA because it has not been presented with an argument, *based on and supported by Arizona law*, for dismissing it.

### 11.  Count XI – The Arkansas Deceptive Trade Practices Act

Plaintiffs are no longer pursuing their claim under the Arkansas Deceptive Trade Practices Act.  (Doc. 220, p. 11 n.2; Doc. 221, p. 32 n. 15.)  Therefore, Count XI will be dismissed.

### 12.  Count XII – The California Consumer Privacy Act

Plaintiffs originally asserted their claim under the California Consumer Privacy Act (the "CCPA") against Cerner and Huntington.  They are no longer pursuing its claim against Cerner, (Doc. 220, p. 11 n.2), so the Court will discuss the claim only as it relates to Huntington.

The CCPA provides a cause of action for

> [a]ny consumer whose nonencrypted and nonredacted personal information . . . is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information . . . .

Cal. Civ. Code § 1798.150(a)(1).  Huntington presents several arguments for dismissing the claim in its entirety, and the Court will focus on one of them.

The Consolidated Complaint does not allege the Data Breach was the result of Huntington's failure "to implement and maintain reasonable security procedures and practices" as required by § 1798.150(a)(1).  Plaintiffs oppose dismissal by pointing to ¶ 368 of the Consolidated Complaint, (*see* Doc. 221, p. 33), but the allegations in that paragraph are insufficient.  Paragraph 368 alleges that "[d]ue to [Cerner's] and the Healthcare Provider Defendants' improper security measures and storage, the attacker accessed and acquired files . . . containing unencrypted Private Information of Plaintiffs and Class members[.]"  There are other similar paragraphs, (*e.g.*, Doc. 93, ¶ 366), but all of them are examples of "group pleading," which is impermissible.  "Because

liability is personal, each defendant is entitled to know what he or she did that is asserted to be wrongful." *In re Crop Inputs Antitrust Litig.*, 172 F.4th 570, 577 (8th Cir. 2026) (quotation omitted; cleaned up); *O'Neal v. Buckner*, 2021 WL 681434, at \*4 (W.D. Mo. Feb. 22, 2021). The Consolidated Complaint does not allege anything specific about Huntington. Moreover, its general allegations simply paraphrase the statute, which (1) does not satisfy *Iqbal* and *Twombly* and (2) is impermissible in the context of a CCPA claim. *E.g.*, *Little Seeds Children's Ctr., Inc. v. Citibank, N.A.*, 815 F. Supp.3d 891, 904 (N.D. Cal. 2025); *Chen v. JPMorgan Chase Bank, N.A.*, 745 F. Supp. 3d 1025, 1033-34 (C.D. Cal. 2024); *Maag v. U.S. Bank, N.A.*, 2021 WL 5605278, at \*2 (S.D. Cal. Apr. 8, 2021).[23] Therefore, Plaintiffs do not allege any facts plausibly demonstrating Huntington failed to adopt reasonable security procedures and practices and Count XII must be dismissed.[24]

### *13. Count XIII – The California Confidentiality of Medical Information Act*

Count XIII asserts Cerner and Huntington violated the California Confidentiality of Medical Information Act, (the "CMIA"). The claim specifies that it is based on § 56.101 of the California Civil Code, (*see* Doc. 93, ¶¶ 632-33), which requires that "[e]very provider of health care, health care service plan, . . . or contractor who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the

---

[23] Plaintiffs' allegation that they do not have sufficient information to be more specific does not excuse them from properly pleading the CCPA claim. Moreover, Plaintiffs allege that the hacker "gained access to legacy Cerner servers that [Cerner] had not yet migrated to its cloud infrastructure," (Doc. 93, ¶ 369), and it seems doubtful that Plaintiffs can allege facts plausibly suggesting Huntington had a role in Cerner's failure to take the precautions necessary to protect data on the legacy server.

[24] The Court need not address Huntington's argument that it is not a "business" within the meaning of § 1798.150(a)(1) because it is a not-for-profit entity. The Court can take judicial notice of records from the California Secretary of State's Office when ruling on a Motion to Dismiss, but Huntington did not identify any such records until it filed its Reply Suggestions. That said, it seems that Huntington is correct.

confidentiality of the information contained therein." Cal. Civ. Code. § 56.101(a).[25] The section

continues by providing a cause of action against any such entity that "negligently creates,

maintains, preserves, stores, abandons, destroys, or disposes of medical information[.]" *Id*.

Defendants initially argued that a claim under § 56.101 requires that the information was viewed

by others, and at the time decisions from California appellate courts agreed. *Vigil v. Muir Med.

