**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| IN RE: CERNER/ORACLE DATA BREACH LITIGATION | Case No. 25-00259-CV-W-BP |
| ALEXANDER LONG and JESSICA UPTHEGROVE, on behalf of themselves and all others similarly situated,<br><br>Plaintiff,<br>v.<br>CERNER CORPORATION d/b/a ORACLE HEALTH and JUPITER MEDICAL CENTER, INC.,<br><br>Defendants. | This filing relates to lead case No. 4:25-cv-00259-BP, and to member case No. 4:26-cv-00205-BCW<br><br>CIVIL ACTION<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED<br><br>*Electronically Filed* |

**SHORT FORM COMPLAINT**
**JUPITER MEDICAL CENTER, INC.**

Plaintiffs Alexander Long and Jessica Upthegrove, individually and on behalf of similarly situated individuals, bring this Short Form Complaint against Defendant Cerner Corporation d/b/a Oracle Health ("Oracle Health") and Defendant Jupiter Medical Center, Inc. ("Jupiter") pursuant to the Court's Interim Scheduling Order (Doc. 59).[1] This case originated in the Western District of Missouri on March 12, 2026 (Case No. 4:26-cv-00205), and was consolidated into the consolidated action on March 18, 2026. Plaintiffs make these allegations based upon personal

[1] The Court's Interim Scheduling Order ordered that "Plaintiffs may utilize Short Form Complaints to add Defendants and Plaintiffs and corresponding claims (either by incorporating specific counts from the Consolidated Complaint or specifying new claims to be added, which may be particularly appropriate if a new Defendant or Plaintiff permits claims under the law of a State not previously addressed in the Consolidated Complaint)." Doc. 59 at 2 ¶ D.2.

knowledge of the facts pertaining to Plaintiffs and on information and belief as to all other matters derived from, among other things, investigation by counsel and review of public documents.

760. Plaintiffs incorporate by this reference the following allegations from the Consolidated Class Action Complaint (Doc. 93):

- Introduction (¶¶ 1–7);
- Jurisdiction and Venue (¶¶ 341–343);
- Factual Allegations (¶¶ 344–458);
- Class Action Allegations (¶¶ 459–471);
- Claims for Relief [2]
  - Count I – Negligence (¶¶ 472–493) as against all Defendants;
  - Count II – Negligence *per se* (¶¶ 494–506) as against all Defendants;
  - Count III – Breach of Third-Party Beneficiary Contract (¶¶ 507–515) as against Defendant Oracle Health; [3]
  - Count IV – Breach of Implied Contract (¶¶ 516–540) as against Defendant Jupiter;
  - Count V – Unjust Enrichment (¶¶ 541–552);[4]
  - Count VII – Breach of Fiduciary Duty (¶¶ 565–577) as against Defendant Jupiter;
  - Count VIII – Invasion of Privacy (¶¶ 578–586);[5]

---

[2] Plaintiffs do not seek reconsideration of the Court's Order on the Motions to Dismiss in the Consolidated Action but incorporate the entirety of Counts II–V and VII–IX in this complaint to preserve any appellate rights. See Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, *In re: Cerner/Oracle Data Breach Litigation*, No. 25-00259-CV-W-BP (W.D. Mo. June 22, 2026), Doc. 394. However, to prevent confusion and duplicative briefing, Plaintiffs have noted which Counts they are incorporating against certain Defendants based on the Court's Order on the Motions to Dismiss, *see* Doc. 394 at 48–49, and noted which Counts have been dismissed in their entirety, *see id.*

[3] Plaintiffs acknowledge the applicable Business Associate Agreement ("BAA") between Oracle Health and the Healthcare Provider Defendant may include language that precludes this claim. But at this juncture, Plaintiffs cannot adequately determine whether the BAAs produced in discovery are controlling or whether there are other applicable agreements that may alter the analysis.

[4] The Court dismissed Count V – Unjust Enrichment in its entirety. *See* Doc. 394 at 24–26.

[5] The Court dismissed Count VIII – Invasion of Privacy in its entirety. *See* Doc. 394 at 29–30.

- Count IX – Declaratory Judgment (¶¶ 587–595);[6]
- Count XVII - Violation of the Florida Deceptive and Unfair Trade Practices Act (¶¶ 670-680) as against all Defendants;
- Count XIX – Violation of the Missouri Merchandising Practices Act ("MMPA") (¶¶ 704–719) as against Defendant Oracle Health;

- Prayer for Relief (Doc. 93 at pp. 156 to 157);
- Demand for Jury Trial (Doc. 93 at p. 157).

