**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| IN RE: CERNER/ORACLE DATA BREACH LITIGATION | Case No. 25-00259-CV-W-BP |
| DELISA SHAFFER, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br>CERNER CORPORATION d/b/a ORACLE HEALTH and METHODIST LE BONHEUR HEALTHCARE,<br><br>Defendants. | This filing relates to lead case No. 4:25-cv-00259-BP, and to member case No. 4:26-cv-00231-BP<br><br>CIVIL ACTION<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED<br><br>*Electronically Filed* |

**SHORT FORM COMPLAINT**
**METHODIST LE BONHEUR HEALTHCARE**

Plaintiff Delisa Shaffer, individually and on behalf of similarly situated individuals, brings this Short Form Complaint against Defendant Cerner Corporation d/b/a Oracle Health ("Oracle Health") and Defendant Methodist Le Bonheur Healthcare ("Methodist Le Bonheur" or "Methodist") pursuant to the Court's Interim Scheduling Order (Doc. 59).[1] This case originated in the Western District of Missouri (Case No. 4:26-cv-00231) and was consolidated into the consolidated action on March 23, 2026. Plaintiff makes these allegations based upon personal

[1] The Court's Interim Scheduling Order ordered that "Plaintiffs may utilize Short Form Complaints to add Defendants and Plaintiffs and corresponding claims (either by incorporating specific counts from the Consolidated Complaint or specifying new claims to be added, which may be particularly appropriate if a new Defendant or Plaintiff permits claims under the law of a State not previously addressed in the Consolidated Complaint)." Doc. 59 at 2 ¶ D.2.

knowledge of the facts pertaining to Plaintiff and on information and belief as to all other matters derived from, among other things, investigation by counsel and review of public documents.

760. Plaintiff incorporates by this reference the following allegations from the Consolidated Class Action Complaint (Doc. 93):

- Introduction (¶¶ 1–7);
- Jurisdiction and Venue (¶¶ 341–343);
- Factual Allegations (¶¶ 344–458);
- Class Action Allegations (¶¶ 459–471);
- Claims for Relief [2]
  - Count I – Negligence (¶¶ 472–493) as against all Defendants;
  - Count II – Negligence *per se* (¶¶ 494–506) as against all Defendants;
  - Count III – Breach of Third-Party Beneficiary Contract (¶¶ 507–515) as against Defendant Oracle Health; [3]
  - Count IV – Breach of Implied Contract (¶¶ 516–540) as against Defendant Methodist;
  - Count V – Unjust Enrichment (¶¶ 541–552);[4]
  - Count VII – Breach of Fiduciary Duty (¶¶ 565–577) as against Defendant Methodist;
  - Count VIII – Invasion of Privacy (¶¶ 578–586);[5]

---

[2] Plaintiffs do not seek reconsideration of the Court's Order on the Motions to Dismiss in the Consolidated Action but incorporate the entirety of Counts II–V and VII–IX in this complaint to preserve any appellate rights. See Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, *In re: Cerner/Oracle Data Breach Litigation*, No. 25-00259-CV-W-BP (W.D. Mo. June 22, 2026), Doc. 394. However, to prevent confusion and duplicative briefing, Plaintiffs have noted which Counts they are incorporating against certain Defendants based on the Court's Order on the Motions to Dismiss, *see* Doc. 394 at 48–49, and noted which Counts have been dismissed in their entirety, *see id.*

[3] Plaintiffs acknowledge the applicable Business Associate Agreement ("BAA") between Oracle Health and the Healthcare Provider Defendant may include language that precludes this claim. But at this juncture, Plaintiffs cannot adequately determine whether the BAAs produced in discovery are controlling or whether there are other applicable agreements that may alter the analysis.

[4] The Court dismissed Count V – Unjust Enrichment in its entirety. *See* Doc. 394 at 24–26.

[5] The Court dismissed Count VIII – Invasion of Privacy in its entirety. *See* Doc. 394 at 29–30.

