**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| IN RE: CERNER/ORACLE DATA BREACH LITIGATION | Case No. 25-00259-CV-W-BP |
|---|---|
| DORA PETERSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br>CERNER CORPORATION d/b/a ORACLE HEALTH and HAMILTON MEDICAL CENTER INC.,<br><br>Defendants. | This filing relates to lead case No. 4:25-cv-00259-BP, and to member case No. 4:26-cv-00033<br><br>CIVIL ACTION<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED<br><br>*Electronically Filed* |

**SHORT FORM COMPLAINT
HAMILTON MEDICAL CENTER INC.**

Plaintiff, Dora Peterson, individually and on behalf of similarly situated individuals, brings this Short Form Complaint against Defendant Cerner Corporation d/b/a Oracle Health ("Oracle Health") and Defendant Hamilton Medical Center Inc., ("HMC") pursuant to the Court's Interim Scheduling Order (Doc. 59).[1] This case originated in the Northern District of Georgia (Case No. 4:25-cv-00320), was transferred to the Western District of Missouri on January 14, 2026 (Case No. 4:26-cv-00033), and was consolidated into the consolidated action on January 15, 2026. Plaintiff makes these allegations based upon personal knowledge of the facts pertaining to Plaintiff

[1] The Court's Interim Scheduling Order ordered that "Plaintiffs may utilize Short Form Complaints to add Defendants and Plaintiffs and corresponding claims (either by incorporating specific counts from the Consolidated Complaint or specifying new claims to be added, which may be particularly appropriate if a new Defendant or Plaintiff permits claims under the law of a State not previously addressed in the Consolidated Complaint)." Doc. 59 at 2 ¶ D.2.

and on information and belief as to all other matters derived from, among other things, investigation by counsel and review of public documents.

760. Plaintiff incorporates by this reference the following allegations from the Consolidated Class Action Complaint (Doc. 93):

- Introduction (¶¶ 1–7);
- Jurisdiction and Venue (¶¶ 341–343);
- Factual Allegations (¶¶ 344–458);
- Class Action Allegations (¶¶ 459–471);
- Claims for Relief [2]
  - Count I – Negligence (¶¶ 472–493) as against all Defendants;
  - Count II – Negligence *per se* (¶¶ 494–506) as against all Defendants;
  - Count III – Breach of Third-Party Beneficiary Contract (¶¶ 507–515) as against Defendant Oracle Health; [3]
  - Count IV – Breach of Implied Contract (¶¶ 516–540) as against Defendant HMC;
  - Count V – Unjust Enrichment (¶¶ 541–552);[4]
  - Count VII – Breach of Fiduciary Duty (¶¶ 565–577) as against Defendant HMC;
  - Count VIII – Invasion of Privacy (¶¶ 578–586);[5]

[2] Plaintiffs do not seek reconsideration of the Court's Order on the Motions to Dismiss in the Consolidated Action but incorporate the entirety of Counts II–V and VII–IX in this complaint to preserve any appellate rights. See Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, *In re: Cerner/Oracle Data Breach Litigation*, No. 25-00259-CV-W-BP (W.D. Mo. June 22, 2026), Doc. 394. However, to prevent confusion and duplicative briefing, Plaintiffs have noted which Counts they are incorporating against certain Defendants based on the Court's Order on the Motions to Dismiss, *see* Doc. 394 at 48–49, and noted which Counts have been dismissed in their entirety, *see id.*

[3] Plaintiffs acknowledge the applicable Business Associate Agreement ("BAA") between Oracle Health and the Healthcare Provider Defendant may include language that precludes this claim. But at this juncture, Plaintiffs cannot adequately determine whether the BAAs produced in discovery are controlling or whether there are other applicable agreements that may alter the analysis.

[4] The Court dismissed Count V – Unjust Enrichment in its entirety. *See* Doc. 394 at 24–26.

[5] The Court dismissed Count VIII – Invasion of Privacy in its entirety. *See* Doc. 394 at 29–30.

- Count IX – Declaratory Judgment (¶¶ 587–595);[6]
  - Count XIX – Violation of the Missouri Merchandising Practices Act ("MMPA") (¶¶ 704–719) as against Defendant Oracle Health;
- Prayer for Relief (Doc. 93 at pp. 156 to 157);
- Demand for Jury Trial (Doc. 93 at p. 157).

