**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| IN RE: CERNER/ORACLE DATA BREACH LITIGATION | Case No. 25-00259-CV-W-BP |
| JACQUELINE SMITH, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br>v.<br><br>CERNER CORPORATION d/b/a ORACLE HEALTH, CHARLOTTE MECKLENBURG HOSPITAL AUTHORITY d/b/a ATRIUM HEALTH, ADVOCATE HEALTH INC., ATRIUM HEALTH, INC., ADVOCATE AURORA HEALTH, INC., and NAVICENT HEALTH, INC.,<br><br>Defendants. | This filing relates to lead case No. 4:25-cv-00259-BP, and to member case No. 4:26-0690<br><br>CIVIL ACTION<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED<br><br>*Electronically Filed* |

**SHORT FORM COMPLAINT**
**ATRIUM HEALTH**

Plaintiff, Jacqueline Smith, individually and on behalf of similarly situated individuals, brings this Short Form Complaint against Defendants Cerner Corporation d/b/a Oracle Health ("Oracle Health"), Charlotte Mecklenburg Hospital Authority d/b/a Atrium Health,[1] Advocate Health, Inc., Atrium Health, Inc., Advocate Aurora Health, Inc., and Navicent Health, Inc.

[1] The originating complaint named Atrium Health, Inc. *See Smith v. Cerner et al.*, No. 4:26-0690-BCW (W.D. Mo.). However, Atrium Health is a trade name for Charlotte Mecklenburg Hospital Authority d/b/a Atrium Health. *See* Assumed Name: Atrium Health, *N.C. Sec'y of State Business Search*, https://sosnc.gov/Online_Services/Assumed_Name/Search_Submit (last visited Sept. 3, 2026). Plaintiffs' counsel will continue to work with Defendants' counsel to determine the correct entities to name in this suit.

(collectively, "Defendants") pursuant to the Court's Interim Scheduling Order (Doc. 59).[2] This case originated in the Western District of Missouri (Case No. 4:26-cv-00690) and was consolidated into the consolidated action on August 20, 2026 (Doc. 436). Plaintiff makes these allegations based upon personal knowledge of the facts pertaining to Plaintiff and on information and belief as to all other matters derived from, among other things, investigation by counsel and review of public documents.

760. Plaintiff incorporates by this reference the following allegations from the Consolidated Class Action Complaint (Doc. 93):

- Introduction (¶¶ 1–7);
- Jurisdiction and Venue (¶¶ 341–43);
- Factual Allegations (¶¶ 344–458);
- Class Action Allegations (¶¶ 459–71);
- Claims for Relief [3]
  - Count I – Negligence (¶¶ 472–493) as against all Defendants;
  - Count II – Negligence *per se* (¶¶ 494–506) as against all Defendants;
  - Count III – Breach of Third-Party Beneficiary Contract (¶¶ 507–515) as against Defendant Oracle Health; [4]

[2] The Court's Interim Scheduling Order ordered that "Plaintiffs may utilize Short Form Complaints to add Defendants and Plaintiffs and corresponding claims (either by incorporating specific counts from the Consolidated Complaint or specifying new claims to be added, which may be particularly appropriate if a new Defendant or Plaintiff permits claims under the law of a State not previously addressed in the Consolidated Complaint)." (Doc. 59 ¶ D.2.)

[3] Plaintiffs do not seek reconsideration of the Court's Order on the Motions to Dismiss in the Consolidated Action but incorporate the entirety of Counts II–V and VII–IX into this complaint to preserve any appellate rights. See Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, *In re: Cerner/Oracle Data Breach Litigation*, No. 25-00259-CV-W-BP (W.D. Mo. June 22, 2026), Doc. 394. However, to prevent confusion and duplicative briefing, Plaintiffs have noted which Counts they are incorporating against certain Defendants based on the Court's Order on the Motions to Dismiss, *see* Doc. 394 at 48–49, and noted which Counts have been dismissed in their entirety, *see id.*

