**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| IN RE: CERNER/ORACLE DATA BREACH LITIGATION | CASE NO. 25-00259-CV-W-BP<br><br>THIS DOCUMENT RELATES TO:<br><br>CASE NO. 4:26-cv-00305-BP |

# REPLY IN SUPPORT OF SUGGESTIONS IN SUPPORT OF DEFENDANT TAMPA GENERAL'S MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION

## TABLE OF CONTENTS


I. Introduction .......... 1

II. Law and Argument .......... 1

A. Missouri's Long-Arm Statute Does Not Authorize Personal Jurisdiction .......... 1

B. There Are No Constitutionally Sufficient Minimum Contacts with Missouri .......... 4

1. Tampa General Has Not Purposefully Availed Itself of Missouri .......... 4

2. Plaintiffs' Claims Against Tampa General Neither Arise Out of Nor Relate to Any Missouri Contacts .......... 5

3. Exercising Personal Jurisdiction Over Tampa General Would Be Unreasonable .......... 6

C. Plaintiffs Are Not Entitled to Jurisdictional Discovery .......... 7

III. Conclusion .......... 8

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Block Indus. v. DHJ Indus., Inc.*,
495 F.2d 256 (8th Cir. 1974) .......... 3

*Bristol-Myers Squibb Co. v. Superior Ct.*,
582 U.S. 255 (2017) .......... 5

*Burlington Indus., Inc. v. Maples Indus., Inc.*,
97 F.3d 1100 (8th Cir. 1996) .......... 6

*Dever v. Hentzen Coatings, Inc.*,
380 F.3d 1070 (8th Cir. 2004) .......... 2, 7

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
592 U.S. 351 (2021) .......... 5

*Jet Charter Serv., Inc. v. W. Koeck*,
907 F.2d 1110 (11th Cir. 1990) .......... 3

*K-V Pharm. Co. v. J. Uriach & CIA, S.A.*,
648 F.3d 588 (8th Cir. 2011) .......... 2

*Rennenger v. Aquawood, LLC*,
2020 WL 6472686 (S.D. Iowa Mar. 27, 2020) .......... 7

*Steinbuch v. Cutler*,
518 F.3d 580 (8th Cir. 2008) .......... 7, 8

*Taylor v. Portland Paramount Corp.*,
383 F.2d 634 (9th Cir. 1967) .......... 3

*Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co. KG*,
646 F.3d 589 (8th Cir. 2011) .......... 7

*Walden v. Fiore*,
571 U.S. 277 (2014) .......... 5, 6

**Statutes**

Mo. Rev. Stat. § 506.500.1 .......... 4

## I. Introduction

The Tampa General Defendants are Florida-based entities that purchased Florida hospitals from CHS. Plaintiffs try to manufacture personal jurisdiction in Missouri by recasting that Florida transaction as a relationship with Cerner. But the record shows otherwise. Tampa General did not contract with Cerner, did not pay Cerner, did not assume any Cerner agreement, and did not continue sending patient data to Cerner. Nor would it have done so: Tampa General maintains its own EHR system through Epic. While CHS had a contractual relationship with Cerner and chose to use Cerner for its EHR services—Tampa General did not. Indeed, Plaintiffs concede that Cerner did not identify Tampa General as an affected entity—a concession confirming that Tampa General has no connection to the Cerner Incident. Because Plaintiffs' jurisdictional theory rests on allegations contradicted by the governing documents and sworn declarations, this Court lacks personal jurisdiction over the Tampa General Defendants.

## II. Law and Argument

The Court lacks general jurisdiction over Tampa General, and Plaintiffs offer no argument to the contrary. Opp. at 11. Nor can Plaintiffs establish specific jurisdiction under Missouri's long-arm statute or the Due Process Clause. And because Plaintiffs have not made the threshold showing required for jurisdictional discovery, the Court should dismiss their claims against Tampa General for lack of personal jurisdiction and deny the request for discovery.

### A. Missouri's Long-Arm Statute Does Not Authorize Personal Jurisdiction

Tampa General did not transact business, enter into contracts, or commit any torts in Missouri. Nor is there any factual basis for Plaintiffs' assertion that Tampa General "assumed

the Cerner contracts and continued to send patient data to Cerner in Missouri post-acquisition." Opp. at 5.

