UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| **IN RE: CERNER/ORACLE DATA BREACH LITIGATION**<br><br>**BRANDI STRENGTH and CHRISTINE ABBOTT**, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>**CERNER CORPORATION d/b/a ORACLE HEALTH** and **INTEGRIS HEALTH, INC.**,<br><br>Defendants. | Case No. 4:25-00259-CV-W-BP<br><br>This filing relates to lead case No. 4:35-cv-00259-BP and member case No. 4:26-cv-00255 |

**INTEGRIS HEALTH, INC.'S SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SHORT FORM COMPLAINT**

## TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. RELEVANT FACTUAL ALLEGATIONS .......... 1

III. ARGUMENT .......... 2

A. PLAINTIFFS DO NOT HAVE ARTICLE III STANDING UNDER RULE 12(B)(1) .......... 2

B. PLAINTIFFS' INJURY THEORIES ARE INSUFFICIENT TO CONFER STANDING .......... 3

C. CHOICE OF LAW .......... 5

D. UNDER OKLAHOMA LAW, PLAINTIFFS FAILED TO STATE A CLAIM UNDER RULE 12(B)(6) .. 6

*i.* Plaintiffs' Negligence Claim Fails under Oklahoma Law .......... 6

ii. Plaintiffs' Negligence Per Se Claim Fails under Oklahoma Law .......... 8

iii. Plaintiffs' Breach of Implied Contract Claim Fails Under Oklahoma Law .......... 10

iv. Plaintiffs' Unjust Enrichment Claim Fails Under Oklahoma Law .......... 11

v. Plaintiffs' Breach of Fiduciary Duty Claim Fails Under Oklahoma Law .......... 12

vi. Plaintiffs' Invasion of Privacy Claim Fails Under Oklahoma Law .......... 13

vii. Plaintiffs' Declaratory Judgment and Injunctive Relief Claims Fail Under Oklahoma Law .......... 14

IV. CONCLUSION .......... 15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alexander v. Smith & Nephew, P.L.C.*,
98 F. Supp. 2d 1299 (N.D. Okla. 2000)....................6

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................6

*Bernal v. Charter County Mut. Ins. Co*.,
209 P.3d 309 (Okla. 2009)....................5

*Brickner v. Gooden*,
525 P.2d 632 (Okla. 1974)....................5, 6

*Bristow First Assembly of God v. BP p.l.c.*,
210 F. Supp. 3d 1284 (N.D. Okla. 2016)....................14, 15

*Deevers Stoichev v. Wing Financial Services, LLC*,
No. 22-cv-0550, 2023 WL 6133181 (N.D. Okla. Sept. 19, 2023)....................4, 5

*Dept. of Securities ex rel. Faught v. Blair*,
231 P.3d 645 (Okla. 2010)....................11

*Dixon v. Bhuiyan*,
10 P.3d 888 (Okla. 2000)....................10

*Drake v. Sometime Spouse, LLC*,
784 Fed.Appx 602 (10th Cir. 2019)....................9

*Frezza v. Google Inc.*,
No. 12-CV-00237-RMW, 2012 WL 5877587 (N.D. Cal. Nov. 20, 2012)....................11

*Goldsmith v. United States Government*,
No. 20-cv-0543, 2021 WL 3412442 (N.D. Okla. August 4, 2021)....................9

*Graves v. Johnson*,
359 P.3d 1151 (Okla. Civ. App. 2015)....................12, 13

*Hall v. Bellmon*,
935 F.2d 1106 (10th Cir. 1991)....................6

*Hekel v. Hunter Warfield, Inc*.,
118 F.4th 938 (8th Cir. 2024)....................3

*In re SuperValu, Inc*.,
925 F.3d 955 (8th Cir. 2019)....................8

*Jones v. University of Central Oklahoma*,
910 P.2d 987 (Okla. 1995)....................10, 11

*Krottner v. Starbucks Corp.*,
406 Fed.Appx 129 (9th Cir. 2010)....................11

*Legg v. Leaders Life Ins. Co.*,
574 F.Supp.3d 985 (W.D. Okla. 2021)....................3, 4, 5, 7

*Lockhart v. Loosen*,
943 P.2d 1074 (Okla. 1997)....................9

*Marshall v. Fenton, Fenton, Smith, Reneau and Moon, P.C.*,
899 P.2d 621 (Okla. 1995)....................7

*MBA Commercial Constr., Inc. v. Roy J. Hannaford Co.*,
818 P.2d 469 (Okla. 1991)....................7, 8

