**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| IN RE: CERNER/ORACLE DATA BREACH LITIGATION | ) ) ) ) ) ) | Case No. 4:25-00259-CV-W-BP<br><br>This Document Relates to:<br>*Akiva Harris, on behalf of herself and others similarly situated v. Cerner Corp., et al.*, Case No. 4:26-CV-00228-BP |

**SUGGESTIONS IN SUPPORT OF DEFENDANT UNIVERSITY MEDICAL CENTER, INC. d/b/a UNIVERSITY OF LOUISVILLE HOSPITAL'S MOTION TO DISMISS**

## INTRODUCTION

Plaintiff Akiva Harris ("Plaintiff") attempts to assert a variety of claims against Defendant University Medical Center, Inc. d/b/a University of Louisville Hospital ("UofL Health") and Defendant Cerner Corporation d/b/a Oracle Health ("Oracle Health" and together with UofL Health, "Defendants") arising out of an alleged data breach of Cerner's systems by a third party in early 2025 (the "Cerner Incident").[1] By Plaintiff's own account, the Cerner Incident occurred on Oracle Health's systems, not on any system maintained by UofL Health (Short Form Compl. ("SFC"), ¶¶ 774, 789; *see* June 22, 2026 Order ("Order"), p. 3.) UofL Health is simply one of the many health care providers ("HCPs") that contracted with Oracle Health and whose current and former patients received notice of the Cerner Incident. (*See* SFC, ¶¶ 764, 774–75, 790.)

UofL Health's instant Motion seeks dismissal of Counts II and VII incorporated through the Consolidated Complaint (*Id.* at ¶ 760), as well as the SFC's additional cause of action asserted under the Kentucky Consumer Protection Act, KRS 367.170 *et seq.* (the "KCPA").[2]

[1] Any capitalized term not otherwise defined herein has the meaning ascribed thereto in the SFC.

[2] UofL Health has separately moved for an extension of time to respond to the two other claims asserted by Plaintiff against UofL Health, Count I (negligence) and Count IV (breach of implied contract).

<u>**ARGUMENT**</u>

## I. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face," *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)), "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense," *Iqbal*, 556 U.S. at 679. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly*, 550 U.S. at 557). Instead, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This standard is intended to expose pleading deficiencies "at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558.

### A. Rule 9(b)'s Heightened Pleading Standard for Claims Sounding in Fraud

Claims brought under the KCPA "must meet the heightened pleading standard imposed by Fed. R. Civ. P. 9(b)." *Ali v. Allstate Northbrook Indem., Co.*, 2024 WL 1199023, at *4 (W.D. Ky. Mar. 20, 2024). "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 556 (8th Cir. 2006) ("Put another way, the complaint must identify the who, what, where, when, and how of the alleged fraud." (internal quotations omitted)).

## II. Kentucky Substantive Law Governs Plaintiff's Common Law Claims

As a threshold matter, Kentucky substantive law governs Plaintiff's common-law claims. "[A] federal district court sitting in Missouri must apply Missouri's conflict of law principles." *Birdsell v. Holiday Inns*, 852 F.2d 1078, 1079 (8th Cir. 1988). For tort and contract claims, Missouri courts apply the most-significant relationships test. *Dorman v. Emerson Elec. Co.*, 23 F.3d 1354, 1358 (8th Cir. 1994). Under that test, "the identity of the state having the most significant relationship will depend upon the nature of the cause of action and upon the particular legal issue in dispute." *Id.* The test "establishes a presumption that the state with the most significant relationship is the state where the injury occurred, absent an overriding interest of another state[.]" *Id.* In establishing which state's law applies, the pertinent contacts are the place of injury, the place of the conduct causing the injury, the parties' residences and places of business, and the place where the relationship is centered. *Id.*

Here, every relevant contact points to Kentucky. Plaintiff is a Kentucky resident, UofL Health is a Kentucky corporation with its principal place of business in Louisville, Plaintiff received medical care from UofL Health in Kentucky, and Plaintiff allegedly sustained injury in Kentucky. (SFC, ¶¶ 761, 763, 785.) No competing Missouri interest overrides those contacts. Indeed, the Eighth Circuit has recognized that Missouri's interest in compensating its residents is not implicated when a nonresident sues for an injury sustained outside Missouri. *Dorman*, 23 F.3d at 1360. Kentucky substantive law therefore must govern Plaintiff's common law claims.

