**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

**IN RE: CERNER/ORACLE DATA BREACH LITIGATION**

No. 25-00259-CV-W-BP

**DEFENDANT, LAKE REGIONAL HEALTH SYSTEM'S SUGGESTIONS IN SUPPORT OF MOTION TO INCORPORATE AND PRESERVE ARGUMENTS FOR APPEAL**

**FANCHER, et al. v. LAKE REGIONAL HEALTH SYSTEM, et al.**

---

**DEFENDANT, LAKE REGIONAL HEALTH SYSTEMS'S SUGGESTIONS IN SUPPORT OF MOTION TO INCORPORATE AND PRESERVE ARGUMENTS FOR APPEAL**

## I. INTRODUCTION

Defendant, Lake Regional Health System, ("Lake Regional") was one of many healthcare providers impacted by a data security incident experienced by Cerner Corporation, d/b/a Oracle Health ("Cerner") on or about January 22, 2025. Like many, if not most, of such providers, Lake Regional now finds itself named as a Defendant in the instant litigation.

Cerner has long been a premier provider of electronic health record ("EHR") services to healthcare providers nationwide. In the course of such operations, providers such as Lake Regional relied upon Cerner to securely store certain personal information belonging to its patients. The subject security incident impacted a repository of such information, and as such, Cerner's data security incident ("Cerner Incident") led to a cascade of impact downstream. This effect unfortunately includes Lake Regional.

At the outset, Lake Regional clarifies that it understands that this Honorable Court ruled on Cerner's Motion to Dismiss and Healthcare Provider Defendants' Motion to Dismiss.[1] ECF 394. Lake Regional does not seek to relitigate the issues decided. Rather, Lake Regional reasserts arguments as set forth below for purposes of preserving for appeal the claims of Plaintiffs, Emily Fancher and Judith Ann Hosto (Plaintiffs) as plead against Lake Regional.

## II. RELEVANT FACTS AND PROCEDURAL HISTORY

---

[1] Lake Regional was not one of the healthcare provider defendants on whose behalf the referenced Motion to Dismiss was filed. *See* ECF 163.

On January 14, 2026, Plaintiffs filed their Class Action Complaint ("CAC") in this Honorable Court, and on January 15, 2026, Plaintiffs' action was consolidated into the subject consolidated action, *In re: Cerner/Oracle Data Breach Litigation*. ECF 155. Of note, Plaintiffs and Lake Regional were not named parties to the Consolidated Class Action Complaint ("CCAC"). ECF 93. Therefore, Healthcare Provider Defendants' Motion to Dismiss, filed on January 16, 2026, did not involve or address Plaintiffs' claims or Lake Regional's arguments. *See* ECF 163.

On June 22, 2026, this Honorable Court issued its ruling on Cerner's Motion to Dismiss and the Healthcare Provider Defendants' Motion to dismiss. ECF 394. Following this Court's ruling, the parties filed a Joint Status Report and Proposed Schedule ("Briefing Schedule"). ECF 418. Per the Briefing Schedule, Plaintiffs filed their Short Form Complaint ("FAC") on August 28, 2026. ECF 468. Lake Regional now seeks to incorporate here Cerner's Suggestions in Support of Motion to Dismiss, incorporate Healthcare Provider Defendants' Suggestions in Support of Their Motion to Dismiss, and preserve arguments in relation to Plaintiffs claims against Lake Regional for appeal.

In their FAC, Plaintiffs allege that they are current patients of Lake Regional. FAC at ¶¶ 782, 801. They each allege receiving a Notice of Data Breach from Lake Regional. *Id.* at ¶¶ 789, 808. Without specifying which of their personally identifiable information ("PII") or protected health information ("PHI") was potentially impacted in the Cerner Incident, Plaintiffs plead generally "at least" what types of PII or PHI were potentially compromised. *See id.* at ¶ 772. Plaintiffs plead, again in noncommittal fashion, that "on information and belief, Plaintiff[s'] [PII and PHI have] already been published—or will be published imminently—by cybercriminals on the Dark Web." *Id.* ¶¶ 790, 809. Yet, Plaintiffs do not plead any fraud, misuse or identity theft nor any other factual support for any of their other claims of injury, such as diminished value or money

spent. *See id.* at ¶¶ 792, 796-799, 811, 814-848. Plaintiffs also claim a "spike" in spam emails, text messages and telephone calls without alleging that their email address or telephone numbers were potentially impacted. *See id.* at ¶¶ 772, 793, 794, 812. The claims asserted against Lake Regional are for negligence, negligence per se, breach of implied contract, and breach of fiduciary duty. *Id.* at ¶¶ 760. Plaintiffs conclude by demanding relief that includes monetary damages and equitable relief. ECF 93.

