**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI WESTERN DIVISION**

| | |
|---|---|
| IN RE: CERNER/ORACLE DATA BREACH LITIGATION | Case No. 25-00259-CV-W-BP |
| CHASE STOUT and LISA ADDI, and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br>CERNER CORPORATION d/b/a ORACLE HEALTH and CHRISTIANA CARE HEALTH SERVICES, INC.,<br><br>Defendants. | This filing relates to lead case No. 4:25-cv-00259-W-BP, and to member case No. 4:26-cv-00098 |

**DEFENDANT CHRISTIANA CARE HEALTH SERVICES, INC.'S SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

I. Introduction ........................................................ 1
II. Procedural Background ........................................................ 2
III. Relevant Factual Allegations ........................................................ 2
IV. Standard of Review ........................................................ 4
V. Choice of Law ........................................................ 4
VI. Argument ........................................................ 7
A. Plaintiffs Fail To State a Claim For Negligence *Per Se* (Count II) ........................................................ 7
B. Plaintiffs' Breach of Fiduciary Duty Claim Fails (Count VII) ........................................................ 8
C. Plaintiff Addi Fails To State A Claim Under Maryland's Personal Information Protection Act ........................................................ 9
D. Plaintiff Addi's MCPA Claim Fails ........................................................ 10
1. Plaintiff Addi's Deceptive Practices Allegations Lack Particularity ........................................................ 11
2. Plaintiff Addi Failed to Allege an Actual Injury Resulting from Christiana Care's Conduct ........................................................ 14
VII. Conclusion ........................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aclate, Inc. v. Eclipse Mktg. LLC*,
2020 WL 6158579 (D. Del. Oct. 21, 2020) .......... 5

*ARC Global Investments II, LLC v. Digital World Acquisition Corp.*,
2024 WL 4212709 (Del. Ch. Sept. 16, 2024) .......... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4, 13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Berry v. Crescent Cmty. Health Ctr.*,
2025 WL 1287909 (N.D. Iowa May 2, 2025) .......... 13

*Bryant v. Koppers, Inc.*,
627 F. Supp. 3d 466 (D. Md. 2022) .......... 13

*Chubb & Son v. C & C Complete Servs., LLC*,
919 F. Supp. 2d 666 (D. Md. 2013) .......... 12

*Doe v. Bayhealth Med. Ctr., Inc.*,
2025 WL 1010403 (Del. Super. Ct. Apr. 4, 2025) .......... 7

*Fanean v. Rite Aid Corp. of Delaware*,
984 A.2d 812 (Del. Super. Ct. 2009) .......... 7

*Ferens v. John Deere Co.*,
494 U.S. 516 (1990) .......... 5

*Grunstein v. Silva*,
2009 WL 4698541 (Del. Ch. Dec. 8, 2009) .......... 9

*Hoffman v. Stamper*,
867 A.2d 276 (Md. App. 2005) .......... 15

*Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*,
854 A.2d 1232 (Md. App. 2004) .......... 14

*In re Crop Inputs Antitrust Litig.*,
172 F.4th 570 (8th Cir. 2026) .......... 11

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022)........................................................................ 6

*In re Target Corp. Customer Data Sec. Breach Litig.*,
309 F.R.D. 482 (D. Minn. 2015)................................................................................ 6

*Innovations Surgery Center, P.C. v. United Healthcare Ins. Co.*,
722 F. Supp. 3d 582 (D. Md. 2024) ......................................................................... 10

*Khan v. Children's Nat'l Health Sys.*, Order on Motion to Dismiss
Case No. 405614V (Md. Cir. Ct. Sept. 23, 2016)...................................................... 14

*Kuhns v. Scottrade, Inc.*,
868 F.3d 711 (8th Cir. 2017) .................................................................................... 13

*Lloyd v. Gen. Motors Corp.*,
917 A.2d 257 (Md. App. 2007).................................................................................. 14

*Mohamed v. Bank of Am., N.A.*,
771 F. Supp. 3d 695 (D. Md. 2025) ...........................................................................11

*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010)........................................................................................... 9

*O'Neal v. Buckner*,
2021 WL 681434 (W.D. Mo. Feb. 22, 2021) ...............................................................11

*Polek v. JP. Morgan Chase Bank, N.A.*,
36 A.3d 399 (Md. App. 2012)..................................................................................... 14

*Prudential Ins. Co. of Am. v. Kamrath*,
475 F.3d 920 (8th Cir. 2007) ........................................................................................ 5

