**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| IN RE: CERNER/ORACLE DATA BREACH LITIGATION | Case No. 25-00259-CV-W-BP |
| ALEXANDER LONG and JESSICA UPTHEGROVE, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CERNER CORPORATION d/b/a ORACLE HEALTH and JUPITER MEDICAL CENTER, INC.,<br><br>Defendants. | This filing relates to lead case No. 4:25-cv-00259-W-BP, and to member case 4:26-cv-00205-BCW |

**DEFENDANT JUPITER MEDICAL CENTER, INC.'S SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**


I. Introduction ..... 1

II. Procedural Background ..... 2

III. Relevant Factual Allegations ..... 2

IV. Standard of Review ..... 4

V. Choice of Law ..... 4

VI. Argument ..... 6

A. Plaintiffs Fails To State a Claim For Negligence *Per Se* (Count II) ..... 6

B. Plaintiffs' Florida Deceptive and Unfair Trade Practices Act (FDUTPA) Claim Fails (Count XVII) ..... 8

1. Plaintiffs Do Not Allege any Actionable Misrepresentations ..... 9

2. Plaintiffs Do Not Allege any Actionable Omissions ..... 9

VII. Conclusion ..... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......... 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 4

*Cisneros v. Petland, Inc.*,
972 F.3d 1204 (11th Cir. 2020) .......... 10

*Dawson v. Generac Power Systems, Inc.*,
820 F. Supp. 3d 1306 (M.D. Fla. 2025) .......... 10

*Griffey v. Magellan Health Inc.*,
562 F. Supp. 3d 34 (D. Ariz. 2021) .......... 10, 11

*Griggs v. Riley*,
489 S.W.2d 469 (Mo. App. 1972) .......... 5

*In re Brinker Data Incident Litig.*,
2020 WL 691848 (M.D. Fla. Jan. 27, 2020) .......... 7, 8

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022) .......... 6

*In re Target Corp. Customer Data Sec. Breach Litig.*,
309 F.R.D. 482 (D. Minn. 2015) .......... 6

*Kennedy v. Dixon*,
439 S.W.2d 173 (Mo. 1969) .......... 5

*Olin v. Dakota Access, LLC*,
910 F.3d 1072 (8th Cir. 2018) .......... 8

*PNR, Inc. v. Beacon Prop. Mgmt., Inc.*,
842 So. 2d 773 (Fla. 2003) .......... 8

*Pop v. LuliFama.com LLC*,
145 F.4th 1285 (11th Cir. 2025) .......... 10

*Prudential Ins. Co. of Am. v. Kamrath*,
475 F.3d 920 (8th Cir. 2007) .......... 5

*Roberson v. Dakota Boys & Girls Ranch*,
42 F.4th 924 (8th Cir. 2022) ........................................................................................ 4

*Rollins, Inc. v. Butland*,
951 So. 2d 860 (Fla. 2d DCA 2006) ............................................................................ 8

*Schaaf v. Residential Funding Corp.*,
517 F.3d 544 (8th Cir. 2008) ........................................................................................ 4

*Taylor v. Royal Ins. Co.*,
235 F. Supp. 891 (W.D. Mo. 1964) ............................................................................... 5

*Weinberg v. Advanced Data Processing, Inc.*,
147 F. Supp. 3d 1359 (S.D. Fla. 2015) .......................................................................... 7

*Wilson v. Image Flooring, LLC*,
400 S.W.3d 386 (Mo. App. 2013) ................................................................................. 5

**Statutes**

45 C.F.R. §§ 164.308(b)(1), (b)(3), 164.502(e) ................................................................. 8

Federal Trade Commission ("FTC") Act .................................................................. 2, 6, 7

Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") ....................................... passim

Health Insurance Portability and Accountability Act ("HIPAA") ......................................... 2, 6, 7

**Other Authorities**

Restatement (Second) of Conflict of Laws § 6 ..................................................................... 5

Restatement (Second) of Conflict of Laws § 145 ................................................................. 5

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 2, 4, 11

Federal Rule of Civil Procedure 9(b) ........................................................................... passim

