**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| IN RE: CERNER/ORACLE DATA BREACH LITIGATION | Case No. 25-00259-CV-W-BP |
| MARGARET THOMAS, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CERNER CORPORATION D/B/A ORACLE HEALTH, and MUNSON HEALTHCARE,<br><br>Defendants. | This filing relates to lead case No. 4:25-cv-00259-W-BP, and to member case No. 4:26-cv-00181 |

**DEFENDANT MUNSON HEALTHCARE'S SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**


I. Introduction ........ 1

II. Procedural History ........ 2

III. Relevant Factual Allegations ........ 2

IV. Standard of Review ........ 4

V. Choice of Law ........ 4

VI. Plaintiff Fails to State a Claim Upon which Relief Can Be Granted ........ 7

- A. Plaintiff Fails to Allege Any Cognizable Injury ........ 7
  - 1. Spam Texts, Phone Calls, and Emails Are Not Cognizable Injuries ........ 7
  - 2. Plaintiff's Other Alleged Injuries Fail As Well ........ 8
- B. Plaintiff Fails To State a Claim For Negligence *Per Se* (Count II) ........ 10
- C. Plaintiff Fails to State a Claim for Breach of Implied Contract ........ 12
- D. Plaintiff's Breach of Fiduciary Duty Claim Fails ........ 13

VII. Conclusion ........ 14

## TABLE OF AUTHORITIES

**Page(s)**

Cases

*Abnet v. Coca-Cola Co.,*
786 F. Supp. 2d 1341 (W.D. Mich. 2011) .................................................................. 11

*Allstate Ins. v. Hague,*
449 U.S. 302 (1981).................................................................................................... 5

*Amerisure Mut. Ins. v. Transatlantic Reins*,
573 F. Supp. 3d 1176 (E.D. Mich. 2021)............................................................... 5, 6

*Angus v. Flagstar Bank, FSB*,
2025 WL 937760 (E.D. Mich. Mar. 27, 2025) .......................................................... 9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009).................................................................................................... 4

*Atlas Techs., LLC v. Levine*,
268 F. Supp. 3d 950 (E.D. Mich. 2017)...................................................................... 5

*Bank of Am., NA v. First Am. Title Ins.*,
878 N.W.2d 816 (Mich. 2016)................................................................................... 12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).................................................................................................... 4

*Bennett v. Columbia Broad. Sys., Inc.*,
1986 WL 17249 (6th Cir. July 3, 1986)...................................................................... 8

*Bridging Communities, Inc. v. Hartford Cas. Ins. Co.*,
9 N.W.3d 92 (Mich. Ct. App. 2023) .......................................................................... 8

*Brooks Williamson & Assocs., Inc. v. Braun*,
2022 WL 1508992 (Mich. Ct. App. May 12, 2022) ................................................ 13

*Brush v. Miami Beach Healthcare Grp. Ltd.*,
238 F. Supp. 3d 1359 (S.D. Fla. 2017) .................................................................... 13

*Chrysler Corp. v. Skyline Indus. Servs., Inc.*,
528 N.W.2d 698 (Mich. 1995)..................................................................................... 5

*Craig ex rel. Craig v. Oakwood Hosp.*,
684 N.W.2d 296 (Mich. 2004)..................................................................................... 8

*Doe v. Henry Ford Health Sys.*,
865 N.W.2d 915 (Mich. Ct. App. 2014) .............................................................. 7, 8, 9

*Emergency Dep't Physicians P.C. v. United Healthcare, Inc.*,
507 F. Supp. 3d 814 (E.D. Mich. 2020) ..................................................................... 12

*Featherston v. Steinhoff*,
575 N.W.2d 6 (Mich. Ct. App. 1997) ........................................................................ 12

*Ferens v. John Deere Co.*,
494 U.S. 516 (1990) ..................................................................................................... 4

*Hardin v. Bank of Am., N.A.*,
2022 WL 3568568 (E.D. Mich. Aug. 18, 2022) .......................................................... 11

*Henry v. Dow Chem. Co.*,
701 N.W.2d 684 (Mich. 2005) ...................................................................................... 9

*Holmes v. Countrywide Financial Corp.*,
2012 WL 2873892 (W.D. Ky. July 12, 2012) ................................................................ 8

*In re Banner Health Data Breach Litig.*,
2017 WL 6763548 (D. Ariz. Dec. 20, 2017) ............................................................... 13

*In re Flagstar Dec. 2021 Data Security Incident Litig.*,
2024 WL 5659583 (E.D. Mich. Sept. 30, 2024) ........................................................ 7, 9

