UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| IN RE: CERNER/ORACLE DATA BREACH LITIGATION | Case No. 25-00259-CV-W-BP<br><br>**ORAL ARGUMENT REQUESTED** |

# DEFENDANT CERNER CORPORATION'S SUGGESTIONS IN SUPPORT OF ITS MOTION TO DISMISS CERTAIN CLAIMS IN SHORT-FORM COMPLAINTS

## TABLE OF CONTENTS

BACKGROUND .......... 1

ARGUMENT .......... 2

I. The ICFA Claims Should Be Dismissed .......... 2

A. The ICFA Claims Fail Because Plaintiffs Do Not Plead Actual Damage .......... 3

B. The Deception-Based Theory Fails For Additional Reasons .......... 4

II. The IUDTPA Claims Should Be Dismissed .......... 8

III. The DCCPPA Claims Should Be Dismissed .......... 9

A. Cerner Is Not A Merchant .......... 9

B. Plaintiffs Do Not Identify Any Actionable Misrepresentations Or Omissions .......... 11

IV. The Deception-Based And Unfairness-Based MCPA Claims Should Be Dismissed .......... 12

A. Cerner Has Not Engaged In A Practice Prohibited By MCPA .......... 12

B. The Deception-Based Theory Fails For Additional Reasons .......... 14

V. The TCPA Claim Should Be Dismissed .......... 15

A. Shaffer Has Not Suffered An Ascertainable Loss .......... 16

B. The Deception-Based Theory Fails For Additional Reasons .......... 17

VI. The TITDA Claim Should Be Dismissed .......... 19

VII. The TDTPA Claims Should Be Dismissed .......... 19

A. Plaintiffs Do Not Identify Any Actionable Misrepresentations Or Omissions .......... 20

B. The Alleged Misrepresentations Were Not Communicated To Plaintiffs And Plaintiffs Did Not Rely On The Alleged Misrepresentations .......... 21

VIII. The KCPA Claim Should Be Dismissed .......... 21

A. Harris And Cerner Are Not In Contractual Privity .......... 22

B. Harris Has Not Suffered An Ascertainable Loss .......... 22

C. The Deception-Based Theory Fails For Additional Reasons ................................23

IX. The NCUDTPA Claim Should Be Dismissed ..............................................................25

A. Smith Does Not Plead An Actual Injury..............................................................25

B. The Deception-Based Theory Fails For Additional Reasons ................................27

X. The NCITPA Claim Should Be Dismissed....................................................................29

XI. The Breach-Of-Express-Contract Claims Should Be Dismissed...................................30

CONCLUSION ..........................................................................................................................30

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Acuity v. Rex, LLC*,
929 F.3d 995 (8th Cir. 2019) ....................................................................................1

*Adam A. Wechsler & Son, Inc. v. Klank*,
561 A.2d 1003 (D.C. 1989) ....................................................................................11

*Akers v. Prime Succession of Tennessee, Inc.*,
387 S.W.3d 495 (Tenn. 2012)....................................................................................16, 17

*Alexander v. Carrington Mortgage Services, LLC*,
23 F.4th 370 (4th Cir. 2022) ....................................................................................15

*Ambrosius v. Chicago Athletic Clubs, LLC*,
203 N.E.3d 239 (Ill. App. Ct. 2021) ....................................................................................3

*American Italian Pasta Co. v. New World Pasta Co.*,
371 F.3d 387 (8th Cir. 2004) ....................................................................................6

*Amstadt v. United States Brass Corp.*,
919 S.W.2d 644 (Tex. 1996)....................................................................................21

*Arcangel v. Yardi Systems, Inc.*,
___ N.E.3d ___, 2026 WL 1458911 (Ill. App. Ct. May 22, 2026)...........................................5

*Ash v. PSP Distribution, LLC*,
226 N.E.3d 748 (Ill. App. Ct. 2023) ....................................................................................5, 7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................................................................................1

*Associated Bank, National Ass'n v. Morrison*,
___ N.E.3d ___, 2026 WL 1175172 (Ill. App. Ct. Apr. 30, 2026)...........................................7

*Attias v. CareFirst, Inc.*,
2023 WL 5952052 (D.D.C. Sept. 13, 2023) ....................................................................................15

*Audio Visual Artistry v. Tanzer*,
403 S.W.3d 789 (Tenn. Ct. App. 2012) ....................................................................................17, 18

*Avery v. State Farm Mutual Automobile Insurance Co.*,
835 N.E.2d 801 (Ill. 2005) ....................................................................................5, 6

*Barbara's Sales, Inc. v. Intel Corp.*,
879 N.E.2d 910 (Ill. 2007) ....................................................................................5, 6

*Belville v. Ford Motor Co.*,
13 F. Supp. 3d 528 (S.D. W. Va. 2014) ..........................................................................14

*Bradby v. Bimbo Bakeries USA, Inc.*,
2024 WL 1604488 (D. Md. Apr. 12, 2024) ......................................................................14

*Brell v. Thomas*,
2025 WL 798642 (Tenn. Ct. App. Mar. 13, 2025) ...........................................................18

*Brewer v. Allstate Life Insurance Co.*,
2022 WL 843196 (Ill. App. Ct. Mar. 22, 2022).................................................................5

*BSI Constructors, Inc. v. Hartford Fire Insurance Co.*,
705 F.3d 330 (8th Cir. 2013) ......................................................................................18, 25

*Bumpers v. Community Bank of Northern Virginia*,
747 S.E.2d 220 (N.C. 2013).........................................................................................27, 28

*Burger v. Spark Energy Gas, LLC*,
507 F. Supp. 3d 982 (N.D. Ill. 2020) ..................................................................................8

*Burnett v. National Ass'n of Realtors*,
75 F.4th 975 (8th Cir. 2023) .............................................................................................30

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732 (7th Cir. 2014) ...............................................................................................9

*Cannon v. Wells Fargo Bank, N.A.*,
926 F. Supp. 2d 152 (D.D.C. 2013)..................................................................................11

*Carter v. Ludwick*,
139 F.4th 982 (8th Cir. 2025) ..............................................................................................2

*Castle McCulloch, Inc. v. Freedman*,
610 S.E.2d 416 (N.C. Ct. App.) .........................................................................................26

*Cauley v. Bean*,
871 S.E.2d 870 (N.C. Ct. App. 2022) ................................................................................26

*Chandler v. Gene Messer Ford, Inc.*,
81 S.W.3d 493 (Tex. App. 2002).......................................................................................20

*City of Plantation Police Officers Pension Fund v. Meredith Corp.*,
16 F.4th 553 (8th Cir. 2021) ................................................................................................6

*Cooney v. Chicago Public Schools*,
943 N.E.2d 23 (Ill. App. Ct. 2010) .....4

*Daugherty v. Jacobs*,
187 S.W.3d 607 (Tex. App. 2006).....20

*Davis v. McGuigan*,
325 S.W.3d 149 (Tenn. 2010).....17

*De Bouse v. Bayer*,
922 N.E.2d 309 (Ill. 2009).....8

*DeCastro v. Hot Springs Neurology Clinic, P.A.*,
107 F.4th 813 (8th Cir. 2024) .....7

*Department of Revenue, Finance & Administration Cabinet v. Shinin' B Trailer Sales, LLC*,
471 S.W.3d 309 (Ky. Ct. App. 2015) .....22, 24

*Discover Bank v. Morgan*,
363 S.W.3d 479 (Tenn. 2012).....16

*Doe v. Deaconess Illinois Union County Hospital, Inc.*,
831 F. Supp. 3d 710 (S.D. Ill. 2025).....4

*Edwards v. Wilmington Savings Fund Society, FSB*,
___ A.3d ___, 2026 WL 2436711 (D.C. Aug. 20, 2026) .....10

*E.M. v. Shady Grove Reproductive Science Center P.C.*,
496 F. Supp. 3d 338 (D.D.C. 2020).....11

*Family Snacks of North Carolina, Inc. v. Prepared Products Co.*,
295 F.3d 864 (8th Cir. 2002) .....30

*Flegles, Inc. v. TruServ Corp.*,
289 S.W.3d 544 (Ky. 2009).....24

*Flores v. Aon Corp.*,
242 N.E.3d 340 (Ill. App. Ct. 2023) .....3, 4

*Floyd v. Parkview Council of Co-Owners, Inc.*,
664 S.W.3d 726 (Ky. Ct. App. 2023) .....25

*Ford v. Bluegreen Vacations Unlimited, Inc.*,
2022 WL 1125276 (W.D. Mo. Apr. 14, 2022) .....30

*Foster v. Corteva Agriscience LLC*,
2026 WL 2531967 (N.D. Tex. Aug. 27, 2026).....20

*Gale v. International Business Machines Corp.*,
781 N.Y.S.2d 45 (App. Div. 2004) .......................................................................... 19, 25

*Gardner v. Gardner*,
435 S.E.2d 324 (N.C. 1993) .......................................................................................... 26

*George v. Omega Flex, Inc.*,
2020 WL 4718386 (W.D. Mo. Aug. 13, 2020) ................................................................ 19, 25

*Global Hookah Distributors, Inc. v. Avior, Inc.*,
401 F. Supp. 3d 653 (W.D.N.C. 2019) ........................................................................... 28

*Gregory v. ProNAi Therapeutics Inc.*,
297 F. Supp. 3d 372 (S.D.N.Y. 2018) ............................................................................. 6

*Gurrola v. Ford Motor Co.*,
774 F. Supp. 3d 959 (N.D. Ill. 2025) ............................................................................... 8

*Hargrove v. MedStar Washington Hospital Center*,
2024 WL 3225972 (D.D.C. June 28, 2024) .................................................................... 11

*Harrison v. Avalon Properties, LLC*,
246 S.W.3d 587 (Tenn. Ct. App. 2007) .......................................................................... 18

*Hekel v. Hunter Warfield, Inc.*,
118 F.4th 938 (8th Cir. 2024) ........................................................................................ 26

*Hencken v. Servpro of Carroll County*,
2024 WL 910327 (Md. App. Ct. Mar. 4, 2024) ............................................................... 15

*Hikma Pharmaceuticals USA Inc. v. Amarin Pharma, Inc.*,
608 U.S. 580 (2026) ............................................................... 7, 12, 15, 18, 20, 24, 28

*Holland v. United Services Automobile Ass'n*,
707 S.W.3d 541 (Ky. Ct. App. 2025) ......................................................................... 24, 25

*Hossain v. Ocwen Loan Servicing, LLC*,
2014 WL 4347620 (M.D. Tenn. Aug. 29, 2014) ............................................................. 17

*Hou-Tex, Inc. v. Landmark Graphics*,
26 S.W.3d 103 (Tex. App. 2000) ................................................................................... 21