Grp. IPA, Inc.*, 84 Cal. App. 5th 197, 213 (2022); *see also Sutter Health v. Superior Court*, 227

Cal. App. 4th 1546, 1557 (2014). However, since the Motions to Dismiss were briefed, the

California Supreme Court issued its opinion in *J.M. v. Illuminate Educ., Inc.*, 2026 WL 1340681

(Cal. May 14, 2026), which the parties addressed with supplemental briefing. In *J.M.*, the court

held that "to establish a failure to preserve the confidentiality of medical information under [§

56.101], a plaintiff does not need to allege that the information was actually viewed by an

unauthorized third party; confidentiality is breached when the information is exposed to a

significant risk of unauthorized access or use." 2026 WL 1340681, at *1; *see also id*. at *7. The

court further explained:

> [T]he primary inquiry . . . is whether the information is exposed to a significant risk
> of unauthorized access or use. This standard is sufficiently flexible to distinguish
> between 'smash-and-grab hardware theft,' where the unauthorized party seeks the
> hardware and not the data it contains, and conventional data breaches, where the
> unauthorized party is targeting the data for illicit use. . . . Circumstances potentially
> relevant to whether information is exposed to a significant risk of unauthorized
> access or use include the form, duration, and extent of the data breach, as well as
> any mitigation efforts by the covered entity.

*Id*. at 9. As Defendants concede, (Doc. 360, p. 2; Doc. 361, p. 1), this is a fact-intensive analysis.

However, the Consolidated Complaint alleges facts that, when viewed in the light most favorable

---

[25] This in contrast to the CMIA's other provision, which states that "[a] provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization," subject to exceptions that are not relevant here. Cal. Civ. Code § 56.10(a). As stated, Count XIII is not based on § 56.10.

to Plaintiffs, are sufficient to meet this standard. The object of the Data Breach was, obviously, data, not any computer hardware. The data was stolen precisely because it can be used for unlawful purposes, as confirmed by the nature of the data and the scope of the Data Breach. The Consolidated Complaint alleges the information was viewed, (Doc. 93, ¶ 636), which is a fair inference from the fact that the information was stolen so that it can be misused. These facts are sufficient to state a claim under *J.M.*'s standard.[26]

Huntington also argues Rebecca Fox's and German Rangel's CMIA claims must be dismissed because they do not live in California. For support, it relies on *Doe v. Kaiser Found. Health Plan, Inc.*, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024), but that aspect of the case was based on a choice of law analysis and not the CMIA's requirements. The court there applied California choice of law rules to determine that "only a California Plaintiff may bring a CMIA claim[.]" *Id*. at *13, 25. But Huntington has not demonstrated *this* Court should apply California choice of law rules, or that the choice of law rule this Court should apply would lead to the same conclusion. Moreover, it is not clear who qualified as a "California Plaintiff" in that case. For these reasons, the Court declines to dismiss Fox's and Rangel's CMIA claims.

### 14.  Count XIV – The California Customer Records Act

Count XIV asserts a claim under the California Customer Records Act, (the "CCRA") against Cerner and Huntington; it specifically cites § 1798.82 of the California Civil Code and does not cite any other provisions of the CCRA. (Doc. 93, ¶¶ 640, 643.) Section 1798.82 requires businesses to provide notices to customers in the event of a data breach. The statute further specifies (1) when the notices must be sent and (2) information that must be included in the notice.

---

[26] Defendants' supplemental briefs addressing *J.M.* raise additional arguments for dismissal of Count XIII that are not based on *J.M.*'s holding and that were not (but could have been) raised in their initial Motions to Dismiss. These arguments are not properly before the Court.

Cerner and Huntington present different arguments for dismissing Count XIV, and the Court will address them separately.

### (a).  Cerner

Cerner initially argued that it cannot be liable by virtue of § 1798.81.5(e)(1) of the California Civil Code.  The Court need not discuss the particulars of this statute because Plaintiffs correctly point out it does not apply to claims under § 1798.82; § 1798.81.5(e)(1) specifies that it applies to "this section"— that is, to § 1798.81.  Therefore, it does not apply to Plaintiffs' claim under § 1798.82.  *See Jackson v. Health Ctr. Partners of S. California*, 2024 WL 3708867, at *6 (S.D. Cal. Aug. 7, 2024).

In its Reply Suggestions, Cerner does not argue otherwise; instead, it raises a new argument: that it cannot be liable under § 1798.82 because Plaintiffs were not Cerner's "customers" as required by that provision.  The Court rejects this argument because it does not ordinarily consider arguments raised for the first time in a party's Reply Suggestions.