## ADDITIONAL ALLEGATIONS

## PARTIES

***Plaintiffs Alexander Long and Jessica Upthegrove, on behalf of the Oracle Health Nationwide Class, the Jupiter Healthcare, Inc. Nationwide Subclass, and the Florida State Subclasses***

761. Plaintiff Alexander Long is a citizen and resident of Florida, who received care from Jupiter Medical Center, Inc., which is one of Oracle Health's healthcare provider clients, prior to the Data Breach. He received a breach notice letter. For purposes of this Short Form Complaint, Plaintiff Long is Healthcare Provider Plaintiff as to Jupiter.

762. Plaintiff Jessica Upthegrove is a citizen and resident of Florida, who received care from Jupiter Medical Center, Inc., which is one of Oracle Health's healthcare provider clients, prior to the Data Breach. She received a breach notice letter. For purposes of this Short Form Complaint, Plaintiff Long Upthegrove is a Healthcare Provider Plaintiff as to Jupiter.

***Defendants***

763. Defendant Cerner Corporation d/b/a Oracle Health, is a Delaware corporation with its principal place of business located at 8779 Hillcrest Road, Kansas City, MO 64138.

764. Defendant Jupiter Medical Center, Inc. is a Florida non-profit corporation with its principal place of business in Jupiter, Florida at 1210 S. Old Dixie Highway, Jupiter, FL 33458.

---

[6] The Court dismissed Count IX – Declaratory Judgement in its entirety. *See* Doc. 394 at 30.

## JURISDICTION AND VENUE

765. The Court also has personal jurisdiction over Jupiter because Jupiter contracted with Defendant Oracle Health—a known Kansas City, MO entity—to manage its patients' electronic health records ("EHR"). Moreover, Jurisdiction is proper under Missouri's long-arm statute. See Mo. Rev. Stat. § 506.500.1(1).

766. Jupiter knowingly and continually sent its patients' Private Information to Oracle Health as its EHR vendor.

767. Jupiter knew or should have known that Oracle Health stored patients' Private Information in Kansas City, Missouri.[7]

768. Jupiter failed to monitor or oversee the maintenance and security of its patients' Private Information which Jupiter sent to Oracle Health to be stored in Kansas City, MO.

769. Due to Jupiter's actions, patients' Private Information was compromised and/or exfiltrated from Oracle Health's systems.

770. Venue is proper as a substantial part of the events or omissions giving rise to the claims occurred in this District and a substantial part of the property that is the subject of this action, Plaintiffs' Private Information, is situated in this District. See 28 USC § 1391(b)(2).

## ADDITIONAL SPECIFIC FACTUAL BACKGROUND

***Defendants Collected and Stored the Private Information of Plaintiffs and the Classes***

771. Jupiter is a healthcare system based in Florida.

---

[7] Elana Gordon, Cerner Fights For Share In Electronic Medical Records Boom, NPR, KCUR, AND KAISER HEALTH NEWS, July 16, 2013, https://www.npr.org/sections/healthshots/2013/07/16/202419168/cerner-fights-for-share-in-electronic-medical-records-boom.

772. Jupiter uses Oracle Health (previously Cerner Corporation), which is a third-party electronic health records vendor used by many healthcare providers.

773. As part of their business, Defendants receive and maintain the personal information of thousands of their current and former patients.

774. In collecting and maintaining the Private Information, Defendants agreed they would safeguard the data in accordance with their internal policies, state law, and federal law.

775. Under state and federal law, businesses like Defendants have duties to protect their current and former patients' Private Information and to notify them about breaches.

***Defendants' Data Breach***

776. According to the letter notifying Plaintiffs of the Data Breach, Oracle Health informed Jupiter that it experienced a cybersecurity event involving unauthorized access to Jupiter's patient information contained on Oracle Health's systems.

777. On November 30, 2025, Jupiter concluded that Plaintiffs' Private Information may have been compromised after Oracle Health informed Jupiter of the Data Breach.

778. The types of Private Information exposed "may have included your name, Social Security number, and information included within patient medical records, such as medical record numbers, doctors, diagnoses, medicines, test results, images, care and treatment information."

779. Currently, the precise number of persons injured is unclear. But the size of the putative class can be ascertained from information in Defendants' custody and control. And upon information and belief, the putative class is over one hundred members—as it includes Jupiter's current and former patients.