- Count IX – Declaratory Judgment (¶¶ 587–595);[6]
- Count XIX – Violation of the Missouri Merchandising Practices Act ("MMPA") (¶¶ 704–719) as against Defendant Oracle Health;

- Prayer for Relief (Doc. 93 at pp. 156 to 157);
- Demand for Jury Trial (Doc. 93 at p. 157).

## ADDITIONAL ALLEGATIONS

## PARTIES

***Plaintiff Delisa Shaffer, on behalf of the Oracle Health Nationwide Class, Methodist Le Bonheur Healthcare Nationwide Subclass, and the Tennessee Subclasses***

761. Plaintiff Delisa Shaffer is a citizen and resident of Tennessee, who received care from Methodist, which is one of Oracle Health's healthcare provider clients, prior to the Data Breach. Plaintiff Shaffer received a breach notice letter. For purposes of this Short Form Complaint, Plaintiff Delisa Shaffer is a Healthcare Provider Plaintiff as to Methodist.

***Defendants***

762. Defendant Cerner Corporation d/b/a Oracle Health, is a Delaware corporation with its principal place of business located at 8779 Hillcrest Road, Kansas City, MO 64138.

763. Defendant Methodist is a Tennessee nonprofit corporation with its principal place of business at 1211 Union Ave. Ste 700, Memphis, Tennessee 38104.

## JURISDICTION AND VENUE

764. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs, Plaintiff Shaffer and Defendant Oracle Health are citizens of different states, and there are over 100 putative Class Members.

[6] The Court dismissed Count IX – Declaratory Judgement in its entirety. *See* Doc. 394 at 30.

765. This Court has specific personal jurisdiction over Defendant Methodist because:

a. Methodist contracted with Defendant Oracle Health—a known Kansas City, Missouri entity—to manage its patients' EHR;

b. Methodist knowingly and continuously sent its patients' Private Information to Oracle Health, its EHR vendor;

c. Oracle Health stored Methodist's patients' Private Information in Kansas City, Missouri;[7]

d. Due to Methodist's failure to adequately monitor and oversee Oracle Health's cybersecurity, patients' Private Information was compromised and/or exfiltrated from Oracle Health's legacy systems.

e. Moreover, Jurisdiction is proper under Missouri's long-arm statute. See Mo. Rev. Stat. § 506.500.1(1).

766. Due to Methodist's actions, patients' Private Information was compromised and/or exfiltrated from Oracle Health's legacy systems.

## ADDITIONAL SPECIFIC FACTUAL BACKGROUND

***Defendants Collected and Stored the Private Information of Plaintiff and the Classes***

767. Methodist is a healthcare provider based in Tennessee.

768. Methodist uses Oracle Health (previously Cerner Corporation) which is a third-party electronic health records vendor used by many healthcare providers.

769. As part of their business, Defendants receive and maintain the personal information of thousands of their current and former patients.

[7] Elana Gordon, Cerner Fights For Share In Electronic Medical Records Boom, NPR, KCUR, AND KAISER HEALTH NEWS, July 16, 2013, https://www.npr.org/sections/health-shots/2013/07/16/202419168/cerner-fights-forshare-in-electronic-medical-records-boom.

770. In collecting and maintaining the PII/PHI, Defendants agreed they would safeguard the data in accordance with their internal policies, state law, and federal law. After all, Plaintiff and the Class Members themselves took reasonable steps to secure their PII/PHI.

771. Under state and federal law, businesses like Defendants have duties to protect their current and former patients' Private Information and to notify them about breaches.

***Defendants' Data Breach***

772. According to the letter notifying Plaintiff of the Data Breach, on April 11, 2025, Methodist was informed by Oracle Health that, "an unauthorized third party gained access to legacy Cerner systems as early as January 22, 2025 and obtained certain data."

773. On October 7, 2025, Oracle Health provided Methodist with a "list of patients whose information was included in the files involved in the incident."

774. The types of PII/PHI exposed may include "name, Social Security number, and information included within patient medical records, such as medical record numbers, doctors, diagnoses, medicines, test results, images, care and treatment."

775. Currently, the precise number of persons injured is unclear. But the size of the putative class can be ascertained from information in Defendants' custody and control. And upon information and belief, the putative class is over one hundred members—as it includes Methodist's current and former patients.