## ADDITIONAL ALLEGATIONS

## PARTIES

***Plaintiff Dora Peterson, on behalf of the Oracle Health Nationwide Class, the Hamilton Medical Center Inc., Nationwide Subclass, and the Georgia State Subclasses***

761. Plaintiff, Dora Peterson, is a citizen and resident of Georgia, who received care from HMC which is one of Oracle Health's healthcare provider clients, prior to the Data Breach. For purposes of this Short Form Complaint, Plaintiff Dora Peterson is a Healthcare Provider Plaintiff as to HMC.

***Defendants***

762. Defendant Cerner Corporation d/b/a Oracle Health, is a Delaware corporation with its principal place of business located at 8779 Hillcrest Road, Kansas City, MO 64138.

763. Defendant HMC is a Georgia nonprofit corporation, with its principal place of business at 1200 Memorial Drive, Dalton, Georgia, 30720.

## ADDITIONAL SPECIFIC FACTUAL BACKGROUND

***Defendants Collected and Stored the Private Information of Plaintiff and the Classes***

764. HMC chose to allow Cerner access and control over its patients' highly sensitive personal and health information.

[6] The Court dismissed Count IX – Declaratory Judgement in its entirety. *See* Doc. 394 at 30.

765. On information and belief, the Data Breach occurred as early as January 22, 2025. Following an internal investigation, on information and belief, Defendants learned the Data Breach resulted in unauthorized disclosure, exfiltration, and theft of current and former patients' personally identifying information ("PII") including names, Social Security number as we as well as personal health information, ("PHI"), including patient medical records, medical record numbers, doctors, diagnosis, medicines, test results, images, care, and treatment. Plaintiff refers to both PII and PHI collectively as "Private Information."

766. As of November 6, 2025–almost eleven months after the Data Breach first occurred–Defendants have not yet begun notifying Class Members about the Data Breach. However, several news outlets have reported that HMC was impacted by Cerner's Data Breach.[7]

767. Defendants continue to fail to promptly inform Class Members even though Plaintiff and thousands of Class Members had their most sensitive personal information accessed, exfiltrated, and stolen, causing them to suffer ascertainable losses in the form of the loss of the benefit of their bargain and the value of their time reasonably incurred to remedy or mitigate the effects of the attack.

768. Defendants continue to obfuscate the details of the breach as well as the nature of the breach and the threat it posted—refusing to tell patients when the Breach occurred, how many people were impacted, how the breach happened, and why Defendants have not yet begun formal notification to victims that hackers had gained access to highly private Private Information.

[7] *Cerner data breach may affect Hamilton patients*, Chatsworth Times, (Oct. 31, 2025), https://www.daily-tribune.com/chatsworth_times/news/local/cerner-data-breach-may-affect-hamilton-patients/article_ea4c9801-242f-531c-a1dd-5cf222540324.html

769. Defendants' failure to timely detect and report the Data Breach made patients vulnerable to identity theft without any warnings to monitor their financial accounts or credit reports to prevent unauthorized use of their Private Information.

770. Defendants knew or should have known that each victim of the Data Breach deserved prompt and efficient notice of the Data Breach and assistance in mitigating the effects of PII and PHI misuse.

771. In failing to adequately protect Plaintiff's and the Classes' Private Information, failing to adequately notify them about the breach, and by obfuscating the nature of the breach, Defendants violated state and federal law and harmed an unknown number of its current and former patients and prospective patients.

772. Plaintiff and members of the proposed Classes are victims of Defendants' negligence and inadequate cyber security measures. Specifically, Plaintiff and members of the proposed Class trusted Defendants with their Private Information. But Defendants betrayed that trust. Defendants failed to properly use up-to-date security practices to prevent the Data Breach.

773. Plaintiff was a patient of Defendant HMC and Data Breach victim.

774. HMC a hospital that claims that "after a century of serving communities in Northwest Georgia with exceptional care, Hamilton Medical Center provides the experience and the pursuit of better health for you and your loved ones."[8] HMC boasts a total revenue of $522 million.[9]

---

[8] Hamilton Medical Center, Vitruvian Health, https://vitruvianhealth.com/locations/hamilton-medical-center/ (last visited Aug. 28, 2026).

[9] Nonprofit Explorer, Hamilton Medical Center Inc., ProPublica, https://projects.propublica.org/nonprofits/organizations/581519911 (last visited Aug. 28, 2026).

775. As part of its business, HMC receives and maintains the Private Information of thousands of current and former patients. In doing so, HMC implicitly promises to safeguard their Private Information.

776. In collecting and maintaining its current and former patients' Private Information, HMC agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiff and Class Members themselves took reasonable steps to secure their Private Information.