[4] Plaintiffs acknowledge the applicable Business Associate Agreement ("BAA") between Oracle Health and the Healthcare Provider Defendant may include language that precludes this claim. But

- Count IV – Breach of Implied Contract (¶¶ 516–540) as against Healthcare Provider Defendants;
- Count V – Unjust Enrichment (¶¶ 541–552);[5]
- Count VII – Breach of Fiduciary Duty (¶¶ 565–577) as against Healthcare Provider Defendants;
- Count VIII – Invasion of Privacy (¶¶ 578–586);[6]
- Count IX – Declaratory Judgment (¶¶ 587–595);[7]
- Count XIX – Violation of the Missouri Merchandising Practices Act ("MMPA") (¶¶ 704–719) as against Defendant Oracle Health;

- Prayer for Relief (Doc. 93 at pp. 156 to 157);
- Demand for Jury Trial (Doc. 93 at p. 157).

## ADDITIONAL ALLEGATIONS

## PARTIES

***Plaintiff Jacqueline Smith, on behalf of the Oracle Health Nationwide Class, the Atrium Health Nationwide Subclass and the North Carolina Subclasses***

761. Plaintiff, Jacqueline Smith, is a citizen of North Carolina and domiciled in North Carolina, who received care from Atrium Health, which is one of Oracle Health's healthcare provider clients, prior to the Data Breach. Plaintiff Smith received a notice letter. For purposes of this Short Form Complaint, Plaintiff Jacqueline Smith is a Healthcare Provider Plaintiff as to Atrium Health.

### *Defendants*

762. Defendant Cerner Corporation d/b/a Oracle Health, is a Delaware corporation with

at this juncture, Plaintiffs cannot adequately determine whether the BAAs produced in discovery are controlling or whether there are other applicable agreements that may alter the analysis.

[5] The Court dismissed Count V – Unjust Enrichment in its entirety. *See* Doc. 394 at 24–26.

[6] The Court dismissed Count VIII – Invasion of Privacy in its entirety. *See* Doc. 394 at 29–30.

[7] The Court dismissed Count IX – Declaratory Judgement in its entirety. *See* Doc. 394 at 30.

its principal place of business located at 8779 Hillcrest Road, Kansas City, MO 64138.[8]

763. Defendant Charlotte Mecklenburg Hospital Authority d/b/a Atrium Health is a municipal hospital authority established under North Carolina's Hospital Authorities Act. N.C. Gen. Stat. Ann. § 131E-15 *et seq.*

764. Defendant Advocate Health, Inc. is a Delaware corporation with its principal place of business at 915 Pearl Park Way Ste 1400, Charlotte, NC 28204.

765. Defendant Atrium Health, Inc. is a North Carolina non-profit corporation with its principal place of business in Charlotte, North Carolina at 915 Pearl Park Way, Ste 1400, Charlotte, NC 28204.

766. Defendant Advocate Aurora Health, Inc. is a Delaware corporation with its principal place of business at 2025 Windsor Dr., Oak Brook, IL 60523.

767. Defendant Navicent Health, Inc. is a Georgia non-profit corporation with its principal place of business at 770 Hemlock Street, Suite A, Macon, GA 31201.

768. Defendants Advocate Health Care, Atrium Health, and Aurora Health Care have come together under Advocate Health Care.[9] Atrium Health Navicent "is part of Advocate Health" and was "created from the combination of Atrium Health and Advocate Aurora Health."[10] In 2019, Navicent Health combined with Atrium Health to form Atrium Health Navicent.[11] Defendants Charlotte Mecklenburg Hospital Authority d/b/a Atrium Health , Advocate Health Care, Navicent

---

[8] Seema Verma, *Oracle Acquires Cerner to Form Oracle Health: The Future of Healthcare*, ORACLE, https://www.oracle.com/health/acquisition-of-cerner-the-future-of-healthcare/ (last visited Aug. 11, 2026).