*First*, Plaintiffs omit critical limiting language from the APA. In full, the APA conveyed only "all rights and interests in the contracts, commitments, leases, licenses and agreements ***listed on Schedule 1.1(g).***" But ***Schedule 1.1(g) does not include any contract with Cerner, and Tampa General did not assume any contract between CHS and Cerner.*** *See* Declaration of Kimberly Casteel in Support of Defendants' Reply ("3d Casteel Decl."), ¶ 3. Plaintiffs also misconstrue the APA's references to the "delivery" of a Business Associate Agreement and IT Services Agreement to Tampa General. Opp. at 6. Those agreements were between TGH and CHS and were required to be in place before closing. 3d Casteel Decl. ¶¶ 4-5. They therefore provide no mechanism by which Tampa General could have "assumed applicable contracts and a Business Associate Agreement with *Cerner*." Opp. at 6 (emphasis added). Indeed, Plaintiffs concede that Cerner has not identified Tampa General as an affected entity. *See* ECF 418, Joint Status Report and Proposed Schedule at 4 ("Plaintiffs note that several originating complaints name healthcare providers that Cerner has not explicitly identified as affected entities . . .").

Plaintiffs' reliance on *K-V Pharm. Co. v. J. Uriach & CIA, S.A.*, 648 F.3d 588 (8th Cir. 2011), is misplaced. Opp. at 6. To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff "must state sufficient facts in the complaint to support a reasonable inference that [the defendants] can be subjected to jurisdiction within the state. Once jurisdiction ha[s] been controverted or denied, [the plaintiff] ha[s] the burden of proving such facts." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072–73 (8th Cir. 2004), quoting *Block Indus. v. DHJ Indus., Inc.*, 495 F.2d 256, 259 (8th Cir. 1974). Plaintiffs' prima facie showing "must be tested, not by the

pleadings alone, but by the affidavits and exhibits presented with the motions and in opposition thereto." *Block Indus.*, 495 F.2d at 260.

And "[w]hen a defendant raises through affidavits, documents or testimony a meritorious challenge to personal jurisdiction, the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents." *Jet Charter Serv., Inc. v. W. Koeck*, 907 F.2d 1110, 1112 (11th Cir. 1990); *Taylor v. Portland Paramount Corp.*, 383 F.2d 634, 639 (9th Cir. 1967) ("We do not think that the mere allegations of the complaint, when contradicted by affidavits, are enough to confer personal jurisdiction of a nonresident defendant. In such a case, facts, not mere allegations, must be the touchstone."). Because the evidence shows there is no contract between Tampa General and Cerner, Plaintiffs' contrary allegations cannot be accepted as true.

*Second*, Tampa General did not agree to pay Cerner for "implementation and transition services." The APA states only that Tampa General would *reimburse CHS* for a portion of the amount CHS paid Cerner to migrate patient data out of Cerner's EHR. *See* Am. Compl. ¶¶ 25-28, quoting Asset Purchase Agreement, Section 10.27 (parties agreed that TGH would reimburse CHS "at the Closing in an amount equal to fifty percent (50%) of the amount payable by [CHS] to [Cerner] for such [transition] services."). Tampa General reimbursed CHS because CHS—not Tampa General—maintained the vendor relationship with Cerner. 3d Casteel Decl. ¶ 4 (stating IT Transition Services Agreement addressed the migration of data hosted by CHS, including CHS's hosted instance of Cerner). Tampa General has not used Cerner's EHR services and has not sent patient data to Cerner. *Id.* ¶ 6. Nor would it have any reason to do so: Tampa General contracts with Epic for EHR services. *Id.*

Because Tampa General has no relationship with Cerner and no relevant Missouri conduct, Missouri's long-arm statute does not authorize jurisdiction over the Tampa General Defendants. Mo. Rev. Stat. § 506.500.1.