*N.C. Corff P'ship, Ltd. V. OXY USA, Inc.*,
929 P.2d 288 (Okla. Civ. App. 1996)....................11

*Orthman v. Premiere Pediatrics,*
*LLC*, 545 P.3d 124 (Okla. Civ. App. 2024)....................7

*Patterson v. Beall*,
19 P.3d 839 (Okla. 2000)....................9

*Pork Plus, LLC v. Choice Genetics USA, LLC*,
No. 20-0171, 2021 WL 9667325 (W.D. Mo. Feb. 22, 2021)....................5

*Ruskiewicz v. Oklahoma City University*,
No. 5:23-cv-00303, 2023 WL 3965705 (W.D. Okla. June 7, 2023)....................4, 5

*Salmon v. CRST Expedited, Inc.*,
No. 14-265, 2016 WL 47876 (N.D. Okla. Jan. 4, 2016)....................13, 14

*Smith v. Barker*,
419 P.3d 327 (Okla. Civ. App. 2017)....................9

*Southwest Orthopaedic Specialists, P.L.L.C. v. Allison*,
439 P.3d 430 (Okla. Civ. App. 2018)....................12

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................2, 3

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................2

*Tulsa Indus. Auth. v. City of Tulsa*,
270 P.3d 113 (Okla. 2011)....................15

*Wilkerson v. Shinseki*,
606 F.3d 1256 (10th Cir. 2010) .......... 9, 13

**Constitutional Provisions**

Article III of the U.S. Constitution .......... 1, 2, 3, 5

**Statutes**

42 U.S.C. § 300gg-22(a), (b) .......... 9, 10

42 U.S.C. § 1308 .......... 9

**Rules**

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) .......... 16

## I. Introduction

It is undisputed that the January 2025, Cerner Corporation d/b/a Oracle Health ("Cerner") data security incident occurred solely on Cerner's environment and did not affect any systems belonging to Integris. Consolidated Class Action Complaint, Doc. 93, ("CCAC") ¶¶ 1–2. Both Plaintiffs and Integris are Oklahoma residents, and Plaintiffs filed their original complaint in the Western District of Oklahoma. Short Form Complaint, ("SFC") ¶¶ 761-63; *see Strength, et al. v. Cerner Corp., et al,* Case No. 5:26-cv-00123-G, W.D. Okla. Accordingly, Plaintiffs' claims are wholly inadequate and should be dismissed for lack of Article III standing under Rule 12(b)(1) and failure to state a claim under Rule 12(b)(6).

## II. Relevant Factual Allegations[1]

Integris is a not-for-profit Oklahoma-owned health care system. SFC ¶ 764. In January 2025, Cerner discovered potential unauthorized activity on certain servers wherein a threat actor obtained certain electronic health records relating to Cerner customers, including individuals affiliated with Integris (the "Cerner Incident"). *Id*. at ¶¶ 773–78. Cerner informed Integris that limited data related to it was impacted, Integris assessed the potentially impacted data records, and issued notice to individuals starting on or about December 30, 2025. *Id*. at ¶ 761–62, 776.

Plaintiffs Strength and Abbott are both Oklahoma residents and patients of Integris. *Id*. at ¶¶ 783, 798. Plaintiffs bring this lawsuit individually and on behalf of four (4) putative classes, SFC ¶ 809, asserting their information was impacted in the Cerner Incident and they suffered damages. *Id*. at ¶¶ 786-97, 801-09. Both Plaintiffs allege that their name, Social Security number,

---

[1] For the purposes of this Motion only, all well-pleaded facts of Plaintiffs' CCAC and SFC are treated as true. However, Integris does not admit the truth of any allegations in the complaints and cites them here solely for purposes of this motion.

and medical information were potentially impacted by the Cerner Incident. *Id*. at ¶¶ 783, 798. Both Plaintiffs allege a litany of generic damages allegations premised on a fear of future harm and receipt of spam calls and texts. *Id*. at ¶¶ 787–94, 802-7. While Plaintiff Strength alleges she was notified of an unauthorized account inquiry "by her banking card provider", and two unauthorized charges, significantly, she does not allege this information was ever provided to Integris or that this information was impacted by the Cerner Incident. *Id*. Plaintiff also fails to identify when the alleged incidents occurred, what specific accounts were impacted, whether she was reimbursed for the alleged fraud, or if her "banking card provider" cancelled the unauthorized charges. *Id*.