## III. Plaintiff's Negligence Per Se Claim Fails to State a Cognizable Claim

Count II fails at its inception because it identifies no Kentucky statute that UofL Health allegedly violated. Instead, the claim relies on the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45, and the Health Insurance Portability and Accountability Act ("HIPAA"). (SFC, ¶ 760 (incorporating Consol. Compl. ¶¶ 494–506).) That defect is fatal to Count II because

Kentucky's negligence per se statute, KRS 446.070, does not transform alleged violations of federal law into a private cause of action under Kentucky law. Count II should thus be dismissed.

"KRS 446.070 codifies the common-law doctrine of 'negligence *per se*' in Kentucky." *Young v. Carran*, 289 S.W.3d 586, 588 (Ky. Ct. App. 2008). The statute "provides recovery for individuals injured by violations of 'any statute' so long as they are members of the class of persons meant for protection by the statute." *Yeager v. Dickerson*, 391 S.W.3d 388, 393 (Ky. Ct. App. 2013). But the remedy is limited to laws enacted by Kentucky's General Assembly. *Alderman v. Bradley*, 957 S.W.2d 264, 266 (Ky. Ct. App. 1997). The Kentucky Supreme Court has confirmed this principle, holding that KRS 446.070 does not extend to federal statutes, regulations, or the laws of other states. *T & M Jewelry, Inc. v. Hicks ex rel. Hicks*, 189 S.W.3d 526, 530 (Ky. 2006) (explaining that the "Kentucky General Assembly did not intend for KRS 446.070 to embrace the whole of federal laws" and "thereby confer a private civil remedy for such a vast array of violations"). That rule controls here, and this claim must be dismissed.

For example, in *Viviali v. One Point HR Solutions, LLC*, a federal court sitting in Kentucky dismissed a negligence per se claim predicated on the same federal statutes invoked in the SFC. 2025 WL 1158740 (E.D. Ky. Apr. 21, 2025). There, the plaintiffs tried to argue that a recent case created an exception to Kentucky's general rule "requiring the use of Kentucky statutes in negligence per se claims." *Id*. at *6. The court rejected this argument, reiterating that KRS 446.070 "is limited to Kentucky statutes and does not extend to federal statutes," and distinguishing "between using a federal statute to inform the standard of care for purposes of a common law negligence action and bringing a KRS 446.070 negligence per se claim claiming an actual violation of the statute." *Id.* Because the plaintiffs alleged no violation of a Kentucky statute, dismissal was required. *Id.* The same result must obtain here.

Plaintiff's allegations suffer from the same defect. Count II alleges breaches of duties arising under the FTC Act and HIPAA. (Consol. Compl., ¶¶ 498, 503.) And Plaintiff's generalized assertion that UofL Health failed to comply with "applicable laws and regulations" cannot supply the basis for the missing predicate. (*Id*. at ¶ 505.) Because Count II is exclusively rooted in federal law, the claim fails as a matter of Kentucky law. It should therefore be dismissed, with prejudice.

## IV. Plaintiff's Breach of Fiduciary Duty Claim Fails because Kentucky Law Recognizes no Fiduciary Duty on the Present Facts

Although this Court previously sustained Count VII against other HCPs (Order, pp. 27–29), the allegations specific to UofL Health under Kentucky law fail to plausibly allege that UofL Health had a fiduciary relationship concerning the protection of Plaintiff's PHI. At most, Plaintiff alleges an ordinary duty to use reasonable care. Count VII thus fails to state a claim.