## III. PRESERVATION OF ARGUMENTS

### A. Lack of Standing

Lake Regional hereby incorporates by reference the arguments made in Cerner's Motion to Dismiss addressing Plaintiffs' lack of standing to bring these claims. ECF 161. Those arguments are equally applicable to Lake Regional. In particular, Plaintiffs fail to establish any sufficiently concrete injury in their pleadings to establish an injury in fact by failing to either allege an imminent injury or any actual harm.

To establish standing, a plaintiff must have suffered an injury in fact that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical[]' . . . ." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992). "[A]llegations of possible future injury" alone are insufficient to establish standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). Plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *Warth v. Seldin*, 422 U.S. 490, 502 (1975).

#### i. *Plaintiffs Fail to Sufficient Allege an Imminent Injury*

In their FAC, Plaintiffs allege that they suffered *imminent* and *impending* injury due to "the substantially increased risk of fraud, misuse, and identity theft." FAC at ¶ 770, 799 (emphasis

added)[2] They plead "on information and belief, [their] Private information has already been published—or will be published imminently—by cybercriminals on the Dark Web." *Id.* at ¶ 790. Approximately twenty months after the Cerner Incident, Plaintiffs have not plead any allegations of actual instances of fraud, misuse, or identity theft that have occurred in nearly two years. The persistent reference to events that may, or indeed may not, someday come to pass underscores Plaintiffs' inability to plead that any fraud, misuse, or identity theft has occurred or is impending. In data privacy litigation, unauthorized disclosure alone is insufficient to establish that the risk of future identity theft is substantial. *See In re SuperValu, Inc.*, 870 F.3d 763, 770 (8th Cir. 2017) ("*SuperValu I"*). Conversely, where Plaintiffs cannot plead any fraud, misuse, or identity theft after twenty months have passed, any hypothetical injury can hardly be said to be imminent.

Furthermore, Plaintiffs plead generally what data elements were involved in the Cerner Incident, but they fail to plead which of *their* data elements were involved in the Cerner Incident. Plaintiffs do not plead whether their Social Security numbers were implicated in the Cerner Incident or, alternatively, the unclearly defined "other information used to provide care." *Id.* at ¶ 772. As they have not pleaded what information was actually involved in the Cerner Incident with specificity, they fail to establish how they are at risk for identity theft. The vague nature of Plaintiffs' pleadings reasonably leads to a conclusion that Plaintiffs' impacted information was limited to non-sensitive personal information, or "basic contact information [that] can be obtained

---

[2] Of note, the word *imminent* is one of specific and significant meeting. As defined by Merriam-Webster, imminent means "ready to take place" or "happening soon" and is "often used of something bad or dangerous seen as menacingly near." www.merriam-webster.com/dictionary/imminent (last accessed September 28, 2026). As set forth in Plaintiffs' Complaint, the Cerner Incident occurred in January of 2025, approximately twenty months prior to the date of this writing. Nearly two years after a triggering event, the purported future harms that have not yet manifested cannot truly be said to be either *imminent* or *impending*.

from any number of sources," *Negron v. Ascension Health*, 2025 WL 2710014, at *6 (E.D. Mo. Sept. 23, 2025)—rather than sensitive information such as Social Security numbers.

ii. *Plaintiffs Fail to Plead an Actual Injury*

Indeed, Plaintiffs only actual injury as plead in their FAC is a "spike" in spam and scam emails, text messages and phone calls. FAC at ¶ 793, 812. As a threshold matter, "a spike in unsolicited marketing and cyber ploys received by phone, email, and messaging applications is not an actual harm sufficient to confer standing." *Prestby v. A&A Services, LLC,* 2026 WL 26128, at *9 (D. Neb. Jan. 5, 2025). Plaintiffs do not plead anywhere in their Amended Complaint that their telephone numbers or email addresses were involved in *this* data security incident, either. *See* FAC at ¶ 772. Nonetheless, by pleading a "spike" in emails, text messages and phone calls, Plaintiffs admit that they were already receiving spam and scam emails, text messages and phone calls.