*Ritchie Cap. Mgmt., L.L.C. v. JP Morgan Chase & Co.*,
960 F.3d 1037 (8th Cir. 2020) ...................................................................................... 5

*Roberson v. Dakota Boys & Girls Ranch*,
42 F.4th 924 (8th Cir. 2022)........................................................................................... 4

*Sammons v. Ridgeway*,
293 A.2d 547 (Del. 1972) .............................................................................................. 7

*Schaaf v. Residential Funding Corp.*,
517 F.3d 544 (8th Cir. 2008)........................................................................................... 4

*Stewart v. Bierman*,
859 F. Supp. 2d 754 (D. Md. 2012), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297
(4th Cir. 2013)............................................................................................................. 10

*Taylor v. Royal Ins. Co.*,
235 F. Supp. 891 (W.D. Mo. 1964) ........................................................................... 4

*TL of Fla., Inc. v. Terex Corp.*,
54 F. Supp. 3d 320 (D. Del. 2014) ........................................................................... 5

*Toll Bros. v. Considine*,
706 A.2d 493 (Del. 1998) ........................................................................................ 7

*Williams v. DistroKid, LLC*,
2025 WL 3028268 (D. Md. Oct. 29, 2025) ............................................................ 12

*Wood v. Blue Diamond Growers*,
722 F. Supp. 3d 554 (D. Md. 2024) ...................................................................11, 12

**Statutes**

45 C.F.R. §§ 164.308(b)(1), (b)(3), 164.502(e) ................................................................ 8

FTC Act ........................................................................................................2, 7, 11, 13

HIPAA ............................................................................................................... 2, 7, 8

Maryland Consumer Protection Act (“MCPA”) ............................................................ passim

Maryland Personal Information Protection Act (“MPIPA”) .......................................... 3, 9, 10

**Other Authorities**

Restatement (Second) of Conflict of Laws § 145 ........................................................... 5

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ................................................................ 2, 4

Federal Rule of Civil Procedure 9(b) ...........................................................2, 11, 12

## I. Introduction

Plaintiffs' Short Form Complaint ("SFC") incorporates four common-law claims from the Consolidated Class Action Complaint ("CCAC") and asserts two additional statutory claims under Maryland law against Defendant Christiana Care Health Services, Inc. ("Christiana Care").[1] Plaintiffs also assert claims directly against Defendant Cerner Corporation ("Cerner"). The claims arise from a January 2025 data security incident involving Cerner's systems (the "Cerner Incident"). Like the other healthcare provider defendants in this consolidated litigation, Christiana Care retained Cerner as its electronic health records ("EHR") vendor, and Plaintiffs allege a criminal threat actor accessed patient information maintained within Cerner's systems during the Cerner Incident.

Christiana Care recognizes the Court's order on the Healthcare Provider Defendants' Motion to Dismiss the CCAC resolved several arguments previously raised by healthcare provider defendants named in the CCAC. *See* ECF No. 394.[2] To avoid duplicative briefing, this

---

[1] Although Plaintiffs also incorporate by reference the unjust enrichment (Count V), invasion of privacy (Count VIII), and declaratory judgement (Count IX) claims in the SFC, they acknowledge those claims have already been dismissed in their entirety (ECF No. 394). They do not ask the Court to reconsider that ruling, which applies equally here, but include the claims solely to preserve any appellate rights. SFC nn. 2, 4-6. As a result, Christiana Care does not separately brief the dismissal of these particular counts as it understands the Court's ruling dismissing those claims is being applied in favor of all the healthcare provider defendants, including Christiana Care, who have been named in Short Form Complaints.

[2] Christiana Care is mindful of the Court's Order on the Motion to Dismiss the Consolidated Class Action Complaint, including its ruling that the negligence (Count I), breach of implied contract (Count IV), and breach of fiduciary duty (Count VII) claims could proceed against the Healthcare Provider Defendants named in that pleading. *See* ECF No. 394. Here, Plaintiffs' allegations supporting those claims against Christiana Care largely mirror the allegations previously asserted in the Consolidated Class Action Complaint. *See* SFC ¶ 760. For the additional reasons set forth in the Healthcare Provider Defendants' Motion to Dismiss briefing (ECF Nos. 162 and 250), which Christiana Care incorporates by reference, Plaintiffs fail to state viable claims, and those claims should be dismissed. Christiana Care raises these arguments to preserve its appellate rights with respect to the Court's ruling declining to dismiss those claims.

motion focuses on distinct allegations against Christiana Care and unique choice of law issues and deficiencies that require dismissal of Plaintiffs' claims. Under Delaware law, Plaintiffs cannot proceed on a negligence *per se* theory predicated on alleged violations of HIPAA or the FTC Act, and in any event, Plaintiffs do not plausibly allege that Christiana Care violated HIPAA—much less that any Christiana Care-specific HIPAA violation caused the Cerner Incident; under Delaware law, Plaintiffs' fiduciary duty claim fails because it is duplicative of Plaintiffs' breach of implied contract claim; and Plaintiff Addi's Maryland statutory claims fail because she has not alleged an actionable violation.