## I. Introduction

Plaintiffs' Short Form Complaint ("SFC") incorporates four common-law claims and one statutory claim from the Consolidated Class Action Complaint ("CCAC") and asserts them against Defendant Jupiter Medical Center, Inc. ("Jupiter").[1] ECF No. 455. Plaintiffs also assert claims directly against Defendant Cerner Corporation ("Cerner"). The claims arise from a January 2025 data security incident involving Cerner's systems (the "Cerner Incident"). Like the other healthcare provider defendants in this consolidated litigation, Jupiter retained Cerner as its electronic health records ("EHR") vendor, and Plaintiffs allege that a criminal threat actor accessed patient information maintained within Cerner's systems during the Cerner Incident.

Jupiter recognizes that the Court's prior order on the Healthcare Provider Defendants' Motion to Dismiss the CCAC resolved several arguments previously raised by healthcare provider defendants named in the CCAC. ECF No. 394.[2] To avoid duplicative briefing of issues previously considered by the Court, this motion focuses on two claims that independently fail as

---

[1] Although Plaintiffs also incorporate by reference unjust enrichment (Count V), invasion of privacy (Count VIII), and declaratory judgment (Count IX) claims in the SFC, they acknowledge that those claims have already been dismissed in their entirety (ECF No. 394). They do not ask the Court to reconsider that ruling, which applies equally here, but include the claims solely to preserve any appellate rights. SFC nn. 2, 4-6. As a result, Jupiter does not separately brief the dismissal of these particular counts as it understands the Court's ruling dismissing those claims is being applied in favor of all the health care provider defendants, including Jupiter, who have been named in Short Form Complaints.

[2] Jupiter is mindful of the Court's Order on the Motion to Dismiss the Consolidated Class Action Complaint, including its ruling that the negligence (Count I), breach of implied contract (Count IV), and breach of fiduciary duty (Count VII) claims could proceed against the Healthcare Provider Defendants named in that pleading. *See* ECF No. 394. Here, Plaintiffs' allegations supporting those claims against Jupiter largely mirror the allegations previously asserted in the CCAC. *See* SFC ¶ 760, ECF No. 455. For the reasons set forth in the Healthcare Provider Defendants' Motion to Dismiss briefing (ECF Nos. 162 and 250), which Jupiter incorporates by reference, Plaintiffs fail to state viable claims, and those claims should be dismissed. Jupiter raises these arguments to preserve its appellate rights with respect to the Court's ruling declining to dismiss those claims.

to Jupiter: Count II, for negligence *per se*, because Florida law governs and does not permit the Health Insurance Portability and Accountability Act ("HIPAA") or the Federal Trade Commission ("FTC") Act to serve as predicates for such a claim; and Count XVII, for violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), because Plaintiffs do not plead an actionable misrepresentation or omission, or causation.

First, Plaintiffs' negligence *per se* claim should be dismissed because Florida has the most significant relationship to' Plaintiffs' claims against Jupiter, and Florida law does not allow alleged violations of HIPAA or the FTC Act to supply the duty element for negligence *per se*.

Second, the FDUTPA claim fails because Plaintiffs do not allege any actionable misrepresentation or omission by Jupiter. The SFC relies on the same vague and conclusory allegations that this Court previously found insufficient under Rule 9(b) and does not identify any particular omission by Jupiter, the facts allegedly omitted, the circumstances surrounding the omission, or how Plaintiffs were misled as a result.

For these reasons, and for substantially similar reasons underlying the Court's prior dismissal of the same or analogous claims, *see* ECF No. 394, Jupiter respectfully requests that the Court dismiss Counts II and XVII under Rule 12(b)(6) and, where applicable, Rule 9(b).

## II. Procedural Background

Plaintiffs filed the initial complaint in this Court on March 12, 2026, *see* Case No. 4:26-cv-00205 (W.D. Mo.), the Court consolidated the case on March 18, 2026, ECF No. 231, and Plaintiffs filed the operative SFC on August 28, 2026 (ECF No. 455).