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,
603 F. Supp. 3d 1183 (S.D. Fla. 2022) ......................................................................... 6

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
996 F. Supp. 2d 942 (S.D. Cal. 2014) ......................................................................... 10

*In re Target Corp. Customer Data Sec. Breach Litig.*,
309 F.R.D. 482 (D. Minn. 2015) .................................................................................... 6

*Knight v. Horace Mann Ins. Co.*,
2010 WL 1257332 (E.D. Mich. Mar. 30, 2010) ........................................................... 11

*Lochridge v. Quality Temporary Services, Inc.*,
2023 WL 4303577 (E.D. Mich. June 30, 2023) .............................................................. 7

*Mallory v. City of Detroit*,
449 N.W.2d 115 (Mich. Ct. App. 1989). ..................................................................... 12

*Malone v. Edw. C. Levy Co.*,
2026 WL 2444315 (E.D. Mich. Aug. 20, 2026) ........................................................... 11

*Nyman v. Thomson Reuters Holdings, Inc.*,
942 N.W.2d 696 (Mich. Ct. App. 2019) ........ 9

*Petroleum Enhancer, LLC v. Woodward*,
690 F.3d 757 (6th Cir. 2012) ........ 13

*Polkowski v. Jack Doheny Companies, Inc.*,
2025 WL 3079358 (E.D. Mich. Nov. 4, 2025) ........ 14

*Prudential Ins. Co. of Am. v. Kamrath*,
475 F.3d 920 (8th Cir. 2007) ........ 4

*Rakyta v. Munson Healthcare*,
2021 WL 4808339 (Mich. Ct. App. Oct. 14, 2021) ........ 7, 9, 10

*Ritchie Cap. Mgmt., L.L.C. v. JP Morgan Chase & Co.*,
960 F.3d 1037 (8th Cir. 2020) ........ 4

*Roberson v. Dakota Boys & Girls Ranch*,
42 F.4th 924 (8th Cir. 2022) ........ 4

*Schaaf v. Residential Funding Corp.*,
517 F.3d 544 (8th Cir. 2008) ........ 4

*Skinner v. Square D Co.*,
516 N.W.2d 475 (Mich. 1994 ........ 8

*Smith v. Aims*,
2021 WL 5883141 (E.D. Mich. Aug. 20, 2021), *report and recommendation adopted*, 2022 WL 22937124 (E.D. Mich. Mar. 23, 2022) ........ 11

*Stone Surgical, LLC v. Stryker Corp.*,
858 F.3d 383 (6th Cir. 2017) ........ 5

*Sutherland v. Kennington Truck Serv., Ltd.*,
562 N.W.2d 466 (Mich. 1997) ........ 5

*Taylor v. Royal Ins. Co.*,
235 F. Supp. 891 (W.D. Mo. 1964) ........ 4

*Teadt v. Lutheran Church Mo. Synod*,
603 N.W.2d 816 (Mich. Ct. App. 1999) ........ 13

*Tobin v. Michigan Civ. Serv. Comm'n*,
331 N.W.2d 184 (Mich. 1982) ........ 8

*Willis v. New World Van Lines, Inc.*,
123 F. Supp. 2d 380 (E.D. Mich. 2000) ........ 10

*Yerkovich v. AAA*,
610 N.W.2d 542 (Mich. 2000) ... 13

*Zeni v. Anderson*,
243 N.W.2d 270 (Mich. 1976) ... 11

**Statutes**

28 U.S.C. § 1404(a) ... 2, 4

Federal Trade Commission (“FTC” Act) ... 10, 11

Health Insurance Portability and Accountability Act of 1996 (“HIPAA”) ... 1, 10, 11, 12

Mich. Comp. Laws § 257.217c ... 11

Mich. Comp. Laws § 750.411h ... 8

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ... 4

**Other Authorities**

Restatement (Second) of Conflict of Laws § 188 ... 5

## I. Introduction

Plaintiff's Short Form Complaint ("SFC") incorporates four common-law claims from the Consolidated Class Action Complaint ("CCAC") and asserts them against Defendant Munson Healthcare ("Munson").[1] Plaintiff also asserts claims directly against Defendant Cerner Corporation ("Cerner"). The claims arise from a January 2025 data security incident involving Cerner's systems (the "Cerner Incident"). Like the other healthcare provider defendants in this consolidated litigation, Munson retained Cerner as its electronic health records ("EHR") vendor, and Plaintiff alleges that a criminal threat actor accessed patient information maintained within Cerner's systems during the Cerner Incident.