*Howard v. Chicago Transit Authority*,
931 N.E.2d 292 (Ill. App. Ct. 2010) ............................................................................... 9

*Mattera v. Baffert*,
100 F.4th 734 (6th Cir. 2024) ........................................................................................ 22

*I-Conn Healthcare Solutions, LLC v. Advanced Internet Technologies, Inc.*,
2010 WL 10399 (N.C. Ct. App. Jan. 5, 2010) ....................28

*In re American Medical Collection Agency, Inc. Customer Data Security Breach Litigation*,
2021 WL 5937742 (D.N.J. Dec. 16, 2021) ....................29

*In re Folgers Coffee Marketing*,
159 F.4th 1151 (8th Cir. 2025) ....................18

*In re Ford Motor Co. Securities Litigation*,
381 F.3d 563 (6th Cir. 2004) ....................6

*In re Lurie Children's Hospital Data Security Litigation*,
2025 WL 2754760 (N.D. Ill. Sept. 27, 2025) ....................8, 9

*In re Meta Pixel Tax Filing Cases*,
724 F. Supp. 3d 987 (N.D. Cal. 2024) ....................8

*In re MOVEit Customer Data Security Breach Litigation*,
2026 WL 75852 (D. Mass. Jan. 9, 2026) ....................29

*In re SuperValu, Inc., Customer Data Security Breach Litigation*,
925 F.3d 955 (8th Cir. 2019) ....................3, 4

*In re ZF-TRW Airbag Control Units Products Liability Litigation*,
601 F. Supp. 3d 625 (C.D. Cal. 2022) ....................21

*Jackson v. Home Depot U.S.A., Inc.*,
919 S.E.2d 199 (N.C. 2025) ....................25

*Keaton v. G.C. Williams Funeral Home, Inc.*,
436 S.W.3d 538 (Ky. Ct. App. 2013) ....................22

*King v. Ohio Valley Terminix Co.*,
214 S.W.2d 993 (Ky. 1948) ....................24

*McGraw v. Loyola Ford, Inc.*,
723 A.2d 502 (Md. Ct. Spec. App. 1999) ....................14

*McHargue v. Fayette Coal & Feed Co.*,
283 S.W.2d 170 (Ky. 1955) ....................24

*Meta Platforms, Inc. v. District of Columbia*,
301 A.3d 740 (D.C. 2023) ....................11

*Miller v. General Motors, LLC*,
773 F. Supp. 3d 461 (E.D. Mich. 2025) ....................6, 14, 17

*Moschos v. Moschos*,
882 S.E.2d 401 (N.C. Ct. App. 2022) ........................................................................26

*Mouzon v. Radiancy, Inc.*,
200 F. Supp. 3d 83 (D.D.C. 2016) ........................................................................15

*Odle v. GameStop Corp.*,
774 F. Supp. 3d 982 (S.D. Ill. 2025) ........................................................................9

*Pacheco v. Rogers & Breece, Inc.*,
579 S.E.2d 505 (N.C. Ct. App. 2003) ........................................................................26

*Pagliara v. Johnston Barton Proctor & Rose, LLP*,
708 F.3d 813 (6th Cir. 2013) ........................................................................16

*Paroline v. United States*,
572 U.S. 434 (2014) ........................................................................29

*Pate v. Fun Town RV San Angelo, LP*,
2024 WL 3995413 (Tex. App. Aug. 30, 2024) ........................................................................20

*Patterson v. McMickle*,
191 S.W.3d 819 (Tex. App. 2006) ........................................................................21

*Payne v. PNC Bank, National Ass'n*,
2024 WL 3467047 (Ill. App. Ct. July 19, 2024) ........................................................................3

*Pearson v. Chung*,
961 A.2d 1067 (D.C. 2008) ........................................................................11

*Petta v. Christie Business Holding Co.*,
230 N.E.3d 162 (Ill. App. Ct. 2023) ........................................................................4

*PPG Industries, Inc. v. JMB/Houston Centers Partners Limited Partnership*,
146 S.W.3d 79 (Tex. 2004) ........................................................................21

*Precision Links Inc. v. USA Products Group, Inc.*,
2009 WL 801781 (W.D.N.C. Mar. 25, 2009) ........................................................................27

*Preux v. Wheat*,
2026 WL 321453 (N.D. Ga. Feb. 5, 2026) ........................................................................18

*Professional Maintenance Systems, Inc. v. Baltimore County*,
2022 WL 2359355 (D. Md. June 30, 2022) ........................................................................15

*Prudential Insurance Co. of America v. Jefferson Associates, Ltd.*,
896 S.W.2d 156 (Tex. 1995) ........................................................................20

*RE Carroll Management Co. v. Dun & Bradstreet, Inc.*,
2025 WL 415743 (4th Cir. Feb. 6, 2025) ....................26

*Rodriguez v. Ford Motor Co.*,
596 F. Supp. 3d 1050 (N.D. Ill. 2022) ....................5

*Rogers v. Keffer, Inc.*,
243 F. Supp. 3d 650 (E.D.N.C. 2017)....................29

*Sanchez v. Walmart Inc.*,
733 F. Supp. 3d 653 (N.D. Ill. 2024) ....................6

*Saucier v. Countrywide Home Loans*,
64 A.3d 428 (D.C. 2013) ....................11, 12

*SBAV, LP v. Porter Bancorp, Inc.*,
2014 WL 1257018 (W.D. Ky. Mar. 26, 2014) ....................24

*Snowder v. District of Columbia*,
949 A.2d 590 (D.C. 2008) ....................10

*Solum v. Certainteed Corp.*,
147 F. Supp. 3d 404 (E.D.N.C. 2015)....................27, 28, 29

*Sowa v. Mercedes-Benz Group AG*,
764 F. Supp. 3d 1233 (N.D. Ga. 2024) ....................22

*Stone v. Landis Construction Co.*,
120 A.3d 1287 (D.C. 2015) ....................10

*Stutman v. Chemical Bank*,
731 N.E.2d 608 (N.Y. 2000)....................18

*Trident Atlanta, LLC v. Charlie Graingers Franchising, LLC*,
2020 WL 6889208 (E.D.N.C. Nov. 23, 2020) ....................28

*Tri-Plex Technical Services, Ltd. v. Jon-Don, LLC*,
241 N.E.3d 454 (Ill. 2024)....................3, 4, 7, 8, 9, 18, 19, 25

*Tucker v. Sierra Builders*,
180 S.W.3d 109 (Tenn. Ct. App. 2005) ....................17

*Twardzik v. HP Inc.*,
2022 WL 606092 (D. Del. Jan. 25, 2022)....................15

*Tylka v. Gerber Products Co.*,
1999 WL 495126 (N.D. Ill. July 1, 1999)....................6

*Walker v. Fleetwood Homes of North Carolina, Inc.*,
627 S.E.2d 629 (N.C. Ct. App. 2006) ........................................................................26

*Wertymer v. Walmart, Inc.*,
142 F.4th 491 (7th Cir. 2025) ..................................................................................5

*Wheeling v. Selene Finance LP*,
250 A.3d 197 (Md. 2021) ........................................................................................13

*Williams LLC v. United Community Bank*,
724 S.E.2d 543 (N.C. Ct. App. 2012) ........................................................................29

*Williams v. Chase Bank USA, N.A.*,
390 S.W.3d 824 (Ky. Ct. App. 2012) ........................................................................22

**STATUTES AND RULES**

D.C. Code
§ 28-3901 ...........................................................................................9, 10, 11
§ 28-3904 ...................................................................................................11

Fed. R. Civ. P.
12..............................................................................................................1, 7
54....................................................................................................................1

815 Ill. Comp. Stat.
505/10a..............................................................................................................3
510/3 ................................................................................................................9
530/20 ..............................................................................................................3

Ky. Rev. Stat. Ann.
§ 367.170..........................................................................................................24
§ 367.220..............................................................................................22, 23, 24

Md. Code Ann., Com. Law
§ 13-101 ...........................................................................................................13
§ 13-301 ...........................................................................................12, 13, 14, 15
§ 13-303 .......................................................................................................12, 13
§ 13-408 .......................................................................................................12, 14
§ 14-3508 ..........................................................................................................12

N.C. Gen. Stat.
§ 75-16 .........................................................................................................25, 27
§ 75-65 ..............................................................................................................29

Tenn. Code Ann.
§ 47-18-109 ........................................................................................................16
§ 47-18-2107 ......................................................................................................19

Tex. Bus. & Com. Code Ann. § 17.50 .......... 20, 21

**OTHER AUTHORITIES**

*Ascertain*, Merriam-Webster, https://www.merriam-webster.com/dictionary/ascertain .......... 23

*Ascertainable*, Merriam-Webster, https://www.merriam-webster.com/dictionary/ascertainable .......... 23

*Deceptive act*, Black's Law Dictionary (12th ed. 2024) .......... 24

Cerner Corporation moves under Fed. R. Civ. P. 12(b)(6) to dismiss certain claims (identified in Cerner's notice of motion) in the short-form complaints filed at Dkts. 450 to 469, 476, and 479. On each claim, Plaintiffs fail to plead "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[1]

## BACKGROUND

Although Plaintiffs bring claims under various statutes—and Cerner addresses the merits of those claims separately below—their deception-based claims rest on common allegations. Plaintiffs focus on two statements on the website for Oracle Corporation, Cerner's corporate parent, that are purportedly false or misleading. *See, e.g.*, Dkt. 450 ¶¶ 803-820 (incorporating CAC ¶ 349 by reference and citing no other statements by Cerner).

*First*, Plaintiffs cite a webpage about Oracle's acquisition of Cerner. *See* CAC ¶ 349. There, an Oracle executive stated that "Oracle is an industry leader in securely storing, processing, and analyzing large volumes of cloud-based data." Seema Verma, *Oracle Acquires Cerner to*

---

[1] Terms defined in Cerner's prior briefing (Dkts. 161, 249) have the same meaning here unless otherwise defined. The "MTD Order" is Dkt. 394. Citations to "Ex." refer to exhibits attached to the Declaration of Alan Schoenfeld (Sept. 28, 2026). Cerner accepts the short-form complaints' well-pleaded allegations as true solely for purposes of this motion. For all quotes, unless noted, all alterations have been adopted, and all further quotation marks and citations are omitted.

The short-form complaints uniformly state that Plaintiffs "do not seek reconsideration of the [MTD] Order," and that they re-assert certain claims against Cerner solely to "preserve any appellate rights." *E.g.*, Dkt. 450 ¶ 760 n.2. Based on those representations, Cerner's understanding is that the short-form complaints' claims for unjust enrichment, invasion of privacy, and declaratory judgment are effectively deemed dismissed in accordance with the MTD Order.