### (b).  Huntington

As stated earlier, § 1798.82 imposes an obligation on businesses to notify customers about data breaches.  The statute currently requires that notice must (1) be provided "within 30 calendar days of discovery or notification of the data breach" and (2) contain information explaining what happened, the information that was taken, what the customer can do, and where the customer can find more information.   Cal. Civ. Code. § 1798.82(a)(2), (d).[27]   Huntington argues the

---

[27] The Court further notes that at one time the CCRA only required that notice be provided "in the most expedient time possible and without reasonable delay."  *Razuki v. Caliber Home Loans, Inc.*, 2018 WL 6018361, at *2 (S.D. Cal. Nov. 15, 2018) (quoting § 1798.82(a)).  The CCRA has been amended twice since *Razuki* was decided, once in 2025 and again in 2026.  One of those amendments presumably added the 30-day requirement—but the parties do not discuss which version of the CCRA applies here.

Consolidated Complaint does not allege facts plausibly demonstrating that it violated these provisions, and the Court agrees.

Plaintiffs do not allege (1) when Huntington learned of the Data Breach or (2) when it notified patients/customers. They allege the Data Breach occurred in January 2025 and Cerner learned about it in February 2025. (Doc. 93, ¶¶ 369-70.) They then allege that Cerner notified HCPs at a slow pace; in some instances, HCPs did not find out until September 2025. (*E.g.*, Doc. 93, ¶¶ 371-73.) Plaintiffs allege the dates some HCPs (1) found out about the Data Breach and (2) notified patients, (Doc. 93, ¶¶ 377, 380-83), but the only allegations they make regarding Huntington is that the three Plaintiffs suing it received notice in October 2025. (Doc. 93, ¶¶ 294, 308, 320.) They do not allege when Huntington learned about the Data Breach; thus, Plaintiffs have not alleged facts suggesting Huntington's notice was untimely under the CCRA.

Additionally, the Consolidated Complaint does not allege facts demonstrating Huntington's notices were deficient. Plaintiffs point out they allege that "Defendants' notices . . . fail to include any substantive details about how the Data Breach occurred," (Doc. 93, ¶ 385), but this allegation (1) is another example of group pleading and (2) is so general that it does not plausibly demonstrate the CCRA was violated.[28]

For these reasons, Count XIV is dismissed to the extent that it is asserted against Huntington.

### 15.  *Count XV – The California Unfair Competition Law*

The California Unfair Competition Law (the "UCL") provides a cause of action for any "person who has suffered injury in fact and has lost money or property as a result of . . . unfair

---

[28] With respect to at least one of the other HCPs, the Consolidated Complaint includes links to notices that were placed online (*see* Doc. 93, ¶ 384), but no information about the notice Huntington provided is alleged.

competition." Cal. Bus. & Prof. Code § 17204. "Unfair competition" is defined to "include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising[.]" *Id*. § 17200.

First, Huntington argues that Plaintiffs have not adequately alleged they suffered an injury in fact or lost money as a result of the alleged violation, as required by § 17204. Plaintiffs point out that the California Court of Appeals has held that a plaintiff states a claim under § 17204 if they allege they would not have paid as much (or paid anything at all) if they knew the defendant had not implemented adequate data security measures. "A 'benefit of the bargain' approach to [the UCL] is rooted in the California Supreme Court's recognition that a plaintiff may demonstrate economic injury from unfair competition by establishing he or she surrendered in a transaction more, or acquired in a transaction less, than he or she otherwise would have." *Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 527-28 (2022) (quotation omitted; cleaned up). Huntington provides no reason to reject this conclusion, and the Plaintiffs have alleged facts to support this theory. (*E.g.*, Doc. 93, ¶¶ 291-92, 305-06, 317-18.)[29]

Next, Huntington argues the UCL claim must be dismissed to the extent it is based on "unlawful" conduct. Under the UCL, "[a]n 'unlawful business activity' includes anything that can properly be called a business practice and that at the same time is forbidden by law." *People v. McKale*, 602 P.2d 731, 733 (Cal. 1979) (quotation omitted). "By proscribing 'any unlawful' business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539-40 (Cal. 1999) (quotation omitted). The

---

[29] The Court acknowledges this outcome appears inconsistent with the ruling on Plaintiffs' claim for unjust enrichment. (*See* Part II(B)(5), *supra*.) The difference is that Defendants presented authority that persuaded the Court the argument was not viable with respect to an unjust enrichment claim, but they have not presented such authority with respect to the UCL claim.