780. And yet, Defendants waited until January 14, 2026, before they began notifying the class —more than 350 days after the Data Breach— thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

781. When Defendants did notify Plaintiffs and the Class members of the Data Breach, Defendants acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, providing Plaintiffs with additional information about how to protect themselves.

782. Defendants failed in their duties when their inadequate security practices caused the Data Breach. In other words, Defendants' negligence is evidenced by their failure to prevent the Data Breach and stop cybercriminals from accessing the Private Information. And thus, Defendants caused widespread injury and monetary damages.

783. Defendants have done little to remedy their Data Breach. True, Defendants have offered some victims credit monitoring and identity related services. But such services are wholly insufficient to compensate Plaintiffs and class members for the injuries that Defendants inflicted upon them, including their present and ongoing risk of identity theft and fraud arising from the Data Breach.

784. Because of Defendants' Data Breach, the sensitive Private Information of Plaintiffs and Class members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiffs and Class members.

785. Plaintiffs Alexander Long and Jessica Upthegrove were a patients of Jupiter. As a result, Defendants obtained and maintained Plaintiffs' Private Information.

786. As a result, Plaintiffs were injured by Defendants' Data Breach.

***Plaintiff Alexander Long, on behalf of the Oracle Health Nationwide Class, the Jupiter Medical Center, Inc. Nationwide Subclass, and the Florida State Subclasses***

787. Plaintiff Alexander Long received care from Jupiter, one of Oracle's healthcare provider clients, and received treatment prior to the Data Breach. As a condition of receiving medical services, Plaintiff was required to provide his Private Information to Defendants, including but not limited to his name, Social Security number and medical information, in connection with Oracle's services contracted by his healthcare provider.

788. Plaintiff typically takes measures to protect his Private Information and is very careful about sharing his Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. He stores any documents containing his Private Information in a safe and secure location, and he chooses unique usernames for his passwords and online accounts.

789. In entrusting his Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect his Private Information, including only contracting with third party vendors who would adequately protect his Private Information.

790. Had Plaintiff known that Defendants did not utilize reasonable data security measures, he would not have entrusted his Private Information to Defendants.

791. At the time of the Data Breach, Oracle retained Plaintiff's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

792. Plaintiff received a Data Breach Notice on or around January 14, 2026, notifying him that his Private Information was improperly accessed by unauthorized third parties, including

his name and information included within patient medical records, such as medical record numbers, doctors, treatment, medication, and diagnostic information.

793. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been and will likely imminently be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

794. Plaintiff has been and will be forced to expend considerable time and effort including monitoring his accounts and credit files, changing his online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect himself from identity theft and fraudulent misuse of his Private Information, disclosed as a result of the Data Breach. Plaintiff has already spent approximately 18 hours in total responding to the breach, and will continue spending more time as he monitors accounts and news updates regarding the Data Breach.

795. Indeed, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, evidenced by the fact that he became a victim of identity theft in March of 2025, when someone in Arizona was found falsely working under his name, old address, and Social Security number. Plaintiff spent 10 hours organizing and attending a meeting with Social Security and obtaining an IRS security pin number in efforts to rectify the identity theft.

796. Plaintiff was also recently locked out of banking accounts due to fraudulent activity flagged by his bank. Moreover, Plaintiff has experienced a significant increase in spam texts and phone calls using his Private Information that he has received since the Data Breach. He receives

20-25 spam calls a day, filling his voicemail box every 24 hours. This is approximately ten times the rate of spam calls he received before the Data Breach.

797. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of his Private Information, a form of intangible property that he entrusted to Defendants for the sole purpose of obtaining medical services.

798. Furthermore, Plaintiff has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of his Private Information in the Data Breach. Plaintiff uses the word "enormous" to convey the level of stress the Data Breach has caused. Plaintiff fears for his personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of his Private Information. He set up internet alerts for new Oracle and Jupiter data breach news as a means of staying informed to reduce this anxiety, but the stress is nonetheless heavily affecting his quality of life. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

799. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as his Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

800. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

***Plaintiff Jessica Upthegrove, on behalf of the Oracle Health Nationwide Class, the Jupiter Medical Center, Inc. Nationwide Subclass, and the Florida State Subclasses***

801. Plaintiff Jessica Upthegrove was both a patient and employee of Jupiter, one of Oracle's healthcare provider clients, from 2013 to 2021. As a condition of receiving medical

services and employment, Plaintiff was required to provide her Private Information to Defendants, including but not limited to her name, Social Security number and medical information, in connection with Oracle's services contracted by her healthcare provider.