776. And yet, Defendants waited until December 4, 2025, before they began notifying victims—more than 300 days after the Data Breach began. Thus, Defendants kept the Classes in the dark—thereby depriving the Classes of the opportunity to attempt to mitigate their injuries in a timely manner.

777. When Defendants did notify Plaintiff and the Class members of the Data Breach, Defendants acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, warning Plaintiff and the Class members: "We remind you it is always advisable to be vigilant for incidents of fraud or identity theft by reviewing your account statements and free credit reports for any unauthorized activity."

778. Defendants failed in their duties when their inadequate security practices caused the Data Breach. In other words, Defendants' negligence is evidenced by their failure to prevent the Data Breach and stop cybercriminals from accessing the Private Information. And thus, Defendants caused widespread injury and monetary damages.

779. Defendants have done little to remedy their Data Breach. True, Defendants have offered some victims credit monitoring and identity related services. But such services are wholly insufficient to compensate Plaintiff and class members for the injuries that Defendants inflicted upon them, including their present and ongoing risk of identity theft and fraud arising from the Data Breach.

780. Because of Defendants' Data Breach, the sensitive Private Information of Plaintiff and Class members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class members.

781. Plaintiff Delisa Shaffer was a patient of Methodist. As a result, Defendants obtained and maintained Plaintiff's Private Information.

782. As a result, Plaintiff was injured by Defendants' Data Breach.

***Plaintiff Delisa Shaffer, on behalf of the Oracle Health Nationwide Class, the Oracle Health Tennessee Subclass, Methodist Le Bonheur Healthcare Nationwide Subclass, and Methodist Le Bonheur Healthcare Tennessee Subclass***

783. Plaintiff Delisa Shaffer received care from Methodist, one of Oracle's healthcare provider clients, and received treatment from MedStar prior to the Data Breach. As a condition of receiving medical services, Plaintiff was required to provide her Private Information to Defendants, including but not limited to her name, Social Security number and medical information, in connection with Oracle's services contracted by her healthcare provider.

784. Plaintiff typically takes measures to protect her Private Information and is very careful about sharing her Private Information. Plaintiff does not knowingly transmit unsecured Private Information over the internet or other unsecured sources. She stores any documents containing her Private Information in a safe and secure location, and she chooses unique usernames for her passwords and online accounts.

785. In entrusting her Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private Information, including only contracting with third party vendors who would adequately protect her Private Information.

786. Had Plaintiff known that Defendants did not utilize reasonable data security measures, she would not have entrusted her Private Information to Defendants.

787. At the time of the Data Breach, Oracle retained Plaintiff's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

788. Plaintiff received a Data Breach Notice on or around December 4, 2025, notifying her that her Private Information was improperly accessed by unauthorized third parties, including

her name, Social Security Number, and information included within patient medical records, such as medical record numbers, doctors, treatment, medication, and diagnostic information.

789. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

790. Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach.

791. Indeed, Plaintiff's Private Information that was compromised in the Data Breach has already been misused, evidenced by the significant increase in spam texts and phone calls using her Private Information that she has received since the Data Breach, and she has received notification that her confidential information is on the dark web.

792. Further, as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

793. Furthermore, Plaintiff has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. Plaintiff fears for her personal financial security and uncertainty over the information disclosed in the Data Breach and is experiencing emotional distress over the unauthorized disclosure of her

Private Information. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that is contemplated and addressed by law.

794. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

795. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

796. The classes that Plaintiff seeks to represent are defined as follows:

> **<u>Oracle Health Nationwide Class:</u>**
> All individuals residing in the United States whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, including all those individuals who receive notice of the Data Breach.
>
> **<u>Oracle Health Tennessee Subclass:</u>**
> All individuals residing in Tennessee identified whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, including all those individuals who receive notice of the Data Breach.
>
> **<u>Methodist Nationwide Subclass:</u>**
> All individuals residing in the United States whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, which information was provided to Oracle Health by Methodist including all those individuals who receive notice of the Data Breach.
>
> **<u>Methodist Tennessee Subclass:</u>**
> All individuals residing in Tennessee whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, which information was provided to Oracle Health by Methodist, including all those individuals who receive notice of the Data Breach.