777. Indeed, HMC acknowledges that "Our duties as a health care provider to protect your medical information" and that "Affected individuals have the right to receive written notice following a breach of their unsecured protected health information."[10]

778. Despite recognizing its duty to do so, on information and belief, HMC has not implemented reasonably cybersecurity safeguards or policies to protect its patients' Private Information or supervised its IT or data security agents and employees, including Cerner, to prevent, detect, and stop breaches of its systems. As a result, HMC left significant vulnerabilities in its storage of Plaintiff's and the Class's Private Information for cybercriminals to exploit and gain access to patients' Private Information.

***Defendants' Data Breach***

779. Plaintiff is a HMC patient. As a condition of treatment with HMC, Plaintiff provided it with her Private Information. HMC used that Private Information to facilitate its treatment of Plaintiff and required Plaintiff to provide that Private Information to obtain treatment and care.

---

[10] Notice of Privacy Practices, Vitruvian Health, https://vitruvianhealth.com/patients-visitors/patient-resources/notice-privacy-practices/ (last visited Aug. 28, 2026).

780. On information and belief, HMC provided Cerner with Plaintiff's Private Information. Thus, Cerner was granted access to and custody of Plaintiff's Private Information.

781. On information and belief, Defendants collect and maintain patients' Private Information in their computer systems.

782. In collecting and maintaining the Private Information, Defendants implicitly agree that they will safeguard the data using reasonable means according to their internal policies and federal law.

783. On information and belief, Cerner informed HMC on October 7, 2025, that HMC current and former patients may have been affected by the Cerner Data Breach, which occurred as early as January 22, 2025.

784. Due to intentionally obfuscating language and a lack of formal notification, it is unclear how long it took Defendants to discover that they had been subject to a breach and how long cybercriminals had unfettered access to Plaintiff's and the Class's most sensitive information.

785. In other words, Defendants' cyber and data security systems were completely inadequate and allowed cybercriminals to obtain files containing a treasure trove of thousands of its patients' highly private Private Information. HMC knew or should have known that granting Cerner access to Plaintiff's Private Information would result in a Data Breach given Cerner's inadequate cybersecurity practice.

786. As of November 6, 2025–almost eleven (11) months after the Data Breach first occurred– Defendants have not yet begun notifying Class Members about the Data Breach.

787. Despite their duties and alleged commitments to safeguard Private Information, Defendants do not in fact follow industry standard practices in securing consumers' Private Information, as evidenced by the Data Breach. Cerner itself has not sent Data Breach notices to

Plaintiff and Class Members. In fact, it was reported that Cerner is telling hospitals, including HMC, that it will not be notifying patients directly and that it is the hospitals' responsibility to determine if the stolen data violates HIPAA laws and whether they are required to send notifications.[11]

***Plaintiff Dora Peterson, on behalf of the Oracle Health Nationwide Class, the Hamilton Medical Center Inc., Nationwide Subclass, and the Georgia State Subclasses***

788. Plaintiff is an HMC patient. As a condition of treatment with HMC, Plaintiff provided it with her Private Information including but not limited to her name, Social Security number, and medical information including doctors, diagnosis, medicines, test results, images, care, treatment, and medical record numbers. HMC used that Private Information to facilitate its treatment of Plaintiff and required Plaintiff to provide that Private Information to obtain treatment and care.

789. On information and belief, HMC shared Plaintiff's Private Information with Cerner as part of its provision of services to HMC. In other words, HMC provided Cerner with Plaintiff's Private Information.

790. Plaintiff provided her Private Information to Defendants and trusted that they would use reasonable measures to protect it according to their internal policies and state and federal law.

791. Defendants deprived Plaintiff of the earliest opportunity to guard herself against the Data Breach's effects by continuing to fail to notify her promptly.

792. As a result of the Breach, Plaintiff spent time dealing with the consequences of the Data Breach, which includes time spent verifying the legitimacy of the Data Breach, self-

---

[11] See Bleeping Computer, Oracle Health breach compromises patient data at US hospitals https://www.bleepingcomputer.com/news/security/oracle-health-breachcompromises-patient-data-at-us-hospitals/ (last visited April 17, 2025).

monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time has been lost forever and cannot be recaptured.

793. Plaintiff has and will spend considerable time and effort monitoring her accounts to protect herself from additional identity theft. Plaintiff fears for her personal financial security and uncertainty over what Private Information was exposed in the Data Breach.

794. Plaintiff has and is experiencing feelings of anxiety, sleep disruption, stress, fear, and frustration because of the Data Breach. This goes far beyond allegations of mere worry or inconvenience; it is exactly the sort of injury and harm to a Data Breach victim that the law contemplates and addresses.