[9] *See* ADVOCATE HEALTH, https://www.advocatehealth.org/ (last visited Sept. 3, 2026).

[10] *See About Us*, ATRIUM HEALTH NAVICENT, https://navicenthealth.org/about-us (last visited Sept. 3, 2026).

[11] *Id.*

Health, and Atrium Health are collectively referred to as "Atrium Health."

## JURISDICTION AND VENUE

769. This Court has personal jurisdiction over Defendant Oracle Health because it has its principal place of business in this District.

770. Atrium Health contracted with Defendant Oracle Health—a known Kansas City, MO entity—to manage its patients' electronic health records ("EHR").

771. Atrium Health knowingly and continually sent its patients' Private Information to Oracle Health as its EHR vendor.

772. Oracle Health publicly stored patients' Private Information in Kansas City, Missouri.[12]

773. Atrium Health failed to monitor or oversee the maintenance and security of its patients' Private Information which Atrium Health sent to Oracle Health to be stored in Kansas City, MO.

774. Due to Atrium Health's actions, patients' Private Information was compromised and/or exfiltrated from Oracle Health's legacy systems.

775. The Healthcare Provider Defendants have sufficient minimum contacts with the State of Missouri because they contracted with Oracle Health to store their patients' medical records on Oracle Health's servers in Kansas City, MO. Moreover, jurisdiction is proper under Missouri's long-arm statute. See Mo. Rev. Stat. § 506.500.1(1).

[12] Elana Gordon, Cerner Fights For Share In Electronic Medical Records Boom, NPR, KCUR, AND KAISER HEALTH NEWS, July 16, 2013, https://www.npr.org/sections/healthshots/2013/07/16/202419168/cerner-fights-for-share-in-electronic-medical-records-boom.

## ADDITIONAL SPECIFIC FACTUAL BACKGROUND

***Defendants Collected and Stored the Private Information of Plaintiff and the Classes***

776. Atrium Health is a healthcare system based in North Carolina.

777. Atrium Health used Oracle Health (previously Cerner Corporation) which is a third-party electronic health records vendor used by many healthcare providers.

778. As part of their business, Defendants receive and maintain the personal information of thousands of their current and former patients.

779. In collecting and maintaining Private Information, Defendants agreed they would safeguard the data in accordance with their internal policies, state law, and federal law.

780. Under state and federal law, businesses like Defendants have duties to protect their current and former patients' Private Information and to notify them about breaches.

***Defendants' Data Breach***

781. According to the letter notifying Plaintiff of the Data Breach, Oracle Health informed Atrium Health that it experienced a cybersecurity event involving unauthorized access to Atrium Health's patient information contained on Oracle Health's systems "at the end of" 2025.[13]

782. "Due to the complexity of the investigation and the nature of the data involved, Cerner only recently notified us that some of" Atrium Health's patient information was likely impacted and Atrium Health "promptly began investigating the incident to determine the scope of impact to our patients, concluding our review on March 12, 2026."[14]

783. The types of Private Information exposed included the following: "patient name,

---

[13] Notice Letter, *Smith v. Cerner Corp. et al.*, No. 26-cv-00690 (W.D. Mo. Aug. 13, 2026), Doc. 1-1.

[14] *Id.*

address, date of birth, medical record number, providers, diagnoses, medications, test results, images and other information included with patient medical records, including, in certain instances, Social Security numbers."

784. Currently, the precise number of persons injured is unclear. But the size of the putative class can be ascertained from information in Defendants' custody and control. And upon information and belief, the putative class is over one hundred members—as it includes Atrium Health's current and former patients.

785. And yet, Defendants waited until April 30, 2026, before it began notifying the class—roughly 453 days after the Data Breach—thereby depriving the Class of the opportunity to try and mitigate their injuries in a timely manner.

786. When Defendants did notify Plaintiff and the Class members of the Data Breach, Defendants acknowledged that the Data Breach created a present, continuing, and significant risk of suffering identity theft, providing Plaintiff with additional information about how to protect herself.