### B. There Are No Constitutionally Sufficient Minimum Contacts with Missouri

#### 1. Tampa General Has Not Purposefully Availed Itself of Missouri

Plaintiffs' argument rests on the false premise that Tampa General chose to store patient data on Cerner's servers. It did not. Tampa General purchased hospitals in Florida and entered into the APA, IT Transition Services Agreement, and BAA with CHS—not Cerner. 3d Casteel Decl. ¶¶ 3-6. Through that transaction, Tampa General purposefully availed itself of Florida, not Missouri. And despite Plaintiffs' allegations, Tampa General did not agree to pay Cerner for ongoing services, did not enter into the IT Transition Services Agreement or BAA with Cerner, and did not store data in Missouri. 2d Casteel Decl. ¶¶ 9-11; 3d Casteel Decl. ¶¶ 3-6. Because Plaintiffs' purposeful-availment theory depends on facts the record disproves, it fails.

At most, Plaintiffs allege that patient data CHS maintained on its Cerner EHR platform remained with Cerner at the time of the Incident because it had not yet been migrated to Tampa General's Epic EHR platform. But that circumstance does not show that Tampa General purposefully directed any conduct at Missouri. It reflects only the status of CHS's preexisting vendor relationship and the transition process following the acquisition. The mere fact that data maintained by CHS had not yet been migrated to Tampa General's Florida-based Epic environment is far from a sufficient basis to conclude that Tampa General—a Florida entity—purposefully availed itself of the privilege of conducting activities in Missouri.

### 2. Plaintiffs' Claims Against Tampa General Neither Arise Out of Nor Relate to Any Missouri Contacts

Plaintiffs incorrectly assert that *Ford Motor Co. v. Montana Eighth Judicial District Court*, 592 U.S. 351 (2021), "forecloses" Tampa General's argument that Plaintiffs' claims do not arise out of or relate to the forum. Opp. at 9. In *Ford*, the defendant conceded that it had purposefully availed itself of the forum states. *Id.* at 365. And, as the Court explained, "Ford had systematically served a market in Montana and Minnesota for the very vehicles that the plaintiffs allege malfunctioned and injured them in those States. So there is a strong 'relationship among the defendant, the forum, and the litigation'—the 'essential foundation' of specific jurisdiction." *Id.*, quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). The Court rejected Ford's argument that jurisdiction was lacking merely because the vehicles were first sold outside the forum states, emphasizing that Ford's extensive forum contacts "might turn any resident of Montana or Minnesota into a Ford owner—even when he buys his car from out of state." *Id.* at 366-67. Because Ford deliberately served those markets, it had a "reciprocal obligation" to ensure that the vehicles it marketed there were safe. *Id.* at 367-68.

Tampa General is nothing like Ford. It does not conduct business in Missouri and has no offices, employees, property, or agents there. 2d Casteel Decl. ¶¶ 5-6. Because there is no relationship among Tampa General, Missouri, and the Cerner Incident, the "essential foundation" for specific jurisdiction is absent. *See Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 265 (2017) ("What is needed . . . is a connection between the forum and the specific claims at issue.").

Plaintiffs' reliance on *Walden v. Fiore*, 571 U.S. 277 (2014), fares no better. Opp. at 9. *Walden* confirms that "[d]ue process requires that a defendant be haled into court in a forum

State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Id.* at 286, quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Tampa General has no affiliation with Missouri and no relationship with Cerner or the Cerner Incident. It therefore lacks the minimum contacts required for this Court to exercise specific jurisdiction.

### 3. Exercising Personal Jurisdiction Over Tampa General Would Be Unreasonable

None of the Eighth Circuit's minimum-contacts factors support jurisdiction over Tampa General. *Burlington Indus., Inc. v. Maples Indus., Inc.*, 97 F.3d 1100, 1102 (8th Cir. 1996) (considering "(1) the nature and quality of contacts with the forum state; (2) the quantity of such contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) convenience of the parties."). Contrary to Plaintiffs' assertions, Tampa General did not pay a Missouri company, assume continuing agreements with a Missouri company, or store Plaintiffs' data in Missouri. Opp. at 10. Tampa General reimbursed CHS, a Delaware company. Am. Compl. ¶ 28, quoting Asset Purchase Agreement, Section 10.27. Tampa General contracted exclusively with CHS. 3d Casteel Decl. ¶¶ 3-6. And the data at issue was previously stored at the direction of CHS—not Tampa General—with CHS's vendor, Cerner. *Id.* ¶ 4; Am. Compl., Exhibit A.