Consequently, Plaintiffs' allegations are insufficient to meet the "irreducible constitutional minimum of standing" under Article III. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Nor have Plaintiffs plead sufficient facts supporting their claims under Oklahoma law for negligence, negligence *per se*, breach of implied contract, unjust enrichment, breach of fiduciary duty, invasion of privacy, declaratory judgment, and injunctive relief.[2] As such, these causes of action should be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6).

## III. Argument

### A. Plaintiffs Do Not Have Article III Standing under Rule 12(b)(1)

To establish standing under Article III of the U.S. Constitution, a plaintiff must show (i) she suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) the injury was likely caused by the defendant; and (iii) the injury would likely be redressed by judicial relief. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). For an injury to be concrete, "it must actually exist" and cannot be merely hypothetical or conjectural. *Spokeo*, 578 U.S. at 340. In a

[2] Plaintiffs do not bring any statutory claims against Integris or Cerner in the SFC. *See* SFC ¶ 760.

putative class action lawsuit, the plaintiff "must personally allege that [she] has standing to sue." *Legg v. Leaders Life Ins. Co*., 574 F.Supp.3d 985, 989 (W.D. Okla. 2021).

### B. Plaintiffs' Injury Theories are Insufficient to Confer Standing

Plaintiffs' allegations of harm are speculative and lack the required specificity – generic assertions of "imminent and impending injury arising from the substantially increased risk of fraud, identity theft and misuse," and "damages to and diminution in the value" of their information are not enough to confer standing. SFC ¶¶ 790–94, 805– 7. Plaintiff Abbott only asserts conclusory and boilerplate risk of future injuries, ¶¶ 800–8, and while Plaintiff Strength includes a purported "financial" harm, she does not assert that any financial information was provided to Integris or even impacted in the Cerner Incident. *Id*. at ¶¶ 782–83. Further, Plaintiff Strength does not assert that the alleged harm occurred after the Cerner Incident or provide any details pertaining to the "banking card provider" at issue. *Id*. Consequently, Plaintiffs cannot trace their purported injuries or causally link said injuries to Integris or to the Cerner Incident.

In *Hekel*, the Eighth Circuit evaluated a plaintiff's injury theories based on increased risk of harm, emotional issues, lost time, and out-of-pocket costs stemming from receipt of a letter from a debt-collection agency. *Hekel v. Hunter Warfield, Inc*., 118 F.4th 938, 941 (8th Cir. 2024). The court reasoned that "the risk of future harm [cannot] support a backwards-looking claim for damages." *Id*. at 942–43. The court characterized the plaintiff's allegations as "conclusory," and "naked assertion[s] of emotional harm," "devoid of further factual enhancement." *Id*. at 943 (citations omitted).

Additionally, three Oklahoma federal courts have evaluated and dismissed analogous injury theories in data privacy class actions for lack of Article III standing. In *Deevers*, one of the named plaintiffs alleged a fraudulent attempted charge to his Best Buy card, but the court reasoned

the plaintiff never alleged he provided this card information to the defendant. *Deevers Stoichev v. Wing Financial Services, LLC*, No. 22-cv-0550, 2023 WL 6133181, at *6 (N.D. Okla. Sept. 19, 2023). The court determined it was "impracticable" to conclude the fraudulent attempted charge established misuse of the plaintiff's data from the defendant's breach, explaining the "stated injuries are not fairly traceable to the defendant" *Id*. at *7. The court then evaluated the plaintiffs' generic allegations of potential future harm, fear and anxiety, loss of privacy, diminution in value of information, mitigation efforts, and lost time theories, holding the claims "have not manifested into concrete harms sufficient to confer standing." *Id.* Here, Plaintiff Strength's purported financial fraud is "not fairly traceable" to Integris or the Cerner Incident, and is premised on the same type of injury as the *Deever* plaintiff's rejected financial injury claim. SFC ¶¶ 782–83.

In *Ruskiewicz*, the data privacy class action plaintiff alleged generic and speculative future harms, including mitigation measures, increased risk of potential injuries, and potential misuse of her information at an unknown point in the future. *Ruskiewicz v. Oklahoma City University*, No. 5:23-cv-00303, 2023 WL 3965705, at *2 (W.D. Okla. June 7, 2023). The Western District of Oklahoma dismissed these intangible injury theories, holding that "a plaintiff suing for damages and injunctive relief from a data breach based on a risk that fraud or identity theft may occur in the future, without any facts to show a misuse of the data had occurred, failed to allege a concrete injury and lacked standing." *Id*.