Under Kentucky law, a breach of fiduciary duty claim has three elements: (1) the existence of a fiduciary duty; (2) a breach of that fiduciary duty; and (3) that the breach of the fiduciary duty caused injury to the party to whom the duty was owed. *Seeger Enters., Inc. v. Town & Country Bank and Tr. Co.*, 518 S.W.3d 791, 795 (Ky. Ct. App. 2017). As to the first element, Kentucky "courts have rejected the idea that there is an automatic fiduciary relationship." *Lurry v. PharMerica Corp.*, 2024 WL 2965642, at *5 (W.D. Ky. June 12, 2024). Further, under Kentucky law, "a fiduciary duty does not arise from the universal business duty to deal fairly nor is it created by a unilateral decision to repose trust and confidence[.]" *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 552 (Ky. 2009). Rather, fiduciary relationships are "founded on trust or confidence reposed by one person in the integrity and fidelity of another and which also necessarily involves an undertaking in which a duty is created in one person to act primarily for another's benefit in matters connected with such undertaking." *ATC Distrib. Grp., Inc. v. Whatever It Takes Transmission & Parts, Inc.*, 402 F.3d 700, 715 (6th Cir. 2005) (internal quotations omitted).

Data-breach decisions applying Kentucky law make this distinction dispositive in this case. That is, a plaintiff must allege that the defendant "expressly undertook, formally or informally, a duty to act for [plaintiff's] benefit" with respect to PHI. *McKenzie v. Allconnect, Inc.*, 369 F. Supp. 3d 810, 823 (E.D. Ky. 2019). Allegations that a defendant owed a duty to take reasonable security measures may support a negligence theory, but such allegations, without more, cannot establish a fiduciary relationship. *Id.*; *see also Lurry*, 2024 WL 2965642, at *5–6. Count VII suffers from this fatal flaw. Even accepting Plaintiff's allegations as true, any "duty" UofL Health allegedly owed must solely be framed through a lens of negligence. This is exemplified by the SFC's own language with respect to the duty purportedly owed by UofL Health:

> Defendants failed in their duties when their inadequate security practices caused the Data Breach. In other words, ***Defendants' negligence is evidenced by their failure to prevent the Data Breach*** and stop cybercriminals from accessing the Private Information. And thus, Defendants caused widespread injury and monetary damages.

(SFC, ¶ 780 (emphasis added).) This excerpt confirms that Plaintiff's theory is negligence, not breach of fiduciary duty. (*See id.* at ¶ 760 (incorporating Count I, "Negligence . . . as against all Defendants").) In Plaintiff's own words, this alleged "negligence . . . caused [the] widespread injury and monetary damages" at issue. (*See id.* at ¶ 780.) Plaintiff further alleges that she was required to provide UofL Health with her information "[a]s a condition of receiving medical services" and "in connection with Oracle's services contracted by" UofL Health. (*Id.* at ¶ 785.) Such allegations describe the routine exchange of information incident to treatment and vendor services. They do not allege that UofL Health undertook any responsibility to act primarily for Plaintiff's benefit in managing that information sufficient to give rise to a fiduciary relationship.[3]

---

[3] For the avoidance of doubt, UofL Health contends that it fully and faithfully discharged all its obligations under state and federal law. The arguments set forth herein relate to the adequacy of Plaintiff's pleadings and the viability of the claims Plaintiff attempts to assert.