Lastly, the remainder of Plaintiffs' alleged injuries fail to establish an actual injury as plead. Plaintiffs' prophesized mitigation efforts concerning time and money that they "*anticipate[]*" will be spent fail to establish an injury where they are based on a conjectural harm. FAC at ¶ 799, 818 (emphasis added). *See SuperValu I*, 870 F.3d at 771 (finding that costs incurred to mitigate risk of identity theft following a data breach, including time spent revieing information about the breach or monitoring account information, fail to constitute an injury in fact for purposes of standing because time spent "protecting . . . against this speculative threat cannot create an injury."). Plaintiffs' conclusory claims of emotional distress are insufficient to confer standing. *See Hekel v. Hunter Warfield, Inc.*, 118 F.4th 938, 943 (8th Cir. 2024) (holding that allegations of emotional or psychological harm, particularly where they are conclusory and devoid of further factual enhancement, are not themselves injuries sufficient to establish standing). Claims of diminished

value without providing either the value of their information before the Cerner Incident or after—much less a legal marketplace for them to sell their information or an intent to sell their information in the future—fail to establish any actual injury to confer Article III standing. *Colley v. Neighbors Credit Union*, 2026 WL 864583, at *5 (E.D. Mo. March 30, 2026) (finding that the plaintiffs did not allege any legitimate market in existence for the type of PII involved nor did the plaintiffs plausibly allege an intent to sell their PII, and the plaintiffs therefore did not allege a type of harm sufficient to have standing to assert damages arising from the diminished value of their PII); *see also Kaplan v. U.S. Bank, N.A.,* 166 S.W.3d 60, 71-72 (Mo. App. Ct. 2003) (stating the sundry rule that diminished value is the difference between the fair market value of the property immediately before and immediately after the injury).

In short, Plaintiffs fail to plead any support for future fraud, misuse, or identity theft to demonstrate that future injury is imminent rather than speculative, and indeed fail to demonstrate any actual, cognizable injury. "Massive class action litigation should be based on more than allegations of worry and inconvenience." *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 718 (8th Cir. 2017). Therefore, Plaintiffs' claims should be dismissed for lack of standing.

**B. Failure to State a Claim**

A plaintiff's complaint need not include a specific accounting, but it must set forth a plausible claim of relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). The plausibility standard asks for "more than a sheer possibility that a defendant has acted unlawfully." *Id.* In the instant matter, Plaintiffs fail to include sufficient factual

matter in their FAC to state a claim for negligence, negligence per se, breach of implied contract, and breach of fiduciary duty.

*i. Count I – Negligence*

Lake Regional hereby incorporates by reference the arguments made in Healthcare Provider Defendants' Motion to Dismiss addressing Plaintiffs' failure to plead a claim for negligence. ECF 163. It further hereby incorporates by reference the arguments made in Cerner's Motion to Dismiss addressing the lack of a duty to protect against the criminal acts of third parties. ECF 161. Those arguments are equally applicable to Lake Regional here. In particular, Plaintiffs fail to allege the elements of duty, breach, and injury, and therefore fail to establish a claim for negligence against Lake Regional. *See Rosemann v. Sigillito*, 2011 WL 13248373, at *22 (E.D. Mo. Oct. 31, 2011) (noting that the elements of negligence included the existence of a legal duty, breach of that duty, proximate cause between the breach and resulting injury, and resulting damages).

a. *Plaintiffs Fail to Allege that Lake Regional Breached a Duty to Provide Data Security*

Lake Regional does not have a duty to thwart the criminal acts of third parties—much less when the criminal actors perpetrate their crime against a vendor instead of Lake Regional—even if such acts may be foreseeable or have occurred in the healthcare industry before. *See Keenan v. Miriam Foundation*, 784 S.W.2d 298, 302 (Mo. App. Ct. 1990) (asserting the general rule that there is no duty to exercise any care against the criminal acts of a third person and recognizing that crime is foreseeable in society, and in the context of premise liability, the fact that crimes, in general, have occurred in an area or that a business is located in a high crime area is insufficient to invoke the duty). No exception exists to the general rule that Lake Regional owes no duty to protect against the criminal conduct of unknown third parties because no special relationship, as recognized under Missouri law, exists. *See Meadows v. Friedman R.R. Salvage Warehouse, Div. of*

*Friedman Bros. Furniture Co., Inc.*, 655 S.W.2d 718, 721 (Mo. App. Ct. 1983) (finding that delineated relationships that qualify as special relationships include those of innkeeper-guest, common carrier-passenger, school-student, and sometimes, employer-employee). Federal courts sitting in diversity should not expand state law "in ways not foreshadowed by state precedent." *Colley*, 2026 WL 864583, at *13.