For these reasons, and for substantially similar reasons underlying the Court's prior dismissal of portions of the same or analogous claims, *see* No. ECF 394, Christiana Care respectfully requests that the Court dismiss Plaintiffs' claims against it under Rule 12(b)(6) and, where applicable, Rule 9(b).

## II. Procedural Background

Plaintiffs filed the initial complaint on December 17, 2025 in the United States District Court for the District of Delaware. 1:25-cv-01522-JLH (D. Del.). The case was transferred to this Court on February 5, 2026, *see* Case No. 4:25-cv-00098-BP (W.D. Mo.), ECF No. 10. On February 6, 2026, the Court consolidated the case. ECF No. 201. On August 28, 2026, Plaintiffs filed the operative SFC. ECF No. 453.

## III. Relevant Factual Allegations

The Court is familiar with the underlying facts underlying the Cerner Incident and Christiana Care does not repeat them here. In brief, Plaintiffs' claims arise from a January 2025 cybersecurity incident involving Cerner's electronic health record platform, through which unauthorized actors allegedly accessed certain patient information, including that of Christiana

Care's patients.

As part of the Short Form Complaint process, Plaintiffs incorporated portions of the CCAC[3] and adds allegations specific to themselves and Christiana Care. Plaintiffs assert claims against Christiana Care for negligence (Count I), negligence *per se* (Count II), breach of implied contract (Count IV), and breach of fiduciary duty (Count VII).[4] On behalf of Maryland-resident Plaintiff Addi, the SFC also asserts claims against Christiana Care under the Maryland Personal Information Protection Act ("MPIPA") and the Maryland Consumer Protection Act ("MCPA").

With respect to Christiana Care, Plaintiffs allege that they provided personal and medical information to Christiana Care in connection with receiving healthcare services, later received a breach notification letter, and thereafter spent time monitoring their accounts and investigating the Cerner Incident. *See generally* SFC ¶¶ 761-62, 777-82, 789-94. Plaintiffs further allege injuries including loss of privacy, diminution in value of their personal information, emotional distress, increase in spam calls and texts, and an increased risk of future misuse of their information. *Id.* ¶¶ 782-88, 793-97, 799. In addition, Plaintiff Addi alleges that she opened a new bank account after being "contacted by her banking institution and informed that her account had been compromised." *Id.* ¶ 798.

Apart from these allegations, the SFC contains few allegations specific to Christiana Care and instead incorporates broad allegations from the CCAC. Plaintiffs broadly allege that

---

[3] The SFC expressly incorporates the CCAC's Introduction (¶¶ 1-7), Jurisdiction and Venue allegations (¶¶ 341-343), Factual Allegations (¶¶ 344-458), Class Action Allegations (¶¶ 459-471), as well as the Prayer for Relief and Jury Demand.

[4] The SFC acknowledges that claims previously addressed and dismissed by the Court's order on the Healthcare Provider Defendants' Motion to Dismiss (ECF No. 394), including the Court's dismissal in its entirety of unjust enrichment (Count V), invasion of privacy (Count VIII), and declaratory judgment (Count IX) claims, remain subject to that ruling while preserving Plaintiffs' appellate rights.

Christiana Care maintained patient information, shared patient information with Cerner in connection with healthcare services, and failed to adequately safeguard that information by. *Id.* ¶¶ 765-76. The SFC does not identify any particular act or omission by Christiana Care that allegedly caused or contributed to the Cerner Incident, nor any particular representation or omission by Christiana Care that they contend is false or deceptive. *See, generally*, SFC.

With respect to their claims against Christiana Care Plaintiffs both seek to represent a nationwide class, Plaintiff Stout also seeks to represent a Delaware subclass, and Plaintiff Addi seeks to represent a Maryland subclass of individuals whose personal information was provided to Cerner by Christiana Care and was compromised in the Cerner Incident. *Id.* ¶¶ 802-03.