## III. Relevant Factual Allegations

The Court is familiar with the facts underlying the Cerner Incident and Jupiter does not repeat them here. In brief, Plaintiffs' claims arise from a January 2025 cybersecurity incident involving Cerner's electronic health record platform, through which unauthorized actors

allegedly accessed certain patient information, including that of Jupiter's patients.

As part of the Short Form Complaint process, Plaintiffs incorporate portions of the CCAC[3] and add allegations specific to themselves and Jupiter. Plaintiffs assert claims against Jupiter for negligence (Count I), negligence per se (Count II), breach of implied contract (Count IV), breach of fiduciary duty (Count VII), and violation of FDUTPA (Count XVII).[4] The SFC does not assert any new causes of action not alleged in the CCAC.

With respect to Jupiter, Plaintiffs allege that they provided personal and medical information to Jupiter in connection with receiving healthcare services, later received a breach notification on January 14, 2026, and thereafter spent time monitoring their accounts and investigating the incident. *See generally* SFC ¶¶ 787-813. Plaintiffs further allege injuries including loss of privacy, diminution in value of their personal information, emotional distress, increase in spam calls and texts, and an increased risk of future misuse of his information. *Id.* ¶¶ 793-813. Unlike other plaintiffs, both Plaintiffs allege no actual out of pocket expenses of misuse of their information. *Id.* Plaintiff Long alleges incidents of identity theft and that he was locked out of banking accounts for alleged fraudulent activity, SFC ¶¶ 795-796, but does not allege facts plausibly suggesting whether or how those events are related to the Cerner Incident.

Apart from these allegations, the SFC contains few allegations specific to Jupiter and instead incorporates broad allegations from the CCAC. The SFC merely identifies the Jupiter entities, their principal places of business, and the date on which they allegedly notified affected

---

[3] The SFC expressly incorporates the CCAC's Introduction (¶¶ 1-7), Jurisdiction and Venue allegations (¶¶ 341-343), Factual Allegations (¶¶ 344-458), Class Action Allegations (¶¶ 459-471), as well as the Prayer for Relief and Jury Demand.

[4] The SFC acknowledges that claims previously addressed and dismissed by the Court's Order on Defendants' Motions to Dismiss (ECF No. 394), including the Court's dismissal in its entirety of unjust enrichment, invasion of privacy, and declaratory judgment claims, remain subject to that ruling while preserving Plaintiffs' appellate rights.

individuals regarding the Cerner Incident. *Id.* at ¶¶ 764, 780. Plaintiffs broadly allege that Jupiter maintained patient information, shared patient information with Cerner in connection with healthcare services, and "Defendants"—Jupiter and Cerner combined—failed to adequately safeguard that information due to the occurrence of the Cerner Incident. *Id.* ¶¶ 766-775, 782. Plaintiffs' FDUTPA claim rests on the vague allegation that Jupiter made unspecified "representations" or "omissions" concerning the privacy and security of patient information and that Plaintiffs and members of the putative class relied on those representations. CCAC ¶ 674, incorporated by reference in SFC ¶ 760. The SFC, however, never identifies a single alleged representation or omission at issue that is attributable to Jupiter. SFC ¶¶ 773-75.

With respect to Jupiter, Plaintiffs seek to represent two classes: a nationwide class and a Florida subclass of individuals whose personal information was provided to Cerner through Jupiter and compromised in the Cerner Incident. *Id.* ¶ 814.

## IV. Standard of Review

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6). A complaint "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). "'[N]aked assertions devoid of further factual enhancement,' do not suffice, nor do '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678).

## V. Choice of Law

In assessing Plaintiffs' claims against Jupiter, as a threshold matter, the Court must

determine what law applies. A federal court sitting in diversity applies the choice-of-law rules of the forum state. *See Taylor v. Royal Ins. Co.*, 235 F. Supp. 891, 893 (W.D. Mo. 1964). "Before applying the forum state's choice-of-law rules, however, a trial court must first determine whether a conflict exists." *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007) (citation omitted). As addressed further below, here there are outcome determinative conflicts. As this Court has previously determined to the extent Florida law applies to Plaintiffs' claims, which it should, Plaintiffs' negligence *per se* claim should be dismissed.