Munson recognizes that the Court's prior order on the Healthcare Provider Defendants' Motion to Dismiss the CCAC held that Plaintiffs' negligence (Count I), negligence *per se* to the extent predicated on the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") (Count II), breach of implied contract (Count IV), and breach of fiduciary duty (Count VII) claims could proceed against the Healthcare Provider Defendants named in that pleading. *See* ECF No. 394. However, the Court's prior ruling with respect to these claims did not consider or evaluate Michigan law, which for these claims against Munson is the relevant law that should be applied. Under Michigan law, all of Plaintiff's claims—sounding in negligence, contract, and fiduciary duty—collapse because Plaintiff pleads no cognizable damages. Her negligence claim

[1] Although Plaintiff also incorporates by reference unjust enrichment (Count V), invasion of privacy (Count VIII), and declaratory judgment (Count IX) claims in the SFC, she acknowledges that those claims have already been dismissed in their entirety (ECF No. 394). She does not ask the Court to reconsider that ruling, which applies equally here, but includes the claims solely to preserve any appellate rights. SFC ¶¶ 760 nn. 2, 4-6. As a result, Munson does not separately brief the dismissal of these particular counts as it understands the Court's ruling dismissing those claims is being applied in favor of all the healthcare provider defendants, including Munson, who have been named in Short Form Complaints.

additionally fails because she alleges no breach of any duty owed by Munson, and her negligence *per s*e theory is not a standalone cause of action under Michigan.

For these reasons, and for substantially similar reasons underlying the Court's prior dismissal of the same or analogous claims, *see* ECF No. 394, Munson respectfully requests that the Court dismiss Plaintiff's claims against it.

## II. Procedural History

Plaintiff filed the initial complaint in the United States District Court for the Western District of Michigan on January 29, 2026. *See Thomas v. Cerner Corporation et al.*, Case No. 1:26-cv-00331 (W.D. Mich.). Thereafter, pursuant to 28 U.S.C. § 1404(a), the action was transferred to the United States District Court for the Western District of Missouri on March 5, 2026. *See Thomas v. Cerner Corporation et al.*, Case No. 4:26-cv-00181-BP, ECF No. 14. The Court consolidated the case on March 9, 2026, Case No. 4:26-cv-00181-BP, ECF No. 15, and Plaintiff filed the operative SFC on August 28, 2026. ECF No. 467.

## III. Relevant Factual Allegations

The Court is familiar with the facts underlying the Cerner Incident and Munson does not repeat them here. In brief, Plaintiff's claims arise from a January 2025 cybersecurity incident involving Cerner's electronic health record platform, through which unauthorized actors allegedly accessed certain patient information, including that of Munson patients.

As part of the Short Form Complaint process, Plaintiff incorporated portions of the CCAC[2] and added allegations specific to herself and Munson. Plaintiff asserts claims against Munson for negligence (Count I), negligence *per se* (Count II), breach of implied contract

[2] The SFC expressly incorporates the CCAC's Introduction (¶¶ 1-7), Jurisdiction and Venue allegations (¶¶ 341-343), Factual Allegations (¶¶ 344-458), Class Action Allegations (¶¶ 459-471), as well as the Prayer for Relief and Jury Demand.

(Count IV), and breach of fiduciary duty (Count VII).[3] The SFC does not assert any new causes of action not alleged in the CCAC.

With respect to Munson, Plaintiff alleges that she provided personal and medical information to Munson in connection with receiving healthcare services, later received a breach notification on or around January 25, 2026, and thereafter spent time monitoring her accounts. SFC ¶¶ 761, 785, 788. Plaintiff further alleges injuries including increase in spam emails, texts and calls, loss of privacy, diminution in value of her personal information, emotional distress, and an increased risk of future misuse of her information. *Id.* ¶¶ 789-795.

Apart from these allegations, the SFC contains few allegations specific to Munson and instead incorporates broad allegations from the CCAC. The SFC merely identifies Munson and its principal places of business. *Id.* at ¶¶ 763-764. Plaintiff also alleges that Munson maintained patient information, shared patient information with Cerner in connection with healthcare services, and failed to adequately safeguard that information by operation of the Cerner Incident. *Id.* ¶¶ 764-765, 775. The SFC does not identify any particular act or omission by Munson alleged to have caused or contributed to the Cerner Incident. Rather, Plaintiff alleges in general terms that Munson "chose to allow Cerner access and control over its patients'" information. *Id.* ¶ 764.