In not moving now to dismiss certain other claims in the short-form complaints, Cerner does not concede—and, indeed, expressly denies—that Plaintiffs have standing to assert those (or any other) claims, that those claims are plausibly alleged, or that Plaintiffs are entitled to any relief they seek on those claims. By not asking this Court to revisit any rulings in the MTD Order at this time, Cerner waives no rights with respect to those claims. *See Acuity v. Rex, LLC*, 929 F.3d 995, 999 (8th Cir. 2019) ("It is not [forfeiture or] waiver—it is prudence and economy—for parties not to reassert a position that the trial judge has rejected."). Cerner reserves the right to seek dismissal of all remaining claims against it at a later date. *See* MTD Order 48 n.41; Fed. R. Civ. P. 54(b).

*Form Oracle Health: The Future of Healthcare*, Oracle ("*Oracle Acquires Cerner*"), https://perma.cc/4JJ6-YYC5; *see Carter v. Ludwick*, 139 F.4th 982, 989 (8th Cir. 2025) (on motion to dismiss, court "may consider matters incorporated by reference or integral to the claim").

*Second*, Plaintiffs refer to the Oracle Services Privacy Policy. *See* CAC ¶ 349. That document begins by explaining:

> The first section (Services Personal Information Data Processing Terms) describes the privacy and security practices that Oracle Corporation and its affiliates ("Oracle") employ when handling Services Personal Information (as defined below) for the provision of Technical Support, Consulting, Cloud or other services, including those provided via mobile application, (the "Services") provided to Oracle customers ("You" or "Your") during the term of Your order for Services.

*Oracle Services Privacy Policy* intro., Oracle ("*Privacy Policy*"), https://perma.cc/JD99-UDC2. In turn, Section I.4 states:

> Oracle has implemented and will maintain technical and organizational measures designed to prevent accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to Services Personal Information. These measures, which are generally aligned with the ISO/IEC 27001:2013 standard, govern all areas of security applicable to the Services, including physical access, system access, data access, transmission, input, security oversight, and enforcement.

## ARGUMENT

### I. The ICFA Claims Should Be Dismissed

Park, Papadopoulos, Long, Bedford, Strouse, and Alicea-Maldonado assert claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), based on three theories. Dkt. 450 ¶¶ 803-820; Dkt. 451 ¶¶ 790-807; Dkt. 464 ¶¶ 838-855. *First*, Plaintiffs assert a deception-based theory in claiming that Cerner made misrepresentations and omissions about data security. *E.g.*, Dkt. 450 ¶¶ 808(a)-(e), 809-810. *Second*, Plaintiffs assert an unfairness theory in claiming that Cerner acted unfairly by supposedly not adopting adequate data-security measures. *E.g.*, *id.* ¶ 808(f)-(g). *Third*, Plaintiffs assert a theory based on alleged violations of the Illinois

Personal Information Protection Act ("IPIPA"). *E.g.*, *id.* ¶¶ 808(h), 811-815; *see* 815 Ill. Comp. Stat. 530/20 ("A violation of [IPIPA] constitutes an unlawful practice under [ICFA]."). All three theories fail because Plaintiffs do not plead "actual damage." And the deception-based theory of liability fails for several additional reasons.

**A. The ICFA Claims Fail Because Plaintiffs Do Not Plead Actual Damage**

Plaintiffs' ICFA claims all fail for the same threshold reason: lack of actual damage. "A claim under ICFA requires the plaintiff to have suffered 'actual damage' as a result of the defendant's conduct." *In re SuperValu, Inc., Customer Data Sec. Breach Litig.*, 925 F.3d 955, 964 (8th Cir. 2019) (quoting 815 Ill. Comp. Stat. 505/10a(a)); *accord Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*, 241 N.E.3d 454, 461-462 (Ill. 2024). The "actual damage" element "requires that the plaintiff suffer actual pecuniary loss," *SuperValu*, 925 F.3d at 964; *accord Payne v. PNC Bank, Nat'l Ass'n*, 2024 WL 3467047, at *5 (Ill. App. Ct. July 19, 2024), which "must be calculable and measured by the plaintiff's loss," *Flores v. Aon Corp.*, 242 N.E.3d 340, 357 (Ill. App. Ct. 2023). "The failure to allege specific, actual damages precludes a claim brought under [ICFA]." *Ambrosius v. Chi. Athletic Clubs, LLC*, 203 N.E.3d 239, 252 (Ill. App. Ct. 2021).

Plaintiffs do not plead actual damage cognizable under ICFA. None alleges pecuniary loss (let alone plausibly). No Plaintiff alleges that, for example, a bad actor stole money from her bank account using information stolen by the criminal hacker. Instead, Plaintiffs' asserted injuries are: (1) "spen[ding] time dealing with the consequences of the Data Breach," including "monitoring [their] accounts"; (2) "feelings of anxiety, sleep disruption, stress, fear, and frustration"; (3) "diminution in the value of [their] Private Information"; (4) "increased risk of fraud, identity theft, and misuse"; and (5) an "increase in spam." Dkt. 450 ¶¶ 782-788, 794-800; Dkt. 451 ¶¶ 781-787; Dkt. 464 ¶¶ 793-797, 806-809, 818-822.

None of these alleged injuries supports an ICFA claim. Illinois courts have squarely held

that a plaintiff's "emotional distress due to her loss of privacy, her lost time dealing with the consequences of the data breach, the increase in spam messages she has received, and the imminent risk of fraud and identity theft" are not "the specific economic damages required for a claim under [ICFA]." *Flores*, 242 N.E.3d at 357; *accord Cooney v. Chi. Pub. Schs.*, 943 N.E.2d 23, 31 (Ill. App. Ct. 2010) ("increased risk of future identity theft" cannot support ICFA claim), *superseded by statute on other grounds as recognized by Flores*, 242 N.E.3d at 353; *see also Doe v. Deaconess Ill. Union Cnty. Hosp., Inc.*, 831 F. Supp. 3d 710, 716 (S.D. Ill. 2025) ("Emotional damages, the risk of future harm, and the loss of privacy … are, by definition, not pecuniary in nature."). Eighth Circuit precedent likewise holds that "the expenditure of time monitoring [an] account … do[es] not constitute actual damage" under ICFA. *SuperValu*, 925 F.3d at 964. And the supposed "diminution in the value of [Plaintiffs'] Private Information" (*e.g.*, Dkt. 450 ¶ 797) is inadequate because Illinois "decline[s]" to recognize "a property right in [one's] personal information" in any respect, *Petta v. Christie Bus. Holding Co.*, 230 N.E.3d 162, 169 (Ill. App. Ct. 2023), *aff'd*, 267 N.E.3d 904 (Ill. 2025), let alone as part of a claim of actual damage under ICFA. Even if Illinois did recognize such a property right, Plaintiffs offer no well-pleaded allegations suggesting that their private information has decreased in "actual pecuniary" value, *SuperValu*, 925 F.3d at 964, in a "calculable," *Flores*, 242 N.E.3d at 357, and "nonspeculative way," *Petta*, 230 N.E.3d at 169.

**B. The Deception-Based Theory Fails For Additional Reasons**

To the extent they rely on a deception-based theory of liability, the ICFA claims also fail because Plaintiffs do not allege other indispensable elements. A deception-based ICFA claim requires "(1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception." *Tri-Plex*, 241 N.E.3d at 461-462. Plaintiffs do not plead that Cerner engaged in a deceptive act or

practice, that Cerner intended that Plaintiffs rely on any such act or practice, or that any such act or practice proximately caused Plaintiffs' purported injuries.

**1. No deceptive act or practice**

Plaintiffs do not plausibly allege that Cerner engaged in a deceptive act or practice. Under ICFA, conduct is deceptive if it is "likely to deceive a reasonable consumer." *Ash v. PSP Distrib., LLC*, 226 N.E.3d 748, 756 (Ill. App. Ct. 2023); *accord Brewer v. Allstate Life Ins. Co.*, 2022 WL 843196, at *5 (Ill. App. Ct. Mar. 22, 2022). "This standard requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Wertymer v. Walmart, Inc.*, 142 F.4th 491, 495 (7th Cir. 2025). A misrepresentation or an omission may be actionable, although "an 'omission' is an omission from a communication, rather than a general failure to disclose." *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1057 (N.D. Ill. 2022). Also, "an omission is not actionable … if it gives rise to an incomplete as opposed to an affirmatively false impression." *Arcangel v. Yardi Sys., Inc.*, ___ N.E.3d ___, 2026 WL 1458911, at *6 (Ill. App. Ct. May 22, 2026).

As noted, the only purportedly deceptive statements are that (1) "Oracle is an industry leader in securely storing, processing, and analyzing large volumes of cloud-based data," *Oracle Acquires Cerner*, and (2) "Oracle has implemented and will maintain technical and organizational measures designed to prevent accidental or unlawful destruction, loss, alteration, unauthorized disclosure of, or access to Services Private Information … [and] which are generally aligned with the ISO/IEC 27001:2013 standard," *Privacy Policy* § I.4. Neither statement is actionable.

The first statement is "nothing more than puffery," *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926 (Ill. 2007), *i.e.*, "the exaggerations reasonably to be expected of a seller as to the degree of quality of his or her product, the truth or falsity of which cannot be precisely determined," *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 846 (Ill. 2005), including

"meaningless superlatives that no reasonable person would take seriously," *Barbara's Sales*, 879 N.E.2d at 926. "Illinois courts have repeatedly held" that puffery—including platitudinous claims about one's leadership or superiority—is not deceptive under ICFA "as a matter of law." *Avery*, 835 N.E.2d at 847 ("A general statement that one's products are best is not actionable."); *see, e.g.*, *Sanchez v. Walmart Inc.*, 733 F. Supp. 3d 653, 672 (N.D. Ill. 2024) (statement that company was "building on more than 15 years of sustainability leadership" was non-actionable puffery under ICFA); *Tylka v. Gerber Prods. Co.*, 1999 WL 495126, at *8 (N.D. Ill. July 1, 1999) (statement that company was "dedicated to assuring that the company is the world leader in, and advocate for, infant nutrition, care and development" was non-actionable puffery under ICFA); *see also Miller v. Gen. Motors, LLC*, 773 F. Supp. 3d 461, 495-497 (E.D. Mich. 2025) (statement that "thermal control system" was "industry-leading" was "puffery which is not actionable" under ICFA). Other courts have deemed similar "bald assertions of superiority" to be puffery. *Am. Italian Pasta Co. v. New World Pasta Co.*, 371 F.3d 387, 391 (8th Cir. 2004); *see, e.g.*, *City of Plantation Police Officers Pension Fund v. Meredith Corp.*, 16 F.4th 553, 557 (8th Cir. 2021) (statement that company was "occupying an 'industry-leading position'" was "paradigmatic example[] of the kind of vague and optimistic rhetoric that constitutes corporate puffery"); *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004) (statement that company was "a worldwide leader in automotive safety" was puffery); *Gregory v. ProNAi Therapeutics Inc.*, 297 F. Supp. 3d 372, 399 (S.D.N.Y. 2018) (statement that company was "a leader in developing and commercializing a broad and diverse portfolio of cancer therapies" was puffery), *aff'd*, 757 F. App'x 35 (2d Cir. 2018). This case law makes plain that the first statement is not actionable.