Consolidated Complaint specifies that the UCL claim is based on alleged violations of the CCPA and the CMIA, and Huntington argues the UCL claim must be dismissed to the extent it is based on unlawful conduct because Plaintiffs have not stated a claim under the CCPA or the CMIA. They are correct that the CCPA claim is being dismissed (*see* Part II(B)(12), *supra*), but the Court has held the Consolidated Complaint states a claim for violation of the CMIA. (*See* Part II(B)(13), *supra*.) Therefore, the UCL claim based on violation of the CMIA cannot be dismissed.[30]

Finally, Huntington argues the UCL claim must be dismissed to the extent it is based on allegedly "unfair" conduct because the conduct Plaintiffs describe is already encompassed by the "unlawful" prong. Therefore, because claims under the "unlawful" prong should be dismissed, claims under the "unfair" prong must be dismissed as well. For support, Huntington only cites the decision in *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1094 (N.D. Cal. 2022). *Hammerling* did not independently evaluate the law; it simply relied on *Eidmann v. Walgreen Co.*, which held that a UCL claim based on unfairness is not viable unless there is also a claim that is based on unlawful or fraudulent conduct. 522 F. Supp. 3d 634, 647 (N.D. Cal. 2021). These conclusions seem questionable. First, the UCL provides a cause of action for three types of conduct, yet these cases hold one of them is not viable if the facts alleged do not support at least one other and provide no explanation for this conclusion. Second, other federal district courts in California seem to have a different understanding of what constitutes unfairness under the UCL. *E.g.*, *Smith v. Ditech Fin. LLC*, 2018 WL 6431406, at *11 (C.D. Cal. Aug. 27, 2018); *see also* *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865-66 (9th Cir. 2018) (discussing different approaches by

---

[30] While Plaintiffs argued the UCL claim is also based on violations of HIPAA, the Court agrees with Defendants that it does not because (1) Count XV does not refer to HIPAA and (2) by incorporating the provisions of another statute, the UCL requires a plaintiff to plead facts plausibly establishing a violation of the "other" statute—but Plaintiffs do not explain how they have pleaded Huntington violated HIPAA.

California state courts with respect to consumer cases under the UCL); *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169-70 (9th Cir. 2012) (same). Huntington's argument does not provide the Court a reason to adopt its construction of California law.

Regardless, as stated above, the Court concludes the UCL states a claim under the "unlawful" prong. So, even under *Hammerling*, there is no basis for dismissing the UCL's claim under the "unfair conduct" prong.[31]

### 16. Count XVI – The California Privacy Rights Act

Plaintiffs originally asserted their claim under the California Privacy Rights Act (the "CPRA") against Cerner and Huntington. However, they now concede this claim is "properly dismissed." (Doc. 220, p. 47 n.21; Doc. 221, p. 32 n.15.)

### 17. Count XVII – The Florida Deceptive and Unfair Trade Practices Act

Count XVII asserts a claim under the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA") against Baptist Health, Tallahassee Memorial (collectively, the "Florida HCPs), and Cerner. The FDUTPA provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful," Fla. Stat. § 501.204(1), and creates a private right of action for any person "who has suffered a loss as a result of a violation of" the FDUTPA. *Id*. § 501.211(2). "The three elements of a consumer claim under FDUTPA are: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Marrache v. Bacardi U.S.A., Inc.*, 17 F.4th 1084, 1097 (11th Cir. 2021) (quotation omitted).

---

[31] Cerner presents some additional arguments, but the Court rejects most of them for the reasons discussed with respect to its arguments about the Arizona Consumer Fraud Act. (*See* Part II(B)(10), *supra*.) Cerner also argues the UCL does not apply to conduct occurring outside of California, but (1) the parties cite conflicting federal district court opinions yet (2) Cerner does not provide the Court a reason to prefer one holding over the other. Finally, the Court believes it is premature to consider Cerner's arguments regarding whether Plaintiffs can obtain equitable relief under the UCL when they can obtain other relief that is not being challenged.