802. Plaintiff typically takes measures to protect her Private Information and is very careful about sharing her Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured source. She stores any documents containing her Private Information in a safe and secure location, and she chooses unique usernames for her passwords and online accounts.

803. In entrusting her Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private Information, including only contracting with third party vendors who would adequately protect her Private Information.

804. Had Plaintiff known that Defendants did not utilize reasonable data security measures, she would not have entrusted her Private Information to Defendants.

805. At the time of the Data Breach, Oracle retained Plaintiff's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

806. Plaintiff received a Data Breach Notice on or around January 14, 2026, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name and information included within patient medical records, such as medical record numbers, doctors, treatment, medication, and diagnostic information.

807. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages,

including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been and will likely imminently be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

808. Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach. She has already spent considerable time researching the data breach, risks associated with her information being exposed, and signing up for credit monitoring.

809. Indeed, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, evidenced by the significant increase in spam texts and phone calls using her Private Information that she has received since the Data Breach.

810. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

811. Furthermore, Plaintiff has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. Plaintiff fears for her personal financial security and uncertainty over the information disclosed in the Data Breach, especially her privacy rights and medical information, and is experiencing emotional distress over the unauthorized disclosure of her Private Information. The stress and fear of her information being exposed and credit score being affected even make it difficult for her to sleep, thus harming her health. This goes far beyond allegations of mere worry or inconvenience;

it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

812. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be changed. She is also worried about the impact on her family's ability to manage her finances in the case that she becomes unable to.

813. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

814. The classes that Plaintiffs seek to represent are defined as follows:

> **Oracle Health Nationwide Class:**
> All individuals residing in the United States whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, including all those individuals who receive notice of the Data Breach.
>
> **Oracle Health Florida Subclass:**
> All individuals residing in Florida identified whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, including all those individuals who receive notice of the Data Breach.
>
> **Jupiter Medical Center, Inc. Nationwide Subclass:**
> All individuals residing in the United States whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, which information was provided to Oracle Health by Jupiter Medical Center, Inc., including all those individuals who receive notice of the Data Breach.
>
> **Jupiter Medical Center, Inc. Florida Subclass:**
> All individuals residing in Florida whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, which information was provided to Oracle Health by Jupiter Medical Center, Inc., including all those individuals who receive notice of the Data Breach.

Dated: August 28, 2026

Respectfully submitted,

/s/ Norman E. Siegel
Norman E. Siegel
Barrett J. Vahle
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: (816) 714-7112
siegel@stuevesiegel.com
vahle@stuevesiegel.com

Tyler W. Hudson
**WAGSTAFF & CARTMELL**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1177
thudson@wcllp.com

Lynn A. Toops
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenmalad.com

Thomas E. Loeser
**COTCHETT PITRE & MCCARTHY LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272
tloeser@cpmlegal.com

*Co-Lead Interim Class Counsel*

J. Gerard Stranch, IV
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com

*Chair of Plaintiffs' Executive Committee*

Raina Borrelli
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel: (872) 263-1100
raina@straussborrelli.com

Casondra Turner
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 100
Knoxville, TN 37929
Tel: (771) 772-3086
cturner@milberg.com

Leanna Loginov
**SHAMIS & GENTILE**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
lloginov@shamisgentile.com

Jeff Ostrow
**KOPELOWITZ OSTROW, P.A.**
1 West Las Olas Boulevard, 5th Floor
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
ostrow@kolawyers.com

Patrick D. Donathen
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
patrick@lcllp.com

Laura Van Note
**COLE & VAN NOTE**
155 12th Street, Suite 2100
Oakland, CA 94607
Tel: (510) 891-9800
lvn@colevannote.com

James Treglio
**POTTER HANDY LLP**
100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel: (415) 534-1911
jimt@potterhandy.com

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (877) 882-1011
cschaffer@lfsblaw.com

Elena Belov
**ALMEIDA LAW GROUP**
849 W. Webster Avenue
Chicago, IL 60614
Tel: (708) 232-3274
elena@almeidalawgroup.com

Anthony Parkhill
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph Street, Suite 1630
Chicago, IL 60606
Tel: (312) 621-2000
aparkhill@barnowlaw.com

Paul Doolittle
**POULIN WILLEY ANASTOPOULO LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
paul.doolittle@poulinwilley.com

*Plaintiffs' Executive Committee*