## ADDITIONAL CAUSES OF ACTION

**Tennessee Identity Theft Deterrence Act**
**Tenn. Code Ann. §§ 47-18-2107, *et seq.***
**(On Behalf of Plaintiff and the Classes)**

797. This claim is brought: (1) by Plaintiff against Oracle Health, on behalf of the Oracle Health Nationwide Class, or (2) alternatively by Plaintiff under Tennessee Law on behalf of the Oracle Health State Subclass; (3) by Plaintiff against Methodist Le Bonheur Healthcare, on behalf of the Methodist Le Bonheur Healthcare Nationwide Subclass; (4) by Plaintiff against Methodist Le Bonheur Healthcare, under Tennessee Law on behalf of the respective Plaintiff and Methodist Le Bonheur Healthcare Subclass.

798. Plaintiff restates the allegations in Paragraphs 760 through 796 above, and the incorporated sections of the Consolidated Class Action Complaint (Doc. 93), as if fully set forth herein.

799. Defendants are businesses that own or license computerized data that include personal information as defined by Tenn. Code Ann. § 47-18-2107(a)(4).

800. Plaintiff's and Tennessee Subclass Members' personal information include PII as covered under Tenn. Code Ann. § 47-18-2107(a)(4)(A).

801. Defendants are required to accurately notify Plaintiff and the Tennessee Subclass Members following discovery or notification of a breach of their data security systems in which unencrypted PII was, or is reasonably believed to have been, acquired by an unauthorized person, no later than forty-five (45) days from the discovery or notification of the breach of system security unless a longer period of time is required due to the legitimate needs of law enforcement, under Tenn. Code Ann. § 47-18-2107(b).

802. Because Defendants discovered a breach of its security systems in which unencrypted PII was, or is reasonably believed to have been, acquired by an unauthorized person(s), Defendants had an obligation to disclose the Data Breach in a timely and accurate fashion as mandated by Tenn. Code Ann. § 47-18-2107(b).

803. By failing to disclose the Data Breach in a timely and accurate manner, Defendants violated Tenn. Code Ann. § 47-18-2107(b).

804. As a direct and proximate result of Defendants' violations of Tenn. Code Ann. § 47-18-2107(b), Plaintiff and Tennessee Subclass members suffered damages, as described above.

805. Plaintiff and Tennessee Subclass members seek relief under Tenn. Code Ann. §§ 47-18-2107(h), 47-18-2104(d), and 47-18-2104(f), including actual damages, injunctive relief, and treble damages.

**<u>Tennessee Consumer Protection Act</u>**
**Tenn. Code Ann. § 47-18-101, *et seq*.**
**(On Behalf of Plaintiff and the Classes)**

806. This claim is brought: (1) by Plaintiff against Oracle Health, on behalf of the Oracle Health Nationwide Class, or alternatively, (2) by Plaintiff against Oracle Health, on behalf of the Oracle Health State Subclass; (3) by Plaintiff against Methodist Le Bonheur, on behalf of the Methodist Le Bonheur Healthcare Nationwide Subclass; (4) by Plaintiff against Methodist Le Bonheur, on behalf of the Methodist Le Bonheur Healthcare Tennessee Subclass.

807. Plaintiff and the Classes restate the allegations in Paragraphs 760 through 796 above, as if fully set forth herein.

808. Plaintiff brings this claim, individually and on behalf of the Tennessee Subclass, against Defendants for violations of the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, et seq.

809. Defendants are "persons" as defined by Tenn. Code Ann. § 47-18-103(18).

810. Plaintiff and Tennessee Subclass members are "consumers" as defined by Tenn. Code Ann. § 47-18-103(6).

811. Defendants advertised and sold "goods" and/or "services" in "consumer transaction[s]," as defined by Tenn. Code Ann. § 47-18-103(12), (23), and (24).

812. Defendants advertised, offered, and/or sold goods or services in Tennessee and engaged in trade or commerce directly or indirectly affecting the people of Tennessee, as defined by Tenn. Code Ann. § 47-18-103(12), (23), and (24). And Defendants' unfair and/or deceptive acts or practices affected the conduct of trade or commerce under Tenn. Code Ann. § 47-18-104.