795. Plaintiff suffered actual injury in the form of damages to and diminution in the value of Plaintiff's Private Information—a form of intangible property that Plaintiff entrusted to Defendants, which was compromised in and as a result of the Data Breach.

796. Plaintiff has suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of unauthorized third parties and possibly criminals.

797. In fact, following the Data Breach, Plaintiff has experienced numerous fraudulent charges on her Trust Bank debit card, totally approximately $500.00 that she does not recognize and certainly did not authorize. As a result of these fraudulent charges, Plaintiff has hard to close her old card and open a new one. Plaintiff is in the process of getting all of these fraud charges disputed and reimbursed. These charges demonstrate that Plaintiff's information was stolen in the Data Breach has been placed in the hands of cybercriminals.

798. Also following the Data Breach, Plaintiff has been experiencing a sharp increase in spam calls and texts, further evidencing that her Private Information is now in the hands of cyber criminals.

799. Once an individual's Private Information is for sale and access on the dark web, as Plaintiff's Private Information is here as a result of the Breach, cybercriminals are able to use the stolen and compromised to gather and steal even more information.16 On information and belief, the spam call and fraudulent charges Plaintiff experienced is a result of the Data Breach.

800. Plaintiff has a continuing interest in ensuring that her Private Information, which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

801. The classes that Plaintiff seeks to represent are defined as follows:

> **Oracle Health Nationwide Class:**
> All individuals residing in the United States whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, including all those individuals who receive notice of the Data Breach.
>
> **Oracle Health Georgia Subclass:**
> All individuals residing in Georgia identified in the applicable Count whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, including all those individuals who receive notice of the Data Breach.
>
> **Hamilton Medical Center Inc., Nationwide Subclass:**
> All individuals residing in the United States whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, which information was provided to Oracle Health by Hamilton Medical Center Inc., including all those individuals who receive notice of the Data Breach.
>
> **Hamilton Medical Center Inc., Georgia Subclass:**
> All individuals residing in Georgia whose Private Information was compromised in the Oracle Health Data Breach, which occurred on

or around January 22, 2025, which information was provided to Oracle Health by Hamilton Medical Center Inc., including all those individuals who receive notice of the Data Breach.

Dated: August 28, 2026

Respectfully submitted,

*/s/ Norman E. Siegel*
Norman E. Siegel
Barrett J. Vahle
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: (816) 714-7112
siegel@stuevesiegel.com
vahle@stuevesiegel.com

Tyler W. Hudson
**WAGSTAFF & CARTMELL**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1177
thudson@wcllp.com
Lynn A. Toops
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenmalad.com

Thomas E. Loeser
**COTCHETT PITRE & MCCARTHY LLP**
1809 7th Avenue, Suite 1610
Seattle, WA 98101
Tel: (206) 802-1272
tloeser@cpmlegal.com

*Co-Lead Interim Class Counsel*

J. Gerard Stranch, IV
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com

*Chair of Plaintiffs' Executive Committee*

Raina Borrelli
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel: (872) 263-1100
raina@straussborrelli.com

Casondra Turner
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 100
Knoxville, TN 37929
Tel: (771) 772-3086
cturner@milberg.com

Leanna Loginov
**SHAMIS & GENTILE**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
lloginov@shamisgentile.com

Jeff Ostrow
**KOPELOWITZ OSTROW, P.A.**
1 West Las Olas Boulevard, 5th Floor
Fort Lauderdale, FL 33301
Tel: (954) 525-4100
ostrow@kolawyers.com

Patrick D. Donathen
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
patrick@lcllp.com

Laura Van Note
**COLE & VAN NOTE**
155 12th Street, Suite 2100
Oakland, CA 94607
Tel: (510) 891-9800
lvn@colevannote.com
James Treglio
**POTTER HANDY LLP**

100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel: (415) 534-1911
jimt@potterhandy.com

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (877) 882-1011
cschaffer@lfsblaw.com

Elena Belov
**ALMEIDA LAW GROUP**
849 W. Webster Avenue
Chicago, IL 60614
Tel: (708) 232-3274
elena@almeidalawgroup.com

Anthony Parkhill
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph Street, Suite 1630
Chicago, IL 60606
Tel: (312) 621-2000
aparkhill@barnowlaw.com

Paul Doolittle
**POULIN WILLEY ANASTOPOULO LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
paul.doolittle@poulinwilley.com

*Plaintiffs' Executive Committee*