787. Defendants failed in their duties when their inadequate security practices caused the Data Breach. In other words, Defendants' negligence is evidenced by their failure to prevent the Data Breach and stop cybercriminals from accessing the Private Information. And thus, Defendants caused widespread injury and monetary damages.

788. Defendants have done little to remedy their Data Breach. True, Defendants have offered some victims credit monitoring and identity related services. But such services are wholly insufficient to compensate Plaintiff and class members for the injuries that Defendants inflicted upon them, including their present and ongoing risk of identity theft and fraud arising from the Data Breach.

789. Because of Defendants' Data Breach, the sensitive Private Information of Plaintiff and Class members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiff and Class members.

790. Plaintiff Jacqueline Smith was a patient of Atrium Health. As a result, Defendants obtained and maintained Plaintiff's Private Information.

791. As a result, Plaintiff was injured by Defendants' Data Breach.

***Plaintiff Jacqueline Smith, on behalf of the Oracle Health Nationwide Class, the Atrium Health Nationwide Subclass and the North Carolina Subclasses***

792. Plaintiff Jacqueline Smith received care from Atrium Health, one of Oracle's healthcare provider clients, and received treatment from Atrium Health prior to the Data Breach. As a condition of receiving medical services, Plaintiff was required to provide her Private Information to Defendants, including but not limited to her name, Social Security number and medical information, in connection with Oracle's services contracted by her healthcare provider.

793. Plaintiff typically takes measures to protect her Private Information and is very careful about sharing her Private Information. Plaintiff has never knowingly transmitted unsecured Private Information over the internet or other unsecured sources. She stores any documents containing her Private Information in a safe and secure location and chooses unique usernames for her passwords and online accounts.

794. In entrusting her Private Information to Defendants, Plaintiff believed that, as part of the payments for medical treatment and services, Defendants had implemented and maintained reasonable security and practices to protect her Private Information, including only contracting with third party vendors who would adequately protect her Private Information.

795. Had Plaintiff known that Defendants did not utilize reasonable data security measures, she would not have entrusted her Private Information to Defendants.

796. At the time of the Data Breach, Oracle retained Plaintiff's Private Information on its network with inadequate data security and in unencrypted form, causing Plaintiff's Private Information to be accessed and exfiltrated by cybercriminals in the Data Breach.

797. Plaintiff received a Data Breach Notice on or around April 30, 2026, notifying her that her Private Information was improperly accessed by unauthorized third parties, including her name and information included within patient medical records, such as medical record numbers, doctors, treatment, medication, and diagnostic information.

798. As a direct and proximate result of the Data Breach that Defendants caused and allowed to occur, Plaintiff has suffered, and imminently will suffer, injuries-in-fact and damages, including the unauthorized disclosure of the Private Information itself, which, on information and belief due to the nature of the cyberattack, has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale.

799. Plaintiff has been and will be forced to expend considerable time and effort including to monitor her accounts and credit files, changing her online account passwords, verifying the legitimacy of the Data Breach Notice, and researching the Data Breach, to protect herself from identity theft and fraudulent misuse of her Private Information, disclosed as a result of the Data Breach.

800. Indeed, Plaintiff Jacqueline Smith's Private Information that was compromised in the Data Breach has already been misused, evidenced by the significant increase in spam texts and phone calls, around 15-20 calls per day, using her Private Information that she has received since the Data Breach.

801. Plaintiff Smith's bank, because of this Data Breach and multiple fraudulent purchase attempts, advised her to close her bank account and open a new account.

802. Specifically, unauthorized individual(s) have attempted multiple times to take money out of Plaintiff Smith's bank and bitcoin account. One attempt was successful, and Plaintiff Jacqueline Smith was reimbursed by her bank for the fraudulent transaction.

803. Plaintiff was notified by her credit reporting product that her Private Information was on the dark web.

804. In addition, as a result of the Data Breach, Plaintiff also suffered diminution in the value of and loss of the use value of her Private Information, a form of intangible property that she entrusted to Defendants for the sole purpose of obtaining medical services.