Because Tampa General does not conduct business in Missouri, deliver goods or services into Missouri, or otherwise target Missouri, the nature, quality, and quantity of its Missouri contacts are nonexistent. *See* Mot. at 9. The third factor likewise weighs against jurisdiction because Plaintiffs' claims arise from CHS's use of Cerner—not any Missouri contact by Tampa General. Plaintiffs concede the fourth factor. And the fifth factor, convenience, also weighs against jurisdiction. Although Plaintiffs argue that Cerner-related

discovery is already proceeding in Missouri, Tampa General is a Florida entity with no Missouri operations, no Missouri contacts, and no connection to the Cerner Incident. Any discovery concerning Tampa General would therefore occur in Florida, not Missouri.

Finally, Plaintiffs acknowledge that they cannot rely on the *Calder* effects test to establish specific jurisdiction over Tampa General. Opp. at 10-11.

Accordingly, the Court cannot exercise specific jurisdiction over Tampa General.

### C. Plaintiffs Are Not Entitled to Jurisdictional Discovery

Jurisdictional discovery is appropriate only when the plaintiff offers "documentary evidence, and not merely speculations or conclusory allegations." *Rennenger v. Aquawood, LLC*, 2020 WL 6472686, at * (S.D. Iowa Mar. 27, 2020), quoting *Whitesell Int'l Corp. v. Amtek Auto Ltd.*, No. 4:13-CV-00056-JAJ, 2014 WL 12603144, at *8 (S.D. Iowa Feb. 19, 2014). Where, as here, "a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Dever*, 380 F.3d at 1074 n.1 (internal quotation omitted); *Viasystems, Inc. v. EBM-Papst St. Georgen GmbH & Co. KG*, 646 F.3d 589, 598 (8th Cir. 2011) (affirming denial of jurisdictional discovery where plaintiff's assertion that discovery "would likely" reveal jurisdictional facts was "entirely speculative").

*Steinbuch v. Cutler*, 518 F.3d 580 (8th Cir. 2008), illustrates the showing required. There, the Eighth Circuit permitted jurisdictional discovery as to one defendant but denied it as to another. For defendant Hyperion, discovery was warranted because the plaintiff submitted multiple affidavits supporting general jurisdiction. *Id.* at 587-89. For defendant Disney, however, discovery was properly denied because the plaintiff failed to submit affidavits, testimony, or documents rebutting Disney's evidence that it had no connection to

the dispute and no involvement in the publication or distribution of the allegedly defamatory novel. *Id.* at 589-90.

Here, Plaintiffs rely only on conclusory allegations and documents that refute, rather than support, their jurisdictional theory. The APA, Notice Letters, and declarations confirm that Tampa General did not assume any Cerner contract, did not contract with Cerner, did not send patient data to Cerner, and has no connection to the Cerner Incident. Plaintiffs therefore have not made the threshold showing required for jurisdictional discovery.

## III. Conclusion

Accordingly, the Tampa General Defendants request that the claims brought against them in the Amended Complaint be dismissed in their entirety for lack of personal jurisdiction.

Dated September 8, 2026

Respectfully Submitted,

*/s/ Elizabeth A. Scully*
Elizabeth A. Scully*
Gilbert S. Keteltas*
Carey Schneeweiss Busen*
BAKER & HOSTETLER LLP 1050
Connecticut Ave. N.W., Ste. 1100
Washington, DC 20036
Tel: (202) 861-1500
escully@bakerlaw.com
gketeltas@bakerlaw.com
cbusen@bakerlaw.com

Ambika B. Singhal #64724 (MO)
BAKER & HOSTETLER LLP
2850 North Harwood Street
Suite 1100
Dallas, TX 75201
Tel: (214) 210-1200
asinghal@bakerlaw.com

*Attorneys for Defendants Florida Health Sciences Center, Inc., d/b/a Tampa General Hospital, Tampa General Medical Group, Inc., Tampa General Hospital Hernando, LLC and Tampa General Hospital Citrus, LLC*

**Admitted Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September, 2026, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/Elizabeth A. Scully*
Elizabeth A. Scully

*Attorney for Defendants Florida Health Sciences Center, Inc., d/b/a Tampa General Hospital, Tampa General Medical Group, Inc., Tampa General Hospital Hernando, LLC and Tampa General Hospital Citrus, LLC*