Similarly, the data privacy class action plaintiff in *Legg* alleged "an imminent, immediate, and continuing risk of harm from identity theft and fraud," which caused him to suffer emotional distress and anxiety, lost time, and mitigation efforts. *Legg*, 574 F.Supp.3d at 988. The court found that the plaintiff had not alleged any misuse of his data, and his risk of future injury theory relied

on "speculation about the decisions of independent actors," that "have not plausibly alleged an actual or imminent injury sufficient to establish Article III standing." *Id*. at 993–95.

Here, Plaintiffs' allegations in the SFC are the same type of allegations that were explicitly rejected by Oklahoma federal courts. *Deevers,* 2023 WL 6133181, at *7; *Ruskiewicz*, 2023 WL 3965705, at *2; *Legg*, 574 F.Supp.3d at 993. Neither Plaintiff has plausibly alleged injuries fairly traceable to Integris or the Cerner Incident and no concrete injuries have manifested. This Court should follow Oklahoma precedent and dismiss Plaintiffs' claims for lack of Article III standing.

### C. Choice of Law

Oklahoma courts apply different choice-of-law rules for claims that sound in tort than those that sound in contract. *Bernal v. Charter County Mut. Ins. Co*., 209 P.3d 309, 315 (Okla. 2009). For tort claims, Oklahoma courts apply the law of the state with the most significant relationship to the occurrence and the parties, which is nearly identical to Missouri's choice-of-law rules. *Brickner v. Gooden,* 525 P.2d 632, 635 (Okla. 1974); *Pork Plus, LLC v. Choice Genetics USA, LLC*, No. 20-0171, 2021 WL 9667325, at *2 (W.D. Mo. Feb. 22, 2021) (applying four-factor test to determine which state has the 'most significant relationship' to the occurrence and the parties).

Here, Plaintiffs' allegations sound primarily in tort. Oklahoma courts conduct the choice of law analysis issue-by-issue, determining the most significant relationship by weighing (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship between the parties is centered. *Brickner,* 525 P.2d at 635. Plaintiffs are both citizens and residents of Oklahoma. SFC ¶¶ 761–62. Integris is a not-for-profit Oklahoma-owned health care system located in Oklahoma City, Oklahoma. *Id*. at ¶ 764. Cerner is

a Delaware corporation with its principal place of business in Missouri. *Id*. at ¶ 763. Plaintiffs have no direct relationship to Cerner. *Id*. at ¶ 761–62.

Applying the *Brickner* factors demonstrates that Oklahoma has the most significant relationship to Plaintiffs' claims because (1) Plaintiffs' alleged injuries occurred in Oklahoma; (2) while part of the Cerner Incident may have occurred outside of Oklahoma, the conduct was directed toward an Oklahoma healthcare provider and Oklahoma residents; (3) both Plaintiffs and Integris are Oklahoma residents; and (4) the parties' relationship is centered in Oklahoma. In sum, these factors establish that Oklahoma has the most significant relationship to Plaintiffs' claims, and this Court should apply Oklahoma law.

### D. Under Oklahoma law, Plaintiffs Failed to State a Claim under Rule 12(b)(6)

Although the Court is required to accept well-pleaded facts as true when evaluating a motion to dismiss under Rule 12(b)(6), the Court is not required to accept the Plaintiffs' legal conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[C]onclusory allegations without supporting factual averments" are insufficient and warrant dismissal. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

#### i. Plaintiffs' Negligence Claim Fails under Oklahoma Law

Under Oklahoma law, to bring a negligence claim a plaintiff must allege: (1) the existence of a duty owed by defendant to plaintiff to use ordinary care; (2) the breach of that duty; and (3) an injury proximately caused by the breach. *Alexander v. Smith & Nephew, P.L.C.*, 98 F. Supp. 2d 1299, 1307-08 (N.D. Okla. 2000). To bring a successful negligence claim, a plaintiff must "allege injury or damages that are certain and not speculative." *MBA Commercial Constr., Inc. v. Roy J. Hannaford Co.,* 818 P.2d 469, 470 (Okla. 1991). The "certainty" requirement refers to the fact that damages have actually been sustained. *Marshall v. Fenton, Fenton, Smith, Reneau and Moon,*

*P.C.*, 899 P.2d 621, 623 (Okla. 1995). In *Legg*, the Western District of Oklahoma emphasized that risk of a future injury which "relies on this sort of 'speculation about the decisions of independent actors' is not sufficient to establish a concrete injury." *Legg,* 574 F. Supp. 3d at 994. The plaintiff must assert specific allegations demonstrating that the defendant's action caused an injury to the plaintiff. *Reece v. AES Corp*., 638 App'x 755, 776 (10th Cir. 2016).