The SFC's remaining allegations fail to bridge that gap. An agreement to "safeguard the data in accordance with [UofL Health's] internal policies," (*see id*. at ¶ 772), is insufficient to establish the existence of a fiduciary relationship. *See Lurry*, 2024 WL 2965642, at *6 (holding that an HCP's internal policy "neither purports to create a fiduciary relationship; nor does it suggest [defendant] has undertaken any particular duties with respect to data security."). Nor does the conclusory assertion that federal and state law required UofL Health to protect Plaintiff's information suffice. (SFC, ¶ 773.) Even assuming those allegations identify and impose a duty on UofL Health to use reasonable care in the context of data management, as pleaded, they fail to establish any distinct undertaking by UofL Health required to create a fiduciary relationship. *See McKenzie*, 369 F. Supp. 3d at 823; *see also Lurry*, 2024 WL 2965642, at *6 (dismissing breach of fiduciary duty claim in data breach context where plaintiffs failed "to allege sufficient facts from which to infer the existence of a fiduciary relationship between themselves and [defendant].").

Incorporation of the Consolidated Complaint does not cure this defect. As a preliminary matter, that pleading fails to address Kentucky law whatsoever. *See Lurry*, 2024 WL 2965642, at *6 ("Nor do Plaintiffs provide any Kentucky case law to support their position that all medical providers owe patients an automatic fiduciary duty in regards to medical information."). Nonetheless, the Consolidated Complaint alleges only that class members placed a "special confidence" in Defendants to safeguard their information, and that Defendants thereby "became fiduciaries." (Consol. Compl., ¶¶ 567, 571.) While these allegations amount to nothing more than legal conclusions the Court need not credit, *see Iqbal*, 556 U.S. at 678, in any event, a unilateral allegation regarding placing trust, like the universal duty to deal fairly, does not create a fiduciary relationship under Kentucky law. *Flegles, Inc.*, 289 S.W.3d at 552.

Because Plaintiff fails to allege any reciprocal undertaking by UofL Health to act primarily for her benefit, Count VII fails. It should therefore be dismissed, with prejudice.

## V. Plaintiff's Kentucky Consumer Protection Act Claim Should Be Dismissed

The SFC's lone additional Count asserts a claim under the KCPA on behalf of a purported "UofL Health Nationwide Subclass" and "UofL Health Kentucky Subclass." (SFC, ¶¶ 798–799.) The claim alleges that "[a]s a direct and proximate result of Defendants' unfair and deceptive acts or practices, Plaintiff and Kentucky Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages[.]" (*Id*. at ¶ 815.) However, Plaintiff's KCPA claim fails for three independent reasons: (1) the KCPA does not govern transactions lacking a sufficient connection to Kentucky; (2) the fraud-based theories are not plead with sufficient particularity; and (3) to the extent any security-based theory remains, any such theory fails to plausibly allege a causal nexus between UofL Health's conduct and Plaintiff's alleged loss.

### A. The KCPA Claim Fails as to the UofL Health Nationwide Subclass

As a preliminary matter, the KCPA cannot be applied on behalf of a nationwide class. The statute affords a private right of action only to a "person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property[.]" Ky. Rev. Stat. § 367.220(1). Courts applying Kentucky law have held that Kentucky lacks a "significant contact" with, and a legitimate interest in, the claims of purchasers who did not transact within the state. *Corder v. Ford Motor Co.*, 272 F.R.D. 205, 208–09 (W.D. Ky. 2011). Accordingly, the "KCPA may not be applied to a nationwide class of purchasers[.]" *Id.* at 212. Because the proposed nationwide subclass necessarily includes non-Kentucky transactions, the KCPA claim must be dismissed against UofL Health to that end. (*See* SFC, ¶¶ 798–99.)

## B. Plaintiff's KCPA Claim Fails to Satisfy Rule 9(b)

Plaintiff's KCPA claim fails as to both UofL Health subclasses because while Plaintiff's misrepresentation and concealment theories sound in fraud, they fail to satisfy Rule 9(b).