Nevertheless, Plaintiffs allege that Lake Regional, which they cluster with Cerner, "failed in their duties when their inadequate security practices caused the Data Breach," and that negligence was simply "evidenced by their failure to prevent the Data reach and stop cybercriminals from accessing the [PII and PHI]." FAC at ¶ 776. The mere occurrence of a data security incident is not indicative of negligence. *See Kuhns*, 868 F.3d at 717 (holding that a plaintiff fails to plead sufficient factual matter to state a claim of relief that is plausible on its face where it relies on implied premise that, because data was hacked, a defendant's protection must have been inadequate). Plaintiffs offer no other factual support to demonstrate that Lake Regional breached a duty owed to Plaintiffs, and "naked assertions devoid of further factual enhancement" cannot survive a motion to dismiss. *See id.* (quoting *Iqbal*, 556 U.S. 662, 678 (2009)).

Therefore, Plaintiffs fail to allege that Lake Regional breached a duty and, accordingly, fail to state a claim for negligence.

b. *Plaintiffs Fail to Allege Any Injury*

As detailed *supra*, Plaintiffs fail to allege any actual injury as a result of the Cerner Incident. Therefore, as Plaintiffs fail to allege any cognizable injury as a result of the Cerner Incident, an element of negligence, Plaintiffs fail to allege that Lake Regional was negligent.

*ii. Count II - Negligence Per Se*

Lake Regional hereby incorporates by reference the arguments made in Healthcare Provider Defendants' Motion to Dismiss addressing Plaintiffs' failure to plead a claim for Negligence *Per Se*. ECF 163. Under Missouri law, only statutes that create a private right of action can serve as the basis for a negligence *per se* claim. *Colley*, 2026 WL 864583, at *13; *Howland v. Truman Med. Ctr., Inc.*, 719 S.W.3d 98, 109 (Mo. Ct. App. 2025); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010).

Importantly, HIPAA also does not create a standard of care. Under Missouri law, negligence *per se* arises where the legislature has statutorily pronounced what the conduct of a reasonable person should be. *Negron v. Ascension Health*, 2025 WL 2710014, at *9 (E.D. Mo. Sept. 23, 2025). As the *Negron* Court recognized, the standards related to HIPAA security considerations, procedures and practices come from Federal regulations rather than Congress. *Negron,* 2025 WL 2710014, at *10. These Federal regulations again do not set forth a standard of care but rather provide that a covered entity "must have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information" and "must reasonably safeguard protected health information" without stating what constitutes a reasonable safeguard. *See* 45 C.F.R. § 164.530(c)(1), (c)(1)(ii). In fact, the regulations state that "[c]overed entities and business associates may use any security measures that allow the covered entity to reasonably and appropriately implement . . . standards . . ." before telling said covered entities or business associates what factors they must "take into account." 45 C.F.R. § 164.306(b)(1)-(2). Neither the HIPAA statute itself nor the accompanying regulations actually forth a duty of care related to data security, making HIPAA and its regulations distinct from statutes that specifically pronounce what action an actor shall or shall not take and that can be used to establish a standard of care, such as motor vehicle codes. *See, e.g., Lincoln v. Railway Express Agency, Inc.,* 359 S.W. 2d 759, 764-65

(Mo. 1962); *Loveless v. Berberich Delivery Co.*, 73 S.W.2d 790, 793 (Mo. 1934); *see also Negron,* 2025 WL 2710014, at *10 (noting that a statute can establish a standard of care where the legislature intended for the statute to establish the standard of care). An alleged violation of HIPAA is therefore not the type of statutory violation that may constitute negligence *per se* under Missouri law. *See generally Parr v. Breedeen,* 489 S.W.3d 774, 781 (Mo. 2016) (en banc) (holding that a violation of a statute or rule that is a legislative or administrative pronouncement of the standard of care may constitute a breach of the duty of care).