## IV. Standard of Review

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6). A complaint "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). "'[N]aked assertions devoid of further factual enhancement,' do not suffice, nor do '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678).

## V. Choice of Law

In assessing Plaintiffs' common law claims against Christiana Care, as a threshold matter, the Court must determine whether Missouri or Delaware law governs. Ordinarily, a federal court sitting in diversity applies the choice-of-law rules of the forum state. *See Taylor v. Royal Ins. Co.*, 235 F. Supp. 891, 893 (W.D. Mo. 1964). However, in cases like this where the case has

been transferred from another court under 28 U.S.C. § 1404(a), the transferee court applies the choice-of-law principles of the state in which the original action was filed. *Ferens v. John Deere Co.*, 494 U.S. 516 (1990); *accord Ritchie Cap. Mgmt., L.L.C. v. JP Morgan Chase & Co.*, 960 F.3d 1037, 1047 (8th Cir. 2020). Because this case was transferred from the United States District Court for the District of Delaware, Delaware's choice-of-law rules apply.

"Before applying [a] state's choice-of-law rules, however, a trial court must first determine whether a conflict exists." *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007) (citation omitted). As addressed further below, there is a conflict that is outcome determinative. Delaware law requires dismissal of Plaintiffs' negligence (Count I), negligence *per se* (Count II), breach of implied contract (Count IV), and breach of fiduciary duty (Count VII) claims against Christiana Care, whereas the Court previously allowed those same categories of claims to proceed in part against other healthcare provider defendants under Missouri law.

If as here, a conflict exists, Delaware applies the significant relationship test set forth in section 145 of the Restatement (Second) of Conflict of Laws. *See Aclate, Inc. v. Eclipse Mktg. LLC*, No. CV 20-576-RGA, 2020 WL 6158579, at *3 (D. Del. Oct. 21, 2020); *TL of Fla., Inc. v. Terex Corp.*, 54 F. Supp. 3d 320, 327 (D. Del. 2014). The test applies to both tort and contract claims. As to tort claims, the test considers the place of injury, the place where the conduct causing the injury occurred, the domicile, residence, the place of incorporation and place of business of the parties, and the place where the relationship between the parties is centered. *Aclate*, 2020 WL 6158579, at *4 (quoting Restatement § 145). Similarly, for contract claims, the test considers the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation, and place of business of the parties. *TL of Florida*, 54 F. Supp.

3d at 327-328.

In this case, Delaware—not Missouri—has the most significant contact to Plaintiffs' claims against Christiana Care. Plaintiff Stout alleges that he is domiciled in Delaware, and Plaintiff Addi alleges that she is domiciled in Maryland. SFC ¶¶ 761-62. Christiana Care is a Delaware nonprofit corporation, and Plaintiffs each allege that they received healthcare services at Christiana Care in Delaware. *Id.* ¶¶ 761-62, 764, 766. Thus, the parties' relationship and the healthcare encounters through which Plaintiffs provided their information and contend an implied contract arose are all centered in Delaware. The conduct Plaintiffs challenge is likewise tied to Delaware because they allege that Christiana Care failed to safeguard patient information it received in Delaware and failed to oversee from Delaware the security of information maintained by Cerner. *See, e.g.*, *id.* ¶ 770.

By contrast, Missouri's connection to this dispute derives from Cerner's principal place of business in Kansas City, Missouri, where Plaintiffs' information was stored. *Id.* ¶¶ 763, 765. Missouri is not the location of Plaintiffs and Christiana Care's relationships or the healthcare services that generated the information at issue.

That conclusion is consistent with how courts analyze choice of law in data breach cases where they consider the relative significance of the parties' contacts with competing jurisdictions, including the location of the parties, their relationship, and the alleged injury. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1199 (S.D. Fla. 2022). Although some courts have applied the law of the state where the data breach allegedly occurred, *see, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482, 486 (D. Minn. 2015), those cases generally involve circumstances in which plaintiffs had a direct relationship with the out-of-state defendant whose conduct allegedly caused the data

breach. That rationale does not fit this case. Plaintiffs' relationships were with Christiana Care from whom they received medical care, not with Cerner. For these reasons, Delaware law should be applied.