If, as here, a conflict exists, Missouri applies the most-significant-relationship test set forth in section 145 of the Restatement (Second) of Conflict of Laws. *Kennedy v. Dixon*, 439 S.W.2d 173, 181-184 (Mo. 1969). The test considers the place of injury, the place of the conduct causing the injury, the parties' domicile, residence, place of incorporation, and place of business, and the place where the parties' relationship is centered. *Id.* (citing Restatement § 145). These factors must be considered in light of the principles articulated in section 6 of the Restatement, including the relevant policies and interests of both the forum state and foreign jurisdiction as to the issues in conflict. *Wilson v. Image Flooring, LLC*, 400 S.W.3d 386, 397 (Mo. App. 2013) (citing *Griggs v. Riley*, 489 S.W.2d 469, 473 (Mo. App. 1972)).

The relevant factors support applying Florida law to Plaintiffs' claims against Jupiter. Plaintiffs Long and Upthegrove are citizens and residents of Florida and received care from Jupiter in Florida. ECF No. 455, SFC ¶¶ 761-762. Jupiter is a Florida non-profit corporation with its principal place of business in Florida. *Id.* ¶ 764.

The relationships giving rise to Plaintiffs' claims against Jupiter are centered in Florida where Plaintiffs received treatment and provided their private information to Jupiter. The conduct Plaintiffs challenge with respect to Jupiter is likewise tied to Florida because they allege that

Jupiter failed to implement appropriate safeguards to protect patient information it received in Florida and failed to oversee from Florida the security of information maintained by Cerner. *See e.g., id.* ¶ 768.

By contrast, Missouri's connection to this dispute rests on Cerner's principal place of business in Kansas City, Missouri, where Plaintiffs' information allegedly was stored. *Id.* ¶¶ 763, 766. Missouri is not where Plaintiffs' relationships with Jupiter were centered or where the healthcare services that generated the information occurred.

That conclusion accords with how courts analyze choice of law in data-breach cases, focusing on the relative significance of the parties' contacts with competing jurisdictions, including the parties' locations, their relationship, and the alleged injury. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1199 (S.D. Fla. 2022). Although some courts have applied the law of the state where the data breach allegedly occurred, *see, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482, 486 (D. Minn. 2015), those cases generally involved plaintiffs with a direct relationship with the out-of-state defendant whose conduct allegedly caused the breach. That rationale does not apply here. Plaintiffs' relationship was with Jupiter where they received medical care, not with Cerner. Accordingly, Florida law should govern Plaintiffs' claims against Jupiter.

## VI. Argument

### A. Plaintiffs Fails To State a Claim For Negligence *Per Se* (Count II)

Plaintiffs allege that Jupiter is liable for negligence *per se* based on alleged violations of Section 5 of the FTC Act and HIPAA, incorporating paragraphs 494 through 506 of the CCAC. SFC ¶ 760. In its prior order, the Court dismissed negligence *per se* claims to the extent they were based on Arizona, Arkansas, California, or Florida law. *See* ECF No. 394 at 18. Indeed, the consolidated plaintiffs, in opposing the motion to dismiss the CCAC, conceded that their

negligence *per se* claim was not viable to the extent it relied on Florida law and withdrew the claim. ECF No. 221 at 12 n.11. The Court also dismissed negligence *per se* claims under Missouri law to the extent they were predicated on an alleged violation of the FTC Act. *See* ECF No. 394 at 18.

Dismissal is similarly warranted here. To the extent Plaintiffs continue to pursue a negligence *per se* claim against Jupiter, Jupiter incorporates by reference the arguments set forth in the original motion to dismiss. As explained there, Florida courts do not recognize negligence *per se* claims based on federal statutes that lack a private right of action, including HIPAA and the FTC Act. Motion to Dismiss CCAC at 11-12, ECF 163; *see also Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1365-66 (S.D. Fla. 2015) (dismissing negligence *per se* claim based on violation of HIPAA); *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-J-32MCR, 2020 WL 691848, at *9 (M.D. Fla. Jan. 27, 2020) ("[V]iolation of the FTC Act cannot be the basis for a negligence per se claim."). Because Florida law does not permit negligence *per se* claims predicated on either HIPAA or the FTC Act, Count II fails as a matter of law and should be dismissed.