Plaintiff seeks to represent a nationwide class and Michigan subclass consisting of individuals whose information was allegedly compromised in the Cerner Incident, as well as a nationwide class and Michigan subclass consisting of individuals whose information was provided to Cerner through Munson and allegedly compromised in the incident. *Id.* ¶ 797.

---

[3] The SFC acknowledges that claims previously addressed and dismissed by the Court's Order on Defendants' Motions to Dismiss (ECF No. 394), including the Court's dismissal in its entirety of unjust enrichment, invasion of privacy, and declaratory judgment claims, remain subject to that ruling while preserving Plaintiff's appellate rights.

## IV. Standard of Review

Under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6). A complaint "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." *Schaaf v. Residential Funding Corp.*, 517 F.3d 544, 549 (8th Cir. 2008) (citing *Twombly*, 550 U.S. at 555 & n.3). "'[N]aked assertions devoid of further factual enhancement,' do not suffice, nor do '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Roberson v. Dakota Boys & Girls Ranch*, 42 F.4th 924, 928 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678).

## V. Choice of Law

In assessing Plaintiff's claims against Munson, as a threshold matter, the Court must determine whether Missouri or Michigan law governs. Ordinarily, a federal court sitting in diversity applies the choice-of-law rules of the forum state. *See Taylor v. Royal Ins. Co.*, 235 F. Supp. 891, 893 (W.D. Mo. 1964). However, in cases like this where the case has been transferred from another court under 28 U.S.C. § 1404(a), the transferee court applies the choice-of-law principles of the state in which the original action was filed. *Ferens v. John Deere Co.*, 494 U.S. 516, 519, 529 (1990); *accord Ritchie Cap. Mgmt., L.L.C. v. JP Morgan Chase & Co.*, 960 F.3d 1037, 1047 (8th Cir. 2020). Because this case was transferred from the United States District Court for the Western District of Michigan, Michigan's choice-of-law rules apply.

"Before applying [a] state's choice-of-law rules, however, a trial court must first determine whether a conflict exists." *Prudential Ins. Co. of Am. v. Kamrath*, 475 F.3d 920, 924 (8th Cir. 2007) (citation omitted). As addressed further below, there is a conflict that is outcome determinative. Michigan law requires dismissal of Plaintiff's negligence (Count I), negligence

*per se* (Count II), breach of implied contract (Count IV), and breach of fiduciary duty (Count VII) claims against Munson, whereas the Court previously allowed those same categories of claims to proceed in part against other healthcare provider defendants under Missouri law.

If as here, a conflict exists, under Michigan's choice-of-law rules concerning tort claims, "there is a presumption that Michigan law applies unless there is a rational reason to displace it." *Atlas Techs., LLC v. Levine*, 268 F. Supp. 3d 950, 961 (E.D. Mich. 2017) (citation omitted). Michigan courts apply a two-step analysis to determine if there is a "rational reason" for displacement of this default rule, including first determining if any foreign state has an interest in having its law applied. *Sutherland v. Kennington Truck Serv., Ltd.*, 562 N.W.2d 466, 471 (Mich. 1997). "If no state has such an interest, the presumption that Michigan law will apply cannot be overcome." *Id.*

In order for a court to choose a foreign state's law, "[the] State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Id.* at 472 (quoting *Allstate Ins. v. Hague,* 449 U.S. 302, 313 (1981)).

Similarly, for contract claims, Michigan applies the significant relationship test forth in section 188 of the Restatement (Second) of Conflict of Laws. *Amerisure Mut. Ins. v. Transatlantic Reins*, 573 F. Supp. 3d 1176, 1183 (E.D. Mich. 2021) (citing *Chrysler Corp. v. Skyline Indus. Servs., Inc.*, 528 N.W.2d 698 (Mich. 1995)). The test considers the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation, and place of business of the parties. *Id.* (citing *Stone Surgical, LLC v. Stryker Corp.*, 858 F.3d

383, 389 (6th Cir. 2017)). The court weighs the contacts based on "their relative importance . . . to the particular issue." *Id.* (citation omitted).