As for the second statement, Plaintiffs do not plausibly allege that it was false, *i.e.*, that Cerner did not actually adopt measures that were "*designed* to prevent" unlawful access and were

"*generally* aligned with the ISO/IEC 27001:2013 standard." *Privacy Policy* § I.4 (emphases added). Rule 12(b)(6) demands "more than a sheer possibility that a defendant has acted unlawfully. If the complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Hikma Pharms. USA Inc. v. Amarin Pharma, Inc.*, 608 U.S. 580, 589 (2026). That a data breach occurred does not mean Cerner failed to adopt measures that were "*designed* to prevent" it from happening and were "*generally* aligned with" certain standards—and Cerner never claimed (nor implied) that its security measures would be perfect. *Privacy Policy* § I.4 (emphases added). The "obvious alternative explanation" is that Cerner *did* adopt such measures, and that those measures simply failed to prevent the alleged data breach. *Hikma*, 608 U.S. at 592. But ICFA "prohibits deception, not error," *Associated Bank, Nat'l Ass'n v. Morrison*, ___ N.E.3d ___, 2026 WL 1175172, at *10 (Ill. App. Ct. Apr. 30, 2026), and Plaintiffs' complaints are bereft of allegations that would "allow the court to draw the reasonable inference" that Cerner failed to adopt security measures entirely, *Hikma*, 608 U.S. at 589-590. Nor did this statement "imply" anything that would have given rise to "an affirmatively false impression," as required for an omission theory. *Ash*, 226 N.E.3d at 756.

**2. No intent to induce reliance**

Plaintiffs do not plausibly allege that Cerner "inten[ded] that [Plaintiffs] rely on" either statement. *Tri-Plex*, 241 N.E.3d at 461. Plaintiffs cursorily assert that Cerner "intended to mislead Plaintiffs … and induce them to rely on [Cerner's] misrepresentations and omissions" (*e.g.*, Dkt. 450 ¶ 810), but the presumption of truth on a motion to dismiss does not extend to such "formulaic recitation[s] of the elements of a cause of action, naked assertions of claims, or legal conclusions couched as facts." *DeCastro v. Hot Springs Neurology Clinic, P.A.*, 107 F.4th 813, 816 (8th Cir. 2024). Plaintiffs plead no facts suggesting that Cerner intended for Plaintiffs—who are not Cerner's customers but, instead, are patients of Cerner's healthcare-provider customers—to rely

on (1) an executive's jargon-laden, industry-facing statement about the benefits of an acquisition, *see Oracle Acquires Cerner* (located in "Industries" section of Oracle's website), or (2) the Oracle Services Privacy Policy's section concerning "Technical Support, Consulting, Cloud or other services … provided to *Oracle customers ('You' or 'Your')* during the term of Your order for Services," *Privacy Policy* intro. (emphasis added); *see id.* § I.4. Plaintiffs, who are not Oracle customers or investors, therefore fail to state a claim. *See, e.g.*, *Tri-Plex*, 241 N.E.3d at 462-463 (ICFA claim failed due to defendant's lack of intent to induce plaintiff's reliance).

### 3. No proximate causation

No Plaintiff claims to have seen either statement, as required for proximate causation. Under ICFA, "the plaintiff must actually be deceived by a statement or omission that is made by the defendant." *De Bouse v. Bayer*, 922 N.E.2d 309, 316 (Ill. 2009). "If the plaintiff has neither seen nor heard a deceptive statement, it cannot have relied on the statement and, consequently, cannot prove that the statement was the proximate cause of its injury." *Tri-Plex*, 241 N.E.3d at 462; *see, e.g.*, *Gurrola v. Ford Motor Co.*, 774 F. Supp. 3d 959, 981 (N.D. Ill. 2025) (ICFA claim failed because plaintiffs did "not allege that [they] ever saw the statement in question"); *In re Lurie Child.'s Hosp. Data Sec. Litig.*, 2025 WL 2754760, at *14 (N.D. Ill. Sept. 27, 2025) (same); *In re Meta Pixel Tax Filing Cases*, 724 F. Supp. 3d 987, 1012 (N.D. Cal. 2024) (same); *Burger v. Spark Energy Gas, LLC*, 507 F. Supp. 3d 982, 988 (N.D. Ill. 2020) (same). This deficiency is fatal to Plaintiffs' deception-based claims.

## II. The IUDTPA Claims Should Be Dismissed

Park, Papadopoulos, Long, Bedford, Strouse, and Alicea-Maldonado also assert claims under the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"). Dkt. 450 at 14-17 ¶¶ 760-768; Dkt. 451 ¶¶ 808-816; Dkt. 464 ¶¶ 856-864. These claims "fail[] for the same reason as [Plaintiffs'] ICFA claim[s]—namely, the absence of a sufficiently alleged deceptive

misrepresentation." *Odle v. GameStop Corp.*, 774 F. Supp. 3d 982, 999 (S.D. Ill. 2025).

In addition, Plaintiffs fail to plead an imminent future harm. *See* 815 Ill. Comp. Stat. 510/3 (IUDTPA plaintiff must be "likely to be damaged by a deceptive trade practice of" defendant). IUDTPA "does not provide a private cause of action for damages. Instead, the statute authorizes private lawsuits for injunctive relief." *Tri-Plex*, 241 N.E.3d at 460. To obtain injunctive relief under IUDTPA, a plaintiff must demonstrate that the defendant's conduct "will likely cause it to suffer damages in the future." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740 (7th Cir. 2014); *accord Howard v. Chi. Transit Auth.*, 931 N.E.2d 292, 299 (Ill. App. Ct. 2010). Plaintiffs do not plausibly allege that Cerner's purportedly deceptive conduct will likely cause them harm in the future. To the extent Plaintiffs contend "that they face a future risk because [Cerner] still has their PII and PHI and that information remains vulnerable, that goes only to the risk of harm that Plaintiffs face from the data breaches themselves, not the risk of harm that they face if [Cerner supposedly] continues to misrepresent its protective measures." *Lurie*, 2025 WL 2754760, at *15. And regardless, Plaintiffs' "assertion that [Cerner] is not taking effective action to preclude future data breaches is entirely speculative" and unsupported by any well-pleaded allegations. *Id.*

## III. The DCCPPA Claims Should Be Dismissed

J.S., J.P., and T.S. assert deception-based and unfairness-based claims under the District of Columbia Consumer Protection Procedures Act ("DCCPPA"). Dkt. 452 ¶¶ 826-838. These claims should be dismissed because Cerner is not a merchant in a consumer-merchant relationship with Plaintiffs, as required for DCCPPA to apply. In addition, the deception-based theory of liability fails because Plaintiffs do not plead that Cerner made any misrepresentations or omissions.

### A. Cerner Is Not A Merchant

Plaintiffs' DCCPPA claims should be dismissed because Cerner is not a merchant in a consumer-merchant relationship with Plaintiffs. *See* D.C. Code § 28-3901(a)(3)(A) (defining

"merchant" as "a person … who in the ordinary course of business does or would sell, lease, or transfer, either directly or indirectly, consumer goods or services, or a person who in the ordinary course of business does or would supply the goods or services which are or would be the subject matter of a trade practice"). "[A]n unlawful trade practice must be committed by a 'merchant' to fall under [DCCPPA's] prohibitions," *Edwards v. Wilmington Sav. Fund Soc'y, FSB*, ___ A.3d ___, 2026 WL 2436711, at *2 (D.C. Aug. 20, 2026), because DCCPPA "police[s] trade practices arising only out of consumer-merchant relationships," *Stone v. Landis Constr. Co.*, 120 A.3d 1287, 1289 (D.C. 2015). Therefore, a DCCPPA claim properly is dismissed if the defendant is not a merchant, *see, e.g.*, *Snowder v. District of Columbia*, 949 A.2d 590, 599-600 (D.C. 2008), or if the plaintiff "fail[s] to sufficiently allege the existence of a consumer-merchant relationship between herself and" the defendant, *Edwards*, 2026 WL 2436711, at *3.

Cerner is not a "merchant" under DCCPPA—let alone in a consumer-merchant relationship with Plaintiffs—because it does not "sell, lease, or transfer … consumer goods or services," nor does it "supply the goods or services which are or would be the subject matter of a trade practice." D.C. Code § 28-3901(a)(3)(A). On Plaintiffs' own telling, Cerner "provides health information technology solutions, including an EHR [*i.e.*, electronic health records] system, to healthcare providers across the country," which healthcare providers use "to create, store, and manage patient[s'] health-related information" in the course of providing medical care to patients. CAC ¶¶ 345-346. Cerner's products and services are not "consumer goods or services," D.C. Code § 28-3901(a)(3)(A), because Cerner's healthcare-provider customers purchase them for their own commercial purposes, not for "personal, household, or family purposes," *id.* § 28-3901(a)(2)(B)(i) (defining "consumer"). Whether or not the medical care that healthcare providers give their patients qualifies as "goods or services which are or would be the subject matter of a trade

practice," Cerner's products and services do not. *Id.* § 28-3901(a)(3)(A); *see Adam A. Wechsler & Son, Inc. v. Klank*, 561 A.2d 1003, 1005 (D.C. 1989) (DCCPPA covers "the ultimate retail transaction between the final distributor and the individual member of the consuming public," not "[t]ransactions along the distribution chain that do not involve the ultimate retail customer").

### B. Plaintiffs Do Not Identify Any Actionable Misrepresentations Or Omissions

Under DCCPPA, "a company may not misrepresent 'a material fact which has a tendency to mislead,' or fail to state a material fact 'if such failure tends to mislead.'" *Cannon v. Wells Fargo Bank, N.A.*, 926 F. Supp. 2d 152, 173-174 (D.D.C. 2013) (quoting D.C. Code § 28-3904(e), (f)). Plaintiffs' deception-based DCCPPA claims involve the same two statements on Oracle's website. Both statements are non-actionable because they would not deceive "a reasonable consumer." *Saucier v. Countrywide Home Loans*, 64 A.3d 428, 442 (D.C. 2013).