Defendants argue that Plaintiffs have failed to plead actual damages.[32] The Florida HCPs present a similar argument, contending Plaintiffs are required to allege that the value of the medical services they received were diminished. The Court does not agree that dismissal is warranted. "In the context of FDUTPA, 'actual damages' are defined as the difference in the market value of the . . . service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. Dist. Ct. App. 2010) (quotation omitted); *see also*, *e.g.*, *Calderon v. Sixt Rent a Car, LLC*, 114 F.4th 1190, 1209 (11th Cir. 2024); *Marrache*, 17 F.4th at 1098. Plaintiffs have alleged facts to support this theory. (*E.g.*, Doc. 93, ¶¶ 291-92, 305-06, 317-18.) The Court is not persuaded that the FDUTPA requires a plaintiff to demonstrate diminished value in the good or service that is the focal point of the transaction. While the FDUTPA does not permit recovery of "consequential" damages, *e.g.*, *Schauer v. Morse Operations, Inc.*, 5 So.3d 2, 7 (Fla. Dist. Ct. App. 2009), Defendants do not explain why the damages Plaintiffs complain of—the diminished value of what they paid for, which allegedly included adequate security for their personal information—qualifies as consequential damages.

The Florida HCPs also argue that Plaintiffs did not "plead that the unfair or deceptive practice caused their actual damage" because the Data Breach occurred on Cerner's data servers. (Doc. 163, p. 46.) However, unlike with respect to Plaintiffs' claim under the CCPA, (*see* Part II(B)(12), *supra*), their FDUTPA claim does not depend solely on the Data Breach; it is also based on a series of misrepresentations and omissions. (Doc. 93, ¶ 674(d)-(g).) The fact that the Data Breach occurred on Cerner's servers does not justify dismissal of the entire FDUTPA claim. However, for the reasons stated with respect to the CCPA claim, the Court agrees those aspects of

---

[32] Cerner presents some additional arguments, but the Court rejects them for the reasons discussed with respect to its arguments about the Arizona Consumer Fraud Act. (*See* Part II(B)(10), *supra*.)

the FDUTPA claim alleging the Florida HCPs failed to properly protect the data, (Doc. 93, ¶ 674(a)-(c)), should be dismissed.

Finally, the Florida HCPs contend Count XVII does not satisfy the heightened pleading required by Rule 9 of the Federal Rules of Civil Procedure. Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Satisfying Rule 9(b) requires that a plaintiff plead the "who, what, when, where, and how surrounding the alleged fraud," which must include "the time, place, and content of the defendant's false representations[.]" *OmegaGenesis Corp v. Mayo Found. For Med. Educ. & Research*, 851 F.3d 800, 804 (8th Cir. 2017) (quotation omitted). Rule 9(b) not only applies to common law fraud claims, but also to statutory claims that "sound in fraud" by permitting a cause of action based on a party's misrepresentations or omissions. *E.g.*, *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1076 (8th Cir. 2018). The FDUTPA qualifies as such a statute; thus, if an FDUTPA claim is based on a misrepresentation or an omission, the claim must satisfy Rule 9(b). *Id.*; *see also Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1288-89 (11th Cir. 2025) (applying Rule 9(b) to an FDUTPA claim). However, the Consolidated Complaint does not identify any statements made by the Florida HCPs. Plaintiffs point to paragraphs 39-40, 53-54, 207-08, 353, 356, 358, and 674, (*see* Doc. 221, p. 39), but the only statements from the Florida HCPs are (1) Baptist Health's statement that "[f]ederal law provides for significant privacy protections of health information," and (2) Tallahassee Memorial's statement that it "require[s] each business associate to sign an agreement that obligates the business associate to use appropriate safeguards to protect your health information." (Doc. 93, ¶¶ 353, 356.)[33] Plaintiffs do not allege these statements were false, and their FDUCTPA claim is not based on them. (*See* Doc. 93, ¶¶ 674(d)-(e).)

---

[33] Some paragraphs generally describe statements allegedly made by Baptist Health, (*e.g.*, Doc. 93, ¶ 353), but they do not provide the actual statements; this is insufficient to satisfy Rule 9.

42

Therefore, Count XVII is dismissed to the extent that it is (1) asserted against the Florida HCPs and (2) is based on ¶ 674(a)-(e) of the Consolidated Complaint. The requests to dismiss Count XVII are denied in all other respects.[34]

### 18.  Count XVIII – The Indiana Deceptive Consumer Sales Act

Under the Indiana Deceptive Consumer Sales Act ("IDCSA"), a seller of goods or services "may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction."  Ind. Code § 24-5-0.5-3(a).  There are two types of deceptive acts: "uncured" and "incurable."  *Id*. § 24-5-0.5-2(a)(7)-(8).  Plaintiffs concede they cannot pursue a claim based on an uncured act and are only pursuing a claim based on an allegedly incurable act. (Doc. 221, p. 40 & n.17.)