813. Defendants' deceptive, unfair, and unlawful trade acts or practices include:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and the Tennessee Subclass Members' PII/PHI, which was a direct and proximate cause of the Data Breach;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and the Tennessee Subclass Members' PII/PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1320d, which was a direct and proximate cause of the Data Breach;

d. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and the Tennessee Subclass

Members' PII/PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1320d, the Tennessee Consumer Protection Act.

e. Failing to timely and adequately notify Plaintiff and the Tennessee Class Members of the Breach;

f. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and the Tennessee Subclass Members' PII/PHI; and

g. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and the Tennessee Subclass Members' PII/PHI, including duties imposed by the FTC Act, 15 U.S.C. § 45, HIPAA, 42 U.S.C. § 1320d and the Tennessee Consumer Protection Act.

814. Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data security and ability to protect the confidentiality of consumers' PII/PHI.

815. Defendants intended to mislead Plaintiff and Tennessee Subclass Members and induce them to rely on its misrepresentations and omissions. Plaintiff and Tennessee Subclass Members reasonably relied on Defendants to advise them if their data security and data storage systems were not adequately secure to protect their PII/PHI, the truth of which they could not otherwise have discovered.

816. The above unfair and deceptive practices and acts by Defendants were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury that these consumers

could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

817. Defendants acted intentionally, knowingly, and maliciously to violate Tennessee's Consumer Fraud Act, and recklessly disregarded Plaintiff and the Tennessee Subclass Members' rights.

818. As a direct and proximate result of Defendants' unfair, unlawful, and deceptive acts and practices, Plaintiff and the Tennessee Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII/PHI.

819. Plaintiff and the Tennessee Subclass Members seek all monetary and non- monetary relief allowed by law, including damages, restitution, punitive damages, injunctive relief, and reasonable attorneys' fees and costs.

Dated: August 28, 2026

Respectfully submitted,

*/s/ Norman E. Siegel*

Norman E. Siegel
Barrett J. Vahle
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: (816) 714-7112
siegel@stuevesiegel.com
vahle@stuevesiegel.com

Tyler W. Hudson
**WAGSTAFF & CARTMELL**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112

Tel: (816) 701-1177
thudson@wcllp.com

Lynn A. Toops
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenmalad.com

Thomas E. Loeser
**COTCHETT PITRE & MCCARTHY LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272
tloeser@cpmlegal.com

*Co-Lead Interim Class Counsel*

J. Gerard Stranch, IV
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com

*Chair of Plaintiffs' Executive Committee*

Raina Borrelli
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel: (872) 263-1100
raina@straussborrelli.com

Casondra Turner
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 100
Knoxville, TN 37929
Tel: (771) 772-3086
cturner@milberg.com

Leanna Loginov
**SHAMIS & GENTILE**

14 NE 1st Avenue, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
lloginov@shamisgentile.com

Jeff Ostrow
**KOPELOWITZ OSTROW, P.A.**
1 West Las Olas Boulevard, 5th Floor
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
ostrow@kolawyers.com

Patrick D. Donathen
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
patrick@lcllp.com

Laura Van Note
**COLE & VAN NOTE**
155 12th Street, Suite 2100
Oakland, CA 94607
Tel: (510) 891-9800
lvn@colevannote.com

James Treglio
**POTTER HANDY LLP**
100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel: (415) 534-1911
jimt@potterhandy.com

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (877) 882-1011
cschaffer@lfsblaw.com

Elena Belov
**ALMEIDA LAW GROUP**
849 W. Webster Avenue
Chicago, IL 60614
Tel: (708) 232-3274
elena@almeidalawgroup.com

Anthony Parkhill
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph Street, Suite 1630
Chicago, IL 60606
Tel: (312) 621-2000
aparkhill@barnowlaw.com

Paul Doolittle
**POULIN WILLEY ANASTOPOULO LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
paul.doolittle@poulinwilley.com

*Plaintiffs' Executive Committee*