805. Furthermore, Plaintiff Smith has been caused significant worry and feelings of anxiety and emotional distress regarding the disclosure of her Private Information in the Data Breach. As a result of the Data Breach, Plaintiff fears her personal financial security and remains uncertain about the full extent of the information disclosed. She continues to experience emotional distress stemming from the unauthorized disclosure of her Private Information. Plaintiff Smith further fears that unauthorized individuals may gain access to her medical information, that fraudulent attempts on her financial accounts may become successful, and that her privacy rights have been violated.

806. As a result of the Data Breach, Plaintiff faces a lifetime risk of identity theft, as her Private Information compromised in the Data Breach includes sensitive data that cannot be changed.

807. Furthermore, Plaintiff's sensitive Private Information remains in Defendants' possession without adequate protection against known threats, exposing Plaintiff to the imminent prospect of additional harm.

808. The classes that Plaintiff seeks to represent are defined as follows:

**<u>Oracle Health Nationwide Class:</u>**
All individuals residing in the United States whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, including all those individuals who receive notice of the Data Breach.

**<u>Oracle Health North Carolina Subclass:</u>**
All individuals residing in North Carolina whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, including all those individuals who receive notice of the Data Breach.

**<u>Atrium Health Nationwide Subclass:</u>**
All individuals residing in the United States whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, which information was provided to Oracle Health by Atrium Health including all those individuals who receive notice of the Data Breach.

**<u>Atrium Health North Carolina Subclass:</u>**
All individuals residing in North Carolina whose Private Information was compromised in the Oracle Health Data Breach, which occurred on or around January 22, 2025, which information was provided to Oracle Health by Atrium Health, including all those individuals who receive notice of the Data Breach.

## <u>ADDITIONAL CAUSES OF ACTION</u>

### North Carolina Identity Theft Protection Act
### N.C. Gen. Stat. § 75-60 et seq.
### (On Behalf of Plaintiff and the Classes)

809. This claim is brought: 1) by Plaintiff against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiff under North Carolina Law on behalf of the Oracle Health North Carolina Subclass; 3) by Plaintiff against Atrium Health, on behalf of the Atrium Health Nationwide Subclass; 4) by Plaintiff against Atrium Health, under North Carolina Law on behalf of the respective Plaintiff and Atrium Health North Carolina Subclass.

810. Plaintiff restates the allegations in Paragraphs 760 through 808 above, and the incorporated sections of the Consolidated Class Action Complaint (Doc. 93), as if fully set forth

herein.

811. Atrium Health and Oracle Health are "businesses" as defined by N.C. Gen. Stat. § 75-61.

812. Plaintiff's and North Carolina Subclass Members' PII (e.g., Social Security numbers) constitute "personal information" under N.C. Gen. Stat. § 75-61 (citing N.C. Gen. Stat. § 14-113.20(b)). During the Data Breach, unauthorized third parties accessed and acquired Plaintiff's and North Carolina Subclass Members' personal information.

813. The Data Breach constitutes a "security breach" as defined by N.C. Gen. Stat. § 75-61(14).

814. Specifically, N.C. Gen. Stat. § 75-65 requires businesses that own or license personal information of North Carolina residents to provide notice of a security breach without unreasonable delay. Therefore, Defendants were required to clearly and conspicuously notify Plaintiff and North Carolina Subclass Members following discovery or notification of a security breach.

815. Because Defendants discovered a breach of their data security systems, Defendants had an obligation to disclose the Data Breach without unreasonable delay, consistent with the legitimate needs of law enforcement, and consistent with any measures necessary to determine sufficient contact information, determine the scope of the breach and restore the reasonable integrity, security, and confidentiality of the data system. N.C. Gen. Stat. § 75-65.

816. By failing to disclose the Data Breach in a timely, complete and accurate manner, Defendants violated N.C. Gen. Stat. § 75-65.