In 2024, the Oklahoma Court of Civil Appeals evaluated a plaintiffs' data privacy class action negligence claim and specifically rejected the plaintiffs' speculative future damages allegations. *Orthman v. Premiere Pediatrics, LLC*, 545 P.3d 124, 133 (Okla. Civ. App. 2024). The court primarily relied on the Western District of Oklahoma's opinion in *Legg*, reasoning that like the *Legg* plaintiff, the Orthman plaintiffs "fail[ed] to provide any supporting facts that the threat of economic injury is, in fact, imminent or certainly impending," and their claimed losses were "based purely on speculation and rely on the ephemeral notion that Plaintiffs *might* someday suffer harm at the hands of hackers." *Id*. at 134.

Here, Plaintiffs allege concern about damages potentially occurring in the future which is insufficient under Oklahoma law. SFC ¶¶ 787–96; 802–7. The SFC contains no allegations suggesting publication or misuse of any information or any adverse consequences sufficiently traceable to the Cerner Incident. *Id*. at ¶¶ 787–94, 800–8. Plaintiffs have not pled any actual facts to demonstrate they suffered actual damages that "are certain and non-speculative." *MBA Commercial Const., Inc. v. Roy J. Hannaford Co., Inc*., 818 P.2d 469, 474 (Okla. 1991). Further, Plaintiffs' voluntary preventative or mitigation efforts do not constitute an injury attributable to the Cerner Incident.

In *SuperValu II*, the Eighth Circuit affirmed dismissal of a consumer protection claim for lack of actual damages, holding that the lone remaining plaintiff's alleged damages – lost time, a

fraudulent credit card charge, and effort spent replacing his card – do not constitute actual damage. *In re SuperValu, Inc*., 925 F.3d 955, 964 (8th Cir. 2019). The court reasoned the plaintiff "does not directly allege that the fraudulent charge to his credit card resulted in any pecuniary loss" and it would be required to draw inferences "from [plaintiff's] conspicuous omission." *Id*. at 965.

Similarly, Plaintiff Strength's allegations of an unauthorized account inquiry and two unauthorized charges do not establish that Integris or the Cerner Incident caused these purported damages, or that she actually incurred any losses. SFC ¶ 792. Strength did not assert that any financial account information or card information was provided to Integris, and Strength never alleges that this information was affected by the Incident. *Id*. at ¶ 783. Furthermore, Plaintiff Strength's allegations require a series of inferences that "runs counter to established law and common experience." *SuperValu II*, 925 F.3d at 965. As the Eighth Circuit explained, card-issuer contracts typically absolve the consumer from an obligation to pay for fraudulent charges. *Id*. Strength's allegations are insufficient to establish the fraudulent activity is traceable to Integris and that the Incident proximately caused any damage. As Plaintiffs have not asserted any valid damages theory under Oklahoma law, this claim should be dismissed.

**ii. Plaintiffs' Negligence *Per Se* Claim Fails under Oklahoma Law**

"Negligence *per se* is a term used when a duty of care is based upon violation of specifically prescribed conduct required by a statute. 'When courts adopt the statutory standard for a cause of action for negligence …the violation of [the] statute constitutes negligence per se if the other elements of negligence are present.'" *Smith v. Barker*, 419 P.3d 327, 333 (Okla. Civ. App. 2017) (citation omitted). To establish a valid negligence *per se* claim, a plaintiff must demonstrate the claimed injury was (a) caused by the law's violation; (b) was of the type of harm intended to be prevented by the statute; and (c) the injured party must be one of the class intended to be protected

by the statute. *Lockhart v. Loosen,* 943 P.2d 1074, 1078 (Okla. 1997). The standard of duty set forth in the statute must be fixed, defined by law, and be the same in all circumstances, otherwise a claim for negligence *per se* is not appropriate. *Smith*, 419 P.3d at 33.

Plaintiffs' negligence *per se* claim is based on alleged violations of the Federal Trade Commission Act ("FTC Act") and Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. § 1308. CCAC ¶¶ 496–506; SFC ¶ 760. Plaintiffs claim Integris did not use reasonable measures to protect sensitive information, and the unauthorized disclosure of Plaintiffs' PII and PHI violated the FTC Act and HIPAA, causing them injuries. *Id*.