Plaintiff's KCPA claim is premised on UofL Health's alleged misrepresentations and material omissions. (SFC, ¶¶ 804(d)–(g).) Such allegations must be pleaded with particularity in accordance with Rule 9(b). Plaintiff does not meet that standard. The SFC identifies no statement—let alone a false one—made by UofL Health. Rather, it only generally alleges that Defendants misrepresented that they would protect the privacy and confidentiality of Plaintiff's and Kentucky Subclass Members' information, as well as Defendants' purported misrepresentation that they would abide by common law duties pertaining to the same. (*Id*. at ¶¶ 804(d)–(e).) As pleaded, the KCPA claim fails to identify the "who, what, where, when, and how" of the alleged fraud. Further, the SFC fails to identify which defendant made the alleged misrepresentation. As this Court previously held, this amounts to nothing more than impermissible group pleading. (Order, pp. 32–33.) Indeed, the Court dismissed the misrepresentation-based prongs of Plaintiffs' Florida, Indiana, and New York consumer-protection claims because Plaintiffs failed to "identify any statements made by the [HCPs]." (*Id*. at pp. 42, 47.)

Plaintiff's omission theory fares no better. An allegation that a defendant fraudulently "[o]mitt[ed], suppress[ed], and conceal[ed]" material facts sounds in fraud and must be pleaded with particularity as to each defendant. *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1076 (8th Cir. 2018). But the SFC never alleges what UofL Health knew about the inadequacy of Oracle Health's data security, when UofL Health learned it, what duty required disclosure, or how UofL Health concealed such information from Plaintiff. (SFC, ¶¶ 804(f)–(g).) These allegations fail to plausibly allege a fraud-based claim against UofL Health.

### C. Plaintiff's KCPA Claim Fails for Lack of Causation

Finally, while Plaintiff describes "Defendants'" actions as those that "had, and continue to have, the tendency or capacity to deceive" (*id.* at ¶ 805), even recasting the KCPA claim as a failure to implement reasonable safeguards cannot rectify the causation problem. The KCPA requires an ascertainable loss *caused* by the alleged deceptive practice. Ky. Rev. Stat. § 367.220(1); *see Corder v. Ford Motor Co.*, 869 F. Supp. 2d 835, 838 (W.D. Ky. 2012). Inadequate data security, alone, cannot proximately cause a plaintiff's injury as "personal information would not have been disclosed" but-for "the actions of a third party." *Lurry*, 2024 WL 2965642, at *8.

The result is no different here. Plaintiff alleges that the incident occurred on Oracle Health's systems, that UofL Health transmitted patient information to Oracle Health as its electronic-health-record vendor, and that Oracle Health later informed UofL Health of unauthorized access to information maintained on Oracle Health's system. (SFC, ¶¶ 765, 768, 774.) These allegations do not plausibly establish that any deceptive act by UofL Health caused Plaintiff's alleged injury. Even so, Plaintiff acknowledged that the Cerner Incident—that is, Oracle Health's servers being hacked and data exfiltrated therefrom—resulted from "cybercriminals . . . accessing the Private Information." (Consol. Compl., ¶ 2; SFC, ¶ 780.) Absent this causal nexus, the KCPA claim fails. *See Lurry*, 2024 WL 2965642, at *8.

For each of these reasons, Plaintiff's KCPA claim should be dismissed, with prejudice.

## VI. Conclusion

UofL Health respectfully requests that this Court grant its Motion to Dismiss Counts II and VII incorporated through the Consolidated Complaint and the SFC's additional cause of action asserted under the KCPA, with prejudice.

Respectfully submitted,

**LEWIS RICE LLC**

Dated: September 28, 2026

By: */s/ Neal F. Perryman*

Neal F. Perryman, #43057
Michael L. Jente, #62980
Jared A. Gillen, #76621
600 Washington Avenue, Suite 2500
St. Louis, MO 63101
(314) 444-7661
(314) 612-7661 (facsimile)
nperryman@lewisrice.com
mjente@lewisrice.com
jgillen@lewisrice.com

*Attorneys for Defendant University Medical Center, Inc. d/b/a University of Louisville Hospital*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing pleading was served via this Court's electronic filing system on this 28th day of September, 2026, on all counsel of record in this case.

/s/ *Neal F. Perryman*