Accordingly, Plaintiffs fail to state a claim for negligence *per se* by claiming a violation of HIPAA.

*iii.* *Count IV - Breach of Implied Contract*

Lake Regional hereby incorporates by reference the arguments made in Healthcare Provider Defendants' Motion to Dismiss addressing Plaintiffs' failure to plead a claim for Breach of Implied Contract. ECF 163. To state a claim for breach of implied contract, Plaintiffs must plead the existence of a valid contract, the rights of Plaintiffs and obligations of Lake Regional under the contract, a breach by Lake Regional, and resulting damages. *See Nickel v. Stephens College*, 480 S.W.3d 390, 397 (Mo. App. Ct. 2015).

Plaintiffs fail to plead the formation of a contract, including what portion of Lake Regional's services or payment to Lake Regional for such services were for data management and security. *See Kuhns*, 868 F.3d at 718. Plaintiffs similarly fail to plead how Lake Regional did not adequately safeguard PII and PHI. *Id*. Furthermore, Plaintiffs fail to plead any contract damages as no fraud, misuse or identity theft has occurred in the twenty months since the Cerner Incident. *See id.*

To the extent that Plaintiffs base the existence of an implied contract on Lake Regional's "Privacy Policy," Plaintiffs' claims of an implied contract fail. General statements or notices of compliance are not tantamount to a contractual covenant. *See Petro v. Palmer Coll. of Chiropractic*, 945 N.W.2d 763, 780 (Iowa 2020) ("The general statements of nondiscrimination in the online application and the equal opportunity policy quoted earlier do not give rise to contractual liability.").

As such, Plaintiffs fail to state a claim for breach of implied contract against Lake Regional.

*iv.* *Count VII - Breach of Fiduciary Duty*

Lake Regional hereby incorporates by reference the arguments made in Healthcare Provider Defendants' Motion to Dismiss addressing Plaintiffs' failure to plead a claim for Breach of Fiduciary Duty. ECF 163. Under Missouri law, a plaintiff must establish a fiduciary duty that existed between the parties, a breach by the defendant, and resulting harm from the breach in order to prevail on a breach of fiduciary claim. *Dibrill v. Normandy Associates, Inc.*, 383 S.W.3d 77, 86 (Mo. App. Ct. 2012). The question of whether a fiduciary or confidential relationship exists turns on whether or not trust is reposed with respect to property or business affairs of the other. *Id.* (internal quotation omitted). "There is . . . a fiduciary duty of confidentiality owed by a treating physician to his or her patients not to disclose information received in connection with treatment." *State ex rel. Dean v. Cunningham*, 182 S.W.3d 561, 566 (Mo. 2006) (en banc).

Plaintiffs do not allege the disclosure of any information received in connection with treatment provided by Lake Regional. Indeed, Plaintiffs fail to specify the nature of any information *belonging to Plaintiffs* that was purportedly impacted. As such, Plaintiffs fail to establish a disclosure of any information within the scope of the fiduciary duty. Plaintiffs' allegations therefore fall outside the scope of any fiduciary relationship between Plaintiffs and

Lake Regional where the Cerner Incident occurred exclusively on Cerner's systems. Furthermore, as set forth at length herein, Plaintiffs did not suffer an injury in fact as a result of any disclosure.

Accordingly, Plaintiffs fail to state a claim for breach of fiduciary duty against Lake Regional.

## IV. CONCLUSION

Plaintiffs fail to establish standing or state a claim as against Lake Regional. Therefore, Lake Regional preserves its appellate rights to challenge Plaintiff's standing and claims.

Dated: September 28, 2026

Respectfully submitted,

/s/Clayton T. Fielder
Clayton T. Fielder, Esquire
Hennessy & Roach, P.C.
10801 Mastin St., Ste 120
Overland Park, KS 66210
Telephone: (913) 318-6361
cfielder@hennessyroach.com

Jill H. Fertel, Esq. (*pro hac vice*)
Sarah K. Adams, Esq. (*pro hac vice*)
**KLA LEGAL, LLP**
325 Sentry Parkway
Building 5 West, Ste. 200
Blue Bell, PA 19422
Tel: (610) 472-0240
Email: jill.fertel@klalegal.com
Sarah.adams@klalegal.com