## VI. Argument

### A. Plaintiffs Fail To State a Claim For Negligence *Per Se* (Count II)

Plaintiffs allege that Christiana Care is liable for negligence *per se* based on violations of Section 5 of the FTC Act and HIPAA, incorporating paragraphs 494 through 506 of the CCAC. ECF No. 453, SFC ¶ 760. In its prior order, the Court dismissed negligence *per se* claims to the extent they were based on Arizona, Arkansas, California, or Florida law, and also dismissed negligence *per se* claims predicated on the FTC Act. ECF No. 394 at 18.

In Delaware, to state a claim for negligence *per se*, the statute in question must be enacted for the safety of others, there is a causal connection between the statutory violation and the injury, the statute sets forth a standard of conduct designed to avoid the harm suffered by the plaintiff, and defendant violated the statute. *Sammons v. Ridgeway*, 293 A.2d 547, 549 (Del. 1972); *Doe v. Bayhealth Med. Ctr., Inc.*, C.A. No. N24C-09-002 FJJ, 2025 WL 1010403, at *9 (Del. Super. Ct. Apr. 4, 2025). Applying that framework, Delaware courts reject negligence *per se* claims based on HIPAA or the FTC Act because neither statute creates a private right of action. *Doe*, 2025 WL 1010403, at *10 ("Plaintiffs' negligence per se claims dependent on HIPPA and the FTC dismissed because these statutes do not provide a private cause of action."); *Fanean v. Rite Aid Corp. of Delaware*, 984 A.2d 812, 817-18 (Del. Super. Ct. 2009) (reaffirming court's earlier decision that HIPAA cannot form the basis of a negligence *per se* claim); *see also Toll Bros. v. Considine*, 706 A.2d 493, 498 (Del. 1998) (holding OSHA violations cannot be the basis for a negligence *per se* claim, in part, because the absence of an OSHA predicate for

liability).

Applying Delaware law, this Court should dismiss Plaintiffs' negligence *per se* claim against Christiana Care.

Even if a HIPAA-based theory could support a negligence or negligence *per se* claim, it cannot, Plaintiffs still fail to plead facts showing that any alleged HIPAA violation by Christiana Care proximately caused the Cerner Incident. The SFC alleges that the incident occurred on Cerner's systems—not Christiana Care's systems or those of any other healthcare provider. Accordingly, allegations about whether Christiana Care maintained adequate security controls for its own systems do not plausibly connect Christiana Care to the incident or advance Plaintiffs' claims. HIPAA likewise permits a covered entity to allow a business associate to create, receive, maintain, or transmit electronic protected health information on its behalf so long as the covered entity obtains satisfactory assurances that the business associate will appropriately safeguard the information and documents those assurances in a business associate agreement. 45 C.F.R. §§ 164.308(b)(1), (b)(3), 164.502(e). Plaintiffs acknowledge that Christiana Care had a Business Associate Agreement with Cerner, ECF No. 453, SFC n.3, but plead no facts showing that the agreement was deficient, that Christiana Care lacked the required assurances, or that any Christiana Care act or omission caused the Cerner Incident. The allegations therefore do not plausibly plead any HIPAA violation by Christiana Care, much less one that caused Plaintiffs' alleged injuries.

**B. Plaintiffs' Breach of Fiduciary Duty Claim Fails (Count VII)**

Plaintiffs' theory that Christiana Care's receipt and maintenance of sensitive information created a fiduciary relationship fails under Delaware law and should be dismissed.

Under Delaware law a breach of fiduciary duty claim must be dismissed if it is

duplicative of a breach of contract claim. *See ARC Global Investments II, LLC v. Digital World Acquisition Corp.*, C.A. No. 2024-0186-LWW, 2024 WL 4212709, at *14 (Del. Ch. Sept. 16, 2024) (Plaintiff "may not 'bootstrap' a breach of fiduciary duty claim into a breach of contract claim merely by restating the breach of contract claim as a breach of fiduciary duty."); *Grunstein v. Silva*, C.A. No. 3932-VCN, 2009 WL 4698541, at *6 (Del. Ch. Dec. 8, 2009) (same); *see also Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010) ("It is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract . . . any fiduciary claims arising out of the same facts that underlie the contract obligations [will] be foreclosed as superfluous."). Here, Plaintiffs' fiduciary duty claim arises from the same alleged obligation in Plaintiffs' breach of implied contract claim, that Christiana Care must safeguard their personal information. Accordingly, Plaintiffs claim for breach of fiduciary duty should be dismissed.