Moreover, even if a HIPAA-based theory could support a negligence or negligence *per se* claim, which it should not, Plaintiffs still fail to plead facts showing that any alleged HIPAA violation by Jupiter proximately caused the Cerner Incident. The SFC alleges that the incident occurred on Cerner's systems—not Jupiter's systems or those of any other healthcare provider. Accordingly, allegations about whether Jupiter maintained adequate security controls for its own systems do not plausibly connect Jupiter to the incident or advance Plaintiffs' claims. HIPAA likewise permits a covered entity to allow a business associate to create, receive, maintain, or transmit electronic protected health information on its behalf so long as the covered entity

obtains satisfactory assurances that the business associate will appropriately safeguard the information and documents those assurances in a business associate agreement. 45 C.F.R. §§ 164.308(b)(1), (b)(3), 164.502(e). Plaintiffs acknowledge that Jupiter had a Business Associate Agreement with Cerner, ECF No. 455, SFC n.3, but plead no facts showing that the agreement was deficient, that Jupiter lacked the required assurances, or that any Jupiter act or omission caused the Cerner Incident. The allegations therefore do not plausibly plead any HIPAA violation by Jupiter, much less one that caused Plaintiffs' alleged injuries.

### B. Plaintiffs' Florida Deceptive and Unfair Trade Practices Act (FDUTPA) Claim Fails (Count XVII)

Plaintiffs also reassert a claim under FDUTPA, incorporating paragraphs 670 through 680 of the CCAC. SFC ¶ 760. "[A] consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *In re Brinker*, 2020 WL 691848, at *12 (quoting *Rollins, Inc. v. Butland*, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)). "An unfair practice is 'one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Id.* (quoting *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003)).

This Court previously held that Rule 9(b) applies to the FDUTPA claim, relying on *Olin v. Dakota Access, LLC*, 910 F.3d 1072, 1076 (8th Cir. 2018). ECF No. 394 at 42. Because the CCAC failed to identify the alleged misrepresentations with sufficient specificity, the Court dismissed Count XVII to the extent premised on the affirmative misrepresentation alleged in Paragraph 674(a)-(e). *See* ECF No. 394 at 42-43.

Plaintiffs' reasserted claim has the same defect. The SFC simply incorporates those same allegations the Court already found insufficient. *See* SFC ¶ 760 (incorporating CCAC ¶¶ 670-680). The SFC's Jupiter-specific allegations do not cure that deficiency because Plaintiffs still

fail to allege an actionable misrepresentation or omission attributable to Jupiter and still fails to plead that any challenged statement attributable to Jupiter caused his alleged injury. Plaintiffs' FDUTPA claim rests on boilerplate recitation of the elements of the Act without any well pled factual allegations in support. Plaintiffs alleges, in impermissible group-pleading fashion, that "Defendants"—Cerner and Jupiter collectively failed to implement reasonable security and privacy measures. ECF No. 455, SFC ¶ 782. This Court has already held that such group pleading is impermissible. ECF No. 394 at 32-33 (citing *In re Crop Inputs Antitrust Litig.*, 172 F.4th 570, 577 (8th Cir. 2026); *O'Neal v. Buckner*, 2021 WL 681434, at *4 (W.D. Mo. Feb. 22, 2021)).

1. <u>Plaintiffs Do Not Allege any Actionable Misrepresentations</u>

Plaintiffs allege that "Defendants"—Cerner and Jupiter combined—"agreed" to "safeguard the data in accordance with its internal policies, state law, and federal law." SFC ¶ 774. But, as the Court previously recognized in dismissing the portions of the FDUTPA claim in the CCAC based on misrepresentations, Plaintiffs fail to identify any actionable statement made by Jupiter, much less a false or misleading one. ECF 394 at 42 (rejecting FDUTPA claim because "Plaintiffs do not allege these statements were false, and their FDUTPA claim is not based on them"). Indeed, the SFC, like the CCAC before it, does not identify a single representation by Jupiter that could plausibly support liability. Nor does it allege facts showing that any purported promise regarding data security was false when made. Having already found these allegations insufficient, the Court should reach the same conclusion here and dismiss Count XVII to the extent it is premised on alleged representations by Jupiter or an alleged failure to adequately safeguard personal information.