In this case, Michigan—not Missouri—has the most significant contact to Plaintiff's claims against Munson. Both Plaintiff's domicile and residence and Munson's place of incorporation and business are in in Michigan. SFC ¶¶ 761 and 763. Plaintiff received healthcare services at Munson in Michigan. *Id.* ¶¶ 761, 763-764. Thus, the parties' relationship and the healthcare encounter through which Plaintiff provided her information and contends an implied contract arose are all centered in Michigan. The conduct Plaintiff challenges is likewise tied to Michigan because she alleges that Munson failed to safeguard patient information it received in Michigan and failed to oversee from Michigan the security of information maintained by Cerner. *See, e.g.*, *id.* ¶¶ 764, 767, 775.

By contrast, Missouri's connection to this dispute derives from Cerner's principal place of business in Kansas City, Missouri, where Plaintiff's information was stored. *Id.* ¶¶ 762, 764-65. Missouri is not the location of Plaintiff and Munson's relationship or the healthcare services that generated the information at issue.

That conclusion is consistent with how courts analyze choice of law in data breach cases where they consider the relative significance of the parties' contacts with competing jurisdictions, including the location of the parties, their relationship, and the alleged injury. *See In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, 603 F. Supp. 3d 1183, 1199 (S.D. Fla. 2022). Although some courts have applied the law of the state where the data breach allegedly occurred, *see, e.g.*, *In re Target Corp. Customer Data Sec. Breach Litig.*, 309 F.R.D. 482, 486 (D. Minn. 2015), those cases generally involve circumstances in which plaintiffs had a direct relationship with the out-of-state defendant whose conduct allegedly caused the data

breach. That rationale does not fit this case. Plaintiff's relationship was with Munson from whom she received medical care, not with Cerner. For these reasons, Michigan law should be applied.

## VI. Plaintiff Fails to State a Claim Upon which Relief Can Be Granted

The SFC should be dismissed in its entirety for failure to state a claim for relief.

### A. Plaintiff Fails to Allege Any Cognizable Injury

Plaintiff's tort and contract claims should be dismissed for failure to allege any cognizable injury. *See In re Flagstar Dec. 2021 Data Security Incident Litig.*, No. 22-cv-11385, 2024 WL 5659583, at *11 (E.D. Mich. Sept. 30, 2024) (dismissing negligence claim for failure to allege a cognizable injury). "Michigan law has recognized that 'damages 'incurred in anticipation of possible future injury rather than in response to present injuries,' are not cognizable under Michigan law" for negligence or breach of contract. *Lochridge v. Quality Temporary Services, Inc.*, No. 22-cv-12086, 2023 WL 4303577, at *6 (E.D. Mich. June 30, 2023) (citing *Doe v. Henry Ford Health Sys.*, 865 N.W.2d 915, 921 (Mich. Ct. App. 2014)). Speculative damages are precluded. *Henry Ford*, 865 N.W.2d at 922; *see also Rakyta v. Munson Healthcare*, No. 354831, 2021 WL 4808339, at *2-7 (Mich. Ct. App. Oct. 14, 2021) (affirming dismissal of claims due to lack of an actual present injury and rejecting the argument that Michigan law recognizes an "imminent risk of future harm as a present injury capable of supporting a claim for damages"). Because Plaintiff does not adequately allege Munson caused any cognizable damages based on a present injury, Plaintiff's claims should be dismissed. *Id.*

#### 1. Spam Texts, Phone Calls, and Emails Are Not Cognizable Injuries

Plaintiff cannot overcome her failure to plead cognizable damages based on a present injury by alleging that she experienced spam texts, phone calls, and emails. ECF 467, SFC ¶ 789. Yet, under Michigan law, the receipt of "unsolicited messages not amounting to harassment is not

actionable." *Bridging Communities, Inc. v. Hartford Cas. Ins. Co.*, 9 N.W.3d 92, 101 (Mich. Ct. App. 2023) (quoting *Tobin v. Michigan Civ. Serv. Comm'n*, 331 N.W.2d 184, 190 (Mich. 1982)). Harassment is defined as "repeated or continuing unconsented contact that would cause a reasonable individual to suffer emotional distress and that actually causes the victim to suffer emotional distress." Mich. Comp. Laws § 750.411h. The receipt of unsolicited texts, phone calls, and emails is a ubiquitous, albeit irksome, reality of today. "At the most, they rise to the level of a minor annoyance which is part of everyday life." *Bennett v. Columbia Broad. Sys., Inc.*, No. 85-1467, 1986 WL 17249, at *2 (6th Cir. July 3, 1986); *accord Holmes v. Countrywide Financial Corp.*, No. 5:08-cv-00205-R, 2012 WL 2873892, at *11 (W.D. Ky. July 12, 2012) ("[T]he annoyance of unwanted telephone calls cannot form the basis of an injury.").