The first statement—that "Oracle is an industry leader in securely storing, processing, and analyzing large volumes of cloud-based data" (*Oracle Acquires Cerner*)—is puffery under D.C. law, *i.e.*, a merchant's "exaggerations … as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined." *Pearson v. Chung*, 961 A.2d 1067, 1076 (D.C. 2008). "This sort of general assertion, incapable of measurement, is unlikely to lead reasonable consumers astray and therefore cannot be the basis for a [DC]CPPA violation." *Meta Platforms, Inc. v. District of Columbia*, 301 A.3d 740, 759 (D.C. 2023); *see, e.g.*, *E.M. v. Shady Grove Reprod. Sci. Ctr. P.C.*, 496 F. Supp. 3d 338, 401-402, 412 (D.D.C. 2020) (statements regarding "leadership in the fertility industry" and "'unparalleled' depth and breadth of experience" in egg freezing were "non-actionable puffery" under DCCPPA); *Hargrove v. MedStar Wash. Hosp. Ctr.*, 2024 WL 3225972, at *3 (D.D.C. June 28, 2024) (statements that company had "the most advanced diagnostic and treatment options in the region" and "provide[d] the region with the highest quality care, thanks to the latest medical advances in education and research" were non-actionable puffery

under DCCPPA). So, the first statement cannot support a DCCPPA claim.

As for the second statement—about implementing certain security measures (*Privacy Policy* § I.4)—Plaintiffs do not plead facts suggesting it was false or misleading. Plaintiffs allege, at most, that a criminal hacker illegally accessed certain Cerner servers. But their pleading lacks allegations sufficient to "allow the court to draw the reasonable inference," *Hikma*, 608 U.S. at 589-590, that Cerner failed to adopt measures that were "*designed* to prevent" such unlawful access and were generally aligned with certain technical standards, *Privacy Policy* § I.4 (emphasis added). And because a reasonable consumer "would not deem an accurate statement to be misleading," the second statement is not actionable under DCCPPA. *Saucier*, 64 A.3d at 442.

## IV. The Deception-Based And Unfairness-Based MCPA Claims Should Be Dismissed

Addi and Tice assert deception-based and unfairness-based claims under the Maryland Consumer Protection Act ("MCPA"). Dkt. 453 ¶¶ 820-833; Dkt. 457 ¶¶ 810-823.[2] These claims fail because Cerner is not alleged to have engaged in a "practice prohibited by" MCPA. Md. Code Ann., Com. Law § 13-408(a). The deception-based theory of liability also fails for other reasons.

### A. Cerner Has Not Engaged In A Practice Prohibited By MCPA

MCPA's private right of action allows someone to "bring an action to recover for injury or loss sustained by him as the result of a practice prohibited by [MCPA]." Md. Code Ann., Com. Law § 13-408(a). Relying on this private right of action, Plaintiffs assert claims based on alleged "violation[s]" of MCPA Sections 301 and 303. *See* Dkt. 453 ¶¶ 826-827; Dkt. 457 ¶¶ 816-817. Section 301, however, does not prohibit anything; it merely defines "[u]nfair, abusive, or deceptive

[2] Addi and Tice also assert that Cerner violated the Maryland Personal Information Protection Act ("MPIPA"). Dkt. 453 ¶¶ 804-819; Dkt. 457 ¶¶ 794-809; *see* Md. Code Ann., Com. Law § 14-3508 (violation of MPIPA is treated as violation of MCPA). At this time, Cerner is not moving to dismiss Plaintiffs' MCPA claims to the extent they are premised on an alleged breach of MPIPA.

trade practices." Md. Code Ann., Com. Law § 13-301. Section 303 does prohibit certain conduct, but only in six specific contexts:

> A person may not engage in any unfair, abusive, or deceptive trade practice, as defined in this subtitle or as further defined by the Division, in:
>
> > (1) The sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services;
> >
> > (2) The offer for sale, lease, rental, loan, or bailment of consumer goods, consumer realty, or consumer services;
> >
> > (3) The offer for sale of course credit or other educational services;
> >
> > (4) The extension of consumer credit;
> >
> > (5) The collection of consumer debts; or
> >
> > (6) The purchase or offer for purchase of consumer goods or consumer realty from a consumer by a merchant whose business includes paying off consumer debt in connection with the purchase of any consumer goods or consumer realty from a consumer.

*Id.* § 13-303; *see Wheeling v. Selene Fin. LP*, 250 A.3d 197, 216 (Md. 2021) (Section 301 "define[s]," while Section 303 "prohibits").

None of the six categories encompasses Cerner's alleged conduct. The last four categories plainly do not apply. As for the first two categories, Cerner is not alleged to have done anything "in" "[t]he sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services" or "[t]he offer for sale, lease, rental, loan, or bailment of consumer goods, consumer realty, or consumer services." Md. Code Ann., Com. Law § 13-303(1)-(2). Rather, as Plaintiffs themselves allege, Cerner provides EHR-related products and services to other businesses for their own commercial purposes. CAC ¶¶ 345-346. These offerings are not "consumer goods" or "consumer services"—*i.e.*, goods and services "which are primarily for personal, household, family, or agricultural purposes." Md. Code Ann., Com. Law § 13-101(d)(1). Thus, Cerner's alleged conduct with respect to these products and services is not "prohibited by" Section 303 (or any other MCPA provision, for that matter)—so Plaintiffs cannot use MCPA's

private right of action to challenge that alleged conduct. *Id.* § 13-408(a).

### B. The Deception-Based Theory Fails For Additional Reasons

The MCPA claims, to the extent they rely on a deception-based theory of liability, also fail because Plaintiffs do not allege other necessary elements, including that Cerner engaged in a deceptive act or practice, or that any such act or practice caused actual injury or loss to Plaintiffs.

#### 1. No deceptive act or practice

Plaintiffs' deception-based MCPA claims center on the same two statements on Oracle's website, neither of which is "likely to deceive a reasonable consumer." *Bradby v. Bimbo Bakeries USA, Inc.*, 2024 WL 1604488, at *6 (D. Md. Apr. 12, 2024); *see* Md. Code Ann., Com. Law § 13-301(1) (statement "which has the capacity, tendency, or effect of deceiving or misleading consumers" may be actionable under MCPA).

The first statement, that "Oracle is an industry leader in securely storing, processing, and analyzing large volumes of cloud-based data" (*Oracle Acquires Cerner*), is puffery under Maryland law—*i.e.*, an "indefinite generalit[y] of exaggeration which could deceive no rational person and therefore do[es] not amount to misrepresentation." *McGraw v. Loyola Ford, Inc.*, 723 A.2d 502, 513 (Md. Ct. Spec. App. 1999). Courts consider such bluster to be non-actionable under MCPA. *See, e.g.*, *Miller*, 773 F. Supp. 3d at 495-497 (statement that company's "thermal control system" was "industry-leading" was "puffery which is not actionable" under MCPA); *Belville v. Ford Motor Co.*, 13 F. Supp. 3d 528, 531 n.2, 544 (S.D. W. Va. 2014) (statement that company was "underscoring its commitment to safety leadership" was puffery under MCPA).

Plaintiffs do not plausibly allege that the second statement—about implementing certain security measures—was false or misleading, *i.e.*, that Cerner did not adopt measures that were "designed to prevent" unlawful access. *Privacy Policy* § I.4. The "obvious alternative explanation" is that Cerner *did* adopt such measures, and that those measures simply failed to

prevent unlawful access in this instance. *Hikma*, 608 U.S. at 592. Plaintiffs plead nothing further, thus "fail[ing] to allege more than a sheer possibility" that the second statement was untrue. *Id.*; *see, e.g.*, *Twardzik v. HP Inc.*, 2022 WL 606092, at *4-5 (D. Del. Jan. 25, 2022) (MCPA claim failed where plaintiff "never plead[ed] facts showing that [the statement was] false"), *aff'd*, 2023 WL 5770999 (3d Cir. Sept. 7, 2023). Nor do Plaintiffs plausibly allege that this statement aimed at Oracle's corporate customers (*see supra* § I.B.2) was made "with the intent that a consumer rely on" it. Md. Code Ann., Com. Law § 13-301(9); *see id.* § 13-101(c)(1) (defining "consumer").

### 2. No reliance

A plaintiff asserting a deception-based MCPA claim must have "relied upon" the alleged misstatement or omission. *Hencken v. Servpro of Carroll Cnty.*, 2024 WL 910327, at *9 (Md. App. Ct. Mar. 4, 2024); *accord Alexander v. Carrington Mortg. Servs., LLC*, 23 F.4th 370, 380 (4th Cir. 2022). A plaintiff "could not have relied on a misrepresentation of which it lacked knowledge." *Pro. Maint. Sys., Inc. v. Baltimore County*, 2022 WL 2359355, at *7 (D. Md. June 30, 2022) (common-law fraud); *see Attias v. CareFirst, Inc.*, 2023 WL 5952052, at *16-18 (D.D.C. Sept. 13, 2023) (MCPA claim failed because "no evidence that [plaintiffs] were even aware of the [statement], let alone that it influenced their decisions to obtain" product); *Mouzon v. Radiancy, Inc.*, 200 F. Supp. 3d 83, 89, 93 (D.D.C. 2016) (MCPA claim failed because no plaintiffs "allege[d] having been exposed to any misrepresentations by" defendant). Addi and Tice do not allege that they saw the statements at issue, thus precluding any possibility of reliance.

## V. The TCPA Claim Should Be Dismissed

Shaffer asserts deception-based and unfairness-based theories in support of her claim under the Tennessee Consumer Protection Act ("TCPA"). Dkt. 456 ¶¶ 806-819. Both theories fail because Shaffer has not "suffer[ed] an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value," as required for a private TCPA claim.

Tenn. Code Ann. § 47-18-109(a)(1). And her deception-based theory fails for additional reasons.

**A. Shaffer Has Not Suffered An Ascertainable Loss**

Shaffer insufficiently alleges that she "has suffered an ascertainable loss of (1) money; (2) property; or (3) 'any other article, commodity, or thing of value.'" *Akers v. Prime Succession of Tenn., Inc.*, 387 S.W.3d 495, 509 (Tenn. 2012). To be "ascertainable," a loss must be "capable of being discovered, observed, or established" in a "measurable" way. *Discover Bank v. Morgan*, 363 S.W.3d 479, 495-496 (Tenn. 2012).