An "'[i]ncurable deceptive act' [is] a deceptive act done by a [seller] as part of a scheme, artifice, or device with intent to defraud or mislead."  Ind. Code. § 24-5-0.5-2(a)(8).  As the statute specifies, "[i]ntent to defraud or mislead is thus clearly an element of an incurable deceptive act." *McKinney v. State*, 693 N.E.2d 65, 68 (Ind. 1998).  Union Health argues that, to state a claim under the IDCSA, a plaintiff must specify the deceptive act as well as when and how it was committed. (Doc. 169, p. 48.)  Plaintiffs agree and contend they have satisfied these requirements in paragraphs 120-21, 134-35, 148-49, 162-63, 246-47, 274-75, 357, 362, 687, 690, 693, and 695-96.  (*See* Doc. 221, p. 40.)  But as with Plaintiffs' similar argument regarding the FDUTPA, (*see* Part II(B)(17), *supra*), the cited paragraphs do not identify any deceptive statements made by Union Health.  Only one statement is attributed to Union Health; it allegedly told Plaintiffs it "has a responsibility to fully comply with all HIPAA regulations and to ensure the privacy and security of all forms of

---

[34] The Court does not dismiss Count XVII to the extent it is based on omissions, (*see* Doc. 93, ¶ 674(f) – (g))), because the Florida HCPs' Rule 9 argument is solely focused on the allegations of misrepresentation and does not discuss the alleged omissions.

PHI or Private Information and that it had implemented the appropriate administrative, technical, and physical safeguards to protect Private Information." (Doc. 93, ¶ 357.)  Plaintiffs do not allege facts that plausibly make this statement deceptive; as explained earlier in the context of the CCPA claim, (*see* Part II(B)(12), *supra*), there no allegations the HCPs (including Union Health) had anything to do with the implementation of security on Cerner's servers.

But as with the FDUTPA claim, this analysis applies to the IDCSA claim to the extent it is based on affirmative misrepresentations.  It does not apply to the allegations about omissions, (*see* Doc. 93, ¶ 687(f)-(g)), and those aspects of Count XVIII will not be dismissed.[35]

Therefore, Count XVIII is dismissed in part as it pertains to Union Health.[36]

### 19.  *Count XIX – The Missouri Merchandising Practices Act*

The Missouri Merchandising Practices Act, (the "MMPA"), prohibits the use of any "deception, fraud . . . misrepresentation, unfair practice or the concealment, suppression, or mission of any material fact in connection with the sale or advertisement of any" good or service. Mo. Rev. Stat. § 407.020.1.  Mosaic argues the MMPA claim against it must be dismissed pursuant to the Eighth Circuit's decision in *Kuhns v. Scottrade, Inc.*, 868 F.3d 711 (8th Cir. 2017), and the Court agrees.

*Kuhns* involved a data breach at a securities brokerage firm.  The plaintiffs alleged they entered a Brokerage Agreement that specified the measures the defendant would take to protect their private information.  *Kuhns*, 868 F.3d at 714.  After hackers accessed the defendant's database

---

[35] Union Health also argues the IDCSA claim must be dismissed because Plaintiffs did not adequately allege it acted with intent to defraud.  However, fraudulent intent can be inferred from the combination of allegations that Union Health (1) experienced other data breaches and (2) failed to tell customers about their substandard data protection practices.  (Doc. 93, ¶¶ 687(f)-(g), 698.)

[36] The Court does not address Cerner's arguments for the reasons discussed with respect to its arguments about the Arizona Consumer Fraud Act.  (*See* Part II(B)(10), *supra*.)

and extracted the plaintiffs' personal information, the plaintiffs brought suit. They "alleged that a portion of the fees paid in connection with [the] account were used for data management and security," but the defendant "provided deficient cybersecurity in violation of its contractual and other obligations, resulting in a data breach[.]" *Id*. at 715 (quotation omitted). Among the claims asserted was an MMPA claim, which the Eighth Circuit held was not legally viable. It explained that "the alleged unlawful act must occur in relation to a sale of merchandise, and an ascertainable pecuniary loss must occur in relation to the plaintiff's purchase or lease of that merchandise," but in that case the defendant "did not sell data security services; it put data security measures in place to induce customers to voluntarily transfer their PII to [the defendant] to obtain its brokerage services." *Id*. at 719.[37] Similarly, Plaintiffs paid Mosaic for health care services, and the security measures are designed to induce patients to provide their information to procure those services.