817. Defendants' violations of N.C. Gen. Stat. § 75-65 constitute unfair and deceptive acts or practices in or affecting commerce in violation of N.C. Gen. Stat. § 75-1.1.

818. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and North Carolina Subclass Members suffered damages, as described above, and are entitled to recover actual damages, treble damages, attorneys' fees, and injunctive relief pursuant to N.C. Gen. Stat. § 75-16, § 75-1.1, and other applicable law.

**Violation of North Carolina's Unfair and Deceptive Trade Practices Act**
**N.C. Gen. Stat. § 75-1.1 et. seq.**
**(On Behalf of Plaintiff and the Subclasses)**

819. This claim is brought: 1) by Plaintiff against Oracle Health, on behalf of the Oracle Health Nationwide Class, or 2) alternatively by Plaintiff under North Carolina Law on behalf of the Oracle Health North Carolina Subclass; 3) by Plaintiff against Atrium Health, on behalf of the Atrium Health Nationwide Subclass; 4) by Plaintiff against Atrium Health, under North Carolina Law on behalf of the respective Plaintiff and Atrium Health North Carolina Subclass.

820. Plaintiff restates the allegations in Paragraphs 760 through 808 above, and the incorporated sections of the Consolidated Class Action Complaint (Doc. 93), as if fully set forth herein.

821. This claim is brought by Plaintiff against Oracle Health, on behalf of the Oracle Health North Carolina Subclass and against Atrium Health, on behalf of the Atrium Health North Carolina Subclass.

822. Plaintiff restates the allegations in Paragraphs 760 through 808 above, as if fully set forth herein.

823. Defendants advertised, offered, or sold services in North Carolina and engaged in trade or commerce directly or indirectly affecting the people of North Carolina, as defined by N.C. Gen. Stat. Ann. § 75-1.1(b).

824. Like the FTC Act, North Carolina prohibits "unfair methods of competition in or

affecting commerce, and unfair or deceptive acts or practices in or affecting commerce." The conduct complained of above violates N.C. Gen. Stat. § 75-1.1, in part because Defendants did not employ reasonable security, failed to inform Plaintiff and Class Members of the same and failed to timely warn Plaintiff and the Class.

825. Pursuant to North Carolina's Data Breach Notification Law, N.C. Gen. Stat. § 75-65 *et seq*., "Any business that owns or licenses personal information of residents of North Carolina or any business that conducts business in North Carolina that owns or licenses personal information in any form (whether computerized, paper, or otherwise) shall provide notice to the affected person that there has been a security breach following discovery or notification of the breach. The disclosure notification shall be made without unreasonable delay[.]"

826. A violation of N.C. Gen. Stat. Ann. § 75-65 also violates N.C. Gen. Stat. § 75-1.1, according to the statute's plain text. N.C. Gen. Stat. Ann. § 75-65(i).

827. Defendants engaged in unfair and deceptive acts and practices in or affecting commerce, in violation of N.C. Gen. Stat. Ann. § 75-1.1, including:

a. Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class members' PII, which was a direct and proximate cause of the Data Breach;

b. Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents, which was a direct and proximate cause of the Data Breach;

c. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' PII, including duties

imposed by the FTC Act, 15 U.S.C. § 45, et seq., which was a direct and proximate cause of the Data Breach;

d. Omitting, suppressing, and concealing the material fact that they did not reasonably or adequately secure Plaintiff's and Class members' PII;

e. Omitting, suppressing, and concealing the material fact that they did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class members' PII, including duties imposed by the FTC Act, 15 U.S.C. § 45, et seq., and;

f. Unreasonably delaying notifying Plaintiff and Class Members of the Data Breach, waiting from "the end of" 2025 to April 30, 2026, to send notification.

828. Defendants' omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendants' data security and ability to protect the confidentiality of consumers' PII.