Both the Oklahoma Supreme Court and the 10th Circuit have held that the FTC Act does not provide for a private cause of action. *Patterson v. Beall*, 19 P.3d 839, 846 (Okla. 2000); *Drake v. Sometime Spouse, LLC*, 784 Fed.Appx 602, 604 (10th Cir. 2019) (holding there is no private right of action under the FTC Act). Furthermore, Oklahoma courts and 10th Circuit confirmed that there are no private causes of action under HIPAA and the FTC Act under Oklahoma law. *Orthman,* 545 P.3d at 135; *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010) (any HIPAA claim fails as HIPAA does not create a private right of action for the alleged disclosures of confidential medical information); *see also Goldsmith v. United States Government*, No. 20-cv-0543, 2021 WL 3412442, *2 (N.D. Okla. August 4, 2021).

Applying the plain language of HIPAA, there is no indication that the legislature intended to allow a private cause of action. 42 U.S.C. § 300gg-22(a), (b). The legislature only provided for enforcement of HIPAA by a state or by the Secretary of Health and Human Services, and did not provide for the private enforcement of the statute. *Id*. Finally, Plaintiffs' allegations are impermissibly conclusory, attempting to claim Integris had inadequate data security simply

because a data breach occurred on its vendor's environment. Accordingly, Plaintiffs' negligence *per se* claim should be dismissed with prejudice for failure to state a claim under Oklahoma law.

#### iii. Plaintiffs' Breach of Implied Contract Claim Fails Under Oklahoma Law

Plaintiffs' breach of implied contract claim contains no factual allegations supporting the existence of any enforceable contracts between Plaintiffs and Integris. Under Oklahoma law, all contracts are either express or implied. 15 O.S. § 133. Implied contracts, like all contracts, are founded upon the mutual agreement or consent of the parties. *Jones v. University of Central Oklahoma*, 910 P.2d 987, 989 (Okla. 1995). To bring a valid breach of implied contract claim under Oklahoma law, a court will examine several factors, including, "(a) the parties' acts, conduct, and statements as a whole, (b) whether there was a meeting of the minds on the agreements essential elements, (c) the parties' intent to enter into a contract upon defined terms, and (d) whether one of the parties has relied in good faith upon the alleged contract." *Dixon v. Bhuiyan*, 10 P.3d 888, 891 (Okla. 2000). In Oklahoma, an implied contract "is deduced from disclosed circumstances as well as the parties' relations and its terms reflect the agreement which in fairness ought to have been made." *Id*.

Plaintiffs allege Integris entered into implied contracts with them to protect their PII and PHI, and Integris agreed to timely notify them of any data breach. CCAC ¶¶ 517–24; SFC ¶ 760. Plaintiffs allege a list of general implied promises that Defendant purportedly did not fulfill, causing them damages. *Id*. at ¶ 524–40.

Here, Plaintiffs are unable to point to any facts establishing a valid contract between the parties. Specifically, Plaintiffs fail to assert any allegations that establish mutual assent, clear intent, or any conduct between the parties, rendering it impossible for any enforceable implied contract to exist. Plaintiffs' CCAC and SFC complaints do not identify any terms of said contracts

or specific data security obligations through which Integris would protect the data. There are no factual allegations that show the parties engaged in negotiations as to these alleged terms for data security services. Without a meeting of the minds, there is no enforceable contract. *Jones*, 910 P.2d at 989.[3]

As Plaintiffs' CCAC and SFC contain no factual allegations supporting the existence of any enforceable implied contract or mutual intent, this cause of action should be dismissed for failure to state a claim.

### iv. Plaintiffs' Unjust Enrichment Claim Fails Under Oklahoma Law[4]

In Oklahoma, a claim for unjust enrichment is equitable in nature. *N.C. Corff P'ship, Ltd. V. OXY USA, Inc*., 929 P.2d 288, 295 (Okla. Civ. App. 1996). Unjust enrichment is "a condition which results from the failure of a party to make restitution in circumstances where not to do so is inequitable." *Dept. of Securities ex rel. Faught v. Blair*, 231 P.3d 645, 658–59 (Okla. 2010). The elements of unjust enrichment under Oklahoma law are defined as "(1) the unjust (2) retention of (3) a benefit received (4) at the expense of another." *Id*. The Oklahoma Civil Appeals Court upheld the dismissal of the data privacy class action plaintiffs' unjust enrichment claim. *Orthman*, 545 P.3d at 136–37. In *Orthman*, the court held that defendant's patients paid for medical services – not data protection – and the defendant had "not unjustly retained any benefit of value," dismissing the data privacy class action plaintiffs' unjust enrichment claim. *Orthman*, 545 P.3d at 137.