### C. Plaintiff Addi Fails To State A Claim Under Maryland's Personal Information Protection Act

Plaintiff Addi claims that Christiana Care violated the Maryland Personal Information Protection Act ("MPIPA"), and thereby the Maryland Consumer Protection Act ("MCPA"),[5] by failing to provide timely and adequate notice of the Cerner Incident pointing to the MPIPA's provision that notice of a breach should be provided within 45 days. SFC ¶ 816. The MPIPA, however, conditions any notice obligation on whether "*[the business] incurred* a breach of the security of a system." *See* Md. Code Ann. Com. Law §§ 14-3504(b)(1)–(3) (emphasis added). Here, Christiana Care did not incur a breach of *its systems*—Cerner did. Accordingly, Plaintiff Addi cannot state a viable MPIPA claim against Christiana Care since it had no obligation to

[5] The MPIPA does not provide for a standalone claim, but is instead enforceable only through the MCPA. *See* Md. Code Ann. Com. Law § 14-3508 (a MPIPA violation constitutes "an unfair or deceptive trade practice" under the MCPA "subject to the enforcement and penalty provisions" of the MCPA).

provide notice of the Cerner Incident under the MPIPA.

Moreover, even if Christiana Care had a notice obligation under the MPIPA, Plaintiff Addi alleges no facts showing that the timing of any notice caused her harm, which provides an independent basis for dismissal of her MCPA claim predicated on an alleged MPIPA violation. Md. Code Ann. Com. Law § 13-408(a) requires a plaintiff to plead an "injury or loss sustained by him as the result of a practice prohibited by" the MCPA. Plaintiff Addi does not allege when she received notice of the Cerner Incident; she alleges only, in conclusory fashion, that notice was not "timely." SFC ¶ 816. Nor does she allege that she suffered identity theft, fraud, or other misuse of her information during any alleged period of delayed notice that earlier notice would have prevented. Absent such allegations, Plaintiff Addi's MPIPA claim premised on delayed notice fails as a matter of law.

Finally, the MPIPA does not impose an obligation on Christiana Care to prevent or detect a breach on a third-party's systems. Rather, the statute requires only that a business require "by contract" that its third-party vendor "implement and maintain reasonable security procedures and practices," and only for contracts after January 1, 2009. Md. Code Ann. Com. Law §§ 14-3503(b)(1), (2). Plaintiff does not allege that Christiana Care failed to enter into such a contractual arrangement with Cerner.

**D. Plaintiff Addi's MCPA Claim Fails**

Plaintiff Addi's MCPA claim, premised on alleged unfair and deceptive trade practices, fails for several independent reasons. To state an MCPA claim, Plaintiff Addi must allege "(1) an unfair or deceptive practice or misrepresentation that is (2) relied upon, and (3) causes [plaintiff] actual injury." *Stewart v. Bierman*, 859 F. Supp. 2d 754, 768 (D. Md. 2012), *aff'd sub nom. Lembach v. Bierman*, 528 F. App'x 297 (4th Cir. 2013); *Innovations Surgery Center, P.C. v. United Healthcare Ins. Co.*, 722 F. Supp. 3d 582, 594 (D. Md. 2024). And because Plaintiff's

theories sound in fraud, her MCPA claim must satisfy Rule 9(b)'s heightened pleading standard, which requires a plaintiff to "state with particularity the circumstance constituting fraud or mistake." *Wood v. Blue Diamond Growers*, 722 F. Supp. 3d 554, 564 (D. Md. 2024) (citing Fed. R. Civ. P. 9(b)); *see also Mohamed v. Bank of Am., N.A.*, 771 F. Supp. 3d 695, 707 (D. Md. 2025) (applying Rule 9(b) particularity standard to MCPA claim sounding in fraud). Plaintiff Addi's MCPA claim fails at each step because she pleads no particularized deceptive act or omission by Christiana Care, no plausible reliance on any challenged statement, and no actual injury caused by Christiana Care's conduct.