2. <u>Plaintiffs Do Not Allege any Actionable Omissions</u>

Likewise, Plaintiffs cannot satisfy Rule 9(b) to the extent their FDUTPA rests on a theory

of omissions. *See* ECF No. 394 at 42; *accord Pop v. LuliFama.com LLC*, 145 F.4th 1285, 1293-95 (11th Cir. 2025) (holding that FDUTPA claims sounding in fraud, including fraud-by-omission theories, must satisfy Rule 9(b)); *see also Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 54 (D. Ariz. 2021) (Rule 9(b) applied where the FDUTPA claim was premised on allegations that the defendant overstated the adequacy of its data-security practices).

When Rule 9(b) applies, plaintiffs alleging an omissions-based FDUTPA claim must plead with particularity "(1) precisely what statements or omissions were made in which documents; (2) the time and place of each such statement and the person responsible for making (or in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud." *Dawson v. Generac Power Systems, Inc.*, 820 F. Supp. 3d 1306, 1334 (M.D. Fla. 2025) (citing *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1216 (11th Cir. 2020)).

Plaintiffs fall short of that standard. The SFC merely incorporates paragraphs 674(f) through (g) of the CCAC, which allege in conclusory fashion that Defendants "omitt[ed], suppress[ed], and conceal[ed]" material facts concerning purported deficiencies in Jupiter's data security practices and compliance with applicable law. Those allegations do little more than recite the elements of an omissions claim. The Jupiter-specific facts of the SFC do not save the claim. Plaintiffs do not identify the specific information Jupiter allegedly withheld, the circumstances under which any omission occurred, when or where Jupiter allegedly failed to disclose the information, how any omission misled Plaintiffs, or what Jupiter purportedly gained as a result. *See Dawson*, 820 F. Supp. 3d at 1334.

Instead, Plaintiffs ask the Court to infer that Jupiter's data security practices were inadequate simply because a data breach occurred. But the occurrence of a breach, standing

alone, does not plausibly establish that a defendant concealed material information about its security practices. As the court explained in *Griffey*, allegations that merely point to the fact of a breach, without explaining with specificity how the defendant's security measures were deficient, are insufficient to satisfy Rule 9(b). 562 F. Supp. 3d at 54.

The defect in Plaintiffs' omission theory is the same one this Court previously identified in relation to the misrepresentation theory. Plaintiffs offer no actionable omission, no particularized facts showing deceptive conduct, and no basis from which the Court can reasonably infer fraud. Rather, they rely on the impermissible hindsight inference that because a breach occurred, Jupiter's data-security practices must have been deceptive. That is insufficient under both Rule 12(b)(6) and Rule 9(b). Accordingly, Count XVII should be dismissed.

## VII. Conclusion

For the foregoing reasons, Jupiter respectfully requests the Court dismiss Plaintiffs' claims against Jupiter.

Dated: September 28, 2026

Respectfully Submitted,

*/s/ Elizabeth A. Scully*
Elizabeth A. Scully (admitted *pro hac vice*)
Gilbert S. Keteltas (admitted *pro hac vice*)
Carey S. Busen (admitted *pro hac vice*)
**BAKER & HOSTETLER LLP**
1050 Connecticut Ave. N.W., Ste. 1100
Washington, DC 20036
Tel: (202) 861-1500
escully@bakerlaw.com
gketeltas@bakerlaw.com
cbusen@bakerlaw.com

Ambika B. Singhal #64724 (MO)
**BAKER & HOSTETLER LLP**
2850 North Harwood Street
Suite 1100

Dallas, TX 75201
Tel: (214) 210-1200
asinghal@bakerlaw.com

*Attorneys for Defendant Jupiter Medical Center, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of September, 2026, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Elizabeth A. Scully*
*Attorney for Defendant Jupiter Medical Center, Inc.*