But even if the spam calls could constitute actual injury, Plaintiff does not allege that phone numbers or email addresses were part of the data set. *See* ECF 467, SFC ¶ 771. Causation under Michigan law requires, at a minimum, "a reasonable likelihood of probability rather than a possibility." *Skinner v. Square D Co.*, 516 N.W.2d 475, 481 (Mich. 1994). Plaintiffs must set forth "specific facts that would support a reasonable inference of a logical sequence of cause and effect" and "exclude other reasonable hypotheses with a fair amount of certainty." *Id.* at 481, 484. "It is axiomatic in logic and in science that correlation is not causation." *Craig ex rel. Craig v. Oakwood Hosp.*, 684 N.W.2d 296, 312 (Mich. 2004).

### 2. Plaintiff's Other Alleged Injuries Fail As Well

Likewise, the other general injuries raised by Plaintiff are insufficient to sustain Plaintiff's claims.

***Alleged Mitigation Efforts.*** Plaintiff's speculative and undefined financial losses and lost time "derive[d] from a possible future harm that might or might not occur" fail as a matter of law. *Doe v. Henry Ford Health Sys.*, 865 N.W.2d 915, 922 (Mich. Ct. App. 2014); *see also In re*

*Flagstar Dec. 2021 Data Security Incident Litig.*, No. 22-cv-11385, 2024 WL 5659583, at *11 (E.D. Mich. Sept. 30, 2024) (under Michigan law injuries for negligence and breach of contract are not cognizable for damages allegedly "incurred in anticipation of possible future injury").

***Alleged Loss of Privacy.*** Michigan courts have rejected the theory that "the invasion of privacy in and of itself damaged the plaintiff and [putative class members] whose information had been disclosed." *Nyman v. Thomson Reuters Holdings, Inc.*, 942 N.W.2d 696, 705 (Mich. Ct. App. 2019). That is because "the unauthorized viewing of confidential information does not by itself reduce the value of the information." *Rakyta v. Munson Healthcare*, No. 354831, 2021 WL 4808339, at *5 (Mich. Ct. App. Oct. 14, 2021). Rather, Michigan law requires damages based on a present injury to the plaintiff's "credit or identity." *Henry Ford*, 865 N.W.2d at 921.

***Alleged Emotional Distress.*** Plaintiff's blanket allegations of emotional distress are insufficient to allege a present injury. A "fear of future" injury does not provide for cognizable damages based on a present injury. *See, e.g., Henry v. Dow Chem. Co.*, 701 N.W.2d 684, 692 (Mich. 2005). As the Michigan Supreme Court explained in *Dow Chem.*, "Michigan law only recognized emotional distress as the basis for a negligence claim when the emotional distress involved present physical manifestations of the distress." *Rakyta,* 2021 WL 4808339, at *5 (citing *Dow Chem.*, 701 N.W.2d at 692). Indeed, negligence claims require the manifestation of physical injury. *Angus v. Flagstar Bank, FSB*, No. 21-cv-10657, 2025 WL 937760, at * 1 (E.D. Mich. Mar. 27, 2025) (dismissing negligence claim in data breach case and referring to Feb. 12, 2025 oral ruling, ECF No. 106, in which court [on PageID.2111–12] relied on *Dow Chem.* and held that ordinary negligence requires "plausible allegations that he or she suffered a present physical injury, with 'physical' being the key here"). Moreover, emotional distress damages are not recoverable for breach of a contract unless the contract is personal in nature or purposeful tortious conduct

independent of the breach. *Willis v. New World Van Lines, Inc.*, 123 F. Supp. 2d 380, 389 (E.D. Mich. 2000)). Because no physical manifestation of distress, personal contract, or purposeful tortious conduct is alleged, Plaintiff has not alleged cognizable injury based on emotional distress.

***Alleged Diminution in Value of Information.*** Plaintiff's bald assertion that the value of her personal information has diminished because of the Cerner Incident are insufficient. Courts consistently reject the diminution-in-value theory where, as here, plaintiffs do not allege that they sold or attempted to sell their personal information, or that the incident forced them to accept a decreased price for that information. *See, e.g., In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 975 (S.D. Cal. 2014) (dismissing plaintiffs' negligent misrepresentation claim under Michigan and other laws in part "because Plaintiffs' Personal Information does not have independent monetary value" and therefore finding that "Plaintiffs ha[d] failed to allege a pecuniary loss caused by Sony's alleged misrepresentations") (citations omitted); *Rakyta*, 2021 WL 4808339, at *5 (rejecting diminution in value claim).