None of Shaffer's claimed injuries qualifies. Her alleged "worry and feelings of anxiety and emotional distress" (Dkt. 456 ¶ 793) and any annoyance caused by an "increase in spam" (*id.* ¶ 791) are forms of "purely emotional loss" that "do not have tangible economic value as required by the TCPA." *Akers*, 387 S.W.3d at 509-510; *accord Pagliara v. Johnston Barton Proctor & Rose, LLP*, 708 F.3d 813, 820 (6th Cir. 2013). Shaffer also claims to have "expend[ed] time and effort" in response to the alleged data breach (Dkt. 456 ¶ 790), yet she fails to elucidate how this time and effort constitutes "an ascertainable loss of money or property, … or any other article, commodity, or thing of value." Tenn. Code Ann. § 47-18-109(a)(1). The supposedly heightened "*risk* of identity theft" (Dkt. 456 ¶ 794 (emphasis added)) is not a "loss," let alone one that is "ascertainable," *i.e.*, "capable of being discovered, observed, or established" in a "measurable" way. *Discover Bank*, 363 S.W.3d at 495-496. Shaffer's speculative boilerplate—based solely "on information and belief due to the nature of the cyberattack"—that her private information "has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale" does not help her. Dkt. 456 ¶ 789. If her information has not been misused, then Shaffer has not experienced "an ascertainable loss." Tenn. Code Ann. § 47-18-109(a)(1). And if her information *had* been misused in a cognizable way, Shaffer surely would have identified any such instances; tellingly, she does not. Finally, even if her private

information has "tangible economic value," *Akers*, 387 S.W.3d at 510, which Cerner disputes, Shaffer does not allege facts indicating that it has lost value in an ascertainable way, *cf.* Dkt. 456 ¶ 792 (merely offering conclusory allegation that "as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information").

**B. The Deception-Based Theory Fails For Additional Reasons**

To recover under TCPA, a plaintiff must establish that (1) "the defendant engaged in an unfair or deceptive act or practice" and (2) "the defendant's conduct caused" the plaintiff's injury. *Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005). Shaffer's deception-based theory of TCPA liability is deficient in both respects.

**1. No deceptive act or practice**

Shaffer invokes the same two statements on Oracle's website. Neither is "likely to mislead a reasonable consumer" under TCPA. *Davis v. McGuigan*, 325 S.W.3d 149, 162 (Tenn. 2010).

As it is elsewhere, the statement that "Oracle is an industry leader in securely storing, processing, and analyzing large volumes of cloud-based data" (*Oracle Acquires Cerner*) is puffery under Tennessee law, too—*i.e.*, "a statement that embodies exaggeration, the truth or falsity of which cannot be determined easily, that amounts to no more than an expression of the seller's opinion about the character or quality of the produc[t]." *Audio Visual Artistry v. Tanzer*, 403 S.W.3d 789, 811 (Tenn. Ct. App. 2012); *see, e.g.*, *id.* (statement that certain goods were "superior" was non-actionable puffery under TCPA); *Miller*, 773 F. Supp. 3d at 495-497 (statement that "thermal control system" was "industry-leading" was "puffery which is not actionable" under TCPA). Puffery does "not constitute an unfair or deceptive act under the TCPA." *Hossain v. Ocwen Loan Servicing, LLC*, 2014 WL 4347620, at *6 (M.D. Tenn. Aug. 29, 2014).

Shaffer does not plead facts suggesting that the second statement—about implementing certain security measures—was false or misleading at all under Tennessee law, *i.e.*, that Cerner

did not adopt measures "designed to prevent" unlawful access. *Privacy Policy* § I.4. The "obvious alternative explanation" is that Cerner *did* adopt such measures, and that those measures simply failed to prevent unlawful access in this instance. *Hikma*, 608 U.S. at 592. Shaffer alleges nothing further and thus "fails to allege more than a sheer possibility" that the second statement was untrue. *Id.*; *cf. Preux v. Wheat*, 2026 WL 321453, at *7 (N.D. Ga. Feb. 5, 2026) (breach-of-express-warranty claim under Tennessee law failed because complaint "contain[ed] no allegations that [defendant's] facility was not certified as represented"); *Harrison v. Avalon Props., LLC*, 246 S.W.3d 587, 601 (Tenn. Ct. App. 2007) (negligent-misrepresentation claim failed where there "was no proof presented one way or the other that [defendant] was or was not 'a much better builder' with 'better house plans' than the originally anticipated builder").

**2. No proximate causation**

Shaffer also fails to plead that Cerner's supposedly deceptive conduct "proximately caused" her alleged injuries, *Audio Visual Artistry*, 403 S.W.3d at 810, because she never claims that she ever saw any of the statements at issue. We have not found Tennessee case law interpreting TCPA's proximate-cause requirement in analogous circumstances, *i.e.*, where a plaintiff does not claim to have seen the alleged misrepresentation. But when interpreting state law "[i]n the absence of controlling authority," a court may "turn to other jurisdictions for persuasive guidance." *BSI Constructors, Inc. v. Hartford Fire Ins. Co.*, 705 F.3d 330, 332 (8th Cir. 2013); *accord Brell v. Thomas*, 2025 WL 798642, at *4 (Tenn. Ct. App. Mar. 13, 2025) ("In the absence of caselaw in Tennessee, we consider decisions from other states as persuasive, but not binding, authority."). Other states' statutes—including GBL, ICFA, and MMPA—require a similar showing of causation. *See Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000) (GBL plaintiff "must show that the defendant's material deceptive act caused the injury"); *Tri-Plex*, 241 N.E.3d at 461-462 (ICFA plaintiff's damages must be "proximately caused by the deception"); *In*

*re Folgers Coffee Mktg.*, 159 F.4th 1151, 1156 (8th Cir. 2025) ("[T]he MMPA demands a causal connection between the ascertainable loss and the unfair or deceptive merchandising practice."). Cerner therefore cites cases construing those statutes as persuasive.

Shaffer conspicuously never alleges that she saw either statement at issue. But "if [Shaffer] did not see any of [the relevant] statements, they could not have been the cause of [her] injury, there being no connection between the deceptive act and [her] injury." *Gale v. Int'l Bus. Machs. Corp.*, 781 N.Y.S.2d 45, 47 (App. Div. 2004) (GBL); *accord Tri-Plex*, 241 N.E.3d at 462 ("If the plaintiff has neither seen nor heard a deceptive statement, it cannot have relied on the statement and, consequently, cannot prove that the statement was the proximate cause of its injury [under ICFA]."); *George v. Omega Flex, Inc.*, 2020 WL 4718386, at *6 (W.D. Mo. Aug. 13, 2020) (MMPA claim failed where plaintiffs "had no knowledge of" relevant "representations of the safety of [the product] at the [relevant] time"). Thus, Shaffer's claim fails for lack of causation.

## VI. The TITDA Claim Should Be Dismissed

Shaffer asserts that "[b]y failing to disclose the Data Breach in a timely and accurate manner, [Cerner] violated Tenn. Code Ann. § 47-18-2107(b)," Dkt. 456 ¶ 803, which is part of the Tennessee Identity Theft Deterrence Act ("TITDA"). But that provision "does not apply to any information holder that is subject to" HIPAA. Tenn. Code Ann. § 47-18-2107(i). Shaffer elsewhere alleges that Cerner is "subject to HIPAA's security rule and breach notification requirements." CAC ¶ 400; *see* Dkt. 456 ¶ 798. So, on Shaffer's own allegations, this claim fails.

## VII. The TDTPA Claims Should Be Dismissed

Bales, E.P., S.P., C.P., and W.P. assert claims under the Texas Deceptive Trade Practices Act ("TDTPA"). Dkt. 460 ¶¶ 847-865. These claims are deficient because Plaintiffs do not plead that Cerner engaged in "a false, misleading, or deceptive act or practice," that any alleged

deception was seen by or otherwise communicated to Plaintiffs, or that Plaintiffs detrimentally "relied on" any such alleged deception. Tex. Bus. & Com. Code Ann. § 17.50(a)(1).

### A. Plaintiffs Do Not Identify Any Actionable Misrepresentations Or Omissions

These Plaintiffs point to the same two statements on Oracle's website. Neither statement "has the capacity to deceive an average or ordinary person, even though that person may have been ignorant, unthinking, or credulous." *Daugherty v. Jacobs*, 187 S.W.3d 607, 614 (Tex. App. 2006).

The first statement—that "Oracle is an industry leader in securely storing, processing, and analyzing large volumes of cloud-based data" (*Oracle Acquires Cerner*)—is puffery, *i.e.*, "broad, and vague, commendatory language comparing one's goods favorably with others, or praising them as good, proper, sufficient, and the like." *Foster v. Corteva Agriscience LLC*, 2026 WL 2531967, at *3 (N.D. Tex. Aug. 27, 2026). Such statements are "not actionable under" TDTPA. *Chandler v. Gene Messer Ford, Inc.*, 81 S.W.3d 493, 501 (Tex. App. 2002); *see, e.g.*, *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 163 (Tex. 1995) (statements that building was "superb," "super fine," and "one of the finest little properties in the City of Austin" were "merely puffing or opinion"); *Pate v. Fun Town RV San Angelo, LP*, 2024 WL 3995413, at *7 (Tex. App. Aug. 30, 2024) (company's statement that it had the "best service department in the Big Country" was "broad, vague statement of opinion and not a representation of material fact").

Plaintiffs do not plead facts suggesting that the second statement—about implementing certain security measures—was false or misleading, *i.e.*, that Cerner did not adopt measures that were "designed to prevent" unlawful access. *Privacy Policy* § I.4. Again, the "obvious alternative explanation" is that Cerner *did* adopt such measures, and that those measures simply failed to prevent unlawful access in this instance. *Hikma*, 608 U.S. at 592. Plaintiffs altogether "fail[] to allege more than a sheer possibility" that the second statement would have deceived anyone, *id.*, even an "ignorant, unthinking, or credulous" person, *Daugherty*, 187 S.W.3d at 614. The

omissions-based theory of deception fails for the additional reason that Plaintiffs do not plausibly allege that any information was withheld from this Oracle-customer-targeted statement (*see supra* § I.B.2) "with the intent of inducing [Plaintiffs] to engage in a transaction." *Patterson v. McMickle*, 191 S.W.3d 819, 827 (Tex. App. 2006).

### B. The Alleged Misrepresentations Were Not Communicated To Plaintiffs And Plaintiffs Did Not Rely On The Alleged Misrepresentations

Plaintiffs do not allege that they ever saw either of these statements at issue, or that these statements were otherwise communicated to Plaintiffs either directly or indirectly. This failure defeats their TDTPA claims for two reasons. *First*, TDTPA does not "reach upstream manufacturers and suppliers when their misrepresentations are not communicated to the consumer." *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 649 (Tex. 1996); *accord PPG Indus., Inc. v. JMB/Hou. Ctrs. Partners Ltd. P'ship*, 146 S.W.3d 79, 89 (Tex. 2004) ("a downstream buyer … *cannot* sue under the [T]DTPA"); *Hou-Tex, Inc. v. Landmark Graphics*, 26 S.W.3d 103, 112 (Tex. App. 2000) (TDTPA claim failed where defendant "had no communication with [plaintiff] and made no representations to it"). Plaintiffs do not allege, let alone plausibly, that either statement was "communicated to" them. *Amstadt*, 919 S.W.2d at 649. *Second*, Plaintiffs plainly cannot have "relied on" statements they never saw. Tex. Bus. & Com. Code Ann. § 17.50(a)(1); *see, e.g.*, *In re ZF-TRW Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 800 (C.D. Cal. 2022) (dismissing TDTPA claims where plaintiffs failed to plead that they were "ever exposed to, or relied on, the alleged[] misrepresentations or fraudulent omissions"), *clarified on other grounds by* 2022 WL 19425927 (C.D. Cal. Mar. 2, 2022).