Plaintiffs present two arguments for not applying *Kuhns*. First, they suggest that it is no longer good law. They point out that the MMPA has been amended since *Kuhns* was decided, but they do not identify any of the changes or explain how they cast doubt on the Eighth Circuit's decision. They also point to the Missouri Court of Appeals' decision in *J.J. by and through C.W. v. Poplar Bluff Regional Medical Center, LLC*., 675 S.W.3d 259 (Mo. Ct. App. 2023). There, the plaintiff alleged that an employee of his health care provider accessed and disseminated his health information, and asserted claims for, among other things, violation of the MMPA. The question before the court was whether the plaintiff had to file an affidavit of merit, which is generally required under Missouri law when a plaintiff asserts claims of medical malpractice. *Id*. at 262. It was in this context that the Missouri Court of Appeals stated that "[i]n addition to actions in tort, a health care provider's breach of confidentiality arguably can also give rise to liability under the

---

[37] The Eighth Circuit also held the MMPA claim had to be dismissed because it was not pleaded in accordance with Rule 9, but Mosaic does not raise this issue.

MMPA," *id*. at 266, but it did not decide whether an MMPA claim was cognizable. Instead, it addressed the plaintiff's claims collectively to determine whether an affidavit of merit was required when a patient asserts a health care provider breached its duty of confidentiality. *Id*. at 266-67. While the Missouri Supreme Court is the final arbiter of state law (and thus could "overrule" a decision of the Eighth Circuit, *e.g.*, *Kmak v. American Century Cos.*, 873 F.3d 1030, 1033 (8th Cir. 2017)), *J.J.* was decided by the Missouri Court of Appeals, and it did not even decide the issue addressed in *Kuhns*. The Court therefore concludes it must follow *Kuhns*.

Plaintiffs next attempt to distinguish this case from *Kuhns*, but their effort to do so in a meaningful way fails. First, they contend they have not asserted a breach of contract claim—but even if this is true in light of Count III, there is no reason to believe this distinction matters. Second, they assert there is a factual dispute about what they paid for, because they insist "protection of the [information] they were required to submit was part and parcel of the services they purchased." (Doc. 221, p. 43 n.18.) But this demonstrates the *similarity* between this case and *Kuhns*, in that the plaintiffs in that case made the same allegation. *See Kuhns*, 868 F.3d at 715. The Court concludes that *Kuhns* applies to this case and requires that the MMPA claim against Mosaic be dismissed.[38]

### 20. Count XX – The New York General Business Law

Section 349 of the New York General Business Law (the "GBL") declares that "[u]nfair, deceptive, abusive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." "To maintain a cause of action under § 349, a plaintiff must show: (1) that the defendant's conduct is 'consumer-oriented';

---

[38] Cerner did not raise this argument, and the Court declines to independently determine whether or how *Kuhns* applies to the MMPA claim against it. The Court also declines to consider the arguments Cerner raised for the reasons stated with respect to the Arizona Consumer Fraud Act. (*See* Part II(B)(10), *supra*.)

(2) that the defendant is engaged in a 'deceptive act or practice'; and (3) that the plaintiff was injured by this practice." *Wilson v. Northwest Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010); *see also*, *e.g.*, *Denenberg v. Rosen*, 71 A.D.3d 187, 194, 897 N.Y.S.2d 391, 395 (2010). Here, Albany Med and Glens Falls essentially argue Count XX does not satisfy Rule 9(b)'s pleading requirements and the Court agrees; the GBL claim suffers from the same deficiency as the FDUTPA and IDCSA claims. (*See* Parts II(B)(17) and (18), *supra*.)

Plaintiffs cite a decision from the Second Circuit Court of Appeals holding that Rule 9(b) does not apply to GBL claims because the GBL "extends well beyond common-law fraud" and can be violated in ways that do not involve misstatements or omissions. *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005). However, the Eighth Circuit dictates that this Court must apply a different analysis, which leads to a different conclusion. In *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1075 (8th Cir. 2018), the Eighth Circuit acknowledged that some state statues apply to a range of conduct, not all of which sound in fraud. In such a situation, the Court must ascertain "whether plaintiffs' *claim* is grounded in fraud such that Rule 9(b) applies. A claim may sound in fraud even though it is brought under a statute that also prohibits non-fraudulent conduct." *Id*. at 1075 (emphasis in original). Rule 9(b) applies if the claim is based on asserted misrepresentations, *e.g.*, *id*. at 1076, even if the statutory elements do not completely correspond to the elements of common law fraud. *E.g.*, *Hennessey v. Gap, Inc.*, 86 F.4th 823, 827 (8th Cir. 2023) (discussing Rule 9(b)'s application to the MMPA). Thus, the Second Circuit's analysis is inconsistent with the analysis the Court must apply.[39]