829. Defendants intended to mislead Plaintiff and Class members and induce them to rely on their omissions.

830. Had Defendants disclosed to Plaintiff and Class members that their data systems were not secure and, thus, vulnerable to attack, Defendants would have been unable to continue in business and would have been forced to adopt reasonable data security measures and comply with the law. Defendants accepted the PII that Plaintiff and Class members entrusted to them while keeping the inadequate state of their security controls secret from the public. Accordingly, Plaintiff and Class members acted reasonably in relying on Defendants' omissions, the truth of which they could not have discovered through reasonable investigation.

831. Defendants acted intentionally, knowingly, and maliciously to violate North

Carolina's Unfair Trade Practices Act, and recklessly disregarded Plaintiff's and Class members' rights.

832. As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and Class members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from fraud and identity theft; time and expenses related to monitoring their financial accounts for fraudulent activity; an increased, imminent risk of fraud and identity theft; and loss of value of their PII.

833. Defendants' conduct as alleged herein was continuous, such that after the first violations of the provisions pled herein, each week that the violations continued constitute separate offenses pursuant to N.C. Gen. Stat. Ann. § 75-8.

834. Plaintiff and Class members seek all monetary and non-monetary relief allowed by law, including actual damages, treble damages, and attorneys' fees and costs.

Dated: September 3, 2026

Respectfully submitted,

*<u>/s/ Norman E. Siegel</u>*
Norman E. Siegel
Barrett J. Vahle
**STUEVE SIEGEL HANSON LLP**
460 Nichols Road, Suite 200
Kansas City, MO 64112
Tel: (816) 714-7112
siegel@stuevesiegel.com
vahle@stuevesiegel.com

Tyler W. Hudson
**WAGSTAFF & CARTMELL**
4740 Grand Avenue, Suite 300
Kansas City, MO 64112
Tel: (816) 701-1177
thudson@wcllp.com

Lynn A. Toops
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel: (317) 636-6481
ltoops@cohenmalad.com

*Co-Lead Interim Class Counsel*

J. Gerard Stranch, IV
**STRANCH, JENNINGS & GARVEY, PLLC**
The Freedom Center
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel: (615) 254-8801
gstranch@stranchlaw.com

*Chair of Plaintiffs' Executive Committee*

Raina Borrelli
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel: (872) 263-1100
raina@straussborrelli.com

Casondra Turner
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
800 S. Gay Street, Suite 100
Knoxville, TN 37929
Tel: (771) 772-3086
cturner@milberg.com

Leanna Loginov
**SHAMIS & GENTILE**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
Tel: (305) 479-2299
lloginov@shamisgentile.com

Jeff Ostrow
**KOPELOWITZ OSTROW, P.A.**
1 West Las Olas Boulevard, 5th Floor
Fort Lauderdale, FL 33301
Tel: (954) 525-4100

ostrow@kolawyers.com

Patrick D. Donathen
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
patrick@lcllp.com

Laura Van Note
**COLE & VAN NOTE**
155 12th Street, Suite 2100
Oakland, CA 94607
Tel: (510) 891-9800
lvn@colevannote.com

James Treglio
**POTTER HANDY LLP**
100 Pine Street, Suite 1250
San Francisco, CA 94111
Tel: (415) 534-1911
jimt@potterhandy.com

Charles E. Schaffer
**LEVIN SEDRAN & BERMAN LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (877) 882-1011
cschaffer@lfsblaw.com

Elena Belov
**ALMEIDA LAW GROUP**
849 W. Webster Avenue
Chicago, IL 60614
Tel: (708) 232-3274
elena@almeidalawgroup.com

Anthony Parkhill
**BARNOW AND ASSOCIATES, P.C.**
205 W. Randolph Street, Suite 1630
Chicago, IL 60606
Tel: (312) 621-2000
aparkhill@barnowlaw.com

Paul Doolittle
**POULIN WILLEY ANASTOPOULO LLC**

32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
paul.doolittle@poulinwilley.com

*Plaintiffs' Executive Committee*