---

[3] In the data breach context, courts have dismissed similar claims for breach of implied contract for failure to state a claim. *See*, *e.g., Krottner v. Starbucks Corp.*, 406 Fed.Appx 129, 131 (9th Cir. 2010) (dismissing implied contract claim because factual allegations failed to demonstrate a meeting of the minds of any specific offer to encrypt or otherwise safeguard plaintiffs' personal data); *Frezza v. Google Inc.*, No. 12-CV-00237-RMW, 2012 WL 5877587, at *4 (N.D. Cal. Nov. 20, 2012) (dismissing implied contract claim and explaining that "even if an implied contract does indeed exist, plaintiffs must sufficiently plead that Google agreed to and then breached a specific obligation").

[4] This Court dismissed Plaintiffs' Unjust Enrichment (Count V) against Cerner and the HCPs.

Similar to *Orthman*, Plaintiffs allege that as patients of Integris, they conferred a monetary benefit in the form of their PII and PHI to Integris, that Integris accepted, retained, and profited from that benefit, and Plaintiffs suffered injury as a result of the Cerner Incident. CCAC ¶¶ 542–52. However, Plaintiffs did not pay to receive data privacy services from Integris; they paid for healthcare and medical treatment – which they received. Plaintiffs do not dispute that they received the medical services they paid for. Integris did not receive any direct benefit from Plaintiffs toward data privacy services. There was no understanding between the parties that a certain amount of Plaintiffs' healthcare and medical treatment funds were specifically intended for data security services to a third-party vendor, such as Cerner. Plaintiffs' CCAC and SFC do not plead any facts to specify which portion of the payments made by Plaintiffs were expressly intended for data security services because the parties never reached an agreement as to ***any*** terms for data security. Accordingly, Plaintiffs' unjust enrichment claim must be dismissed for failure to state a claim.

**v. Plaintiffs' Breach of Fiduciary Duty Claim Fails Under Oklahoma Law**

To bring a claim for breach of fiduciary duty under Oklahoma law, a plaintiff must plead facts showing "(1) the existence of a fiduciary relationship; (2) a breach of a fiduciary duty; and (3) the breach of the fiduciary duty was the direct cause of damages." *Southwest Orthopaedic Specialists, P.L.L.C. v. Allison*, 439 P.3d 430, 436 (Okla. Civ. App. 2018). A fiduciary "duty is based on the status of the parties and it arises from a relationship of trust and confidence." *Graves v. Johnson*, 359 P.3d 1151, 1154 (Okla. Civ. App. 2015). To be actionable, a harm must result from the breach. *Id*.

Plaintiffs contend a fiduciary relationship was established when Integris received Plaintiffs' information to provide health and medical services to Plaintiffs. CCAC at ¶¶ 567–77;

SFC ¶ 760. However, Plaintiffs improperly attempt to conflate data-security obligations into a fiduciary duty claim. Plaintiffs have not plead any plausible facts to establish that Integris' duty to safeguard data is part of a fiduciary relationship, rather than from a duty arising out of contract, statute, or regulation. Plaintiffs' purported harms arise from claims of deficient cybersecurity – not violations of traditional fiduciary obligations or conduct. Oklahoma law is clear that HIPAA does not create a private cause of action or state-law fiduciary duty. *Orthman,* 545 P.3d at 135; *Wilkerson*, 606 F.3d at 1267. Finally, Plaintiffs failed to plead any facts showing they suffered any actual damages, and failed to show that any purported harm can be traced to Integris or the Cerner Incident. As Plaintiffs have no valid damages under Oklahoma law, this Court should dismiss Plaintiffs' breach of fiduciary duty claim for failure to state a claim.