**1. Plaintiff Addi's Deceptive Practices Allegations Lack Particularity**

Plaintiff Addi's MCPA claim rests on boilerplate recitation of the elements of the MCPA without any well pled factual allegations in support. Plaintiff Addi alleges, in impermissible group-pleading fashion, that "Defendants"—Cerner and Christiana Care collectively—failed to implement reasonable security and privacy measures; failed to identify foreseeable security and privacy risks; failed to comply with common-law and statutory duties; misrepresented that they would protect the privacy and confidentiality of Plaintiffs' PII/PHI; misrepresented that they would comply with duties purportedly arising under the FTC Act and Maryland PIPA; omitted that they did not adequately secure Plaintiffs' PII/PHI; and omitted that they did not comply with common-law and statutory duties. SFC ¶ 827(a)-(g). This Court has already held that such group pleading is impermissible. ECF No. 394 at 32-33 (citing *In re Crop Inputs Antitrust Litig.*, 172 F.4th 570, 577 (8th Cir. 2026); *O'Neal v. Buckner*, 2021 WL 681434, at *4 (W.D. Mo. Feb. 22, 2021)). The SFC identifies no particular deceptive statement, omission, or practice attributable to Christiana Care, much less one pleaded with the specificity Rule 9(b) requires. Plaintiff's generalized allegations therefore fail under Rule 8 and Rule 9(b), and they mirror the conclusory

allegations this Court previously dismissed under other state consumer-protection statutes. *See* ECF No. 394 at 33, 41-43.

A list of legal conclusions untethered to the "who, what, when, where, and how" of any alleged deception does not satisfy Rule 9(b). *Compare* ECF No. 453, SFC ¶¶ 826-832, *with Chubb & Son v. C & C Complete Servs., LLC*, 919 F. Supp. 2d 666, 673 (D. Md. 2013) ("The circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."); *Wood*, 722 F. Supp. 3d at 564; *Williams v. DistroKid, LLC*, Civ. No. 25-2377-BAH, 2025 WL 3028268, at *2 (D. Md. Oct. 29, 2025).

The limited allegations specific to Christiana Care do not cure that defect. Plaintiff Addi alleges that: Christiana Care agreed to safeguard patient information in accordance with internal policies and applicable law; its website privacy statement referenced technical and organizational security measures; and, on information and belief, it failed to supervise Cerner to prevent, detect, or stop breaches of Cerner's systems. *See* SFC ¶¶ 768-770. But none of those allegations identifies a false statement of fact by Christiana Care, when it was made, who made it, where Plaintiff saw it, or how Plaintiff relied on it.

Christiana Care's alleged representation that it would safeguard patient information as required by law is not, without more, a misrepresentation of fact. Plaintiff pleads no facts supporting a reasonable inference that any such statement was false when made or otherwise materially misleading. Nor does a general statement about security measures promise that Christiana Care or its business associates are immune from criminal intrusion or guarantee that patient information can never be accessed without authorization. The later occurrence of a cybersecurity incident on Cerner's systems does not render those statements false.

Plaintiff Addi's affirmative-misrepresentation theory also fails for lack of reliance. Plaintiff does not allege when, where, or how she encountered any challenged statement; whether any cited privacy statement was in effect when she provided her information; whether she read the statement before seeking treatment from Christiana Care; or how any statement caused her alleged injury. *See Bryant v. Koppers, Inc.*, 627 F. Supp. 3d 466, 479 (D. Md. 2022) (plaintiff failed to plead reliance for an MCPA claim where she did not plausibly allege viewing the alleged misrepresentation before deciding to contract with defendant).

Plaintiff Addi's omission allegations fare no better. She alleges only in conclusory terms that Christiana Care "omitt[ed], suppress[ed], and conceal[ed]" material facts concerning purported deficiencies in data-security practices and compliance with applicable law, including the FTC Act and Maryland PIPA. SFC ¶ 827(f)-(g). The SFC pleads no facts showing that Christiana Care knew the allegedly omitted facts, had a duty to disclose them, or omitted them in any particular communication with Plaintiff. Nor does Plaintiff plausibly allege that Christiana Care alone possessed the allegedly omitted information, particularly where the alleged incident occurred on Cerner's systems.

Plaintiff instead asks the Court to infer an undisclosed security deficiency from the mere fact that a breach occurred. That inference is insufficient as a matter of law. *See, e.g.*, *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717-18 (8th Cir. 2017) ("The implied premise that because data was hacked [defendant's] protections must have been inadequate is a 'naked assertion[ ] devoid of further factual enhancement' that cannot survive a motion to dismiss) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)); *Berry v. Crescent Cmty. Health Ctr.*, No. 24-CV-1036-CJW-KEM, 2025 WL 1287909, at *6, 9 (N.D. Iowa May 2, 2025) ("Simply because a [data incident] occurred does not mean that it necessarily follows that defendant did anything wrong . . . Plaintiff's

allegations that the data breach is evidence defendant failed to properly protect the PII amount to nothing more than a claim that defendant's protections must have been inadequate because there was a hack."). Plaintiff offers no nonconclusory facts supporting an inference that Christiana Care's security practices, oversight, or contractual arrangements with Cerner were deficient.