Accordingly, Plaintiff's claims must be dismissed for failure to allege a cognizable injury that was caused by Munson.

### B. Plaintiff Fails To State a Claim For Negligence *Per Se* (Count II)

Plaintiff alleges that Munson is liable for negligence *per se* based on violations of Section 5 of the FTC Act and HIPAA, incorporating paragraphs 494 through 506 of the CCAC. SFC ¶ 760. In its prior order, the Court dismissed negligence *per se* claims to the extent they were based on Arizona, Arkansas, California, or Florida law, and also dismissed negligence *per se* claims predicated on the FTC Act. ECF No. 394 at 18.

Here, Plaintiff's negligence per se claim fails because it is not an independent cause of action under Michigan law. "The weight of Michigan authority supports [the] position that negligence per se is not an independent cause of action, but rather a burden-shifting mechanism

within the theory of negligence." *Abnet v. Coca-Cola Co.,* 786 F. Supp. 2d 1341, 1345 (W.D. Mich. 2011). Statutory violations may support a *prima facie* case of negligence, "but Plaintiffs may not maintain a separate claim of negligence per se." *Id.*; *see also Hardin v. Bank of Am., N.A.*, No. 2:22-cv-10023, 2022 WL 3568568, at *6 (E.D. Mich. Aug. 18, 2022); *Zeni v. Anderson*, 243 N.W.2d 270, 276 (Mich. 1976).

Even if negligence *per se* were an independent cause of action (it is not), this claim should be dismissed because under Michigan law the FTC Act and HIPAA—statutes that provide no private right of action—cannot form its basis. *See Knight v. Horace Mann Ins. Co.*, No. 08-10405, 2010 WL 1257332, at *3 (E.D. Mich. Mar. 30, 2010) (dismissing negligence per se claim premised on Mich. Comp. Laws § 257.217c because the statute did not create a private right of action, and, under Michigan law, "[w]here the common law provides no right to relief, but the right to relief is created by statute, a plaintiff has no private cause of action to enforce the right unless: (1) the statute expressly creates a private cause of action, or (2) a cause of action can be inferred from the fact that the statute provides no adequate means of enforcement of its provisions.") (citation omitted)); *see also Malone v. Edw. C. Levy Co.*, No. 25-cv-11107, 2026 WL 2444315, at *10 (E.D. Mich. Aug. 20, 2026) (dismissing negligence *per se* claim based on alleged FTC Act violations); *Smith v. Aims*, No. 20-12013, 2021 WL 5883141, at *6 (E.D. Mich. Aug. 20, 2021), *report and recommendation adopted*, 2022 WL 22937124 (E.D. Mich. Mar. 23, 2022) (rejecting a negligence *per se* claim grounded in an alleged HIPAA violation).

Finally, even if a HIPAA-based theory could support a negligence or negligence *per se* claim, Plaintiff stills fail to plead facts showing that any alleged HIPAA violation by Munson proximately caused the Cerner Incident. The SFC alleges that the incident occurred on Cerner's systems—not Munson's systems or those of any other healthcare provider. Accordingly,

allegations about whether Munson maintained adequate security controls for its own systems do not plausibly connect Munson to the incident or advance Plaintiff's claims. HIPAA likewise permits a covered entity to allow a business associate to create, receive, maintain, or transmit electronic protected health information on its behalf so long as the covered entity obtains satisfactory assurances that the business associate will appropriately safeguard the information and documents those assurances in a business associate agreement. 45 C.F.R. §§ 164.308(b)(1), (b)(3), 164.502(e). Plaintiff acknowledges that Munson had a Business Associate Agreement with Cerner, ECF No. 467, SFC n.3, but plead no facts showing that the agreement was deficient, that Munson lacked the required assurances, or that any Munson act or omission caused the Cerner Incident. The allegations therefore do not plausibly plead any HIPAA violation by Munson, much less one that caused Plaintiff's alleged injuries.