## VIII. The KCPA Claim Should Be Dismissed

Harris asserts deception-based and unfairness-based theories in support of a claim under the Kentucky Consumer Protection Act ("KCPA"). Dkt. 462 ¶¶ 799-816. Both theories fail

because Harris is not in contractual privity with Cerner and has not suffered an ascertainable loss. In addition, the deception-based theory should be rejected because Harris does not plead that Cerner engaged in deceptive conduct or that any such conduct caused her damages.

### A. Harris And Cerner Are Not In Contractual Privity

Harris's KCPA claim fails due to a threshold deficiency: lack of privity with Cerner. To bring a KCPA claim, the plaintiff must be in privity of contract with the defendant. *See Williams v. Chase Bank USA, N.A.*, 390 S.W.3d 824, 829-830 (Ky. Ct. App. 2012); *Mattera v. Baffert*, 100 F.4th 734, 742 (6th Cir. 2024). Even if Harris were an intended third-party beneficiary of the BAA between Cerner and University Medical Center, Inc. d/b/a University of Louisville Hospital ("UofL Health")—and she is not, *see infra* § XI—Harris is not in contractual privity with Cerner. That would require her to have "personally purchase[d] goods or services from" Cerner. *Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538, 546 (Ky. Ct. App. 2013); *accord Sowa v. Mercedes-Benz Grp. AG*, 764 F. Supp. 3d 1233, 1290 (N.D. Ga. 2024). Harris alleges nothing of the sort. Instead, she alleges that she received medical care from UofL Health, and that UofL Health contracted with Cerner to use Cerner's EHR-related products and services. *See* Dkt. 462 ¶¶ 765, 785. The absence of privity requires dismissal. *See Keaton*, 436 S.W.3d at 546; *Williams*, 390 S.W.3d at 829-830; *Mattera*, 100 F.4th at 742; *Sowa*, 764 F. Supp. 3d at 1290.

### B. Harris Has Not Suffered An Ascertainable Loss

Harris's KCPA claim also fails because she does not plead that she has suffered an "ascertainable loss of money or property," as required by KCPA's private right of action. Ky. Rev. Stat. Ann. § 367.220(1). Kentucky courts evidently have not yet interpreted "ascertainable" in the KCPA. But "all words and phrases in a statute, unless otherwise defined, should be construed according to their common meaning," which "is often determined by reference to dictionary definitions." *Dep't of Revenue, Fin. & Admin. Cabinet v. Shinin' B Trailer Sales, LLC*,

471 S.W.3d 309, 311 (Ky. Ct. App. 2015). Something is ascertainable if it is "capable of being ascertained," *Ascertainable*, Merriam-Webster, https://www.merriam-webster.com/dictionary/ascertainable, *i.e.*, capable of being "f[ou]nd out or learn[ed] with certainty," *Ascertain*, Merriam-Webster, https://www.merriam-webster.com/dictionary/ascertain.

None of Harris's purported injuries amounts to an "ascertainable loss of money or property." Ky. Rev. Stat. Ann. § 367.220(1); *accord supra* § V.A (same for Shaffer under similarly worded TCPA provision). Harris's alleged "worry and feelings of anxiety and emotional distress" (Dkt. 462 ¶ 795) and any annoyance caused by an "increase in spam" (*id.* ¶ 793) are, at most, intangible injuries not involving any loss of money or property at all, let alone an ascertainable loss capable of being found out or learned with certainty. Harris also claims to have "expend[ed] time and effort" in response to the alleged data breach (*id.* ¶ 792) and to face an increased "risk of identity theft" (*id.* ¶ 796), but again, neither of these is a "loss of money or property," let alone an "ascertainable" one. Ky. Rev. Stat. Ann. § 367.220(1). Nor can Harris rely on the speculation, based solely "on information and belief," that her private information "has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale." Dkt. 462 ¶ 791. If her information has not yet been misused, then Harris has not experienced "an ascertainable loss." Ky. Rev. Stat. Ann. § 367.220(1). And if her information *had* been misused in a cognizable way, Harris surely would have identified any such instances; revealingly, she does not. Finally, even if her private information has tangible economic value, which Cerner disputes, Harris does not allege facts indicating that it has lost value in an ascertainable way. *Cf.* Dkt. 462 ¶ 794 (merely offering conclusory allegation that "as a result of the Data Breach, Plaintiff also suffered diminution in the value of her Private Information").

### C. The Deception-Based Theory Fails For Additional Reasons

A private plaintiff pursuing a deception-based theory under KCPA must establish that,

among other things, (1) the defendant engaged in a false, misleading, or deceptive act or practice, and (2) the deception caused the plaintiff to suffer an ascertainable loss. *See* Ky. Rev. Stat. Ann. §§ 367.170(1), 367.220(1); *Holland v. United Servs. Auto. Ass'n*, 707 S.W.3d 541, 555 (Ky. Ct. App. 2025). Harris's deception-based theory of KCPA liability fails in both respects.

**1. No deceptive act or practice**

Harris invokes the same two statements on Oracle's website as other Plaintiffs. These statements are not "false, misleading, or deceptive," Ky. Rev. Stat. Ann. § 367.170(1), because they are not "likely to deceive a consumer acting reasonably under similar circumstances," *Deceptive act*, Black's Law Dictionary (12th ed. 2024); *see Shinin' B*, 471 S.W.3d at 311 ("words and phrases in a statute, unless otherwise defined, should be construed according to their common meaning," which "is often determined by reference to dictionary definitions").

The first statement—that "Oracle is an industry leader in securely storing, processing, and analyzing large volumes of cloud-based data" (*Oracle Acquires Cerner*)—is puffery, *i.e.*, boastful "sales talk or expressions of opinion," *King v. Ohio Valley Terminix Co.*, 214 S.W.2d 993, 996 (Ky. 1948), "which is universal and an expected practice," *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 550 (Ky. 2009), and "do[es] not amount to actionable misrepresentation" under Kentucky common law, *McHargue v. Fayette Coal & Feed Co.*, 283 S.W.2d 170, 172 (Ky. 1955) (fraudulent misrepresentation), or statutory law, *see, e.g.*, *SBAV, LP v. Porter Bancorp, Inc.*, 2014 WL 1257018, at *7 (W.D. Ky. Mar. 26, 2014) (blue-sky law).

Harris does not plead facts suggesting that the second statement—about implementing certain security measures—was false or misleading, *i.e.*, that Cerner did not adopt measures that were "designed to prevent" unlawful access. *Privacy Policy* § I.4. The "obvious alternative explanation" is that Cerner *did* adopt such measures, and that those measures simply failed to prevent unlawful access in this instance. *Hikma*, 608 U.S. at 592. Harris pleads nothing further,

thus "fail[ing] to allege more than a sheer possibility" that the second statement was deceptive. *Id.*

**2. No causation**

Harris also fails to plead that her purported injuries were "caused by" Cerner's allegedly deceptive statements. *Holland*, 707 S.W.3d at 555 (emphasis omitted). We have not found Kentucky case law interpreting KCPA's causation requirement in similar circumstances, *i.e.*, where a plaintiff does not claim to have seen the alleged misrepresentation. So, Cerner again "turn[s] to other jurisdictions for persuasive guidance." *BSI Constructors*, 705 F.3d at 332; *accord Floyd v. Parkview Council of Co-Owners, Inc.*, 664 S.W.3d 726, 729 n.1 (Ky. Ct. App. 2023).

Harris never alleges that she saw either statement. Yet "if [Harris] did not see any of [the relevant] statements, they could not have been the cause of [her] injury." *Gale*, 781 N.Y.S.2d at 47 (GBL); *accord Tri-Plex*, 241 N.E.3d at 462 ("If the plaintiff has neither seen nor heard a deceptive statement, it … cannot prove that the statement was the proximate cause of its injury [under ICFA]."); *George*, 2020 WL 4718386, at *6 (MMPA claim failed where plaintiffs "had no knowledge of" relevant "representations of the safety of [the product] at the [relevant] time").

**IX. The NCUDTPA Claim Should Be Dismissed**

Smith asserts deception-based and unfairness-based theories in support of a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"). Dkt. 479 ¶¶ 819-834. Both theories fail because Smith has not suffered an actual injury. In addition, the deception-based theory fails because Smith does not plausibly allege that Cerner engaged in deceptive conduct or that Smith relied on any such conduct.

**A. Smith Does Not Plead An Actual Injury**

Smith's NCUDTPA claim should be dismissed because Smith fails to plead cognizable "damages based on" an "*actual* injury" to her. *Jackson v. Home Depot U.S.A., Inc.*, 919 S.E.2d 199, 208 (N.C. 2025) (some emphasis omitted); *see* N.C. Gen. Stat. § 75-16 (plaintiff must "be

injured"); *RE Carroll Mgmt. Co. v. Dun & Bradstreet, Inc.*, 2025 WL 415743, at *4 (4th Cir. Feb. 6, 2025) (NCUDTPA "requires a showing of actual injury"); *Castle McCulloch, Inc. v. Freedman*, 610 S.E.2d 416, 419 (N.C. Ct. App.) (same), *aff'd*, 620 S.E.2d 674 (N.C. 2005) (per curiam).

To start, Smith alleges that the alleged data breach has caused her "worry and feelings of anxiety and emotional distress." Dkt. 479 ¶ 805. Under North Carolina common law, however, "a plaintiff does not have a remedy for garden variety anxiety or concern, but only for *severe* distress." *Pacheco v. Rogers & Breece, Inc.*, 579 S.E.2d 505, 508 (N.C. Ct. App. 2003) (negligent infliction of emotional distress); *accord Moschos v. Moschos*, 882 S.E.2d 401, 404 (N.C. Ct. App. 2022) (intentional infliction of emotional distress). A plaintiff must make "specific factual allegations," *Cauley v. Bean*, 871 S.E.2d 870, 876 (N.C. Ct. App. 2022), of a "severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so," *Gardner v. Gardner*, 435 S.E.2d 324, 328 (N.C. 1993) (emphasis omitted). Smith plainly does not. And "[e]ven assuming *arguendo*" that non-severe "mental and emotional distress" is a "proper bas[i]s for damages" under NCUDTPA, Smith "does not allege facts" plausibly suggesting that she suffered damages from distress, *Walker v. Fleetwood Homes of N.C., Inc.*, 627 S.E.2d 629, 633 (N.C. Ct. App. 2006), *aff'd in part, modified in part, and remanded*, 653 S.E.2d 393 (N.C. 2007), instead asserting boilerplate "worry and feelings of anxiety and emotional distress," Dkt. 479 ¶ 805; *cf. Hekel v. Hunter Warfield, Inc.*, 118 F.4th 938, 943 (8th Cir. 2024) (not crediting "naked assertions of emotional harm, devoid of further factual enhancement").