---

[39] The Court notes that other courts also do not follow *Pelman* when analyzing GBL claims that sound in fraud. *E.g.*, *Elson v. Black*, 56 F.4th 1002, 1008-09 (5th Cir. 2023); *Keegan v. American Honda Motor Co.*, 838 F. Supp. 2d 929, 957 (C.D. Cal. 2012); *see also Snyder v. Allen*, 2020 WL 1233815, at *4 (S.D.N.Y. Mar. 13, 2020) (applying Rule 9(b) to a GBL claim without referencing *Pelman*).

The Court concludes that Rule 9(b) applies to the GBL claim.  The Court further concludes, consistent with its decisions regarding the FDUTPA and IDCSA claims, that Count XX must be dismissed to the extent that it is asserted against Albany Med and Glens Falls, except with respect to ¶ 722(f)-(g) of the Consolidated Complaint.[40]

### III.  CONCLUSION

For the reasons set forth above, the Motions to Dismiss, (Docs. 160, 162, and 203), are **GRANTED IN PART** and **DENIED IN PART**.[41]  More specifically:

1.  Count I remains.

2.  Count II is dismissed only to the extent it is based on (1) Arizona, Arkansas, California, or Florida law or (2) Missouri law and involves violations of the FTC Act.

3.  Count III is dismissed, except with respect to the claims of Mosaic's and Tallahassee Memorial's patients against Cerner.

4.  Count IV is dismissed to the extent it is asserted against Cerner.

5.  Count V is dismissed.

6.  Count VI is dismissed.

7.  Count VII is dismissed to the extent that it is asserted against Cerner.

8.  Count VIII is dismissed.

---

[40] The Court also declines to consider Cerner's arguments for the reasons stated with respect to the Arizona Consumer Fraud Act.  (*See* Part II(B)(10), *supra*.)

[41] The Court notes that to the extent some claims were not dismissed because legal arguments were not fully developed, (1) those claims' continued presence in the case will not greatly expand the scope of discovery and (2) there will be other opportunities for Defendants to file dispositive motions (*e.g.*, motions for summary judgment) where those claims' viability can be further explored.  The Court further notes that at several junctures Plaintiffs requested permission to amend the Consolidated Complaint to the extent the Court found the factual allegations were inadequate, but they did not propose any amendments.  Such "fleeting references to amendment are insufficient," and "[a]t a minimum [Plaintiffs] should have moved separately to amend the complaint and offered the proposed complaint or the substance of the proposed complaint for the court to consider."  *Permanent Gen. Assurance Corp. v. Spooner*, 175 F.4th 893, 897 (8th Cir. 2026); *see also*, *e.g.*, *In re Crop Inputs Antitrust Litig.*, 172 F.4th 570, 580 (8th Cir. 2026) (citing *In re 2007 Novastar Fin. Inc. Sec. Litig.*, 579 F.3d 878, 884-85 (8th Cir. 2009)); *Pet Quarters, Inc. v. Depository Tr. & Clearing Corp.*, 559 F.3d 772, 782 (8th Cir. 2009); Local Rule 15.1(a)(2).

9. Count IX is dismissed.

10. Count X remains.

11. Count XI is dismissed.

12. Count XII is dismissed.

13. Count XIII remains.

14. Count XIV is dismissed to the extent that it is asserted against Huntington.

15. Count XV remains.

16. Count XVI is dismissed.

17. Count XVII is dismissed to the extent that it is (a) asserted against Baptist Health and Tallahassee Memorial and (b) based on the allegations in ¶ 674(a)-(e) of the Consolidated Complaint.

18. Count XVIII is dismissed to the extent that it is (a) asserted Union Health and (b) based on the allegations in ¶ 687(a)-(e) of the Consolidated Complaint.

19. Count XIX is dismissed to the extent that it is asserted against Mosaic.

20. Count XX is dismissed to the extent that it is asserted (a) against Albany Med and Glens Falls and (b) is based on the allegations in ¶ 722(a)-(e) of the Consolidated Complaint.

21. Counts XXI, XXII, and XXIII are dismissed because the only Plaintiff asserting them dismissed his claims.

**IT IS SO ORDERED.**

/s/ Beth Phillips
BETH PHILLIPS, JUDGE
Date: June 22, 2026                    UNITED STATES DISTRICT COURT