**vi. Plaintiffs' Invasion of Privacy Claim Fails Under Oklahoma Law[5]**

To establish a claim for invasion of privacy in Oklahoma, a plaintiff must demonstrate that "the information disseminated by the data breach was (1) highly offensive to a reasonable person, (2) contained private facts about the Plaintiffs' lives, (3) was a public disclosure of private facts, and (4) was not of legitimate concern to others." *Orthman*, 545 P.3d at 135. Under Oklahoma law, an intrusion occurs only when "an actor 'believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act.'" *Salmon v. CRST Expedited, Inc*., No. 14-265, 2016 WL 47876, at *5 (N.D. Okla. Jan. 4, 2016). In *Orthman*, the Oklahoma Civil Court of Appeals upheld dismissal of the plaintiffs' invasion of privacy claim, determining that the healthcare provider defendant did not intentionally take the plaintiffs' information and

[5] This Court dismissed Plaintiffs' Invasion of Privacy Claim (Count VIII) against Cerner and the HCPs.

publish it to others, but that it was stolen from the defendant's third-party medical records vendor. *Orthman*, 545 P.3d at 135–36.

Here, Plaintiffs allege they had an expectation of privacy for their information, and Integris intentionally failed to protect that information when it was released to unauthorized third-parties. CCAC ¶¶ 2 ("a criminal had accessed [Cerner's] legacy servers and copied sensitive patient data"); 580-87. Plaintiffs fail to allege sufficient facts to support a claim for invasion of privacy under Oklahoma law. Integris had Plaintiffs' authorization to maintain their data, and Integris did not intentionally disseminate or publish Plaintiffs' information – the data was stolen from Integris' vendor, Cerner. *Id*. at ¶ 2, 13, 453; SFC ¶ 770. As Plaintiffs' CCAC and SFC are devoid of facts that would show Integris intentionally intruded into Plaintiffs' seclusion or intentionally published private facts, Plaintiffs' invasion of privacy claim should be dismissed under Oklahoma law.

#### vii. Plaintiffs' Declaratory Judgment and Injunctive Relief Claims Fail Under Oklahoma Law[6]

As this Court previously acknowledged, declaratory relief and injunctions "are remedies." *See* Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, Doc. 394, p. 30.

To invoke the jurisdiction of a court under 12 O.S. § 1651, "there must be an actual, existing justiciable controversy between parties . . . as distinguished from a possible, potential or contingent dispute." *Bristow First Assembly of God v. BP p.l.c.*, 210 F. Supp. 3d 1284, 1290 (N.D. Okla. 2016). This "justiciable controversy" means an antagonistic case or controversy that is presently germane, not speculative. *See, e.g., Tulsa Indus. Auth. v. City of Tulsa*, 270 P.3d 113, 120 (Okla. 2011) (denying Plaintiff's request for declaratory relief based on antagonistic demands that were only theoretical as a request for a prohibited advisory opinion).

---

[6] This Court dismissed Plaintiffs' Declaratory Judgment and Injunctive Relief Claims (Count IX) against Cerner and the HCPs.

In *Orthman*, the court upheld dismissal of the plaintiffs' declaratory judgment claim, reasoning that (i) the plaintiffs lacked standing to pursue said relief; and (ii) 12 O.S. § 1651 "precludes issuance of a declaratory judgment for liability for 'damages on account of alleged tortious injuries.'" *Orthman,* 545 P.3d at 139. The court further determined that "the speculative nature of Plaintiffs' future injuries similarly preclude the requested injunctive relief." *Id*. at 140.

Here, Plaintiffs' claims for declaratory judgment and injunctive relief are based upon their allegations that Defendants did not use reasonable data security, and Defendants breached various duties, causing Plaintiffs injuries. CCAC at ¶ 590–95. Plaintiffs further allege they are at risk of additional harm, claim all Defendants' data privacy measures remain inadequate, and seek injunctive relief requiring Defendants to use adequate data security. *Id*.

Plaintiffs have not identified an impending future harm where "forward-looking" injunctive relief would prevent such harm. The requested injunctive relief all relates to improvements to Defendants' current data security, including entities over which Integris has no control, which would have no impact on the Cerner Incident that already occurred. Accordingly, no justiciable controversy between the parties exists. Even if there was a sufficiently justiciable controversy, § 1651 explicitly precludes issuance of a declaratory judgment for liability for "damages on account of alleged tortious injuries." *Bristow First Assembly of God*, 210 F. Supp. 3d at 1290. Any request for declaratory or injunctive relief based on Plaintiffs' tort allegations is therefore prohibited under Oklahoma law.

## IV. Conclusion

For all of the foregoing reasons, Defendant Integris Health, Inc. respectfully requests that the Court grant its motion and dismiss Plaintiffs' Short Form Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).