#### 2. Plaintiff Addi Failed to Allege an Actual Injury Resulting from Christiana Care's Conduct

Plaintiff Addi's MCPA claim must also be dismissed due to her failure to plead an actual injury resulting from Christiana Care's conduct—her speculative allegations of an increased risk of future harm will not suffice. *Horridge v. St. Mary's Cnty. Dep't of Soc. Servs.*, 854 A.2d 1232, 1238 (Md. App. 2004) (for a negligence claim, plaintiff must demonstrate she "suffered actual injury or loss [and] that the loss or injury proximately resulted from the defendant's breach of the duty"); Md. Code Ann. Com. Law § 13-408(a) (plaintiff must plead "injury or loss sustained by him as the result of a practice prohibited by" the MCPA). "[I]n order to articulate a cognizable injury under the [MCPA], the injury must be objectively identifiable. In other words, the consumer must have suffered an identifiable loss, measured by the amount the consumer spent or lost as a result of his or her reliance on the sellers' misrepresentation." *Lloyd v. Gen. Motors Corp.*, 917 A.2d 257, 272 (Md. App. 2007); *Polek v. JP. Morgan Chase Bank, N.A.*, 36 A.3d 399, 418 (Md. App. 2012) (dismissing MCPA claim because plaintiff pled, "at best, [ ] a conjectural or potential injury, far from the actual injury required by the CPA").

Plaintiff Addi's allegations of lost time, lost privacy, and diminution in value of her personal information are likewise insufficient to state a claim. Indeed, courts routinely find these theories of injury unavailing. *See, e.g.,* Order on Motion to Dismiss, *Khan v. Children's Nat'l Health Sys.*, Md. Cir. Ct. (Montgomery Cnty.) Case No. 405614V (Sept. 23, 2016) (dismissing data breach claims based on mitigation expenses which are "voluntarily incurred" and lost value

because it is "theoretical [and] amorphous at best"), attached hereto as Exhibit A. And her conclusory allegations of emotional distress cannot sustain her statutory claims. *See, e.g.*, *Hoffman v. Stamper*, 867 A.2d 276, 295-98 (Md. App. 2005) (emotional distress allegations insufficient in case alleging negligence and MCPA violation where plaintiff did not include allegations of accompanying physical injury such as "depression, inability to work or perform routine household chores, loss of appetite, insomnia, nightmares, loss of weight, extreme nervousness and irritability, withdrawal from socialization, fainting, chest pains, headaches, and upset stomachs").

Lastly, Plaintiff's allegation that her bank account information was "compromised" does not support her statutory claims because this data element is unconnected and not fairly traceable to the Cerner Incident. Plaintiff Addi does not allege that she provided her bank account information to Christiana Care—thus her purportedly "compromised" bank account was not caused by the Cerner Incident. SFC ¶ 789 ("Plaintiff provided it with her Private Information including but not limited to her name, Social Security number, and medical information including doctors, diagnosis, medicines, test results, images, care, treatment, and medical record numbers."). Nor does the CCAC allege that bank account information was affected by the Cerner Incident. CCAC ¶ 2 (alleging Cerner Incident may have affected the following data elements: "names, dates of birth, Social Security numbers, medical records, treatment information, insurance data, and other personally identifiable information ('PII') and protected health information ('PHI'[)]").

## VII. Conclusion

For the foregoing reasons, Christiana Care requests that the SFC's class action claims against it be dismissed in their entirety.

Dated: September 28, 2026

Respectfully Submitted,

*/s/ Elizabeth A. Scully*
Elizabeth A. Scully (admitted *pro hac vice*)
Gilbert S. Keteltas (admitted *pro hac vice*)
Carey S. Busen (admitted *pro hac vice*)
**BAKER & HOSTETLER LLP**
1050 Connecticut Ave. N.W., Ste. 1100
Washington, DC 20036
Tel: (202) 861-1500
escully@bakerlaw.com
gketeltas@bakerlaw.com
cbusen@bakerlaw.com

Ambika B. Singhal #64724 (MO)
**BAKER & HOSTETLER LLP**
2850 North Harwood Street
Suite 1100
Dallas, TX 75201
Tel: (214) 210-1200
asinghal@bakerlaw.com

*Attorneys for Defendant Christiana Care Health Services, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of September, 2026, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Elizabeth A. Scully*
*Attorney for Defendant Christiana Care Health Services, Inc.*