### C. Plaintiff Fails to State a Claim for Breach of Implied Contract

In addition to lack of damages, Plaintiff's implied contract claim fails because she has not asserted adequate consideration. To sustain a claim for breach of contract, plaintiffs must plead: "(1) a contract, (2) [d]efendant's breach of the contract, and (3) damages to [p]laintiffs caused by the breach." *Emergency Dep't Physicians P.C. v. United Healthcare, Inc.*, 507 F. Supp. 3d 814, 827-28 (E.D. Mich. 2020) (citing *Bank of Am., NA v. First Am. Title Ins.*, 878 N.W.2d 816, 829 (Mich. 2016)). Where there is no explicit contract between the parties, an implied contract may arise from "their conduct, language, and other circumstances attending to the transaction." *Featherston v. Steinhoff*, 575 N.W.2d 6, 9 (Mich. Ct. App. 1997). Nevertheless, an implied contract must still "satisfy the elements of mutual assent and consideration." *Mallory v. City of Detroit*, 449 N.W.2d 115, 118 (Mich. Ct. App. 1989).

Plaintiff's breach of implied contract claim is premised on her assertion that she trusted that Munson "would use reasonable measures to protect [her Private Information] according to

[Munson's] internal policies, as well as state and federal law. ECF No. 467, ¶ 783. However, "[u]nder the preexisting duty rule, it is well settled that doing what one is legally bound to do is not consideration for a new promise." *Yerkovich v. AAA*, 610 N.W.2d 542, 546 (Mich. 2000); *see also Brush v. Miami Beach Healthcare Grp. Ltd.*, 238 F. Supp. 3d 1359, 1367 (S.D. Fla. 2017) (concluding defendant's privacy statements were not contractual in nature but merely informed patients of their rights under federal law); *In re Banner Health Data Breach Litig.*, No. CV-16-02696-PHX-SRB, 2017 WL 6763548, at *4 (D. Ariz. Dec. 20, 2017) ("Defendant was already under a preexisting legal duty to protect Plaintiff's information.").

### D. Plaintiff's Breach of Fiduciary Duty Claim Fails

To establish a claim for breach of fiduciary duty, a plaintiff must prove: (1) Munson owed a fiduciary duty to Plaintiff and the proposed class; (2) Munson breached that duty; and (3) Plaintiff suffered damages caused by Munson's breach. *Brooks Williamson & Assocs., Inc. v. Braun*, No. 357170, 2022 WL 1508992, at *5 (Mich. Ct. App. May 12, 2022). A fiduciary relationship arises from the "reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another." *Petroleum Enhancer, LLC v. Woodward*, 690 F.3d 757, 765 (6th Cir. 2012) (quoting *Teadt v. Lutheran Church Mo. Synod*, 603 N.W.2d 816, 823 (Mich. Ct. App. 1999)). A breach of fiduciary duty arises when a person in a position of influence and confidence abuses that influence or betrays that confidence. *Teadt*, 603 N.W.2d at 823.

Though a fiduciary relationship may exist between a doctor and a patient, Michigan courts have not recognized that a fiduciary relationship between a hospital and a patient exists. Nor is Plaintiff asserting that Munson breached a fiduciary duty related to the provision of healthcare services. Rather, Plaintiff seeks to impose a fiduciary duty to prevent a criminal cyberattack on a third party's systems simply because Plaintiff provided Munson with her information in connection with obtaining healthcare services. Courts routinely reject this theory, holding the

exchange of personal information does not create a fiduciary relationship. *See, e.g., Polkowski v. Jack Doheny Companies, Inc.*, No. 2:25-cv-10516, 2025 WL 3079358, at *10 (E.D. Mich. Nov. 4, 2025). Because no fiduciary relationship exists, Munson cannot have breached a fiduciary duty owed to Plaintiff.

## VII. Conclusion

For the foregoing reasons, Munson respectfully requests that each of the claims brought against it in the Short Form Complaint be dismissed in their entirety.

Dated: September 28, 2026

Respectfully Submitted,

*/s/ Elizabeth A. Scully*

Elizabeth A. Scully (admitted *pro hac vice*)
Gilbert S. Keteltas (admitted *pro hac vice*)
Carey S. Busen (admitted *pro hac vice*)
**BAKER & HOSTETLER LLP**
1050 Connecticut Ave. N.W., Ste. 1100
Washington, DC 20036
Tel: (202) 861-1500
escully@bakerlaw.com
gketeltas@bakerlaw.com
cbusen@bakerlaw.com

Ambika B. Singhal #64724 (MO)
**BAKER & HOSTETLER LLP**
2850 North Harwood Street
Suite 1100
Dallas, TX 75201
Tel: (214) 210-1200
asinghal@bakerlaw.com

*Attorneys for Defendant Munson Healthcare*

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of September, 2026, the foregoing was filed with the Clerk of the Court using the CM/ECF system, which will send notice of electronic filing to all counsel of record.

*/s/ Elizabeth A. Scully*
*Attorney for Defendant Munson Healthcare*