Smith's other asserted injuries fare no better. She fails to plead any damages due to an "increase in spam," or spending "time and effort … to monitor her accounts and credit files, chang[e] her online account passwords, verify[] the legitimacy of the Data Breach Notice, and research[] the Data Breach." Dkt. 479 ¶¶ 799-800. She purports to face an increased "risk of

identity theft" (*id.* ¶ 806), but "speculative allegations of possible harm in the future are simply insufficient to establish the actual injury necessary to support a claim under [NCUDTPA]." *Precision Links Inc. v. USA Prods. Grp., Inc.*, 2009 WL 801781, at *3 (W.D.N.C. Mar. 25, 2009). Smith also cannot rely on the supposition "on information and belief" that her private information "has been or imminently will be used for criminal, fraudulent purposes and/or has been sold for such purposes and posted on the dark web for sale." Dkt. 479 ¶ 798. If her information has not yet been misused, then Smith has not "be[en] injured." N.C. Gen. Stat. § 75-16. And if her information *had* been misused to cause a loss of money or property, Smith surely would have identified any such instances; conspicuously, she does not. Finally, even if her private information has economic value, which Cerner disputes, Smith provides no well-pleaded allegations suggesting it has decreased in value. *Cf.* Dkt. 479 ¶ 804 (conclusory allegation that "as a result of the Data Breach, Plaintiff also suffered diminution in the value of … her Private Information").

### B. The Deception-Based Theory Fails For Additional Reasons

Smith's NCUDTPA claim, to the extent it relies on a deception-based theory of liability, also fails because Smith does not allege other necessary elements, including that Cerner engaged in a deceptive act or practice, or that Smith relied on any such deceptive act or practice.

#### 1. No deceptive act or practice

Smith too relies solely on the two statements on Oracle's website. These statements are not actionable under NCUDTPA because they lack "the capacity or tendency to deceive." *Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 228 (N.C. 2013).

The first statement, that "Oracle is an industry leader in securely storing, processing, and analyzing large volumes of cloud-based data" (*Oracle Acquires Cerner*), is puffery, *i.e.*, "an exaggerated statement which no reasonable buyer would be justified in relying on or a claim of superiority so vague that nothing can be understood from it except that it is an opinion." *Solum v.*

*Certainteed Corp.*, 147 F. Supp. 3d 404, 412 (E.D.N.C. 2015); *see, e.g.*, *id.* (company's representations that its craftsmen had a "high level of knowledge and ability" and held "highly prestigious" designation only available after "rigorous course" were puffery); *Trident Atlanta, LLC v. Charlie Graingers Franchising, LLC*, 2020 WL 6889208, at *7 (E.D.N.C. Nov. 23, 2020) ("defendants' statements that they had the 'cleanest restaurants in America' and that plaintiffs would receive 'world class,' 'endless,' and 'social media savvy' support were nonactionable puffery"); *I-Conn Healthcare Sols., LLC v. Advanced Internet Techs., Inc.*, 2010 WL 10399, at *3 (N.C. Ct. App. Jan. 5, 2010) (company's claim to be "The World Leader in Dedicated and Shared Web Hosting" was puffery). Such puffery "cannot form the basis of" a NCUDTPA claim. *Glob. Hookah Distribs., Inc. v. Avior, Inc.*, 401 F. Supp. 3d 653, 660 (W.D.N.C. 2019).

Smith does not plead facts suggesting that the second statement—about implementing certain security measures—was false or misleading, *i.e.*, that Cerner did not adopt measures that were "designed to prevent" unlawful access. *Privacy Policy* § I.4. The "obvious alternative explanation" is that Cerner *did* adopt such measures, and that those measures simply failed to prevent unlawful access in this instance. *Hikma*, 608 U.S. at 592. Smith thus "fails to allege more than a sheer possibility that" the second statement was false or misleading. *Id.*

**2. No detrimental reliance**

Smith also fails to plead that she detrimentally relied on either statement at issue. Where, as here, a NCUDTPA claim "stem[s] from an alleged misrepresentation," the plaintiff must "demonstrate reliance on the misrepresentation in order to show the necessary proximate cause." *Bumpers*, 747 S.E.2d at 226. "Two key elements specific to the plaintiff combine to determine detrimental reliance: (1) actual reliance and (2) reasonable reliance." *Id.* at 227. Neither element is met here. Notably, Smith never alleges that she actually saw either statement—and she "cannot have relied on information [she] did not see and did not know existed … at the time of [her

relevant] decisions." *Williams LLC v. United Cmty. Bank*, 724 S.E.2d 543, 550 (N.C. Ct. App. 2012). Even if Smith had seen the statements, reliance would have been unreasonable. The first statement is puffery, upon "which no reasonable buyer would be justified in relying." *Solum*, 147 F. Supp. 3d at 412. And the second statement clearly is directed at Cerner's customers, not those customers' patients, so it would have been unreasonable for Smith to think she could rely upon it.

## X. The NCITPA Claim Should Be Dismissed

Smith also asserts a claim under the North Carolina Identity Theft Protection Act ("NCITPA") based on the timing of notification of the alleged data breach. Dkt. 479 ¶¶ 809-818. "NCITPA does not affirmatively provide an independent right of action" but allows a plaintiff to enforce NCITPA through NCUDTPA if the plaintiff can "demonstrate an injury stemming from an NCITPA violation." *In re Am. Med. Collection Agency, Inc. Customer Data Sec. Breach Litig.*, 2021 WL 5937742, at *35 (D.N.J. Dec. 16, 2021); *see* N.C. Gen. Stat. § 75-65(i) ("No private right of action may be brought by an individual for a violation … unless such individual is injured *as a result of* the violation." (emphasis added)); *Paroline v. United States*, 572 U.S. 434, 445 (2014) ("The words 'as a result of' plainly suggest causation."). Although Smith claims to have suffered several injuries due to the alleged data breach, she does not attribute any injuries to the purported delay in notification. And she certainly does not allege any injury "proximately" caused by the notification. *Rogers v. Keffer, Inc.*, 243 F. Supp. 3d 650, 662 (E.D.N.C. 2017). That is fatal to her NCITPA claim. *See, e.g.*, *In re MOVEit Customer Data Sec. Breach Litig.*, 2026 WL 75852, at *5 (D. Mass. Jan. 9, 2026) (NCITPA claim failed where "conclusory allegations" did "not support a plausible inference of proximate cause" and "provide[d] no factual basis for concluding that the alleged incremental increase in [plaintiff's] emotional distress was legally caused by, or was a reasonably foreseeable consequence of, the timing of notice, as opposed to the Data Breach itself").

## XI. The Breach-Of-Express-Contract Claims Should Be Dismissed

Various Plaintiffs (specifically identified in Cerner's notice of motion) assert claims for purported breaches of the BAAs between Cerner and Plaintiffs' healthcare providers. *E.g.*, Dkt. 450 ¶ 760. But Plaintiffs cannot enforce the BAAs.

A breach-of-contract claim usually requires "a valid and enforceable contract *between the parties*." *Fam. Snacks of N.C., Inc. v. Prepared Prods. Co.*, 295 F.3d 864, 867 (8th Cir. 2002) (emphasis added). Plaintiffs are not parties to the BAAs; those contracts are between Cerner and its healthcare-provider customers. *See* CAC ¶ 509; Exs. A to N. Therefore, to assert claims for breaches of the BAAs, Plaintiffs must be third-party beneficiaries of the BAAs. They are not. To be a third-party beneficiary able to enforce a contract, "the terms of the contract must clearly express intent to benefit that party or an identifiable class of which the party is a member." *Burnett v. Nat'l Ass'n of Realtors*, 75 F.4th 975, 983 (8th Cir. 2023). "In cases where the contract lacks an express declaration of that intent, there is a strong presumption that the third party is not a beneficiary and that the parties contracted to benefit only themselves." MTD Order 19.

None of the BAAs clearly expresses an intent by the contracting parties (Cerner and its healthcare-provider customers) to allow Plaintiffs to enforce it. On the contrary, all BAAs at issue here *disclaim* Plaintiffs' ability to enforce as third-party beneficiaries. Ex. A intro. § E; Ex. B § 19.2; Ex. C at 23 § III.J; Ex. D § 17.1; Ex. E § 23; Ex. F at 64 § 6(i); Ex. G § 26; Ex. H at -203639 § 9(b); Ex. I § 6.2; Ex. J § 26; Ex. K at 30 § 21; Ex. L § 12.I; Ex. M § 14(b); Ex. N at 44 § 16. Plaintiffs insist that the BAAs "were made expressly for the benefit of Plaintiffs" and that Plaintiffs are "intended third-party beneficiaries" (CAC ¶¶ 510, 512), but the contract language "controls." *Ford v. Bluegreen Vacations Unlimited, Inc.*, 2022 WL 1125276, at *2 (W.D. Mo. Apr. 14, 2022).

## CONCLUSION

Plaintiffs' claims should be dismissed without leave to amend.

Dated: September 28, 2026

Respectfully submitted,

*/s/ Alan Schoenfeld*
Alan Schoenfeld (admitted *pro hac vice*)
Ryan Chabot (admitted *pro hac vice*)
Thomas Oates (admitted *pro hac vice*)
Cassandra Mitchell (admitted *pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
250 Greenwich Street
7 World Trade Center
New York, NY 10007
Tel.: (212) 937-7294
Fax: (212) 230-8888
alan.schoenfeld@wilmerhale.com
ryan.chabot@wilmerhale.com
tom.oates@wilmerhale.com
cassie.mitchell@wilmerhale.com

Katherine V. Mackey (admitted *pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Tel.: (617) 526-6993
Fax: (617) 526-5000
katherine.mackey@wilmerhale.com

Siddharth Velamoor (admitted *pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20036
Tel.: (202) 663-6000
Fax: (202) 663-6363
siddharth.velamoor@wilmerhale.com

Patrick Fanning – MO Bar # 47615
LATHROP GPM LLP
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108-2618
Tel.: (816) 460-5416
patrick.fanning@lathropgpm.com

*Attorneys for Defendant Cerner Corporation*